# EXHIBIT D



**Start:** Minneapolis, MN 55402, US

**End:** Tomah, WI US

**I GRADUATED IN**

AL  AK  AZ  AR  CA  CO  CT  DE  DC
FL  GA  HI  ID  IL  IN  IA  KS  KY
LA  ME  MD  MA  MI  MN  MS  MO  MT
NE  NV  NH  NJ  NM  NY  NC  ND  OH
OK  OR  PA  RI  SC  SD  TN  TX  UT
VT  VA  WA  WV  WI  WY

classmates·com

| Directions | Distance |
|---|---|
| **1:** Start out going NORTHEAST on MARQUETTE AVE toward S 7TH ST / MN-55 W / 7TH ST S. | <0.1 miles |
| **2:** Turn RIGHT onto S 6TH ST / 6TH ST S. | 0.9 miles |
| **3:** Merge onto I-94 E. | 167.4 miles |
| **4:** Take the US-12 exit- EXIT 143- toward WI-21 / TOMAH / NECEDAH. | 0.2 miles |
| **5:** Turn RIGHT onto N SUPERIOR AVE / US-12 E. | 2.9 miles |
| **6:** Turn LEFT onto E LACROSSE ST. | <0.1 miles |
| **7:** End at Tomah, WI US | |

**Total Est. Time: 2 hours, 49 minutes**   **Total Est. Distance: 171.67 miles**



**Start:**
Minneapolis, MN 55402, US

**End:**
Tomah, WI US





**Notes:**

NAVTEQ ON BOARD

All rights reserved. Use Subject to License/Copyright

These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.

# EXHIBIT E



Colorado Technical
University Online
TAKE YOUR CAREER TO NEW HEIGHTS

**Graduate In 15 Months;**
*CTU Online makes it possible*

Click anywhere on this ad to view program information.

■■■ **Undergraduate Programs**
- Bachelor's (BSBA) in Information Technology
- Bachelor's (BSBA) in Management
- Bachelor's (BSBA) in Human Resource Management
- Bachelor's (BSBA) in Marketing
- Bachelor's (BSCJ) in Criminal Justice

■■■ **Graduate Programs**
- Executive Master of Business Administration (MBA)
- Master's (MSM) in Information Systems Security
- Master's (MSM) in Information Technology Management
- Master's (MSM) in Project Management

■ LEARN MORE ■

**Start:**  **316 Robert St N**
Saint Paul, MN 55101-1495, US

**End:**  Alma, WI 54610, US

| Directions | Distance |
|---|---|
| **1:** Start out going NORTHWEST on ROBERT ST N / MN-3 toward 4TH ST E. | <0.1 miles |
| **2:** Turn RIGHT onto 4TH ST E. | 0.3 miles |
| **3:** Turn LEFT onto BROADWAY ST. | 0.1 miles |
| **4:** Merge onto I-94 E. | 57.5 miles |
| **5:** Take the WI-25 exit- EXIT 41- toward MENOMINEE / BARRON. | 0.2 miles |
| **6:** Turn RIGHT onto N BROADWAY ST / WI-25. Continue to follow WI-25. | 22.1 miles |
| **7:** Turn RIGHT onto WI-25 / W PROSPECT ST. Continue to follow WI-25. | 15.7 miles |
| **8:** Turn LEFT onto S MAIN ST / WI-35. Continue to follow WI-35. | 6.6 miles |
| **9:** Turn LEFT onto WI-37. | 5.0 miles |
| **10:** Turn RIGHT onto MUD CREEK ST. | 1.8 miles |
| **11:** End at Alma, WI 54610, US | |

**Total Est. Time: 2 hours, 11 minutes**    **Total Est. Distance: 109.71 miles**



**Start:**
**316 Robert St N**
Saint Paul, MN 55101-1495, US

**End:**
Alma, WI 54610, US





**Notes:**

All rights reserved. Use Subject to
License/Copyright

These directions are informational only. No
representation is made or warranty given as to
their content, road conditions or route usability
or expeditiousness. User assumes all risk of
use. MapQuest and its suppliers assume no
responsibility for any loss or delay resulting
from such use.

# EXHIBIT F

About Textron: Contact Us

 **TEXTRON**



8/8/05   NYSE: TXT - $74.39   | About Textron | Textron Businesses | Newsroom | Investor Relations | Careers

| Find a Textron Business | ⌄ | | Find a Textron Product | ⌄ | | Home | Contact Us | Site Map | | Search | » |

🗋 Bookmark Page      ✉ E-mail Page
🖨 Print Page          ✓ Submit Feedback

## About Textron

▣ **Our Company**
　　Company History
　▣ Vision & Strategy
　▣ International
　　Presence
　　FAQs
　　<u>Contact Us</u>

▣ **Our Commitment**

▣ **Our Leadership**

▣ **Corporate**
　**Governance**

Textron.com Home > About Textron > Our Company > Contact Us

## Contact Us

### World Headquarters

**General Inquiries:**
Textron World Headquarters
40 Westminster Street
Providence. RI 02903
U S A
Tel  (401) 421-2800

**Investors:**
Douglas R. Wilburne
Vice President. Investor Relations
Tel  (401) 457-2353
Fax (401) 457-2220

William Pitts
Director, Investor Relations
Tel. (401) 457-2353
Fax (401) 457-2220

**Media:**
Susan M. Tardanico
Vice President. Communications
PR@textron.com
Tel  (401) 457-2394
Fax (401) 457-3598

Karen Gordon
Manager. Media Relations
PR@textron.com
Tel  (401) 457-2362
Fax (401) 457-3598

**Banks and Rating Agencies:**
Mary F. Lovejoy
Vice President and Treasurer
mlovejoy@textron.com
Tel  (401) 457-3604
Fax (401) 457-3533

**Registered Shareholders:**
Wachovia Bank, NA
Shareholder Services Group
1525 West W T Harris Blvd . 3C3
Charlotte, NC 28288
U S A



**2004 Annual Report**
Read
Textron's
2004
Annual
Report

**Current News**
> Get the latest news
about Textron's global
network of companies

**News by E-Mail**
> Subscribe to Textron's
e-mail news service to
receive our news and
financial releases

About Textron: Contact Us

Tel. (800) 829-8432
Fax (704) 590-7618

## Textron Businesses

### Bell

**Bell Helicopter Textron Inc.** [1]
P O  Box 482
Fort Worth, TX 76101
U S A.
www.bellhelicopter.textron.com
(817) 280-2011

**Textron Systems Corporation** [2]
201 Lowell Street
Wilmington, MA 01887
U S A.
www.systems.textron.com
(978) 657-5111

**Lycoming Engines** [3]
652 Oliver Street
Williamsport. PA
U S A.
www.lycoming.textron.com
(570) 323-6181

### Cessna

**Cessna Aircraft Company** [4]
One Cessna Blvd
Wichita. KS 67215
U S A
www.cessna.com
(316) 517-6000
(800) 4CESSNA

### Fastening Systems

**Textron Fastening Systems Inc.** [5]
840 W  Long Lake Road
Suite 450
Troy, MI 48098
U S A
www.textronfasteningsystems.com
(800) 544-6117

### Industrial

**Kautex Textron GmbH & Co. K.G.** [6]
Kautexstrasse 52
53229 Bonn
Germany
www.kautex.com
011–49-228-4880

**Textron Fluid & Power Inc.** [7]
40 Westminster Street

About Textron: Contact Us

Providence, RI 02903
U S A
www.maag.com
www.fhp.textron.com
www.textronpt.com
www.dbup.textron.com
(401) 588-3400

**Power Transmission**

Asia Pacific    61-2-4283-0300
Europe          31-77-324-5900
China           86-21-6235-0363
Scandanavia     46-42-18-6820
South Africa    27-11-748-0000
UK              44-1484-465-610
North America 1-888-994-2663

**Hydraulics**

Asia Pacific    61-2-9838-6800
Europe          31-77-324-5900
China           86-21-6235-0363
Scandanavia     46-42-18-6820
South Africa    27-11-748-0000
UK              44-1202-627-500
North America 1-704-295-7575

**Greenlee Textron Inc.** [8]
4455 Boeing Drive
Rockford, IL 61109
U S A
www.greenlee.com
(815) 397-7070
(800) 435-0786

**E-Z-GO**
1451 Marvin Griffin Road
Augusta, GA 30906
U S A
www.ezgo.com
www.cushmanco.com
(706) 798-4311

**Jacobsen** [9]
3800 Arco Corporate Drive
Charlotte, NC 28273
U S A
www.jacobsen.com
(800) 848-1636

## Finance

**Textron Financial Corporation** [10]
40 Westminster Street
Providence, RI 02903
U S A
www.textronfinancial.com
(401) 621-4200

About Textron: Contact Us

[1] Bell Helicopter Textron Inc. ("Bell Helicopter") is a wholly owned subsidiary of Textron Inc. Bell Helicopter is a separate legal entity and is a member of the Textron family of companies

[2] Textron Systems Corporation ("Textron Systems") is a wholly owned subsidiary of Avco Corporation. Textron Systems Corporation is a separate legal entity and is a member of the Textron family of companies

[3] Lycoming Engines ("Lycoming") is an operating unit of Avco Corporation, a wholly owned subsidiary of Textron Inc.

[4] Cessna Aircraft Company ("Cessna") is a wholly owned subsidiary of Textron Inc. Cessna is a separate legal entity and is a member of the Textron family of companies.

[5] Textron Fastening Systems Inc. ("Textron Fastening Systems") is a wholly owned subsidiary of Textron Inc. Textron Fastening Systems is a separate legal entity and is a member of the Textron family of companies.

[6] Kautex is a business unit which is conducted through a number of separately incorporated companies and other operations.

[7] The Fluid and Power business unit consists of various legal entities, including but not limited to David Brown Union Pumps Company, Cone Drive Operations Inc., and Maag Pump Systems Textron Inc.

[8] The Greenlee business unit consists of various legal entities, including but not limited to Greenlee Textron Inc. and Tempo Research Corporation

[9] The Jacobsen business unit consists of various legal entities, including the Jacobsen Division of Textron Inc., Ransomes Inc., Cushman Inc., and Steiner Turf Equipment Inc.

[10] Textron Financial Corporation ("Textron Financial") is a wholly owned subsidiary of Textron Inc. Textron Financial is a separate legal entity and is part of the Textron family of companies

Home | About Textron | Textron Businesses | Newsroom | Investor Relations | Careers
Privacy Policy | Terms & Conditions | Legal | Text Only

# EXHIBIT G



**START** Lake Mills, WI 53551, US          **END** **316 Robert St N**
                                             Saint Paul, MN 55101-1495, US

| Maneuvers | Distance |
|---|---|
| **1:** Start out going NORTHWEST on E WASHINGTON ST toward SCOTT ST. | 0.1 miles |
| **2:** Turn RIGHT onto WI-89 / N MAIN ST / CR-G. Continue to follow WI-89 / CR-G. | 0.7 miles |
| **3:** Merge onto I-94 W toward MADISON. | 274.1 miles |
| **4:** Take the 6TH ST exit- EXIT 242D- on the LEFT toward US-52 S. | 0.5 miles |
| **5:** Take the 6TH ST exit on the LEFT. | 0.1 miles |
| **6:** Turn SLIGHT RIGHT onto 6TH ST E. | 0.3 miles |
| **7:** Turn LEFT onto ROBERT ST N / MN-3. | 0.1 miles |
| **8:** End at **316 Robert St N** Saint Paul, MN 55101-1495, US | |

**Total Est. Time:** 4 hours, 21 minutes    **Total Est. Distance:** 276.28 miles



NAVTEQ
ON BOARD   All rights reserved. Use Subject to License/Copyright

These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use

# EXHIBIT H



**403 N Water St**
Waterford, WI 53185-4021, US

**316 Robert St N**
Saint Paul, MN 55101-1495, US

| Maneuvers | Distance |
|---|---|
| **1:** Start out going WEST on DANIELSON ST toward RED COAT CT. | 0.1 miles |
| **2:** Turn LEFT onto FOX HORN DR. | <0.1 miles |
| **3:** Turn RIGHT onto RACINE ST. | <0.1 miles |
| **4:** Turn SLIGHT RIGHT onto WI-20 / WI-83 / W MAIN ST. Continue to follow WI-83 N. | 17.1 miles |
| **5:** Turn RIGHT onto WI-83. | 3.2 miles |
| **6:** Turn LEFT onto US-18 / SUMMIT AVE. | 1.0 miles |
| **7:** Turn RIGHT onto CR-C / KETTLE MORAINE DR. Continue to follow CR-C. | 2.8 miles |
| **8:** Merge onto I-94 W via the ramp on the LEFT toward MADISON. | 300.0 miles |
| **9:** Take the 6TH ST exit- EXIT 242D- on the LEFT toward US-52 S. | 0.5 miles |
| **10:** Take the 6TH ST exit on the LEFT. | 0.1 miles |
| **11:** Turn SLIGHT RIGHT onto 6TH ST E. | 0.3 miles |
| **12:** Turn LEFT onto ROBERT ST N / MN-3. | 0.1 miles |
| **13:** End at **316 Robert St N** Saint Paul, MN 55101-1495, US | |

**Total Est. Time:** 5 hours, 25 minutes    **Total Est. Distance:** 325.81 miles



**NAVTEQ ON BOARD**  All rights reserved. Use Subject to License/Copyright

These directions are informational only  No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.

# EXHIBIT I

2000 U S Dist LEXIS 22222

BRUNSWICK CORPORATION, Plaintiff, v. PRECOR INCORPORATED, Defendant

C.A. No 00-691-GMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2000 U S Dist LEXIS 22222

December 12, 2000, Decided
December 12, 2000, Filed

**DISPOSITION-1:** [*1] Precor's motion to transfer granted.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff patent holder, a company incorporated in Delaware with a principal place of business in Illinois, brought an infringement action relating to exercise treadmills against defendant competitor, a company incorporated in Delaware with a principal place of business in Washington. The competitor moved to transfer the case pursuant to 28 U.S.C.S. § 1404(a)

**OVERVIEW:** The balance of the private factors tipped slightly in favor of transfer. The convenience of the parties, the convenience of the witnesses, and the location of records and books were the most pertinent of the private factors. Both parties were located outside of Delaware, the witnesses as well as the relevant documents and records were located in Washington, and the product at issue was designed and manufactured in Washington; therefore, the Western District of Washington was a more convenient forum for the litigation. Although the private factors tipped slightly in favor of the Western District of Washington, the relevant public factors weighed heavily in favor of transfer. There had already been litigation between the parties on another patent, a parent patent of the one at issue in the case, in the Western District of Washington. That matter was on appeal. Moreover, the parties were currently litigating another patent infringement matter involving exercise equipment in the Western District of Washington. Thus, transferring the case would have promoted the interests of justice.

**OUTCOME:** The court granted the motion to transfer venue.

**CORE TERMS:** patent, western district, convenience, patent infringement, weigh, balance of convenience, fora, tip, motion to transfer, choice of forum, infringement, expeditious, inexpensive, paramount, lawsuit, serving, principal place of business, manufacture, slightly

**COUNSEL:** For BRUNSWICK CORPORATION, plaintiff: Robert W. Whetzel, Richards, Layton & Finger, Wilmington, DE.

For PRECOR INCORPORATED, defendant: Samuel David Brickley, II, Connolly, Bove, Lodge & Hutz, Wilmington, DE

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION: MEMORANDUM AND ORDER**

On August 1, 2000, the plaintiff, Brunswick Corporation, and its division Life Fitness ("Life Fitness") brought this patent infringement action against Precor Incorporated ("Precor"). Life Fitness alleges that Precor is infringing its U.S. Patent No. 6,095,951 (" '951 patent") relating to exercise treadmills. Presently before this court is Precor's motion to transfer this case to the United States District Court for the Western District of Washington, pursuant to 28 U.S.C. § 1404(a). Because the court finds that a transfer would convenience the parties and the witnesses while serving the interests of justice, Precor's motion to transfer is granted

I BACKGROUND

A. The parties

Life Fitness and Precor both design, manufacture, [*2] and sell exercise equipment and both directly compete with one another in the exercise fitness market. Although both parties are incorporated in Delaware, neither party maintains a physical presence (e.g., offices or facilities) in this state. Life Fitness has its principal place of business in Franklin Park, Illinois and Precor has its principal place of business in Bothell, Washington

B. Prior Litigation Between the Parties

"Life Fitness and Precor are no strangers to each other, nor to patent litigation." D.I. 7, at 2. In 1994, Precor filed a patent infringement suit against Life Fitness in the United States District Court for the Western District of Washington ("1994 litigation"). At issue in the 1994 litigation were  U.S. Patent Nos 5,599,259, 5,752,897 and certain Claims of U.S. Patent No. 5,382,207 (respectively the " '259, '897, and '207 patents") The '207 patent is the parent of the '951 patent currently at issue in the case before the court.

In the 1994 litigation, Claims 1-36 of '207 patent were dismissed on summary judgment in February 1996 leaving only claims 37, 38, and 39 at issue. In early September 1999, Life Fitness voluntarily stipulated to the dismissal [*3] of the claims for infringement of the '259 and '897 patents as well as Claims 38-39 of the '207 patent. As a result of this stipulation, these claims were dismissed with prejudice in an order dated September 23, 1999. See Precor Inc v Life Fitness, No. C94-1586C (W.D. Wash Sept. 23, 1999) (stipulation and order of dismissal). Thus, the only infringement claim remaining for trial related to Claim 37 of the '207 patent. In October 1999, Life Fitness lost at trial as to this one patent claim. The judgment from the 1994 litigation is currently on appeal to the Federal Circuit.

## II. DISCUSSION

Pursuant to 28 U.S.C. § 1404(a), the court may transfer this action to "any other district where it might have been brought" when it appears that a change of venue would "convenience" the parties and the witnesses while serving the "interest of justice." 28 U.S.C. § 1404(a) (1993). The parties here agree that Life Fitness could have brought this action in the Western District of Washington See 28 U.S.C. S 1391(b)(1) (1993) Moreover, this lawsuit could have initially been filed in Washington because it is a patent [*4] infringement matter. See 28 U.S.C. § 1400(b). Therefore, the court will next apply the most relevant public and private factors to the facts of the case as directed by the Third Circuit's decision in Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995).

In Jumara, the Third Circuit Court of Appeals identified a nonexclusive list of factors that have been used to guide courts in the exercise of their discretion in ruling on requests for transfer  55 F.3d at 879-80; see also Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp.2d 192, 196-97 (D. Del. 1998). These factors fall into two groups: those relating to the private convenience of the litigants and those affecting the public interest in the fair and efficient administration of justice. Jumara, 55 F.3d at 879-80. n1 The court should apply these factors to determine, "on an individualized, case-by-case

basis, whether convenience and fairness considerations weigh in favor of transfer." Id. at 883 (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30-31, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988)). [*5] The burden is on moving party to show that balance of convenience and the interests of justice weighs in favor of transfer See Jumara, at 879.

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n1 The private interests may include: 1) the plaintiff's original forum preference; 2) the defendant's preference; 3) whether the claim arose elsewhere; 4) the convenience of the parties; 5) the convenience of the witnesses-- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and 6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). Jumara, 55 F.3d at 879-880. The public interests may include: 1) the enforceability of the judgment; 2) practical considerations that make the trial easy, expeditious, or inexpensive; 3) the relative administrative difficulty in the two fora resulting from court congestion; 4) the local interest in deciding local controversies at home; 5) the public policies of the fora; and 6) the familiarity of the trial judge with the applicable state law in diversity cases Id.

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

[*6]

## A. Private Factors

The court concludes that the balance of the private factors tips slightly in favor of transfer. In this case, the court finds the convenience of the parties, the convenience of the witnesses, and the location of records and books to be the most pertinent of the private factors. Although both parties are incorporated in Delaware, Precor maintains its headquarters in the Western District of Washington and Life Fitness in Franklin Park, Illinois Additionally, neither of the parties, their witnesses, or any of the potentially relevant documents and records are located in Delaware.

Recognizing that the balance of convenience tips toward the Western District of Washington, Precor further argues that Life Fitness will suffer no greater inconvenience in traveling to Washington than

Delaware. In contrast, Life Fitness argues that its choice of forum is paramount. The court acknowledges that a plaintiff's choice of forum is a "paramount" consideration that is not to be "lightly disturbed." *Schutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970); see also Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995).* In this case, [*7] however, the plaintiff's preference for Delaware is not given as much deference because most of the events at issue, that is, the design and manufacture of the exercise equipment, occurred outside of Delaware. *See Britamco Underwriters, Inc. v. Wallace, 56 F. Supp. 2d 542, 545 (E.D. Pa. 1999).* "The transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen . . . a forum where the alleged wrongful activity occurred." *Continental Casualty Co. v. American Home Assurance Co., 61 F. Supp. 2d 128, 131 (D. Del. 1999).* Thus, because the parties are located outside of Delaware, the witnesses as well as the relevant documents and records are located in Washington, and the product at issue was designed and manufactured in Washington, the Western District of Washington is a more convenient forum for the litigation.

B. Public Factors and the Interest of Justice

Although the private factors tip slightly in favor of the Western District of Washington, the relevant public factors weigh heavily in favor of transfer. Most relevant to the courts inquiry is whether there are practical considerations that would make [*8] trial "easy, expeditious, or inexpensive." *Jumara, 55 F.3d at 879.* In this case, there has already been litigation on the '207 patent, a parent patent of the one at issue here, in the Western District of Washington. This matter is on appeal. Moreover, the parties are currently litigating another patent infringement matter involving exercise equipment in the Western District of Washington. n2 Where related lawsuits exist, "it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court." *See Liggett Group, Inc. v. R.J. Reynolds Tobacco Co., 102 F. Supp. 2d 518, (D.N.J. 2000) (citations omitted).* Thus, the court finds that transferring this case would promote the interests of justice.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n2 The parties disagree as to whether this is a directly related matter.

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

## III. CONCLUSION.

Finding that the balance of convenience and the interests of justice weigh in favor of transfer,

IT IS HEREBY ORDERED that:

1. Precor Incorporated's [*9] Motion to Transfer is GRANTED; and

2. This matter shall be TRANSFERRED to the Western District of Washington.

Date: December 12, 2000

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

# EXHIBIT J

Toro - Groundsmaster® 3505-D

 **Count on it.**

Site Search: [                    ] **❶ GO**

| Homeowner | Golf Course Management | Professional Contractor | Sports Fields & Grounds | Irrigation Solutions |



**SPORTS FIELDS**
**& GROUNDS**
**MOWING**
**EQUIPMENT**

Wide Area Mowers

Sports Turf Mowers

Trim Mowers

Landscape Mowers

**WHERE TO**
**BUY OR SERVICE**
**YOUR TORO**





**NEED HELP**
**PRINTING? ❶**

# Groundsmaster® 3505-D

Select: Sports Turf Mowers

[ Select One              ] **❶ GO**

## Model: Groundsmaster® 3505-D

Select: Groundsmaster® 3505-D Sports Turf Mowers

[ Select One        ] **❶ GO**

▶ **MODEL FEATURES**
▶ **ACCESSORIES**
☑ **SPECIFICATIONS**
> Overview
> View All Specs (PDF)

### Overview

| | |
|---|---|
| Engine | Kubota® 35 hp |
| Fuel Capacity | 11 gallons |
| Ground Speed | Forward 0-6 mph |
| Steering | Hydraulic power steering |
| Approximate Weight | 2,100 lbs. |
| Warranty | 2 year limited warranty |

◀◀ Return To Model: Groundsmaster® 3505-D

Specifications and design subject to change without notice

**CUSTOMER CARE**

❶ Toro Professional Services

❶ Where to Buy and Service Your Toro

❶ Grounds and Sports Turf Customer Care

❶ Look Up Parts

❶ Request Operator's and Parts Manuals

❶ Frequently Asked Questions

**RELATED LINKS**

❶ Demo Request

❶ ToroSports.com

| Home | About Us | Contact Us | Investor Information | Careers | Media Room | Promotions |

Toro Worldwide | The Toro Company Corporate Site
Copyright © 2005 The Toro Company - All rights reserved | Terms of Use | Privacy Notice

# EXHIBIT K

Judicial Caseload Profile Report

Page 1 of 1

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **MINNESOTA** | | | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | Numerical Standing | |
| | | | | | | | | | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | | 6,163 | 7,190 | 4,718 | 2,730 | 3,216 | 2,431 | U.S. | Circuit |
| | Terminations | | | 4,790 | 4,021 | 2,876 | 2,754 | 3,357 | 2,766 | | |
| | Pending | | | 8,605 | 7,202 | 4,031 | 2,195 | 2,213 | 2,349 | | |
| | % Change in Total Filings | Over Last Year | | | -14.3 | | | | | 90 | 10 |
| | | Over Earlier Years | | | | 30.6 | 125.8 | 91.6 | 153.5 | 2 | 1 |
| Number of Judgeships | | | | 7 | 7 | 7 | 7 | 7 | 7 | | |
| Vacant Judgeship Months** | | | | .0 | .0 | 4.1 | .0 | .0 | 4.1 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | | 880 | 1,028 | 674 | 390 | 459 | 347 | 2 | 1 |
| | | Civil | | 800 | 962 | 614 | 344 | 411 | 305 | 2 | 1 |
| | | Criminal Felony | | 62 | 54 | 47 | 46 | 48 | 42 | 56 | 8 |
| | | Supervised Release Hearings** | | 18 | 12 | 13 | - | - | - | 46 | 7 |
| | Pending Cases | | | 1,229 | 1,029 | 576 | 314 | 316 | 336 | 4 | 1 |
| | Weighted Filings** | | | 679 | 632 | 597 | 478 | 495 | 461 | 4 | 1 |
| | Terminations | | | 684 | 574 | 411 | 393 | 480 | 395 | 5 | 1 |
| | Trials Completed | | | 16 | 12 | 14 | 12 | 13 | 14 | 63 | 8 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | | 8.9 | 7.9 | 8.4 | 7.5 | 7.5 | 8.0 | 65 | 8 |
| | | Civil** | | 6.6 | 6.5 | 7.1 | 8.9 | 12.6 | 10.0 | 7 | 1 |
| | From Filing to Trial** (Civil Only) | | | 22.0 | 24.5 | 26.0 | 20.7 | 20.8 | 22.0 | 41 | 6 |
| OTHER | Civil Cases Over 3 Years Old** | Number | | 75 | 27 | 50 | 53 | 57 | 27 | | |
| | | Percentage | | .9 | .4 | 1.3 | 2.7 | 2.8 | 1.3 | 8 | 2 |
| | Average Number of Felony Defendants Filed Per Case | | | 1.5 | 1.4 | 1.6 | 1.5 | 1.6 | 1.7 | | |
| | Jurors | Avg. Present for Jury Selection | | 46.47 | 47 85 | 39 62 | 35 94 | 39 08 | 35 83 | | |
| | | Percent Not Selected or Challenged | | 28 3 | 40 6 | 31.1 | 35 3 | 35 7 | 33.0 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 5603 | 92 | 13 | 359 | 32 | 18 | 398 | 329 | 3549 | 196 | 480 | 16 | 121 |
| Criminal* | 431 | 15 | 11 | 62 | 7 | 4 | 171 | ** | 6 | 77 | 14 | 28 | 36 |

\*   Filings in the "Overall Caseload Statistics" section include criminal transfers. while filings "By Nature of Offense" do not
\*\* See "Explanation of Selected Terms."

http://www.uscourts.gov/cgi-bin/cmsd2004.pl

08/16/2005

# EXHIBIT L

Judicial Caseload Profile Report                                        Page 1 of 1

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **DELAWARE** | | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | Numerical Standing | |
| | | | | | | | | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 1,797 | 1,362 | 2,028 | 1,004 | 1,303 | 1,033 | U.S. | Circuit |
| | Terminations | | 1,516 | 1,507 | 1,478 | 1,020 | 955 | 861 | | |
| | Pending | | 2,085 | 1,836 | 1,999 | 1,477 | 1,502 | 1,154 | | |
| | % Change in Total Filings | Over Last Year | | 31.9 | | | | | 5 | 2 |
| | | Over Earlier Years | | | -11.4 | 79.0 | 37.9 | 74.0 | 4 | 2 |
| | Number of Judgeships | | 4 | 4 | 4 | 4 | 4 | 4 | | |
| | Vacant Judgeship Months** | | .0 | 1.9 | 3.1 | .0 | .0 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 449 | 340 | 507 | 251 | 326 | 258 | 52 | 3 |
| | | Civil | 414 | 306 | 462 | 233 | 307 | 240 | 29 | 3 |
| | | Criminal Felony | 29 | 25 | 38 | 18 | 19 | 18 | 91 | 6 |
| | | Supervised Release Hearings** | 6 | 9 | 7 | - | - | - | 90 | 4 |
| | Pending Cases | | 521 | 459 | 500 | 369 | 376 | 289 | 20 | 2 |
| | Weighted Filings** | | 534 | 424 | 516 | 379 | 389 | 320 | 31 | 1 |
| | Terminations | | 379 | 377 | 370 | 255 | 239 | 215 | 64 | 4 |
| | Trials Completed | | 19 | 23 | 18 | 16 | 19 | 13 | 47 | 2 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 9.1 | 8.3 | 9.8 | 8.0 | 6.6 | 6.0 | 68 | 2 |
| | | Civil** | 14.0 | 11.2 | 8.2 | 12.6 | 10.9 | 11.5 | 93 | 5 |
| | From Filing to Trial** (Civil Only) | | 26.0 | 24.0 | 22.5 | 21.0 | 24.0 | 19.7 | 58 | 3 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 65 | 66 | 99 | 77 | 70 | 38 | | |
| | | Percentage | 3.4 | 3.9 | 5.4 | 5.5 | 4.9 | 3.5 | 43 | 3 |
| | Average Number of Felony Defendants Filed Per Case | | 1.2 | 1.3 | 1.1 | 1.3 | 1.2 | 1.3 | | |
| | Jurors | Avg. Present for Jury Selection | 38.50 | 34.98 | 33.84 | 32.68 | 35.75 | 30.23 | | |
| | | Percent Not Selected or Challenged | 20.9 | 24.0 | 24.4 | 19.9 | 28.5 | 15.1 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 1655 | 20 | 1 | 238 | 10 | 5 | 28 | 72 | 56 | 198 | 135 | 2 | 890 |
| Criminal* | 115 | 9 | 5 | 40 | - | 4 | 24 | ** | 2 | 19 | - | 6 | 6 |

\*  Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not
\*\* See "Explanation of Selected Terms."

# EXHIBIT M

2003 U.S. Dist. LEXIS 18320

AT HOME CORPORATION, Plaintiff, v. COX COMMUNICATIONS, INC., COX@HOME INC., COMCAST CORPORATION, COMCAST ONLINE COMMUNICATIONS, INC., COMCAST PC INVESTMENTS INC., BRIAN L. ROBERTS and DAVID M. WOODROW, Defendants.

Civil Action No. 02-1486-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2003 U.S. Dist. LEXIS 18320

October 8, 2003, Decided

**DISPOSITION-1:** [*1] Comcast Defendants' Motion for Improper and Inconvenient Venue and Cox Defendants' Motion To Transfer Pursuant To 28 U.S.C. § 1404 were granted.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff corporation contended that defendants, group one defendants and group two defendants, committed securities violations and breaches of fiduciary duty. The group one defendants moved to dismiss or transfer the action for improper and inconvenient venue. The group two defendants moved to dismiss or transfer for improper venue, or in the alternative, to transfer pursuant to 28 U.S.C.S. § 1404.

**OVERVIEW:** As to the motion filed by the group one defendants, a corporation one, two, and three and an individual, the corporation one and the corporation two were not residents of Delaware. The individual was not a resident of Delaware and did not transact business in Delaware. While the corporation three was organized under Delaware law, it was not qualified to do business in Delaware, and its slight connection to Delaware was overwhelmed by the lack of connection of the other three group one defendants. The court found that plaintiff had not shown that any acts or transactions involved in the case occurred in Delaware. Further, none of plaintiff's factual allegations demonstrated a connection to Delaware. With regard to the public interest factors, plaintiff was engaging in forum shopping and attempting to force the case into the district. Additionally, the local interest of New York, where the transactions that formed the basis of the claims asserted, was stronger than the local interest of Delaware in resolving the dispute. The court found that the convenience of the parties and witnesses was best be served by transferring the action to the district where proper venue existed.

**OUTCOME:** The group one defendants' motion for improper and inconvenient venue and the group two defendants' motion to transfer were granted. The case was transferred.

**CORE TERMS:** venue, motion to transfer, convenient, motion to dismiss, reasons discussed, collectively, convenience, weigh, securities law, local interest, transferring, transferred, resident, shopping

**COUNSEL:** Edmond D Johnson, Esquire and Michael L. Vild, Esquire of THE BAYARD FIRM, Wilmington, Delaware.

Of Counsel: Joseph S. Allerhand, Esquire, Richard W. Slack, Esquire, and Daniel S. Cahill, Esquire of WEIL, GOTSHAL & MANGES LLP, New York, New York.

Counsel for Plaintiff At Home Corporation

Donald E. Reid, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, Delaware

Of Counsel: Michael D. Hays, Esquire, Michael D Rothberg, Esquire, and Daniel D. Prichard, Esquire of DOW, LOHNES & ALBERTSON, PLLC, Washington, District of Columbia.

Counsel for Defendants Cox Communications, Inc., Cox@Home, Inc., and David M. Woodrow

Barry M. Klayman, Esquire of WOLF, BLOCK, SCHORR AND SOLIS-COHEN, LLP, Wilmington, Delaware.

Of Counsel: Michael S Shuster, Esquire and Sheron Korpus, Esquire of WHITE & CASE LLP, New York, New York

Counsel for Defendants Comcast Corporation, Comcast Online Communications, Inc., Comcast PC Investments Inc., and Brian L. Roberts.

**JUDGES:** Farnan, District Judge.

**OPINIONBY:** Farnan

**OPINION:** [*2]

Page 1

## MEMORANDUM OPINION

Wilmington, Delaware

### Farnan, District Judge.

Presently before the Court is the Motion To Dismiss (D.I. 21-1) Or Transfer This Action For Improper And Inconvenient Venue (D.I. 21-2) filed by Comcast Corporation, Comcast Online Communications, Inc., Comcast PC Investments Inc., and Brian L. Roberts (collectively "Comcast Defendants") and the Motion to Dismiss (D.I. 15-1) or Transfer For Improper Venue (D.I. 15-2), or In The Alternative, To Transfer Pursuant To 28 U.S.C. § 1404 (D.I. 15-3) filed by Cox Communications, Inc., Cox@Home, Inc., And David M. Woodrow (collectively "Cox Defendants"). For the reasons discussed, the Court will grant the Comcast Defendants' Motion for Improper and Inconvenient Venue (21-2) and the Cox Defendants' Motion To Transfer Pursuant To 28 U.S.C. § 1404 (D.I. 15-3).

## BACKGROUND AND ALLEGATIONS OF THE PARTIES

In this action, At Home Corporation ("At Home") contends defendants Comcast Corporation ("Comcast"), Comcast Online Communications, Inc. ("Comcast Online"), Comcast PC Investments Inc. ("Comcast PC"), and Brian L. Roberts and Defendants Cox Communications, [*3] Inc. ("Cox"), Cox@Home, and David M. Woodrow ("Woodrow") have committed securities violations and breaches of fiduciary duty.

The Comcast Defendants assert that the lack of any connection with Delaware makes a transfer of the action to the Southern District of New York appropriate. The Comcast Defendants contend that Southern District of New York is an easier and more convenient venue. The Comcast Defendants allege essentially the same arguments in support of their motion to dismiss the case for lack of jurisdiction and improper venue.

By their motion to transfer or dismiss, the Comcast Defendants contend that neither they nor this action have sufficient connections to Delaware to make venue proper here. They assert that Comcast, Comcast Online, and Mr. Roberts have no presence in Delaware. The Comcast Defendants assert that the transactions at issue in At Home's securities law claim did not occur in Delaware and that the Court's subject matter jurisdiction over the claim of breach of fiduciary duty is dependent on jurisdiction over the securities law claim. Consequently, the Comcast Defendants assert, both claims must be dismissed or transferred.

The Cox Defendants also support [*4] transferring this case. The Cox Defendants assert because Comcast is an indispensable party to the instant case and venue is improper as to Comcast, venue is improper as to Cox. Cox claims that the transactions creating the claims At Home asserts are not related to Delaware, and that New York is a more convenient venue for the instant case.

At Home responds that venue is proper in Delaware, and that Delaware is a more convenient venue than New York because the action has significant connections to Delaware.

## DISCUSSION

The Court will first consider the Motions to Transfer filed by the Comcast and Cox Defendants. 28 U.S.C. § 1404(a) states that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

In the Third Circuit, decisions on motions to transfer are guided by the private and public factors announced in Jumara v. State Farm Ins. Co. 55 F.3d 873, 879 (3rd Cir. 1995). When determining whether or not transfer is warranted in the circumstances presented, district courts must balance all of the relevant [*5] factors and respect that a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed when it is due to legitimate, rational concerns. Id. at 883. The burden is upon the movant to establish that the balance of the interests strongly weighs in favor of transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. See Continental Cas. Co. v. American Home Assurance Co., 61 F. Supp.2d 128, 131 (D.Del. 1999).

## PRIVATE CONSIDERATIONS

The Court finds that the Comcast Defendants do not have a significant relation to Delaware. Comcast and Comcast Online are not residents of Delaware. Comcast is incorporated, and has its principal place of business, in Pennsylvania. Comcast Online has merged with Comcast and is not a distinct entity. Mr. Roberts is not a resident of Delaware and does not transact business in Delaware. While Comcast PC is organized under Delaware law, it is not qualified to do business in Delaware, and its slight connection to Delaware is overwhelmed by the lack of connection of the other three Comcast Defendants.

The Court also finds [*6] that At Home has not shown that any acts or transactions involved in this case occurred in Delaware. Further, the Court finds that

2003 U.S. Dist. LEXIS 18320

none of At Home's factual allegations demonstrate a connection to Delaware.

## PUBLIC CONSIDERATIONS

With regard to the public interest factors, the Court finds that At Home is engaging in forum shopping and attempting to force this case into the District of Delaware. Obviously, when a Court finds or it appears based on the circumstances that a party is making an effort at forum shopping, transfer is warranted. Additionally, the Court finds that the local interest of New York, where the transactions that form the basis of the claims asserted is stronger than the local interest of Delaware in resolving this dispute.

After considering the relevant factors for transfer of this case, the Court finds, balancing the relevant private and public factors, that the convenience of the parties and witnesses will best be served by transferring this action to the Southern District of New York where proper venue exists. Accordingly, the Motion to Transfer under 1404(a) will be granted and the case will be transferred to the Southern District of New York.

## CONCLUSION [*7]

For the reasons discussed, the Court will grant the Comcast Defendants' Motion for Improper and Inconvenient Venue and the Cox Defendants' Motion To Transfer Pursuant To 28 U.S.C. § 1404. An Order consistent with this Memorandum Opinion has been entered.

# EXHIBIT N

2003 U.S. Dist. LEXIS 988

THE ORIGINAL CREATINE PATENT COMPANY, LTD, Plaintiff, v KAIZEN, INC, Defendant.

Civil Action No. 02-471-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2003 U.S. Dist. LEXIS 988

January 22, 2003, Decided

**DISPOSITION-1:** **[*1]** Defendant's motion to dismiss or, in the alternative, to transfer is granted.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff patentee filed an amended complaint for patent infringement against defendant corporation. The corporation filed an answer and asserted affirmative defenses, including inequitable conduct and bad faith and then moved to dismiss or to transfer. The patentee responded with a motion to strike and/ or dismiss 15 of the corporation's affirmative defenses.

**OVERVIEW:** The court found the balance of private factors weighed in favor of transfer. The record reflected that neither litigant had ties to Delaware. Geographically, Delaware was inconvenient to everyone. All witnesses, documents and employees were located outside of the instant forum. Although the corporation described itself as a world-wide operation, there was nothing presented to corroborate this apparent embellishment. Turning to the public interests, the court found the practical considerations related to trial weighed in favor a transfer. The expense of trial in Delaware weighed more heavily on the corporation. Regardless of the forum, the patentee would incur travel expenses. A transfer to California would have eliminated rather than merely shifting the travel expense of one party. The court was likewise confident that the district court in California was well-equipped to decide the issues implicated, regardless of the pendency of the patentee's other infringement actions before the instant court. Further, considering the corporation was a California corporation conducting business therein, that forum had a more particular interest in the litigation than Delaware.

**OUTCOME:** The corporation's motion to dismiss or, in the alternative, to transfer was granted and the action was transferred.

**CORE TERMS:** patent, convenience, weigh, choice of forum, patents-in-suit, website, fora, motion to dismiss, creatine-containing, world-wide, reside, balance of convenience, deference, patent infringement, motion to strike, third party, store owner,

declaration, implicated, embodying, nutrition, invention, internet, inventors, travel

**COUNSEL:** For ORIGINAL CREATINE PATENT COMPANY, LTD, plaintiff: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE

For KAIZEN INC, defendant: David L. Finger, David L. Finger, Esq., Wilmington, DE

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

## OPINION: MEMORANDUM ORDER

At Wilmington this 22nd day of January, 2003, having reviewed defendant's motion to dismiss or, in the alternative, to transfer and the papers submitted in connection therewith;

IT IS ORDERED that said motion to transfer (D.I. 14) is granted, for the reasons that follow: n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n1 Because the court is transferring the action to California, Kaizen's motion to dismiss for lack of personal jurisdiction is denied as moot. Kaizen's motions for protective orders (D.I. 25, 31) and OCPC's motion to strike (D.I. 10) are denied without prejudice to renew.

- - - - - - - - - - - - - End Footnotes- - - - - - - - -
- - - - - -

1. **Introduction.** On July 11, 2002, plaintiff, The Original Creatine Patent **[*2]** Co, Ltd. ("OCPC"), filed an amended complaint for patent infringement against defendant Kaizen, Inc. ("Kaizen"). n2 (D.I. 7) The patents-in-suit are United States Patent Number 5,757,159 ("the '159 patent") and United States Patent Number 5,968,544 ("the '544 patent"). OCPC alleges that Kaizen has made, used, offered for sale, and continues to do the same, creatine-containing products

embodying the invention patented in the '544 patent. OCPC further contends that Kaizen has marketed and sold creatine-containing products embodying the invention in the '159 patent. Kaizen filed an answer and asserted affirmative defenses, including inequitable conduct and bad faith (D.I. 9). Kaizen then filed this motion to dismiss or transfer to the Central District of California. (D.I. 10) OCPC responded with a motion to strike and/ or dismiss fifteen of Kaizen's affirmative defenses. (D.I. 10)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n2 CPC filed the original complaint incorrectly against Kaizen, Inc., a Delaware corporation unrelated to this action (D.I. 1, 15)

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

[*3]

2. **Background.** OCPC is an English corporation with its principal place of business in Leeds, United Kingdom. (D.I. 7, P2) OCPC is the assignee of the two patents-in-suit, the '159 patent, issued to inventors Eric Hultman and Roger C. Harris, and the '544 patent, issued to inventors Alan N. Howard and Roger C. Harris. (Id. at PP5-6) While Hultman resides in Sweden, Howard and Harris reside in the United Kingdom. (D.I. 19, Ex 1) The attorneys that prosecuted the patents are located in Washington, D.C. and Chicago, Illinois. OCPC has filed four other actions to enforce the patents-in-suit against different defendants, all of which are pending before this court.

3. Kaizen is a California corporation with only one office located in Los Angeles, California. (D.I. 15, Ex. A) Kaizen is a corporation involved in the advertising, distribution and sales of health food products. (Id. at P2) In 1998, Kaizen entered a licensing agreement to market, distribute and sell creatine-containing products from a German company under the trade-name Creapure <TM>. (Id. at P4) Kaizen claims that all its documents, and employees are located in California. With the exception of two potential [*4] witnesses, n3 Kaizen indicates the remaining reside in California.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n3 There are two witnesses located in Georgia and Canada. ( D.I. 15 P 9)

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

4. **Standard of Review.** Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interest of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988); Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp.2d 192, 208 (D. Del. 1998).

The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981) [*5] (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970), "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". ADE Corp. v. KLA-Tencor Corp., 138 F. Supp.2d 565, 567 (D. Del. 2001); Shutte, 431 F.2d at 25.

The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason C.R. Bard, Inc. v. Guidant Corp., 997 F. Supp. 556, 562 (D. Del 1998); Siemens Medical Systems, Inc. v. Fonar Corporation, C.A. No. 95-261-SLR, 1995 U.S. Dist. LEXIS 22334, slip op. at 8 (D. Del. Nov. 1, 1995); Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc., 2001 U.S. Dist. LEXIS 20803, 2001 WL 1617186 (D. Del. Nov. 28, 2001). Although transfer of an action is usually considered as less convenient to a plaintiff if the plaintiff has not chosen its "'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer. [*6] " In re M.L.-Lee Acquisition Fund II, L.P., 816 F. Supp. 973, 976 (D. Del. 1993).

The Third Circuit Court of Appeals has indicated the analysis for transfer is very broad. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). Although emphasizing that "there is no definitive formula or list of factors to consider," id., the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may

actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." Id. (citations omitted).

The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; [*7] (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." Id. (citations omitted).

5 **Discussion.** Kaizen argues the public and private interests weigh in favor of a transfer to the Central District of California. Specifically, Kaizen argues that OCPC has no parties, witnesses or evidence related to this action in Delaware. Kaizen avers that OCPC instituted this action in Delaware for the sole reason of accommodating the convenience of its lawyers, who practice in this state. Kaizen contends that the action actually emanates from Los Angeles, California, the location of its sales center. California is also the location of all events and evidence related to the litigation. (D.I. 15, Ex. A)

6. OCPC contends its choice of forum should be afforded deference. (D.I. 19) The Delaware forum was selected because Kaizen has committed patent infringement in this state, argues OCPC. Moreover, the evidence and witnesses necessary to defend against Kaizen's affirmative [*8] defenses are located in Sweden, the United Kingdom, Washington, D.C. and Illinois. Although all of these witnesses will have to travel for trial purposes, OCPC asserts that Delaware is a closer forum than California. Further, because there are three other cases involving the same patents pending before this court, judicial economy will be promoted by maintaining this action. (D.I. 19, Ex. 1) The risk of inconsistent results will be reduced by allowing one judge to become proficient in the patent technology and the relevant facts.

OCPC also raises another issue related to Kaizen's business, or lack thereof, in Delaware. On Kaizen's internet website, the company describes itself as maintaining offices "world-wide," in addition to the California office. (D.I. 19, Ex. 2) The Kaizen website does not accept orders for its products. However, the website does provide a link to an internet nutrition store which sells Kaizen products. According to the declaration of an OCPC attorney, she was able to place post-complaint orders for Kaizen products, including those alleged to infringe the patents-in-suit, from the linked nutrition store. (D.I. 19, Ex. 3) The orders were made from a Delaware computer [*9] and she

received the products in Delaware. The attorney states that she was able to buy a nationally distributed magazine at a Delaware bookstore that contained advertisements for Kaizen products. She was also able to purchase, in person, noninfringing Kaizen products from a Delaware store. She states that the owner of the store told her that he has received solicitations to sell the entire line of Kaizen products. OCPC plans to call the Delaware store owner as a third party witness.

In response, Kaizen urges the court to strike the declaration as it contains impermissible double hearsay. (D.I. 20) However, even if it were considered, Kaizen contends it does not establish that Kaizen conducts business in Delaware or sells the accused products here. Moreover, the fact that Kaizen's website describes its operations as "world-wide" still does not establish any business relationship with anyone in Delaware. Kaizen also argues that any problems with having third party witness testifying in California, can be solved by taking the depositions elsewhere.

Since the parties do not dispute that this action could have been initiated in the Central District of California, an examination of the [*10] private issues implicated by a transfer is warranted. The court finds the balance of private factors weighs in favor of transfer. The record reflects that neither litigant has ties to Delaware. Geographically, Delaware is inconvenient to everyone. All witnesses, documents and employees are located outside of this forum. Although Kaizen may describe itself as a world-wide operation, there has been nothing presented to corroborate this apparent embellishment.

With regard to compulsory process problems, OCPC indicates that a Delaware store owner will be called as a trial witness. However, it has not established that this individual will be unwilling to testify outside of Delaware. Absent a demonstrable obstacle to obtaining personal jurisdiction over a third-party witness, the court declines to consider this as a problem.

Turning to the public interests, the court finds the practical considerations related to trial weigh in favor a transfer. As noted, the expense of trial in Delaware will weigh more heavily on Kaizen. Regardless of the forum, OCPC will incur travel expenses. A transfer to California would eliminate rather than merely shifting the travel expense of one party. See [*11] Van Dusen v. Barrack, 376 U.S. 612, 646, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964).

The court is likewise confident that the Central District of California is well-equipped to decide the issues implicated by this case, regardless of the pendency of OCPC's other infringement actions. Further, considering Kaizen is a California corporation conducting business therein, that forum has a more

2003 U.S. Dist. LEXIS 988

particular interest in the litigation than Delaware. Accordingly, for the reasons stated, this action is transferred to the Central District of California.

Sue L. Robinson

United States District Judge