**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

TEXTRON INNOVATIONS INC.,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀C. A. No. 05-486 (GMS)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
THE TORO COMPANY,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Defendant.⠀⠀⠀⠀⠀⠀)

**PLAINTIFF TEXTRON INNOVATIONS INC.'S**
**BRIEF IN OPPOSITION TO MOTION TO TRANSFER VENUE**

THE BAYARD FIRM

OF COUNSEL:

Edmond D. Johnson (#2257)
ejohnson@bayardfirm.com
Scott L. Robertson                    Peter B. Ladig (#3513)
Christopher C. Campbell               pladig@bayardfirm.com
Hunton & Williams LLP                 222 Delaware Avenue, Suite 900
1900 K Street, N.W.                   P.O. Box 25130
Washington, D.C. 20006-1109           Wilmington, Delaware 19899
Telephone:  (202) 955-1500            (302) 655-5000
                                      Attorneys for Plaintiff Textron Innovation Inc.


Dated:  August 30, 2005

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ...................................................................................................1

II. FACTUAL BACKGROUND ...................................................................................2

    A.  The Parties ...................................................................................................2

    B.  The Patents In Suit.......................................................................................3

    C.  Procedural History .......................................................................................4

III. ARGUMENT ..........................................................................................................5

    A.  The Court Should Transfer Venue Only When The Balance Of Factors
        Weighs Strongly In Favor Of Transfer ........................................................6

    B.  TII Is Not Subject To Personal Jurisdiction In The Proposed Transferee
        Forum............................................................................................................7

    C.  The Court Should Allow TII's "First-filed" Action To Proceed; Toro's
        "Second-Filed Action" Provides No Basis For Transfer ...........................9

    D.  The Statutory Factors And "Private Interests" Do Not Weigh Strongly In
        Favor Of Transfer .......................................................................................12

        1.  TII's forum choice is rational and legitimate, and must be given
            paramount consideration...................................................................12

        2.  Toro is a Delaware corporation with $1.6 billion in sales annually, and
            it will not suffer any unique or unexpected burden in litigating in this
            Court. ................................................................................................13

        3.  The books and records of the parties can be readily produced in this
            forum.................................................................................................14

        4.  The parties' witnesses are presumed able and willing to appear in
            Delaware, and therefore carry no weight in the venue analysis. ...............15

        5.  No other private interests or statutory factors weigh in favor of
            depriving TII of the paramount consideration to which its forum
            choice is entitled. ..............................................................................16

        6.  Important third party witnesses reside outside the subpoena power of
            the transferee forum..........................................................................17

            a.  The inventors of the patents-in-suit reside outside the subpoena
                power of the transferee forum..........................................................17

            b.  The alleged prior art witnesses reside outside the subpoena
                power of the transferee forum..........................................................18

            c.  Toro's "former employees" do not merit transfer to Minnesota....21

E.      The Public Interests Do Not Strongly Favor Transfer ............................................23

    1.      Purported docket congestion does not merit transfer of this action to Minnesota.................................................................................................23

    2.      There is no strong local interest in litigating this matter in Minnesota. ....24

IV.      CONCLUSION.........................................................................................................25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Affymetrix, Inc. v. Synteni, Inc.,*
   28 F. Supp.2d 192 (D. Del. 1998)..............................................................................passim

*Apple Computer, Inc. v. Unova, Inc.,*
   2003 WL 22928034 (D. Del. Nov. 25, 2003) ..................................................................6, 13

*France Telecom S.A. v. Novell, Inc.,*
   2002 U.S. Dist. LEXIS 19966 (D. Del. Oct. 17, 2002) ......................................13, 14, 18, 24

*Genentech v. Eli Lilly & Co.,*
   998 F.2d 931 (Fed. Cir. 1993) ..........................................................................................9, 12

*Jones Pharma, Inc. v. KV Pharmaceutical Co.,*
   2004 WL 323109 (D. Del. Feb. 17, 2004)....................................................................passim

*Mentor Graphics Corp. v. Quickturn Design Sys., Inc.,*
   77 F. Supp.2d 505 (D. Del. 1999)........................................................................................9, 24

*Motorola, Inc. v. PC-Tel, Inc.,*
   58 F. Supp.2d 349 (D. Del. 1999)............................................................................................13

*Polymer Industr. Prods. Co. v. Bridgestone/Firestone, Inc.,*
   347 F.3d 935 (Fed. Cir. 2003) ...................................................................................................5

*Stratos Lightwave, Inc. v. E20 Communications, Inc.,*
   2002 WL 500920 (D. Del. March 26, 2002) ..........................................................................12

*Toro Co. v. Textron, Inc.,*
   499 F. Supp. 241 (D. Del. 1980)..............................................................................................14

*Truth Hardware Corp. v. Ashland Prods., Inc.,*
   2003 U.S. Dist. LEXIS 409 (D. Del. Jan. 13, 2003)................................................................7

*Tuff Torq Corp. v. Hydro-Gear Ltd. Partnership,*
   882 F. Supp. 359 (D. Del. 1994)..........................................................................................7, 14

*Wilton v. Seven Falls Co.,*
   515 U.S. 277 (1995)....................................................................................................................9

*Zumbro, Inc. v. California Natural Prods.,*
   861 F. Supp. 773 (D. Minn. 1994).............................................................................................8

**Statutes**

28 U.S.C. § 1404(a) ...............................................................................................1, 4, 6, 7

## I.    INTRODUCTION

Plaintiff Textron Innovations Inc. ("TII") respectfully requests that the Court deny defendant The Toro Company's ("Toro") motion pursuant to 28 U.S.C. § 1404(a) to transfer venue of this action to the District of Minnesota.[1]  Both TII and Toro are Delaware corporations and should reasonably expect to litigate in this forum.  Indeed, Toro has previously sued Textron, Inc., TII's parent company, for patent infringement in this forum, without any apparent inconvenience.[2]  Toro's motion constitutes a classic attempt to impose all of the inconvenience of this litigation upon TII, which has no contacts with Minnesota and is not even subject to personal jurisdiction in that forum.  In addition, Toro's filing of a retaliatory "second-filed" action against TII in Minnesota — one day before Toro filed the instant motion — provides no basis for transfer.

Under settled law in this jurisdiction, TII's decision to file suit in this forum is entitled to "paramount consideration," and transfer should occur only if the balance of factors strongly weighs in favor of transfer.  That is not the case here, where numerous key third-party witnesses do not live within the subpoena power of the proposed transferee court, including the inventors of the patents-in-suit, and alleged "prior art" witnesses that Toro identified prior to the filing of this lawsuit.

---

[1] On Friday, August 19, 2005, Defendant The Toro Company ("Toro") belatedly filed a statement pursuant to Local Rule 7.1.1 with respect to this motion.  Toro's statement represents that it "raised and discussed the need to transfer this case with Plaintiff's counsel …."
     In response to Toro's statement, TII responds that the parties never met and conferred with respect to Toro's motion, and Toro did not request that Textron agree to transfer venue of the case as requested in Toro's motion.  Indeed, Toro did not disclose that it intended to move the Court to transfer venue of this action.

[2] *See, e.g., Toro Co. v. Textron, Inc.,* 499 F. Supp. 241 (D. Del. 1980) (patent infringement action brought by Toro against Textron, Inc. for infringement of Toro patents relating to snow throwers).

As to the parties and their witnesses, transfer will simply shift the inconvenience of litigation from Toro to TII. None of the facts alleged by Toro warrant depriving TII of the paramount consideration to which its forum choice is entitled, nor do they suffice to meet Toro's heavy burden to show that the facts strongly weigh in favor of transfer.

## II.    FACTUAL BACKGROUND

### A.    The Parties

As Toro concedes, both of the parties to this litigation are Delaware corporations. Toro Brf. at 3-4. TII is the plaintiff and assignee of the patents in suit. TII is a Delaware corporation with its headquarters in Rhode Island. Declaration of James P. Runstadler ("Runstadler Decl."), ¶¶ 2-3. As discussed *infra*, TII does not maintain any presence in the proposed transferee forum of Minnesota. *Id.*, ¶ 4. Thus, it does not maintain any offices or employees there. *Id.* It does not manufacture or sell products within the State of Minnesota. In fact, TII has no connection at all with Minnesota, the forum to which Toro proposes to transfer the case.

Toro is a Delaware corporation, which maintains its headquarters in Bloomington, Minnesota. Toro Brf. at 3. Toro states that it manufactures the accused products in Tomah, Wisconsin. *Id.* Toro is a public corporation that claims $1.6 *billion* in sales annually, and describes itself as "a leading provider of outdoor maintenance and beautification products for home, recreation, and commercial landscapes around the world." Declaration of David M. Young, Esq., ("Young Decl."), ¶ 2 (attaching Toro press release).[3] Toro asserts that it provides "commercial maintenance equipment, irrigation systems and superior local support ... to golf courses worldwide. *Id.* Toro's press release also shows that in addition to selling its outdoor

---

[3] Toro's brief states that Toro sells "a small fraction of its products" in Delaware. Toro Brf. at 3. However, Toro, which has $1.6 billion in sales annually, does not suggest that its Delaware sales are disproportionately low compared to those made in any other state, including Minnesota.

maintenance products across the nation, Toro promotes its products and services by providing them to high-profile international events such as Wimbledon, various Athens Olympic facilities, all outdoor Super Bowl venues, soccer's World Cup, the U.S. Open, the Rose Bowl, and the Indianapolis 500. *Id.*

And as for its connections with Delaware, in addition to the fact that it is incorporated here, and in addition to the considerable sales it must enjoy here (including sales of the accused infringing products), Toro's web site discloses a distributor within this forum at Frankford, Delaware, and several others nearby. *Id.,* ¶ 3. A recent "Toro Advantage" brochure even touts a golf course superintendent in Dagsboro, Delaware who praises Toro's "National Support Network," an around-the-clock resource that Toro provides for its customers which Toro alleges "set[s] the standard for quality customer care," and which is "always there for you, any time." *Id.,* ¶ 4 at 6-7.

### B.    The Patents In Suit

TII is the assignee of the three patents-in-suit in this case, U.S. Patent Nos. 6,047,530 ("the '530 Patent"), 6,336,311 ("the '311 Patent"), and 6,336,312 ("the '312 Patent") (collectively, the "patents-in-suit"). The '530 and '311 Patents were invented by Mr. Richard Bednar, a former employee of Ransomes, Inc., a Textron entity. The '312 Patent was invented by Mr. Bednar and Mr. Randal Knurr, another former Ransomes employee. As set forth *infra,* neither of the inventors of the TII patents are currently employed by TII. Neither of them reside within the subpoena power of the proposed transferee forum in Minnesota. However, both of the two inventors have agreed to appear in the District of Delaware for their deposition and for trial and waive any challenge to a subpoena issued from this Court based on the 100-mile limit of Rule 45. *See* Declaration of Randal Knurr ("Knurr Decl."), ¶¶ 5-6; Declaration of Richard Bednar ("Bednar Decl."), ¶¶ 5-6.

The TII Patents are directed to a gang type rotary mower used to cut golf course roughs. An example of a mower and cutting deck disclosed in the Textron Patents are depicted in Figure 1 (top view of mower and cutting decks) and Figure 2 (close-up view of cutting deck), reproduced *infra* at page 11.

As discussed *infra,* one day before filing this motion, Toro filed a separate action in Minnesota against Textron, Inc. and Jacobsen, a division of Textron, Inc., accusing those entities of infringing two Toro patents, both relating to an "all wheel hydraulic drive system," claimed in a patent issued in 1996, U.S. Patent No. 5,533,325 (the "Toro '325 patent"), and a 1998 patent, U.S. Patent No. 5,715,664 (the "Toro '664 patent") (collectively, "the Toro patents").

In the Minnesota action, Toro contends that the "Groom Master II" product made or sold by Textron or Jacobsen infringes the claims of these patents. The Toro patents, in contrast to the TII patents asserted in this action, are directed to a hydraulic drive system for a riding mower used to cut golf course fairways and greens. The Toro patents assert that the primary advantage of the inventions is a hydraulic circuit in which the entire pressurized fluid flow from a hydraulic pump will always pass through a rear drive motor before passing through the motors. *See infra* at 12. Thus, this case presents different patents on different areas of technology, different inventors, different prior art, and different accused products from those involved in the Minnesota action.

### C.    Procedural History

TII filed this action on July 12, 2005, and served Toro on July 13. The parties stipulated to an extension of time for Toro to respond until August 16, 2005. On that date, Toro did not answer, but simply moved that the Court transfer this action on grounds of inconvenience pursuant to 28 U.S.C. § 1404(a).

599628v1

With its motion, Toro alleged that on August 15, one day before filing its motion, it filed a "mirror image" action against TII in the District of Minnesota, alleging that it does not infringe TII's patents, and/or that the patents are invalid.[4] At the time of filing its motion, Toro had not served TII with the complaint in the Minnesota action.

Toro's Minnesota action also asserted claims of patent infringement against two other parties that are not parties to this action, Textron, Inc., and Jacobsen - a division of Textron, Inc. As noted above, with respect to these claims, an entirely different set of accused products and two different patents are at issue.

## III.    ARGUMENT

This Court should deny Toro's motion to transfer this action to Minnesota, a forum with which plaintiff TII has no connection and *is not even subject to personal jurisdiction*. Moreover, Toro's filing of a "second-filed" action in Minnesota one day prior to filing the instant motion provides no basis for transfer.

Under the well-settled law of this Court, a transfer to Minnesota is not warranted. Both of the parties to this action are Delaware corporations who should reasonably expect to litigate here, and Toro has availed itself of this forum before, apparently without any undue inconvenience.

Unfortunately, this may be a case in which there is no one forum that is "convenient" for both parties. However, that is an insufficient reason to deprive TII of the paramount consideration to which its choice of forum is entitled, particularly when this forum is one in which both parties are incorporated. None of Toro's allegations with respect to alleged third

_____

[4] Of course, this "mirror-image" declaratory judgment action on these same patents is a compulsory counterclaim in the Delaware action. *See Polymer Industr. Prods. Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935, 938-39 (Fed. Cir. 2003).

party witnesses merit transfer. In fact, numerous important third-party witnesses likely reside

outside the subpoena power of the Minnesota forum.

### A.    The Court Should Transfer Venue Only When The Balance Of Factors Weighs Strongly In Favor Of Transfer

The federal venue statute provides that, "[f]or the convenience of parties and witnesses,

in the interest of justice, a district court may transfer any civil action to any other district or

division where it might have been brought." 28 U.S.C. § 1404(a). "When determining whether

transfer is warranted, district courts must balance all of the relevant factors and respect that a

plaintiff's choice of forum is entitled to substantial deference and should not be lightly be

disturbed when it is due to legitimate, rational concerns." *Jumara v. State Farm Ins. Co.,* 55

F.3d 873, 883 (3d Cir. 1995); *Apple Computer, Inc. v. Unova, Inc.,* 2003 WL 22928034, *1 (D.

Del. Nov. 25, 2003). "The burden is upon the movant to establish that the balance of the

interests strongly weighs in favor of transfer, and a transfer will be denied if the factors are

evenly balanced or weigh only slightly in favor of the transfer." *Apple Computer,* 2003 WL

22928034, at *1. *See also Jones Pharma, Inc. v. KV Pharmaceutical Co.,* 2004 WL 323109, *1

(D. Del. Feb. 17, 2004) ("Unless the movant demonstrates that the balance of conveniences

*strongly* favors transfer, plaintiff's forum choice should prevail.") (emphasis added).

The statutory criteria include the convenience of the parties and witnesses, and the

interests of justice. *Jumara,* 55 F.3d at 879. The Third Circuit has not limited itself to the

factors listed in Section 1404(a), but also requires courts to consider the private and public

interests protected by Section 1404. *Id.; Jones Pharma,* 2004 WL 323109, at *1. The private

interests include:

> plaintiff's forum preference as manifested in the original choice,
> the defendant's preference, whether the claim arose elsewhere, the
> convenience of the parties ..., the convenience of the witnesses --
> but only to the extent that the witnesses may actually be

> unavailable for trial in one of the fora, and the location of books
> and records (similarly limited to the extent that the files could not
> be produced in the alternative forum).

*Jumara,* 55 F.3d at 879 (citations omitted).[5]

The public interests include "the enforceability of the judgment, practical considerations that could make the trial easy, expeditious, or inexpensive, the relative administrative difficulty in the two fora resulting from court congestion, the local interest …, [and] the public policies of the fora." *Id.* (citations omitted).

### B.    TII Is Not Subject To Personal Jurisdiction In The Proposed Transferee Forum

The threshold requirement of Section 1404(a) limits transfer only to another district or division where the action "might have been brought." 28 U.S.C. § 1404(a); *Tuff Torq Corp. v. Hydro-Gear Ltd. Partnership,* 882 F. Supp. 359, 361 (D. Del. 1994). "If the Court answers this question in the negative, then its inquiry ends." *Affymetrix, Inc. v. Synteni, Inc.,* 28 F. Supp.2d 192, 196 (D. Del. 1998).

While TII would have been able to bring this action in the District of Minnesota in the sense that Toro would have been subject to jurisdiction there, it would be anomalous and unfair to transfer the action to that forum because TII has no connection with Minnesota and is not even subject to personal jurisdiction there. In other words, by transferring this action to Minnesota, the Court would be requiring TII to litigate its case in a forum in which Toro could not even obtain jurisdiction over TII. This Court has recognized the obvious unfairness of such a transfer. *Tuff-Torq,* 882 F. Supp. at 361 (denying transfer under this circumstance, and stating "[b]y

---

[5] Typically, this Court's analysis collapses the first three of these private interests into other portions of the *Jumara* analysis, and therefore considers them in the context of the entire inquiry only. *Truth Hardware Corp. v. Ashland Prods., Inc.,* 2003 U.S. Dist. LEXIS 409, *2 n.2 (D. Del. Jan. 13, 2003).

transferring the case to Iowa, therefore, this Court would not only be disregarding the plaintiff's choice of forum, but would be forcing [plaintiff] to litigate in a forum where [it] could not have been sued in the first instance"). TII has, concurrently with filing this brief, moved that the District Court of Minnesota dismiss TII from Toro's second-filed action in that Court on grounds that it lacks personal jurisdiction over TII.

While TII appreciates that this Court may feel compelled not to prejudge the Minnesota court's determination of the jurisdictional issue, there is simply no dispute over TII's lack of connection with the transferee forum. *See, e.g., Zumbro, Inc. v. California Natural Prods.,* 861 F. Supp. 773 (D. Minn. 1994) (applying Minnesota long-arm statute and finding that Court lacked personal jurisdiction over out-of-state patent holder in declaratory judgment action brought by alleged infringer). With its motion in the Minnesota court, TII has set forth in an affidavit that it does not sell or manufacture any products in Minnesota, and it does not maintain an office or any employees in Minnesota. As noted *supra,* TII is incorporated in Delaware, and its only office and employees are in Rhode Island. Runstadler Decl., ¶¶ 2-4. An affidavit identical to that filed with the Minnesota court is also submitted with this motion.

And notably, Toro's complaint against TII in Minnesota does not allege any jurisdictional facts against TII, except to state in conclusory fashion that the Court has personal jurisdiction over all of the Defendants, "by virtue of, *inter alia,* their continuous and systematic contacts with Minnesota." Toro Exhibit C at ¶ 11. As the Court will see, Toro asserts no facts in support of this allegation.

Indeed, the patent holder in *Zumbro* had considerably more contact with Minnesota than TII does here, and still the Court in that case concluded that it was not subject to personal jurisdiction. *See id.* at 776 (noting that the patent holder sold products in Minnesota that were

covered by another of its patents, attended a trade convention in Minnesota, sent product

literature and samples to Minnesota, advertised in journals distributed in Minnesota, and utilized

a computerized mailing list that included over seventy-five persons and businesses located in

Minnesota).

**C.    The Court Should Allow TII's "First-filed" Action To Proceed; Toro's "Second-Filed Action" Provides No Basis For Transfer**

One day before Toro filed this motion, it initiated a retaliatory "second-filed" lawsuit in

the transferee forum. Toro's second-filed action contained a mirror image claim for declaratory

judgment against TII, alleging that the patents-in-suit in this case are invalid and/or not infringed

by Toro.

Toro now contends that the existence of this second-filed action provides a compelling

basis for transfer. It does not. As this Court has previously stated, "*[a] patent infringement*

*defendant should not be able to strengthen its case for transfer by the simple expedient of*

*filing a declaratory judgment action in the forum of its choice.*" *Mentor Graphics Corp. v.*

*Quickturn Design Sys., Inc.,* 77 F. Supp.2d 505, 513 (D. Del. 1999) (emphasis added) (and

refusing to give "any weight whatsoever" to mirror image action filed by defendant). Where two

patent lawsuits involving the same claims are filed in different jurisdictions, the Federal Circuit

requires that the first-filed action be given preference absent special circumstances. *Genentech*

*v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed. Cir. 1993), *abrogated on other grounds, Wilton v.*

*Seven Falls Co.,* 515 U.S. 277 (1995). Thus, "[t]here must ... be sound reason that would make

it unjust or inefficient to continue the first-filed action" in order to give deference to the second-

filed action. *Genentech,* 998 F.2d at 937.

No "special circumstances" exist that merit departure from the first-filed rule in this case.

To the contrary, it is evident that Toro's second-filing of a lawsuit in Minnesota only one day

prior to its filing of the instant motion was simply a strategem intended to buttress its weak

venue arguments.

Further, the additional issues presented by Toro's second-filed action, *viz.,* the allegations

that Textron, Inc. and Jacobsen infringe Toro's patents, do not relate to the issues in this action.

As such, these separate allegations provide no basis for transfer and should not be given any

weight. *Cf. Affymetrix,* 28 F. Supp.2d at 207 (Court afforded little weight to existence of

another pending action where, although involving the same patented technology, concerned

different accused products).

The TII Patents are directed to a so-called gang type rotary mower used to cut golf course

roughs. An example of the mower and cutting deck disclosed in the Textron Patents are depicted

for example in Figure 1 (top view of mower and cutting decks) and Figure 2 (close-up view of

cutting deck), reproduced below.



The mower depicted in Figure 1 (a top view looking down on the mower) in the TII Patents

includes three forward cutting decks 34 positioned in a front row 26 and two rear cutting decks

34 positioned in a rear row 30. The cutting decks in the front row 26 — three are shown in

Figure 1 — have gaps between them. And the cutting decks in the rear row 30 — two are shown

in Figure 1 — have gaps between them. The cutting decks in the rear row 30 are positioned

between the wheels 14, 16 and are aligned with the gaps between the decks in the front row 26.

A rear roller 58 (*see* Figure 2) extends across substantially the entire width of the cutting decks.

     In the Minnesota action, Toro contends that the "Groom Master II" product made or sold

by Textron or Jacobsen infringes the claims of Toro's patents. The Toro Patents, in contrast to

the TII patents asserted in this action, are directed to a hydraulic drive system for a riding mower

used to cut golf course fairways and greens.



FIG. 1                        FIG. 2

The mower 2 in the Toro patents, shown in Figure 1 above, includes independently hydraulically

driven wheels, two in front designated as 8, 8 and one in the rear designated as 10. The

purported novelty of the Toro patents resides in the hydraulic drive system 20 (Figure 2), which

has individual hydraulic drive motors applied to each of the three wheels of the vehicle. As seen

in Figure 2, the drive motor for the rear wheel 10 is illustrated as 30 and the drive motor for each

front wheel 8 is illustrated as 32. The primary advantage of the hydraulic circuit shown in Figure

2 is that the entire pressurized fluid flow from hydraulic pump 24 will always pass through the

rear drive motor 30 before passing through the motors 32, 32, which are positioned in parallel.

     Toro attempts to confuse the issues by contending that "the key products at issue in both

cases are large commercial turf maintenance tractors." Toro Brf. at 2-3. Toro's argument is akin

to suggesting that patents for intermittent windshield wipers and those pertaining to anti-lock brakes implicate the same issues, documents, and witnesses, since they both relate in some way to automobiles.

In fact, there will be two completely different sets of accused products in the two actions. In the Delaware action, Toro's products are accused of infringing TII's patents; in the Minnesota action, Textron and Jacobsen's products are accused of infringing Toro's patents. Toro's assertion that "many of the same witnesses, documents, evidence, and experts will be involved in both cases", Toro Brf. at 17, is simply *ipse dixit.* The two cases involve different patents, different prior art, different accused products, and different witnesses. Indeed, Toro's submissions do not demonstrate that any of the alleged witnesses it has identified have any knowledge of the Toro patents asserted in the Minnesota action, the prior art relating to those patents, or the Textron products accused of infringement by Toro in Minnesota.

Accordingly, this Court should follow the first-filed rule of *Genentech* and allow this action to proceed before this Court.

### D. The Statutory Factors And "Private Interests" Do Not Weigh Strongly In Favor Of Transfer

#### 1. TII's forum choice is rational and legitimate, and must be given paramount consideration.

Both of the parties to this action are incorporated in Delaware, and should reasonably expect to litigate here. Ordinarily, this Court gives "paramount consideration" to plaintiff's choice of forum. *Jones Pharma,* 2004 WL 323109, *2. Moreover, *"[a] corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state." Id.* (emphasis added) (citing *Stratos Lightwave, Inc. v. E20 Communications, Inc.,* 2002 WL 500920, *2 (D. Del. March 26, 2002)).

599628v1

-12-

Thus, in a case in which both parties were incorporated in Delaware but had their principal places of business in Missouri, this Court held that the plaintiff's decision to litigate in Delaware was "rational and legitimate" and its forum choice was entitled to "paramount consideration." *Jones Pharma,* 2004 WL 323109, at *2. *See also Apple Computer,* 2003 WL 22928034, at *5 (where parties were incorporated in Delaware but were predominantly located closer to California, Court denied transfer and held that "[plaintiff] is entitled to deference on its choice of forum."); *Truth Hardware,* 2003 U.S. Dist. LEXIS 409, at ** 3-4 (stating "[plaintiff] and [defendant] are Delaware corporations and should reasonably expect to litigate in the forum," and denying motion to transfer even though litigation regarding a related patent was already pending in the transferee forum); *France Telecom S.A. v. Novell, Inc.,* 2002 U.S. Dist. LEXIS 19966, *4 (D. Del. Oct. 17, 2002) ("defendant ... and the plaintiff ... are Delaware corporations and should reasonably expect to litigate in the forum").

> **2. Toro is a Delaware corporation with $1.6 billion in sales annually, and it will not suffer any unique or unexpected burden in litigating in this Court.**

This Court holds that a defendant seeking to transfer venue "must be able to identify some unique or unexpected burden associated with defending this action that militates in favor of transfer." *Motorola, Inc. v. PC-Tel, Inc.,* 58 F. Supp.2d 349, 358 (D. Del. 1999); *accord Affymetrix,* 28 F. Supp.2d at 202. In considering whether such a burden exists, this Court has recognized that "in this age of vastly improved communications and transportation capabilities, the costs of litigating in a distant forum are greatly reduced," and that pre-trial discovery such as depositions need not occur in Delaware. *Motorola,* 58 F. Supp.2d at 358, n.12. Where a defendant is a multi-million dollar company (such as Toro) with interests, activities, and targeted markets extending well beyond its home forum, its relative economic burden of litigating in Delaware is minimal. *Id.* at 358. Indeed, Toro itself has availed itself of this forum in order to

litigate its own patent infringement claims against Textron, Inc.  *See Toro Co. v. Textron, Inc.,*

499 F. Supp. 241 (D. Del. 1980).

Toro cannot reasonably claim to be unduly burdened by litigating this action in Delaware,

and in fact, it does not attempt to present such an argument.  Certainly, it cannot be said that

litigating this action in this Court will place a "significant and onerous burden" on either party.

*Jones Pharma,* 2004 WL 323109, at *2.  *See also Affymetrix,* 28 F. Supp.2d at 202 (where

defendant was a multi-million dollar corporation with interests and activities spanning the globe,

"[l]itigating in Delaware should not impose an undue financial burden"); *France Telecom,* 2002

U.S. Dist. LEXIS 19966, at *4 (fact that parties were large national and international

organizations with apparently substantial assets militated against transfer).  And like the

defendant in *Jones Pharma,* "[Toro] chose to avail itself of the laws of Delaware, it may not

complain because [TII] decided to sue it in this state."  *Jones Pharma,*  2004 WL 323109, at *2.

As this Court stated in *Tuff Torq:*

> [Defendant] is a Delaware Corporation … and as a corporate
> citizen of Delaware, both the corporation and its managers must
> anticipate the possibility of being hauled into court here."  *Waste
> Distallation,* 775 F. Supp. at 766; *see also Critikon Inc. v. Becton
> Dickinson Vascular Access,* 821 F. Supp. 962, 965 (D. Del. 1993)
> ("The fact that [defendant] incorporated in Delaware should not be
> regarded lightly.  By incorporating in Delaware it can be assumed
> that [defendant] desired the benefits it believed Delaware
> provides….  [Defendant] chose Delaware as its legal home and
> should not now complain that another corporation has decided to
> sue [it] there.").

*Tuff Torq,* 882 F. Supp. at 363

### 3.     The books and records of the parties can be readily produced in this forum.

There is no contention that there are any books or records of the parties that cannot be

produced in Delaware.  *See Jumara,* 55 F.3d at 879 (court should consider location of books and

records only to extent that the files could not be produced in the alternative forum.).  Toro

represents that its "corporate employees, engineers, books and records are located in Minnesota,"

and that its "research, design, development, sales and marketing departments for the accused

products are also located in Minnesota." Klis Decl. ¶ 6.[6]  However, Toro does not suggest that it

cannot produce its documents in Delaware.  Moreover, while Toro's books, records, and other

documents may be located outside of Delaware, likewise, none of TII's books, records, and

documents, are located in Minnesota.  Runstadler Decl., ¶¶ 2-6.  TII's documents are located

primarily in Rhode Island.  *Id.*, ¶ 2.  Thus, again, Toro proposes simply to shift the

inconvenience of litigation to TII.  Thus, this factor weighs against transfer.

> **4.    The parties' witnesses are presumed able and willing to appear in Delaware, and therefore carry no weight in the venue analysis.**

Likewise, it is presumed that the witnesses for both Toro and TII are willing to testify at

trial in this forum.  *Affymetrix,* 28 F. Supp.2d at 203 ("Party witnesses or witnesses who are

employed by a party *carry no weight* in the 'balance of convenience' analysis since each party is

able, indeed, obligated to procure the attendance of its own employees for trial.") (emphasis

added).  Thus, although Toro contends that its party witnesses will likely be located in

Minnesota, this does not weigh in favor of transfer.  Indeed, as established with the declarations

accompanying this brief, TII's party witnesses all reside far from the transferee forum —

primarily in Rhode Island — and thus again, transfer would serve only to shift the inconvenience

of litigation to TII.  Runstadler Decl., ¶ 2.

---

[6] Toro concedes that its manufacturing facility for the accused products is in Tomah, Wisconsin.

**5.    No other private interests or statutory factors weigh in favor of depriving TII of the paramount consideration to which its forum choice is entitled.**

Toro contends that Minnesota is the most convenient forum to litigate because "[t]he primary location of the events giving rise to the suit occurred in Minnesota — the location were [sic] the accused products are designed, developed, and sold." Toro Brf. at 10. Of course, nearly every accused patent infringement defendant seeking to transfer venue makes this argument because, if accepted, it would almost always result in transferring venue to the defendant's home forum. It is not the rule. Indeed, this Court has repeatedly stated that simply because the defendant's employees, books, and records are maintained in the proposed transferee forum carries no weight in the transfer analysis.[7] *Jones Pharma,* 2004 WL 323109, *2. Rather, the rule followed by this Court is that the plaintiff's choice of venue is to be given "paramount consideration," particularly where — as here — the plaintiff's choice is made for rational and legitimate reasons, such as the fact that both parties are incorporated here. *Id.*

Finally, Toro contends that the Court should transfer the action to Minnesota because such transfer will allow Toro to save the expense of retaining local counsel. The short answers to this argument are, first, having availed itself of Delaware law by incorporating in this State, it is not unreasonable for Toro to expect to litigate here and occasionally incur the expense of local counsel. Indeed, Toro elected to sue Textron for infringement in this State. Second, while transfer to Minnesota might save Toro the costs of local counsel, transfer would not save TII any costs. Thus, Toro again seeks to shift the inconvenience of litigation to TII, an insufficient basis for transfer.

---

[7] Toro makes a fleeting argument that it will be difficult to transport one of its accused infringing tractors to Delaware, if necessary. However, Toro does not explain why this possibility presents such difficulty, considering that Toro distributes the tractors for sale to golf courses nationwide. Toro Brf. at 11, nn. 5, 6.

**6.    Important third party witnesses reside outside the subpoena power of the transferee forum.**

While Toro contends that there are several third-party witnesses within the proposed

transferee forum, that does not appear to be the case. The inventors of the patents-in-suit, and

Toro's alleged prior art witnesses reside outside the subpoena power of that Court. Moreover,

the Court should look with considerable skepticism upon Toro's implicit contention that it will

have to rely upon two former employees and a semi-retired consultant in order to provide

evidence of its non-infringement contentions in this case. Toro's proffer of "retired employees"

as witnesses is an obvious artifice constructed in response to this Court's holdings that party

witnesses do not weigh in the transfer analysis. Thus, Toro's brief suggests that it is going to

rely upon retired (and, therefore presumably "third party") employees rather than its current

employees to testify to the design of its accused products. This argument is not credible, and

should be rejected.

**a.    The inventors of the patents-in-suit reside outside the subpoena power of the transferee forum.**

Toro acknowledges that the inventors of the patents-in-suit are likely to be important

third party witnesses. However, neither of the inventors of the patents-in-suit resides within the

District of Minnesota, or within its subpoena power. Neither of the inventors are current

employees of either party in this action.

Mr. Bednar, the sole inventor of two of the patents-in-suit and a co-inventor of the third,

is employed by a third party in Nebraska and is in the process of moving his permanent residence

from Lake Mills, Wisconsin to Beatrice, Nebraska, both which are outside the subpoena power

of the proposed transferee forum. Bednar Decl., ¶ 3. Mr. Bednar has represented to this Court in

a sworn declaration that he is willing to appear voluntarily in Delaware for deposition and trial,

notwithstanding that he does not reside within this forum. *Id.,* ¶¶ 5-6.

599628v1

-17-

Likewise, the co-inventor of the '312 Patent, Mr. Randal Knurr, resides and works in

Waterford, Wisconsin, a suburb of Milwaukee, well outside the subpoena power of the proposed

transferee forum. Knurr Decl., ¶ 3. As with Mr. Bednar, Mr. Knurr has filed a declaration with

this Court stating that he is willing to appear in this district for a deposition and trial. *Id.*, ¶¶ 5-6.

In *Truth Hardware,* this Court held that where non-party witnesses did not reside in

either the forum or the proposed transferee forum and would have to travel regardless where the

action proceeds, the convenience of the non-party witnesses did not weigh in favor of transfer.

*Truth Hardware,* 2003 U.S. Dist. LEXIS 409, at *5. *Cf. France Telecom,* 2002 U.S. Dist.

LEXIS 19966, at *4 ("because the parties maintain geographically diverse headquarters, travel

time and convenience in the aggregate would be neither increased nor decreased substantially

with a transfer of forum"). Accordingly, consideration of the availability of the third-party

inventors weighs *against* transfer.

> **b.     The alleged prior art witnesses reside outside the subpoena
> power of the transferee forum.**

With its motion, Toro has produced a declaration from a golf course superintendent in

Inver Grove Heights, Minnesota, Mr. Glen Lentner, that Toro now suggests is a "probable" prior

art witness. Toro Brf. at 6. However, prior to the filing of this action, Textron and Toro

corresponded regarding the allegations in this case. Dec. of James Berkeley ("Berkeley Decl."),

¶ 4. At that time Toro identified to Textron a number of alleged "prior art" references that it

contended rendered the patents-in-suit invalid, but it never identified Mr. Lentner. *Id.*, ¶¶ 4-9.

Rather, all of the alleged prior art that Toro identified pertained to persons or alleged prior art

apparatuses outside of Minnesota and the range of its subpoena power.

For example, in a letter dated August 1, 2003, Toro's Group Vice President, Timothy A.

Ford provided a memo purporting to identify various allegedly invalidating prior art. The memo

supplied by Toro's Mr. Ford identified alleged prior art involving a "Nunes product brochure," which provided a location for Nunes Manufacturing in Patterson, California. *Id.*, ¶¶ 4-5. In addition, the Toro memo referenced information from employees of LESCO, pertaining to a mower that company allegedly showed at a golf show. *Id.*, ¶ 4. LESCO is a company with its headquarters in Ohio, outside of the subpoena range of the Minnesota court. *Id.*, ¶ 4.

Also, the memo cited a patent, the inventor of which is shown as residing in Schaumburg, Illinois. *Id.*, ¶ 5. And finally, the memo provided several purported brochures from various companies located in the United Kingdom. *Id.*

In a follow-up letter dated August 7, 2003, Toro's Division Counsel, R. Lawrence Buckley, wrote Textron to provide additional alleged prior art. *Id.*, ¶ 7. His letter referenced another "Nunes" brochure, which again showed that company as located in Patterson, California. *Id.* Mr. Buckley's letter also provided a U.K. patent issued to a British company, and he provided additional materials regarding the products of various companies, all of which are located in the United Kingdom. *Id.* Toro's Mr. Buckley concluded based on this alleged prior art, "I am firmly convinced that Textron's [patents] are invalid." *Id.* (attaching letter from Mr. Buckley).

Toro never identified Mr. Lentner, a golf course superintendent in Inver Grove Heights, Minnesota, as a person having knowledge of any relevant prior art. If Toro intends to rely upon any of the prior art it cited in its prior correspondence with such confidence, clearly, the evidence of this prior art comes from outside of the subpoena range of the Minnesota court, and from locations as far afield as California and the United Kingdom.[8]

---

[8] Moreover, Mr. Lentner contends that "[b]ased on [his] extensive *knowledge of the industry*, gang-type rotary mowers were used *extensively* to cut golf course roughs at least as early as July of 1991. [He] also believe[s] that *the industry has been familiar with* the use of

It is evident that Toro's present contention of Mr. Lentner as its key prior art witness is simply another artifice to persuade the Court to transfer venue, just like its second-filed action, and its reliance upon retired employees as "third party" witnesses, discussed *infra*.

The additional points raised by Mr. Lentner's declaration wholly fail to justify transfer. First, the notion that the parties could use Mr. Lentner's golf course in Minnesota to demonstrate the operation of the products at issue for the Court or jury is simply makeweight. Lentner Decl., ¶ 11; Toro Brf. at 12. Clearly, golf courses exist in and around Delaware, and there is no reason to expect that the use of one of those courses could not be obtained if such a demonstration proves necessary and appropriate.[9]

Second, Mr. Lentner claims that "[i]f Toro asked me to testify in Delaware, I believe I would decline." Lentner Decl ¶ 10. If Mr. Lentner's equivocal refusal to appear in Delaware is truthful, there is no reason why Toro cannot procure his deposition, or why other witnesses will not be capable of testifying as to the golf-course industry. And to the extent that Mr. Lentner might have to travel to Delaware for trial, this Court has previously held that the possibility of a three-hour flight from Illinois to Delaware is not "an onerous task warranting transfer." *Truth Hardware,* 2003 U.S. Dist. LEXIS 409, at *5.

---

gang-type rotary mowers to cut golf course roughs *for at least 14 years*." Lentner Decl., ¶ 6 (emphasis added). Of course, if Mr. Lentner's statements are accurate, one would scarcely expect him to be the only witness capable of testifying to these facts for Toro.

[9] Indeed, it is clear that golf courses in and around Delaware must already be using Toro's products. *See, e.g.,* Young Decl., ¶ 4 (attaching Exhibit C, article with testimonial from Delaware golf course superintendent).

Accordingly, the Court should give no weight to Toro's contention that the location of alleged third-party prior art witnesses merits transfer to Minnesota.

### c.   Toro's "former employees" do not merit transfer to Minnesota.

No doubt mindful of this Court's consistent holdings that party witnesses do not weigh in the convenience analysis, Toro contends that two of its retired employees and a semi-retired consultant are witnesses with respect to the design and development of its accused products. Although the witnesses do not contend that they have any knowledge of the patents-in-suit or whether or not Toro's accused products actually infringe those patents, presumably Toro would have the Court infer that these witnesses will be relevant to the non-infringement contentions Toro apparently intends to make in this case.

Because Toro asserts that these retired employees constitute "third parties," it argues that their presence in Minnesota compels transfer. However, it exceeds the bounds of credibility for Toro to suggest that it does not have current employees who are capable of testifying as to the design of their accused products. It is inconceivable that a sophisticated company such as Toro with $1.6 billion in annual sales and operations across the country has no current employees that are capable of testifying as to the design of its products. And in fact, Toro carefully avoids making any contention that the witnesses it identifies are its sole or even primary witnesses with respect to its non-infringement contentions. For all the Court knows, these individuals are three out of scores of individuals that presently work at Toro and that can testify about the design of the accused products.

For example, Toro identifies a former "shop mechanic," Mr. Dwaine Berger, now retired, whom Toro contends may be a witness. Mr. Berger represents that his mother has health problems, thereby rendering him unwilling to travel to Delaware. Toro does not contend that no

other person currently employed by Toro can testify about the design and development of its

gang-type mowers. Toro does not even contend that Mr. Berger is knowledgeable about design

changes to Toro's accused products that may have occurred in the last two years from the date of

his retirement in 2003 until the present, or whether he can even speak to the current design of the

accused products.

Similarly, Toro identifies Mr. James Swindal, an individual retired from Toro more than

five years ago. In a declaration that nearly verbatim tracks that of Mr. Berger, Mr. Swindal also

states that he is knowledgeable about the research and development of Toro's commercial turf

maintenance products. Mr. Swindal does not indicate that he has any knowledge of design

changes to Toro's accused products that may have occurred in the past five years from the date

of his retirement until the present, or the current design of the accused products. And as with

Mr. Berger, Toro does not and cannot reasonably contend that there are no current employees

that can testify as to the design and engineering of Toro's accused products.

As to the inconvenience to Mr. Swindal, Mr. Swindal simply states that it would be very

inconvenient for him to travel to Delaware, and he will "probably decline" to do so unless the

Court requires it. However, this Court has previously held that the mere possibility of a three-

hour flight from Illinois to Delaware is not "an onerous task warranting transfer." *Truth*

*Hardware,* 2003 U.S. Dist. LEXIS 409, at *5.

Finally, Toro identifies a third retired employee, Mr. Daniel Treu, who lives outside the

transferee forum and its subpoena power, in Alma, Wisconsin. However, while retired, Mr. Treu

states "I continue to do work for Toro on a consulting basis. In my consulting, I regularly visit

and conduct business at Toro's Bloomington, Minnesota facility." Treu Decl., ¶ 6. Accordingly,

the convenience of Mr. Treu should not weigh at all in the analysis, since he constitutes a party witness that the Court may presume will be willing to appear at Toro's behest.

Moreover, if it proved to be necessary, Mr. Treu could fly to Delaware in only slightly more time than the 2 hour one-way drive that he claims he "regularly" takes in order to consult for Toro in Bloomington, Minnesota. Treu Decl., ¶ 2, 6. It is simply not credible that Mr. Treu can *regularly* undertake a 2 hour one-way drive on Toro's behalf, but he cannot fly once to Delaware. And again, Toro makes no allegation that its other current employees cannot testify to the operation, testing, design, etc., of its accused products.

While TII believes that the declarations of Messrs. Berger, Swindal and Treu wholly fail to merit transfer, nonetheless, in order to alleviate any inconvenience at all to them, TII hereby represents that if it becomes necessary to depose these individuals, TII will agree to take their depositions in Minnesota.

Thus, there is no need to transfer this action to Minnesota for the convenience of third-party witnesses. Accordingly, consideration of this factor does not weigh in favor of transfer.

### E. The Public Interests Do Not Strongly Favor Transfer

#### 1. Purported docket congestion does not merit transfer of this action to Minnesota.

Contrary to Toro's contentions, none of the public interests provide a strong reason to transfer venue. First, the notion that the case will be tried more quickly in Minnesota than this Court is doubtful, and of minimal importance. While Toro contends that the length of time until trial is shorter in Minnesota (presumably, Toro refers to a four-month difference in the median length of time from filing to trial in civil cases in 2004 (twenty-six months for this Court compared with twenty-two months for the District of Minnesota)), this Court found in *Jones Pharma* that a similar alleged difference of four months in length of time to trial, at most, only

minimally favored transfer, resulting in denial of the motion. *Jones Pharma,* 2004 WL 323109, at *3. Indeed, this Court has noted that statistics purporting to show the average length of time until trial may vary from year to year and can be affected by a variety of factors, hence they do not dictate the transfer decision. *Mentor Graphics,* 77 F. Supp.2d at 514.[10]

### 2. There is no strong local interest in litigating this matter in Minnesota.

In addition, there is no strong local interest in litigating this action in Minnesota. *Jones Pharma,* 2004 WL 323109, at *3. Contrary to Toro's arguments, it is well settled in this Court that rights relating to patents are not considered state or local matters. *Id.* Accordingly, patent rights cannot give rise to a local controversy or implicate local interests. *Id.; France Telecom,* 2002 U.S. Dist. LEXIS 19966, at *4 (patent dispute and technology at issue was not "local" to transferee forum). The mere fact that Toro is a party to this action does not merit treating the case as a "local matter" compelling transfer to Minnesota. And once again, if Toro's argument were accepted on this point, the result would be that virtually every accused patent infringer could compel transfer to its home forum by claiming that the suit implicates a "local controversy."

Toro's final contention that TII has engaged in forum shopping is both incorrect and highly hypocritical, given Toro's tactics in filing a second-filed declaratory judgment action in its home forum one day before filing this motion. Again, this Court has noted on several occasions that a Delaware corporate plaintiff's decision to file suit in this State is a rational and

---

[10] For example, while Toro cites the 2004 statistics, only two years prior the statistic for the two courts with respect to median time from filing to trial in civil cases was almost exactly reversed, with this Court handling civil cases in 22.5 months, and Minnesota consuming 26 months. Obviously, the parties and this Court would be engaged in sheer speculation to guess what variables are affecting these statistics from year to year, or what the statistics for 2005 and 2006 will reveal. Indeed, while Minnesota receives a considerably greater number of filings per year, this Court has actually completed more trials in every year since 1999, according to Toro's statistics. *See* Toro Brf., Exhibit K.

legitimate choice that deserves "paramount consideration" in the venue analysis. For a Delaware corporation such as TII to file suit here can hardly be considered forum shopping, particularly when Toro is also incorporated here and has litigated in this forum against Textron in the past.

Therefore, no public interest factor weighs in favor of transfer of this action.

## IV.    CONCLUSION

For the foregoing reasons, TII respectfully requests that the Court deny Toro's motion to transfer venue. It would be wholly anomalous and unfair to transfer this action to a district in which TII would not even be subject to personal jurisdiction. Likewise, Toro's second-filed action, filed only one day before filing this motion, provides no basis for transferring this action to Minnesota. While there may be no forum that is entirely convenient for both parties to try this action, both parties are Delaware corporations and must reasonably expect to conduct litigation in this forum. In fact, Toro has litigated its patent infringement allegations against Textron in this very Court. Accordingly, the Court should deny Toro's motion and allow this action to proceed before this Court.

| OF COUNSEL:<br><br>Scott L. Robertson<br>Christopher C. Campbell<br>Hunton & Williams LLP<br>1900 K Street, N.W.<br>Washington, D.C. 20006-1109<br>Telephone: (202) 955-1500 | THE BAYARD FIRM<br><br>_____<br>Edmond D. Johnson (#2257)<br>ejohnson@bayardfirm.com<br>Peter B. Ladig (#3513)<br>pladig@bayardfirm.com<br>222 Delaware Avenue, Suite 900<br>P.O. Box 25130<br>Wilmington, Delaware 19899<br>(302) 655-5000<br>Attorneys for Plaintiff Textron Innovation Inc. |

Dated: August 30, 2005

599628v1

-25-

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on August 30, 2005, he electronically filed the

foregoing PLAINTIFF TEXTRON INNOVATIONS, INC.'S  BRIEF IN OPPOSITION TO

MOTION TO TRANSFER VENUE with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

> Richard L. Horwitz
> David E. Moore
> Potter Anderson & Corroon LLP
> Hercules Plaza, 6th Floor
> 1313 N. Market Street
> Wilmington, Delaware 19899-0951

The undersigned counsel further certifies that copies of the foregoing document were sent

by electronic filing and by hand to the above local counsel and by email and first class mail to

the following non-registered participants:

> Earl D. Reiland
> Thomas R. Johnson
> Thomas J. Leach
> Merchant & Gould P.C.
> 3200 IDS Center
> 80 South 8th Street
> Minneapolis, MN 55402

Peter B. Ladig (#3513)