# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TEXTRON INNOVATIONS INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C. A. No. 05-486 (GMS) |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| THE TORO COMPANY, | ) |
| | ) |
| Defendant. | ) |

## TORO'S REPLY TO TEXTRON'S BRIEF IN
## OPPOSITION TO MOTION TO TRANSFER VENUE

OF COUNSEL:

Earl D. Reiland
Thomas R. Johnson
Thomas J. Leach
MERCHANT & GOULD P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(612) 332-5300

Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*The Toro Company*

Dated: September 7, 2005

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................................................. ii

I.     Introduction ................................................................................................................... 1

II.    Argument ....................................................................................................................... 2

       A.     The Statutory Factors Weigh Strongly In Favor Of Transferring
              This Case To Minnesota ..................................................................................... 2

       B.     The Third-Party Fact Witnesses Subject To Minnesota's Subpoena
              Power Are The Most Knowledgeable About Key Aspects Of The
              Accused Products ............................................................................................... 4

              1.     Third-party fact witness Treu is the most knowledgeable
                     person regarding testing of the various designs of the
                     accused products ...................................................................................... 5

              2.     Dwaine Berger, a third-party fact witness, is a primary
                     witness regarding changes made to the accused products ....................... 6

              3.     James Swindal, a third-party fact witness, is the most
                     knowledgeable witness regarding the overall management
                     of the research, design and development of the accused
                     products ..................................................................................................... 7

              4.     Glen Lentner is a potential fact witness subject to Minnesota's
                     subpoena power, but not Delaware's ........................................................ 8

       C.     The Other Third-Party Witnesses Residing Outside Both Forums
              Weigh In Favor Of Transfer Or Are Neutral ...................................................... 8

       D.     Toro's Minnesota Suit Against TII And Its Parent Company,
              Textron, Inc. Weighs Strongly In Favor Of Transfer ........................................ 9

       E.     Regardless Of Whether TII Is Subject To Personal Jurisdiction In
              Minnesota, This Court Can Transfer It To Minnesota And It Is Fair
              For The Parties To Litigate In Minnesota ........................................................ 10

III.   Conclusion ................................................................................................................... 13

# **TABLE OF AUTHORITIES**

## **Cases**

*Affymetrix, Inc. v. Synteni, Inc.*,
    28 F. Supp. 2d 192 (D. Del. 1998) ...................................................................2, 3, 4, 7

*APV N. Am., Inc. v Sig Simonazzi N. Am., Inc.*,
    295 F. Supp. 2d 393 (D. Del. 2002).........................................................................2, 3

*Brunswick Corp. v. Precor Inc.*,
    C.A. No. 00-691-GMS, 2000 U.S. Dist. LEXIS 22222
    (D. Del. Dec. 12, 2000) ................................................................................................9

*Corixa Corp. v. IDEC Pharma. Corp.*,
    C.A. No. 01-6150-GMS, 2002 U.S. Dist. LEXIS 2980
    (D. Del. Feb. 25, 2002) ................................................................................................4

*Dainippon Screen Mfg. Co. v. DNS Elec., LLC*,
    142 F.3d 1266 (Fed. Cir. 1998) .............................................................................11, 12

*General Felt Product Co. v. Allen Industrial, Inc.*,
    120 F. Supp. 491 (D. Del. 1954) ............................................................................2, 3

*Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*,
    77 F. Supp. 2d 505 (D. Del. 1999).................................................................................4

*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*,
    148 F.3d 1355 (Fed. Cir. 1998) ..................................................................................10

## **Statutes and Rules**

28 U.S.C. § 1404(a) ........................................................................................................10

Fed. R. Civ. P. 45..............................................................................................................5

**I.      INTRODUCTION**

The Toro Company ("Toro") has shown that, on balance, the convenience of the parties and witnesses and the interests of justice strongly favor transferring this case to Minnesota. On the other hand, Textron Innovations, Inc. ("TII") offers no evidence which supports maintaining venue in Delaware. Rather than focus on the relevant legal standard — whether the balance of convenience and the interests of justice strongly favor transfer — TII argues that its choice of forum is dispositive. It is not.

TII essentially asks this Court to ignore the facts most important to the transfer decision. Specifically, TII asks the Court to ignore that important third-party fact witnesses reside in Minnesota and are subject to Minnesota's subpoena power. TII also asks this Court to ignore the important fact that neither party has a physical connection to Delaware. Finally, TII urges the Court to ignore the reduction in inconvenience, cost of litigation, and judicial resources expended that will result from transferring this case to Minnesota. These facts cannot be erased.

TII also emphasizes an argument that it is not subject to personal jurisdiction in Minnesota. Controlling authority has specifically rejected the argument TII makes here. Furthermore, TII admits that being subject to personal jurisdiction in Minnesota is not a requirement for transfer under § 1404(a).

Finally, Toro disagrees with TII that the parties did not satisfy Local Rule 7.1.1. Toro specifically requested a thirty-day extension of time to answer or otherwise plead, as the Delaware venue has no solid connection to the parties, witnesses or accused

products. Second Leach Decl. Ex. O.[1] TII refused to give Toro thirty days to respond unless Toro agreed not to challenge venue. *Id.* at Ex. P. Because Toro was challenging improper venue, the parties could not reach an accommodation. Toro proceeded to bring its Rule 12 motion. Toro also disagrees with TII that it needed to file an answer with its improper venue motion. However, rather than engage in procedural argument, Toro served its answer on TII the same day TII took the position that an answer was necessary.

## II.    ARGUMENT

### A.    The Statutory Factors Weigh Strongly In Favor Of Transferring This Case To Minnesota

TII argues that its choice of forum has importance. Toro agrees. However, in the context of a 28 U.S.C. §1404(a) motion choice of forum is overcome when the balance of convenience solidly favors transfer. *See Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 198, n.5 (D. Del. 1998); *See also General Felt Prod. Co. v. Allen Indus., Inc.*, 120 F. Supp. 491, 493 (D. Del. 1954) ("The privilege of selecting forum continues to play a part in deciding transfer motions, but it certainly should not be cast in the leading role."). Previous cases transferred by this Court, notwithstanding plaintiff's choice of forum and that both parties were incorporated in Delaware, make clear that a solid balance of convenience supports granting a transfer. *APV N. Am., Inc. v Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 398-99 (D. Del. 2002) ("Where an alternative forum is more convenient and has more substantial connection with the litigation 'incorporation in Delaware will not prevent transfer.'").

---

[1] The Second Declaration of Thomas J. Leach in support of Toro's Reply To Textron's Brief in Opposition To Motion To Transfer Venue is filed contemporaneously herewith (hereinafter "Second Leach Decl. Ex.___.").

2

TII has not even suggested, much less offered any evidence, that Delaware is a convenient forum for this litigation. Moreover, TII admits that a large company, such as itself, can litigate in Minnesota as easily as it can in Delaware. *See Affymetrix*, 28 F. Supp. 2d at 202. TII cannot and does not dispute that no witness, documentary evidence nor principal counsel for either party exists in Delaware.[2] By contrast, Toro has shown that much of the key evidence is in Minnesota. Throughout its brief TII misses the point that the test is whether the proposed transfer will reduce the *overall* inconvenience. *General Felt Prod. Co.,* 120 F. Supp. at 493-94. The transferee forum does not have to be as convenient for both parties. *Id.* Indeed in most cases it cannot be. Toro should not have to suffer because TII chose a forum that is inconvenient for both parties when a more convenient one exists. *APV N. Am., Inc.*, 295 F. Supp. 2d at 399 (holding that reducing the inconvenience on one party tips the scales in favor of transfer).

Because TII has offered no evidence that Delaware is convenient, and Toro has provided this Court with strong evidence that Minnesota is more convenient, the balance tips decidedly in favor of transferring this case to Minnesota.

---

[2] Not being able to show that the parties or any evidence is located in Delaware, TII alleges that Toro makes "considerable sales" in Delaware. D.I. 19 at 2, n. 3, 3. Toro's sales in Delaware of the accused products are less than one half of one percent (0.42%) of its national sales, whereas Toro's Minnesota sales are almost four percent (4.0%) of its national sales. Heinze Decl. at ¶ 4. (The Declaration of James Heinze ("Heinze Decl.") is filed contemporaneously herewith in support of Toro's Reply To Textron's Brief in Opposition To Motion To Transfer Venue.)

      **B.**      **The Third-Party Fact Witnesses Subject To Minnesota's Subpoena Power Are The Most Knowledgeable About Key Aspects Of The Accused Products**

TII asks this Court to ignore that important third-party fact witnesses live in Minnesota and are subject to Minnesota's subpoena power. TII implicitly concedes that these witnesses are not subject to Delaware's subpoena power. This factor should not be ignored. It weighs heavily in favor of transferring the case to Minnesota. *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505, 510-11 (D. Del. 1999) (finding that third-party *former employees* that are within the transferee's subpoena power but not Delaware's strongly favors transfer) (emphasis added); *Affymetrix, Inc.*, 28 F. Supp. 2d at 204 (finding that third-party fact witnesses that are within the subpoena power of the transferee forum, but not the current forum, weighs heavily in favor of transfer); *Corixa Corp. v. IDEC Pharma. Corp.*, C.A. No. 01-615-GMS, 2002 U.S. Dist. LEXIS 2980, at *10 (D. Del. Feb. 25, 2002) (finding that fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit weigh quite heavily in the balance of convenience analysis) (copy attached at Second Leach Decl. Ex. Q.).

The important third-party witnesses in Minnesota are the most knowledgeable fact witnesses regarding key aspects of the management, conception, design, development, and testing of the accused products. Their testimony will be used as the factual proof for key issues including non-infringement, invalidity and lack of copying TII's design.

### 1. Third-party fact witness Treu is the most knowledgeable person regarding testing of the various designs of the accused products.

Mr. Daniel Treu is more knowledgeable than any current Toro employee to testify about the testing and evaluation of the various designs of the accused products. Second Klis Decl. at ¶ 8.[3] He is a critical witness in this case. Contrary to TII's argument, Mr. Treu is subject to Minnesota's subpoena power, as he regularly conducts business in Minnesota. *See* Fed. R. Civ. P. 45 (c)(3)(A)(iii); D.I. 10 at ¶ 6[4]. Moreover, TII misses the most important point — Mr. Treu is a key witness and is not subject to Delaware's subpoena power.

In addition, TII urges the Court to ignore the reality of asking Mr. Treu to testify in Delaware. Contrary to TII's argument, Mr. Treu could not "fly to Delaware in only slightly more time that the 2 hour one-way drive." D.I. 19 at p. 23.[5] Even if Mr. Treu volunteered to testify in Delaware, he would have to make the two-hour drive to the airport, arrive at the airport the TSA recommended one and a half to two-hours prior to his flight, take the more than two-hour flight, and then arrange for transportation to the courthouse. At a minimum this would be a seven-hour trip each way. TII also makes no allowance of the timesavings to Mr. Treu. If the case is venued in Minnesota, Mr. Treu could potentially drive in on the morning or afternoon that he is scheduled to testify. He would not need to stay overnight, as he would likely need to do if the case is venued in

---

[3] The Second Declaration of David Klis ("Second Klis Decl. at ¶ __.") is filed contemporaneously herewith in support of Toro's Reply To Textron's Brief in Opposition To Motion To Transfer Venue.
[4] Docket Identification Number ("D.I.") 10 is the declaration of Daniel Treu, dated August 11, 2005, which was filed in support of Toro's opening brief.
[5] D.I. 19 is Plaintiff Textron Innovations Inc.'s Brief In Opposition To Motion To Transfer Venue.

Delaware. Should Mr. Treu's scheduled court appearance need to be delayed or otherwise adjusted, he could wait another day or simply drive home.

TII also asks this Court to ignore Mr. Treu's difficult circumstances, which may prevent or cause him to refuse to testify in Delaware. The main reason Mr. Treu retired from Toro was to care for his brother's livestock farm because his brother was diagnosed with cancer and will undergo radiation therapy. D.I. 10. at ¶ 8.[6]

### 2. Dwaine Berger, a third-party fact witness, is a primary witness regarding changes made to the accused products.

Mr. Dwaine Berger, another third-party fact witness, is the most knowledgeable witness regarding the construction and modification of the prototypes that led to the Groundsmaster products, the accused products. Second Klis Decl. at ¶ 9. TII cannot not dispute that Mr. Berger is subject to Minnesota's subpoena power, but not that of Delaware.

Mr. Berger was the person building the prototypes and making the changes to the accused products up to his retirement in 2003. He has intimate firsthand knowledge regarding construction of the prototypes and the changes made to them. *Id*. He is anticipated to be the primary witness regarding construction of the original prototypes of the accused products during the beginning of this project, the most critical time. No one at Toro is as knowledgeable as Mr. Berger regarding the construction of the prototypes of the accused products. *Id*. Mr. Berger is expected to have information regarding the factual basis of non-infringement, as well as knowledge that Toro did not copy TII's design, a factor in determining willfulness.

---

[6] D.I. 10 is the declaration of Daniel Treu, dated August 11, 2005, which was filed in support of Toro's Opening Brief.

Mr. Berger has personal circumstances that make him unwilling to travel to Delaware.  D.I. 7 at ¶ 6.[7]  Mr. Berger's is 66 years old and is currently caring for his 90-year-old ailing mother.  He lives about two and a half hour drive from the nearest airport that has a direct flight to Delaware.  Second Leach Decl. Ex. R.  Thus, Mr. Berger would travel approximately seven hours one way to Delaware.  Even if Mr. Berger agreed to travel to Delaware to testify, which he has refused to do, it would be extremely inconvenient.  Testifying in Minnesota would be much less of a burden for him.  D.I. 7 at ¶ 6.

### 3. James Swindal, a third-party fact witness, is the most knowledgeable witness regarding the overall management of the research, design and development of the accused products.

TII cannot dispute that Mr. Swindal is a third-party fact witness subject to Minnesota's, but not Delaware's subpoena power.  Mr. Swindal has stated that he would probably decline if asked to testify in Delaware.  On the other hand, he is subject to Minnesota's subpoena power and not able to decline to testify there.  See *Affymetrix*, 28 F. Supp. 2d at 205 (noting that even assurances that an individual will appear at trial are not the same as being subject to a Court's subpoena power because "even previously cooperatively witnesses may be reluctant participants" at trial).

Mr. Swindal was the Managing Director of Technical Operations of the Commercial Division for Toro from 1988 until May 1, 2000.  D.I. 13 at ¶ 3.[8]  He is the most knowledgeable person from an overall management perspective regarding the modeling, research, development, engineering and testing of the accused products from

---

[7] D.I. 7 is the declaration of Dwaine G. Berger, dated August 15, 2005, which was filed in support of Toro's Opening Brief.

[8] D.I. 13 is the declaration of James Swindal, dated August 12, 2005, which was filed in support of Toro's Opening Brief.

7

their inception to production. *Id.* at ¶ 4. Mr. Swindal is the most knowledgeable witness regarding management decisions made regarding the accused products. Second Klis Decl. ¶ 7. He is a key Toro witness regarding management's decisions to develop the accused products. Mr. Swindal retired in May of 2000. D.I. 13 at ¶¶ 1, 3. Because of his retirement, he is a third-party witness. Mr. Swindal was in charge of the accused products from inception to production and is an anticipated primary witness.

    **4.    Glen Lentner is a potential fact witness subject to Minnesota's subpoena power, but not Delaware's.**

Mr. Lentner has critical information regarding tests conducted on the accused product's prototypes at his golf course and potential prior art to TII's patents. *See* D.I. 11 at ¶¶ 6-8. In November 2000, Toro believed that Textron, Inc. (and by extension, TII) agreed that its patents were invalid in view of the prior art Toro provided. Second Leach Decl. Ex. Y. Once TII sued Toro, Toro continued to gather prior art and information to support its invalidity contentions. Toro identified Mr. Lentner as an important witness through this process. Toro submits that strong weight should be given to his status as an important third-party witness and the fact that he cannot be compelled to testify in Delaware, but can be in Minnesota. Moreover, Mr. Lentner has stated that testifying in Minnesota would be much more convenient for him. D.I. 11 at ¶ 10.

    **C.    The Other Third-Party Witnesses Residing Outside Both Forums Weigh In Favor Of Transfer Or Are Neutral.**

TII provides declarations from the two inventors of TII's patents that they are willing to travel to Delaware to testify. D.I. 19 at pp. 17-18. Indeed if they are willing to travel to Delaware, it is likely that they are just as, if not more, willing to travel to Minnesota to testify. Mr. Knurr lives in Waterford, Wisconsin, much closer to

Minnesota's Federal courthouses than Delaware. Mr. Bednar is apparently moving to Nebraska. *Id.* at p. 17. TII has not asserted that Delaware is more convenient than Minnesota to travel to from Nebraska. Neither Mr. Bednar nor Mr. Knurr has declined to travel to Minnesota to testify. Since Minnesota is closer to both Wisconsin and Nebraska than Delaware, this factor is either neutral or supports transfer.

### D. Toro's Minnesota Suit Against TII and its Parent Company, Textron, Inc. Weighs Strongly In Favor Of Transfer

TII argues that Toro's Minnesota action does not factor into the transfer analysis. TII is mistaken. The cases TII cites are not applicable here. Those cases observe that a "mirror image" action carries no weight in the transfer analysis. Toro's Minnesota case is not a "mirror image" case.[9] Toro's suit in Minnesota includes claims that Textron, Inc., TII's parent company licensee, infringes two of Toro's patents covering technology contained in the same products at issue in the present action. Second Klis Decl. at ¶ 10-11. Given the presence of Toro's patent suit involving the same products as TII's, it only makes sense to have the related cases where the products were designed and the witnesses are located. *See Brunswick Corp. v. Precor Inc.*, C.A. No. 00-691-GMS, 2000 U.S. Dist. LEXIS 22222, at *8 (D. Del. Dec. 12, 2000) (copy attached at D.I. 12 at Ex. I.).

Transferring the present case to Minnesota and letting it proceed with Toro's related action will conserve judicial resources and greatly reduce the overall

---

[9] Toro agrees that its declaratory judgment claims against TII (the "mirror image" claims) in Minnesota carry no weight. Toro included the declaratory judgment claims against TII because it believes that this case will be transferred to Minnesota and because the parties' disputes should be resolved in one action. TII is Textron, Inc.'s wholly owned patent holding company. Second Leach Decl Ex. S. Thus, Textron, Inc. controls TII (the holding company), which licenses back the patents to Textron, Inc. Presumably Textron, Inc. transferred its intellectual property to TII for tax purposes.

9

inconvenience to both parties.  Judicial resources will be conserved because only one Court will have to learn the technology at issue, the accused products, and preside over discovery and other motions.  The inconvenience to the parties will be reduced because Toro and TII will not be forced to litigate cases involving the same products in two different Courts.  Moreover, the overall inconvenience will be further reduced because Minnesota is Toro's principal place of business.  Toro's witnesses, documents and counsel are all located in Minnesota.

### E. Regardless Of Whether TII Is Subject To Personal Jurisdiction In Minnesota, This Court Can Transfer It To Minnesota And It Is Fair For The Parties To Litigate In Minnesota.

TII admits that the present case can be transferred to Minnesota regardless of whether TII is subject to personal jurisdiction.  This is because TII could have sued Toro there.  D.I. 19 at p. 7; *see also* 28 U.S.C. § 1404(a).  Thus, this Court may transfer the present action to Minnesota regardless of whether TII is subject to personal jurisdiction in Minnesota.

Despite the above, TII cites **non-controlling authority** in an attempt to convince the Court to believe that TII is not subject to personal jurisdiction in Minnesota.  TII argues that it is unfair to transfer a case to a forum that would not otherwise have jurisdiction over it.  TII is mistaken.  Controlling authority mandates that TII is subject to personal jurisdiction in Minnesota and that Minnesota is a reasonable and fair venue.

Toro's Minnesota action is a patent infringement case.  In determining personal jurisdiction in patent infringement cases, Federal Circuit law controls.  *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998).  "This choice of governing law applies as well to personal jurisdiction in declaratory judgment

actions that involve patentees as defendants." *Id.*  Thus, Federal Circuit law controls whether TII is subject to personal jurisdiction in Minnesota.

In *Dainippon Screen Mfg. Co. v. DNS Elec., LLC*, 142 F.3d 1266, 1271 (Fed. Cir. 1998), the Federal Circuit held that a wholly owned intellectual property holding company was subject to personal jurisdiction because of infringement letters it sent to the forum, its attempts to resolve the dispute with the declaratory judgment action plaintiff, and the revenue it generated from its parent company and exclusive licensee that had contacts with and sold to the forum.  In finding that the imposition of personal jurisdiction over the holding company was reasonable and fair, the Federal Circuit observed that making the argument TII makes took more than a little nerve:

> "Stripped to its essentials, CFM [the parent company] contends that a parent company can incorporate a holding company in another state, transfer its patents to the holding company, arrange to have those patents licensed back to itself by virtue of its *complete control over the holding company*, and threaten its competitors with infringement without fear of being a declaratory judgment defendant, save perhaps in the state of incorporation of the holding company. ***This argument qualifies for one of our 'chutzpah' awards.***"

*Id.* (emphasis added).

Just as in *Dainippon*, TII is Textron, Inc.'s patent holding company.  Textron, Inc. and TII, the holding company, are located at the same office address in Providence, Rhode Island.  Second Leach Decl. Exs. T and U.  TII's President is also the Vice President and Deputy General Counsel of Textron, Inc.  *Id.*  Textron, Inc. owns TII and presumably, Textron, Inc. has complete control over it. *Id.* at Ex. S.  Parallel to the facts of *Dainippon*, Textron, Inc. has no less than seven dealers in Minnesota and likely sells many infringing products there. Second Leach Decl. Ex. V.  As such, TII likely receives licensing revenue from Textron, Inc.'s Minnesota sales.

11

Textron, Inc., before it created its patent holding company TII, in April 2002, sent a letter to Toro accusing Toro of infringing its '530 patent. Second Leach Decl. Ex. W. Thereafter, Textron, Inc. and Toro attempted to resolve the dispute without distinguishing between Textron, Inc. and its patent holding company TII. Second Leach Decl. Ex. X. TII then sued Toro in Delaware. See D.I. 1. TII asks the Court to believe that it can threaten infringement, and argue that it is not subject to personal jurisdiction except in Delaware. Toro filed an action against TII and Textron, Inc. in Minnesota for infringing two of Toro's patents and for a declaratory judgment that TII's patents are invalid and not infringed. Based on the reasoning in *Dainippon,* the present facts mandate that TII as well as Textron, Inc. are subject to personal jurisdiction in Minnesota.

### III.  CONCLUSION

If this case is transferred to Minnesota, the overall convenience of the parties and witnesses and the interests of justice will be served. In addition, important third party witnesses will be available for trial because those witnesses are subject to Minnesota's subpoena power, but not subject to subpoena in Delaware. Moreover, substantial judicial resources will be saved if this case is transferred to Minnesota and consolidated with the pending related case. An order of transfer is earnestly requested.

|  |  |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| Earl D. Reiland<br>Thomas R. Johnson<br>Thomas J. Leach<br>MERCHANT & GOULD P.C.<br>3200 IDS Center<br>80 South 8th Street<br>Minneapolis, MN 55402<br>(612) 332-5300 | By:  */s/ Richard L. Horwitz*<br>        Richard L. Horwitz<br>        David E. Moore<br>        Hercules Plaza, 6th Floor<br>        1313 N. Market Street<br>        Wilmington, Delaware 19899-0951<br>        (302) 984-6000<br>        rhorwitz@potteranderson.com<br>        dmoore@potteranderson.com |
| Dated: August 19, 2005 | *Attorneys for Defendant The Toro Company* |

697946

13

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

**<u>CERTIFICATE OF SERVICE</u>**

I, Richard L. Horwitz, hereby certify that on September 7, 2005, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

Edmond D. Johnson
Peter B. Ladig
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE  19801

I hereby certify that on September 7, 2005, I have Federal Expressed the documents to the following non-registered participants:

Scott L. Robertson
Christopher C. Campbell
Hunton & Williams LLP
1900 K Street, N.W.
Washington, DC  20006-1109

By:   /s/ Richard L. Horwitz
      Richard L. Horwitz
      David E. Moore
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, Delaware 19899-0951
      (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com