# EXHIBIT O

# Merchant & Gould

### An Intellectual Property Law Firm

3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota
55402-2215 USA
TEL 612.332.5300
FAX 612.332.9081
www.merchant-gould.com

A Professional Corporation

Direct Contact | 612.336.4618
ereiland@merchant-gould.com

July 27, 2005

**VIA FACSIMILE & U.S. MAIL**

Edmond D. Johnson
The Bayard Firm
222 Delaware Ave.
Suite 900
Wilmington, DE 19801

Re:    Textron Innovations Inc. v. The Toro Company
       Civil Action no. 05-486
       M&G No. 6372.149-US-ZA

Dear Ed:

This letter is to confirm that Textron has agreed to grant Toro a 14-day extension to answer or otherwise plead in response to Textron's Complaint. We are in the process of obtaining local counsel. Once obtained, I will have them prepare a stipulation and have them forward it to you. If your understanding of our agreement is different than mine, please contact Thomas Johnson of my office at (612) 371-5299 as I will be out until next Monday.

Toro is looking into Textron's allegations, as well as the issue of proper venue for this case. While I appreciate the two-week extension, I do not believe that two weeks will give us sufficient time to examine the above issues. As you may recall, Toro requested a 30-day extension. Textron was unwilling to grant a 30-day extension unless Toro agreed not to contest either personal jurisdiction or venue. While Toro would not have a problem waiving personal jurisdiction, the issue of venue is more open. Specifically, it seems that Delaware has little, if any connection to the parties, the potential witnesses, or the alleged acts of infringement at issue in this case.

Toro may petition the Court for an additional extension of time in absence of Textron's agreement to grant Toro a 30-day extension. If your client is willing to reconsider the 30-day extension, please contact me immediately so we do not have to consume the Court's time with this issue.

Sincerely,

Earl D. Reiland

Minneapolis/St. Paul
Denver
Seattle
Atlanta
Washington, DC

EDR:TRJ:sad

# MEMORY TRANSMISSION REPORT

```
                                    PAGE      : 001
                                    TIME      : JUL-27-05  15:18
                                    TEL NUMBER1: 6123329801
                                    TEL NUMBER2: 6123329081
                                    NAME      : Merchant & Gould
```

| | | |
|---|---|---|
| FILE NUMBER | : | 074 |
| DATE | : | JUL-27 15:17 |
| TO | : | ☏913026586395 |
| DOCUMENT PAGES | : | 002 |
| START TIME | : | JUL-27 15:17 |
| END TIME | : | JUL-27 15:18 |
| SENT PAGES | : | 002 |
| STATUS | : | OK |
| FILE NUMBER | : 074 | ***  SUCCESSFUL TX NOTICE  *** |

## Merchant & Gould
### An Intellectual Property Law Firm

Merchant & Gould P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2215

TEL 612.332.5300
FAX 612.332.9081
www.merchant-gould.com

---

## Fax Transmission | July 27, 2005

| | | | |
|---|---|---|---|
| To: | **Edmond D. Johnson** | From: | **Earl D. Reiland** |
| Company: | **The Bayard Firm** | Our Ref.: | 6372.149USZA |
| Your Ref: | | Fax No.: | 612.332.9081 |
| Fax No.: | **302.658.6395** | Phone No.: | 612.332.5300 |
| Phone No.: | 302.655.5000 | Total Pages: | **2 (Including Cover Sheet)** |
| State/Country: | | E-Mail: | ereiland@merchant-gould.com |
| Confirmation Via Mail: | ☒ Yes ☐ No | Return Fax To: | Sarah Densmore |

---

Document Transmitted:  Correspondence dated July 27, 2005.

---

This transmission contains information that is confidential and/or legally privileged.  It is intended for use only by the person to whom it is directed.  If you have received this telecopy in error, please notify us by telephone immediately so that we can arrange for the return of the original documents to us.

If you did NOT receive all of the pages, please call us in the U.S.A. at 612.332.5300 or fax us at 612.332.9081.

# EXHIBIT P



# HUNTON & WILLIAMS

HUNTON & WILLIAMS LLP
1751 PINNACLE DRIVE
SUITE 1700
MCLEAN, VIRGINIA 22102

TEL   703 • 714 • 7400
FAX   703 • 714 • 7410

CHRISTOPHER C. CAMPBELL
DIRECT DIAL: 703-714-7553
EMAIL:  ccampbell@hunton.com

August 12, 2005

**VIA FACSIMILE**

Earl D. Reiland, Esq.
Merchant & Gould
3200 IDS Center
80 South Eighth Street
Minneapolis MN 55402-2215

RE:  *Textron Innovations Inc. v. The Toro Company*, D. Del. Civil Action No. 05-486

Dear Earl:

I am responding to your letter of July 27, 2005 to Edmond D. Johnson, who is serving as local counsel on behalf of Textron Innovations Inc. As you know, Textron was (and still is) more than happy to grant Toro a 30-day extension to answer or otherwise plead in response to Textron's Complaint. Unfortunately, Toro declined our invitation for a 30-day extension. Instead, the parties agreed to a 14-day extension without any conditions regarding jurisdiction or venue.

Our original offer still stands. That is, Textron is still willing to grant a 30-day extension (16 additional days on top of the original 14-day extension which has already been granted) to allow Toro to file an Answer, provided Toro does not challenge jurisdiction or venue.

I look forward to the courtesy of your response.

Sincerely,

Christopher C. Campbell

CCC/dpm

cc:   Scott Roberson, Esq.
      Ted Johnson, Esq.

ATLANTA  AUSTIN  BANGKOK  BRUSSELS  CHARLOTTE  DALLAS  HONG KONG  KNOXVILLE
LONDON  McLEAN  MIAMI  NEW YORK  NORFOLK  RALEIGH  RICHMOND  SINGAPORE  WASHINGTON
www.hunton.com



HUNTON & WILLIAMS LLP
1751 PINNACLE DRIVE
SUITE 1700
MCLEAN, VIRGINIA 22102

TEL   703•714•7400
FAX   703•714•7410

**FAX**

| | | |
|---|---|---|
| TO | NAME: | Earl D. Reiland, Esq. |
| | FIRM: | Merchant & Gould |
| | FAX NO.: | 612 332 9081 |
| | PHONE NO.: | 612 332 5300 |
| | | |
| | PAGES (INCLUDING COVER): | 2 |
| | | |
| | ORIGINAL TO FOLLOW IN MAIL: | ☐ Yes  ☒ No |
| FROM | NAME: | Christopher C. Campbell |
| | DIRECT DIAL: | 703-714-7553 |

MESSAGE    Textron Innovations Inc. v. The Toro Company, D. Del. Civil Action No. 05-486

IF PROBLEM WITH TRANSMISSION, PLEASE CONTACT OPERATOR AT 703•714•7500.

OPERATOR

DATE:                    August 12, 2005
TIME:
CLIENT/MATTER NAME:
CLIENT/MATTER NO.:

This communication is confidential and is intended to be privileged pursuant to the attorney-client privilege and the work-product doctrine. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone, and return the original message to us at the above address via the U.S. Postal Service.

# EXHIBIT Q

CORIXA CORPORATION, a Delaware corporation, et al., Plaintiffs, v. IDEC PHARMACEUTICALS CORPORATION, a Delaware corporation, Defendant.

C.A. No. 01-615 GMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2002 U.S. Dist. LEXIS 2980

February 25, 2002, Decided

**DISPOSITION-1:** [*1] Defendant's motion to transfer action to Southern District of California GRANTED, Matter TRANSFERRED.

## CASE SUMMARY

**PROCEDURAL POSTURE:** A pharmaceutical corporation filed a complaint in California against defendants, three entities in different states, and sought a declaratory judgment of non-infringement regarding five patents. Two days later, defendants filed the instant action against the corporation and alleged patent infringement. The pharmaceutical corporation moved to stay the proceedings, or alternatively, to dismiss or transfer the action to California.

**OVERVIEW:** The patents at issue involved technology for the treatment of lymphoma. Applying the first-filed rule, the pharmaceutical corporation argued that the case should be transferred to California. Notwithstanding the fact that the cases at issue were mirror image cases where a court would be asked to construe the same patents, one of the defendants argued that the first-filed rule was inapplicable to the present situation. The court concluded that having two separate trials in mirror image cases would have defeated the purposes of the first-filed rule, namely, sound judicial administration and comity among federal courts of equal rank. Accordingly, the application of the rule weighed heavily in favor of transferring this case to California. There was no clear evidence that a non-party witness would have been unable to attend trial in the instant forum and this factor weighted against transfer. However, there was no indication that either party would be unable to produce the relevant records and documents in the instant forum. In the end, the court concluded that the balance of convenience tipped strongly in favor of transferring the action to California.

**OUTCOME:** The pharmaceutical company's alternative motion to transfer the action to California was granted and the matter was transferred.

**CORE TERMS:** patent, first-filed, balance of convenience, weigh, licensee, litigate, convenience, lawsuit, necessary party, transferring, declaratory judgment action, place of business, mirror image, presently, lymphoma, declaratory action, attendance, tip, declaratory judgment, motion to transfer, motion to dismiss, present situation, currently pending, motion to stay, radioimmunotherapy, above-captioned, inconvenience, transferred, recommended, unavailable

**COUNSEL:** For CORIXA CORPORATION, COULTER PHARMACEUTICAL INC., SMITHKLINE BEECHAM CORPORATION, plaintiffs: Thomas C. Grimm, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For IDEC PHARMACEUTICALS CORPORATION, defendant: Philip A. Rovner, Potter Anderson & Corroon, LLP, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory Moneta Sleet

**OPINION:** MEMORANDUM AND ORDER

## I. INTRODUCTION

On September 10, 2001, IDEC Pharmaceutical Corporation ("IDEC") filed a complaint in the Southern District of California against Coulter Pharmaceutical Inc. ("Coulter"), Corixa Corporation ("Corixa"), and the Regents of the University of Michigan ("Michigan"). In its complaint, IDEC seeks a declaratory judgment of non-infringement and/or invalidity of five patents. On September 11, 2001, the Oncologic Drugs Advisory Committee ("ODAC") indicated that it would recommend a limited FDA approval of IDEC's drug Zevalin. On September 12, 2001, at approximately 8:33 A.M. PST, IDEC [*2] filed a first amended complaint which included a sixth patent.

On September 12, 2001, at 12:07 P.M. EST, Corixa, Coulter, and GlaxoSmithKline (GSK) (collectively "Corixa") filed the above-captioned action against IDEC. n1 Corixa alleges that IDEC is infringing U.S.

Patent Nos. 6,015,542, ("the 542 patent"), 6,090,365 ("the 365 patent"), and 5,595,721 ("the 721 patent"). These patents are three of the patents involved in the California declaratory judgment action.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 On September 28, 2001, Michigan was added as a plaintiff in this action.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Presently before the court is IDEC's motion to stay the proceedings, or alternatively, to dismiss or transfer this action to the Southern District of California. n2 For the reasons that follow, the court will grant IDEC's motion to transfer.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 IDEC sought to stay the proceedings pending a ruling from the California court on a motion to dismiss. On January 30, 2002, the California court denied the motion to dismiss. IDEC's current motion to stay is therefore moot.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*3]

## II. BACKGROUND

IDEC is a Delaware corporation with its sole place of business in the San Diego area. Coulter is a Delaware corporation with its principle place of business in the San Francisco Bay area. Corixa is a Delaware corporation based in Seattle, Washington. GSK is a Pennsylvania corporation with its principle place of business in Philadelphia, Pennsylvania. The University of Michigan is a constitutional corporation of the State of Michigan, located in Ann Arbor, Michigan.

The patents at issue involve technology for the treatment of lymphoma using targeted radioimmunotherapy. Coulter and Michigan are co-owners of the 542, 365, and 721 patents. Corixa and GSK are the licensees of these patents. Both IDEC and Corixa are currently seeking FDA approval for a commercial embodiment of their respective inventions for the treatment of lymphoma using radioimmunotherapy.

With these facts in mind, the court will now turn to the motion presently before it.

## III. DISCUSSION

### A. The "First-Filed" Rule

Where two patent lawsuits involving the same claims are filed in different jurisdictions, the Federal Circuit requires that the first-filed action be given preference [*4] absent special circumstances. *See Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993). The first-filed doctrine also serves to prevent a multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising from common matters. *See id. at 937.* This doctrine applies equally well where the first-filed action is one for a declaratory judgment. *See id. at 938* (noting that, where the declaratory action can resolve the various issues, a first-filed declaratory action is entitled to precedence as against a later-filed patent infringement action.)

Applying the first-filed rule, IDEC argues that the present case should be transferred to the Southern District of California. Notwithstanding that the cases at issue are "mirror image" cases where the court is asked to construe the same patents, Corixa argues that the first-filed rule is inapplicable to the present situation.

Corixa first argues that GSK has not been joined in the California litigation. The record before the court indicates that GSK is Coulter's licensee. It is unclear whether GSK is an exclusive licensee. However, even were the court to accept [*5] Corixa's argument that GSK is an exclusive licensee, that alone does not indicate that GSK is a necessary party to this litigation. Corixa concedes that GSK is a licensee with fewer than all substantial rights. As such, GSK, while likely a proper party to the California lawsuit, is not a necessary party. *See Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1348 (Fed. Cir. 2001) (holding that an exclusive licensee possessing fewer than all substantial rights may not sue in its own name without joinder of the patent owner.) Finally, to the extent that the parties believe that GSK is a necessary party, GSK may request permission to join the California litigation. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 Corixa expresses concern over whether the California court has subject-matter jurisdiction over an action between IDEC and GSK. As it is not the court's province to determine another court's subject matter jurisdiction, the court expresses no opinion on this.

2002 U.S. Dist. LEXIS 2980

- - - - - - - - - - - - End Footnotes- - - - - - -
- - - - - -

Corixa next argues that the [*6] first-filed rule is inapplicable to the present situation because IDEC improperly "raced to the courthouse" in order to file its motion in California. In support of this contention, Corixa points out that its right to file an infringement suit against IDEC did not ripen until after ODAC recommended that the FDA approve Zevalin. However, before ODAC publicly recommended approval, but after IDEC had reason to believe they would do so, IDEC "raced" to file its declaratory judgment action.

The court acknowledges that IDEC's filing seems providential since ODAC's recommendation became public the day after IDEC filed its suit. In its November 6, 2001 Order, however, the California court specifically found that IDEC possessed a reasonable apprehension of suit when it filed its declaratory judgment action. The California court continued by stating that, "an actual controversy existed when IDEC filed the complaint under consideration. Consequently the court finds that IDEC's filing suit was not motivated by "forum shopping alone," but rather was a legitimate exercise of its opportunity under the Declaratory Judgement Act . . . ." This court sees no reason to disagree with the California court's [*7] findings.

Given the information presently before it, the court concludes that having two separate trials in mirror image cases would defeat the purposes of the first-filed rule, namely, sound judicial administration and comity among federal courts of equal rank. *See EEOC v University of Pennsylvania,* 850 F.2d 969, 971 (3d Cir. 1988). Accordingly, the court finds that the application of the rule weighs heavily in favor of transferring this case to the Southern District of California.

B. Section 1404(a)

Transfer to the Southern District of California is also mandated under a section 1404(a) analysis. Section 1404(a) provides that "for the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). There is no dispute that this action could have been filed in the Southern District of California. The court will, therefore, move on with inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995).

In *Jumara,* the Third Circuit provided [*8] a list of factors to assist the district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.* These factors include six private and five public interests which the court may consider. *See id.*

1. The Private Interests

The private interests most relevant to this case include: (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents, again, only to the extent that these files cannot be produced in the alternate forum. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n4 For the reasons the court discussed in a previous opinion, it will not afford any weight to the first three *Jumara* factors, specifically, the plaintiff's initial choice of forum, the defendant's preferred venue, and whether the claim arose elsewhere. *See Affymetrix, Inc. v. Synteni, Inc.,* 28 F. Supp. 2d 192, 197-201 (D. Del. 1998). In not affording weight to these factors, the court avoids the risk of double-counting these interests and thereby throwing off the transfer analysis. *See id.* Instead, the court will consider whether the Southern District of California is a more convenient forum for the parties and the witnesses, while also serving the interests of justice. *See* 28 U.S.C. § 1404(a).

- - - - - - - - - - - - End Footnotes- - - - - - -
- - - - - -

[*9]

a. The Convenience of the Parties

Geographically, California is not more inconvenient for the parties than Delaware. Michigan must travel whether the suit is in California or Delaware. GSK is one of the world's largest pharmaceutical companies, and cannot complain about location. The remainder of the parties are based on the West Coast. Furthermore, transfer to California would reduce the overall inconvenience to all parties involved. The parties must already be prepared to litigate the related case currently pending in the Southern District of California. Bringing witnesses and relevant documents to only one location, here California, minimizes the level of disruption caused to all parties by the litigation. This is certainly a more economical and efficient result than having each party moving witnesses and documents between two states,

depending on which of these related actions is being litigated at that time. Thus, this factor weighs in favor of transfer.

b. The Convenience of Witnesses

Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed obligated, to procure the attendance of its [*10] own employees for trial. See *Affymeytrix*, 28 F. Supp. 2d at 203. Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies because they are "usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any." See *id.* (internal citations omitted). Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis. See *id.*

There is no evidence on the record that would indicate that Delaware would be an inconvenient forum for potential non-party witnesses. However, the court notes that all the material witnesses in this dispute, party or otherwise, will be in California already to litigate the related matter now pending in the Southern District of California. Requiring that they come to Delaware to litigate this action separately cannot be considered convenient and in the interest of justice. However, as there is no clear evidence [*11] that a non-party witness will be unable to attend trial in Delaware, this factor must weigh against transfer.

c. The Location of Records and Other Documents

The technological advances of recent years have significantly reduced the weight of this factor in the "balance of convenience" analysis. See *id.* at 205. There is no indication that either party would be unable to produce the relevant records and documents in Delaware. Thus, because this factor is relevant only insofar as the documents would be unavailable in one forum, the court finds that this factor must weigh against transfer.

From a practical standpoint, however, the court notes that any relevant documents will already be in California for the litigation of that case. The court sees no need to require that the parties move the same documents across the country. Rather, it would be much more efficient to litigate these related actions in one location. However, these considerations are more relevant to the first factor discussed *supra*.

2. The Public Factors

As other courts have noted, depending on the circumstances of the case, some of the "public interest" factors listed in *Jumara* may play no role [*12] in the "balance of convenience." See *id.* at 205. The court thus elects to discuss only the factors most relevant to the pending case.

a. Practical Considerations Making Trial Easy, Expeditious or Inexpensive

This factor appears to substantially repeat the "first-filed" analysis advanced by IDEC, and accepted by the court, in Section III.A, *supra*. As such, the court declines to further address this issue here, since it has already taken this argument into consideration.

b. Delaware's Interest in this Controversy

Three of the parties in this action are Delaware corporations. However, while the court is mindful of Delaware's interest, that alone will not tip the "balance of convenience" in its favor. This is so because the court can hardly describe the patents as a local controversy unique to Delaware. See *Affymetrix*, 28 F. Supp. 2d at 207. Instead, the patents deal with the treatment of lymphoma. This clearly has far-reaching implications. Accordingly, this factor does not weigh against transferring this case to California.

c. Collective Travel Time and Cost

A mirror image action is currently pending in California. Thus, to require the parties [*13] to simultaneously litigate virtually the same case on different coasts would certainly increase the collective travel time and cost. Thus, this factor weighs in favor of transfer.

IV. CONCLUSION

The court concludes that the "balance of convenience" tips strongly in favor of transferring this action to the Southern District of California.

For these reasons, IT IS HEREBY ORDERED that:
1. IDEC's alternative motion to transfer this action to the Southern District of California (D.I. 8) is GRANTED.

2. The above-captioned matter is hereby TRANSFERRED to the United States District Court for the Southern District of California.

Dated: February 25, 2002

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

# EXHIBIT R



| **START** Carlos, MN 56319, US | **END** **Minneapolis-St Paul Intl Airport (MSP)**: 612-726-5555 6040 28th Ave S, Minneapolis, MN 55450, US |
|---|---|

**Total Est. Time:**
2 hours, 32 minutes

**Total Est. Distance:**
148.66 miles

| Maneuvers | | Distance |
|---|---|---|
| ⚠️ | There are .25 miles between your starting location and the beginning of your driving directions. Use maps to get from your starting location to the beginning of your route. | |
| **START** | **1:** Start out going EAST on LONE OAK DR NE toward CR-65 NE. | 0.3 miles |
| ➡️ | **2:** Turn RIGHT onto CR-65 NE. | 0.5 miles |
| ⬅️ | **3:** Turn LEFT. | 0.1 miles |
| ↖️ | **4:** Turn SLIGHT LEFT onto CR-13. | 1.9 miles |
| ⬆️ | **5:** CR-13 becomes CR-3 S. | 11.1 miles |
| ⬅️ | **6:** Turn LEFT onto MN-27. | 0.6 miles |
| ➡️ | **7:** Turn RIGHT onto 1ST AVE E / CR-3. Continue to follow CR-3. | 2.5 miles |
| EAST 94 | **8:** Merge onto I-94 E / US-52 S via the ramp on the LEFT. | 102.7 miles |
| SOUTH 494 | **9:** Merge onto I-494 S. | 26.7 miles |
| EAST 5 | **10:** Merge onto MN-5 E toward MAIN TERM. / ST PAUL VIA 7TH. | 1.6 miles |
| EXIT | **11:** Take the exit on the LEFT toward LINDBERGH TERMINAL. | 0.2 miles |
| ⬆️ | **12:** Stay STRAIGHT to go onto GLUMACK DR. | <0.1 miles |

Case 1:05-cv-00486-GMS    Document 23-2    Filed 09/07/2005    Page 14 of 21

 **13:** End at **Minneapolis-St Paul Intl Airport (MSP)**
6040 28th Ave S, Minneapolis, MN 55450, US

**Total Est. Time:** 2 hours, 32 minutes      **Total Est. Distance:** 148.66 miles

Case 0:05-cv-00486-GMS   Document 23-2   Filed 09/07/2005   Page 15 of 21



These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.

# EXHIBIT S

http://www.sec.gov/Archives/edgar/data/217346/000110465905008155/a05-3904_1ex21.htm

EX-21 7 a05-3904_1ex21.htm EX-21

Exhibit 21

**Certain subsidiaries of Textron (at 1 January 2005)**
(Unless indicated otherwise, all entities listed are wholly-owned.)

| Name | Jurisdiction |
|---|---|
| TEXTRON INC. | Delaware |
| Avco Corporation | Delaware |
| ARS Two Inc. | Delaware |
| Avco Rhode Island (2002) Inc. | Delaware |
| Christine Realty Co., Inc. | Pennsylvania |
| Textron Pacific Limited | Australia |
| Textron Systems Corporation | Delaware |
| Textron Systems Children's Center, Inc. | Massachusetts |
| Textron Systems Rhode Island (2001) Inc. | Delaware |
| Bell Aircraft Services Company | Delaware |
| Edwards & Associates, Inc. | Tennessee |
| Aeronautical Accessories, Inc. | Tennessee |
| Aeronautical Accessories Rhode Island (2001) Inc. | Delaware |
| Aeronautical Rotor Blades, Inc. | Tennessee |
| Edwards & Associates Rhode Island (2002) Inc. | Delaware |
| Bell Helicopter Textron Inc. | Delaware |
| BHT Energy Company | Delaware |
| Bell Aerospace Services Inc. | Delaware |
| Bell Helicopter Overseas Inc. | Delaware |
| Bell Helicopter Rhode Island Inc. | Delaware |
| Bell Helicopter Services Inc. | Delaware |
| Bell Helicopter Asia (Pte) Ltd. | Singapore |
| Bell Helicopter do Brasil Ltda. *(99.99%; 0.01% - Bell Helicopter Textron Inc.)* | Brazil |
| Bell Helicopter India Inc. | Delaware |
| Bell Helicopter Korea Inc. | Delaware |
| Bell Technical Services Inc. | Delaware |
| Cadillac Gage Textron Inc. | Michigan |
| Cessna Aircraft Company | Kansas |
| Australian Aircraft Service Pty Limited | Australia |
| Cessna Aircraft Rhode Island Inc. | Delaware |
| CitationShares Holding, L.L.C. *(75%; 25% - TAG Aviation USA, Inc.)* | Delaware |
| CitationShares Sales, Inc. | Delaware |
| Cone Drive Operations Inc. | Delaware |
| Cone Drive Operations Rhode Island Inc. | Delaware |
| David Brown (Delaware) Holdings Corp. | Delaware |
| David Brown Union Pumps Company *(95%; 5% — Textron Inc.)* | Michigan |
| David Brown Union Pumps (Canada), Ltd. | New Brunswick |
| David Brown Union Pumps Rhode Island Inc. | Delaware |
| Greenlee Textron Inc. | Delaware |
| Greenlee Plumbing Inc. | Delaware |

http://www.sec.gov/Archives/edgar/data/217346/000110465905008155/a05-3904_1ex21.htm

| | |
|---|---|
| Land Finance Company | Delaware |
| LFC Asset Recovery Corporation | Delaware |
| LFC Health Finance Corporation | Delaware |
| Priority Investment Trust | Delaware |

5

---

| Name | Jurisdiction |
|---|---|
| TEXTRON INC. | |
| Textron Financial Corporation *(continued from prior page)* | |
| North Sea Investments Inc. | Delaware |
| RFD-II Inc. | Delaware |
| Systran Financial Services Holding Corporation | Washington |
| Systran Financial Services Corporation | Oregon |
| Textron Business Services, Inc. | Delaware |
| TBS Insurance Agency Services, Inc. | Rhode Island |
| TBS Premium Finance Corporation | Delaware |
| Textron Acceptance Corp., Limited | Australia |
| Textron Business Credit, Inc. | Rhode Island |
| Textron Financial Canada Funding Corp. | Nova Scotia |
| Textron Financial Canada Limited | Ontario |
| Textron Financial Corporation Receivables Trust 2000-B | Delaware |
| Textron Financial Corporation Receivables Trust 2000-C | Delaware |
| Textron Financial Corporation Receivables Trust 2001-A | Delaware |
| Textron Financial Corporation Receivables Trust 2001-CP-1 | Delaware |
| Textron Financial Corporation Receivables Trust 2001-CP-2 | Delaware |
| Textron Financial Corporation Receivables Trust 2002-CP-2 | Delaware |
| Textron Financial Investment Corporation | Rhode Island |
| Textron Financial Investment Services Corporation | Rhode Island |
| Textron Financial - New Jersey, Inc. | Delaware |
| Textron Funding Corporation | Delaware |
| Textron Louisiana Corp. | Delaware |
| Textron PA L.P. | Delaware |
| Textron Pennsylvania Inc. | Delaware |
| Textron Receivables Corporation III | Delaware |
| Textron Receivables Corporation IV | Delaware |
| Textron Receivables Corporation V | Delaware |
| Vacation Villas as the Summit, LLC | Delaware |
| Warbler Corporation | Delaware |
| Textron Fluid and Power Inc. | Delaware |
| Textron Global Services Inc. | Delaware |
| Textron International Inc. | Delaware |
| Textron IPMP Inc. | Delaware |
| Textron Innovations Inc. | Delaware |
| Textron Management Services Inc. | Delaware |
| Textron Marine Services Company | Delaware |

# EXHIBIT T

☒ Rhode Island Secretary of State Website

| Home | Administration | Archives & Public Records | Corporations | Elections | Business Development | Civics & Public Information |
|---|---|---|---|---|---|---|

Corporations Database

# Rhode Island Corporation Search:

| | |
|---|---|
| Corporation Status: | Active |
| Look In: | Corporation Name |
| Search Terms: | |
| Search Type: | Show Records with ALL of the above terms.  Click Here for help with Boolean Searches |

Submit  Reset

---

ANNUAL REPORT AUTO-FILL
Please Select the Year you are filing for:
2003: 🔍 (View in Browser) OR 💾 (Save to PC)

2004: 🔍 OR 💾

2005: 🔍 OR 💾
(Note: You Need Adobe Reader Version 5 or above to create an auto-filled annual report, Click Here for the free download)

For Frequently Asked Questions regarding our Annual Report Autofill function or PDF's, Click Here

## ID# 128290
## Textron Innovations Inc.
**Purpose:** MANAGEMENT OF CERTAIN DOMESTIC INTELLECTUAL PROPERTY FOR THE TEXTRON FAMILY OF AFFILIATED COMPANIES
### General Information

| | |
|---|---|
| **Status:** AC | **Annual Report Image:** |
| **Charter:** FBC | 2003 Annual |
| **Chapter:** TITLE: 7-1.1 | 2004 Annual |
| **State:** DELAWARE | 2005 Annual |
| **Duration:** PERPETUAL | **Help On Viewing Annual Reports** |
| **File Date:** 11 /8 /2002 | |
| **Effective Date:**11/08/2002 | **Sic Code:** 7880--Other business services |
| **Last Report Date:** 03/02/2005 | |
| | **Authorized Shares:** 1,000 COMM $1.00 PAR VALUE, 1,000 PREF $1.00 PAR VALUE |

**Business Address** 

Textron Innovations Inc.
40 WESTMINSTER STREET
PROVIDENCE, RI 02903-, USA
(401)421-2800

## Name and Address of the Registered/Resident Agent


CT CORPORATION SYSTEM
10 WEYBOSSET STREET
PROVIDENCE, RI02903- USA
Agent is active...Registered office is maintained

---

## Primary Officer/Director/Partner/Manager Information

**Title:** PRESIDENT
ARNOLD M FRIEDMAN
40 WESTMINSTER STREET
PROVIDENCE, RI02903-, USA

## Mailing Information

N/A

---

## Event Information

Activity

---

Corporations Division
Office of the Secretary of State Matthew A. Brown
100 North Main St.
First Floor
Providence, RI 02903
corporations@sec.state.ri.us
www.sec.state.ri.us

Business Hours:
M-F 8:30 am to 4:30 pm
Tel. (401) 222-3040
Fax. (401) 222-1309
Director: Sandra Williams