**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TEXTRON INNOVATIONS INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C. A. No. 05-486 (GMS) |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| THE TORO COMPANY, | ) |
| | ) |
| Defendant. | ) |

**TORO'S MOTION FOR LEAVE TO FILE A
SECOND AMENDED ANSWER AND COUNTERCLAIMS**

**I.   Introduction**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, and the Court's Scheduling Order, Defendant, The Toro Company ("Toro"), respectfully moves the Court for leave to file its Second Amended Answer in the form attached to this motion as Exhibit 1.[1] Toro seeks to add defenses of laches and patent unenforceability due to inequitable conduct as well as a counterclaim for declaratory judgment of unenforceability. The deadline to file such a motion to amend is June 1, 2006. Discovery does not close until December 1, 2006. Plaintiff, Textron Innovations, Inc. ("Textron") will not be prejudiced, and no changes need to be made to the current scheduling of this case, including the trial date of June 25, 2007, to accommodate this

---

[1] In compliance with the Court's Local Rules, a copy of the Second Amended Answer and Counterclaims, and a black-lined comparison to the First Amended Answer and Counterclaims, are attached as Exhibits 2 and 3, respectively.

amendment. Leave to amend under Rule 15 is normally freely and liberally granted, and is proper in this case. [2]

## II.  Nature and Stage of the Proceedings

This is an action for patent infringement filed on July 12, 2005. Plaintiff is asserting that Toro infringes U.S. Patent Nos. 6,047,530 ('530 patent), 6,336,311 ('311 patent), and 6,336,312 ('312 patent) (hereinafter collectively referred to as the "patents-in-suit"). The claims of the patents-in-suit are directed to gang-type rotary mowers. Toro answered on August 29, 2005, denying Plaintiff's allegations and raising defenses, including that the patents-in-suit are not infringed and are invalid. Toro's Answer did not include counterclaims, however, because the counterclaims were filed in a separate action in Minnesota on August 15, 2005. The Minnesota complaint included counterclaims for declaratory judgments that the '530, '311 and '312 patents were both invalid and not infringed. Toro specifically reserved the right to add declaratory judgment claims of unenforceability after a reasonable investigation. (Exhibit 4 at ¶ 31.) Toro then brought a motion to transfer this case to Minnesota which was denied by this Court on October 14, 2005.

On November 1, 2005, the parties stipulated to the dismissal of Toro's declaratory judgment claims relating to the '530, '311 and '312 patents in the Minnesota case. (Exhibit 5.) Toro then filed its First Amended Answer in this case on November 9, 2005,

---

[2] Counsel for Toro met and conferred with Plaintiff, Textron, regarding this motion. Textron informed Toro that it would oppose such motion and no agreement could be reached.

adding counterclaims for a declaratory judgment of non-infringement, invalidity and equitable estoppel.

On February 7, 2006, the Court entered a scheduling order which set June 1, 2006 as the deadline to file motions to amend the pleadings. The parties served written discovery, but before any documents were exchanged the parties agreed to stay formal discovery while they explored settlement options. During this period, Toro continued pursuing informal discovery from public sources and non-parties and recently discovered a 1991 published article written by Textron employees that demonstrates the falsity of statements made to the Patent Office by the inventor of the patents-in-suit and his counsel. Toro is now requesting leave to file its Second Amended Answer, based on this recently discovered evidence, to specifically and with particularity allege inequitable conduct. Toro has also had an opportunity to review thoroughly the long delay between Textron's claims of infringement in 2000 and the filing of its lawsuit in 2005.

This motion is being filed within the Court's deadline. Plaintiff's counsel was asked to consent to the amended pleading, but would not. The parties have exchanged some written discovery in this case, but no documents have been exchanged. No depositions have been taken. Discovery does not close until December 1, 2006. Trial is more than one year away - set for June 25, 2007.

### III.    Statement of Facts

Textron first contacted Toro regarding claims of infringement of one of the patents-in-suit via letter in September of 2000. Toro responded in November of 2000 addressing Textron's assertions. There was some additional correspondence, but Toro

assumed the matter was closed. Nearly five years later, Textron filed this lawsuit, in July 2005, containing the same claims made in its September 2000 letter.

Richard D. Bednar is the named inventor on two of the patents-in-suit, and a co-inventor of the third. The patents-in-suit are all related. The '530 patent was filed first. The '311 patent is a continuation of the '530 patent. The '312 patent is a continuation-in-part of the '311 patent. The application that became the '530 patent was filed February 3, 1997. During prosecution of the application, the Examiner rejected pending claims 1, 2, 5, 6, and 10 as obvious in view of two prior art references -- the Smith patent (U.S. Patent No. 5,297,378) and the Mountfield brochure. The patent Examiner concluded that it would have been obvious to modify Smith, which has a similar cutting arrangement as in the applicant's claims, to include a plurality of rotary blade assemblies with rear rollers.

In response to the patent Examiner's obviousness rejection, Richard D. Bednar filed a Rule 132 declaration (Bednar Declaration, Exhibit 6). In that declaration, Mr. Bednar made false representations to the patent Examiner in order to persuade the patent Examiner to allow the rejected claims. Among other representations, Mr. Bednar stated that "[r]otary mowers have typically not been used to cut golf course roughs, which require close trimming and the ability to cut undulating terrain at a relatively short length, because nobody prior to me has recognized the desirability of using, or figure out how to use, gang-type rotary mowers to cut golf course roughs." Mr. Bednar also stated that gang-type rotary mowers were not used to cut golf-course roughs:

> **[c]onventional wisdom in the art of gang-type mowers held that rotary mowers could not be used to cut golf course roughs.** My invention of individual cutting units with the addition of rear rollers, however, made the use of gang-type rotary mowers possible to cut golf course roughs. To the best of my knowledge, gang-type rotary mowers have never had such rollers.

(*See* Exhibit 6, emphasis added.)

Bednar and his patent attorneys made other false statements during the prosecution of the application that became the '530 patent. An amendment dated April 29, 1999, states: "rotary mowers have typically not been used to cut golf course roughs," and "Applicant has invented the first rotary mower that is suitable for cutting a golf course rough." (Exhibit 7 at pp. 5-7.)

Additionally, the Response To Final Rejection dated November 4, 1999 states: "Applicant has invented the first rotary mower that is suitable for cutting a golf course rough." (Exhibit 8 at p. 2.)

Finally, the Supplemental Response to Final Rejection dated December 1, 1999, states: "Applicant has invented the first rotary mower that is suitable for cutting a golf course rough." (Exhibit 9 at p. 5.)

Within the last thirty days, Toro discovered evidence that one of Textron's own employees, Dave Buchanan, published an article entitled Rotaries take to golf courses, which shows that the statements in the declaration of Richard Bednar, and elsewhere in the prosecution documents, were false. (*See* Buchanan Article, Exhibit 10.) The Buchanan Article teaches using gang-type rotary mowers to cut golf course roughs. (*Id*.) "Pine Valley's Della Bianca now uses both a large dedicated rotary mower and two riding rotaries with front-mounted decks to cut his roughs." (*Id*. at 58.) The Buchanan Article is dated January 1991, 6 years before the '530 patent application was filed.

(*See* Exhibit 6, emphasis added.)

Bednar and his patent attorneys made other false statements during the prosecution of the application that became the '530 patent. An amendment dated April 29, 1999, states: "rotary mowers have typically not been used to cut golf course roughs," and "Applicant has invented the first rotary mower that is suitable for cutting a golf course rough." (Exhibit 7 at pp. 5-7.)

Additionally, the Response To Final Rejection dated November 4, 1999 states: "Applicant has invented the first rotary mower that is suitable for cutting a golf course rough." (Exhibit 8 at p. 2.)

Finally, the Supplemental Response to Final Rejection dated December 1, 1999, states: "Applicant has invented the first rotary mower that is suitable for cutting a golf course rough." (Exhibit 9 at p. 5.)

Within the last thirty days, Toro discovered evidence that one of Textron's own employees, Dave Buchanan, published an article entitled <u>Rotaries take to golf courses</u>, which shows that the statements in the declaration of Richard Bednar, and elsewhere in the prosecution documents, were false. (*See* Buchanan Article, Exhibit 10.) The Buchanan Article teaches using gang-type rotary mowers to cut golf course roughs. (*Id*.) "Pine Valley's Della Bianca now uses both a large dedicated rotary mower and two riding rotaries with front-mounted decks to cut his roughs." (*Id*. at 58.) The Buchanan Article is dated January 1991, 6 years before the '530 patent application was filed.

IV.    **Argument**

    A.    **Toro's Motion For Leave To Amend Should Be Granted Under Federal Rule of Civil Procedure 15**

Rule 15(a) of the Federal Rules of Civil Procedure states that, after a responsive pleading has been served, "a party may amend the party's pleading only by leave of Court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a) (emphasis added). The Third Circuit Court of Appeals has interpreted the liberal amendment policy of Rule 15(a) to mean that the rule "embodies a liberal approach to pleading." *Arthur v. Maersk*, 434 F.3d 196 (3rd Cir. 2006). Moreover, the Third Circuit Court has held that Rule 15(a) allows a party to amend upon leave of court and that leave to amend shall be freely given. *Id*. Further, Courts in the Third Circuit follow the Supreme Court's counsel to the "lower federal courts to heed the liberal policy of amendment embodied in Rule 15(a)" *Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.,* 295 F.Supp. 2d 430 (D. Del. 2003) (citing *Foman v. Davis,* 371 U.S. 178, 181-82, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)). Further, "denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." *Foman v. Davis,* 371 U.S. 178 (1962).

    1.    **Toro Has Not Unduly Delayed In Seeking To Amend**

In this case, Toro has not unduly delayed in seeking this amendment to add defenses of laches and inequitable conduct. Toro's motion is timely in that it has been filed on the Court's deadline for motions to amend pleadings. Further, Toro has only recently discovered the Buchanan Article. Upon finding this evidence, Toro concluded

that the Buchanan Article came well before the Bednar Declaration, eight years before in fact, and six years before the filing of '530 patent application. Toro believes that the Buchanan Article clearly taught using gang-type rotary mowers to cut golf course roughs -- in direct opposition to Mr. Bednar's statements and those of his counsel. Consequently, Toro's filing of the instant motion is timely and not the product of undue delay. *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984) (whether a delay has become "undue," and therefore "placing an unwarranted burden on the court," requires inquiry into the moving party's motives for not amending earlier).

### 2. The Proposed Amendment Is Not Made In Bad Faith, Is Not Futile, and Is Sufficiently Pled

The amendment is neither sought in bad faith nor is the amendment futile. Establishing inequitable conduct requires proof by clear and convincing evidence that a misrepresentation made to the Patent Office was material, and that the patentee acted with intent to deceive the Patent Office.

Mr. Bednar's false statements in his Rule 132 declaration (and those of his counsel) are material and were made with the intent to mislead the Examiner into allowing the proposed claims. *Refac Int'l, Ltd. v. Forward Reference Systems, Ltd.*, 81 F.3d 1576, 1583 (Fed. Cir. 1996) (false affidavit is *per se* material) and *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1189 (Fed. Cir. 1993) (inference that false affidavit was with intent to mislead). For at least the reason that Mr. Bednar provided false statements to the Patent Office, Textron's '530, '311, and '312 patents are unenforceable due to inequitable conduct. *See*, *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240 (1933) (inequitable conduct in a prior judicial action

7

relating to one patent precluded enforcement of four other related patents); *see* also *Consolidated Aluminum Corp. v. Foseco Int'l, Ltd.*, 910 F.2d 804 (Fed. Cir. 1990).

Further, the amendment is pled according to the standards of sufficiency for inequitable conduct pleadings. The Third Circuit uses the "*Seville* Test" to determine the sufficiency of an inequitable conduct pleading. *Martek Biosciences Corp. v. Nutrinova Inc.*, C. A. No. 03-896-GMS, 2004 U.S. Dist. LEXIS 20469 (D. Del. Oct. 8, 2004) (Exhibit 11). Rule 9(b) of the Federal Rules of Civil Procedure applies to pleadings of inequitable conduct. In the context of alleged inequitable conduct before the Patent Office during a patent prosecution, Rule 9(b) does not require that a party plead the "date, place or time" of the fraud, so long as that party uses an "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir. 1984), *cert denied,* 469 U.S. 1211, 84 L. Ed. 2d 327, 105 S. Ct. 1179 (1985); see *EMC Corp. v. Storage Tech. Corp.,* 921 F. Supp. 1261, 1262-63 (D. Del. 1996).

In this case, Toro has identified the date, place, and time of the alleged fraudulent act; the exact declaration (Bednar Declaration) at issue, the false statements from that declaration, identified the attorney statements relating to that declaration, and has provided the Court and Textron with the document that shows the falsity of the above statements. Under *Seville* and the law of this Court, Toro has satisfied Rule 9(b).

Finally, Toro's claim of laches is not made in bad faith, and is well grounded in fact. Toro is in possession of the letters between Textron and Toro from the year 2000, regarding the same claims that are now in this lawsuit. Further, Toro's First Amended

8

Answer and Counterclaims included a counterclaim for declaratory judgment of equitable estoppel based on the same delay in filing suit that supports Toro's defense of laches.

### 3. The Proposed Amendment Will Not Unduly Prejudice Textron

To show undue prejudice, Textron must show that it will be unfairly disadvantaged or deprived of an opportunity to present its case if the Court grants Toro leave to amend. "Conclusory allegations of 'prejudice'" are not sufficient to justify denial of leave to amend under Fed. R. Civ. P. 15(a). *Coca-Cola Bottling Co. v. The Coca-Cola Co.*, 668 F.Supp. 906, 922 (D. Del. 1987) (allowing leave to amend when the non-moving party solely argued that the possibility of additional discovery inherent in amendment constituted undue prejudice). Toro's proposed amendment to add inequitable conduct and laches will not prejudice Textron because the case is still in its early stages. The trial date is set for June 25, 2007 -- more than one year away. The parties have not yet exchanged documents, and no depositions have been taken. Moreover, the discovery cut-off is not until December 1, 2006. This Court has allowed motions to amend, even when the discovery order would need to be modified to extend fact discovery. *See*, *Synopsys, Inc. v. Magma Design Automation*, C. A. No. 05-701-GMS, 2006 U.S. Dist. LEXIS 33751 (D. Del. May 25, 2006) (Exhibit 12). Allowing Toro's motion to amend will not delay the present case and the Scheduling Order need not be modified. Therefore, Toro's motion for leave to amend its Answer should be granted.

**V.     Conclusion**

For the foregoing reasons, Toro respectfully requests that the Court grant this Motion for Leave to File a Second Amended Answer and Counterclaims.  A proposed form of order is attached as Exhibit 13 to the Motion for Leave to Amend for the Court's convenience.

|  |  |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |

| | |
|---|---|
| Earl D. Reiland | By:   */s/ David E. Moore* |
| Thomas R. Johnson | Richard L. Horwitz |
| Thomas J. Leach | David E. Moore |
| MERCHANT & GOULD P.C. | Hercules Plaza, 6th Floor |
| 3200 IDS Center | 1313 N. Market Street |
| 80 South 8th Street | Wilmington, Delaware 19899-0951 |
| Minneapolis, MN 55402 | (302) 984-6000 |
| (612) 332-5300 | rhorwitz@potteranderson.com |
| | dmoore@potteranderson.com |
| Dated:  June 1, 2006 | *Attorneys for Defendant The Toro Company* |

734715

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

**<u>CERTIFICATE OF SERVICE</u>**

I, David E. Moore, hereby certify that on June 1, 2006, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

Edmond D. Johnson
Peter B. Ladig
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE  19801

I hereby certify that on June 1, 2006, I have Electronically Mailed the documents to the following non-registered participants:

Scott L. Robertson
Christopher C. Campbell
Hunton & Williams LLP
1900 K Street, N.W.
Washington, DC  20006-1109
srobertson@hunton.com
ccampbell@hunton.com

By:   */s/ David . Moore*
      Richard L. Horwitz
      David E. Moore
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, Delaware 19899-0951
      (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com