IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TEXTRON INNOVATIONS INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C. A. No. 05-486 (GMS) |
| | ) |
| THE TORO COMPANY, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF TEXTRON INNOVATIONS INC.'S BRIEF IN OPPOSITION
TO DEFENDANT'S SECOND MOTION FOR LEAVE TO AMEND
ANSWER AND COUNTERCLAIMS**

THE BAYARD FIRM

Edmond D. Johnson   (#2257)
Peter B. Ladig (#3513)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19801
Telephone : (302) 655-5000
Facsimile: (302) 658-6395

OF COUNSEL:

Scott L. Robertson
Christopher C. Campbell
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109
Telephone: (202) 955-1500

Attorneys for Plaintiff
Textron Innovations Inc.

Dated:  June 13, 2006

627730v1

## TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................................................................1

II. FACTUAL BACKGROUND ..................................................................................................1

    A. The Proceedings To Date..................................................................................................1

    B. Toro's Allegations Pertinent To The Pending Motion .....................................................2

III. ARGUMENT ..........................................................................................................................4

    A. Toro Has Not Pleaded Its Proposed Allegation Of Inequitable Conduct With Particularity.......................................................................................................................5

    B. Toro's Allegation Of Inequitable Conduct Is Demonstrably Baseless, And Should Be Dismissed As Futile. ..................................................................................7

    C. Toro Unduly Delayed In Bringing This Motion And Its Motion Constitutes Bad Faith Within The Meaning Of *Foman v. Davis*...........................................11

IV. CONCLUSION....................................................................................................................13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adams v. Gould, Inc.*, 739 F.2d 858 (3d Cir. 1984) ............................................................. 11

*Baxter International, Inc. v. McGaw, Inc.*, 149 F.3d 1321 (Fed. Cir. 1998) .................... 7, 9

*Ferguson Beauregard/Logic Controls v. Mega System, LLC*, 350 F.3d 1327 (Fed. Cir. 2003) ............................................................................................................................. 5

*Foman v. Davis*, 371 U.S. 178 (1962) ............................................................................... 7, 11

*Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.*, 45 F.3d 1550 (Fed. Cir. 1995) ......................................................................................................................... 9

*In re Hayes Microcomputer Products, Inc.*, 982 F.2d 1527 (Fed. Cir. 1992) ....................... 9

*Hoffman La Roche, Inc. v. Promega Corp.*, 319 F. Supp. 2d 1011 (N.D. Cal. 2004) ......................................................................................................................................... 7

*M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.*, 439 F.3d 1335 (Fed. Cir. 2006) ......................................................................................................................... 9

*Northern Telecom, Inc. v. Datapoint*, 908 F.2d 931 (Fed. Cir. 1990) ................................. 9

*Pharmacia Corp. v. Par Pharm., Inc.*, 417 F.3d 1369 (Fed. Cir. 2005) .............................. 7

*Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326 (Fed. Cir. 2005) .............. 9

## FEDERAL STATUTES

28 U.S.C. § 1404(a) .................................................................................................................. 2

Fed. R. Civ. P. 9(b) .............................................................................................................. 1, 5

I.  INTRODUCTION

Plaintiff Textron Innovations Inc. ("TII") respectfully requests that the Court deny defendant The Toro Company's ("Toro") motion for leave to amend its answer and counterclaims for a second time in this matter to allege defenses of inequitable conduct and laches. First, in several important respects Toro has failed to sufficiently particularize its inequitable conduct allegations as required by Fed. R. Civ. P. 9(b). Second, Toro's inequitable conduct allegation is demonstrably baseless, and should be rejected as futile. Third, Toro's proposed amendments should be rejected on the basis of undue delay and bad faith. Toro does not identify any significant new facts that it has discovered that merit amending its answer and counterclaims. Rather, it is apparent that Toro has sought to amend its defenses on the eve of a formal mediation conference in order to "up the ante" for the purpose of settlement negotiations. Accordingly, the Court should deny Toro's motion.

II.  FACTUAL BACKGROUND

   A.  The Proceedings To Date

As Toro notes, this is a patent infringement action which plaintiff TII filed in this Court on July 12, 2005. TII is the assignee of the three patents-in-suit in this case, U.S. Patent Nos. 6,047,530 ("the '530 Patent"), 6,336,311 ("the '311 Patent"), and 6,336,312 ("the '312 Patent") (collectively, the "patents-in-suit"). The TII Patents are directed to a so-called gang type rotary mower used to cut golf course roughs.[1] The '530 and '311 Patents were invented by Mr. Richard Bednar, a former employee of Ransomes America Corp., which subsequently became a division

---

[1] Golf courses have typically used different types of mowers to mow different areas of the course, in order to deal with issues such as undulating terrain and scalping. Indeed, the Buchanan article cited by Toro, discussed *infra*, admonishes the reader that golf course employees should be instructed as to "which parts of the course are off limits to rotaries." Exhibit A to the Declaration of David Young ("Young Affidavit") filed contemporaneously herewith and attached to this brief. (Toro's Exhibit 10) at 3.

of Textron Inc. The '312 Patent was invented by Mr. Bednar and Mr. Randal Knurr, another former Ransomes America employee.

After the filing of this action, the parties stipulated to Toro's request for an extension of time for Toro to respond until August 16, 2005. On that date, Toro, a Delaware corporation, did not answer, but simply moved that the Court transfer this action on grounds of inconvenience pursuant to 28 U.S.C. § 1404(a). Toro alleged that on August 15, one day before filing its transfer motion, it filed a "mirror image" action against TII in the United States District Court for the District of Minnesota, requesting a declaratory judgment that it did not infringe TII's patents, and/or that the patents were invalid. Toro's declaratory judgment action in Minnesota also alleged a defense of equitable estoppel. *See* Toro Exhibit 4.[2]

Because Toro was engaged in a tactical gambit to transfer this action to Minnesota, it did not assert counterclaims in this Court at that time. Toro concedes this fact, stating, "Toro's Answer did not include counterclaims, however, because the counterclaims were filed in a separate action in Minnesota on August 15, 2005." Toro Brf. at 2.

On October 14, 2005, this Court denied Toro's motion to transfer venue of this action. Following the Court's ruling, the parties stipulated to allowing Toro's amendment of its answer and counterclaims so that it could assert counterclaims of patent invalidity and equitable estoppel in this action. Toro filed its amended answer and counterclaim on or about November 9, 2005.

**B.    Toro's Allegations Pertinent To The Pending Motion**

Toro now asks leave of Court to amend its answer and counterclaims a second time, on this occasion to allege a baseless defense of inequitable conduct, and also to allege a defense of

---

[2] Toro's Minnesota action also asserted claims of patent infringement against two other parties that are not parties to this action, Textron Inc., and Jacobsen - a division of Textron Inc. With respect to these claims, an entirely different set of accused products and two different patents are at issue.

627730v1

-2-

laches that Toro concedes is based upon the same facts it was already aware of when it first filed its declaratory judgment action in Minnesota in August 2005. Toro Brf. at 8-9.

Toro's proposed "inequitable conduct" claim is premised upon supposed misrepresentations that the inventor, Richard Bednar, made during prosecution of the '530 Patent. Toro contends that Mr. Bednar made a misrepresentation in 1999 when he stated in a declaration that "[r]otary mowers have *typically* not been used to cut golf course roughs, which require close trimming and the ability to cut undulating terrain at a relatively short length, because nobody prior to me has recognized the desirability of using, or figure out how to use, gang-type rotary mowers to cut golf course roughs." Toro Proposed Second Amended Answer and Counterclaims (redline version (Toro's Exhibit 3) attached hereto as Young Aff. Exhibit B), ¶49 (emphasis added).

Similarly, Toro's allegation recites Mr. Bednar's declaration with respect to the following passage:

> [c]onventional wisdom in the art of gang-type mowers held that rotary mowers could not be used to cut golf course roughs. My invention of individual cutting units *with the addition of rear rollers*, however, made the use of gang-type rotary mowers possible to cut golf course roughs. To the best of my knowledge, gang-type rotary mowers have never had such rollers.

*Id.* (emphasis added).

Toro also recites occasions upon which Mr. Bednar or his counsel told the PTO that, for these reasons, he had "invented the first rotary mower that is *suitable* for cutting a golf course rough." *Id.*, ¶¶ 50-51 (emphasis added). All of these statements are alleged to have been made in response to an Examiner's rejection that it would have been obvious to modify a prior art patent "to include a plurality of rotary blade assemblies *with rear rollers.*" *Id.*, ¶48 (emphasis added).

The supposed falsity of Mr. Bednar's statements is purportedly based on a 1991 article by a Mr. Dave Buchanan. Within the course of this two and one-half page article, the distribution of which is unknown and unalleged, the author states, "Pine Valley's Della Bianca now uses both a large dedicated rotary mower and two riding rotaries with front-mounted decks to cut his roughs." *See* Toro Brf. at 5.

Toro's proposed amended pleading does not allege that Mr. Bednar ever became aware of this article during the pertinent time frame, nor does it allege facts from which such knowledge could be inferred. The only allegation that remotely addresses this proposition is that Toro contends that the article was written by a "fellow Textron employee," an allegation which itself is incorrect, and stated by Toro in a manner designed to be highly misleading. *See id.,* ¶ 52.

The article (Young Aff. Exhibit A) provides no further information with respect to, *e.g.,* whether the mower referred to had rear rollers at all. And while the article indicates that at this one particular golf course this riding rotary may have been used to cut a golf course rough, there is no description as to the design of the mower to show that it was actually *suitable* for the industry for cutting golf course roughs. As discussed *infra,* a golf course could theoretically use any mower — e.g., rotary, reel, single, gang, drag-behind, etc., or even a single manually-powered push reel mower — to cut grass, including rough, but that does not mean that every such mower would be deemed suitable by the industry for this purpose. As discussed *infra,* Mr. Bednar did not claim to have invented the first lawn mower, or the first rotary, or the first gang mower, and the Buchanan article does not contradict anything that Mr. Bednar said to the Patent Office.

### III.  ARGUMENT

This Court should deny Toro's second motion to amend its answer and counterclaims. First, Toro's proposed inequitable conduct allegation is not sufficiently particularized in several

respects, as required by Fed. R. Civ. P. 9(b). Second, Toro's inequitable conduct allegation is demonstrably baseless, and should be rejected as futile. Third, Toro's proposed amendments should be rejected on the basis of undue delay and bad faith. Toro does not identify any significant new facts that it has discovered that merit amending its answer and counterclaims.[3]

### A. Toro Has Not Pleaded Its Proposed Allegation Of Inequitable Conduct With Particularity.

Toro concedes that it must plead its allegation of inequitable conduct with particularity pursuant to Fed. R. Civ. P. 9(b). *Ferguson Beauregard/Logic Controls v. Mega Sys., LLC,* 350 F.3d 1327, 1344 (Fed. Cir. 2003). Nonetheless, Toro's proposed allegation fails to meet this standard.

First, Toro's proposed amended pleading identifies certain statements of the inventor made in 1999 during the prosecution of the '530 patent-in-suit as the basis for its inequitable conduct claim. However, Toro also includes open-ended allegations apparently designed to give Toro *carte blanche* to base its defense on any additional conduct or statements it chooses. *See* Toro Proposed Second Amended Answer and Counterclaims, ¶53 ("***For at least the reason*** that several false statements were made … [the] patents are unenforceable ….") (emphasis added); Toro Brf. at 7 ("***[f]or at least the reason*** that Mr. Bednar provided false statements to the Patent Office, [the] patents are unenforceable due to inequitable conduct") (emphasis added). Thus, Toro attempts to use this pleading as the proverbial camel's nose under the tent, apparently with

---

[3] In addition, although Toro's brief does not make any reference to this fact, Toro's proposed amended pleading also makes a number of other stylistic and substantive changes. For example, Toro's amended pleading narrows its request for a declaration of non-infringement. Whereas Toro previously requested declaratory judgment of non-infringement as to all Toro products, it now seeks such a ruling as to only specifically identified Toro products, effectively taking a voluntary dismissal of its non-infringement counterclaim as to any other products. *See* Young Aff. Exhibit B (Toro Proposed Second Amended Answer and Counterclaims), ¶42. Toro nowhere explains the reason for this proposed amendment.

the idea that if leave to amend is granted it may thereafter allege any manner of conduct to constitute inequitable conduct.

Such an open-ended pleading does not comply with the particularity requirement. To the extent Toro may rely upon any conduct or statements as the basis for its inequitable conduct defense, it must allege that conduct or statement now, with particularity, including the time, place, manner, etc., of that conduct. Thus, the Court should deny Toro's motion pursuant to Rule 9(b), at least to the extent that it purports to leave open any additional allegations of inequitable conduct not set forth with particularity in the proposed amended pleading.

In addition, as discussed *infra,* Toro makes no allegation that the inventor, Richard Bednar, was even aware of the 1991 Buchanan article that supposedly created the falsity of his statements to the Patent Office. Whether this be regarded as a failure to particularize the pleading, or as showing the substantive futility of the proposed amendment, it is elementary that if Mr. Bednar was not aware of the Buchanan article there is no evidence of the requisite intent to deceive the Patent Office. To the extent that Toro would allege that Mr. Bednar was aware of the Buchanan article, its proposed amended pleading is again deficient, as it makes no allegation that Mr. Bednar was aware of the article (including when he became aware of it, and the like), or any other evidence of intent to deceive for that matter.

Toro also failed to particularize its inequitable conduct allegation with respect to the '311 and '312 Patents. The sole allegations that Toro relies upon occurred during prosecution of the '530 Patent. Toro's counterclaim does not make any allegations with respect to prosecution of the '311 and '312 Patents, yet it contends that these patents are likewise unenforceable due to inequitable conduct. Young Aff. Exhibit B (Toro Proposed Amended Answer and Counterclaim), ¶ 53 ("[f]or at least the reason that several false statements were made to the

Patent Office during the prosecution of the '530 patent, Textron's '530, '311, and '312 patents are unenforceable due to inequitable conduct …."). However, the mere fact of a relationship between the patents is not in and of itself sufficient to render all of them unenforceable even if inequitable conduct had occurred with respect to the '530 Patent. *Baxter Int'l, Inc. v. McGaw, Inc.,* 149 F.3d 1321, 1330-32 (Fed. Cir. 1998) (reversing holding that inequitable conduct with respect to parent application rendered related patent unenforceable); *see also Pharmacia Corp. v. Par Pharm., Inc.,* 417 F.3d 1369, 1374 (Fed. Cir. 2005) ("this court's inequitable conduct cases do not extend inequitable conduct in one patent to another patent that was not acquired through culpable conduct"); *Hoffman La Roche, Inc. v. Promega Corp.,* 319 F. Supp.2d 1011, 1018-23 (N.D. Cal. 2004) (analyzing whether inequitable conduct in one patent bore an "immediate and necessary relation" or was "substantively related or material" to the prosecution of patentee's similar patents, and concluding that it was not). Indeed, the '312 Patent has an additional inventor, Randal Knurr. Toro has provided no particularized allegation as to why all three patents are unenforceable, and accordingly its motion for leave to amend should be denied pursuant to Rule 9(b).

      **B.**     **Toro's Allegation Of Inequitable Conduct Is Demonstrably Baseless, And Should Be Dismissed As Futile.**

As Toro concedes, under *Foman,* a court may deny leave to amend where the proposed amendment would be futile. *Foman v. Davis,* 371 U.S. 178, 181-82 (1962) ("denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated"). This is such a case, because Toro's allegation of inequitable conduct is demonstrably baseless and therefore futile.

The crux of Toro's allegation is that the inventor allegedly made ostensibly false statements in 1999 during the prosecution of the '530 patent-in-suit. The falsity of Mr. Bednar's statement is purportedly based on a comparison with the 1991 Buchanan article. There are several fatal defects in Toro's allegation.

First, as noted above, ***Toro does not even allege that the inventor, Richard Bednar, was aware of the Buchanan article during the pertinent time period***. On its face, the article appears to have been written some eight years earlier in 1991. Certainly, if Mr. Bednar was not even aware of the article — and there is no allegation that he was — his declaration was not a misrepresentation to the Patent Office that constitutes inequitable conduct.

Toro attempts to obscure this fatal omission from its allegation, observing that the Buchanan article appears to have been written by an employee of Jacobsen, a division of Textron. However, Toro does not allege that Mr. Bednar, the inventor, was even employed by Textron in 1991, and in fact he was not.[4] As shown by PTO records, the original assignee of the patents-in-suit (that is, the company to whom Mr. Bednar originally assigned his invention), was Ransomes America Corporation, not Textron. Young Aff. Exhibit C (PTO assignment records showing original assignment of application in February 1997 from Bednar to Ransomes America Corporation). Textron did not acquire Ransomes until 1998, some seven years after the date of the Buchanan article. Young Aff. Exhibit D (Textron SEC Form 10-K, excerpts) at 6 ("Textron acquired Ransomes in January 1998"). Thus, it is impossible to assume from these facts that Mr. Bednar ever became aware of the Buchanan article at any point in time.

---

[4] Here, Toro attempts a sleight of hand, referring to Buchanan as a "fellow Textron employee," without reference to any specific time period. Young Aff. Exhibit B (Toro Proposed Amended Answer and Counterclaim), ¶ 52. But there is no allegation that Bednar was employed by Textron until years after the Buchanan article was written. Nor would it be reasonable to infer that Bednar later learned of the Buchanan article simply because a Textron employee had written it *eight years* beforehand.

It is manifest that Mr. Bednar had no intent to deceive the Patent Office if he was not even aware of the article that supposedly contradicts his statements. *See, e.g., Warner-Lambert Co. v. Teva Pharm. USA, Inc.,* 418 F.3d 1326, 1346-48 (Fed. Cir. 2005) (affirming summary judgment of no inequitable conduct where evidence showed patentee's lack of familiarity with allegedly material information); *Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.,* 45 F.3d 1550, 1557-59 (Fed. Cir. 1995) (intent to deceive not found where patentee unaware of alleged undisclosed prior art reference). And it is well-settled that an allegation of inequitable conduct requires both materiality and an intent to deceive, both of which must be proven by clear and convincing evidence. *In re Hayes Microcomputer Prods., Inc.,* 982 F.2d 1527, 1546 (Fed. Cir. 1992) ("[i]nequitable conduct requires an intent to deceive as well as a threshold level of materiality"); *Northern Telecom, Inc. v. Datapoint,* 908 F.2d 931, 939 (Fed. Cir. 1990) ("[g]iven the ease with which a relatively routine act of patent prosecution can be portrayed as intended to mislead or deceive, clear and convincing evidence of conduct sufficient to support an inference of culpable intent is required").

Conjecture alone is insufficient to establish such an intent. *Hayes,* 982 F.2d at 1546; *see also M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.,* 439 F.3d 1335, 1339-40 (Fed. Cir. 2006) (intent to deceive could not be inferred from mere fact that patentee failed to disclose material information, without evidence that inventor or his attorney deliberately withheld such information). Indeed, even gross negligence is insufficient to justify an inference of an intent to deceive. *Baxter,* 149 F.3d at 1329.

Second, and more fundamentally, the Buchanan article does not contradict any of the statements of Mr. Bednar that Toro cites as the basis for its defense. Toro argues, for example, that the Buchanan article contradicts the inventor's claim of innovation through the use of full-

627730v1

-9-

width rollers in connection with a rotary gang-mower in order to render such a mower suitable for mowing rough. *See supra* at 4-5. **But the Buchanan article never even mentions the use of rollers.** *See* Young Aff. Exhibit A.

Further, the Buchanan article does not even describe the design of the mower that was reportedly used to cut rough, nor does it explain how the mower could be deemed suitable to meet industry needs for mowing rough. At best for Toro, the article merely states that some individual took a rotary mower with more than one deck and used it to cut rough at a golf course.

The article makes reference to an HR-15, which is in fact an old model of a Jacobsen mower.[5] On the same day that Toro filed this motion, it also served its mandatory prior art disclosures, in which it asserted some eighty-seven prior art references as evidence of invalidity. Young Aff. Exhibit E (Toro Prior Art Statement). Tellingly, notwithstanding Toro's "kitchen sink" approach to the disclosure, it did not rely upon the "HR-15" at all as evidence of invalidity, thus conceding its lack of materiality.

The fact that some individual may have taken a prior design for a gang mower and used it to cut a golf course rough, even if true, does not remotely render Mr. Bednar's statements false, nor does it render his invention unpatentable. As the Background of the Invention for the '530 Patent indicates, Mr. Bednar did not claim to have invented the first mower, or the first rotary, or the first gang-type mower. Young Aff. Exhibit F ('530 Patent), col. 1, l. 7-20. He claimed a combination of elements for a gang-type rotary mower that claimed, *inter alia*, full-width rear rollers such that it would be generally suitable for cutting golf course roughs. *See, e.g.,* Young Aff. Exhibit F, col. 4, l. 41-67 (independent claim one) (claiming, *inter alia,* "a rear roller supporting the deck for movement over the ground, the deck having a width such that the roller

---

[5] Again, the inventor did not claim to have invented the first gang-type rotary mower.

extends across substantially the entire width of the deck"). Anecdotal evidence that some other design of gang-type mower may have been used to cut the rough at a particular golf course does not mean that it was generally suitable for doing so. Toro's argument is akin to saying that because someone once used a butter knife to cut a steak, the butter knife would render unpatentable any inventions for improved blades to be used as steak knives.

Accordingly, Toro's proposed amendment is baseless and futile. Toro does not even allege that the inventor was aware of the Buchanan article, and the article does not contradict the inventor's statements to the PTO.

### C. Toro Unduly Delayed In Bringing This Motion And Its Motion Constitutes Bad Faith Within The Meaning Of *Foman v. Davis.*

As Toro states, TII initiated this litigation in July 2005. Toro initially failed to timely answer the complaint, then it intentionally delayed in filing counterclaims as a tactical gambit to buttress its effort to transfer venue to Minnesota. Once that gambit failed, Toro filed a counterclaim in November 2005. But notwithstanding Toro's prior knowledge of the patents-in-suit and the history of discussions between the parties relating to the patents, Toro did not assert a defense of laches or inequitable conduct with its answer and counterclaims. Eleven months have now passed since this action was first filed.

Whether a delay has become "undue" requires inquiry into the moving party's motives for not amending earlier. *Adams v. Gould, Inc.,* 739 F.2d 858, 868 (3d Cir. 1984). An inquiry into Toro's motives shows that leave to amend should be denied. In March 2006, the parties engaged in preliminary settlement discussions. Thereafter, the parties agreed to a more formal mediation conference in order to explore possible settlement of this case and the other patent litigation between the parties in Minnesota. The parties agreed upon a mediator and scheduled the mediation to take place on June 6, 2006 in Chicago.

627730v1

-11-

Approximately two weeks before the mediation was to take place, Toro notified TII of its intent to amend its answer and counterclaims to allege inequitable conduct and laches. The timing of the motion makes it evident that Toro is simply trying to "up the ante" in order to leverage settlement. The Court should not facilitate such strategic behavior.

There is no compelling explanation for Toro's delay in amending. With respect to inequitable conduct, Toro simply states that it only recently became aware of the Buchanan article. However, it provides no declaration to support this representation. And given the defects in the allegation discussed *supra*, Toro's reliance on this "newly-uncovered" Buchanan article is makeweight.

As to the laches defense, Toro concedes that its new laches defense is based upon the same facts — the supposed delay in filing suit — about which its existing equitable estoppel claim is based. *See* Toro Brf. at 8-9 (citing prior correspondence between the parties as evidence of laches, and stating that the previously-filed counterclaim of equitable estoppel is "based on the same delay in filing suit that supports Toro's defense of laches"). Toro was obviously aware of these facts from the outset of this litigation and certainly when it filed its equitable estoppel declaratory judgment action in Minnesota in August 2005, yet it did not assert a laches defense until ten months after the case was filed and, again, on the eve of the mediation conference.

Under these circumstances, undue delay is apparent. Accordingly, the Court should deny Toro's motion.

-13-

## IV.   CONCLUSION

For the foregoing reasons, TII respectfully requests that the Court deny Toro's second motion to amend its answer and counterclaims.

Dated: June 13, 2006                                                                   THE BAYARD FIRM

By: _____
Edmond D. Johnson (#2257)
Peter B. Ladig (#3513)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19801
Telephone: (302) 655-5000

Attorneys for Plaintiff
Textron Innovations Inc.

OF COUNSEL:

Scott L. Robertson
Christopher C. Campbell
**HUNTON & WILLIAMS LLP**
1900 K Street, N.W.
Washington, D.C. 20006-1109
Telephone: (202) 955-1500
Facsimile:    (202) 778-2201

627730v1