## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TEXTRON INNOVATIONS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C. A. No. 05-486 (GMS) |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| THE TORO COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## THE TORO COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE A SECOND AMENDED ANSWER AND COUNTERCLAIMS

Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant The Toro Company*

OF COUNSEL:

Earl D. Reiland
Anthony R. Zeuli
Thomas J. Leach
MERCHANT & GOULD P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(612) 332-5300

Dated:  June 23, 2006

## TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................... 1

II.   FACTUAL BACKGROUND ........................................................................ 1

      A.    The Proceedings To Date ............................................................ 1

      B.    Toro's Allegations Pertinent To The Pending Motion ............................... 2

III.  ARGUMENT ............................................................................................. 3

      A.    Toro Pled Its Inequitable Conduct Claim With Sufficient
            Specificity. ..................................................................................... 3

            1.    Toro's use of "for at least the reason" does not doom its
                  pleading. ............................................................................. 5

            2.    Toro Is Not Required To Allege Intent With Specificity. .............. 5

            3.    Toro's Pleading Is Sufficient As To The '311 and '312
                  Patents. ............................................................................. 6

      B.    Toro's Inequitable Conduct Claim Is Not Futile. ................................. 8

            1.    Mr. Bednar Was A Textron Employee In 1999 When The
                  False Statements Were Made To The Patent Office ..................... 8

            2.    The Buchanan Article Contradicts The Statements-At-
                  Issue. ................................................................................. 9

      C.    Toro Neither Delayed Nor Brought This Motion In Bad Faith ................. 11

IV.   CONCLUSION .......................................................................................... 13

# TABLE OF AUTHORITIES

## CASES

*Adams v. Gould Inc.*,
   739 F.2d 858 (3d Cir. 1984) *cert. denied*,
   469 U.S. 1122, 83 L. Ed. 2d 799, 105 S. Ct. 806 (1985).................................................12

*Baxter International, Inc. v. McGaw, Inc.*,
   149 F.3d 1321 (Fed. Cir. 1998) ...................................................................................6, 7

*In re Burlington Coat Factory Sec. Litigation*,
   114 F.3d 1410 (3d Cir. 1997) ............................................................................................8

*Chiron Corp. v. Abbott Laboratoriess*,
   156 F.R.D. 219 (N.D. Calif. 1994) ........................................................................4, 5, 6, 9

*Consolidated Aluminum Corp. v. Foseco International, Ltd.*,
   910 F.2d 804 (Fed. Cir. 1990) ..........................................................................................6

*Cornell & Co., Inc. v. Occupational Safety & Health Review Commission*,
   573 F.2d 820 (3d Cir. 1978) ............................................................................................12

*Hoffman La Roche, Inc. v. Promega Corp.*,
   319 F. Supp. 2d 1011 (N.D. Cal. 2004) .........................................................................7, 8

*Mylan Pharms., Inc., et al. v. Kremers Urban Development et al.*,
   C. A. No. 02-1628-GMS, 2003 U.S. Dist. LEXIS 20665
   (D. Del. Nov. 14, 2003) ..................................................................................................12

*Paragon Podiatry Laboratories, Inc. v. KLM Laboratoriess, Inc*,
   984 F.2d 1182 (Fed. Cir. 1993) ........................................................................................3

*Pharmacia Corp. v. Par Pharm., Inc.*,
   417 F.3d 1369 (Fed. Cir. 2005) ........................................................................................7

*Refac International, Ltd. v. Forward Reference System, Ltd.*,
   81 F.3d 1576 (Fed. Cir. 1996) .......................................................................................3, 8

## STATUTES

37 C.F.R. § 1.56..................................................................................................................3

Fed. R. Civ. P. 9(b) ...................................................................................................*passim*

## I.    <u>INTRODUCTION</u>

The three arguments Textron makes to defeat Toro's motion are insufficient. Toro's inequitable conduct is sufficiently specific as measured by Fed. R. Civ. P. 9(b), case law of this jurisdiction, and of other jurisdictions.  Futility, Textron's second argument, does not apply because there is no bar to Toro's claims and Toro has stated a claim upon which relief could be granted.  And Toro's motion is not in bad faith[1] or unduly delayed, Textron's third argument, because Toro filed its motion within the time permitted by this Court and only after recently discovering evidence published by Textron that proves the falsity of statements the inventor made to the Patent Office.

## II.    <u>FACTUAL BACKGROUND</u>

### A.    The Proceedings To Date

Textron's version of the proceedings to date needs clarification.  Toro was not "engaged in a tactical gambit" when it filed a motion to transfer in this Court.  (Textron Br. at 2.)   Although this Court did not choose to transfer the case, Toro had significant facts in its favor making its request a reasonable one.  Filing counterclaims contemporaneously with its request to transfer the case would have been a waste of resources and inconsistent with Toro's request.  Textron's stipulation to allow Toro's first amendment to Toro's Answer, adding the original counterclaims, makes this point.  (Ex. 5 to Toro's Motion For Leave To File A Second Amended Answer and Counterclaims.)

It also bears repeating that the counterclaims Toro filed in the Minnesota action did *not* include claims of inequitable conduct.  Toro expressly reserved the right to plead such claims so that it could investigate whether evidence sufficient to satisfy Rules 11

---

[1] Textron suggests that Toro used this motion to "up the ante" for a settlement meeting that occurred on June 6, 2006.  That certainly was not the case and Textron knows it.

and 9(b) could be uncovered in the future.  That evidence, an article written by a Textron employee, was recently uncovered – not because Textron produced it, which it did not, but through Toro's own diligent informal discovery.

### B.    Toro's Allegations Pertinent To The Pending Motion

Textron attempts to redirect the Court's attention away from the false phrases as a whole and toward such words as "suitable" and "typically."  (Textron Br. at 3.)  Although not pertinent to the standard applied to a motion to amend which does not require proof of falsity, the above words do not cleanse the falsity from the statements in which they appear in view of the Buchanan article,[2] which describes in detail the suitability of using rotary mowers, including gang-type rotary mowers, on numerous golf course roughs.

Importantly, the Buchanan article shows and describes exactly what the inventor told the Patent Office did not exist: "a so-called gang type rotary mower used to cut golf course rough."[3]  The Jacobsen (a Division of Textron) HR-15[4] gang-type rotary mower, shown in the upper left of the third page (page 60) of the Buchanan article is described as suitably cutting golf course rough on the first page of the article.  The Buchanan article and the statements-at-issue made to the Patent Office are in direct conflict.

Textron also misses the point with its statement that "Toro's proposed amended pleading does not allege that Mr. Bednar ever became aware of this article during the pertinent time frame."  (Textron Br. at 4.)  Inequitable conduct requires two things: a

---

[2] The Buchanan article, <u>Rotaries take to golf courses</u>, was published in Grounds Maintenance in 1991, as shown at the bottom of page 2. (Young Aff. Ex. A at 2.) Grounds Maintenance is widely distributed and can be obtained at many public libraries – the very location where Toro found the article.  The publication *currently* has over 63,000 subscribers.  See www.grounds-mag.com.

[3] (Textron Br. at 1.)

[4] The HR-15 gang-type rotary mower was not included in Toro's Prior Art Statement because other gang-type rotary mowers having the same configuration were included.

material misrepresentation and intent to deceive the Patent Office. *Refac Int'l, Ltd. v. Forward Reference Sys., Ltd.*, 81 F.3d 1576, 1581 (Fed. Cir. 1996). Toro pled with specificity the false statements made by Mr. Bednar and his counsel, several of which are found in the inventor's declaration. False statements made in a declaration or affidavit are *per se* material. *Id.* at 1583. Intent, not subject to the heightened pleading rule, was pled generally. F.R.C.P. 9(b), *see also See Paragon Podiatry Lab., Inc. v. KLM Labs., Inc*, 984 F.2d 1182, 1189 (Fed. Cir. 1993) (inference that false affidavit was with intent to deceive).

Textron's repeated reference to "rear rollers" is equally misplaced. (Textron Br. at 4.) Only one of Mr. Bednar's false statements mentions rear rollers. The other statements by Mr. Bednar and all four of the statements made by his counsel[5] do not mention rear rollers. For example, there is no reference to rear rollers, express or implied, in the following statement: "Applicant has invented the first rotary mower that is suitable for cutting a golf course rough."

## III.    ARGUMENT

### A.    Toro Pled Its Inequitable Conduct Claim With Sufficient Specificity.

Textron does not dispute that the *Seville* test governs this issue. Textron has offered three arguments on insufficient specificity: (1) one "open-ended" statement in an otherwise specific pleading renders it flawed, (2) Toro's failure to expressly ascribe knowledge of the Buchanan article to Bednar or his attorney dooms the pleading, and (3) Toro did not particularize the inequitable conduct allegation as to the '311 and '312

---

[5] The duty of candor to and good faith dealing with the Patent Office is owed by the inventor, his counsel, and "each individual associated with the filing and prosecution of a patent application." 37 C.F.R. § 1.56.

patents.  All three of Textron's arguments fail because under Rule 9(b), *Seville* and other case law, Toro pled its inequitable conduct claim with sufficient specificity.

This not a case where a defendant asserted non-specific allegations of inequitable conduct.  To the contrary, consistent with *Seville*, Toro provided specific citations to the false statements made to the Patent Office and exactly where those statements are found in the file history.  Toro also provided the Buchanan article to show the falsity of those statements.  The *Seville* Test requires no more.

The decision in *Chiron Corp. v. Abbott Labs.*, 156 F.R.D. 219, 222 (N.D. Calif. 1994), is also helpful.  Abbott pled inequitable conduct based on the misleading declaration of Dr. Steimer.  The Court found the pleading not specific enough under 9(b) because it did not point to particular statements in Dr. Steinman's declaration that were alleged to be misleading.  *Id*. at 222-23.  The Abbott pleading appears below:

> U.S. Patent No. 5,156,949 is unenforceable pursuant to the doctrine of inequitable conduct. In an effort to avoid the patent examiner's obviousness rejection, Chiron intentionally misled the examiner about the state of the art. In particular, on September 14, 1990, Dr. Kathelyn Sue Steimer swore to an affidavit containing information about the likelihood that recombinant antigens would be as effective as natural antigens when used in an HIV diagnostic assay. This affidavit was filed with the U.S. Patent Office, and was deceptive and misleading.

The court's reason for finding the pleading insufficient was: "it fails to state specifically what part of that document is deceptive.  Dr. Steimer's affidavit consists of seven pages and fifteen separately numbered paragraphs. Chiron has no way of knowing from the sparse accusation which of these paragraphs forms the basis for Abbott's accusations." *Id*. at 223.  Importantly, the court did not criticize Abbott's pleading of intent, which can be averred generally under Rule 9(b).

In contrast, Toro specifically recited the exact quotes with citations that it alleges are false and misleading. Unlike Chiron, Textron knows exactly which paragraphs form the basis of Toro's accusations. Toro also sufficiently alleged that the false statements "were made with the intent to mislead the patent Examiner . . . ."

### 1.    Toro's use of "for at least the reason" does not doom its pleading.

Textron cites no law that holds so called "open-ended" statements or the words "for at least the reason" render a claim subject to Rule 9(b) insufficiently pled. Textron points to Toro's single use of the phrase "for at least the reason" and claims that its use dooms Toro's pleading. That is not the case.

Rule 9(b) does not preclude the use of a phrase such as "for at least the reason," especially in the context that Toro used it – to preface its ultimate conclusion of unenforceability. Fed. R. Civ. P. 9(b) ("the *circumstances* constituting fraud or mistake shall be stated with particularity.") Such a phrase, used as Toro has used it in its pleading, does not render the claim flawed under Rule 9(b).

### 2.    Toro Is Not Required To Allege Intent With Specificity.

Textron argues, again without case authority, that Toro's pleading is fatally flawed because it does not expressly allege that Bednar or his counsel were aware of the Buchanan article. (Textron Br. at 6.) Textron's argument is wrong. Toro has sufficiently put Textron on notice of its claim of inequitable conduct by pointing to six specific false statements found in the '530 file history – Toro even provided citations, and pleading intent to mislead the Patent Office. *Compare Chiron*, 156 F.R.D. at 222-23.

In essence, Textron argues that Toro had to also plead intent with specificity by alleging facts that Bednar or his counsel were aware of the Buchanan article. That is

incorrect because Rule 9(b) is clear that "intent, knowledge and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). Toro alleged that Bednar's and his counsel's statements were both false and made with "the intent to mislead" the Patent Office. (Ex. 3, ¶ 52, Toro's Motion For Leave To File A Second Amended Answer And Counterclaims.) No further specificity is required under Rule 9(b) for pleading knowledge or intent. *Id.* Neither Rule 9(b) nor the case law requires specific pleading as to the declarant's or his counsel's knowledge of the falsity at the time of the statements. *See Chiron*, 156 F.R.D. at 222-23.

### 3.    Toro's Pleading Is Sufficient As To The '311 and '312 Patents.

Textron's argument that Toro did not particularize its inequitable conduct allegation as to the '311 and '312 patents fails because the inequitable conduct that occurred in the '530 patent is the same conduct that infected both of the related patents, the '311 and '312 patents. As discussed above, Toro pled with specificity the circumstances surrounding the fraud in the '530 patent prosecution. Inequitable conduct occurring in a parent application (here the '530 patent) can infect and render unenforceable the subsequent related applications, in this case the '311 and '312 patents. *Consolidated Aluminum Corp. v. Foseco Int'l, Ltd.*, 910 F.2d 804, 812 (Fed. Cir. 1990), *citing Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240 (1993).

The cases cited by Textron do not hold that a pleading is insufficiently pled under Rule 9(b) because the pleading party relied on the infectious unenforceability doctrine. To the contrary, one can infer from the cases cited by Textron that pleading is sufficient. For example, in *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1330-32 (Fed. Cir. 1998), the court did *not* hold that McGaw had not pled with specificity whether a

divisional patent application was infected by the inequitable conduct that occurred in an earlier related application. The decision suggests just the opposite. McGaw alleged that inequitable conduct had occurred in a patent application, the '414 application, and then infected a related divisional application that became the '554 patent. The appellate court accepted as true that the only inequitable conduct occurred in the earlier application. *Id*. at 1331-32. In other words, the only pleading of inequitable conduct as to the subsequent related patent, the '554 patent, if any, would have been that it was infected by the specific inequitable conduct that occurred in the '414 application.

In its application of the infectious unenforceability doctrine, however, *Baxter* is distinguishable because it involved a divisional application – a related application but one that is determined by the Patent Office to be a separate invention requiring a separate application. *Id*. at 1331. The court of appeals determined that the inequitable conduct committed in the '414 application was in "no way material" to the '554 patent. *Id*. at 1331-32 ("The claims of the '554 patent were drawn to an entirely different invention that, as the PTO pointed out in its restriction requirement, should never have been included in the '414 application in the first place.")

The *Pharmacia* case did not involve the infectious unenforceability doctrine. *Pharmacia Corp. v. Par Pharm., Inc.*, 417 F.3d 1369, 1374 (Fed. Cir. 2005) ("Par has not asserted on appeal that the '504 patent is unenforceable under a general unclean hands theory; i.e., that a broad pattern of inequitable conduct transfers inequitable conduct from one patent to another. *See Consol. Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 812 (Fed. Cir. 1990)). In *Hoffman La Roche*, the subsequent patents were not direct descendents of the patent in which the inequitable conduct occurred, they did not even

share the same parent application.  *Hoffman La Roche, Inc. v. Promega Corp.*, 319 F.Supp.2d 1011, 1021 (N.D. Cal. 2004) ("Notably, the '818 patent does not share a common parent application with the '195 and '202 patents.").

> **B.      Toro's Inequitable Conduct Claim Is Not Futile.**

Textron makes two futility arguments: (1) that Toro did not allege that Mr. Bednar or his counsel knew of the Buchanan article and (2) that the Buchanan article does not contradict any of statements made by Mr. Bednar or his counsel.  Neither of these arguments renders Toro's inequitable conduct claim futile.

Futility means that the proposed amendment would fail to state a claim upon which relief could be granted.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  In assessing "futility," the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6).  *Id*. Inequitable conduct is a misrepresentation or omission of material information made with intent to deceive the Patent Office.  *Refac Int'l*, 81 F.3d at 1581.  There is no bar to Toro's claim and Toro's pleading includes sufficient facts which viewed in a light most favorable to Toro could result in a finding of unenforceability of the patents-in-suit.

> **1.      Mr. Bednar Was A Textron Employee In 1999 When The False Statements Were Made To The Patent Office**

Textron does not deny that Mr. Bednar was a Textron employee in 1999 – the period in which Bednar and his counsel falsely told the Patent Office that "applicant had invented the first rotary mower that is suitable for cutting a golf course rough."  (Textron Br. at 8.)  However, other Textron employees, through the Jacobsen division of Textron, had been writing about the suitability of using gang-type, rotary mowers to cut golf course roughs dating back to 1991.  The Buchanan article was published in a popular,

widely circulated publication called Grounds Maintenance.[6]  The article featured the

Jacobsen HR-15 mower – a gang-type rotary mower that was still being sold by

Textron's Jacobsen division in 1999 – described as suitable for cutting golf course

roughs.  (*Id.*)

　　　　As discussed above, Toro is not required to plead knowledge or intent with

specificity.  It is enough to allege generally that Mr. Bednar's false statements and those

of his counsel "were made with the intent to mislead the patent Examiner . . . ."  Rule

9(b), *see also Chiron*, 156 F.R.D. at 222-23.   Toro has done so.

　　　　　　　2.　　　The Buchanan Article Contradicts The Statements-At-Issue.

　　　　Textron's argument that the Buchanan article does not contradict the statements

made by Mr. Bednar and his counsel is incorrect.  Below is a chart demonstrating the

contradictions (emphasis added):

| Statements Made By Mr. Bednar And His Counsel | Buchanan Article: **Rotaries** take to golf courses. (emphasis added) |
|---|---|
| **"Applicant has invented the first rotary mower that is suitable for cutting a golf course rough."**<br><br>Citations in '530 File History:<br><br>Amendment dated April 29, 1999;<br><br>Response to Final Amendment dated Nov. 4, 1999; and<br><br>Supplemental Response to Final Rejection dated Dec. 1, 1999 | "Larry Della Bianca got an unexpected bonus when he took delivery of his **new rough mower**—his fairways improved. Shortly after the **new rotary mower** came to Pine Valley Golf Club  . . . ."<br><br>"One of my people had just mowed the **rough** (with the new mower) . . . .The new mower that gave Della Bianca such a fine cut . . . was a **rotary mower**."<br><br>"With cart traffic driving down the **rough**, we've had a tendency to have the grass lay down.  The **rotary** makes the grass stand up for denser growth."<br><br>"Pine Valley's Della Bianca now uses both a large dedicated **rotary mower** and two |

---

[6] *Supra*, footnote 3.

9

| | riding **rotaries** with front-mounted decks to cut his **roughs**." |
|---|---|
| **"Rotary mowers have typically not been used to cut golf course roughs, . . . because nobody prior to me has recognized the desirability or using, or figured out how to use, gang-type rotary mowers to cut golf course roughs."** | Photo of HR-15 **gang-type rotary mower** on top left of page 60. |
| | "In fact, two of my 18 **roughs** are extremely wet, and the way the HR-15— that's **the large rotary**—floats over them, I can cut them when they're wet without tracking." |
| **"Conventional wisdom in the art of gang-type mowers held that rotary mowers could not be used to cut golf course roughs."** | "Although most superintendents restrict **rotary** use solely to **roughs**, . . . ." |
| Citations in '530 File History: | "pine cones and other debris that tend to clutter up **roughs** disappear under the **rotary's** blades." |
| Bednar Declaration filed Nov. 4, 1999. | |

Instead of addressing the contradictions above, Textron's brief is limited to discussing full-width rear rollers in connection with a rotary gang-mower. (Textron Br. at 10.) But, as shown above, the inventor and his counsel did not limit their statements to gang-type rotary mowers having full width rear rollers. Rather, to get the '530 patent issued, Mr. Bednar and his counsel made broad sweeping statements about rotary mowers generally, such as "Applicant has invented the first *rotary mower* that is suitable for cutting a golf course rough." (Ex. 3, ¶ 51, Toro's Motion For Leave To File A Second Amended Answer And Counterclaims.)

The statements above were not limited to gang-type rotary mowers with rear rollers or even gang-type mowers. The statements, which the inventor and his counsel

could have easily modified to include the limitation of full-width rear rollers or even gang-type rotary mowers, are false as shown by Textron's own earlier publication. [7]

Toro's inequitable conduct pleading is anything but futile. It was pled with sufficient specificity, includes the elements of the claim, and provides reference to a Textron publication that directly contradicts the statements made by the inventor.

### C.    Toro Neither Delayed Nor Brought This Motion In Bad Faith

Textron argues that Toro unduly delayed filing its motion until the eve of a settlement conference in a bad faith attempt to gain leverage at the conference. Nothing could be further from the truth. The Court's scheduling order provides that motions to amend the pleadings were due on June 1, 2006. Although the parties agreed to postpone formal discovery while they focused on settlement, the attorneys' agreed that they would not seek extension of the Court's deadlines and would comply with the deadlines. In early May, Toro discovered the Buchanan article in a public library. Cognizant of the upcoming June 1 deadline, Toro prepared a draft second amended answer and counterclaim and sent it to Textron on May 23 requesting consent to file amended pleading. Textron responded on May 24 denying Toro's request. Toro prepared its motion and timely filed it on June 1.

That the mediation between the parties coincidently occurred on June 6 is of no moment. As Textron points out, the parties had been working on arranging a date when all principals could attend a mediation since March 2006. (Textron Br. at 11.) The scheduling order also required Toro to serve its Prior Art Statement on June 1, which it did. Textron is not claiming that was also a ploy in bad faith to garner leverage at the

---

[7] Several claims of the '530 patent, '311 patent, and '312 patent do not include the limitation of a full-width rear roller. For example, see claim 1 of the '311 patent.

mediation.  There was no bad faith on Toro's part in filing its motion to amend on June 1, the Court's deadline.  *See Mylan Pharms., Inc., et al. v. Kremers Urban Development et al.*, C. A. No. 02-1628-GMS, 2003 U.S. Dist. LEXIS 20665, *8-9 (D. Del. Nov. 14, 2003) (Exhibit A hereto).  Nor was there delay.

Delay alone is an insufficient ground to deny leave to amend. *Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n.*, 573 F.2d 820, 823 (3d Cir. 1978).  However, "at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Adams v. Gould Inc*., 739 F.2d 858, 868 (3d Cir. 1984) cert. denied, 469 U.S. 1122, 83 L. Ed. 2d 799, 105 S. Ct. 806 (1985).  Toro's motion was filed within the time set by the Court.  Fact discovery does not close until December 1, 2006, expert discovery does not end until January 15, 2007, trial is more than one year away, no depositions have been taken by either side, and no documents have been formally exchanged.  As to both laches and unenforceability, there is no prejudice to Textron or unwarranted burden on this Court; and no undue delay on Toro's part in bringing this motion.

## IV.    <u>CONCLUSION</u>

Mr. Bednar's statements and those of his counsel to the Patent Office in 1999 were false as established by the 1991 article written by another Textron employee.  Toro pled each of the false statements with specificity and identified exactly where they are found in both Mr. Bednar's declaration and the patent's file history.  Toro also pled generally that the inventor and his counsel made these statements with the intent to deceive the Patent Office into issuing Mr. Bednar's patent, which did occur.  Finally, Toro pled that the inequitable conduct in the '530 patent infected the subsequent related

patents, the '311 and '312 patents, rendering them unenforceable. No more is required of Toro under Rule 9(b), *Seville,* or this Court's other law. Toro's motion was timely within the Court's scheduling order. It was neither unduly delayed nor made in bad faith.

For the foregoing reasons, Toro respectfully requests that its motion to amend be granted.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>POTTER ANDERSON & CORROON LLP</td></tr>
</table>

OF COUNSEL:

|  |  |
|---|---|
| Earl D. Reiland | By:  _/s/ David E. Moore_ |
| Anthony R. Zeuli | Richard L. Horwitz |
| Thomas J. Leach | David E. Moore |
| MERCHANT & GOULD P.C. | Hercules Plaza, 6th Floor |
| 3200 IDS Center | 1313 N. Market Street |
| 80 South 8th Street | Wilmington, Delaware 19899-0951 |
| Minneapolis, MN 55402 | (302) 984-6000 |
| (612) 332-5300 | rhorwitz@potteranderson.com |
|  | dmoore@potteranderson.com |

Dated:  June 23, 2006

*Attorneys for Defendant The Toro Company*

738253

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on June 23, 2006, the attached document

was hand delivered to the following persons and was electronically filed with the Clerk of

the Court using CM/ECF which will send notification of such filing(s) to the following

and the document is available for viewing and downloading from CM/ECF:

Edmond D. Johnson
Peter B. Ladig
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE  19801


I hereby certify that on June 23, 2006, I have Electronically Mailed the documents

to the following non-registered participants:

Scott L. Robertson
Christopher C. Campbell
Hunton & Williams LLP
1900 K Street, N.W.
Washington, DC  20006-1109
srobertson@hunton.com
ccampbell@hunton.com

By:  /s/ David E. Moore
     Richard L. Horwitz
     David E. Moore
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, Delaware 19899-0951
     (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com

695031