IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TEXTRON INNOVATIONS INC., | ) | |
| | ) | C. A. No. 05-486 (GMS) |
| Plaintiff, | ) | |
| v. | ) | (Jury Trial Demanded) |
| | ) | |
| THE TORO COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

I, Robert B. Skromme, declare:

1.  I have been retained as a technical expert witness in this case.

**Qualifications, Background, and Experience**

2.  I have more than 55 years of experience working and consulting in the farm, lawn and garden equipment, agricultural and turf-care industries. I have experience with large-area mowers. My curriculum vitae, which fully explains my background and qualifications, is attached as Attachment A to this declaration.

3.  As I understand the term "a person skilled in the art" in the turf-care industry, I am such a person.

4.  I am a registered Professional Engineer ("P.E.") in the state of Wisconsin.

5.  I obtained a Bachelor of Science in agricultural engineering from Iowa State University, Ames, Ia.

6.  From 1951 to 1962, I was employed by the J. I. Case Company, in which I held various engineering positions. In those positions I designed hay and forage machines, self-propelled combines, and corn harvesting machines.

7. From 1962 to 1964, I was employed by Sunbeam Corporation as a Group Leader. As the Group Leader, I managed the design and development of lawn, garden and snow removal equipment.

8. From 1964 to 1968, I was employed by Badger Northland, Inc. where I was the Manager of Engineering. As the Manager of Engineering, I managed the design, shop, and test function of a complete product line of farmstead materials handling field hay and forage equipment.

9. From 1968 to 1982, I was employed by Massey-Ferguson Inc. as the Chief Engineer of Implements, Hay & Forage Equipment. As the Chief Engineer, I was in charge of the design and development of all agricultural material handling, planting, tillage, and hay & forage machines.

10. From 1982 to 1987 I was employed by White New Idea, Inc. as Vice President, Engineering. As the Vice President of Engineering, I was responsible for all new product development, product safety and liability, and patent management. The product line included self-propelled harvesting machines, hay and forage equipment and material handling equipment.

11. In 1988, I began consulting and providing expert reports in product liability, patent infringement, product safety and litigation avoidance. I have provided expert technical support on agricultural, industrial, and outdoor products.

**The Patents In This Case**

12. I have read and formed an understanding of the patents at issue in this case. I have also read parts of the file histories of each of those patents.

13. I had no difficulty reading and understanding the patents and the terminology used. Based on my background, education, and experience, I am fully able to provide my

understanding of the ordinary and customary meaning, as a person skilled in the art of turf-care technology, of any of the patent claim terms. I am also prepared to provide my testimony as to the definitions provided of certain claim terms in the patents themselves.

14. Counsel has asked me, as one skilled in the art of turf-care technology, to provide the ordinary and customary meanings of the terms below as of the date of patent filing and, if applicable, any special definitions of those terms provided in the patents.

15. In arriving at my interpretations below, I began by considering each term within the context of its claim and other claims of that patent.

16. I have reviewed the '530, '311, and '312 patents and parts of their file histories to provide the following opinions on the patents.

### Claim Terms

17. While the meaning of "mounted on the frame" may seem broad in the general context, in the context of these patents the inventor specifically explained that the invention's deck assemblies were mounted in a very precise and advantageous manner. Thus, the meaning of "mounted on the frame" as used in these patents is: attached directly to the frame so that each deck is mounted on its own lifting arm so that the deck can move vertically relative to the frame and can pivot relative to the frame about three mutually perpendicular axes."

18. The phrase "deck defining a downwardly opening space" has an ordinary and customary meaning in the turf-care industry. That meaning has not changed since the early-1900's. The ordinary and customary meaning of "deck defining a downwardly opening space" is: "A deck having a generally vertical wall of a uniform height where the opening is only downward. An example is a mulching-type deck."

3

19. The term "lifting arm" may have a broader meaning in the turf-care industry, but in the context of these patents the inventor specifically defined that lifting arm of the invention. One of skill in the art would understand the patents' definition of "lifting arm" is "a generally L-shaped, horizontally-extending arm having inner and outer ends that lift the deck relative to the frame. The arm has an inner end pivotally connected to the frame and an outer end pivotally connected to the deck so that it pivots about a vertical axis and also pivots about a separate axis extending forward to rearward."

20. The term "side plates" was also defined by the inventor in the patents: "A pair of laterally-spaced, vertically-extending, flat, relatively narrow pieces extending from the front wheels to the rear roller.

21. The term "roller extends between the side plates and supports the side plates for movement over the ground" is understandable to those skilled in the art at the time the first patent was filed. It meant, and still means, that "each end of the rear roller is connected to and supports the side plates for movement over the ground."

22. The phrase "each rear deck assembly being aligned with a respective gap between adjacent front deck assemblies" would have had the following meaning to someone in the turf-care industry when the '530 patent was filed: "All rear deck assemblies must align with a gap between adjacent front deck assemblies." The word "each" is synonymous with the word "all."

23. The patents define "roller" as a "device that both resists scalping and stripes the grass."

24. The term "gang-type rotary lawn mower" had an ordinary and customary meaning at the time the first patent was filed: "A mowing machine that would have more than one independent rotary cutting unit."

4

25. The claim term "front and rear wheels," as used in these patents, means two wheels in the rear and two wheels in the front. That's the way it's shown and described in the patents.

26. The inventor also defined "rotary cutting deck assembly" in his patents. One skilled in the art of turf-care technology would understand the term to mean: "a cutting device with a pair of laterally-spaced, generally vertically-extending side plates, front wheels supporting the side plates for movement over the ground and a rear roller extending between and supporting the side plates. The assembly would also include a single-spindle rotary cutting deck mounted between the side plates and a cross member."

27. One skilled in the art could not to determine what the phrase "roller extends across substantially the entire width of the deck" means even after reading the patents. For example, does the phrase include or exclude rollers that extend the full width of the deck? And as to rollers that do not extend the full width of the deck, at what length is the roller is too short? In other words, how short must a roller be such that it does not extend across substantially the entire width of the deck?

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: August 4, 2006

By: *Robert B. Skromme, P.E.*
Robert B. Skromme, P.E.

5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on August 4, 2006, the attached document was electronically mailed and hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

Edmond D. Johnson
Peter B. Ladig
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
tjohnson@bayardfirm.com
pladig@bayardfirm.com
KWright@bayardfirm.com

I hereby certify that on August 4, 2006, I have Electronically Mailed and Federal Expressed the documents to the following non-registered participants:

Christopher C. Campbell
Hunton & Williams LLP
1900 K Street, N.W.
Washington, DC 20006-1109
srobertson@hunton.com
ccampbell@hunton.com
mlouey@hunton.com
lmarlatt@hunton.com
fmckeon@hunton.com
dmckim@hunton.com

Michael P. F. Phelps
David Young
Hunton & Williams LLP
1751 Pinnacle Drive, Suite 1700
McLean, Virginia 22102
mpphelps@hunton.com
dyoung@hunton.com

By:   /s/ David E. Moore
      Richard L. Horwitz
      David E. Moore
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, Delaware 19899-0951
      (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

695031