## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TEXTRON INNOVATIONS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C. A. No. 05-486 (GMS) |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| THE TORO COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## TORO'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899-0951
(302) 984-6000

OF COUNSEL:

rhorwitz@potteranderson.com
dmoore@potteranderson.com

Earl D. Reiland
Anthony R. Zeuli
Thomas J. Leach
MERCHANT & GOULD P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(612) 332-5300

*Attorneys for Defendant*
*The Toro Company*

Dated: August 18, 2006

**TABLE OF CONTENTS**

I.       INTRODUCTION ................................................................................................ 1

II.     BACKGROUND AND STATEMENT OF FACTS ........................................... 2

III.    ARGUMENT ...................................................................................................... 3

  A.    ADDITIONAL LEGAL AUTHORITY ........................................................................ 4

    1.   The role of the specification and the summary of the invention .......................... 4

    2.   Cases Define "Each" as "Every One." ............................................................... 6

    3.   The Timing Of Claim Construction ................................................................... 7

  B.    DISPUTED CLAIM TERMS ..................................................................................... 8

    1.   "Gang-Type Rotary Lawn Mower" ................................................................... 8

    2.   "Front and Rear Wheels" ................................................................................ 12

    3.   "Rotary Cutting Deck Assemblies/Assembly" ................................................ 14

    4.   "Deck Assembly Mounted On The Frame" ..................................................... 18

    5.   "Deck Defining A Downwardly Opening Space" ........................................... 22

    6.   "Roller Extends Across Substantially the Entire Width of the Deck" .............. 24

    7.   "Lifting Arm" .................................................................................................. 27

    8.   "Side Plates" ................................................................................................... 29

    9.   "Rear Roller Extends Between The Side Plates And Supports The Side Plates
        For Movement Over The Ground" ................................................................... 32

   10.  "Each Rear Deck Assembly Being Aligned With A Respective Gap Between
        Adjacent Front Deck Assemblies" .................................................................. 33

   11.  "Roller" ........................................................................................................... 36

IV.    CONCLUSION ................................................................................................ 37

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Applied Med. Res. Corp. v. United States Surgical Corp.*,
   448 F.3d 1324 (Fed. Cir. 2006) ................................................................. 18

*AstraZeneca AB v. Mut. Pharm. Co.*,
   384 F.3d 1333 (Fed. Cir. 2004). ................................................................. 22

*Augustine Med., Inc. v. Gaymar, Inc.*,
   181 F.3d 1291 (Fed. Cir. 1999) ................................................................... 7

*C.R. Bard v. United States Surgical*,
   388 F.3d 858 (Fed. Cir. 2004), ........................................................... *passim*

*Catalina M'ktg Int'l v. Coolsavings.com*,
   289 F.3d 801 (Fed. Cir. 2002) ................................................................. 11

*Cross Medical Products v. Medtronic Sofamor Danek*,
   424 F.3d 1293 (Fed. Cir. 2005) ............................................................... 11

*Honeywell Int'l, Inc. v. ITT Indus., Inc.*,
   452 F.3d 1312 (Fed. Cir. 2006) .............................................. 5, 19, 21, 28

*Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*,
   450 F.3d 1350 (Fed. Cir. 2006) .......................................................... *passim*

*Medtronic, Inc. v. Guidant Corp.*,
   2004 U.S. Dist. LEXIS 10020, 2004 WL 1179338 (D. Minn. 2004) .............. 7, 34, 35

*Microsoft Corp. v. Multi-Tech Sys.*, Inc.,
   357 F.3d 1340 (Fed. Cir. 2004) .......................................... 4, 15, 20, 28

*MicroStrategy, Inc. v. Bus. Objects, S.A.*,
   331 F.Supp.2d 432, 440-41 (E.D. Va. 2004),
   *aff'd* 429 F.3d 1344 (Fed. Cir. 2005) .................................. 7, 28, 34, 35

*Ocean Innovations, Inc., v. Archer*,
   145 Fed. Appx. 366 (Fed. Cir. 2005) ......................................................... 6

*On Demand Machine Corp. v. Ingram Indus., Inc.*,
   442 F.3d 1331 (Fed. Cir. 2006) .......................................... 6, 17, 19, 22

*Pannu v. Iolab Corp.*,
   155 F.3d 1344 (Fed. Cir. 1998.) ............................................................. 26

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ................................................................ *passim*

*Rexnord Corp. v. Laitram Corp.*,
  274 F.3d 1336 (Fed. Cir. 2001) ................................................ 16, 17, 20, 29

*Schering Corp. v. Amgen Inc.*,
  222 F.3d 1347 (Fed. Cir. 2000) ................................................... 8, 20, 28

*SciMed Life Sys., Inc. v. Advanced Cardio-Vascular Sys., Inc.*,
  242 F.3d 1337 (Fed. Cir. 2001) ................................................ 21, 28, 35, 36

*Verve, L.L.C. v. Cranse Cams, Inc.*,
  395 F.Supp. 2d 558 (E.D. Mich. 2005) .......................................... 26

*Wireless Agents LLC v. Sony Ericsson Mobile Comm'ns AB*,
  2006 U.S. LEXIS 18933 (Fed. Cir. Jul. 26, 2006) ............................ *passim*

*York Prod., Inc. v. Central Tractor Farm & Family Ctr.*,
  99 F.3d 1568 (Fed. Cir. 1996). .................................................. 26

## I.    INTRODUCTION

Textron did not invent rotary lawn mowers. It did not invent gang-type rotary lawn mowers either. Both were well known in the prior art well before Textron developed the claimed subject matter in Textron's patents. If Textron actually invented something, it invented a specifically constructed gang-type rotary lawn mower suitable for cutting golf course roughs, which require close trimming and undulating terrain cut at a relatively short length.

Textron's patents' Summary of the Invention portions specify the structure and mounting of that structure that "enables the lawn mower to cut the undulating terrain of a golf course rough and to be controlled for close trimming." That construction is the claimed invention – the specifications make clear that the claimed invention is narrower than the claim language, in the abstract, might imply.

Textron argues just the opposite: that claim terms and phrases can be separated from the specifications' use of those terms and phrases and are entitled to a broader construction. Contrary to Textron's argument, Federal Circuit law, both pre- and post-*Phillips*, holds that potentially broader claim terms must yield when the specification, especially the Summary of the Invention portion, makes clear that the claimed invention is narrower.

Such is the case here. The field of art, lawn mowers, is a crowded one with a "vast number of mower designs and mower manufacturers." (JA-0150-51, ¶ 4.) The patentee specified the problems with the other known prior-art mowers, but then clearly described a specific design of lawn mower that solved those problems. Importantly, the patentee never described any other lawn mower construction that would solve the problems identified. That is because the scope of the invention reaches no further.

## II.    BACKGROUND AND STATEMENT OF FACTS

Textron alleges in this case that before the device described in the patents-at-issue, golf course mowing machines were incapable of performing "highly-efficient" rough cutting while also providing striped grass, and that these problems led the inventors to a gang-type frame-mounted rotary mower that could mow roughs, follow undulations, and provide greater striping capability than "typical" rotary mowers. (Textron Br. at 2.) Contrary to Textron's allegations, the patents describe the problems to be solved differently. They describe the problems as the inability to closely trim and cut undulating terrain at a short length – both problems having to do with the structure of the cutting deck assemblies and how they are mounted on the frame:

> Thus, rotary mowers have not been used to cut golf course roughs, which require close trimming and the ability to cut undulating terrain at a relatively short length.
>
> This construction enables the lawn mower to cut the undulating terrain of a golf course rough and to be controlled for close trimming. Also, as mentioned above, the lawn mower requires much less maintenance than the reel mowers historically used to cut golf course rough.

('530 pat., col. 1, ll. 17-20 and col. 2, ll. 4-8.) Although Textron would like to have this Court believe that its patents cover all gang-type rotary mowers that stripe the grass and follow undulations of a rough (Textron Br. at 2), the patents are limited to a particular structural construction. The structural construction that enables cutting undulating terrain and close trimming is described as a cutting deck assembly having a single-spindle cutting deck mounted between two side plates that are supported by wheels in the front and a roller in the rear. ('530 pat., col. 1, l. 23 – col. 2, l. 9.) These specific cutting deck assemblies are mounted to the frame in a manner so that they can pivot about three mutually perpendicular axes to enable "the deck 38 to adjust to undulating terrain, thereby substantially avoiding scalping." (*Id* at col. 4, ll. 29-31.)

2

Furthermore, Textron's charge of "copying" is false. (Textron Br. at 2.) Toro will show that its mowers differ substantially from Textron's alleged invention; many of those differences underlie the parties' disputes as to claim construction.

## III.    ARGUMENT

Many of the parties' claim construction disputes boil down to whether Textron is allowed to narrowly define the invention in the specification, but then attempt to prohibit competition through the use of claim terms and phrases that could, in the absence of the specification, imply a broader meaning. Textron's approach, which assigns a minor role to the specification, was specifically addressed and rejected in the *Phillips* decision. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319-1322 (Fed.Cir. 2005) ("Assigning such a limited role to the specification, and in particular requiring that any definition of claim language in the specification be express, is inconsistent with our rulings that the specification is the 'single best guide to the meaning of a disputed term.'").

Since *Phillips*, the use of the specification in defining the meaning of disputed terms and phrases has seen an appropriate resurgence. This has particularly been true in cases such as this one where the Summary of the Invention defined a particular structural construction as the invention and no alternate embodiments were disclosed in the remainder of the patent. For the Court's convenience, a short discussion of this case law is provided below.

A.    **Additional Legal Authority**

Several key cases, some coming after the en banc *Phillips* decision, conflict with some of the law presented by Textron. A short summary of these cases is provided here to enable a shorter recitation below when applying the cases to specific arguments.

1.    **The role of the specification and the summary of the invention.**

In *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340 (Fed. Cir. 2004), the Federal Circuit affirmed the trial court's claim construction that placed substantial weight on the Summary of the Invention. *Id.* at 1348. The dispute was whether the asserted claims of three related patents were limited to the transmission of data between a local and remote site "over a telephone line." *Id.* at 1347. Although some of these claims were arguably broad enough to imply transmission of data over technology other than a telephone line if the specifications were ignored, both courts held that the patent specifications "repeatedly and consistently describe[d] the local and remote systems of the claimed inventions as communicating directly over a telephone line." *Id.* at 1348. Both courts relied on the Summary of the Invention portion of the specifications and use of the word "includes," which preceded description of the telephone line. *Id.* In addition, none of the embodiments shown or described in the patents included a transmission device other than a telephone line. *Id.* Despite claim terms that, in the abstract, implied a broader invention, the Federal Circuit held the specifications shared by all three patents led to the "inescapable conclusion" that the transmission device was limited to a telephone line. *Id.* (citations to other 3-patent cases similarly construed omitted).

Less than one year later, in *C.R. Bard v. United States Surgical*, 388 F.3d 858 (Fed. Cir. 2004), the Federal Circuit again affirmed a trial court's reliance on the Summary of the Invention and other parts of the specification to define the scope of the

4

patentee's claims. The issue was whether the claim term "plug" was defined in the specification as requiring pleats, a limitation not expressly recited in the asserted claim. Both the trial and appellate courts relied on the Summary of the Invention's description that "the present invention . . . includes a pleated surface." *Id.* at 860. Again, the word "includes" played a prominent role, as did the patentee's words "the present invention." Additionally, all of the embodiments described included a pleated plug. *Id.* at 861. The Federal Circuit held that "the patent unequivocally defines the claimed plug as having pleats." *Id.* at 864. Importantly, although the patentee had also made limiting statements during prosecution, the appellate court limited its holding based on the specification alone. *Id.* at 866.

In *Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 450 F.3d 1350 (Fed. Cir. 2006), the Federal Circuit affirmed this Court's construction of "host interface" as "a direct parallel bus interface." *Id.* at 1353. Despite arguments of violation of the doctrine of claim differentiation, the Federal Circuit's affirmance relied on the specification, its Summary of the Invention, and the fact that no other type of host interface was shown or described. *Id.* at 1354-55 ("neither do the claims enlarge what is patented beyond what the inventor has described as the invention.").

In *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, (Fed. Cir. 2006), another post-*Phillips* decision, the Federal Circuit affirmed the trial court's construction of "fuel system component" limited to a "fuel filter." *Id.* at 1318. Although the patent at issue did not have a portion titled "Summary of the Invention," the specification repeatedly referred to the fuel filter as part of "this invention" or "the present invention."

*Id.* The Federal Circuit found that "[t]he public is entitled to take the patentee at his word." *Id.*

In another post-*Phillips* decision, *Ocean Innovations, Inc., v. Archer*, 145 Fed. Appx. 366 (Fed. Cir. 2005), the Federal Circuit construed the claim term "floatation units" as "airtight and hollow flotation units" because, "[m]ost importantly, the 'Summary of the Invention' section of the patent states: The dock is 'assembled from a combination of tall and short, hollow, air-tight floatation units.'" *Id.* at 370.

Since *Phillips*, two additional key decisions have used the specification to define claim terms that, absent reference to the specifications, could imply a broader meaning. *Wireless Agents LLC v. Sony Ericsson Mobile Comm'ns AB*, 2006 U.S. LEXIS 18933, *5 (Fed. Cir. Jul. 26, 2006) (the Federal Circuit affirmed the trial court's reliance on the Summary of the Invention to define a claim term); and *On Demand Machine Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1340 (Fed. Cir. 2006) (the court of appeals reversed the trial court finding that its claim construction was too broad given the specification).

### 2. Cases Define "Each" as "Every One."

Several of the claims-at-issue in this case use the term "each," as does the Summary of the Invention and other parts of the specification. The parties disagree about the meaning of "each." The Federal Circuit has interpreted the term "each" to mean "every one," consistent with dictionary definitions of this non-technical term. The dictionary definition of "each" is "every one of two or more considered individually or one by one." *Webster's Third New Int'l Dictionary* 713 (1993) (Ex. 1 hereto.); *see also Phillips*, 415 F.3d at 1314 (general purpose dictionaries may be helpful in determining ordinary meaning of non-technical terms).

In a post-*Phillips* case, the Federal Circuit affirmed a district court's construction of the claim term "each" as "every one of two or more considered individually or one by one." *MicroStrategy, Inc. v. Business Objects, S.A.*, 331 F.Supp.2d 432, 440-41 (E.D. Va. 2004), *aff'd* 429 F.3d 1344, 1352 (Fed. Cir. 2005). The *MicroStrategy* district court cited to *Medtronic, Inc. v. Guidant Corp.*, 2004 U.S. Dist. LEXIS 10020, 2004 WL 1179338, at *42 (D. Minn. 2004), which also construed "each" to mean "every one." (Ex. 2 hereto.)

### 3.    The Timing Of Claim Construction.

Claim terms are interpreted as of the filing date of the patent application, which is the constructive date of invention. *Phillips*, 415 F.3d at 1313. Where, as here, one of the patents is a continuation-in-part ("CIP") application, i.e., includes "new matter" not disclosed in the earlier related application, the new matter cannot inform the construction of claim terms that were included in the original patent application because, as a matter of law, the new matter cannot receive the constructive date of invention (the filing date) of the original application. *See Augustine Med., Inc. v. Gaymar, Inc.*, 181 F.3d 1291, 1302 (Fed. Cir. 1999) ("Subject matter that arises for the first time in the CIP application does not receive the benefit of the filing date of the parent application.") For example, in this case the original patent application was filed on February 3, 1997. It is as of that date that all disputed claim terms found in the original application must be construed because February 3, 1997 is the constructive date of the invention. Because the constructive date of the invention for all new matter added to the '312 patent application is August 22, 2000, more than three years after the filing of the original application, the new matter did not exist at the date of the original invention and, therefore, by definition, cannot inform the construction of claim terms found in the original application and claims. *See*

*Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1353-54 (Fed. Cir. 2000) (matter unknown

at the time of filing the application cannot be included in the scope of the claims).

### B.    Disputed Claim Terms

#### 1.    "Gang-Type Rotary Lawn Mower"

**Claims: Preamble of '530 Patent, claim 1; Preamble of '311
Patent, claims 1, 2, and 10; Preamble of '312 Patent, claims 1,
19 and 24.**

**Toro's Position:**

Toro's position is that this preamble phrase is not a limitation of the claims and,
therefore, does not need construction. In the alternative, Toro's proposed construction is:
**a mower having at least two cutting devices of the rotary type.**

**Textron's Position:**

Textron's position is that this preamble phrase is a further limitation of the claims, but
does not need construction. However, if the Court construes the phrase, Textron's
proposed construction is: **a lawn mower having a rotary gang-type mower
configuration.**

Upon careful consideration, each of the three points that Textron offers to support

its position fails. The patents neither describe the preamble phrase "gang-type rotary

lawn mower" as "critical" or "important;" nor did they rely on that phrase to overcome

prior art. Furthermore, the phrase does not provide antecedent basis for the body of the

claims. In short, this descriptive preamble phrase is just that; it is not a limitation.

#### a.    The Preamble Phrase Was Never Described As Critical.

Textron argues that the preamble phrase "gang-type rotary lawn mower" is a

limitation because "it is described in the specification as being critical to the invention."

(Textron Br. at 12.) This is simply not true. Nowhere in the specifications are the words

"critical" or "important," or synonyms of these words, used to describe "gang-type rotary

lawn mowers." The reason is simple: the phrase "gang-type rotary lawn mower" includes

8

some of the prior art discussed in the patents. Therefore, the phrase cannot possibly serve

as a point of distinction. In fact, the patents-in-suit describe tow-behind gang rotary lawn

mowers as prior art. (e.g., '530 pat., col. 1, ll. 14-20.)



(JA-0537.) These tow-behind lawn mowers are "gang-type" and use rotary cutters. As

such, they fit squarely within the description "gang-type rotary lawn mower." Thus,

Textron could not reasonably use that phrase to distinguish its alleged invention from the

prior art, much less describe it as a "critical" point of distinction.

   **b.**  **The Phrase Was Never Used To Distinguish The Prior Art.**

   Partly for the reasons discussed above, Textron did not use the phrase "gang-type

rotary lawn mower" to distinguish the prior art – because the prior art included gang-type

rotary lawn mowers. (Textron Br. at 12-13.) Even Textron acknowledged that the

distinction over tow-behind gang-type rotary mowers, included, among other features,

frame-mounting: "the claims at issue distinguish over tow-behind gang [rotary] mowers .

. . based in part on the fact that the claims recite a *frame-mounted* gang of rotary cutting decks." (*Id.* at 12) (emphasis added.)

Every portion of the file history to which Textron cites in support of this argument includes several features used to distinguish the prior art other than "gang-type" and "rotary." For example, the April 29, 1999 Amendment also includes "frame-mounted," "single-blade," and "a rear roller." (JA-0139; JA-0159.) The Declaration of Richard Bednar specifically mentions rear rollers attached to individual cutting decks and, as to gang-type rotary mowers, qualifies any such discussion with the words "used to cut golf course roughs." (JA-0150-51 at ¶ 4) Nowhere in the prosecution history did Textron distinguish its invention solely on the basis that it was a gang-type rotary mower.

<h4 style="text-align:center">c.    The Phrase Does Not Provide Antecedent Basis.</h4>

Textron argues that because claim 1 of the '530 patent mentions a "lawn mower" and claim 19 of the '312 patent mentions a "frame," the phrase "gang-type rotary lawn mower" must be a claim limitation to all of the claims having that phrase in the preamble. (Textron Br. at 13-14.) Textron's antecedent-basis argument is not supported.

First, neither claim body uses the term "the gang-type rotary lawn mower" – the alleged limitation Textron wants to import from the preamble. Rather, claim 1 of the '530 patent uses the term "the lawn mower" and claim 19 of the '312 patent only mentions "the frame." Even assuming, arguendo, that Textron was correct in that the preamble provided antecedent basis, the limitations would be limited to "lawn mower" and "frame."

Second, the dependent claims 2-5 of the '530 patent, which use only the phrase "lawn mower" in the preamble, also contradict Textron's argument. Dependent claims 2-

5 of the '530 patent make no mention of a "gang-type rotary lawn mower" but rather only "a lawn mower." ('530 pat., col. 5, ll. 1-25.)

Finally, the case law contradicts Textron's position. In *Catalina M'ktg Int'l v. Coolsavings com,* 289 F.3d 801, 805 (Fed. Cir. 2002), the Court held that the preamble phrase was not a limitation even though the very same antecedent argument made by Textron here could have been made in that case. The patent in *Catalina* used the preamble phrase "located at predesignated sites such as consumer stores." *Id.* The body of the claim used the phrase "the consumer." *Id.* However, the Court did not hold that the preamble phrase was used as antecedent basis for the body of the claim. Instead, the Court held that "the preamble of Claim 1 does not affect the structural definition or operation of the terminal itself. The claim body defines a structurally complete invention." *Id.* at 810; *see also Cross Med. Prod. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1319 (Fed. Cir. 2005). (holding that antecedent basis can be inferred). Similarly, the phrase "gang-type rotary lawn mower" does not affect the structural definition or operation of the claimed mower. The preamble is not a limitation.

### d. Alternatively, The Phrase Means At Least Two Rotary Cutters.

The phrase "gang-type rotary lawn mower" is not an additional limitation. Even assuming, for sake of argument, that it was, Textron's proposed construction would be of no value. Textron's definition is simply a reorder of the words of the disputed phrase: "a lawn mower having a rotary gang-type mower configuration." (Textron Br. at 14.) Furthermore, Textron's proposed construction does not define several of the key terms. For example, it does not define at all what a "gang" is, let alone what a "gang-type mower" is. Similarly, the term "configuration" is not defined.

11

Toro's construction is clear, understandable, and supported.  Textron has defined

"gang" or "gang-type" as having more than one cutting unit.  (JA-0139.)  Textron's

expert described the structure as multiple rotary cutting decks.  (Parish Decl. ¶ 37.)

Toro's expert did as well.  (Skromme Decl., ¶ 24.)  Textron's only complaint about

Toro's proposed construction comes from the word "devices."  (Textron Br. at 14.)

Although this preamble phrase should not be an additional limitation of the claims, Toro

has no problem modifying its proposed construction to change the word "devices" to

"decks": "a mower having at least two cutting decks of the rotary type."

### 2.    "Front and Rear Wheels"

**Claims: '530 Patent, claim 1; and '311 Patent, claims 2 and 10.**

**Toro's Proposed Construction:**

At least two front wheels and at least two rear wheels.

**Textron's Position:**

The phrase does not need construction.  But if the Court construes the term, Textron's
proposed construction is: At least one front wheel and at least one rear wheel.

Textron's argument that this phrase is not in need of construction is belied by the

difference in positions of the technical experts.  One reads the phrase to require 4 or more

wheels (Skromme Decl. ¶ 25), while the other reads it to require only two or more

wheels.  (Parish Decl. ¶ 38.)

Textron's proposed construction is inconsistent with the patents.  Textron and its

expert argue that a two-wheeled lawn mower (having one front wheel and one rear

wheel) is covered by this phrase.  (Textron Br. at 15, Parish Decl. ¶ 38.)  However, the

claims, the written description and the  prosecution history all demonstrate otherwise.

For example, all three of the independent claims affected specifically require at least two

12

front wheels. ('530, cl. 1; '311, cls. 2 and 10.)  Dependent claim 2 uses the phrase "the

rear wheels" based on the antecedent phrase "front and rear wheels." (*Id.* at pat., col. 5,

ll. 1-5).  The written description, including the Summary of the Invention, consistently

describes and shows four wheels – two front and two rear:

> *the invention* provides a gang-type rotary lawn mower comprising a frame
> supported by *front and rear wheels*, an operator's seat mounted on the frame, at
> least two side-by-side front cutting deck assemblies mounted on the frame *in front
> of the front wheels*, and at least one rear cutting deck assembly mounted on the
> frame behind the front wheels and *in front of the rear wheels*.

(*Id.*, col. 1, ll. 38-44(emphasis added).)   The only drawing in the '530 and the '311

patents that shows wheels supporting the frame shows four wheels: two front wheels and

two rear wheels.  (See *id.*, Fig. 1.)   To avoid the Mountfield reference, (JA-0240) which

had only two wheels, Textron added the words "front and rear" just before "wheels"

during prosecution.  (JA-0139.) (Ex. 3 hereto.)  Given that the plural word "wheels" was

originally in the claim, the addition of the words "front and rear" before "wheels"

demonstrates that Textron narrowed its claim to a mower having wheels, plural, in both

the front and rear of the mower.

Contrast that with the '312 patent, which includes a three-wheeled mower shown

at Figure 12, but never uses the claim phrase "front and rear wheels."  Instead, the '312

patent claims (1 and 24) use the following language: "a frame supported by front wheels

and at least one rear wheel for movement over the ground." ('312 pat., col. 8, ll. 20-21.)

Toro is not attempting to "read in" limitations from the specification as Textron

accuses.  Toro is simply pointing out how the patentee defined his invention at the time

the application was filed.  *Inpro II*, 450 F.3d at 1354-55.  In *Phillips*, unlike the present

case, the claim term had not been amended during prosecution, the Summary of the

13

Invention did not define the phrase, and there was at least some hint that other embodiments were covered. *Phillips,* 415 F.3d at 1323 ("upon reading the specification in that context, it will become clear whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive."). Textron's addition of the words "front and rear" to modify "wheels"; its definition of the invention having four wheels in the '530 and '311 patents, in contrast with the '312 patent; and the lack of any support for a broader interpretation calls for a construction requiring at least two front wheels and at least two rear wheels.

### 3.    "Rotary Cutting Deck Assemblies/Assembly"

**Claims: '530 Patent, claim 1; '311 Patent, claims 1, 2, and 10; '312 Patent, claims 1 and 24**

**Toro's Proposed Construction:**

A cutting unit having laterally-spaced, generally vertically-extending side plates, a cross member, front wheels supporting the side plates, a rear roller extending between and supporting the side plates, and a single spindle rotary deck mounted between the side plates.

**Textron's Position:**

The phrase does not need construction. But if the Court construes the term, Textron's proposed construction is: A cutting deck assembly that has a rotary blade, as distinguished from a reel blade.

### a.    There is a difference between "decks" and "deck assemblies."

Textron's proposed construction (a cutting deck assembly that has a rotary blade) confuses "deck" with "deck assembly." The patents clearly specify that deck (38), which has a rotary blade, is just one component of the cutting deck assembly (34). ('530 pat., col. 1, ll. 50-51; col. 3, ll. 6-8.) Every use of "cutting deck assembly" also includes

14

several other important features.  The cutting deck assemblies are clearly defined by the

patentee in the Summary of the Invention:

> *Each* of the front and rear deck assemblies *includes* a pair of laterally-spaced,
> generally vertically-extending side plates, front wheels supporting the side plates
> for movement over the ground, and a rear roller extending between the side plates
> and supporting the side plates for movement over the ground.

(*Id.* at col. 1, ll. 44-50) (emphasis added.)  Textron's proposed construction ignores the

important difference between "deck" and "deck assembly" and the unambiguous

language used by the patentee to describe that important element of the invention.  (*See*

*Id.* at col. 2, ll. 12-22, Description of the Drawings, FIG. 2-5, each depicting the "cutting

deck assembly.")  It was the inventor, not Toro, that described the invention as

"including" the structure above and "this construction" as necessary to construct the

claimed invention.  (*Id.* at col. 2, ll. 4-6.)  *Microsoft*, 357 F.3d at 1347-48; *C.R. Bard*, 388

F.3d at 860-61; *Inpro II*, 450 F.3d at 1355-56.

### b.   Toro's proposed construction does not render the claims redundant.

Textron cites no authority even suggesting, much less holding, that it is error to

give claim terms the definition specified by the inventor if such definition would result in

redundancy.  Furthermore, Toro's construction does not render the claims redundant.

For example, Toro proposes that the disputed phrase be construed to include a

"single spindle rotary deck."  Textron complains that this would make claim 1 of the '530

patent and claim 1 of the '311 patent redundant.  (Textron Br. at 18.)  However, both of

those claims describe many other limitations, including "a downwardly opening space, a

single spindle mounted for rotation about a generally vertical axis within that space, [and]

at least one cutting blade mounted on the spindle for rotation therewith."  ('530 pat., col.

4, ll. 60-64; '311 pat., col. 4, ll. 60-64.) Because of those additional narrowing recitations, none of the claims are redundant.

>        **c.    Toro's proposed construction does not violate claim
>               differentiation.**

Textron's next argument, violation of the doctrine of claim differentiation, is also without merit. Textron argues that three elements from Toro's definition would render the disputed claims indistinguishable from certain dependent claims, thus violating the doctrine of claim differentiation. Contrary to Textron's argument, the doctrine of claim differentiation is not violated unless the two claims are "exactly" the same. *Rexnord Corp. v. Laitram Corp.*, 939 F.2d 1533, 1538 (Fed. Cir. 2001) (cited with approval by *Phillips*, 415 F.3d at 1314.) For this reason, Textron's argument fails.

Comparing the claims in dispute, construed as Toro proposes, with the various dependent claims Textron asserts would no longer be different (claim 4 of the '530 pat., and claims 4 and 12 of the '311 pat.) demonstrates that these dependent claims remain different. For example, the claims in dispute, construed as Toro proposes, would *not* include mounting the deck in such a way that "the height of the deck relative to the ground is adjustable by changing the position of the deck relative to the side plates." The height-of-cut adjustment mechanism, however, is found in *all* three dependent claims. Other differences also exist. *See Inpro II*, 450 F.3d at 1353, 1355.

Textron is also mistaken in arguing that defining this disputed phrase to include the "cross member" described in the Summary of the Invention also violates claim differentiation. (Textron Br. at 19.) Comparing claim 1 of the '530 patent, as Toro proposes it should be construed, to claim 7 of the same patent reveals that the latter claim

includes more than 20 lines of text reciting additional structure related to the cross member. ('530 pat., col. 5, l. 64 – col. 6, l. 36.)

Because none of the disputed claims would be identical to other claims in the patents, under Toro's proposed construction, the doctrine of claim differentiation is not violated. *Rexnord,* 939 F.2d at 1538.

> **d.    Toro's proposed construction is completely consistent with the intrinsic evidence.**

Toro's proposed construction, taken from the inventor's own words in the Summary of the Invention and the remainder of the written description, is consistent with all of the intrinsic evidence. ('530 pat., col. 1, ll. 44-50.) The only embodiment provided in the '530 and '311 patents describes all the cutting deck assemblies as having the construction set forth by Toro. (*Id* at col., 3, ll. 5-21.) This is not simply a preferred embodiment, it is the only embodiment—it is the invention. *See On Demand Mach. Corp.,* 442 F.3d at 1340 ("the claims cannot be of broader scope than the invention that is set forth in the specification."); *see also The Toro Co. v. White Consol. Indus., Inc.,* 199 F.3d 1295, 1301 (Fed. Cir. 1999.) There is no structure described or shown in the patents, other than the specifically constructed cutting deck assembly that accomplishes the purpose of the invention – to enable a gang-type rotary lawn mower to closely trim and cut undulating terrain. ('530 pat., col. 2, ll. 4-6;)

In contrast, Textron's proposed construction conflicts with the way one of ordinary skill in the art would interpret the phrase after studying the patents. (Skromme Decl., ¶ 26.) Toro's proposed construction is consistent with and takes into account all the intrinsic evidence. Toro proposes a definition that takes the inventor at his word. *See Honeywell,* 452 F.3d at 1318; *Wireless Agents,* 2006 U.S. App. LEXIS 18933, at *5.

4.      **"Deck Assembly Mounted On The Frame"**

**Claims: '530 Patent, claim 1; '311 Patent, claims 1, 2, and 10; '312 Patent, claims 1 and 24**

**Toro's Proposed Construction:**

Attached directly to the frame so that the deck can move vertically relative to the frame and can pivot relative to the frame about three mutually perpendicular axes.

**Textron's Proposed Construction:**

Connected to the frame.

The decks' ability to move vertically relative to the frame and pivot about three mutually perpendicular axes was key to the claimed invention's ability to overcome the problems associated with the prior art. ('530 pat., col. 4, ll. 29-31) ("This mounting arrangement enables the deck 38 to adjust to undulating terrain, thereby substantially avoiding scalping.") The patents were not describing just any deck connection to the frame. They describe just one specific configuration: a tri-axially mounting arrangement that was defined as part of the "the invention." (*Id.*, col. 1, ll. 31-37.)

a.      **Textron's proposed construction "connected to the frame" is flawed.**

The patents directly reveal the error of Textron's argument that "mounted to the frame" means "connected to the frame." For example, claim 3 of the '530 patent uses the phrase "connected to the frame" to specify a different type of connection than "mounted to the frame." Post-*Phillips* cases consistently hold that different claim terms are presumed to have different meanings. *Applied Med. Res. Corp. v. United States Surgical Corp.*, 448 F.3d 1324, 1333 (Fed. Cir. 2006) ("in the absence of any evidence to the contrary, we must presume that the use of . . . different terms in the claims connotes different meanings.")

18

The written descriptions of the Textron patents distinguish between "mounted to the frame" and "connected to the frame," for example:

> The invention also provides an improved arrangement for mounting a rotary cutting deck on a lawn mower frame. Each deck is mounted on its own lifting arm so that the deck can move vertically relative to the frame and can pivot relative to the frame about three mutually perpendicular axes. ('530 pat., col. 1, ll. 31-36)

> Each deck assembly is connected to the frame by a generally L-shaped, horizontally-extending lifting arm operable to lift the deck assembly relative to the frame. (*Id.* at ll. 57-61.)

Textron's argument that the claims' use of "mounted on the frame" relative to the seat and power supply also misses its mark. (Textron Br. at 20.) The inventor expressed that his invention was "an improved arrangement for mounting a rotary cutting deck on a lawn mower frame"; not for mounting a seat or power supply. ('530 pat., col. 1, ll. 31-32.) The inventor also defined his invention as having decks "attached directly to the frame on which the operator rides." (*Id.* at Col. 1, ll. 27-29.) As the Federal Circuit has repeated twice since *Phillips*, the public is entitled to take the patentee's word concerning the scope of the invention. *See Honeywell*, 452 F.3d at 1318; *Wireless Agents*, 2006 U.S. App. LEXIS 18933, at *5; *see also Inpro II*, 450 F.3d at 1355-56.

Moreover, Textron's general definition exceeds the scope of the invention set forth in the specifications. *Phillips,* 415 F.3d at 1312-13; *On Demand Machine Corp* , 442 F.3d at 1340 ("the claims cannot be of broader scope than the invention that is set forth in the specification.") Textron's construction suggests that any type of connection to the frame, including prior art arrangements such as tow-behind gangs, is covered. To the contrary, patentee was explicit in describing in all three Summaries of the Invention that "the invention" was to "an improved arrangement for mounting a rotary cutting deck on a lawn mower frame"; one that pivots in three mutually perpendicular axes. ('530 pat.,

col. 1, ll. 31-37.) This is the structure that enabled the lawn mower to trim closely and cut the undulating terrain of a golf course rough. (*Id.*, col. 2, ll. 4-6.) The mounting of the deck assemblies is *never* described in any other way: "This mounting arrangement enables the deck 38 to adjust to undulating terrain, thereby substantially avoiding scalping." (*Id.* at col. 4, ll. 29-31.) *See Microsoft*, 357 F.3d at 1347-48; *C R Bard*, 388 F.3d at 860-61; *Inpro II*, 450 F.3d at 1355-56.

Textron argues that the '312 patent discloses a deck assembly mounted with only two mutually perpendicular axes. Textron argues such disclosure supports its broader proposed construction. Textron is incorrect. (Textron Br. at 21.) The new matter disclosed in the '312 patent, including the matter relied on by Textron, in addition to not showing what Textron claims, cannot inform the construction of this claim phrase because the new matter did not exist at the time of the original application. For this reason, it is improper to use this new matter to define the disputed phrase. *See Schering*, 222 F.3d at 1353-54.

<div style="text-align:center">

**b.    Toro's Proposed Construction Does Not Violate The Doctrine Of Claim Differentiation.**

</div>

Textron points to claim 7 of the '530 patent as proposed support for its claim differentiation argument. (Textron Br. at 23.) However, claims must have "exactly" the same scope to violate the concept of claim differentiation. *Rexnord Corp v. Laitram Corp.*, 939 F.2d 1533, 1538 (Fed. Cir. 2001) (cited with approval by *Phillips*, 415 F.3d at 1314.) With Toro's proposed construction, claim 1 and claim 7 would not have the same scope. At a minimum, claim 7 also requires a cross member not present in claim 1. ('530 pat., col. 5, l. 63 – col. 6, l. 17.)

### c.    Toro's Proposed Construction Is Consistent With The Goals Of The Claimed Invention.

*Phillips* directs one to determine the goals of the claimed invention to aid construction. *Phillips*, 415 F.3d at 1323. The patents repeatedly inform the reader that the goal of the invention is a gang-type rotary lawn mower "suitable for cutting a golf course rough," which requires "close trimming and the ability to cut undulating terrain at a relatively short length." ('530 pat., col. 1, ll. 15-20, 23-24.)

In the Summaries of the Invention, the patentee explains that the invention included a tri-axial deck-mounting construction:

> *Each* deck is mounted on its own lifting arm *so that the deck can move vertically relative to the frame and can pivot relative to the frame about three mutually perpendicular axes.* (*Id.*, col. 1, ll. 34-37 (emphasis added).)

The Summaries of the Invention then directly tie this "improved arrangement for mounting" to achieving the goals of the invention:

> *This construction* enables the lawn mower to cut the undulating terrain of a golf course rough and to be controlled for close trimming. (*Id.*, col. 2, ll. 4-6 (emphasis added.)

The patentee's definition of his invention in the "Summary of the Invention" is "strong evidence" of the scope of the invention. *See SciMed*, 242 F.3d at 1343; *Honeywell*, 452 F.3d at 1318; *Wireless Agents*, 2006 U.S. App. LEXIS 18933 at *5.

The patentee also tied this tri-axial mounting arrangement to the goals of the invention in the rest of the specification. For example, after describing the deck mounting arrangement as vertical movement relative to the frame and the movement about three mutually perpendicular axes, the patentee stated: "This *mounting arrangement* enables the deck 38 to adjust to undulating terrain, thereby substantially avoiding scalping." ('530 pat., col. 4, ll. 29-31 (emphasis added).) There is no mention

of any alternate configuration. (*Id.* at col. 3, l. 66-col. 4, l.19 (emphasis added.)) *C.R. Bard*, 388 F.3d at 860-61; s*ee also On Demand Mach. Corp.*, 442 F.3d at 1340 citing *AstroZeneca AB v. Mut. Pharm. Co.*, 384 F.3d 1333, 1339-40 (Fed. Cir. 2004).

### 5.    "Deck Defining A Downwardly Opening Space"

**Claims: '530 Patent: claim 1; '311 Patent: claims 1 and 2; '312 Patent claims 1, 19 and 24**

**Toro's Proposed Construction:**

A deck defined by a continuous solid vertical wall of uniform height open on the bottom.

**Textron's Proposed Construction:**

The deck has a downwardly opening space.

#### a.    **Textron's construction is no construction at all.**

Textron's proposed construction, a downwardly opening space, essentially repeats the disputed language. *See C.R. Bard*, 388 F.3d at 863 ("merely rephrasing or paraphrasing the plain language of a claim by substituting synonyms does not represent genuine claim construction.") Actually, in doing so, Textron broadened out the disputed phrase. Under Textron's proposed definition, the deck need only "have" a downwardly opening space – it is not even required to "define" such a space. As proposed, Textron's downwardly opening space could be nothing more than an inverted shaft or hole or other opening facing the ground. Nothing in the patents or prosecution history suggests the impossible breadth Textron seeks. Further, Textron's proposed construction does nothing to aid the trier of fact in understanding *how* the deck defines a downwardly opening space.

22

**b.    Those skilled in the art define this phrase as a mulching deck**

Textron's expert's report comes close to agreeing with Toro's position – that the claims are limited to a mulching deck. Textron's expert provides an example of how the disputed phrase is used in its ordinary and customary meaning: "each of the cutting deck assemblies 34 includes (see FIGS. 2-5) a single spindle *mulching* deck 38 defining a downwardly opening space 42 (FIG. 4)." (Parish Decl. ¶ 51) (emphasis added.) Nowhere in his report does Mr. Parish mention any other type of deck that would fit the description of "a deck defining a downwardly opening space." This is consistent with Mr. Skromme's position. Mr. Skromme understood the phrase as a mulching deck, i.e., a deck having a solid vertical wall of uniform height open on the bottom so that all of the grass clippings go down into the lawn, not any other place. (Skromme Decl. ¶ 18.)

**c.    The patent figures are not ambiguous.**

The Summary of the Invention, written description, and drawings all define this disputed phrase as a mulching deck. Textron attempts to avoid these clear statements of scope by arguing that the patent figures are ambiguous and do not show a deck 38 having a continuous solid vertical wall of uniform height. (Textron Br. at 25.) One look at Figure 6 of the patents eviscerates Textron's argument:



('530 pat., Fig. 6.)  No reasonable observer could conclude that these figures are

ambiguous.

6.    **"Roller Extends Across Substantially the Entire Width of the Deck"**

**Claims: '530 Patent: claim 1; '311 Patent: claims 2 and 10**

**Toro's Proposed Construction**

This phrase is indefinite and not capable of construction.  However, if the Court should
find that this phrase is capable of construction, Toro proposes the following construction:
the roller extends slightly less than or the full width of the deck, but not beyond the width
of the deck."

**Textron's Proposed Construction**

The roller extends across substantially the entire width of the deck, but is not required to
be exactly as wide as the deck.

a.    **The phrase is indefinite because it is impossible to
determine when a roller is short enough not to extend
across "substantially the entire width."**

Technical witness Robert Skromme concluded that one skilled in the art could not

determine what this phrase means after reading the patents.  (Skromme Decl. at ¶ 27.)

24

Specifically, Mr. Skromme testified that one skilled in the art could not determine at what length a roller becomes too short such that it does not extend across substantially the entire width of the deck. (*Id.*) Textron's proposed construction is merely the disputed phrase, with an additional clause: "but is not required to be exactly as wide as the deck." (Textron Br. at 26.) That is not proper claim construction under the law. *See C.R. Bard*, 388 F.3d at 863.

The only support Textron offers for its construction is its expert's conclusory statement that the patents disclose "a roller that extends across the width of the deck to provide a continuous striping effect behind the cutting deck." (Parish Decl., Ex. 4 at ¶53.) Textron's expert is describing a roller that extends the full width of the deck. He ignores the language "extends across substantially" because he does not know what it means. This supports Toro's conclusion of indefiniteness, not Textron's position.

Nothing in the language of the patents sufficiently explains the claim phrase to allow one of ordinary skill in the art to determine what length the roller should have to extend across substantially the entire width of the deck. Moreover, the function of the roller explained in the Summary of the Invention (resist scalping and stripe the grass) does nothing to inform one skilled in the art of the point at which a roller no longer extends substantially across the width of the deck.

The prosecution history also provides no assistance in construction. In trying to distinguish over prior art, the patentee said that its "wider roller" was unlike the "roller" in the Cracraft, which extended only a small part of the distance across the deck and served the same function as wheels. (JA-0159.) He does not explain what the claimed structure is. (*Id.*)

25

The cases which Textron cites to support its argument that the disputed claim phrase is definite are not applicable. In *Verve*, on remand from the appellate court, the district court found that the lack of a clear threshold between substantially constant and non-substantially constant wall thickness variations did not render the claim indefinite because defendant's expert did not conclude that a person of ordinary skill in the art would fail to understand the scope of the patent. *Verve, L.L.C. v. Cranse Cams, Inc.*, 395 F.Supp. 2d 558, 581 (E.D. Mich. 2005). Unlike *Verve*, Mr. Skromme has already testified that one skilled in the art could not determine what the disputed phrase means after reading the patents. (Skromme Decl. at ¶27.)

In *Pannu*, indefiniteness was not an issue; rather, the dispute was limited to claim construction. *Pannu v. Iolab Corp*, 155 F.3d 1344, 1352 (Fed. Cir. 1998.) Similarly, in *York Products, Inc.*, indefiniteness was not an issue. *York Prod., Inc. v. Cen. Tractor Farm & Family Center*, 99 F.3d 1568, 1572 (Fed. Cir. 1996).

> **b.    Alternatively, the phrase means "the roller extends slightly less than or the full width of the deck, but not beyond the width of the deck"**

Should the Court find that the phrase is capable of construction, it should construe it to mean that "the roller extends slightly less than or the full width of the deck, but not beyond the deck." Both Toro and Textron agree that "substantially" means "largely but not wholly that which is specified" and "considerable in . . . extent." (Textron's Brief at 26.) This dictionary definition is consistent with the claim language, "roller extends across substantially the entire width of the deck." In the disputed phrase "substantially" modifies "entire width of the deck." If something extends across substantially the entire width of the deck, it does not extend beyond the width of the deck.

This construction also makes sense in the context of use of the invention. If the roller extends beyond the width of the deck, the roller would lay down uncut grass making it harder to cut. Textron's construction is ambiguous as to whether the roller can extend beyond the width of the deck and should be rejected for Toro's more logical and concrete construction. Thus, if construction is proven to be definite, the disputed phrase should be construed as "the roller extends slightly less than or the full width of the deck, but not beyond the width of the deck."

### 7.    "Lifting Arm"

**Claims: '530 Patent: claim 3; '311 Patent: claims 3 and 11; '312 Patent: claims 14 and 19**

**Toro's Proposed Construction:**

A generally L-shaped, horizontally-extending device having inner and outer ends operable to lift the deck assembly relative to the frame, the inner end pivotally connected to the frame, the outer end pivotally connected to the deck assembly for pivotal movement about a generally vertical axis and about a generally horizontal axis extending in the forward-rearward direction.

**Textron's Proposed Construction:**

An arm that is operable to lift a cutting deck assembly.

### a.    Textron's definition is no definition at all.

With respect, Textron and its expert shuffle the words of the disputed phrase and call it a construction. (Textron Br. at 27.) Defining "lifting arm" as an arm that lifts a deck completely ignores the specification, "the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315. Textron and its expert ignore the key language from the Summaries of the Invention:

> *Each deck assembly is connected to the frame by a generally L-shaped, horizontally-extending lifting arm* operable to lift the deck assembly relative to the frame. Each deck assembly is connected to the frame by its own lifting arm.

('530 pat., col. 1, ll. 57-61 (emphasis added).)  Textron and its expert cannot reasonably

ignore this language used by the patentee to describe "each" deck assembly of his

invention.  *See MicroStrategy,* 331 F.Supp.2d at 440-41, *aff'd* 429 F.3d at 1352 ("each"

means "every one; *see also Microsoft*, 357 F.3d at 1347-48; *C.R. Bard*, 388 F.3d at 860-

61; *Honeywell*, 452 F.3d at 1318; *Wireless Agents*, 2006 U.S. App. LEXIS 18933, at *5;

*see also SciMed Life Sys., Inc. v. Advanced Cardio-Vascular Sys., Inc.*, 242 F.3d 1337,

1343 (Fed. Cir. 2001) (use of the word "all" limited the scope of the invention.)

       **b.**    **Toro's proposed construction is consistent with the '312 Patent.**

Toro's proposed construction, taken from the Summary of the Invention, is not at

odds with the '312 patent.  The Summary of the Invention in the '312 patent is the same

as those in the '530 and '311 patents.  In addition, claim terms must be construed as of

the time of the invention.  *Phillips*, 415 F.3d at 1312-13.  The constructive date of the

invention is the filing date of the original patent application, February 1997.  The new

matter found in the '312 patent, figures 7-24 and accompanying text, col. 5, l. 10 – col. 8,

l. 15, has a constructive date of invention of August 2000 and, therefore, having come

into existence after the time of the earlier invention, this new matter cannot inform the

court as to meaning of claim terms used in the '530 patent, '311 patent, and "old"

portions of the '312 patent.  *See Schering*, 222 F.3d at 1353-54.

Finally, neither the drawings nor the written description of the "new matter"

found in the '312 patent contradict Toro's proposed construction.  Figure 10 of the '312

patent shows a knuckle between the cutting deck assembly and a lifting arm.  The

combination of pivotal movement about axes 184 and 192 may be capable of a multitude

of other movements.  For example, pivotal movement, including about a third axis.  (A

shoulder joint has similar pivotal movement.)  Similarly, the text citations offered by Textron do not support its argument.   The patent describes a "pivotal" movement that is consistent with having movement about multiple axes. ('312 pat., col. 5, l. 66 – col. 6, l. 7; col. 6, ll. 13-19.) *See C.R. Bard*, 388 F.3d at 865-66 (omission of narrower language in the written description did not overcome global statements made in the Summary of the Invention.)

### c.      Toro's proposed construction does not violate the doctrine of claim differentiation.

As set forth above, the doctrine of claim differentiation requires that two claims be "exactly" the same for the concept to be violated. *Rexnord,* 939 F.2d at 1538.  Textron argues that Toro's construction would violate the concept of claim differentiation for claim 17 of the '530 patent.  (Textron Br. at 28.)  However, the claims, with Toro's proposed construction, do not approach being identical.  For example, claim 17 includes additional structure in the form of a cross member and a height of cut adjustment mechanism.  ('530 pat., col. 9, l. 12 – col. 10, l. 12.)  Thus, claim differentiation between claim 17 and Toro's construction of claim 1 is maintained.

### 8.      "Side Plates"

**Claims: '530 Patent: claim 4; '311 Patent: claims 4 and 12; '312 Patent: claim 19**

**Toro's Proposed Construction:**

Thin, flat pieces of metal laterally-spaced and generally vertically-extending from the rear roller to the front wheels.

**Textron's Proposed Construction:**

Plate-like components on each side of the deck assembly.

### a.    Textron's construction is circular and too broad.

Textron attempts to define "side plates" with the terms themselves—"plate-like components on the side of the deck assembly." Textron's construction includes any "plate-like component" on the side of the deck regardless of its size or the function it performs. Such a construction is too broad. It provides no guidance concerning the side plates' structure in the invention.

Textron's proposed construction also contradicts Textron's patents' Summary of the Invention. The Summary of the Invention section of the patents teaches that the invention includes side plates that support the deck and are supported by front wheels and a rear roller that extends between the side plates. (*Id.* at col. 1, ll. 44-54.) In other words, the side plates have three items connected to them: a deck, a rear roller, and a set of wheels. Not all "plate-like components" meet these requirements. However, "thin flat pieces of metal laterally-spaced and generally vertically extending from the rear roller to the front wheels" defines side plates that meet the claimed "side plates," as the patentee has directed to practice the invention. (*Id.*, col. 3, ll. 5-15.)

Textron's construction also incorrectly excludes the side plates from the deck assembly. Contrary to Textron's proposed construction, the side plates are part of the deck assembly, and not located on the side of the deck assembly. Claim 4 illustrates this point: "each of the front and rear deck *assemblies include* a pair of laterally-spaced, generally vertically-extending side plates." The Summary of the Invention also confirms that "each of the front and rear deck assemblies include a pair of laterally-spaced, generally vertically-extending side plates." (*Id.*, col. 1, ll. 44-46.)) For this reason alone, Textron's construction is incorrect.

Textron argues that its interpretation is consistent with how that phrase is used in the specification. (Textron Br. at 30.) While Textron's construction is broad enough to cover that which is disclosed in the patent, it improperly covers far more than what is taught as the invention. ('530 pat., col. 1, ll. 44-46.) Textron tries to avoid the fact that the side plates—not some other "extension" member—extend from the deck assembly's wheels to its rear roller by arguing that "extensions of the side plate (not numbered) reach forward to the supporting wheels (50), and backward to the supporting roller (58). (Textron Br. at 31.) Textron's so called "extensions of the side plates" are not numbered because they *are the side plates themselves (46 and 48).* ('530 pat., Fig. 2.)

### b. Toro's proposed construction is not redundant. It does not add extraneous limitations.

Toro's construction clarifies that the side plates are "laterally-spaced and generally vertically-extending *from the rear roller to the front wheels*" as described as part of the invention and shown in the only embodiment. While Toro recognizes that the claims-at-issue include the "laterally-spaced and generally vertically-extending" language, that language does not clarify that the side plates are laterally spaced and vertically-extending from the wheels to the rear roller. There is no other way to have the side plates "supported" by the wheels and rear roller.

Textron also takes issue with "thin, flat pieces of metal." These words come from the dictionary definition of "plate," a non-technical claim term: "a smooth usu. nearly flat and relatively thin piece of metal or other material." (Ex. 4 hereto). *Phillips*, 415 F.3d 1314. In fact, such limitations are also in Textron's proposed construction. Textron simply chose not to use the words that define "plate." Thus, Toro's proposed construction is neither redundant nor does it add additional limitations outside the claims.

It is how one skilled in the art would understand this term in view of the claim language and the specification. (Skromme Decl. at ¶20.)

> ### 9. "Rear Roller Extends Between The Side Plates And Supports The Side Plates For Movement Over The Ground"
>
> **Claims: '530 Patent: claim 4; '311 Patent claims 4 and 12; '312 Patent: claim 19**

**Toro's Proposed Construction:**

Each end of the rear roller is connected to a respective side plate.

**Textron's Proposed Construction:**

The rear roller extends between the side plates in such a way to support them for movement over the ground.

> ### a. Textron's construction is circular and fails to construe the disputed language.

Textron's construction ignores the specification and the terms of the disputed phrase. It also attempts to broadly cover a roller that "extends between" the side plates "*in such a way to*" support them for movement over the ground. Textron's construction ignores the fact that the disputed language and the specification make clear that the ends of the roller are connected to the side plates, such that it not only extends between the side plates but also supports the side plates. There would be no support of the cutting deck if the roller were not connected to the side plates. On the other hand, Toro's construction captures the meaning of the phrase to one skilled in the art—"each end of the rear roller is connected to and supports the side plates for movement over the ground. (Skromme Decl., ¶21.)

The specification confirms that Toro's construction is correct. The specification clearly shows that the ends of the roller are connected to the respective side plates to support them for movement over the ground. (*See* Toro Br. at 34-36.) Dictionary

definitions also support Toro's construction. To extend between the side plates, the roller

must be located in the space between them. The term "between" means "in the space that

separates," "from one to the other of <air service ~ the two cities>," and "joining,

connecting <a passageway ~ two rooms>." *Webster's Third New Int'l Dictionary* 209

(1993). (Ex. 5 hereto.) Extend means "to stretch out to fullest length," "to cause to

stretch out or reach (as from one point to another)" and "to lay out at full length." *Id.* at

804. (Ex. 6 hereto.) Thus, the language of the disputed phrase simply means that the

roller's ends are connected to the side plates.

### 10.    "Each Rear Deck Assembly Being Aligned With A Respective Gap Between Adjacent Front Deck Assemblies"

**Claims: '530 Patent: claim 1; '311 Patent: claims 1 and 8; '312 claims 1 and 24**

**Toro's Proposed Construction:**

Every rear deck assembly is located behind a gap defined by two adjacent front deck
assemblies.

**Textron's Proposed Construction:**

Rear deck assemblies are aligned with the gaps between the front desk assemblies.

#### a.    "Each" means "Every One"

The dispute between the parties centers on the patents' use of "each" and its

meaning. The Federal Circuit and other courts have interpreted the term "each" to mean

"every one," consistent with dictionary definitions of this non-technical term. The

dictionary definition of "each" is "every one of two or more considered individually or

one by one." *Webster's Third New Int'l Dictionary* 713 (1993) (Ex. 1 hereto); *see also*

*Phillips*, 415 F.3d at 1314 (general purpose dictionaries may be helpful in determining

ordinary meaning of non-technical terms). In one post-*Phillips* case, the Federal Circuit

affirmed a district court's construction of the claim term "each" as "every one of two or more considered individually or one by one." *MicroStrategy.*, 331 F.Supp.2d at 440-41, *aff'd* 429 F.3d at 1352. The *MicroStrategy* district court cited to *Medtronic, Inc. v. Guidant Corp.*, 2004 U.S. Dist. LEXIS 10020, 2004 WL 1179338, at *42 (D. Minn. 2004) (Ex. 2.), which also construed "each" to mean "every one."

### b.    Textron's position is inconsistent and circular.

Textron appears to argue that the claim phrase "rear rotary cutting deck assemblies" are *only* those rear cutting decks that are aligned with a respective gap between adjacent front deck assemblies. (Textron Br. at 34.) In other words, the circular argument goes, "each" of the rear deck assemblies is aligned with a gap because "rear deck assemblies" are only those assemblies aligned with a gap. Any rear deck assemblies that are not aligned with a gap, the argument goes, are not the rear deck assemblies of the invention but merely "non-claimed elements." (Parish Decl. ¶ 67.) That is not what the claims express. Textron's position is inconsistent with its positions taken during prosecution.

Representative claim 1 of the '530 patent is straightforward in claiming "at least one rear rotary cutting deck assembly." ('530 pat., col. 4, ll. 54-58.) The claim locates the rear deck assemblies "behind the front deck assemblies and between the front and rear wheels." (*Id.*) The claim requires that every one of the rear deck assemblies is "aligned with a respective gap between adjacent front deck assemblies." (*Id.*) In other words, the claim does not define "rear rotary cutting deck assemblies" as *only* those rear deck assemblies aligned with a gap, but instead requires that every cutting deck assembly behind the front deck assemblies and between the front and rear wheels is aligned with a respective gap between adjacent front deck assemblies.

34

The specification and prosecution history are consistent. The specification contradicts Textron's litigation position: "The lawn mower 10 further comprises front and rear rows 26 and 30, respectively, of cutting deck assemblies." (*Id* at col. 2, ll. 64-65.) If the patentee had "specifically defined" rear deck assemblies to include only those decks aligned with a gap, he would not be describing generally a "rear row."

The prosecution history also contradicts Textron's position. The Patent Office rejected claim 1 of the application that became the '530 patent based, in part, on the Smith reference, prior art that showed the "back units positioned in the 'gaps' of the front units." (JA-0099.) The patent specifications use similar non-specific language covering all rear deck assemblies: "As is known in the art, each rear deck assembly 34 is aligned with the gap between two adjacent front deck assemblies 34." ('530 pat., col. 3, ll. 3-5.)

### c.    The claim term "comprising" does not support Textron.

Textron also argues that the claim phrase "comprising" prevents "each" from meaning every one of the rear deck assemblies. The law is not on Textron's side. When words such as "each" or "all" are used in claims, even those employing the transition phrase "comprising," the claims require that "every one" of the items meets the limitations claimed. *MicroStrategy,* 331 F.Supp.2d 432, 436 (E.D. Va. 2004), *aff'd* 429 F.3d 1344, 1352 (Fed. Cir. 2005) ("comprising" claim; *Medtronic, Inc. v. Guidant Corp.,* 2004 U.S. Dist. LEXIS 10020 at *14, (Ex. 2); *see also SciMed*, 242 F.3d at 1339-40 ("comprising" claim but Summary of the Invention said "all" embodiments).

          **d.**     **Toro's proposed construction is consistent with all of the intrinsic evidence.**

Toro's construction, which takes the inventor at his word, does not violate *Phillips*, as Textron contends. The claims, written description and drawings all support Toro's definition that "every one" of the rear deck assemblies must be aligned with a respective gap. *Phillips*, 415 F.3d at 1316 ("the specification may reveal an intentional disclaimer, or disavowal of claim scope by the inventor. In that instance as well, the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive.") (*citing SciMed*, 242 F.3d at 1343-44.) Never does the inventor suggest or permit that his invention includes mowers that have rear deck assemblies *not* aligned with gaps. ('530 pat., col. 2, l. 64 – col. 3, l. 5.) The drawings always show every one of the rear deck assemblies in alignment with a gap. (*Id.* at Fig. 1 and '312 pat., Fig. 12.)

In short, as in *SciMed*, a claim scope broader than "every one" of the rear deck assemblies being aligned with a respective gap was disclaimed or disavowed by Textron's repeated and consistent use of the term "each."

          **11.**     **"Roller"**

               **Claims: '530 Patent: claim 1; '311 Patent: claims 2 and 10; '312 Patent: claims 1, 19 and 24**

**Toro's Proposed Construction:**

A rotating device that resists scalping and stripes the grass.

**Textron's Proposed Construction:**

A device that rolls.

The parties agree that a roller is a device that rolls or rotates. The problem with Textron's construction, which stops there, is that a wheel is a device that rolls also.

36

Textron distinguished its "wider roller" over the prior art's smaller rollers by arguing that: the smaller rollers serve the function of wheels, not the function of applicant's wider roller. (JA-0159.) The Summary of the Invention describes the invention as including a roller that functions to prevent scalping and stripes the grass. ('530 pat., col. 1, ll. 38-56.)

## IV.    CONCLUSION

As the Court knows, the claims are to be construed as one of skill in the art would understand each term as of the time of the invention, the application's effective filing date. At the time of the effective filing date, the patentee defined the breadth of the invention in the Summary of the Invention. Neither claim terms that imply a broader meaning nor new matter described in a continuation-in-part application can contradict or erase what the patentee told the public and the Patent Office was the invention when the application was filed. For these reasons, Toro's proposed claim constructions represent how one of skill in the art reading the patents would understand the disputed phrases.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Earl D. Reiland
Anthony R. Zeuli
Thomas J. Leach
MERCHANT & GOULD P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(612) 332-5300

Dated: August 18, 2006

746723

By:  _/s/ David E. Moore_____
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, Delaware 19899-0951
    (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendant*
*The Toro Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on August 18, 2006, the attached document

was electronically mailed and hand delivered to the following persons and was

electronically filed with the Clerk of the Court using CM/ECF which will send

notification of such filing(s) to the following and the document is available for viewing

and downloading from CM/ECF:

Edmond D. Johnson
Peter B. Ladig
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE  19801
tjohnson@bayardfirm.com
pladig@bayardfirm.com
KWright@bayardfirm.com

I hereby certify that on August 18, 2006, I have Electronically Mailed and Federal

Expressed the documents to the following non-registered participants:

Christopher C. Campbell
Hunton & Williams LLP
1900 K Street, N.W.
Washington, DC  20006-1109
srobertson@hunton.com
ccampbell@hunton.com
mlouey@hunton.com
lmarlatt@hunton.com
fmckeon@hunton.com
dmckim@hunton.com

Michael P. F. Phelps
David Young
Hunton & Williams LLP
1751 Pinnacle Drive, Suite 1700
McLean, Virginia 22102
mpphelps@hunton.com
dyoung@hunton.com

By:  */s/ David E. Moore*
     Richard L. Horwitz
     David E. Moore
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, Delaware 19899-0951
     (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com