IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TEXTRON INNOVATIONS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 05-486 (GMS) |
| | ) | |
| THE TORO COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

PLAINTIFF TEXTRON INNOVATION INC.'S
**RESPONSIVE BRIEF IN SUPPORT OF ITS PROPOSED CLAIM CONSTRUCTION**

Dated: August 18, 2006

Edmond D. Johnson  (#2257)
Peter B. Ladig (#3513)
THE BAYARD FIRM
222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, DE 19801
(302) 655-5000

-and-

OF COUNSEL:

Scott L. Robertson
Christopher C. Campbell
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109
Telephone: (202) 955-1500
Facsimile: (202) 778-2201

**ATTORNEYS FOR PLAINTIFF
TEXTRON INNOVATIONS INC.**

**I.** INTRODUCTION ................................................................................................1

**II.** TORO IGNORES THE MOST BASIC CLAIM INTERPRETATION
PRINCIPLES ..........................................................................................................2

    **A.** The *Claims* — Not The Summary Of The Invention — Define The
Invention ...........................................................................................................2

    **B.** Claim Terms Generally Should Be Given Their Ordinary And Customary
Meaning .............................................................................................................3

    **C.** The Court May Not Import Limitations From the Specification Into The
Claims Unless There Is a Clearly Expressed Intention To Do So ................3

    **D.** Differences Among Claims Guide The Claim Interpretation ......................5

    **E.** The Court Is Not Obliged To Construe Disputed Terms When The Plain
Language Of The Claim Is Sufficient To Convey Their Meaning ................6

**III.** TORO'S PROPOSED HISTORY OF LAWN MOWERS .....................................6

**IV.** THE CONCLUSORY DECLARATION OF TORO'S EXPERT WITNESS
FAILS TO APPLY PROPER CLAIM CONSTRUCTION PRINCIPLES ...............7

**V.** THE PREAMBLE PHRASE "GANG TYPE ROTARY MOWER" IS A CLAIM
LIMITATION ...........................................................................................................8

**VI.** TORO IMPROPERLY ATTEMPTS TO NARROW THE PLAIN MEANING
OF THE CLAIMS BY READING THE SUMMARY OF THE INVENTION
INTO THE CLAIMS ...............................................................................................10

    **A.** The Federal Circuit Has Never Sanctioned Importing Limitations Into the
Claims in the Absence of An Express Disavowal of Claim Scope or
Disparagement of the Prior Art ....................................................................10

    **B.** None Of The Claims At Issue Are Limited To A "Tri-Pivot" Deck
Assembly .........................................................................................................12

    **C.** Toro's Interpretation Of "Front And Real Wheels" Improperly Imports
Limitations From The Specification ..............................................................15

    **D.** Toro's Interpretation Of "Rotary Cutting Deck Assemblies" Improperly
Imports Limitations From The Specification .................................................19

    **E.** Toro's Interpretation Of "Mounted On The Frame" Improperly Imports
Limitations From The Specification ..............................................................20

    **F.** Toro's Interpretation Of "Deck Defining A Downwardly Opening Space"
Improperly Imports Limitations From The Specification .............................22

**G.** Toro's Interpretation Of "Roller Extends Across Substantially The Entire Width Of The Deck" Ignores The Patent Specification, Is Contrary To Federal Circuit Precedent Interpreting "Substantially," And Contorts The Claim Terms Using Inapplicable Dictionary Definitions ................................26

**H.** Toro's Interpretation Of "Lifting Arm" Improperly Imports Limitations From The Specification................................................................................30

**I.** Toro's Interpretation Of "Side Plates" Improperly Imports Limitations From The Specification................................................................................32

**J.** Toro's Interpretation Of "Rear Roller Extends Between The Side Plates And Supports The Side Plates For Movement Over The Ground" Improperly Imports Limitations From The Specification. ...............................34

**K.** Toro's Interpretation Of "Each Rear Deck Assembly Being Aligned With A Respective Gap Between Adjacent Front Deck Assemblies" Improperly Imports Limitations From The Specification...........................36

**L.** Toro's Interpretation Of "Roller" Improperly Imports Limitations From The Specification ................................................................................37

**VII.** CONCLUSION ................................................................................37

## TABLE OF AUTHORITIES

**Cases:**

*A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700 (Fed. Cir. 1983) .................................. 36

*Allen Engineering Corp. v. Bartell Industrial, Inc.*, 299 F.3d 1336 (Fed. Cir. 2002) ................................................................................................................. 12

*Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 365 U.S. 336 (1961) ................................................................................................................. 12

*Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443 (Fed. Cir. 1986) ................................................................................................................. 12

*Brown v. 3M*, 265 F.3d 1349 (Fed.Cir. 2001) ......................................................... 3

*Catalina Marketing International v. Coolsavings.com*, 289 F.3d 801 (Fed. Cir. 2002) ................................................................................................................. 8

*Elekta Institute S.A. v. O.U.R. Scientific International, Inc.*, 214 F.3d 1302 (Fed. Cir. 2000) ....................................................................................................... 35, 36

*Exxon Research and Engineering Co. v. U.S.*, 265 F.3d 1371 (Fed. Cir. 2001) ............ 9, 26

*Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495 (Fed. Cir. 1997) ........................... 30, 36

*Honeywell International, Inc. v. ITT Industrials, Inc.*, 452 F.3d 1312 (Fed. Cir. 2006) ................................................................................................................. 10, 11

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111 (Fed. Cir. 2004) ....................................................................................... 2, 4, 17

*Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 450 F.3d 1350 (Fed. Cir. 2006) ................................................................................................................. 11

*Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323 (Fed. Cir. 2001) ......... 4

*Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533 (Fed. Cir. 1991) ............................... 5

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ........................................................................................... 2

*McCarty v. Lehigh Valley R.R. Co.*, 160 U.S. 110 (1895) ......................................... 4

*NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005) ...................... 8

*Nazomi Communications, Inc. v. ARM Holdings, PLC*, 403 F.3d 1364 (Fed. Cir. 2005) ................................................................................................................. 4

*Pannu v. Iolab Corp.*, 155 F.3d 1344 (Fed. Cir. 1998)...............................................26

*Pfizer, Inc. v. Ranbaxy Laboratoriess Ltd*, __ F.3d __, 2006 WL. 2137244 (Fed. Cir. Aug. 2, 2006) ...............................................................................................5, 12

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ...................................*passim*

*SciMed Life System, Inc. v. Advanced Cardiovascular System, Inc.*, 242 F.3d 1337 (Fed. Cir. 2001)............................................................................................5, 11

*U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554 (Fed. Cir. 1997).....................6, 7, 20

*The Toro Company v. Textron, Inc.*, 499 F. Supp. 241 (D. Del. 1980) ............................27

*Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116 (Fed. Cir. 2002) ...............................26

*Vitronics Corp. v. Conceptronics Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ...........................2

*York Products Inc. v. Central Tractor Farm & Family Center*, 99 F.3d 1568 (Fed. Cir. 1996)..................................................................................................26

*Wireless Agents LLC, v. Sony Ericsson Mobile Commc'ns*, 2006 WL. 2091197 (Fed. Cir. 2006)......................................................................................10, 11

**Statutes and Rules:**

35 U.S.C. § 112..............................................................................3, 23, 31, 32

37 C.F.R. § 1.73 ...........................................................................................3

## I.    INTRODUCTION

Plaintiff, Textron Innovations Inc. ("Textron") respectfully submits this brief in response to The Toro Company's ("Toro") Opening Claim Construction Brief. The Textron patents at issue, U.S. Pat. Nos. 6,047,530 ("the '530 patent"), 6,336,311 ("the '311 patent") and 6,336,312 ("the '312 patent") (collectively, "the Textron Patents") are directed to a gang-type rotary mower used to cut golf course roughs.[1]

As might be anticipated from a Defendant that has copied a commercially successful product, Toro proposed results-oriented claim constructions that liberally and improperly import limitations from the patent specification into the claims. Most notably, Toro asks that the Court limit the claims by reading into them limitations allegedly drawn from the "Summary of the Invention" section of the Textron Patents. But it is black letter patent law that the Summary of the Invention does not define the scope of the claimed invention — rather, the claims do. As for the claims, however, Toro pays them only scant attention, and ignores their ordinary and customary meaning.

Before the Court are ten limitations that the parties have jointly submitted for construction, in addition to the question whether a phrase in the preamble constitutes a claim limitation.[2] Textron believes that the claim terms all should be accorded their ordinary and customary meaning. Toro's proposed interpretations, by contrast, graft phantom limitations onto the independent claims, many of which limitations are actually recited in other dependent claims or in other non-asserted claims of the Textron Patents.

---

[1] Copies of the '530, '311 and '312 patents are provided in the Joint Appendix at JA 0001-0011, JA 0012-0021, and JA 0022-0046, respectively.

[2] Toro implies that Textron sought to burden the Court with construing the large majority of the limitations at issue. In fact, Toro requested interpretation of eight out of the ten limitations at issue.

None of the claim terms at issue are special terms of art that would be foreign to a lay person. For example, "roller," "lifting arm," "side plates" and "mounted on" are not words that carry some special technical meaning, but rather they have an ordinary and customary meaning readily familiar to and understandable by a lay person. Despite this, Toro urges this Court to deconstruct these plain English words and phrases in order to narrow them beyond recognition. Toro's purpose is clear: to contort these words in a results-oriented effort to avoid infringement. Toro's arguments contradict clearly-settled Federal Circuit law, and should be rejected.

## II.    TORO IGNORES THE MOST BASIC CLAIM INTERPRETATION PRINCIPLES

### A.    The *Claims* — Not The Summary Of The Invention — Define The Invention

It is a "bedrock principle" of patent law that "***the claims*** of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (emphasis added); *see also, Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004); *Vitronics Corp. v. Conceptronics Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("We look to the words of the claims themselves...to define the scope of the patented invention"); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996) ("The written description part of the specification itself does not delimit the right to exclude. That is the function and purpose of claims"). This is more than judicial observation, it is codified law: "The specification shall conclude with

one or more claims particularly pointing out and distinctly claiming the subject matter
which the applicant regards as his invention." 35 U.S.C. § 112, ¶2.[3]

**B.    Claim Terms Generally Should Be Given Their Ordinary And
Customary Meaning**

The Court in *Phillips* reaffirmed that "the words of a claim are generally given
their ordinary and customary meaning," *i.e.*, "the meaning that the term would have to a
person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415
F.3d at 1312-13 (citing *Vitronics*, 90 F.3d at 1582; *Innova*, 381 F.3d at 1116). In some
cases, the ordinary meaning of claim language as understood by a person of skill in the
art may be readily apparent even to lay judges, and claim construction in such cases
involves little more than the application of the widely accepted meaning of commonly
understood words. *Phillips,* 415 F.3d at 1314; *see also Brown v. 3M*, 265 F.3d 1349,
1352 (Fed.Cir. 2001) (holding that claim terms that were "not technical terms of art" did
"not require elaborate interpretation").

**C.    The Court May Not Import Limitations From the Specification Into
The Claims Unless There Is a Clearly Expressed Intention To Do So**

While the claims are "read in view of the specification, of which they are a part,"
*Phillips*, 415 F.3d at 1315 (citations omitted), the specification may not be used to contort
the plain meaning of the claim terms:

> Some persons seem to suppose that a claim in a patent is
> like a nose of wax which may be turned and twisted in any
> direction, by merely referring to the specification, so as to

---

[3] In its Brief, Toro points out that 37 C.F.R. § 1.73 provides that the Summary of the
Invention "should, when set forth, be commensurate with the invention as claimed and any object
recited should be that of the invention claimed." Toro Opening Br. at 6. Toro puts the cart before
the horse. The U.S. Code — 35 U.S.C. § 112, ¶2 — dictates that it is the *claims*, not the
Summary of the Invention, that defines the invention. The summary is just that — a summary —
not the legal definition of claim scope.

3

> make it include something more than, or something
> different from, what its words express. The context may,
> undoubtedly, be resorted to, and often is resorted to, for the
> purpose of better understanding the meaning of the claim;
> but not for the purpose of changing it, and making it
> different from what it is. ***The claim is a statutory
> requirement, prescribed for the very purpose of making
> the patentee define precisely what his invention is; and it
> is unjust to the public, as well as an evasion of the law, to
> construe it in a manner different from the plain import of
> its terms.*** This has been so often expressed in the opinions
> of this court that it is unnecessary to pursue the subject
> further.

*Innova*, 381 F.3d at 1117 (quoting *White v. Dunbar*, 119 U.S. 47, 51-52 (1886))

(emphasis added); *see also Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d

1323, 1333-44 (Fed. Cir. 2001) (reversing various claim constructions of district court for

importing limitations from specification into patent claims); *McCarty v. Lehigh Valley

R.R. Co.*, 160 U.S. 110, 116 (1895) ("if we once begin to include elements not mentioned

in the claim, in order to limit such claim … , we should never know where to stop").

The line between construing terms and improperly importing limitations can be

discerned with reasonable certainty and predictability if the Court's focus remains on

understanding how a person of ordinary skill in the art would understand the claim terms.

*Phillips*, 415 F.3d at 1323. For instance, although the specification often describes very

specific embodiments of the invention, the Federal Circuit has repeatedly warned against

confining the claims to those embodiments. *Id.*; *see also Nazomi Communications, Inc.

v. ARM Holdings, PLC,* 403 F.3d 1364, 1369 (Fed. Cir. 2005) (claims may embrace

"different subject matter than is illustrated in the specific embodiments in the

specification"). This holds true even if there is only a single embodiment disclosed in the

specification. *Phillips*, 415 F.3d at 1323 ("*[W]e have expressly rejected the contention*

4

*that if a patent describes only a single embodiment, the claims of the patent must be*

*construed as being limited to that embodiment.*") (emphasis added).

The Federal Circuit recently reaffirmed that is it improper to import limitations

from the specification into the claims unless there is a clearly expressed intention on the

part of the patentee to do so:

> Second, while the examples do describe reaction sequences
> that produce racemates, restricting claim 1 on this basis
> would improperly import limitations from the specification
> into the claims, which should be avoided unless the
> patentee clearly "intends for the claims and the
> embodiments in the specification to be strictly
> coextensive." *Phillips*, 415 F.3d at 1323. But here, the
> specification, at col. 10, ll. 36-38, states that "[t]hese
> examples are illustrative and are not to be read as limiting
> the scope of the invention as it is defined by the appended
> claims."

*Pfizer, Inc. v. Ranbaxy Labs. Ltd*, __ F.3d __, __, 2006 WL 2137244 at 7-8 (Fed. Cir.

Aug. 2, 2006) (a copy of *Pfizer* is attached as Exh. 7).

**D.    Differences Among Claims Guide The Claim Interpretation**

Differences among claims can also be a useful guide in understanding the

meaning of particular claim terms. *Phillips*, 415 F.3d at 1314-15; *see also Laitram Corp.*

*v. Rexnord, Inc.* 939 F.2d 1533, 1538 (Fed. Cir. 1991). For example, the presence of a

dependent claim that adds a particular limitation gives rise to a presumption that the

limitation in question is *not* present in the independent claim. *Phillips*, 415 F.3d at 1314-

1315. In addition, the specification may reveal an intentional disclaimer, or disavowal, of

claim scope by the inventor. *Id.* at 1316. In that instance as well, the inventor has

dictated the correct claim scope, and the inventor's intention, as clearly expressed in the

specification, is regarded as dispositive. *See SciMed Life Sys., Inc. v. Advanced*

*Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001).

5

E.     **The Court Is Not Obliged To Construe Disputed Terms When The Plain Language Of The Claim Is Sufficient To Convey Their Meaning**

Where the ordinary meaning of claim language as it would understood by a person of skill in the art is readily apparent to lay judges, claim construction requires little more than the application of the widely accepted meaning of commonly understood words. *Phillips,* 415 F.3d at 1314. The Court need not provide a new construction for every claim term at issue:

> The *Markman* decisions do not hold that the trial judge must repeat or restate every claim term in order to comply with the ruling that claim construction is for the court. Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy.

*U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

## III.     TORO'S PROPOSED HISTORY OF LAWN MOWERS

In a predictable attempt to persuade the Court to give the claims an unduly narrow reading, Toro creates an alleged "history" of the lawnmower intended to minimize the Textron inventions. Toro's supposed history lesson, while interesting, is apropos to none of the issues before the Court.[4] Textron concedes that its invention did not invent the lawn mower. Neither did Toro. And while lawn mowers have been around for many years, that has not deterred Toro from seeking patent protection for its own mowers. Notably, Toro's U.S. Patent 6,484,481 ("the '481 patent"), which also purports to cover one of the Toro mowers accused in the present action, cites the '530 patent. *See* '481

---

[4] In fact, Toro did not rely on *any* of the prior art references cited in its Opening *Markman* Brief for its invalidity contentions in this case, and these references are not cited by Toro in its Court-ordered Prior Art Statement.

6

patent, Exh. 1, References Cited. Thus, while Toro would leave the Court with the impression that lawn mower technology is mature and unworthy of any further patent protection, to this day, Toro continues to aggressively pursue patent protection for its own lawn mower innovations.[5]

## IV.    THE CONCLUSORY DECLARATION OF TORO'S EXPERT WITNESS FAILS TO APPLY PROPER CLAIM CONSTRUCTION PRINCIPLES

Toro offers the Declaration of Robert B. Skromme as extrinsic evidence that allegedly supports its proposed claim constructions. Notably, Mr. Skromme does not recite or evidence any understanding of the legal framework that must be applied to properly interpret patent claims. *See generally*, Toro Opening Br., Skromme Declaration. Furthermore, despite formulating unduly narrow definitions for each claim term, Mr. Skromme fails to point to any particular portions of the intrinsic evidence that support his conclusory interpretations or his contentions that the claim terms should not be given their ordinary and customary meanings. *Id.* In contrast, Toro's brief goes to great lengths to import specific statements from the Summary of the Invention into the claims. Remarkably, Mr. Skromme's proposed interpretations, while entirely unsupported by the law or the Textron Patent specifications, are identical to the constructions proposed by Toro. Either Mr. Skromme did not perform an independent analysis, or he, like Toro, liberally imports limitations from the specification into the claims.

---

[5] In fact, in response to this lawsuit, Toro countersued Textron in Federal Court in Minnesota alleging infringement of two of its own mower patents. That case is pending and has a trial date set for July, 2007.

## V.    THE PREAMBLE PHRASE "GANG TYPE ROTARY MOWER" IS A CLAIM LIMITATION

Each of the claims at issue recite, in the preamble, "a gang type rotary mower."
The claims of the Textron Patents are not directed to just any type of mower; they are
directed to a "gang-type rotary" mower. The claim language itself makes this distinction,
but the important distinctions between gang-type rotary mowers and gang-type reel
mowers are also explained in the Textron Patent specifications:

> The invention provides a gang-type rotary lawn mower
> suitable for cutting a golf course rough.  This is a
> tremendous improvement over the known prior art, because
> a rotary mower typically requires substantially less
> maintenance than a reel mower.

'530 patent 1:23-26 (JA 0007). This distinction is specified in the claims by the
limitation "gang-type rotary lawn mower," which appears in the preamble to all of the
claims of the Textron Patents.

"Whether to treat a preamble as a limitation is a determination 'resolved only on
review of the entire [] ... patent to gain an understanding of what the inventors actually
invented and intended to encompass by the claim.'" *Catalina M'ktg Int'l v.
Coolsavings.com,* 289 F.3d 801, 808 (Fed. Cir. 2002). "In general, a preamble limits the
invention if it recites essential structure or steps, or if it is 'necessary to give life,
meaning, and vitality' to the claim." *Id.* at 808. Thus, "if the preamble helps to
determine the scope of the patent claim, then it is construed as part of the claimed
invention." *NTP, Inc. v. Research in Motion, Ltd.,* 418 F.3d 1282, 1305 (Fed. Cir. 2005).

Ironically, while the bulk of Toro's *Markman* brief is devoted to improperly
limiting the claims to particular embodiments disclosed in the specification, Toro asks
that this language — the very language of the claims themselves — not be read as

limiting the claims to "gang-type rotary lawn mowers." Toro's arguments should be rejected for several reasons.

Toro can not dispute that the preamble provides antecedent basis for the subsequent claim limitations. Claim 1 of the '530 patent, for example, recites, in the main body, "a steering system enabling the operator to steer *the lawn mower*," but the term "lawn mower" is recited only in the preamble: "A gang-type rotary *lawn mower* comprising ... ." *See also* Textron Opening Br.; '311 patent, Claims 1 (JA 0008), 2 (JA 0009) and 10 (JA 0010); and '312 patent, Claims 1 (JA 0045) and 24 (JA 0046). Similarly, Claim 19 of the '312 patent recites in the preamble "a gang-type rotary lawn mower having a frame," and in the body of the claim "a lifting arm adapted to pivotally interconnect said cutting deck assembly *and the frame*." '312 patent, Claim 19 (JA 0046). If the "gang-type rotary lawn mower" were not a limitation on the claim, then neither would the "frame." And if these terms are not limitations, no structure would exist to interconnect the "lifting arm" as required by Claim 19. As such, the recitation of "a gang-type rotary lawn mower having a frame" indisputably provides antecedent basis for the "lifting arm" limitation, because without it one can not understand the meaning of the "frame" to which the lifting arm interconnects the cutting deck.[6] Thus the recitation in the preamble of "gang-type rotary lawn mower" is necessary to understand the limitations or terms in the body of the claims.

---

[6] Furthermore, without this limitation, the recitation that the lifting arm interconnects the cutting deck to "the frame" would lack antecedent basis. Where possible, such as in this case, claims should be interpreted to sustain their validity. *Exxon Research and Engineering Co. v. U.S.*, 265 F.3d 1371, 1375 (Fed. Cir. 2001). This claim is no exception.

9

Furthermore, contrary to Toro's suggestion, the patentee clearly relied on the

preamble, and specifically the "gang-type rotary lawn mower" recitation during

prosecution to distinguish the claimed invention from the prior art:

- "Claim 1 has been amended to emphasize the fact that Applicant's invention is a frame-mounted, *gang-type*, single-blade rotary deck mower." Amendment of Apr. 29, 1999 (Paper no. 11) at 5 (JA 0135-0141 at JA 0139);

- "As explained in the Background of the Invention portion of Applicant's specification, rotary mowers have typically not been used to cut golf course roughs, which require close trimming and the ability to cut undulating terrain at a relatively short length. Tow-behind gangs are also undesirable for this purpose. ... Nobody prior to Applicant has recognized the desirability of using, or figured out how to use, *gang-type rotary mowers* to cut golf course roughs." *Id.* at 5-6 (JA 0135-0141 at JA 0139-0140);

- "Claim 1 specifies a gang-type rotary lawn mower ... . This construction is not suggested by any of the cited references taken alone, and is not suggested by either Smith or Nunes, the references which were originally relied upon by the Examiner and which teach gang-type mowers." Amendment of Nov. 4, 1999 (Paper no. 15) at 1-2 (JA 0158-0160 at JA 0158-0159);

- "Conventional wisdom in the art of gang-type mowers held that rotary mowers could not be used to cut golf course roughs." Declaration Under Rule 132 dated Nov. 4, 1999 (Paper no. 14) at 2 (JA 0150-0153 at JA 0151).

## VI.    TORO IMPROPERLY ATTEMPTS TO NARROW THE PLAIN MEANING OF THE CLAIMS BY READING THE SUMMARY OF THE INVENTION INTO THE CLAIMS

### A.    The Federal Circuit Has Never Sanctioned Importing Limitations Into the Claims in the Absence of An Express Disavowal of Claim Scope or Disparagement of the Prior Art

In a clear effort to achieve its results-oriented interpretation by importing

limitations from the specification into the claims, Toro places heavy reliance upon

*Wireless Agents LLC, v. Sony Ericsson Mobile Commc'ns*, 2006 WL 2091197 (Fed. Cir.

2006) (non-precedential); *Honeywell Int'l, Inc. v. ITT Industrials, Inc.*, 452 F.3d 1312

(Fed. Cir. 2006); *SciMed*, 242 F.3d 1337; and *Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 450 F.3d 1350 (Fed. Cir. 2006). In each of these cases, the Federal Circuit affirmed claim interpretations that limited the claimed inventions to specific embodiments or features disclosed in the specifications. But in each of these cases the reason for so limiting the claims in those cases was abundantly clear — the patentee had expressly limited the claims by disavowing or disclaiming claim scope, or disparaging or making derogatory comments about prior art systems, the very features of which were found in the accused devices at issue. *See Wireless Agents*, 2006 WL 2091197 at *3 (because the specification repeatedly made derogatory statements about the 12-digit keypad on mobile phones, the Court concluded that the claimed "alphanumeric keyboard" could not include a 12-digit keypad, as found in the accused devices, but rather required an individual key associated with each letter); *Honeywell*, 452 F.3d at 1320 (patentee's "repeated derogatory statements concerning one type of material are the equivalent of disavowal of that subject matter from the scope of the patent's claims"); *SciMed*, 242 F.3d at 1342-43 (because patents distinguished prior art on basis of the use and advantages of coaxial dual lumens as opposed to disadvantages of prior art, "claims should not be read so broadly as to encompass the distinguished prior art structure"); *Inpro II*, 450 F.3d at 1355-1357 (where specification described only one embodiment of a "host interface," whereas specification described multiple embodiments of a separate interface, and inventor emphasized importance of disclosed embodiment for host interface during prosecution to solve the problems of the prior art, the District Court properly construed host interface to exclude the prior art and encompass the described embodiment). These cases do not, as Toro seems to suggest, permit the Court to limit the claim language by importing such limitations into the claims absent a clear intention for

11

the claims and the specification to be coextensive. *Pfizer*, __ F.3d at __, 2006 WL

2137244 at *7-8 (Exh. 7).

By contrast, Textron did not in any way disavow, disparage or distinguish its

invention from the prior art in the manner Toro suggests, and clearly did not provide even

a suggestion that the patent claims were intended to be strictly coextensive with the

embodiments of the specification. To the contrary, the inventor stated in the specification

> [b]efore one embodiment of the invention is explained in
> detail, it is to be understood that *the invention is not limited
> in its application to the details of the construction and the
> arrangements of components set forth in the following
> description or illustrated in the drawings*. The invention is
> capable of other embodiments and of being practiced or
> being carried out in various ways. Also, it is understood
> that the phraseology and terminology used herein is for the
> purpose of description and should not be regarded as
> limiting.

'530 patent 2:25-34 (JA 0007). At most, the point of distinction noted by the patentee

pertained to the use of a gang-type rotary lawn mower as opposed to a reel lawn mower

for cutting golf course roughs. *See* '530 patent at 1:23-27 (JA 0007). Ironically, this is a

distinction that Toro contends should *not* constitute a claim limitation.

**B.    None Of The Claims At Issue Are Limited To A "Tri-Pivot" Deck
        Assembly**

Preliminarily, Toro seeks to reduce all of the claims of the Textron Patents to a

single discreet invention - a "tri-pivot" deck assembly. Toro Opening Br. at 5. Toro's

approach is contrary to established law. *See, e.g., Aro Mfg. Co. v. Convertible Top

Replacement Co.*, 365 U.S. 336, 344-345 (1961); *Bausch & Lomb, Inc. v. Barnes-

Hind/Hydrocurve, Inc.*, 796 F.2d 443, 449 (Fed. Cir. 1986) (distilling invention to a

"gist" or "core" is "a superficial mode of analysis that disregards elements of the

whole"); *see also, Allen Eng'g Corp. v. Bartell Indus., Inc.* 299 F.3d 1336, 1345 (Fed.

Cir. 2002) (overruling District Court's method of identifying feature as "heart" of invention and attributing this feature, which appeared in dependent claims, to independent claims not reciting the feature). Furthermore, the expression "tri-pivot" is found nowhere in the Textron Patents, yet Toro tells the Court that it means a "rotary cutting deck assembly having a rear roller capable of pivoting about three mutually perpendicular axes." While it is true that the patent specification[7] describes a deck assembly that is capable of pivoting about three mutually perpendicular axes (and the claims would cover such a configuration), clearly, the inventor did *not* state that this feature is necessarily required of each and every aspect of the claimed invention. Nor did the inventor disclaim, disavow or disparage any other deck assemblies that are incapable of doing so. If anything, the Summary of the Invention of the Textron Patents, disclaims *reel* mowers:

> The invention provides a gang-type rotary lawn mower suitable for cutting a golf course rough. ***This is a tremendous improvement over the known prior art, because a rotary mower typically requires substantially less maintenance than a reel mower.***

'530 patent at 1:23-27 (emphasis added) (JA 0007). Nowhere does the inventor suggest or point to uni-pivot, dual-pivot or tri-pivot prior art deck assemblies as being inferior to

---

[7] Toro notes that "technically" the "specification" consists of the written description, the drawings and at least one claim. Toro Opening Br. at 6, n. 16. However, this should not be construed, as Toro would have the Court believe, that the written description should simply be folded into the claims. The cases are clear that the specification and claims should not be collapsed during the process of interpreting the claims. *See Phillips*, 415 F.3d at 1323 (distinguishing the specification from the claims and admonishing, "to avoid importing limitations from the specification into the claims, it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide the best mode for doing so").

the deck assembly disclosed in the Textron Patents. In fact, the Textron Patents make no comments whatsoever about such other designs.

Toro also ignores that many of the non-asserted claims of the Textron Patents specifically recite as a claim element a rotary cutting deck assembly capable of pivoting about three mutually perpendicular axes. *See, e.g.*, '530 patent claim 7 at 5:63-6:5 (JA 0009) (reciting that the front and rear deck assemblies are connected to the frame for pivotal movement about generally vertical and horizontal axes). Thus, under the established doctrine of claim differentiation, the absence of such features from the asserted claims creates a presumption, which has not been rebutted by Toro, that such features are **not** present in the claims that do not have such features. *See Phillips*, 415 F.3d at 1315 ("the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim); s*ee also, Mycogen Plant Science, Inc. v. Monsanto Co.*, 243 F.3d 1316, 1329 (Fed. Cir. 2001); *and Dow Chem. Co. v. U.S.*, 226 F.3d 1334, 1341-42 (Fed. Cir. 2000). Furthermore, while the Examiner initially rejected the asserted claims, the non-asserted claims having what Toro refers to as the "tri-pivot" arrangement were immediately allowed at the outset of the '530 patent's prosecution. *See* Office Action dated Apr. 13, 1998 (paper no. 4) at 6 (JA 0094-0102 at JA 0100). As such, it could not be clearer that the inventor did not include this limitation in the asserted claims as Toro would have the Court believe.

In summary, Toro's attempt to reduce the invention to a "tri-pivot" "gist" is both legally improper and factually unsupported. The inventor did not distinguish his invention from the prior art on the basis that it supposedly claimed a "tri-pivot arrangement." And that such an arrangement is recited in several of the non-asserted

claims of the Textron Patents demonstrates that it is not claimed in the remainder.

Rather, this arrangement is embodied only in a separate set of claims that are not at issue

in this litigation. As the prosecution history makes clear, the original patent application

claims were divided at the outset between claims that included what Toro refers to as the

so-called tri-pivot design, which claims were immediately allowed, and those that did

not. The *non*-"tri-pivot" claims are the subject of the present action, and these claims

were distinguished over the prior art for various reasons not related to the tri-pivot

feature.

### C. Toro's Interpretation Of "Front And Real Wheels" Improperly Imports Limitations From The Specification

As explained in Textron's Opening *Markman* Brief, the plain meaning of the term

"front and rear wheels" is at least one front wheel, and at least one rear wheel. A bicycle

has "front and rear wheels" — it does not have "front and rear wheel." Regardless, Toro

contends that the inventor of the patent departed from this ordinary and customary

meaning, and that the claim requires at least two front wheels and at least two rear

wheels.

In order to depart from the plain language of the claims, Toro first argues that the

'530 Patent Claim 1 purportedly contradicts Textron's proposed construction because it

further recites front deck assemblies mounted "in front of the front wheels" and rear deck

assemblies mounted "between the front and rear wheels." However, the recitation of

"front wheels" later in claim 1 does nothing more than further limit the expression "front

and rear wheels" to multiple *front* wheels. Nothing in claim 1 further adds that there

must be plural *rear* wheels.[8] Toro also erroneously concludes that "front and rear wheels" must mean plural front wheels and plural rear wheels because "[i]f Textron wanted its claim construction to cover a single rear wheel it would have written "between the front wheels and at least one rear wheel." While the patentee *could* have written Claim 1 of the '530 patent in this way, applying the ordinary and customary meaning to the claim language obtains the same result because "front and rear wheels" requires at least one front wheel, and *at least one rear wheel.* The fact that the patentee later used a different expression to cover multiple front wheels and one or more rear wheels in the '312 patent does nothing but prove that the patentee knew how to set forth more specific wheel configurations, but elected *not* to limit the claims to any particular configuration for the front and rear wheels in those claims that simply recite "front and rear wheels."[9]

Toro next finds false comfort in the "Summary of the Invention" section of the '530 and '311 patent specification, which states that the invention has "front and rear wheels" with cutting deck assemblies "in front of the front wheels," and at least one rear cutting deck assembly "behind the front wheels and in front of the rear wheels." Toro Opening Br. at 15. As noted *supra*, it is improper to import limitations from the

---

[8] Similarly, the further recitation in '530 patent Claim 2 that the rear decks are mounted "in front of the rear wheels" further limits "front and rear wheels" to plural rear wheels (for purposes of *that claim*). *See* '530 patent Claim 2 (JA 0009). But this additional limitation is not recited in Claim 1.

[9] Toro also fails to acknowledge that the patentee indeed knew how to recite more specific configurations when it needed to in the '530 patent. For example, Claim 4 of the '530 patent recites among other things "a *first front wheel* supporting one of the side plates for movement over the ground, and a *second front wheel* supporting the other of the side plates for movement over the ground ..." '530 patent Claim 4 (JA 0009). The patentee thus clearly knew how to claim more specific multiple wheel configurations on the claimed mower, but elected not to limit the claims to any particular configuration when using the recitation "front and rear wheels."

Summary of the Invention to contradict the plain language of the claims. *Innova*, 381

F.3d at 1117. Moreover, in addition to improperly importing features from the

specification into the claims, Toro overlooks that the Summary of the Invention first

describes the invention as having a row of one or more rear cutting decks "between the

front and rear wheels." Thus, the manner in which the Summary first describes an

embodiment having "front and rear wheels," then secondarily describes an embodiment

having "front wheels and … rear wheels," simply mirrors the same manner in which

Claims 1 and 2 of the '530 patent recite a first claim (Claim 1) having one or more rear

wheels, and a second claim (Claim 2) having plural rear wheels.

Toro further criticizes Textron's proposed construction by pointing to Figure 12

of the '312 patent which depicts a three-wheeled mower. *See* '312 Patent, Fig. 12 (JA

0033). Here again, Toro asks the Court to improperly import a limitation from an

embodiment shown in the specification to change the plain meaning of the claims.

*Innova*, 381 F.3d at 1117. Moreover, a person of ordinary skill in the art at the time the

'530 patent was filed would have understood the term "front and rear wheels" to also

refer to a vehicle having one or more front wheels and one or more rear wheels, because

such "trike" mowers and other devices that have one front wheel and two rear wheels, or

vice-versa, were well-known in the art. Parish Supplemental Declaration, Exh. 2, at ¶ 22

(hereinafter "Parish Supp. Decl.").

Toro also erroneously asserts that Textron added the words "front and rear" to

overcome prior art. Toro Opening Br. at 16-17. More accurately, the denominator "front

and rear" preceding "wheels" was added to Claim 1 of the application leading to the '530

patent in order to provide antecedence for the subsequent recitation of the "wheels"

(which are recited without any denomination as the number of wheels, front or rear)

17

appearing later in the claim. *See* Amendment of May 3, 1999 (paper no. 11) at 2 (JA

0135-0141 at JA 0136). Further, in the Office Action preceding the Amendment to add

"front and rear" in describing the wheels, the prior art relied upon to reject the claims,

namely Smith, U.S. Patent No. 5,297,378 and the "Mountfield brochure," each disclosed

mowers having four wheels, two in front and two in the rear:



Figure 1 of '378 patent



Mountfield brochure

*See* Office Action of Jan. 29, 1999 (paper no. 10) at 2 (JA 0131-0134 at JA 0133). Thus,

as seen above, the prior art relied upon to reject the claims all had two front wheels and

two rear wheels. Therefore, the Amendment to add "front and rear" before "wheels"

could not have been the basis to distinguish the claims over Smith '378 and the

Mountfield brochure. To further underscore the point, this Amendment to add "front and

rear" preceding "wheels" did not even carry the day — the Patent Office persisted in

rejecting the claims. *See* Office Action of May 4, 1999 (paper no. 12) at 2 (JA 0142-

0148 at 0144). Textron is thus not attempting to recapture in litigation any claim scope

surrendered during prosecution, but it seeks only to have the phrase "front and rear

wheels" interpreted according to its ordinary and customary meaning.

### D.    Toro's Interpretation Of "Rotary Cutting Deck Assemblies" Improperly Imports Limitations From The Specification

A particularly egregious attempt to import limitations from the specification into

the claims occurs with Toro's proposed construction of the simple phrase "rotary cutting

deck assemblies," *viz.*,

> A cutting unit having **[i]** laterally-spaced, generally vertically-extending side plates, **[ii]** a cross member, **[iii]** front wheels supporting the sides plates, **[iv]** a rear roller extending between and supporting the side plates, a rear roller extending between and supporting the side plates, and a **[v]** single spindle rotary deck mounted between the side plates.

Toro Opening Br. at 17. By contrast, Textron proposes that if any further construction of

this limitation is required, it means "a cutting deck assembly that has a rotary blade, as

distinguished from a reel blade." As with its previous attempts to limit the claims to an

embodiment shown in the specification, Toro relies heavily on the Summary of the

Invention. However, once again Toro fails to acknowledge that, various dependent

claims, such as dependent Claim 4 of the '530 patent, specifically recite the very

limitations that Toro seeks to import into *all* of the claims:

> 4. A lawnmower as set forth in claim 1 wherein each of the front and rear deck assemblies includes **[i]** a pair of laterally-spaced, generally vertically-extending side plates having forward ends, **[iii]** a first front wheel supporting one of the side plates for movement over the ground and a second front wheel supporting the other of the side plates for movement over the ground, **[iv]** wherein the rear roller extends between the side plates and supports the side plates for movement over the ground, **[v]** wherein the associated deck is located between the side plates and in front of the roller and is mounted on the side plates such that the height of the deck relative to the ground is adjustable by changing the position of the deck relative to the side plates.

'530 Patent Claim 4 (JA 0009). Thus, as seen above, Toro's proposed construction is found in large part in dependent Claim 4 of the '530 patent. Similar dependent claims are found in '311 patent Claim 4 (JA 0021) and '312 patent Claim 12 (JA 0046). Again, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is *not* present in the independent claim. *See Phillips*, 415 F.3d. at 1314-15.

Toro's construction is at odds with the ordinary meaning of the limitation and causes the Court to engage in "an obligatory exercise in redundancy." *U.S. Surgical*, 103 F.3d at 1568. Here, the ordinary meaning of "rotary cutting deck assembly" is clear, and Toro should not be permitted to import a host of limitations recited in the dependent claims.

### E.    Toro's Interpretation Of "Mounted On The Frame" Improperly Imports Limitations From The Specification

According to Toro, the simple phrase "mounted on the frame" means that the deck is "attached directly to the frame so that the deck can move vertically relative to the frame and can pivot relative to the frame about three mutually perpendicular axes." Again, Toro ignores that these words have a plain meaning; further, Toro pays no attention to what this term means in the art, or even how this term is used in the patent specification as a whole, but instead relies on narrowly and selectively-culled excerpts from the Summary of the Invention in support of its construction. Toro Opening Br. at 22.

Here again, Toro altogether ignores non-asserted claims of the Textron Patents that actually recite that the deck assembly can pivot relative to the frame about three mutually perpendicular axes. Non-asserted Claim 7 of the '530 patent, for example,

recites that the cutting deck assemblies are "mounted on the frame," '530 patent at 5:47-48 (JA 0009), and 5:51-52 (JA 0009), then *further* recites that the deck assemblies are mounted with structure to provide pivotal movement about "a generally vertical axis," "a generally horizontal axis extending in the forward-rearward direction," and "a generally horizontal, laterally-extending axis" — that is, about three mutually perpendicular axes or, at Toro calls it, a "tri-pivot" configuration. *Id.* at 5:62-6:16 (JA 0009); *see also,* '530 patent Claim 8 at 6:41-50 (JA 0009); '530 patent Claim 10 7:20-29 (JA 0010); '530 patent Claim 12 at 8:1-11 (JA 0010); 530 patent Claim 17 at 10:1-12 (JA 0011). Application of Toro's proposed construction to these non-asserted claims demonstrates that its construction does not make sense. Toro's interpretation of "mounted on the frame" would require three pivoting relationships in each of these non-asserted claims *separate and apart* from the specific recitation of these three mutually perpendicular pivoting axes. Thus, Toro's argument is again exposed as an improper attempt to import specific limitations from dependent or non-asserted claims into other asserted claims in which these limitations are *not* recited. *See Phillips*, 415 F.3d at 1314-15.

It is evident that Toro's proposed interpretation is intended to import limitations from the specification to secure its non-infringement argument.[10] Thus, Toro overlooks the fact that the term "mounted on the frame" is used to describe completely different mounting relationships that do not require the "tri-pivot" arrangement Toro seeks to import into the claims. For example, the "operator's seat" and the "power source" described in the '530 patent Abstract and Summary of the Invention are claimed as being

---

[10] Toro all but admits that its claim construction is a results-oriented effort to find a non-infringement "silver bullet." *See* Toro Opening Br. at 1.

"mounted on the frame." *See, e.g.*, '530 Patent at Fig. 1 (JA 0002), Abstract (JA 0001),

1:38-44 (JA 0007), 2:52-63 (JA 0007), 4:44 (JA 0008) (Claim 1 reciting "a power source

which is mounted on the frame"), and 4:46 (JA 0008) (Claim 1 reciting "an operator's

seat mounted on the frame"). Clearly, these mounting arrangements do not require the

detailed tri-pivot attachment system Toro contends must be teased out of the phrase

"mounted on the frame." In fact, Toro does not even venture an explanation how its

proposed construction of "mounted on the frame" can be reconciled with the fact that the

claims recite that the operator's seat and the power source are also "mounted on the

frame."[11]

### F.    Toro's Interpretation Of "Deck Defining A Downwardly Opening Space" Improperly Imports Limitations From The Specification

Toro's proposed construction of "deck defining a downwardly opening space" not

only limits the claimed invention to a "mulching deck," but also to a very particular kind

of mulching deck "having a solid vertical wall of uniform height open on the bottom so

that all of the grass clippings go down into the lawn, and not any other place." Toro

Opening Br. at 25. On its face, it is evident that Toro again asks to narrow the claim

beyond recognition. In support, Toro points to non-asserted dependent Claim 6 of the

'530 patent which, at the very end of the claim, describes the clippings as swirling around

within "the space." From this, Toro concludes that the cutting decks of *all* of the claims

must be so-called "mulching decks" because according to Toro, "the notion of swirling

clippings is a point of distinction between mulching decks and non-mulching decks such

---

[11] Prior to filing its Opening *Markman* Brief, Toro represented to Textron that it sought to interpret the term "mounted on the frame." Perhaps realizing the glaring inconsistency of its proposed construction when applied to the remainder of the patent claim terms, Toro's *Markman* Brief sets forth its argument under the heading "*Deck Assembly* Mounted on the Frame." Toro Opening Br. at 21 (emphasis added).

as rear- or side-discharge decks." *Id.* at 26. While Toro relies on the limitations of Claim 6 to limit Claim 1 to a mulching deck, Toro's expert takes a different, and somewhat inconsistent, approach by simply concluding that the term "deck defining a downwardly opening space" has an ordinary and customary meaning, which is "a deck having a generally vertical wall of a uniform height where the opening is only downward." Skromme Decl. at ¶ 18.

Yet nowhere does the claim language or the specification limit the phrase to a deck having "a continuous solid vertical wall of uniform height," or a deck in which the opening is "only downward." Likewise, "swirling clippings" are nowhere recited in any independent claim of the Textron Patents. As such, Toro's argument appears to propound a new principle of claim construction: according to Toro, the dependent claims do not serve to *narrow* the independent claims, rather, they "describe" the terms of the independent claims. Toro Opening Br. at 26 ("Claim 6 is describing the 'space' defined by the downwardly opening deck [recited in claim 1] — it is not further narrowing that term."). Of course, this argument flatly contradicts settled patent law, including 35 U.S.C. §112, ¶4, which states that "a claim in dependent form shall contain a reference to a claim previously set forth and then *specify a further limitation of the subject matter claimed.*" 35 U.S.C. §112 (2006) (emphasis added). According to patent law and the principle of claim differentiation, Claim 1, from which Claim 6 depends, is broad enough to cover embodiments in which the clippings swirl within the chamber, but it is not limited to such embodiments. *Phillips,* 415 F.3d at 1314-1315.

Moreover, even if one were to adopt *arguendo* Toro's contention that a person of ordinary skill would import the limitations of claim 6 into claim 1 (or at least those limitations that serve Toro's non-infringement arguments), Toro's unsupported attorney

23

argument sets forth no factual basis — not even the Skromme Declaration — to support

its premise that the clippings swirl *only* in mulching decks, and never in non-mulching

decks. To the contrary, it seems intuitively unlikely that grass clippings in side- and rear-

discharge decks do *not* swirl within the deck. The rotating blade generates an airflow that

would tend to entrain the light grass clippings and cause them to follow the path of the

blade. Parish Supp. Decl., Exh. 2, at ¶ 23. Toro's own, later-obtained, U.S. Pat. No.

6,470,663 ("the '663 patent") (attached as Exh. 3), which allegedly illustrates Toro's

"rear discharge" cutting deck used on its accused devices, supports this intuitive

understanding:

> The grass clippings which have been created by the cutting
> action of cutting edges 22 of cutting blade 10 *are entrained*
> *in this airflow and circulate within cutting chamber 12*
> *until such time as they exit cutting chamber 12.*

'663 patent, Exh. 3, at 5:15-19 (emphasis added). Toro's own patent therefore

contradicts the premise of its "mulching deck" argument. Thus, even if the clippings

must "swirl[] around" in the cutting deck of Claim 1, this does not lead to the conclusion

that the cutting decks must be "mulching" decks.

Still further, it is simply not true that all mulching decks have "a solid continuous

wall of uniform height," as Toro apparently contends. For example, U.S. Pat. No.

5,191,756 ("the '756 patent") (attached as Exh. 4), which was known in the art almost

four years before the Textron Patents were filed, illustrates two- and three-spindle

mulching decks having a side discharge outlet 32 that allows air and excess clippings to

exit the deck. *See* '756 patent, Exh. 4, at 3:26-29, and 5:2-21. The discharge outlet 32

includes a plate member 56 that partially closes the outlet 32, and an adjustable member

60 having holes through it that allow air and clippings to exit the housing. *Id.* at 3:59-68.[12]

Further, none of the Textron Patents use the phrase "a solid continuous wall of uniform height" to define the deck or otherwise. In Toro's own U.S. Pat. No. 6,484,481, Toro expressly describes the wall of its own mulching deck as being "generally continuous and unbroken." '481 patent, Exh. 1, at 4:16-18. Yet, while the Textron Patents recite no such limitation, Toro would have the Court confine the Textron Patents to covering only mulching decks that are defined by "a solid continuous wall of uniform height." Still further, Toro's expert's definition actually differs from Toro's in that he would not limit the wall to being "continuous" and "solid," but would require the deck to open *only* downward. Toro's proposed definition does not limit the deck to being open *only* in the downward direction.

Finally, there is no basis for restricting the term "deck defining a downwardly opening space" to cover only the illustrated embodiments (which, as explained in Textron's opening Brief, do not necessarily fit Toro's description in any event). The patentee did not distinguish, disavow or disparage non-mulching decks or decks having alternative constructions anywhere in the patent specification, and did not disclaim any claim scope beyond the ordinary and customary meaning of the claim terms.

---

[12] The '756 patent also describes prior art mulching decks that had openings through the side wall: "Other prior art mulching mechanisms provide a plate for covering the discharge outlet of the mower deck, *and have slots or other openings formed therein.*" *See* '756 patent, Exh. 4, at 1:57-68.

G.     **Toro's Interpretation Of "Roller Extends Across Substantially The Entire Width Of The Deck" Ignores The Patent Specification, Is Contrary To Federal Circuit Precedent Interpreting "Substantially," And Contorts The Claim Terms Using Inapplicable Dictionary Definitions**

Toro appears to contend that the use of the easily understandable term "substantially" renders indefinite the phrase "roller extends across substantially the entire width of the deck." Clearly, it does not. *Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1120 (Fed. Cir. 2002) ("It is well established that when the term 'substantially' serves reasonably to describe the subject matter so that its scope would be understood by persons in the field of the invention, and to distinguish the claimed subject matter from the prior art, it is not indefinite."); *see also Pannu v. Iolab Corp.*, 155 F.3d 1344 (Fed. Cir. 1998); *Exxon Research and Engineering Co. v. U.S.*, 265 F.3d 1371, 1375 (Fed. Cir. 2001); *York Products Inc. v. Central Tractor Farm & Family Center*, 99 F.3d 1568, 1572-73 (Fed. Cir. 1996). In fact, Toro itself uses the word "substantially" in the claims of no less than one hundred and ninety-five of its own United States Patents.[13] Ironically, the very patent that covers the accused devices, Toro's '663 patent, used nearly the exact same term to claim a feature of Toro's cutting deck:

> 3. The rotary cutting deck of claim 2, wherein the grass discharge channel [34] has a width measured by the distance between the inner shroud [32] and peripheral wall [16] along a radial line extending outwardly from a center of the cutting chamber, and *wherein the ramp [36] spans across substantially the entire width of the grass discharge channel [34]*.

---

[13] Toro's patent holdings since 1976 can be searched on the United States Patent and Trademark Office website at: http://patft.uspto.gov/netahtml/PTO/search-adv.htm. A search using the term an/"the toro company" and aclm/substantially (where "an" = assignee name, and "aclm" = claims), reveals 195 patents since 1976 that are assigned to Toro, and that recite the word "substantially" in the claims. *See Phelps Declaration at* ¶ 6, *and* Exh. 5.

'663 patent, Exh. 3, at 9:1-6. This claimed feature is best shown in Fig. 3 of the '663

patent, and reference numbers are added to the citation above to assist the Court with

understanding how analogous Toro's recitation is to the recitation in the Textron Patents.

While Toro peppers the '663 patent specification and claims with the term

"substantially," it provides no a specific definition of the term.

Not only does Toro consider its own use of the word "substantially" proper, it is

willing to sue on patents containing the term. For example, in Toro's prior appearance in

this Court it claimed that Textron infringed its U.S. Pat. No. 3,359,661 ("the '661

patent") (attached as Exh. 6). The '661 patent claims a snow blower having a "chute

means" for "discharging snow therefrom upwardly from *substantially the entire forward*

*vertical length* of the open chute means." *The Toro Company v. Textron, Inc.*, 499 F.

Supp. 241, 243 (D. Del. 1980) (citing '661 patent, Exh. 6, at 8:42-44).

Despite its own copious use of the term "substantially" in literally hundreds of

patents and to claim features in virtually the identical manner in which the Textron

Patents use the term, Toro and its expert, Robert Skromme, claim to be confused by the

Textron Patents. They both rhetorically ask, "does the phrase include or exclude rollers

that extend the full width of the deck?" Skromme Decl., ¶ 27, Toro Opening Br. at 28.

Mr. Skromme and Toro ignore the context of the claim recitation. The Textron

Patents set forth various purposes of the roller, such as to stripe the grass and resist

scalping:[14]

---

[14] Toro's disregard of the patent specification on this point is temporary, however. Toro
later argues that the "roller" should be defined according to two its stated purposes as "a rotating
device that resists scalping and stripes the grass." Toro Opening Br. at 38.

> A rear roller 58 extends between the side plates 46 and 48
> and also supports the side plates 46 and 48 and the deck 38
> for movement over the ground. The roller 58 is behind the
> deck 38 and extends across substantially the entire width of
> the deck 38. The roller 58 resists scalping and stripes the
> grass.

'530 Patent at 3:16-21 (JA 0008). In fact, rollers were well known in the art at the time

of the invention as being useful to enhance the appearance of cut grass by rolling over the

portion of the turf that is cut by the blades. Parish Supp. Decl., Exh. 2, at ¶ 24. To

provide such striping, the roller can extend across all or more than the cut region of the

grass, but since striping is generally a visual effect that is intended to be perceived and

enjoyed at some distance, suitable striping can still be produced even if the roller does not

roll over exactly all of the cut region of grass, particularly where multiple cutting decks

overlap such that their rollers overlap one another. *Id.* In view of the fact that the

disclosure states that the roller "stripes the grass," and the fact that rollers were well

known to provide such striping, a person of ordinary skill in the art would readily

conclude that the roller "extends across substantially the entire width of the deck, but is

not required to be exactly as wide as the deck." Textron Opening Br., Parish Decl. ¶ 53.

In other words, the rear roller may be slightly smaller or slightly larger than the width of

the cutting deck, provided that the roller provides a striping effect behind the cutting

deck. Parish Supp. Decl., Exh. 2, at ¶ 24.

    Toro supplements its indefiniteness argument with a newly-proposed construction

for this term: "the roller extends slightly less than or the full width of the deck, but not

beyond the full width of the deck."[15] Not only is this proposed construction untimely,[16] it

---

[15] Toro modified its definition of this limitation subsequent to the filing of the Joint Claim
Construction Statement ("JCCS"). In the JCCS, Toro simply alleged that "[t]his term is indefinite
(continued...)

28

is also incorrect. To support its newly-proposed claim construction, Toro performs

exactly the kind of dictionary-based claim construction admonished against by the

*Phillips* Court:

> The main problem with elevating the dictionary to such
> prominence is that it focuses the inquiry on the abstract
> meaning of words rather than on the meaning of claim
> terms within the context of the patent. Properly viewed, the
> "ordinary meaning" of a claim term is its meaning to the
> ordinary artisan after reading the entire patent. Yet heavy
> reliance on the dictionary divorced from the intrinsic
> evidence risks transforming the meaning of the claim term
> to the artisan into the meaning of the term in the abstract,
> out of its particular context, which is the specification.

*Phillips*, 415 F.3d at 1321. Toro's construction begins by viewing the word

"substantially" in the abstract, then applying the dictionary definitions found in Merriam-

Webster's Collegiate Dictionary to limit this word to "being largely but not wholly that

which is specified" and "considerable in quantity." Toro Opening Br. at 29. Having

done so, Toro then declares that the function of the roller is to resist scalping and stripe

the grass, and further declares — without any intrinsic or even extrinsic support — that

only a roller that does not extend beyond the width of the deck would be able to stripe the

grass and resist scalping. *Id.* at 30. The error of Toro's construction method is evident in

the result: how is it that a roller that is wider than the deck can not stripe or resist

scalping? Toro offers no explanation.

---

and not capable of construction." JCCS at 17. Now, however, Toro contends that this limitation
means that "the roller extends slightly less than or the full width of the deck but not beyond the
width of the deck." Toro Opening Br. at 27. Toro's about-face on the meaning of this claim term
is further indicative of the results-oriented constructions that it seeks.

[16] Rather than notifying Textron of this proposed construction in its statement of disputed
claims terms and the JCCS, Toro presented this alternative construction for the first time in its
Opening *Markman* Brief.

In fact, a roller that is wider than the deck can and would resist scalping and stripe the grass. Parish Supp. Decl., Exh. 2, at ¶ 24. Furthermore, Toro's apparent implication that using the term "substantially" prohibits the roller from being wider than the deck simply ignores that the claim is written in the "open ended" format by virtue of being recited following the transitional term "comprising." *See, e.g., Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) ("'Comprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim."). Thus the limitation that the roller "extends across substantially the entire width of the deck" places no maximum limit on the width of the roller.

### H. Toro's Interpretation Of "Lifting Arm" Improperly Imports Limitations From The Specification

Just like Toro's construction of "mounted on the frame," Toro improperly imports embodiments from the specification into the limitation "lifting arm." The term "lifting arm" is recited in various dependent claims of the Textron Patents. *See, e.g.*, '530 patent Claim 3 (JA 0009) ("wherein each deck assembly is connected to the frame by a respective lifting arm operable to lift the associated deck assembly relative to the frame, such that each of the deck assemblies is connected by its own lifting arm to the frame."). Again, the results-oriented nature of Toro's proposed construction is evident from its contortion of the simple term "lifting arm":

> a generally L-shaped, horizontally-extending device having inner and outer ends operable to lift the deck assembly relative to the frame, the inner and pivotally connected to the frame, the outer end pivotally connected to the deck assembly for pivotal movement about a generally vertical axis and about a generally horizontal axis extending in the forward-rearward direction.

30

Toro Opening Br. at 30. As support for this narrow reading of the term, Toro once again ignores the claim language and relies entirely on the Summary of the Invention. As in the previous instances, Toro simply ignores that the Summary of the Invention does not define what the inventor claims as his invention, rather it is the *claims* that do so. *See* 35 U.S.C. § 112, ¶2 ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter *which the applicant regards as his invention*.") (emphasis added).

The asserted claims simply recite a "lifting arm" that is operable to lift the deck assembly relative to the frame. Here again, various ***non-asserted*** claims recite lifting arms with various additional structural limitations, but the asserted claims do not. Moreover, the claims having such features were allowed at the outset of the '530 patent's prosecution. *See* Office Action dated Apr. 13, 1998 (paper no. 4) at 6 (JA 0094-0102 at JA 0100). Thus, it is clear that such limitations are not in the asserted claims, as Toro would have the Court believe. Furthermore, Toro can point to no instance in which the patentee disavowed or surrendered any alternative construction for the "lifting arm," or even disparaged alternative constructions, and thus the claims may not be limited to one particular embodiment shown in the '530 and '311 patents as Toro suggests.

Finally, Toro's proposed construction entirely ignores the fact that the '312 patent shows embodiments of a "lifting arm" that are not "generally L-shaped" and do not have "the outer end pivotally connected to the deck assembly for pivotal movement about a generally vertical axis." *See* '312 patent at 5:66-6:7 (JA 0044), 6:13-19 (JA 0044), and Figs. 9-10 (JA 0031). Toro's construction thus not only seeks to limit the claims to the shown embodiments — it seeks to limit the claims to one particular embodiment of the

31

invention, even though the plain language of the claim would clearly cover additional

embodiments and any other configuration of a "lifting arm."

### I.    Toro's Interpretation Of "Side Plates" Improperly Imports Limitations From The Specification

Toro's proposed construction of the simple phrase "side plates" imports no less

than four limitations into this recitation: (i) "thin," (ii) "flat," (iii) "metal" and (iv)

"extending from the rear roller to the front wheels." The "side plate" feature is found, for

example, in dependent Claim 4 of the '530 patent. None of these four additional

limitations that Toro seeks to graft onto "side plates" are found in dependent Claim 4 of

the '530 patent. *See* '530 patent Claim 4 (JA 0009). Nor did the inventor disavow use of

the plain and ordinary meaning of these words.

Notably, neither Toro nor Mr. Skromme even consider whether the term "side

plate" has an ordinary meaning in the art or what that understanding might be.[17]  Instead,

both skip directly to comparing the term with the embodiments of the invention. In

keeping with its legally-flawed analysis, Toro once again relies upon the Summary of the

Invention to support its construction, ignoring that it is the *claims* that define the

invention. 35 U.S.C. § 112, ¶2.

The only portion of Toro's proposed construction that even uses words that are

present in Claim 4 of the '530 patent are that the side plates are "laterally-spaced" and

"generally vertically-extending" — but these limitations are *already* recited elsewhere in

the claim. *See* '530 patent at 5:10-12 (JA 0009) ("each of the front and rear deck

---

[17] Toro declares that "Textron's proposed construction is not consistent with how one of ordinary skill in the art would understand the phrase." Toro Opening Br. at 34 (citing Mr. Skromme Decl. at ¶20). However, Mr. Skromme completely ignores whether there is *any* ordinary meaning to the phrase, and instead presumes that the patentee specifically defined the term in the patent.

assemblies includes a pair of laterally-spaced, generally vertically-extending side plates"). The remaining limitations in Toro's proposed construction are not found anywhere in either the specification of the Textron Patents or the claims. Thus Toro's allegation that "[t]he inventor did not describe his side plates in any other manner" erroneously suggests that the inventor actually used Toro's additional proposed claim terms to describe the side plates; he did not. Toro ignores that the inventor described the recited side plates differently, and much more broadly, in the specification and the claims themselves. Indeed, Toro blatantly mischaracterizes the Textron Patents by claiming that the inventor only disclosed "flat" side plates, reproducing Figure 9 of the '312 Patent in its Brief. Toro Opening Br at 33. What Toro fails to inform the Court is that other embodiments of the '312 Patent specifically disclose cutting decks having side plates that are *not* flat, as shown in '312 Patent Figure 16 (JA 00036), which is reproduced below in relevant part. Here, it is clear that the two side plates are not flat at all, but instead have pronounced right-angle bends in them, as shown by the two broken-line circles, which are added for clarity.



*Fig-16*

And again, Toro points to no disavowal or disclaimer of claim scope, or any disparagement of other structures that would support Toro's unduly narrow reading of the

"side plate" limitation. Thus, there is simply no legal basis for limiting the "side plates" to one particular embodiment of the invention, using terms that are not even present in the patents themselves, as Toro urges.

**J.    Toro's Interpretation Of "Rear Roller Extends Between The Side Plates And Supports The Side Plates For Movement Over The Ground" Improperly Imports Limitations From The Specification**

This limitation is found, for example, in dependent Claim 4 of the '530 patent. Toro seeks to construe this term to mean "each end of the rear roller is connected to a respective side plate." Toro's proposed construction essentially seeks to replace "extends between" with "connected to." The term "connected to" is understood by those of ordinary skill in the art to encompass essentially any operational connection between parts, whether such a connection is by direct attachment or by attachment between intermediate parts. *See* Parish Supp. Decl., Exh. 2, at ¶ 25. The Textron Patents use the term "connected to" in this broad sense.[18] *Id.* Changing "extends between" to "connected to," as Toro would have the Court do, does nothing to change the scope of the term. Toro's proposed construction therefore provides no helpful guidance to a jury.

Regardless, Toro provides no basis for grafting "connected to" into the claim term at issue. Toro's citation to the '530 patent at column 5, lines 16-18 (JA 0009), *see* Toro Opening Br. at 35, simply restates the language of Claim 4. And Toro's citation to the '530 patent at column 1, lines 44-56 (JA 0007), *see* Toro Opening Br. at 35, simply describes, in relevant part, "a rear roller extending between the side plates." Thus, there

---

[18] *See, e.g.,* '530 patent at 5:5-9 (JA 0009) (decks "connected to" the frame by way of moveable lifting arms); 6:1-8 (JA 0009) (end of the "cross member" being "connected to" the side plates for pivotal movement); 5:23-25 (JA 0009) (hydraulic motor drivingly "connected to" spindle); 2:56-57 (JA 0007) (hydraulic motors drivingly "connected to" wheels); and 5:62-64 (JA 0009) (deck assembly "connected to" the frame "in part" by a cross member "connected to" the frame).

is no basis for changing the words "extends between" to "connected to" as suggested in Toro's original proposed claim construction.

Furthermore, Toro's citation to *Elekta Inst. S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302 (Fed. Cir. 2000) wholly fails to support its proposed claim construction.[19] In *Elekta*, the patent-in-suit related to gamma radiation machines, and included a preferred embodiment in which radiation sources were located relative to a diametrical plane at angles between 0°-45°. *Elekta*, 214 F.3d at 1306. The claims recited that the radiation sources and beam channels are located "*only* within a zone extending between latitudes 30°-45°, as seen from said diametrical plane." *Id.* at 1304 (emphasis added). The Court construed the limitation according to its ordinary meaning:

> When given their ordinary meaning, *the terms "only" and "extending between" unambiguously limit claim 1 to gamma units with radiation sources and beam channels located in a zone stretching exclusively in the space separating the latitudes 30° and 45°.* See, e.g., Webster's New World Dictionary 947 (3d ed. 1988) (*defining "only"* as "solely; exclusively"); *see id.* at 480 (defining "extending" as to "stretch out"); *see id.* at 134 (defining "between" as "in or through the space that separates (two things)").

*Id.* at 1307 (emphasis added). Toro cites the case as defining "extending between" to mean "exclusively in the space separating" without revealing to this Court that the claims at issue were further limited by the adjective "only," and this additional limitation was key to the *Elekta* Court's ruling. The *Elekta* Court also relied heavily on dictionary definitions to formulate the claim construction — a practice that has since been criticized

---

[19] Toro's argument is confusing, at best, because it does not focus on its proposed construction: "each end of the rear roller is connected to a respective side plate." Instead Toro digresses into a discussion of whether the roller "extends between the side plates — not anywhere else."

by the Federal Circuit. *See Phillips*, 415 F.3d at 1321. The facts of this case are entirely

different from those of *Elekta* because, *inter alia*, the patent claims do not use the term

"only" to modify the term "extending between."

### K.    Toro's Interpretation Of "Each Rear Deck Assembly Being Aligned With A Respective Gap Between Adjacent Front Deck Assemblies" Improperly Imports Limitations From The Specification

Toro contends that "each rear deck assembly being aligned with a respective gap

between adjacent front deck assemblies," *see, e.g.*, 530 patent Claim 1, should require

that "every" rear deck assembly to be so aligned. That is, even if a device has rear deck

assemblies that are aligned with gaps between adjacent front deck assemblies, Toro

contends that one may avoid infringement by having an additional deck that is not so

aligned.

Toro ignores that the claims are written in "open-ended" format by virtue of the

transitional phrase "comprising" to introduce the body of the claim. *See, e.g., Genentech*,

112 F.3d at 501. And furthermore, it is fundamental that one cannot avoid infringement

merely by adding elements or improvements as long as each element cited in the claims

is found in the accused device. *A.B. Dick Co v. Burroughs Corp.*, 713 F.2d 700, 703

(Fed. Cir. 1983). Thus, regardless whether a device has additional cutting decks that are

positioned outside of the front cutting decks, the "rear" cutting deck assemblies — that is,

those that are defined by the claims as being aligned between the gaps between adjacent

front cutting deck assemblies — still would satisfy this limitation under its ordinary and

customary meaning.

Furthermore, Toro is simply wrong to suggest that the Textron Patents require

that *every* rear cutting deck be aligned with the gap between adjacent front decks. Toro

Opening Br. at 37. Claim 10 of the '311 patent, for example, recites, "at least two front

36

rotary cutting deck assemblies mounted to said frame in front of said wheels…and at least one rear cutting deck assembly being mounted on said frame behind said front deck assemblies." '311 patent 6:17-25 (JA 0021). Claim 10 of the '311 patent does not require that every rear deck assembly be aligned with a gap between two adjacent front deck assemblies. Rather, Claim 10 of the '311 patent would allow additional rear deck assemblies positioned outside of the front deck assemblies, just as would the other claims of the Textron Patents due to the fact that they are "open-ended" claims.

### L.    Toro's Interpretation Of "Roller" Improperly Imports Limitations From The Specification

Certainly, the term "roller" can be readily grasped by a lay jury. A roller is a device that rolls, and can come in many different forms shapes and sizes. Toro's interpretation, on the other hand, would strictly limit "roller" to a "rotating device that resists scalping and stripes the grass." Toro again purports to rely upon the Summary of the Invention to support its construction of this term. But here again the patentee did not disparage, disavow or disclaim any type of roller, regardless of whether it resists scalping or stripes the grass. Nothing in the claim language nor the specification requires that the term be limited in any manner.

## VII.    CONCLUSION

Plaintiff respectfully requests that the Court adopt in its entirety the claim constructions Plaintiff has proffered in the Joint Claim Construction Statement. Further, the Court should reject Toro's strained constructions which improperly seek to import extraneous limitations from the patent specifications into the claims. It is evident that Toro's claim constructions are the product of a results-oriented approach which finds no basis in the law, and are intended solely for the purpose of escaping the consequences of

its obvious infringement. Indeed, the majority of Toro's claim constructions stem directly from its effort to supplant the claims with selectively-culled portions of the specification, ignoring that it is the claims that define the metes and bounds of the invention. Toro's methodology and proposed constructions are legally improper, an invitation to reversible error, and should be rejected as a matter of law.

Respectfully submitted,

Dated: August 18, 2006          By: _____
                                     Edmond D. Johnson  (#2257)
                                     Peter B. Ladig (#3513)
                                     THE BAYARD FIRM
                                     222 Delaware Avenue, Suite 900
                                     Wilmington, DE 19801

                                     OF COUNSEL:
                                     Scott L. Robertson
                                     Christopher C. Campbell
                                     HUNTON & WILLIAMS LLP
                                     1900 K Street, N.W.
                                     Washington, D.C. 20006-1109
                                     Telephone: (202) 955-1500
                                     Facsimile:   (202) 778-2201

                                     **ATTORNEYS FOR PLAINTIFF**
                                     **TEXTRON INNOVATIONS INC.**