# EXHIBIT A

## DEFINITIONS

Plaintiff, Textron Innovations Inc. ("TII") incorporates by reference the definitions set forth in its First Set of Interrogatories to defendant The Toro Company ("Toro"). In addition, the following definition applies:

"Gang-type mower(s)" for purposes of this notice, shall mean any product, vehicle, or apparatus that comprises a gang-type lawn or turf mower, regardless of the cutting blade configuration (*i.e.,* rotary or reel), including without limitation the Toro Groundsmaster 3500-D, the Toro Groundsmaster 3505-D, the Toro Groundsmaster 4500-D, and the Toro Groundsmaster 4700-D, and variations and/or models of the foregoing products regardless of the specific product designation.

## TOPIC AREAS FOR RULE 30(B)(6) DEPOSITION OF TORO

1. Toro's corporate and operational structure.

2. Toro's past, ongoing, and contemplated future development, research, engineering, design and testing of gang-type mowers.

3. The design of every model of Toro's gang-type mowers made, used, sold, offered for sale, or imported into the United States, from 1996 until the present day.

4. Toro's manufacture, repair, servicing, and provision of replacement parts and accessories for gang-type mowers.

5. The operation, functionality, maintenance and use of Toro's gang-type mowers.

6. Toro's strategies, and the purpose and execution of such strategies, related to the distribution, sale and marketing of gang-type mowers.

7. Toro's strategies, and the purpose and execution of such strategies, related to determining and documenting the performance (overall market, comparative or otherwise), advantages and disadvantages (economic, functional or otherwise), and any other performance analysis or evaluation of gang-type mowers.

8. Toro's intellectual property rights related to gang-type mowers and related products and services, including patents and/or patent applications in which Toro has any interest by ownership, assignment, license or otherwise, Toro's policies for procuring and managing such intellectual property rights, and any evaluation of any prior art or technology in relation to such patents, patent applications or other intellectual property.

9. Toro's policies and activities relating to clearing Toro's products, including gang-type mowers, over others' intellectual property rights.

10. Toro's past, current, and projected fees, costs, sales, revenues, profits and/or losses associated with its operations relating to gang-type mowers, including its sales and revenues relating to its gang-type mowers, and how sales/revenues are attributed to geographic regions and Toro's accounting methods for such operations.

11. The market for gang-type mowers, including the size and scope of the market, the presence of other participants or competitors in the market, Toro's share of that market, and the availability of non-infringing alternatives to the inventions of the patents-in-suit.

12. Toro's competition with TII, Textron, Inc., or Jacobsen, a Division of Textron, Inc., related to the sale, repair and servicing of gang-type mowers including Toro's pricing and bidding strategies, selling points, competitive analyses performed, sales lost and sales won.

13. Toro's licensing strategies, policies, forms, provisions, arrangements, reductions, costs and price structures related to the gang-type mowers and related products and services,

14. The existence and terms of any intellectual property licenses, covenants not to sue, or any other agreement granting rights in intellectual property, to which Toro is a party or of which Toro has knowledge, including any prevailing or established fees and/or royalties, related to Toro's business or that of its competitors, and in particular relating to gang-type mowers.

15. Toro's notice, investigation, analysis and evaluation of the patents in suit before and after the filing of the present action, including any opinions of counsel, studies, reports, communications, and any design-arounds or alternative designs considered by Toro.

16. The factual basis for Toro's defense of equitable estoppel in this action.

17. Any communications with third parties by Toro relating to the possible existence of prior art to the patents in suit.

18. Toro's bases, reasons and decisions behind continuing its sales of accused products despite notice of infringement from Textron related to the patents-in-suit, including any opinions provided by counsel.

19. Toro's search for documents and things in response to TII's discovery requests, including the files and documents searched (including but not limited to the files and documents of past and present employees of Toro), methods, procedures, search requests and/or document retention policies used by Toro to comply with TII's discovery requests.

20. Toro's document retention policies.