## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TEXTRON INNOVATIONS INC.,       )
                             )
        Plaintiff,         )
                             )
    v.                )    C. A. No. 05-486 (GMS)
                             )
THE TORO COMPANY,        )
                             )
        Defendant.      )

## PLAINTIFF TEXTRON INNOVATIONS INC.'S BRIEF IN OPPOSITION TO DEFENDANT'S UNTIMELY THIRD MOTION FOR LEAVE TO AMEND ANSWER AND COUNTERCLAIMS

THE BAYARD FIRM
Edmond D. Johnson   (#2257)
Peter B. Ladig (#3513)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19801
Telephone :  (302) 655-5000
Facsimile:  (302) 658-6395

OF COUNSEL:

Scott L. Robertson
Christopher C. Campbell
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109
Telephone:  (202) 955-1500

Attorneys for Plaintiff
Textron Innovations Inc.

Dated:  October 12, 2006

**TABLE OF CONTENTS**

                                                                                                              Page

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL BACKGROUND.................................................................................1

        A.      The Proceedings To Date.........................................................................1

        B.      Toro's Allegations Pertinent To The Pending Motion ...........................2

III.    ARGUMENT..........................................................................................................4

        A.      Absent Leave of Court, Toro Should be Precluded from Raising its New
                Allegations at Trial ..................................................................................5

        B.      Toro's Motion is Untimely and Toro Unduly Delayed In Bringing It ....6

                1.      Toro knew about the Rodriguez reference long before the deadline for
                        amending pleadings ........................................................................8

                2.      Toro knew about the submission of the John Deere reference long before
                        the deadline for amending pleadings ..............................................9

        C.      Toro's New Theories of Inequitable Conduct are Demonstrably Baseless, and
                Should be Dismissed as Futile .................................................................12

                1.      The '530 Patent establishes that the PTO considered the Rodriguez
                        reference during prosecution.........................................................12

                2.      Toro's contentions with respect to the Rodriguez reference are
                        premised upon demonstrably false characterizations of the inventor's
                        statements to the PTO ....................................................................13

                3.      As Toro's counsel has conceded, the inventor's attorney did not
                        commit inequitable conduct by submitting prior art to the PTO
                        during prosecution of the '530 Patent.........................................15

IV.     CONCLUSION.....................................................................................................18

## I.    INTRODUCTION

Plaintiff Textron Innovations Inc. ("TII") respectfully requests that the Court deny defendant The Toro Company's ("Toro") motion for leave to file a third amended answer and counterclaims to allege additional meritless theories of inequitable conduct.  First, Toro unduly delayed in bringing this untimely motion.  The motion comes four months after the Court's June 1st deadline for amending pleadings, even though it is premised upon patent prosecution documents Toro had in its possession since long before that deadline.  Discovery closes in less than two months, and TII is unfairly prejudiced by Toro's continual injection of new and inflammatory allegations of inequitable conduct.  Second, Toro's proposed amendments should be rejected because the allegations are futile.  Among other reasons, Toro's new allegations are premised upon a demonstrably false characterization of the statements made by TII's inventor during prosecution of the patents-in-suit.  Accordingly, the Court should deny Toro's motion.

## II.    FACTUAL BACKGROUND

### A.    The Proceedings To Date

This patent infringement action has been pending in this Court since July 12, 2005.  On February 7, 2006, this Court issued a Scheduling Order, agreed upon by Toro, setting June 1, 2006 as the cut-off date for amended pleadings.  (D.I. 40.)

TII is the assignee of the three patents-in-suit in this case, U.S. Patent Nos. 6,047,530 ("the '530 Patent"), 6,336,311 ("the '311 Patent"), and 6,336,312 ("the '312 Patent") (collectively, the "patents-in-suit").  The TII Patents are directed to a so-called gang type rotary mower specifically designed to address problems encountered in cutting golf course roughs.  The '530 and '311 Patents were invented by Mr. Richard Bednar, a former employee of Ransomes

America Corp., which subsequently became a division of Textron Inc.  The '312 Patent was invented by Mr. Bednar and Mr. Randal Knurr, another former Ransomes America employee.

On August 16, 2005, Toro, a Delaware corporation, moved that the Court transfer this action on grounds of inconvenience pursuant to 28 U.S.C. § 1404(a).  Toro alleged that on August 15, one day before filing its transfer motion, it had filed a "mirror image" action against TII in the United States District Court for the District of Minnesota, requesting a declaratory judgment that it did not infringe TII's patents, and/or that the patents were invalid.  On October 14, 2005, this Court denied Toro's motion to transfer venue of this action.  Following the Court's ruling, the parties stipulated to allowing Toro's amendment of its answer and counterclaims so that it could assert counterclaims of patent invalidity and equitable estoppel in this action.  Toro filed its amended answer and counterclaim on or about November 9, 2005.

On June 1, 2006, Toro filed a motion for leave to file a second amended answer and counterclaims.  (D.I. 56.)  Toro's motion sought to add the defenses of laches and patent unenforceability due to inequitable conduct, as well as counterclaims for declaratory judgment of unenforceability.  (*Id.*)  On September 11, 2006, this Court granted Toro's motion for leave, noting that Toro had filed it within the deadline under the Scheduling Order; Toro's second amended answer and counterclaims was deemed filed as of that date.  (D.I. 86, 87.)

**B.    Toro's Allegations Pertinent To The Pending Motion**

Toro now asks leave of Court to amend its answer and counterclaims a *third* time, on this occasion to allege "two additional independent bases for its defense and counterclaim of patent unenforceability" due to inequitable conduct.[1]  In support of its newly-minted theories of inequitable conduct, Toro relies upon additional facts that it incorrectly alleges were first

_____

[1] As discussed *infra,* Toro requires leave of Court because it is required to plead inequitable conduct with particularity pursuant to Fed. R. Civ. P. 9(b).

discovered at a deposition taken on August 31, 2006. (Toro Brf. at 1.) In truth, these new

allegations are based on patent prosecution documents Toro had in its possession since long

before the Court-ordered deadline for amending pleadings.

Toro's first new theory of inequitable conduct is premised upon a supposed failure of the

inventor, Richard Bednar, and his attorneys to properly disclose a patent reference during the

prosecution of the '530 patent. The reference at issue is U.S. Patent No. 5,305,589 to Rodriguez,

et al. ("Rodriguez"), which was cited to the PTO during the prosecution of another of Mr.

Bednar's applications. (Toro Brf. at 4). The Rodriguez patent does not pertain to an

arrangement for a gang-type rotary mower, but rather to a mulching deck designed to handle tall,

thick grasses and weeds. (Rodriguez, Abstract (Toro Brf. at Ex. 3)). Toro contends that the

Rodriguez reference is material because it discloses the use of rotary mowers to cut golf course

roughs.[2] Toro Exhibit 1, ¶56. Toro further contends that while Mr. Bednar and his attorneys

were aware of Rodriguez during the prosecution of the '530 patent and cited it during

prosecution of another of Mr. Bednar's applications (*id.* at ¶55), they did not cite it to the PTO

(*id.* at ¶54) during prosecution of the '530 patent-in-suit.

All of these facts are evident from the patent prosecution documents that Toro has long

possessed. However, Toro alleges that during a deposition on August 31, 2006, one of Mr.

Bednar's attorneys, Mr. David Price, testified that if he had known of the Rodriguez patent, he

would have disclosed it to the PTO during prosecution of the '530 Patent. (Toro Brf. at 5). Toro

then leaps to the exact opposite conclusion that Mr. Bednar and his attorney must have "intended

to mislead" the PTO because they did not cite Rodriguez in the prosecution of the '530 Patent.

---

[2] Specifically, the relevant passage states — unremarkably — that a "conventional lawn tractor, garden tractor, or commercial mowing tractor has a plurality of rotary cutting blades … and are used to mow a variety of types of grass [including] … golf course fairway and roughs …." *See* Toro Exhibit 3, '589 Patent, col. 1, ll. 15-24.

(Toro Proposed Third Amended Answer and Counterclaims (Toro's Exhibit 1), ¶57).  Toro alleges no other facts with respect to the materiality of Rodriguez or the intent of Mr. Bednar or his counsel to deceive the PTO.

Toro's second new theory of inequitable conduct is premised upon a supposedly improper *submission* of a reference to the PTO by Mr. Bednar's attorneys after the Examiner issued a Notice of Allowance for the '530 patent.  The reference at issue is the 1993 Nunes Rotary Mower, John Deere 3364 Deck Attachment reference ("John Deere reference").  (Toro Proposed Third Amended Answer and Counterclaims (Toro's Exhibit 1), ¶59).  Toro contends that on December 16, 1999, during the prosecution of the '530 patent, Mr. Bednar's attorneys submitted the John Deere reference to the PTO without the proper form and fee, knowing that this meant that the Examiner would not consider the reference.  (Toro Brf. at 5; Toro Proposed Third Amended Answer and Counterclaims (Toro's Exhibit 1), ¶60.)  Although Mr. Price's submission of the reference ensured that it would become a part of the public record, Toro now alleges that this, too, constituted inequitable conduct.

Again, all of these facts are readily evident from the patent prosecution documents Toro possessed long before the cut-off date for amending pleadings.  And again, Toro alleges no other facts from which an intent to deceive the PTO can be reasonably inferred.

## III.    ARGUMENT

Toro's motion should be denied for two primary reasons:  first, the motion is clearly untimely and Toro unduly delayed in alleging these new theories of inequitable conduct.  Toro does not identify any significant *new* facts that justify its delay in amending its answer and counterclaims.  And Toro's reliance upon the Price deposition is simply contrived; in fact, Mr. Price's testimony demonstrated the lack of merit to Toro's contentions.  Second, Toro's motion

is futile, because, among other reasons, its theories of inequitable conduct are based upon gross mischaracterizations of the statements of the inventor during prosecution of the patents-in-suit.

Because Toro has made this motion well past the June 1, 2006 deadline, Toro must demonstrate good cause to amend and to modify the scheduling order. Fed. R. Civ. P. 15, 16(b). No good cause exists here. In determining whether good cause exists, the Court should consider Toro's undue delay, dilatory motive, undue prejudice to TII, and the futility of Toro's proposed amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). In light of these factors, this Court should deny Toro's third motion for leave to amend its answer and counterclaims.

### A.    Absent Leave of Court, Toro Should be Precluded from Raising its New Allegations at Trial

As an initial matter, and contrary to Toro's arguments, absent leave of Court Toro is precluded from introducing any of its alleged newly-discovered theories of inequitable conduct at trial. In its brief, Toro boldly declares that its motion is merely submitted out of "an abundance of caution," and whether or not the Court grants leave to amend, "Toro is aware of nothing that would prevent it from presenting" its evidence to support an inference of a "pattern of intent to deceive" in support of its existing defense and counterclaim of inequitable conduct. (Toro Brf. at 1, 8-9). Thus, Toro announces that even if this Court denies this motion, Toro intends to defy the Court's ruling by presenting the same evidence under the guise of showing a "pattern of intent to deceive."

However, Toro's proposed amended answer and counterclaims seeks to introduce two new legal theories for inequitable conduct not set forth in its prior pleadings. To permit the introduction of these new legal theories and new factual evidence by means other than an amendment would clearly violate the purposes of Rule 9(b) as well as this Court's scheduling order.

Toro concedes, as it must, that an inequitable conduct defense must be pleaded with particularity. *See, e.g., Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 487-88 (D. Del. 2003). To satisfy the particularity requirement of Rule 9(b), a charge of inequitable conduct must at least provide notice of the precise misconduct alleged, or the relevant prior art. *Seville Indus. Machinery Corp.*, 742 F.2d 786 (3d Cir. 1984); *EMC Corp. v. Storage Tech. Corp.*, 921 F. Supp. 1261, 1263 (D. Del. 1996). As Toro concedes, it has never before set forth the allegations presented with this motion, either with or without particularity.

Toro cannot avoid these the plain requirements of Rule 9(b) and this Court's scheduling order by alleging as a "pattern of deceit" the same allegations it is precluded from asserting as a defense. Accordingly, TII respectfully requests that this Court deny Toro's motion, and likewise hold that Toro is precluded from introducing this evidence at trial as an alleged "pattern of deceit."

**B.      Toro's Motion is Untimely and Toro Unduly Delayed In Bringing It**

Although leave to amend is within this Court's discretion upon a showing of good cause, it is by no means automatic. Fed. R. Civ. P. 15(a). After the Court enters a scheduling order with deadlines for amendments to pleadings, the likelihood of obtaining permission to amend diminishes, as the moving party must then prove "good cause" to amend and modify the scheduling order. Fed. R. Civ. P. 16(b).

Toro did not file this motion until *four months* after this Court's deadline for amending pleadings. Less than two months now remain in the factual discovery period, and this case has been pending since July, 2005. Toro initially failed to timely answer the complaint, then it intentionally delayed in filing counterclaims as a tactical gambit to buttress its effort to transfer venue for this case to Minnesota. Once that gambit failed, Toro filed a counterclaim in November, 2005. Then Toro apparently sat on its next motion for leave to file a *second*

-6-

amended answer and counterclaims for several months — eventually filing it on June 1, 2006, the deadline for amendments to pleadings, and just five days before a scheduled settlement mediation. As with this motion, Toro's second amended answer and counterclaims contained allegations of laches and inequitable conduct that were based on facts available to Toro for at least several months, if not since the outset of the lawsuit. Toro did not present any compelling explanation for its delay in amending.

Toro now seeks to amend its answer and counterclaims a *third* time, filing its motion on September 27, 2006 — this time *well beyond* the June 1, 2006 cut-off date for amended pleadings. While timing alone is not conclusive, whether a delay has become "undue" requires inquiry into the moving party's motives for not amending earlier. *Cureton v. National Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Toro again fails to provide a compelling explanation for its delay in amending, especially because its allegations are based on facts that were within its possession well in advance of the agreed-upon deadline to amend pleadings.

Toro argues that while it had previously conducted informal discovery from public sources and nonparties, it did not take its first deposition until August 31, 2006, for which the transcript was received on September 11, 2006. (Toro Brf. at 3, 5). Toro alleges that during this deposition of David Price, Esq., the attorney that prosecuted the parent application of the three patents in the lawsuit, Toro uncovered two additional independent bases for patent unenforceability. (*Id.* at 3). Toro argues that it could not have filed this motion any sooner because Toro only discovered these additional bases during the deposition of Mr. Price, on August 31, 2006.

In truth, however, Toro's new allegations rely upon evidence that existed in the prosecution history documents for Mr. Bednar's patent applications, which Toro's counsel has

long had in its possession. In fact, Toro's counsel had in their possession the prosecution histories for these applications when they previously moved to amend on June 1, 2006. And as discussed below, Mr. Price's deposition testimony actually contradicted, and added nothing to Toro's contentions. Moreover, nothing precluded Toro from taking Mr. Price's deposition before the parties engaged in exploration of settlement, well before the cut-off date for amending pleadings. Toro Brf. at 2.

> 1.    **Toro knew about the Rodriguez reference long before the deadline for amending pleadings**

The first new allegation of inequitable conduct stems from the supposed failure of the inventor or his counsel to disclose the Rodriguez patent to the PTO during prosecution of the '530 Patent. Toro contends that Mr. Bednar's attorneys must have known about it because it was cited in another of Mr. Bednar's patent applications, but Mr. Price failed to cite it in the application that became the '530 patent.[3] However, all of these facts were readily ascertainable from the issued patents and prosecution history documents that Toro possessed prior to the June 1, 2006 deadline for amending pleadings. Toro's counsel had possession of the prosecution history documents before June 1, 2006, when Toro filed its last motion to amend its answer and counterclaims.

The only "new" information allegedly discovered during the Price deposition actually contradicts Toro's allegations. Mr. Price's testified that he "certainly would have cited" the Rodriguez patent had he been aware of it. Exhibit A ("Price Dep.") at 108. Toro then infers the exact opposite conclusion reasonably derived from this testimony, and alleges without any further basis that Mr. Price intentionally withheld the reference. Yet Mr. Price never said this during his deposition. Mr. Price admitted *nothing* that demonstrates an intent to deceive the

---

[3] As discussed *infra,* this allegation is also futile.

PTO. Thus, Toro's reliance upon the Price deposition as providing "newly-discovered" evidence excusing its delay is simply contrived and unsupported by fact.

### 2. Toro knew about the submission of the John Deere reference long before the deadline for amending pleadings

Toro's second new allegation of inequitable conduct is based upon an alleged improper *submission* of another alleged prior art reference to the PTO. Reversing course, Toro contends that it was inequitable conduct for Mr. Price to have submitted a John Deere reference to the PTO before the '530 Patent issued, because it was submitted without the requisite form and fee such that the Examiner would not actually consider it.[4] However, this fact was also readily discoverable from the prosecution history documents for the '530 patent, all of which Toro's counsel had in their possession prior to the June 1, 2006, deadline for amending pleadings. The transcript of Mr. Price's deposition that Toro relies upon makes clear that Toro had all this information at its disposal before the deposition.

Indeed, Mr. Price admitted *nothing* that demonstrates an intent to deceive on the part of the inventor or his attorneys. Therefore, again, if Toro believed its allegation was meritorious, there was no reason why it should not have been included in Toro's prior motion to amend.

Toro therefore provides no compelling explanation for its delay in amending. Rather, Toro attempts to liken its facts to those of two other cases before this Court. First, Toro presents *Symbol Technologies, Inc. v. Proxim Inc.*, 2003 WL 1905637 (D. Del. April 17, 2003) (attached as Exhibit B), in which this Court allowed a party to amend its complaint to add an inequitable conduct allegation after the conclusion of fact discovery. *Id.* at *1. However, in *Symbol*

---

[4] Likewise, as discussed *infra,* this allegation is also futile. The Examiner had already issued a Notice of Allowance and Issue Fee Due for the patent. By submitting the reference in this fashion, Mr. Price ensured that the John Deere reference would become a part of the public record, which is precisely how Toro found out about it.

*Technologies* the movant showed that it had conducted a reasonable and diligent investigation of the facts, but the defendant had hindered its investigation by burying key documents, and by delaying production of other key documents. *Id.* There are no such allegations here, and TII has done nothing to hinder Toro's ability to discover the documents necessary to plead its new inequitable conduct claims. As explained above, all of the evidence upon which Toro relies was in its possession on June 1, 2006.

Next, Toro tries to liken its facts to those in *Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp.2d 484 (D. Del. 2003), in which this Court allowed the defendant to amend its pleadings to add an inequitable conduct defense after depositions. *Id.* at 488-90. However, in *Enzo*, the newly alleged evidence was comprised of discrepancies between the prosecution history documents and the deposition testimony.[5] *Id.* As a result, the movant did not obtain the evidence upon which it based its inequitable conduct allegation until after the depositions were taken. *Id.* In contrast, Toro's newly alleged theories of inequitable conduct are not based upon any "discrepancies" between the prosecution documents Toro had in its possession and Mr. Price's deposition testimony. As explained above, Mr. Price's deposition testimony adds nothing to support Toro's contentions.

More on point is this Court's recent decision in *Inline Connection Corp. v. AOL Time Warner Inc.*, 2006 WL 2440822 (D. Del. Aug. 23, 2006) (attached as Exhibit C). In *Inline Connection*, this Court denied in part the defendants' motion to file their third amended answer, which introduced three new theories of inequitable conduct.[6] *Id.* at *9. Like Toro, the movants

---

[5] Moreover, the movant was further delayed by the fact that, after the deposition in question, the deposition transcripts were designated as confidential pursuant to a Protective Order. The confidentiality restriction was not removed for several weeks.

[6] The Court granted the defendant's motion with respect to those aspects of the amended pleading that did not advance a new legal theory, and that was not unduly delayed.

argued that their new allegations could not have been asserted earlier with their second amended answer because they did not have all the information necessary to plead their claims with particularity at that time. *Id.* at *5. Defendants alleged that they could not properly plead the allegation until they discovered later-obtained information, including depositions, documents, and prosecution files. *Id.* In denying the motion to file this aspect of the amended pleadings, this Court found that while the defendants may not have had all the evidence necessary to plead their inequitable conduct allegations with particularity at the time of the second amendment, the evidence that defendants contended was newly-obtained was "not necessary for defendants properly to plead their new inequitable conduct theories" *Id.* Accordingly, this "newly-obtained evidence" did not justify the movants' delay. *Id.*

Likewise, Toro's alleged new evidence — Mr. Price's deposition testimony — was not necessary for Toro to properly plead its new inequitable conduct theories. Indeed, Mr. Price's testimony contradicts Toro's allegations. As such, undue delay is apparent.

As this Court recognized in *Inline,* such unexplained delay is equivalent to bad faith, and provides sufficient basis for the Court to deny the motion without requiring TII to demonstrate prejudice. *Id.* at *8 (citing *Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.,* 93 F.R.D. 858, 865 (D. Del. 1982)).

Moreover, TII is unfairly prejudiced by Toro's continual injection of additional and inflammatory theories of inequitable conduct. Again, this Court in its recent *Inline* decision held that a "party is unduly prejudiced if amendment would cause surprise, result in additional discovery, or add costs in the preparation to defend against new facts or theories." *Id.* at * 9, n. 75 (quoting *Amquip Corp. v. Admiral Ins. Co.,* 231 F.R.D. 197, 1999 (E.D. Pa. 2005)). Less than two months remain in the fact discovery period. TII should not be distracted from legitimate

discovery by having to defend against accusations entirely lacking in merit, and which are designed solely to prejudice TII before the fact finder. Toro's new allegations of inequitable conduct will add additional cost and discovery to this case. Accordingly, the Court should deny Toro's motion.

**C.    Toro's New Theories of Inequitable Conduct are Demonstrably Baseless, and Should be Dismissed as Futile**

A Court should deny leave to amend where the proposed amendment would be futile. *Foman,* 371 U.S. at 181-82. This is such a case.

**1.    The '530 Patent establishes that the PTO considered the Rodriguez reference during prosecution**

First, contrary to Toro's contentions, the PTO considered the Rodriguez reference during prosecution of the '530 Patent, regardless whether Mr. Price cited it. The prosecution history for the '530 Patent indicates that the Examiner searched Class 56/255 when examining the patent. *See, e.g.,* Exhibit D ('530 Patent, cover page, col. 1, ("[58]  Field of Search")). The Rodriguez reference was issued in U.S. Class 56/255, in 1994. *See* Toro Exhibit 3, (cover page, col. 1, ("[52] U.S. Cl.")).

Under PTO regulations, the Examiner's search of this field indicates that he had considered all issued patents within this field and deemed them to be less material than the art already of record. The Manual of Patent Examining Procedure ("M.P.E.P.") states as follows:

> In each action involving a search, the Examiner shall endorse on the flap of the file wrapper the U.S. classes and sub-classes, international patent classifications and publications searched, the date when the search was made, or was brought up-to-date, and the Examiner's initials. All entries should be made in black ink. Great care should be taken so as to clearly indicate the places searched and the dates on which the search was conducted. In order to provide a complete, accurate and uniform record of what has been searched and ***considered*** by the Examiner for each application, the Patent and Trademark Office has established procedures for

recording search data in the application file. Such a record is of importance to anyone evaluating the strength and validity of a patent, particularly if the patent is involved in litigation.

M.P.E.P. § 717.05 (1995) (emphasis added).

As a result, it is settled law that all art in the field of search is deemed to have been considered and found to have been less relevant than the art made of record during the prosecution. *E.I. du Pont de Nemours & Co. v. Berkley and Co., Inc.*, 620 F.2d 1247, 1266-67 (8th Cir. 1980) (*cited with approval, Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1571 (Fed. Cir. 1986)) (noting that the prior art references in question were either considered or "were deemed by the district court to have been considered by the Examiner.").

Indeed, Toro's own contentions in this case confirm the lack of materiality of Rodriguez. Although Toro is highly motivated to invalidate the patents-in-suit and has asserted nearly ninety prior art references in its Court-mandated prior art statement, *Toro itself did not rely upon Rodriguez in support of its invalidity allegations in this case.*

Accordingly, Toro's defense that the Rodriguez reference was material, not cumulative, and intentionally withheld from the Examiner with an intent to deceive, is demonstrably meritless and legally futile.

### 2. Toro's contentions with respect to the Rodriguez reference are premised upon demonstrably false characterizations of the inventor's statements to the PTO

The allegations set forth in Toro's brief and proposed amended answer are further examples of Toro's mischaracterizations of the statements of Mr. Bednar and his attorneys. In furtherance of Toro's overzealous pursuit of inequitable conduct allegations, it would like this Court to adopt Toro's straw man argument that Mr. Bednar supposedly told the PTO that no one had ever before used any sort of rotary mower at any time to cut a golf course rough. In Toro's second amended answer and counterclaims, Toro relied upon a publication supposedly

-13-

contradicting this false premise as the basis for its first theory of inequitable conduct; however, Toro did not even contend that Mr. Bednar was actually aware of this alleged publication. (D.I. 87).

The baseless nature of Toro's inequitable conduct theories is plain from a simple review of Mr. Bednar's declaration to the PTO. During prosecution of the '530 Patent, Mr. Bednar filed a declaration with the PTO explaining the problems encountered by golf course superintendents in mowing large tracts of undulating rough. Prior to that time, rotaries were not suitable for such terrain because, *inter alia,* a large deck or multi-deck rotary would tend to scalp the high points of undulating terrain. On the other hand, a small, walk-behind rotary, for example, was not efficient for cutting acres of terrain. Mr. Bednar's new design for a gang-type rotary mower utilizing rear rollers addressed these problems. And it was in this context that Mr. Bednar said in his declaration that his invention was the first one suitable for addressing these problems encountered when using rotary mowers in undulating rough.

Thus, the inventor stated:

> With the vast number of mower designs and mower manufacturers in the industry, any obvious combination of features that might give a company a competitive edge has likely been tried. Rotary mowers have ***typically*** not been used to cut golf course roughs, which require close trimming and the ability to cut undulating terrain at a relatively short length, because nobody prior to me has recognized the desirability of using, or figured out how to use, gang-type rotary mowers to cut golf course roughs. Conventional wisdom in the art of gang-type mowers held that rotary mowers could not be used to cut golf course roughs.

And further in his declaration, the inventor stated:

> 6. For many years, the mower industry had unsuccessfully sought a solution to the problem of scalping grass while mowing over undulating terrain. Previous rotary mowers are ineffective in compensating for elevation changes in the turf being mowed, resulting in uneven cut heights. This is particularly problematic when the turf is cut at or below ground level, leaving barren spots.
> 7. My invention provides a solution to that problem by teaching an apparatus with excellent ground-following and anti-scalp characteristics.

Exhibit E (Bednar Decl.) at 2 (emphasis added).

Mr. Bednar did not claim, as Toro would have the Court believe, that no one had ever taken a rotary mower of any kind into a golf course rough.  Indeed, Mr. Bednar's identification of the problems encountered when using prior designs of rotaries in golf course roughs presupposes that such other designs had in fact been used, albeit without satisfactory results. There was nothing false about Mr. Bednar's statements, and all of Toro's inequitable conduct allegations are baseless and futile, as they are based on a mere caricature of Mr. Bednar's statements.

Toro's new allegations with respect to the Rodriguez reference fail for this same reason. Toro cites this reference for the unremarkable proposition that a "conventional lawn tractor, garden tractor, or commercial mowing tractor has a plurality of rotary cutting blades … and are used to mow a variety of types of grass [including] … golf course fairway and roughs …." Toro Exhibit 3, '589 Patent, col. 1, ll. 15-24.  The statement is innocuous, and does not in any way render Mr. Bednar's statements false.  Of course, anyone could take a mower of any kind into a golf course rough, but that would not render it a suitable solution to the problems facing the industry as described in Mr. Bednar's declaration.

The Rodriguez reference does not contradict Mr. Bednar's statements to the PTO.  Toro's allegation is therefore legally futile, and the Court should deny leave to amend.

3.      **As Toro's counsel has conceded, the inventor's attorney did not commit inequitable conduct by *submitting* prior art to the PTO during prosecution of the '530 Patent**

Toro's contention with respect to Mr. Price's submission of the John Deere reference is equally lacking in merit.  Toro intentionally avoids providing any context for this allegation, but after the PTO had issued a Notice of Allowance and Issue Fee Due with respect to the '530

Patent, Mr. Price submitted the document in question to the PTO. As Mr. Price testified, after

the Examiner issues a Notice of Allowance, an applicant may have the PTO consider an

additional reference only by asking that the patent be withdrawn from issuance because the

attorney believes the new reference is material and not cumulative to prior art of record. Exhibit

A (Price Dep.) at 209-10 ("[w]e didn't feel that [withdrawal from issue] was necessary. We felt

it was cumulative, but in order to meet our duty of disclosure, we submitted it."); *id.* at 211

("[w]e intentionally followed this procedure because we did not want to withdraw it from issue,

but we wanted to get it in the file in order to comply with our duty of disclosure. We did that.").

Thus, Mr. Price was required to make a determination whether the reference was

cumulative, and Mr. Price testified he believed that was the case for this reference. *Id.* at 209-10.

Therefore, he submitted the document to the PTO in order that it was part of the public record,

but not intending that the Examiner consider it. *Id.* at 207 ("It says that we didn't meet the

requirements for having it considered by the examiner, but that's not incorrectly. That's exactly

what we intended to do. We got it in the file. We met our duty of candor."); *id.* at 208 ("we

didn't expect to have it considered, and we said we believe it's cumulative to information already

of record but we're filing it to assure compliance with their duty of candor. It's in the file. The

public knows about it. We met our duty of candor."); *id.* at 209-10 ("[w]e didn't feel that

[withdrawal from issue] was necessary. We felt it was cumulative, but in order to meet our duty

of disclosure, we submitted it."); *id.* at 210 ("I believed it was cumulative, and there's absolutely

nothing wrong with what I did.").

Nothing about this scenario supports evidence of an intent to deceive the PTO. Indeed,

Toro's counsel claimed to be surprised as to why Mr. Price would even feel it necessary to deny

that he had done anything wrong, and Toro's counsel assured the witness that he was not

insinuating he had done anything wrong at all. *Id.* at 211 ("Q. [W]hy do you keep saying that, that you did absolutely nothing wrong?  A.  Because that's what you're insinuating.  *Q. I'm not.*") (emphasis added).  Yet several weeks later, Toro filed this motion contending that Mr. Price's actions constituted inequitable conduct, rendering the '530 Patent unenforceable.

Moreover, Mr. Price's determination that the reference was cumulative was borne out by prosecution of the related '311 and '312 patents-in-suit.  This same reference was disclosed to the Examiner in both of these subsequent related cases, and both of those patents issued over this alleged prior art.  *See* Exhibit F ('311 Patent, cover page, col. 2 (listing "Nunes Rotary Mower, John Deere 3364 Deck Attachment" as a cited publication)); Exhibit G ('312 Patent, page 2, col. 1 (same)).

Indeed, Toro's accusation is illogical on its face.  The notion that the prosecuting attorney would make of public record a reference he wished to conceal makes no sense.  By submitting the reference to the PTO, Mr. Price ensured that any member of the interested public would know that the reference had been submitted but was not considered by the Examiner.  Exhibit A at 211 ("[w]e intentionally followed this procedure because we did not want to withdraw it from issue, but we wanted to get it in the file in order to comply with our duty of disclosure.  We did that.").  Indeed, that is exactly how Toro found it, by reviewing the prosecution history of the '530 Patent.

Accordingly, Toro's proposed amendments are baseless and futile, and should not be permitted.

## IV.  CONCLUSION

For the foregoing reasons, TII respectfully requests that the Court deny Toro's third

motion to amend its answer and counterclaims.

Dated:  October 12, 2006                                    THE BAYARD FIRM

By: _____
Edmond D. Johnson (#2257)
Peter B. Ladig (#3513)
222 Delaware Avenue,
Suite 900
P.O. Box 25130
Wilmington, DE 19801
Telephone:  (302) 655-5000

Attorneys for Plaintiff
Textron Innovations Inc.

OF COUNSEL:

Scott L. Robertson
Christopher C. Campbell
**HUNTON & WILLIAMS LLP**
1900 K Street, N.W.
Washington, D.C. 20006-1109
Telephone:  (202) 955-1500
Facsimile:   (202) 778-2201