IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TEXTRON INNOVATIONS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-486 (GMS) |
| | ) | |
| THE TORO COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER CONSTRUING THE TERMS OF U.S. PATENT NOS. 6,047,530; 6,336,311; and 6,336,312**

On September 19, 2006, the court held a *Markman* hearing in this patent infringement action concerning U.S. Patent Nos. 6,047,530 (the "'530 patent"); 6,336,311 (the "'311 patent"); and 6,336,312 (the "'312 patent") (collectively, the "patents-in-suit"). During the hearing, Toro argued that several terms of the patents-in-suit should be construed narrowly. The court will first address Toro's argument, and then set forth its construction of the disputed claim terms.

**A.     Toro's Contention that the Specification Limits Certain Claim Terms**

Toro contends that the specifications of the patents-in-suit limit the meaning of certain claim terms.[1] Particularly, Toro contends that the specifications of the patents-in-suit clearly limit many of the claim terms at issue to the construction described in the Summary of Invention as "the invention." (See, e.g., D.I. 77, at 24.) Although a close case, after having read the parties' submissions, the patents-in-suit, the prosecution history of the patents, and the relevant case law, the court finds that the claim terms at issue are not limited by the specifications of the patents-in-suit for

---

[1] The court, for convenience, will cite only to the '530 patent specification, as the '311 and '312 patent specifications are identical to the '530 patent specification.

several reasons, which are explained below.

Claim construction begins with the claims themselves, the written description, and, if in evidence, the prosecution history. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). "The words of a claim are given their ordinary and customary meaning," that is, "the meaning that the term would have to person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1579, 1582 (Fed. Cir. 1996); *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). Although it is improper to import a limitation from the specification into the claims, *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998), claims are construed in light of the specification, of which they are a part. *Phillips*, 415 F.3d at 1315 (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996)). Thus, the boundaries of a patented invention are set forth in the claims, construed in light of the description in the specification, as well as by the prior art and the prosecution history. *Phillips*, 415 F.3d at 1303. With these principles in mind, the court sets forth its findings with respect to Toro's argument.

The Summary of the Invention section of the patents-in-suit contains both broad and narrow disclosure regarding the invention. The "invention" is described generally as a "gang-type rotary lawn mower suitable for cutting a golf course rough." ('530 patent, col. 1, ll. 22-23.) The invention is then described more specifically in terms of a "construction [that] enables the lawn mower to cut the undulating terrain of a golf course rough and to be controlled for close trimming." (Id. col. 2, ll. 4-6.) For example, in describing cutting deck assemblies more specifically, the specification states: "Each of the front and rear deck assemblies includes a pair of laterally-spaced, generally

vertically-extending side plates, front wheels supporting the side plates for movement over the ground, and a rear roller extending between the side plates and supporting the side plates for movement over the ground." (Id. col. 1, ll. 44-50.) The specification also contains further details regarding the mounting of the cutting deck assembly to the frame, the lifting arm, and the side plates. (Id. col. 1, l. 27- col. 2, l. 3.)

At first blush, the court was tempted by Toro's argument that the disclosure in the specification necessitated a narrow construction of the independent claims of the patents-in-suit. However, upon further examination, the court finds that construing the claims as Toro urges would render many of the dependent claims of the patents-in-suit redundant. In other words, the court is not willing to adopt Toro's apparent position that the entire invention is encompassed in the independent claims of the patents-in-suit. For example, if the court was to construe the term "rotary cutting deck assemblies/assembly" as "a cutting unit having laterally-spaced, generally vertically extending side plates, a cross member, front wheels supporting the side plates, a rear roller extending between and supporting the side plates, and a single spindle rotary deck mounted between the side plates," then its construction would render claim 4 of the '530 patent superfluous. That is, claim 4, which is dependent on claim 1, already recites "laterally-spaced, generally vertically-extending side plates . . . a first front wheel supporting one of the side plates for movement over the ground, and a second front wheel supporting the other of the side plates for movement over the ground . . . [a] rear roller [that] extends between the side plates and supports the side plates for movement over the ground . . . and [a] deck located between the side plates." ('530 patent, claim 4.)[2]  Therefore,

---

[2] Claim 1 recites the single-spindle cutting deck limitation of Toro's proposed construction.

substituting Toro's construction for the disputed "rotary cutting deck assemblies/assembly" term would result in a repetition of the limitations that are already contained in claim 4.[3] This result is contrary to Federal Circuit law, which advises that the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim. *Phillips*, 415 F.3d at 1314-15 (explaining that "the usage of a term in one claim can often illuminate the meaning of the same term in other claims, because claim terms are normally used consistently throughout the patent," and that "differences among claims can also be a useful guide in understanding the meaning of particular claim terms"); *see Comark Communications*, 156 F.3d at 1187 (recognizing that the doctrine of claim differentiation, while not a hard and fast rule of claim construction, does create a presumption that each claim in a patent has a different scope). Given the foregoing, the court is not convinced that the statements Toro points to from the

---

[3] The same analysis holds true with respect to each of the claim terms that Toro seeks to limit with the specification disclosure. The "side plates" limitation is part of the previously discussed "rotary cutting deck assembly." Claim 4 of the '530 patent recites the "side plates" as "laterally-spaced generally vertically extending," with the front wheels and roller supporting them for movement over the ground. ('530 patent, claim 4.) Claim 7 describes the specific mounting arrangement disclosed in the specification of the '530 patent, including the "tri-pivot" access that Toro suggests is critical to the definition of "mounted on the frame" in the claims. That is, claim 7 states that the deck assembly is connected to the frame in part by a cross member connected to the frame for pivotal movement about a generally vertical axis and about a generally horizontal axis extending in the forward-rearward direction . . . ." (Id. claim 7; id. claim 8; id. claim 10; id. claim 12; and id. claim 17.) Likewise, claim 8 of the '530 patent contains a detailed description of the "arm" that connects the deck assembly to the frame. This claim uses language that is strikingly similar to that which Toro maintains the court should adopt: "a . . . generally L-shaped, horizontally-extending arm having a laterally-extending inner leg with an inner end connected to the frame for pivotal movement about a generally horizontal axis extending in the forward-rearward direction, and the arm having an outer leg extending in the forward-rearward direction. . . ." (Id. claim 8.)

specification suffice to demonstrate that the terms "rotary cutting deck assemblies/assembly," "mounted on the frame," "lifting arm," and "side plates" should be limited in scope.[4]

A consideration of the prosecution history also supports the court's conclusion. That is, in order to overcome the obviousness rejections by the patent examiner, the patentee stated that his invention taught "a rotary deck with a roller extending across substantially the entire width of the deck," which the prior art had previously rejected. (D.I. 76, at JA-0119 ("Given the teaching of the prior art away from a rotary deck with a roller extending across substantially the entire width of the deck, the combination of Smith and Nunes would not have led one skilled in the art to Applicant's claimed construction."); see id. at JA-0150 ("My invention provides a unique solution to a long-term mower problem. . . . In fact, conventional wisdom, as described herein, steered manufacturers away

---

[4] Toro cites to *Wireless Agents LLC v. Sony Ericsson Mobile Communications AB*, 06-1054, 2006 U.S. App. LEXIS 18933 (Fed. Cir. July 26, 2006), *Honeywell Int'l, Inc. v. ITT Indus. Inc.*, 453 F.3d 1312 (Fed. Cir. 2006), and *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337 (Fed. Cir. 2001) to support its position. After reviewing these cases, the court concludes that they are distinguishable from the present case because, in each of those cases, the Federal Circuit determined that the specifications of the patents-in-suit explicitly referenced disadvantages of the prior art, or contained repeated derogatory statements concerning a particular feature. *See Wireless Agents*, 2006 U.S. App. LEXIS 18933, at *8 ("[T]he specification's repeated derogatory statements about the twelve-digit keypad convince us that the 'alphanumeric keyboard' does not include a twelve-digit keypad."); *Honeywell*, 453 F.3d at 1320 ("[R]epeated derogatory statements concerning one type of material [carbon fiber] are the equivalent of disavowal of that subject matter from the scope of the patent's claims."); *SciMed*, 242 F.3d at 1341 ("[W]here the specification makes clear that the invention does not include a particular feature [catheters with a shortened guide wire lumen, which the patentee distinguished as disadvantageous], that feature is deemed to be outside the reach of the claims of the patent.") Here, the specification of the '530 patent does not lead the court to a narrow construction of the disputed claim terms. At most, the '530 patent describes reel mowers and tow-behind gangs, both reel and rotary, as disadvantageous in cutting golf course roughs. The specification further states that these features are disadvantageous because reel mowers require more maintenance, and because close trimming is difficult with tow-behind gangs. ('530 patent, col. 1, ll. 15-20; col. 1, ll. 23-27; col. 2, ll. 6-8.) Thus, the only features that the patentee disavowed were reel mowers and tow-behind gangs – features that Textron does not ask the court to include within the scope of its invention.

from my invention as a solution to existing problems with mowers.")) Indeed, the Declaration Under Rule 132 submitted by Richard D. Bednar, the inventor of the patents in suit, states the following:

> Rotary mowers have typically not been used to cut golf course roughs, which require close trimming and the ability to cut undulating terrain at a relatively short length, because nobody prior to me has recognized the desirability of using, or figured out how to use, gang-type rotary mowers. Conventional wisdom in the art of gang-type mowers held that rotary mowers could not be used to cut golf course roughs. My invention of individual cutting units with the addition of rear rollers, however, made the use of individual cutting units with the addition of rear rollers possible to cut golf course roughs. To the best of my knowledge, gang-type rotary mowers have never had such rear rollers.

(D.I. 76, at JA-0151.) Thus, the inventor characterized his invention as a gang-type rotary lawn mower with a rear roller. In other words, completely absent from the prosecution history, is any reference to the specific mounting arrangement or tri-pivotal movement provided by the lifting arm, which Toro relies on so heavily in making its arguments. Further evidence of the lack of importance of the mounting arrangement and tri-pivotal movement to the independent claims is the patentee's response to the final rejection from the patent office, which states:

> Claim 1 specifies a gang-type rotary lawn comprising, among other things, at least two side-by-side front rotary cutting deck assemblies mounted on the frame in front of the front wheels, and at least one rear rotary cutting deck assembly mounted on the frame behind the front deck assemblies and between the front and rear wheels, each rear deck assembly being aligned with a respective gap between adjacent front deck assemblies, each of the front and rear deck assemblies including a single-spindle cutting deck and a rear roller supporting the deck for movement over the ground, the deck having a width such that the roller extends across substantially the entire width of the deck. This construction is not suggested by any of the cited references taken alone, and is not suggested by either Smith or Nunes, the references which were originally relied upon by the Examiner and which teach gang-type mowers.

*Id.* at JA-0159. Notably absent from this description of the "construction" of the invention is reference to the specific mounting arrangement or tri-pivotal movement that Toro maintains the court should read into the independent claims of the patents-in-suit. The correspondence between the

patentee and the examiner, therefore, confirms the court's conclusion that the description of the invention as a whole in the Summary of Invention section of the patents-in-suit should not be read into the claim terms at issue.[5] As such, the court construes the disputed claim terms below.

**B.    Meaning of the Disputed Claim Terms**

After having considered the submissions of the parties and hearing oral argument on the matter, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that, as used in the asserted claims of the '530 patent, '311 patent, and '312 patent,

---

[5] The present case is distinguishable from a number of cases cited by Toro to support its position, including: (1) *Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 450 F.3d 1350 (Fed. Cir. 2006); (2) *On Demand Mach. Corp. v. Ingham Indus., Inc.*, 442 F.3d 1331 (Fed. Cir. 2006); (3) *C.R. Bard v. United States Surgical Corp.*, 388 F.3d 858 (Fed. Cir. 2004); and (4) *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340 (Fed. Cir. 2004). In the above-cited cases, the Federal Circuit analyzed the prosecution histories of the patents-in-suit and concluded that they confirmed and supported a narrow interpretation of the claims. *See Inpro*, 450 F.3d at 1356 (finding that the prosecution history supports the district court's interpretation of the claim term "host interface," because the patentee disparaged serial communication and "narrow[ed] the scope of the claim, so that it does not read on series connections, as in [the prior art]"); *On Demand*, 442 F.3d at 1338-39 (concluding that the prosecution history supports narrowing the claim term "sales information" to include promotional material, because the patentee represented to the patent examiner that "the inclusion of promotional material is what distinguishes [its] invention from the prior art"); *C.R. Bard*, 388 F.3d at 868-69 (the prosecution history confirms a narrow reading of the claim terms "implant" and "plug," because the patentee overcame a rejection by arguing that the surface of its inventive plug was pleated and distinguishing the prior art on the basis that it did not disclose a pleated plug); *Microsoft*, 357 F.3d at 1349 (the prosecution history "confirms that [the patentee] viewed its inventions as being limited to communications over a telephone line," because the patentee's statement to the patent examiner "unambiguously reflects [its] own understanding of its inventions in the [patents-in-suit] as being limited to the transmission of data packets over a telephone line"). In the present case, the court has already determined that the prosecution history does not confirm or support a narrow reading of the claims. Accordingly, Toro's cited cases do not inform the court's analysis.

1. The term "gang-type rotary lawn mower" is a limitation[6] to the independent claims of the patents-in-suit, and is construed as "a lawn mower having more than one cutting deck assembly of the rotary type."

2. The term "front and rear wheels" is construed as "at least two front wheels and at least two rear wheels."

3. The term "rotary cutting deck assemblies/assembly" is construed as "a cutting unit that has a rotary blade, as distinguished from a reel blade."

4. The term "mounted on the frame" is construed as "connected to the frame."

5. The term "deck defining a downwardly opening space" is construed to have its plain and ordinary meaning.

6. The term "roller extends across substantially the entire width of the deck" is construed as "the roller extends largely but not wholly across the entire width of the deck, and does not extend beyond the width of the deck."

7. The term "lifting arm" is construed to have its plain and ordinary meaning.

8. The term "side plates" is construed to have its plain and ordinary meaning.

9. The term "rear roller extends between the side plates and supports the side plates for movement over the ground" needs no construction.

10. The term "each rear deck assembly being aligned with a respective gap between adjacent front deck assemblies" is construed as "every rear deck assembly is located behind a gap defined by two adjacent front deck assemblies."

---

[6] *See Catalina Mktg. Int'l v. Coolsavings.com*, 289 F.3d 801, 808 ("[D]ependence on a particular disputed preamble phrase for antecedent basis may limit claim scope because it indicates a reliance on both the preamble and claim body to define the claimed invention.")

11.    The term "roller" is construed to have its plain and ordinary meaning.


Dated: October 20, 2006                              /s/ Gregory M. Sleet
                                                                                    UNITED STATES DISTRICT JUDGE