

**Potter Anderson & Corroon LLP**

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984-6000

www.potteranderson.com

Richard L. Horwitz
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027 Direct Phone
302 658-1192 Fax

December 14, 2006

**VIA ELECTRONIC FILING**

**PUBLIC VERSION
DATED: December 20, 2006**

The Honorable Gregory M. Sleet
United States District Judge
J. Caleb Boggs Federal Building
844 N. King Street, Lockbox 18
Wilmington, DE 19801

Re: *Textron Innovations Inc. v. The Toro Company*, C. A. No. 05-486-GMS

Dear Judge Sleet:

This letter responds to Textron's December 7, 2006 letter requesting permission to file summary judgment motions of infringement and inequitable conduct. The undisputed facts show that summary judgment of infringement in Textron's favor is unwarranted. In fact, summary judgment of non-infringement in Toro's favor is warranted.

Textron's entire infringement argument fails once it is recognized that Textron erroneously equates the claimed "cutting deck" with the entire "cutting deck assembly." Quotes taken from Textron's letter, when compared to its patents, reveal the errors. Because it is undisputed that no Toro roller extends substantially the entire width of the cutting deck, Textron chooses to compare the width of the Toro roller to the entire cutting deck assembly. That is not what Textron claimed. Textron also attempts to water-down the false statement made in the Background of the Invention that is one of the bases of Toro's inequitable conduct claim.

| Quotes from Textron's 12/7/06 Letter | Quotes from the record in this case |
|---|---|
| "As stated in the Background of the Invention, rotary mowers were not *typically* used to cut golf course roughs, . . . ." (Page 2, emphasis added.) | "Thus, rotary mowers *have not been used* to cut golf course roughs, . . . ." ('530, col. 1, ll. 16-17 (Background of the Invention) (emphasis added.) |
| "Figure 1 includes three forward *cutting decks* 34 . . . ." (Page 3, emphasis added.) | "[Figure 1] comprises front and rear rows 26 and 30, respectively, of *cutting deck assemblies 34*." (*Id.*, col. 2, ll. 64-65) (emphasis added.) |
| "*cutting decks 34 . . . .*" (*Id.*) | "Each of the *cutting deck assemblies 34* includes . . . a single spindle mulching *deck 38* . . . . The *deck 38* . . . ." (*Id.*, col. 3, ll. 6-8) (emphasis added.) |
| "A rear roller 58 . . . extends across substantially the entire width of each *cutting deck* [implying across the width of 34]" (*Id.*) | "The roller 58 is behind the *deck 38* and extends across substantially the entire width of the *deck 38.*" (*Id.*, ll. 19-21) (emphasis added.) |

1. **Infringement.**

Textron tactically chose the Groundsmaster® 4500-D as the subject of its infringement analysis.  All three of the other accused Toro products are missing claimed structure in addition to the missing claimed roller.  For example, the 3500-D and 3505-D have only three wheels – not the claimed "front and rear wheels" that this Court construed as requiring "at least two front wheels and at least two rear wheels."[1]  And not every rear cutting deck assembly of the 4700-D is aligned with a respective gap between adjacent front deck assemblies, i.e., two of the four rear cutting deck assemblies are not aligned with any gap at all.[2]  However, all of the accused Toro products do have one thing in common: none of them include the claimed roller that "extends across substantially the entire width of the deck."

> A. **Toro's Mowers Do Not Include The Claimed Structure "Roller Extends Across Substantially The Entire Width Of The Deck."**

Textron's infringement analysis confuses the claimed "deck," (across which the roller extends substantially), with the entire "cutting deck assembly."  The two are not the same.  The claims make that clear.  Textron's attorney made that clear at the *Markman* hearing:

> But with respect to Claim 1, we could go to the last element of Claim 1, if you could blow up that, *what Claim 1 does is indeed specifically and expressly recite what the assembly includes. It says, each of the front and rear deck assemblies including, and here is where it tells you the structure, a single-spindle cutting deck defining a downwardly opening space*.  That is the first part of the assembly.  No. 2.  A single spindle mounted for rotation about a generally vertical axis within the space.  It's the second part of the assembly.  No. 3.  At least one cutting blade mounted on the spindle for rotation therewith.  No. 4.  A rear roller supporting the deck for movement over the ground.  Then it provides essentially some spatial relationship for that rear roller, the deck having a width such that the roller extends substantially across the entire width of the deck.  *That is the structure of the assembly, Your Honor*."  (Markman Transcript at 25-26, Exh. 1) (emphasis added.)

However, after the Court construed "roller extends across substantially the entire width of the deck" in a manner that precluded Textron's original infringement position, Textron has done an about face.  It now identifies element 34 in the patents as the cutting deck.  (Textron Ltr. at p. 3.)  That is not true.  Element 34 is the entire cutting deck assembly.  The patents make clear that the cutting deck assembly 34 includes several parts, two of which are the roller 58 and the cutting deck 38 – across which the roller substantially extends.  ('530 pat., col. 3, ll. 6-21.)  Textron takes this new infringement position because no Toro roller extends across substantially the entire width of the cutting deck.  So Textron wants this Court to find infringement based on Toro's roller width relative to the entire cutting deck assembly.  That is not what Textron claimed.

---

[1] Order Construing The Terms Of U.S. Patent Nos. 6,047,530; 6,336,311; and 6,336,312 ("Markman Order") at 8.
[2] *Id.* ("The term 'each rear deck assembly being aligned with a respective gap between adjacent front deck assemblies" is construed as "every rear deck assembly is located behind a gap defined by two adjacent front deck assemblies.'")

The '530 patent and the '311 patent, the only patents with claims having this limitation, always refer to element 34 as the entire "cutting deck assembly," not just the deck.

- "the cutting deck assemblies 34" (*Id.*, col. 2, l. 64 – col. 3, l. 21.)
- Figures 2-6 are drawings of the entire "cutting deck assembly." (*Id.*, col. 2, ll. 17-24.)



The patents, including the claims, are equally clear that the roller extends substantially across the deck, not the entire cutting deck assembly – of which the roller is a part.

- "The roller 58 is behind the deck 38 and extends across substantially the entire width of the *deck 38*. (*Id.*, col. 3, ll. 19-20) (emphasis added.)
- Claim 1: "each of the front and rear *deck assemblies* including a single-spindle *cutting deck . . . the deck* having a width such that the roller extends across substantially the *entire width of the deck*." (*Id.*, col. 4, ll. 59-67) (emphasis added.)

The only structure that defines a downwardly opening space is the cutting deck. ('530 pat., col. 3, ll. 6-9.) And it is the claimed deck across which the roller substantially extends, not the entire cutting deck assembly as Textron now argues. This error, once corrected, demonstrates that Toro's products cannot, as a matter of law, infringe because Toro's rollers do not extend across substantially the entire width of the "deck," as the claims require.

There is no dispute that Toro's rear rollers are all 29.846 inches wide. (Textron Ltr. at 5.) There is also no dispute that Toro's cutting deck is only 28.04 inches wide. (Exh. 2.) Textron's letter incorrectly identifies the width of the cutting deck as 30.174 inches wide, but again Textron has confused the width of the *cutting deck assembly* with the cutting deck, which is only 28.04 inches wide. Once this error is corrected, the record on which Textron relies is consistent with Toro's position of non-infringement.

Textron cites the Court's interpretation of "deck defining a downwardly opening space" to support its position that the cutting deck assembly is the same as the cutting deck. However, the language is self-defining and supports Toro's position. The only structure in the patent that opens downward is the deck (38) – not the entire assembly that may includes other non-deck structure, such as the roller. Even Textron's claim construction brief regarding this phrase correctly noted the difference: "Each of the cutting deck assemblies 34 includes (see FIGS. 2-5) a single spindle mulching deck 38 defining a downwardly opening space 42 (FIG. 4). (Citation Omitted) A single spindle 84 (FIG. 4) is mounted for rotation about a generally vertical axis within the space 42 defined by the deck 38." (Textron's Corrected Opening Markman Brief, Exh. 3.)

Even Textron's expert realizes that the roller extends across the width of the deck, not the deck assembly: "The patent specifications disclose a roller (58) that extends across substantially the entire width of a cutting deck (38)." (Exh. 4, Parish Decl. at ¶ 53, attached to Textron's Corrected Opening Markman Brief.) And the Court may recall Textron's attorney superimposing circles over the cutting deck (38), not cutting deck assembly (34), to demonstrate that which the roller extended substantially across. (Exh. 1 at 35-36.)

Toro's product literature, likewise, also contradicts Textron's position. The 27" Rotary Cutting Deck refers to the deck (sometimes called the chamber), the portion of the assembly that opens downward, not the entire assembly. The deck is described as 27 inch, rather than 28 inch, because it produces a 27 inch swath of cut grass. (Textron's Exh. 12 at 4) ("27" long blade).

Textron's citation to Toro's patent is improper. It is the words of Textron's patents, not Toro's patent, that are at issue here. Textron's patents describe and claim that the rear roller extends largely but not wholly across the entire width of what Textron described in its patents as the cutting deck of its invention, the structure defining a downward opening. Toro's patent (left) and actual product (right) show the rear roller extends *beyond* the only Toro structure that defines a downward opening, i.e., the deck:




(Exhs. 5 and 6.)

Toro's engineers did not agree that the cutting deck of the invention is the same as a cutting deck assembly. Mr. Moe's testimony drew a sharp distinction between the structure that opens downwardly (the deck/chamber) and the cutting unit: "Specifically the deck chamber or the cutting unit chamber is part of the cutting unit." (Moe dep. at 59.) As a matter of law, Textron cannot obtain summary judgment of infringement, or even avoid summary judgment of non-infringement, by pointing to a few documents and one Toro witness that use the term "deck" differently than it is used in Textron's patents. *Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 877 (Fed. Cir. 1998) (finding that the use of the term "block copolymer" in defendants' documents did not support summary judgment of infringement and did not preclude summary judgment of non-infringement even though the term "block copolymer" appeared in the plaintiff's claims.)

As illustrated above, each of Toro's 29.846 inch rear rollers extend beyond the width of the Toro deck and the small front rollers each only extend about 5 inches across the 28 inch wide deck. Thus, summary judgment of non-infringement is appropriate.

2. **Inequitable Conduct.**

Whether Mr. Bednar, his attorney or others involved with the patents-at-issue committed inequitable conduct turns on <u>factual</u> issues such as intent, credibility, and materiality. *See Kangaroos U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1573-77 (Fed. Cir. 1985). These determinations are rarely appropriate for summary judgment. *Id.* at 1577 ("summary procedures should be used sparingly . . . where motive and intent play leading roles . . . .").

Textron's argument too narrowly defines Toro's inequitable conduct claim to the "Buchanan article." Toro's claim is not so limited; it alleges that Mr. Bednar and his attorney made material misrepresentations to the Patent Office concerning the use of rotary mowers on golf course roughs. Mr. Bednar and his attorney unequivocally represented in the patent specification that "rotary mowers have not been used to cut golf course roughs, which require close trimming and the ability to cut undulating terrain at a relatively short length." ('530 pat., col. 1, ll. 16-20.) Mr. Bednar's attorney argued that the "[a]pplicant has invented *the first rotary mower that is suitable for cutting a golf course rough.*" (JA-0141 (emphasis added), Exh. 7.) Mr. Bednar represented that "[c]onventional wisdom in the art of gang-type mowers held that *rotary mowers could not be used* to cut golf course roughs." (JA-0151.) (emphasis added).

Mr. Bednar and his attorney made these representations with full knowledge of the duty of candor and good faith owed to the Patent Office. (JA-0072; Price Dep. 83:7-84:11, Exh. 8.) As set forth below, Toro has evidence demonstrating that Mr. Bednar's and his attorney's statements were false. Factual issues exist as to Mr. Bednar's and his lawyer's intent to mislead the patent office, their credibility, and the materiality of the misrepresentations.



In addition to the basis for inequitable conduct created by Mr. Bednar's intent concerning these false representations, none of these prior art references were disclosed to the Patent Office during the '530 patent application process. This behavior is the subject of Toro's third motion to amend the answer. Furthermore, factual issues exist as to whether Mr. Bednar knew of the 1991 Buchanan article, an article written by a former Textron employee that makes clear the falsity of Mr. Bednar's statements. ███████████████████████████████████████████ Thus, even on this partially developed record, factual issues of intent, credibility, and materiality go well beyond precluding summary judgment.

Respectfully submitted,

*/s/ Richard L. Horwitz*

Richard L. Horwitz

767642 / 29362

Enclosures

cc: Clerk of the Court (via hand delivery)(w/enc.)
Counsel of Record (local by hand delivery; out of state by email and federal express)