# THE BAYARD FIRM
A T T O R N E Y S

222 DELAWARE AVENUE, SUITE 900
PO Box 25130
WILMINGTON, DE 19899
Zip Code For Deliveries 19801

MEMBER MERITAS LAW FIRMS WORLDWIDE
www.bayardfirm.com
302-655-5000
(FAX) 302-658-6395

WRITER'S DIRECT ACCESS

302-429-4219
pladig@bayardfirm.com

December 7, 2006

The Honorable Gregory M. Sleet
United States District Court
844 N. King Street
Wilmington, DE 19801

**PUBLIC VERSION**
**DATED: December 27, 2006**

Re: *Textron Innovations Inc. v. The Toro Company*
    *Civil Action No. 05-486 [FILED UNDER SEAL]*

Dear Judge Sleet:

Plaintiff Textron Innovations Inc. ("Textron") respectfully requests permission to file a motion for summary judgment finding that The Toro Company's ("Toro") accused gang-type rotary lawn mowers infringe six representative independent claims of U.S. Patent Nos. 6,047,530 (Exh. 1), 6,336,311 and 6,336,312, (the "'530 patent," the '311 patent," and the '312 patent," respectively; collectively, the "Textron Patents").[1]

For purposes of the issues before the Court, Toro's accused mowers are all similar with the primary difference being the number and placement of cutting decks. Toro's accused Groundsmaster 3500-D and 3505-D mowers have three decks, Toro's Groundsmaster 4500-D has five decks and Toro's Groundsmaster 4700-D has seven decks. See Groundsmaster Product Brochures, Exhs. 2-3. To demonstrate why summary judgment is appropriate, Textron herein addresses the infringement of claim 1 of the '530 patent by Toro's Groundsmaster 4500-D.

In addition, Textron respectfully requests permission to file a motion for summary judgment dismissing Toro's inequitable conduct defense. Simply stated, there is no evidence that the inventor was even aware of the so-called "Buchanan article," which forms the sole basis for Toro's defense.[2] In the absence such evidence, there are no genuine issues of material fact and Toro's inequitable conduct defense and counterclaim must be rejected as a matter of law.

---

[1] While Textron believes that Toro's accused mowers infringe no less than 30 claims of the Textron Patents, if the Court grants Textron permission to seek summary judgment of infringement, Textron wishes to address Toro's infringement of only representative independent claim 1 of the '530 patent, independent claims 2 and 10 of the '311 patent and independent claims 1, 19 and 24 of the '312 patent.

[2] Toro filed an untimely motion for leave to amend its answer to allege two additional theories of inequitable conduct. D.I. 94. To date, the Court has not ruled on whether to permit Toro's Third Amended Answer

645511-1

THE BAYARD FIRM
The Honorable Gregory M. Sleet
December 7, 2006
Page 2

## Background

The Textron Patents are directed to gang type rotary lawn mowers. As stated in the Background of the Invention, rotary mowers were not typically used to cut golf course roughs, which require close trimming and the ability to cut undulating terrain at a relatively short length. '530 patent, Exh. 1 at 1:16-20.[3] Instead, reel mowers were generally used to cut hilly terrain in golf course roughs. However, reel mowers require substantially more maintenance than rotary mowers. *Id.*, 1:25-27. Recognizing the unsuitability of the prior rotary mowers to adequately cut undulating terrain in golf course roughs, the inventors designed a new mower with individual rotary decks that, when coupled with rear rollers, float over the ground to prevent scalping and stripe the grass.[4]

The invention, embodied commercially in the Ransomes AR250, was an immediate success in the marketplace. ▮

No genuine issue of material fact exists regarding the construction of the Toro mowers. Nor are there any genuine issues of material fact regarding the application of the claims as

---

and Counterclaims. In the event leave is granted, Textron provisionally seeks permission to address Toro's additional theories of inequitable conduct.

[3] Unless otherwise noted, references will be made to the '530 patent specification, *e.g.*, "1:16-20", in "column:line number" format.

[4] *See* '530 patent, Exh. 1 at 2:4-8: "This construction enables the lawn mower to cut the undulating terrain of a golf course rough and to be controlled for close trimming. Also, as mentioned above, the lawn mower requires much less maintenance than the reel mowers historically used to cut a golf course rough."

# THE BAYARD FIRM

The Honorable Gregory M. Sleet
December 7, 2006
Page 3

interpreted by the Court to the structure of the Toro mowers. Therefore, summary judgment of infringement is appropriate, particularly where, as here, the accused devices are purely mechanical and their structure is easily discerned. Likewise, because Toro has not adduced any facts to support a critical element of its inequitable conduct defense, summary judgment is also appropriate.

## The Textron Patents-in-Suit

Examples of the mower and cutting deck disclosed in the Textron Patents are depicted in Figure 1 (top view of mower and cutting decks) and Figure 2 (close-up view of cutting deck) of the '530 Patent, reproduced below.



The exemplary mower depicted in Figure 1 includes three forward cutting decks 34 positioned in a front row 26 and two rear cutting decks 34 positioned in a rear row 30. The cutting decks in the front row 26 (three are shown in Figure 1) have gaps between them. And the cutting decks in the rear row 30 (two are shown in Figure 1) have gaps between them. The cutting decks in the rear row 30 are positioned between the wheels 14, 16, and are aligned with the gaps between the decks in the front row 26. A rear roller 58 (*see* Figure 2) extends across substantially the entire width of each cutting deck.

## Representative Claim 1 of the '530 Patent

Claim 1 of the '530 patent is representative of the six claims for which Textron seeks permission to move for summary judgment of infringement. It recites,

> A gang-type rotary lawn mower comprising
>
> [a] a frame supported by front and rear wheels for movement over the ground,
> [b] a power source which is mounted on the frame and which drives at least two of the wheels,
> [c] an operator's seat mounted on the frame,
> [d] a steering system enabling the operator to steer the lawn mower,
> [e] at least two side-by-side front rotary cutting deck assemblies mounted on the frame in front of the front wheels, the front deck assemblies defining a gap between adjacent front deck assemblies, and
> [f] at least one rear rotary cutting deck assembly mounted on the frame behind the front deck assemblies and between the front and rear wheels, each rear deck assembly being aligned with a

THE BAYARD FIRM
The Honorable Gregory M. Sleet
December 7, 2006
Page 4

    respective gap between adjacent front deck assemblies,
[g] each of the front and rear deck assemblies including a single-spindle cutting deck defining a downwardly opening space, a single spindle mounted for rotation about a generally vertical axis within the space, at least one cutting blade mounted on the spindle for rotation therewith, and a rear roller supporting the deck for movement over the ground, the deck having a width such that the roller extends across substantially the entire width of the deck.

### Toro's Infringement of Claim 1 of the '530 Patent

Textron's Interrogatory No. 2 required Toro to "state in detail Toro's bases for any assertions of non-infringement of each of the patents in suit on a claim-by-claim, element-by-element basis." Toro's response incorporated by reference its Court-mandated Non-Infringement Claim Charts. Toro's Non-Infringement Claim Chart — and thus its response to Textron's Interrogatory No. 2 — did not provide *any* non-infringement contentions for the Groundsmaster 4500-D mower with respect to elements [a]-[d] of claim 1 of the '530 patent. And indeed there is no genuine issue of material fact that these elements are literally satisfied in the Groundsmaster 4500-D.

As for element [e], [REDACTED] Furthermore, the photographs of the 4500-D taken at an inspection (the "Inspection Photographs") performed by Textron's expert confirm that the front rotary cutting deck assemblies in the 4500-D are mounted on the frame in front of the front wheels and that the front deck assemblies define a gap between adjacent front deck assemblies. Exh. 11, TEXD 003750. Toro's product literature for the 4500-D confirms this as well. *See* Exh. 3 (showing three front rotary cutting units with a gap between each). Thus, there can be no genuine issue of material fact that the Toro 4500-D mower literally includes "at least two side-by-side front rotary cutting deck assemblies mounted on the frame in front of the front wheels, the front deck assemblies defining a gap between adjacent front deck assemblies."

As for element [f], [REDACTED] Again, the Inspection Photographs of the 4500-D confirm that the front rotary cutting deck assemblies are mounted on the frame in front of the front

645511-1

THE BAYARD FIRM
The Honorable Gregory M. Sleet
December 7, 2006
Page 5

wheels and the front deck assemblies define a gap between adjacent front deck assemblies. Exh. 11, TEXD 003751-52. Toro's product literature for the 4500-D likewise shows that this element is literally met. *See* Exh. 3. Thus, there can be no genuine issue of material fact that the Toro 4500-D mower literally includes element [f].

As for element [g], the Court interpreted "deck defining a downwardly opening space" to have its plain and ordinary meaning. Toro's product literature, Exh. 12 (Toro 27" Rotary Cutting Deck Operator's Manual) refers to the "deck" as the entire structure. Similarly, Toro's own patent on its accused cutting deck refers to the entire structure as the "deck." Exh. 13 (U.S. Patent 6,470,663 at 4:24-26 ("Cutting deck 2 of this invention has a superstructure of frame 4 on which various elements of cutting deck 2 are carried.")). Toro's engineering drawings show that the cutting deck is 30.174 inches wide, whereas Toro's rear roller is 29.846 inches wide, a difference of only 0.328 inches. Thus, there is no genuine issue of material fact that the Toro "deck [has] a width such that the roller extends across substantially the entire width of the deck."

**Toro's Failure to Proffer Any Evidence of Inequitable Conduct**

Toro's Second Amended Answer (D.I. 56) alleges that certain statements of the inventor in a declaration are contradicted by a so-called Buchanan article and, thus, constitute inequitable conduct. Inequitable conduct requires that the patentee withheld material information from the patent examiner or submitted false material information, with the intent to deceive or mislead the examiner into granting the patent. *Upjohn Co. v. Mova Pharmaceutical Corp.*, 225 F.3d 1306, 1312 (Fed. Cir. 2000). Both materiality and intent to deceive must be proven by clear and convincing evidence. *Id.* "[M]ateriality does not presume intent, which is a separate and essential component of inequitable conduct." *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 552 (Fed. Cir. 1990).

The Buchanan article was not material, but moreover Toro has not proffered and cannot proffer any evidence that the inventor of the Textron Patents was even aware of the Buchanan article. This fact is undisputed and dispositive of the defense. Because the inventor had no knowledge of the Buchanan article, there are no genuine issues of material fact that the inventor intended to deceive the Patent Office in his declaration.

Respectfully,

Peter B. Ladig (#3513)

PBL/kw
cc:   Richard L. Horwitz, Esq. (via hand delivery)
      David E. Moore, Esq. (via hand delivery)

645511-1