# THE BAYARD FIRM
## ATTORNEYS

222 DELAWARE AVENUE, SUITE 900
P.O. BOX 25130
WILMINGTON, DE 19899
ZIP CODE FOR DELIVERIES: 19801

MERITAS LAW FIRMS WORLDWIDE
www.bayardfirm.com
302-655-5000
(FAX) 302-658-6395

WRITER'S DIRECT ACCESS

302-429-4219
pladig@bayardfirm.com

December 14, 2006

The Honorable United States District Judge Gregory M. Sleet
United States District Court for the District of Delaware
844 King Street
Wilmington, DE 19801

**PUBLIC VERSION
DATED: December 27, 2006**

Re: Textron Innovations Inc. v. The Toro Company
C. A. No. 05-486 (GMS) **(FILED UNDER SEAL)**

Dear Judge Sleet:

Plaintiff Textron Innovations Inc. ("Textron") respectfully submits this opposition to Toro's letter of December 7, 2006 seeking permission ("Toro's Request") to move for summary judgment of non-infringement and invalidity of certain claims of the Textron Patents.

### Literal Infringement: Roller Extending Across Substantially Entire Width of Deck

As noted in Textron's opening letter, Toro all but concedes that its accused mowers satisfy elements [a]-[f] of representative claim 1 of the '530 patent. The only element that Toro disputes with its request is the last clause of element [g], reciting "the roller extends across substantially the entire width of the deck." However, two basic facts demonstrate that Toro infringes this element as well.

*Width of the Roller*: Even when drawing all reasonable inferences in favor, Toro cannot plausibly controvert the *undisputed* material fact that its roller, along with the end caps (which are not part of the ordinary meaning of the term roller), is at most ▆▆▆ inches wide.[1] *See* Exh. 1, TORO 019672.

*Width of the Deck*: Neither can Toro plausibly controvert the fact that its deck is ▆▆▆ inches wide, *i.e.*, Toro's deck is at least ▆▆▆ inches wider than its roller. *See* Exh. 2. Toro's non-infringement argument is based on a fallacy about the width of its "deck." In order to contend that its deck is narrower than its roller, Toro arbitrarily excludes from the deck essential structure that is part of every deck it sells. As shown *infra*, Toro's demonstrative (*see* Toro's Request at Fig. 3 at 2) omits a host of deck structure, including the skid rods (item 16 in Exh. 3), left and right top plates (items 13 and 14 in Exh. 3), the height of cut mounts on either side of the

---

[1] The actual width of Toro's roller is ▆▆▆ inches, *see* TORO 019675, Exh. 1. It is only when the width of the "end caps" (TORO 019673, Exh. 1) are included in the width of the roller does the roller become ▆▆▆ inches wide.

THE BAYARD FIRM

The Honorable United States District Judge Gregory M. Sleet
December 14, 2006
Page 2

deck, to name just some of the omitted deck structure (collectively, the "Omitted Deck Structure"). *See* Exh. 4 (demonstrative showing the Omitted Deck Structure). Yet, Toro failed to inform the Court of the Omitted Deck Structure, which predictably results in a narrower measurement of the deck's width. But there is no principled reason for Toro to exclude the Omitted Deck Structure, and once the Omitted Deck Structure is included, it is undisputed that Toro's decks are wider than its rollers, and its non-infringement argument fails.

Toro first argues that the patents differentiate between "cutting deck" and "cutting deck assembly," and therefore, these two elements ostensibly cannot have the same width relative to the rollers. This is a *non sequitur*; if the cutting deck is the widest part of the deck assembly, the cutting deck defines the width of the deck assembly. There is absolutely no reason why the cutting deck and cutting deck assembly cannot have the same (or different) width. As recited in Claim 1 of the '530 Patent, the cutting deck assembly is an assembly of parts and includes: 1) "a single-spindle cutting deck defining a downwardly opening space"; 2) a "single spindle mounted for rotation about a generally vertical axis within the space"; 3) "at least one cutting blade mounted on the spindle ..."; and 4) "a rear roller supporting the deck for movement over the ground, the deck having a width such that the roller extends substantially the entire width of the deck." Neither expressly nor by implication does the claim language exclude the Omitted Deck Structure from being part of the deck. Nothing suggests that the omitted skid rod structures, for example, are merely part of a "cutting deck assembly," rather than the deck itself. Rather, the claim makes clear that the cutting deck assembly refers to the deck, together with the single spindle, the cutting blade, and the rear roller.

Of course the claims require the deck to "defin[e] a downwardly opening space," but there is no dispute that Toro's accused decks meet this element. And that the deck must "define[] a downwardly opening space" does not mean that the deck is limited to the same width as that space; Toro concedes as much by measuring its accused deck across the top (thereby obtaining an outside measurement, albeit excluding the skid rods), rather than an inside measurement of the downwardly opening space taken from below the deck. Any contrary argument would effectively rewrite the claims to recite that the "roller extends across substantially the entire width of the [downwardly opening space.]" This would be clear error. Indeed, the specification illustrated that the deck is clearly wider than the downwardly opening space. *See, e.g.,* '530 Patent, 3:24-27 ("deck 38" disclosed as having a horizontal plate and vertical "spaced deck plates 66 and 68") and Exh. 5.

Toro provides a demonstrative allegedly showing its "deck." *See* Toro's Request at Fig. 3 at 2. But the drawing provides only a *portion* of Toro's deck. Toro's engineering drawings and additional photographs, Exh. 6, reveal that the deck is an integrated welded structure that includes much more than the stripped-down 28" wide structure shown with Toro's Request. Toro chose an engineering drawing that does not show the sum total of the deck. *See* Exh. 4.

The actual width of the cutting deck, as shown in Toro's engineering drawings, is at least ▮▮▮▮ inches. *See, e.g.,* Exh. 3, TORO 019741 (cutting deck without skids rods (part no. 16) is

636207v1

THE BAYARD FIRM

The Honorable United States District Judge Gregory M. Sleet
December 14, 2006
Page 3

███ inches wide (███ inches total)) and 019759 ███ inch diameter skid rod angled at ███ degrees adds at least ███ inches to the width of each side of deck (███ inches total)). Drawing all reasonable inferences in favor of Toro, it is an undisputed fact—established by Toro's engineering drawings—that Toro's decks are ███ inches wider than its roller. These measurements are confirmed by photographs of the roller and cutting deck. *See* Exh. 2.

### Equivalents Infringement: Roller Extending Substantially Across Width of Deck

Toro also asserts that "[r]egardless of functional equivalency, a roller that extends beyond the width of the deck cannot, as a matter of law, be the equivalent of a roller that 'does not extend beyond the width of the deck.'" Toro's Request at 3. While Toro literally infringes this element, even if Toro's roller is slightly wider than the deck as Toro incorrectly contends, there is a genuine issue of disputed material fact that Toro's rollers are functionally equivalent to a roller that is substantially as wide as the deck. Toro cannot plausibly argue that there is no functional equivalency, and applying the doctrine of equivalence in this matter would not "vitiate" any claim limitation. *See, e.g., DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, __ F.3d __, 2006 WL 3346155 *8 (Fed. Cir. Nov. 20, 2006). Furthermore, "[o]ne who seeks to pirate an invention, like one who seeks to pirate a copyrighted book or play, may be expected to introduce minor variations to conceal and shelter the piracy. Outright and forthright duplication is a dull and very rare type of infringement." *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 607 (1950).

### Claims 10-12 of the '311 Patent

Toro erroneously ignores that claims 10-12 of the '311 patent do not correlate the width of the roller to the width of the deck. Rather, claims 10-12 of the '311 patent correlate the roller width to the "width of said *cutting path*." '311 Patent, 6:31-33. The Court has not construed this term, which, like the other claim terms, should be accorded its ordinary and customary meaning. As shown in the Textron Patents, the roller 58 extends across and beyond the downwardly-opening space, *see* '530 Patent, Fig. 5, and this space encloses the blades. *Id.*, Fig. 4. It is quite clear from the Figures that the rollers of these claims actually extend *beyond* the width of the cutting blades. Of course, it is the cutting blades that define the width of the cutting path, and therefore, a roller must extend *beyond* the width of the cutting path in order to stripe the cut grass.

Toro does not dispute that its roller extends beyond the width of the cutting path as required by these claims. ███████████████████████

---

[2] Toro failed to produce the ███████████ prior to the *Markman* hearing and therefore avoided having to explain to the Court the inconsistencies between how it described its accused devices therein, and how it urged the Court to construe the claims at issue. Toro withheld the ████████████████████████

636207v1

# THE BAYARD FIRM

The Honorable United States District Judge Gregory M. Sleet
December 14, 2006
Page 4



Because Toro admits that its rear roller "extends substantially across the width of the cutting chamber," there likewise can be no genuine issue of material fact that Toro's rear roller "extend[s] substantially across the entire width of said cutting path."

### Claims 19 and 20 of the '312 Patent

Finally, Toro contends that it cannot infringe claims 19 and 20 of the '312 patent because its decks allegedly have front "rollers" rather than "wheels." Toro's argument is flawed for at least two reasons. First, the Court did not construe the term "wheels" to exclude "rollers." Second, the Court *rejected* Toro's request to construe the term "roller" as excluding "wheels." As such, that Toro's cutting decks have front "rollers" would not preclude them from literally satisfying the "wheel" limitation. Furthermore, even if a "roller" cannot be a "wheel," there is still a disputed issue of material fact whether Toro's front "rollers" are literally or equivalently "wheels." Moreover, regardless whether ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ an accused infringer cannot avoid infringement by simply labeling the parts of its accused device using terms other than those recited in the claims of the invention.

### The Textron Patents Are Valid Over Toro's Accused Groundsmaster 3500 and Nunes

Toro's assertion that the '312 Patent claims are anticipated by the accused Groundsmaster 3500 is remarkable because it is based on a proposition that, if accepted, admits of Toro's infringement of the '530 and '311 Patent claims. Toro declares that its accused mowers do not infringe the '530 and '311 patents because its rollers extend *beyond* the width of the deck, but in the very next breath Toro does a remarkable "about face" and alleges that because these same mowers have only "*partial width* rollers," they invalidate all of the claims of the '312 Patent that recite a "partial width roller."[3] Toro's Request at 4. The Court construed the "substantially the entire width" claims of the '530 Patent as requiring that "the roller extends largely *but not wholly* across the entire width of the deck, and does not extend beyond the width of the deck." If Toro's same accused rollers are "partial width rollers" such that they could invalidate the '312 Patent claims, those same rollers would clearly vitiate Toro's sole non-infringement argument presented in this same motion with respect to the '530 and '311 Patents. Indeed, Toro would be judicially

---

[3] Toro omits that not all of the claims of the '312 Patent require a partial width roller. Independent claims 1 and 24 recite a roller extending only partially across the width of the deck, whereas claim 19 is directed to a cutting deck assembly without any mention whatsoever about the width of the roller (partial width, full width or otherwise).

636207v1

THE BAYARD FIRM

The Honorable United States District Judge Gregory M. Sleet
December 14, 2006
Page 5

estopped from contesting infringement if the Court were to accept this invalidity argument. *Cf. Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001) ("It is axiomatic that that which would literally infringe if later anticipates if earlier.").

Toro's invalidity argument also lacks merit because the claims of the '312 Patent enjoy the benefit of the 1997 filing date of the '530 Patent. Accordingly, whether Toro first publicly displayed its first Groundsmaster in 1999—some two years after the filing of the '530 Patent application—is immaterial. Whether a claim is entitled to the filing date of a parent application is a question of fact. *Vas-Cath Inc. v. Marhurkar*, 935 F.2d 1555 (Fed. Cir. 1991); *see also Augustine Medical, Inc. v. Gaymar Industries, Inc.*, 181 F.3d 1291 (Fed. Cir. 1999) (whether subject matter of CIP patent receives priority date of parent application "depends on when that subject matter first appeared in the patent disclosures. To decide this question, a court must examine whether the 'disclosure of the application relied upon reasonably convey[s] to the artisan that the inventor had possession at that time of the later claimed subject matter.'"). Accordingly, an inventor's testimony about whether a claim is unsupported by an earlier filed patent application carries little weight, particularly where, as here, the joint inventor of the CIP application was not an inventor of the parent application. *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1380 (Fed. Cir. 2000) (improper to use inventor testimony to invalidate patent on Section 112, ¶ 2 grounds). Based on the Court's claim construction for the '530 Patent, it is clear that patent provides written description support for "partial width rollers."[4] Thus, under the Court's construction a partial width roller could not be "new matter" in the '312 Patent.

Finally, the Nunes Patent does not anticipate Claim 1 of the '311 Patent. It is undisputed that the Patent Office considered Nunes before allowing this claim. Among other things, Claim 1 requires "at least two side-by-side *front* rotary cutting deck assemblies." By contrast, Nunes does not disclose "front" rotary cutting deck assemblies and therefore the claim cannot be anticipated by this prior art reference. Instead, all of the cutting deck assemblies in Nunes are behind the tractor, *i.e.*, Nunes discloses a gang-type rotary mower design that was *distinguished* in the Background of the Invention. *See* '311 patent at 1:14-21 ("A gang of reels can be either attached directly to the frame on which the operator rides, or pulled behind a tractor. Pull-behind or tow-behind rotary gangs are also known....Tow behind gangs, whether reel or rotary, are generally undesirable for cutting a golf course rough because close trimming is difficult.").

For at least this reason, Toro presents at best a disputed factual issue and Toro's request for permission for summary judgment should be denied.

---

[4] It is likewise a disputed question of fact whether the '530 patent provides written description support for a three wheeled vehicle and one in which the center cutting deck is between the front wheels.

636207v1

THE BAYARD FIRM

The Honorable United States District Judge Gregory M. Sleet
December 14, 2006
Page 6

              Respectfully submitted,

              */s/ Peter B. Ladig*
              Peter B. Ladig (#3513)

PBL:cms
#31527-1
cc: Clerk of the Court
   Richard L. Horwitz, Esq.
   David E. Moore, Esq.

636207v1