# EXHIBIT 3

Westlaw.

30 U.S.P.Q.2d 1123                                                                                                          Page 1
1993 WL 616705 (C.D.Cal.), 30 U.S.P.Q.2d 1123
**(Cite as: 30 U.S.P.Q.2d 1123)**

H

Al-Site Corp.
v.
The Bonneau Co.

District Court, C.D. California

No. CV 92-7533 DT (Tx)

Decided November 23, 1993
United States Patents Quarterly Headnotes

**PATENTS**
**[1] Infringement -- Doctrine of equivalents -- In general (Section 120.0701)**
Genuine issues of material fact as to ambiguity of language in claims for hanger card used to display eyeglasses, as well as whether accused device performs its function in substantially similar manner, preclude summary judgment of non-infringement.

**PATENTS**
**[2] Patentability/Validity -- Specification -- Written description (Section 115.1103)**
Patent infringement defendant has failed to carry its burden of demonstrating that claim for hanger card used to display eyeglasses is indefinite pursuant to 35 USC 112, paragraph 2, in view of plaintiff's expert testimony showing that language employed in claim, specifically "rod receiving area," is common and easily understood by those skilled in art, nor has defendant demonstrated that patent's written description is insufficient as matter of law.

**PATENTS**
**[3] Infringement -- Defenses -- Fraud or unclean hands (Section 120.1111)**
Patent infringement defendant's assertion that plaintiff, in statements made during prosecution of patent in suit, mischaracterized prior art, is insufficient as matter of law to sustain defense of inequitable conduct, since defendant does not claim that plaintiff failed to bring any prior art to examiner's attention, and since examiner was free to disregard plaintiff's interpretation of prior art.

**PATENTS**
**[4] Infringement -- Defenses -- Fraud or unclean hands (Section 120.1111)**

**JUDICIAL PRACTICE AND PROCEDURE**
**Procedure -- Summary judgment -- Patents (Section 410.3303)**
Summary judgment on accused patent infringer's defense of inequitable conduct should be granted cautiously but is not completely foreclosed; rather, summary judgment is appropriate if evidence is so one-sided that factual issue of intent can be decided as matter of law.

**PATENTS**
**[5] Practice and procedure in Patent and Trademark Office -- Prosecution -- Duty of candor -- Materiality (Section 110.0903.04)**
**Infringement -- Defenses -- Fraud or unclean hands (Section 120.1111)**
Patent infringement plaintiff did not engage in inequitable conduct when it failed, in prosecuting continuation application which resulted in issuance of patent in suit, to disclose to Patent and Trademark Office federal district court's decision finding no infringement of original patent, since court's order solely addressed issue of infringement and did not concern patent validity, and since order was thus not material.

**PATENTS**
**Particular patents -- General and mechanical -- Display racks**
5,144,345, Nyman, hanger for displaying eyeglasses, summary judgment of non-infringement denied.

*1124 Action by Al-Site Corp. against The Bonneau Co. for patent infringement. On defendant's motion for summary judgment of non-infringement, and for summary judgment of patent invalidity, and on plaintiff's motion for partial summary judgment as to defendant's affirmative defense of inequitable conduct, and motion to stay. Defendant's motion for summary judgment denied; plaintiff's motion for partial summary judgment as to defendant's affirmative defense of inequitable conduct granted.

Related decision: 28 USPQ2d 1058 .

Peter T. Cobrin, Richard I. Samuel, and Jonathan Hudis, of Cobrin Gittes & Samuel, New York, N.Y.;

COPR. © 2006 The Bureau of National Affairs, Inc.

Mark Garscia, of Pretty, Schroeder, Brueggemann & Clark, Los Angeles, Calif., for plaintiff.

Robert Weiss, of Lyon & Lyon, New York; John M. Cone, of Strasburger & Price, Dallas, Texas., for defendant.

Tevrizian, J.

*Background*

This case involves an alleged patent infringement. Plaintiff Al-Site Corp. ("Plaintiff") alleges that defendant Bonneau Company ("Defendant") makes and sells a Slide Hook Reading Glass/Hanger Card (the "Bonneau hanger"), which is a direct infringement of Patent No. 5,144,345 (the " '345 patent"). The ' 345 patent discloses a hanger card for displaying eyeglasses that is particularly suited for use with non-prescription reading glasses.

Reading glasses are available over the counter and can be purchased easily and inexpensively. A purchaser can go to a rack and try on different pairs in order to find a pair with the right strength and comfort. Previously, once a particular pair was purchased, the receptacle that contained the sold pair would remain empty until it was replaced. In 1988, Plaintiff claims that it developed a hanger card, which is the subject of the '345 patent, that revolutionized this display system. By using the hangers, a store owner could display numerous glasses of the same size and strength on a single rack, as there would be no need to immediately replace a pair once it was sold. The Bonneau hanger accomplishes essentially the same task, but with a slightly different design.

Defendant contends that the hanger disclosed in the '345 patent, issued in 1992, is identical to the hanger disclosed in Patent No. 4,976,532 (the " '532 patent"), which was issued in 1988. Plaintiff's '532 patent was the subject of an earlier lawsuit that was before this court, *Al-Site Corp. v. Costco Wholesale Corp.*, CV 91-2167 DT (Tx) (hereinafter Case I). On April 20, 1992, in Case I, this Court granted partial summary judgment in favor of The Bonneau Company, who was a third-party defendant to that action, on the issue of infringement. Plaintiff is now in the process of appealing this Court's ruling in Case I. In the meantime, Defendant alleges, Plaintiff prosecuted a continuation of the '532 patent application, which resulted in the issuance of the '345 patent. Defendant contends that Plaintiff never disclosed the existence of the legal proceedings in Case I to the Patent Office, implying that such disclosure may have impacted the Patent Office's decision to issue the '345 patent.

On September 2, 1992, Plaintiff filed the current complaint in the United States District Court of the Northern District of Texas. On November 30, 1992, Judge Robert B. Maloney of the Northern District of Texas granted Defendant's motion to transfer the case to the Central District of California pursuant to 28 U.S.C. Section 1404(a).

On April 19, 1993 this Court denied Plaintiff's motion for summary judgment on the issue of patent infringement. (The "April 19, 1993 Order"). In so ruling, this Court held that certain differences between the Bonneau hanger and the '345 patent gave rise to genuine issues of material fact and that *1125 therefore, the issue of infringement could not be determined as a matter of law.

On September 13, 1993, Defendant filed a Motion for Summary Judgment arguing that Claims 4 and 5 of the '345 patent are not infringed by the distribution and use of the Bonneau hanger as a matter of law.

Also on September 13, 1993, Plaintiff filed a Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56(b) dismissing Defendant's affirmative defense asserting inequitable conduct before the Patent and Trademark Office ("PTO") or, in the alternative, severing this affirmative defense for a later hearing pursuant to Fed. R. Civ. P. 42(b).

On November 1, 1993, Plaintiff filed a Motion to Stay All Proceedings, Pending the Outcome of the Trial of a Related Case.

These motions are now before this Court.

*Discussion*

A. *Standard*

In deciding motions for summary judgment, this Court follows Federal Rule of Civil Procedure 56(c) and the following cases: *Celotex Corp. v. Catrett*, 477 U.S. 317, 322; 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Harper v. Wallingford*, 877 F.2d 728 (9th Cir. 1989); *California Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d

1466, 1468 (9th Cir. 1987), cert. denied, 108 S.Ct. 698 (1988); Neely v. St. Paul Fire & Marine Insurance Co., 584 F.2d 341, 344 (9th Cir. 1978).

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set fort specific facts showing that there remains a genuine issue for trial. Fed. R. Civ. P. 56(e). However, no defense to an insufficient showing is required. Neely v. St. Paul Fire & Marine Insurance Co., 584 F.2d 341, 344 (9th Cir. 1978).

A non-moving party who bears the burden of proof at trial to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. Anderson, 477 U.S. at 250-51. The non-movant's burden to demonstrate a genuine issue of material fact increases when the factual context renders her claim implausible. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, mere disagreement or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. Harper v. Wallingford, 877 F.2d 728 (9th Cir. 1989); California Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987), cert. denied, 108 S.Ct. 698 (1988).

### B. *Defendant's Motion for Summary Judgment*

Defendant seeks summary judgment holding that Claim 5 of the '345 patent is not infringed by Defendant's use of the Bonneau hanger. [FN1] Alternatively, Defendant seeks summary judgment holding that Claim 5 is invalid pursuant to 35 U.S.C. Section 112, Para. 1 for indefiniteness and is invalid pursuant to 35 U.S.C. Section 112, Para. 2 for lack of sufficient written description of the invention to show that the patentee, as of the effective filing date of the application for the '345 patent, was in possession of the invention as now claimed. Motion at 1.

### 1. *Infringement*

A determination of infringement requires a two-step analysis: (1) Interpretation of the claims; and then (2) determination of whether those claims, properly interpreted, read on the accused structure. Lemelson v. U.S., 752 F.2d 1538 [ 224 USPQ 526 ] (Fed. Cir. 1985); Caterpillar Tractor Co. v. Berco S.P.A., 714 F.2d 110 [ 219 USPQ 185 ] (Fed. Cir. 1983). It is only after the claims have **\*1126** been construed, without reference to the accused device, that the claims should be applied to the accused device to determine infringement. SRI International v. Matsushita Elec. Corp., 775 F.2d 1107 [ 227 USPQ 577 ] (Fed. Cir. 1985).

Defendant maintains that the claim interpretation being asserted by a patentee must be supported in the specification in order to comply with 35 U.S.C. Section 112 and that the "specification is . . . the primary basis for construing the claims."See Motion at 15; Standard Oil Co. v. American Cyanamid Co., 774 F.2d 448 [ 227 USPQ 293 ] (Fed. Cir. 1985). According to Defendant, Plaintiff's interpretation of Claim 5 is not supported by the specification.

Claim 5 describes the combination of an eyeglass display member and an eyeglass hanger comprising "a first rod receiving area and a second rod receiving area." Defendant asserts that, while ordinarily the words of a claim should be given their conventional everyday meaning, the wording of the '345 patent is not helpful in interpreting Claim 5 because it is "hopelessly vague, general and unspecific."See Motion at 16; Siegel Decl., Para. 11. Defendant asserts that the language of Claim 5 remains ambiguous after consulting the specification.

Defendant concludes, based upon the analyses of its experts, that despite the language of Claim 5 discussing two rod receiving areas, the '345 patent actually "teaches *one* area that receives *one* rod (namely, the central notch 18 in the aperture 16) and *one* larger area that receives *one* 'U'-shaped member of a slab like perimeter." Motion at 19; Siegel Decl., Para. 13.

According to Defendant, this contention of Claim 5 indicates that Claim 5 does not literally read on the Bonneau hanger. Defendant further concludes that the hanger is not equivalent to the invention of Claim

COPR. © 2006 The Bureau of National Affairs, Inc.

5 so construed. Motion at 19-20.

Defendant further contends that even if Claim 5 could be construed as literally covering the Bonneau hanger, the reverse doctrine of equivalents would require a finding of non-infringement as a matter of law. Motion at 20. Under this doctrine, where the accused device performs the same or similar function as the patented device, but in a substantially different way, infringement is avoided even if the claim reads literally on the accused device. *Graver Tank & Manufacturing Co. v. Linde Air Product Co.*, 339 U.S. 605, 608 [ 85 USPQ 328 ] (1950); *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F. 2d 1565, 1581 [ 18 USPQ2d 1001 ] (Fed. Cir. 1991).

Plaintiff vehemently disputes Defendant's contentions. Plaintiff first argues that Defendant's experts improperly construed Claim 5 only in relation to the Bonneau hanger. Plaintiff then offers its own interpretation of Claim 5 based upon the language of the claim which according to Plaintiff, is "clear, definite and precise and enables one skilled in the art to understand its scope." Rosen Decl., Para. 13. Plaintiff submits extensive expert testimony stating that Claim 5 of the '345 patent clearly teaches two separate "rod receiving areas" which each receive a separate rod. According to Plaintiff, these conclusions are consistent with the "rod receiving area" language of Claim 5 in light of the specification, drawings and file history of the '345 patent. *See* Opposition at 11-12; Gottlieb Decl., Para. 7; Hallerman Decl., Paragraphs 7, 8, 9, 10; Rosen Decl., Paragraphs 9, 10, 11.

Plaintiff then concludes that the evidence demonstrates that after properly interpreting Claim 5 and the disputed language therein, it is clear that Claim 5 reads on the accused Bonneau hanger. *See* Opposition at 13-16; Gottlieb Decl., Para. 13; Hallerman Decl., Para. 10; Rosen Decl., Para. 14. Alternatively, Plaintiff asserts that the evidence demonstrates that the Bonneau hanger infringes Claim 5 by the doctrine of equivalents. [FN2] Opposition at 13-19.

As this Court stated in the April 19, 1993 Order, "A claim is construed in the light of the claim language, the other claims, the prior art, the prosecution history, and the specification, not in light of the accused device."*SRI International, 775 F.2d at 1107.* Thus, although claim interpretation is a question of law amenable to summary judgment, "interpretation of a claim may depend upon evidentiary material about which there is a factual dispute requiring resolution of factual issues as a basis for interpretation of the claim."*Uniroyal v. Rudkin-Wiley, 837 F.2d 1044, 1054 [ 5 USPQ2d 1434 ] (Fed. Cir.), cert. denied, 488 U.S. 825 (1988); see Snellman v. Ricoh, 862 F.2d 283, 286 [ 8 USPQ2d 1007 ] (Fed. Cir. 1988), cert. denied,* 491 U.S. 910 (1989). Moreover, a comparison of claims, the second step when analyzing a claim of patent infringement, involves a question of fact. *1127*SmithKline Diagnostics, Inc. v. Helena Laboratories Corp., 859 F.2d 878, 889 [ 8 USPQ2d 1468 ] (Fed. Cir. 1988).*

In the April 19, 1992 Order this Court stated that, "There is no question that the Bonneau hanger performs essentially the same task as the patented invention disclosed in the '345 patent. . . The question is whether the accused device performs this function in a substantially similar or different fashion." The Court went on to note the key differences between the hanger disclosed in the '345 patent and the Bonneau hanger and expressed an unwillingness to grant summary judgment on the issue of patent infringement. [FN3]

[1] In this Court's opinion, genuine issues of fact exist as to the ambiguity of the language employed in Claim 5, the specific teachings of the '345 patent and the issue of whether the two devices perform their function in a substantially similar or different manner. Accordingly, this Court remains unwilling to grant summary judgment as to the issue of patent infringement.

*2. Validity*

Defendant next contends that Claim 5 of the '345 patent is invalid under 35 U.S.C. Section 112 for claim indefiniteness, at least if it is construed to cover the Bonneau hanger, and for insufficiency of description of the invention. Motion at 22, 25. Defendant is correct in arguing that a negative determination on the issue of validity would render the question of infringement moot. However, for the reasons set forth below, this Court is not of the opinion that Claim 5 is, as a matter of law, invalid for either indefiniteness or insufficiency of description.

Under 35 U.S.C. Section 282, a patent is presumed valid and Defendant has the burden of proving invalidity by clear and convincing evidence. *See e.g., Jervis B. Webb Co. v. Southern Systems Inc., 742 F.2d 1388, 1392 fn.4 [ 222 USPQ 943 ] (Fed. Cir. 1984).* This presumption of validity extends to every aspect of the patent statute [including 35 U.S.C.

COPR. © 2006 The Bureau of National Affairs, Inc.

Section 112.] *See e.g.*, *Hybritech Inc. v. Monoclonal Antibodies Inc.*, 802 F.2d 1367, 1375 [ 231 USPQ 81 ] (Fed. Cir. 1984), cert. denied, 480 U.S. 947 (1987). In *Water Technologies Corp. v. Calco Ltd.*, 658 F.Supp 961, 971 [ 1 USPQ2d 1178 ] (N.D.Ill. 1986), the court stated that "the defendants have a heavy presumption against them in arguing that the claims do not comply with 35 U.S.C. Section 112, where the Examiner reviewed the adequacy of the descriptions and found the patent descriptions to be definite and allowed the claims thereafter."

a. *Claim Indefiniteness*

According to Defendant, the determination as to whether a claim is invalid under Section 112, Para. 2 [FN4] "requires a determination of whether those skilled in the art would understand what is claimed when the claim is read in light of the specification."*See* Motion at 23-24; *Orthokinetics Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1576 [ 1 USPQ2d 1081 ] (Fed. Cir. 1986). Defendant premises its indefiniteness argument on the assertion that the word "area" in Claim 5 "implies no structure, implies no geometry, implies no mode of cooperation, and does not even imply position except in the vaguest, most abstract way." Motion at 25.

In this Court's opinion, Defendant has failed to demonstrate as a matter of law that Claim 5 is indefinite under Section 112, Para. 2. Plaintiff has submitted extensive expert testimony asserting that the language employed in Claim 5, specifically "rod receiving area", is common in the field of preparing patent applications, and easily understood by those skilled in the art. *See* Hallerman Decl., Para. 9; Gottlieb Decl., Para. 6, 7, 8, 9; Rosen Decl., Para. 13.

Defendant asserts that compliance with Section 112, Para. 2 is generally a question of law. However, "[w]hen the meaning of a term in a claim is disputed and extrinsic evidence is necessary to explain that term, then an underlying factual question arises, and construction of the claim should be left to the [trier of fact]."*Palumbo v. Don-Joy Co.*, 762 F.2d 969, 974 [ 226 USPQ 5 ] (Fed. Cir. 1985).

[2] In this Court's opinion, Defendant has failed to carry its burden of demonstrating that, as a matter of law, those skilled in the art would not understand what is claimed when Claim 5 of the '345 patent is read in light of the specification. Thus, this Court is *1128 not inclined to invalidate Claim 5 of the '345 patent on the grounds that it has failed to comply with 35 U.S.C. Section 112,

Para. 2.

b. *Sufficiency of Description*

According to Defendant, the "adequate written description" requirement of 35 U.S.C. Section 112, Para. 1 [FN5] , guards against an inventor's overreaching the proper scope of his patent. *See* Motion at 26. Defendant contends that:

"nothing in the '345 drawings, or elsewhere in the '345 disclosure, would inform anyone of skill in the art that [the inventor], as of the claimed priority date of the '345 patent, had in mind the structural and functional features that define the Bonneau Slide Hook." Motion at 29-30.

Defendant, in comparing the accused product with that shown in the asserted patent, does not apply the proper standard in determining whether the '345 patent adequately describes the invention embodied therein for purposes of Section 112, Para. 2. The Federal Circuit set forth the appropriate standard in *In re Wilder*, 736 F.2d 1516 [ 222 USPQ 369 ] (Fed. Cir. 1984), cert. denied, 469 U.S. 1209 (1985), stating,

"It is not necessary that the claimed subject matter be described identically but the disclosure originally filed must convey to those skilled in the art that applicant had invented the subject matter later claimed.

Moreover, whether Plaintiff has complied with the written description requirement of 35 U.S.C. Section 112, Para. 2, is a question of fact. *Vas-Cath Inc. v. Marukar*, 935 F.2d 1555, 1563 [ 19 USPQ2d 1111 ] (Fed. Cir. 1991).

In the instant case, Plaintiff has submitted substantial evidence in support of its assertion that Claim 5 is supported by the disclosure. *See* Opposition at 27-30; Hallerman Decl., Paragraphs 7, 8; Rosen Decl., Paragraphs 11, 13; Gottlieb Decl., Paragraphs 8, 9. In this Court's opinion, the written description of the '345 patent was not insufficient as a matter of law.

Accordingly, this Court hereby DENIES Defendant's Motion for summary judgment on the issues of infringement of the '345 patent and validity of the '345 patent.

C. *Plaintiff's Motion for Pretrial Summary Judgment*

COPR. © 2006 The Bureau of National Affairs, Inc.

In the instant action, Plaintiff alleges infringement of Claim 5 of its '345 patent. Defendant raised numerous affirmative defenses in its Answer, including Defendant's claim that the '345 patent is unenforceable by reason of inequitable conduct committed during its prosecution. *See* Defendant's Answer to Plaintiff's Amended Complaint at 2.

Inequitable conduct in prosecuting a patent application before the PTO renders the entire issuing patent unenforceable. *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 877 [ 9 USPQ2d 1384 ] (Fed. Cir. 1988). In order to establish a claim for inequitable conduct, the party asserting such conduct must prove by clear and convincing evidence that a patent applicant misrepresented or omitted material prior art or information in prosecuting a patent application with the intent to deceive the PTO in order to obtain a patent. *See Manville Sales Corp. v. Paramount Systems Inc.*, 917 F.2d 544 [ 16 USPQ2d 1587 ] (Fed. Cir. 1990) The ultimate question of whether inequitable conduct occurred is equitable in nature. *Kingsdown*, 863 F.2d at 876. Once a threshold showing of materiality and intent to mislead or deceive has been established, the ultimate question of whether inequitable conduct occurred is committed to the discretion of the trial court, which must balance the materiality of the misrepresentation or omission with the level of culpable intent to determine whether enforcement of the patent would be inequitable. *See Manville*, 917 F.2d at 551; *Kingsdown*, 863 F.2d at 876

Specifically, a party asserting the "failure to disclosure" form of inequitable conduct must offer clear and convincing proof of the following elements: "(1) prior art or information that is material; (2) knowledge chargeable to applicant of that prior art or information and of its materiality; and (3) failure of the applicant to disclose the art or information resulting from an intent to mislead the PTO."*FMC Corp. v. Manitowoc Co., Inc.*, 835 F.2d 1411, 1415 [ 5 USPQ2d 1112 ] (Fed. Cir. 1987).

In the instant case, Defendant bases its inequitable conduct affirmative defense on the following two grounds:

"(a) The patent applicant, during the prosecution of the '345 patent application, failed to advise the Examiner of the restrictions placed on the claim language of the '532 patent as a result of Judge Tevrizian's summary judgment order and of the reasons therefor.

*1129 (b) The patent applicant failed to disclose, in appropriately full and candid detail, known facts about the structure and function of the Cool-Ray hanger." [FN6]

(*See* Motion, Exbt. B, Defendant's Response to Plaintiff's Second Set of Interrogatories, p.6).

a. *Plaintiff's failure to disclose facts about the Cool-Ray hanger.*

In its motion, Plaintiff claims that Defendant's affirmative defense premised upon the allegation that Plaintiff mischaracterized the Cool-Ray reference in prosecuting the '345 patent is frivolous. Motion at 11.

According to Defendant, Plaintiff knew by April 14, 1991 that Cool-Ray had used an improved version of the anti-pilfer tag shown in Patent No. 3,738,034 (the "Seaver Patent"), to mount clip-on sunglasses on a retail display in a manner in which several sunglasses were stacked, one behind the other, each in a horizontal orientation, on a cantilever support arm, which passed through an opening found in the Seaver tag. Opposition at 2. Defendant further asserts that Plaintiff knew that the Cool-Ray tag was configured in such a way that while it remained attached to the sunglasses it was "mounted so as to be out of the consumer's way when trying on the sunglasses." Opposition at 3.

According to Defendant, despite this knowledge, Plaintiff's counsel, in prosecuting the '345 patent, filed a Preliminary Amendment with the PTO which, in its discussion at the Cool Ray prior art, contained the following statement:

"The Cool-Ray catalogue provides an anti-theft hang tag on each pair of eyeglasses, but the hang tag does not have any aperture for receiving a cantilever support, as recited in the claims herein."

Later, in response to the Examiner's rejection of the proposed claim, Plaintiff's counsel stated that "There would be no reason to have an aperture through the Cool-Ray tag since the Cool-Ray sunglasses are not designed to be stacked one next to another in a horizontally extending direction along a single cantilever." Opposition at 6.

In subsequent filings with the Examiner, Defendant contends that Plaintiff "does not draw attention to the aperture in the tag used to mount it on the support"

COPR. © 2006 The Bureau of National Affairs, Inc.

and "plainly implies that the Cool-Ray device would not allow customers to try on the glasses while the tag is still attached . . . even though both the Seaver Patent and the Cool-Ray 1975 catalogue make it clear that the prior art tag certainly does allow this." Opposition at 7.

Defendant submits expert testimony in support of its position that these statements, in light of Plaintiff's awareness of the Seaver Patent and the prior Cool-Ray art, were misleading and constitute "a carefully orchestrated attempt to avoid making plainly warranted admissions about the structure and mode of operation of the Cool-Ray 1977 Catalog Device."*See* Jessup Decl., Para. 21.

[3] In this Court's opinion, Defendant's affirmative defense of inequitable conduct based upon misrepresentations made to the Examiner in prosecuting the '345 patent must fail as a matter of law. Defendant has failed to make even a threshold showing of materiality or intent to deceive.

In asserting its affirmative defense, Defendant does not claim that Plaintiff failed to bring any prior art to the attention of the Examiner. Instead, Defendant argues that Plaintiff, in statements made during the prosecution of the '345 patent, mischaracterized the prior art embodied in the Cool-Ray tag. As stated in Haworth v. Steelcase, 685 F.Supp. 1422 [ 8 USPQ2d 1001 ] (W. D. Mich. 1988) *aff'd in relevant part, revs'd in part* 867 F.2d 615 [ 10 USPQ2d 1251 ] (Fed. Cir.), *cert. denied,* 490 U.S. 1067 (1989),

"Where an applicant draws prior art to the examiner's attention, and then proceeds to distinguish it from the invention at issue, an incorrect characterization of that prior art, even if in a material respect, or a failure to correct a characterization later realized to be incorrect will not amount to inequitable conduct in the absence of clear and convincing evidence of a deliberate intent to deceive. The examiner, once aware of prior art, is free to draw his or her own conclusions with regard to its materiality. Advocacy, even if somewhat over zealous, will not alone amount to inequitable conduct."*Id.* at 1453.

In the instant case, it is undisputed that the Examiner, in determining the validity of the '345 patent, had the Seaver patent and the Cool-Ray prior art before him. Thus, the Examiner was free to disregard Plaintiff's interpretation of the Cool-Ray catalogues and the Seaver patent. [FN7]

*1130 Furthermore, Defendant has failed to present any evidence whatsoever of deliberate intent to deceive. While direct evidence of deceptive intent is not required, Defendant must "show by clear and convincing evidence that [Plaintiff] acted inequitably by intending to mislead or deceive the PTO." Manville, 917 F.2d at 552; *see also* Paragon Podiatry Laboratory v. KLM Laboratories, 984 F.2d 1182 [ 25 USPQ2d 1561 ] (Fed. Cir. 1993).

Defendant argues that the false and misleading statements made by Plaintiff in prosecuting the '345 patent are circumstantial evidence from which intent may be inferred. Opposition at 10. Careful examination of Defendant's position reveals a complete absence of any facts which would support such an inference.

The '345 patent was initially filed and Prosecuted by Jerome M. Berliner, Esq. While the application was pending, Mr. Berliner was succeeded in the prosecution by Peter T. Cobrin, Esq. Defendant claims that Mr. Berliner must have known that the Cool- Ray hanger had an aperture for receiving a cantilever support because Bert Lewen, an attorney for one of Plaintiff's competitors, sent Mr. Berliner copies of the Seaver patent and the Cool-Ray catalogues and informed Mr. Berliner that these documents indicated the existence of such an aperture.

Similarly, according to Defendant, Mr. Cobrin must have known of the existence of this aperture since Mr. Lewen and Myron Orlinsky, an expert in earlier hang tag litigation, pointed out to Mr. Cobrin the pages in the 1977 Cool-Ray catalogue showing the glasses stacked by means of a hang tag. Mr. Lewen and Mr. Orlinsky informed Mr. Cobrin that this hang tag had an aperture through which a cantilever support arm extended.

Basically, Defendant is arguing that Plaintiff, in prosecuting the '345 patent, engaged in inequitable conduct by failing to characterize the prior art in a manner consistent with Defendant's own interpretation of that art. As discussed, the Seaver patent and the Cool-Ray catalogues were before the Examiner. If these documents were as self- evident as Defendant would have this Court believe, then the Examiner would have made a determination consistent with Defendant's position. Even assuming Plaintiff's characterization of the prior art was incorrect, Plaintiff will not be found to have engaged in inequitable conduct absent clear and convincing evidence of an intent to deceive the examiner. *See* Kingsdown, 863 F.2d at 872, 876. Plaintiff's failure to

COPR. © 2006 The Bureau of National Affairs, Inc.

take Defendant's position during the prosecution of the '345 patent does not constitute inequitable conduct.

Defendant argues that, at the very least, genuine issues of material fact exist as to the existence of deceptive intent and that therefore, this Court cannot grant Plaintiff's motion for summary judgment as to Defendant's inequitable conduct defense.

[4] However, while "precedent urges caution in the grant of summary judgment respecting a defense of inequitable conduct, summary judgment is not foreclosed."*Paragon*, 984 F.2d at 1190. Summary judgment may be entered on an inequitable conduct defense when "the evidence is so one-sided that the factual issue of intent may be decided as a matter of law."*Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1190 [ 25 USPQ2d 1561 ] (Fed. Cir. 1993).

In this Court's opinion, Defendant has failed to present any probative evidence that Plaintiff acted with an intent to deceive the Examiner in prosecuting the '345 patent. The evidence submitted by Defendant purportedly supporting an inference of fraudulent intent is mere conjecture. As stated in *In re Hayes*, 982 F.2d 1527, 1546 [ 25 USPQ2d 1241 ] (Fed. Cir. 1992), "Conjecture alone is not sufficient to show an intent to deceive to support the defense of inequitable conduct."

This Court's ruling as to this issue is consistent with the opinion of Judge Glasser in *Al-Site Corp. v. Opti-Ray, Inc.* (Opti-Ray II), CV 92-4205 (ILG) [ 28 USPQ2d 1058 ]. There, Opti-Ray raised the same defense to infringement as that asserted here by Defendant, namely that Plaintiff engaged in inequitable conduct by failing to disclose material facts to the Examiner in obtaining the '345 patent. In his order granting summary judgment against Opti-Ray on its inequitable conduct defense, Judge Glasser concluded:

Summary judgment in favor of Al-Site must . . . be entered because the undisputed conduct of Al-Site in prosecuting its patent applications neither constituted inequitable conduct, nor a *Walker Process* [ 147 USPQ 404 ] claim, as a matter of law. (Motion, Exbt. C, p.8)

This Court agrees. In this Court's opinion, Plaintiff's affirmative defense of inequitable conduct based upon alleged mischaracterization *1131 of the prior art embodied in the Cool-Ray hanger is unsupported and fails as a matter of law.

a. *Plaintiff's failure to cite Case I*

As already stated, in Case I, this Court granted summary judgment in favor of Defendant on the issue of infringement of the '532 patent. In prosecuting the '345 patent, Plaintiff did not disclose this ruling to the Examiner. Defendant claims that Plaintiff's failure to disclose the ruling amounted to inequitable conduct.

According to Defendant, an issue facing the Examiner during prosecution of the '345 patent was whether to allow broader claims than had been allowed in the '532 patent. Defendant argues that this Court's ruling granting summary judgment in Case I "essentially constituted a ruling as to the scope of the disclosure of the patent: It did not extend to an arrangement in which two open ended slots received the two arms of a support." According to Defendant, because this ruling was withheld from the Examiner, the Examiner "(a) did not realize that [Plaintiff] was trying to cover a competitor's product developed long after the invention of the application was made and (b) was seeking to extend the claim beyond the support of the disclosure this Court had found the patent to contain." Opposition at 16.

In order to prevail in their claim of inequitable conduct, Defendant must first demonstrate that this Court's ruling in Case I was material to the prosecution of the '345 patent. In deciding the issue of materiality, "It is not enough that the information be simply 'relevant' in some general sense to the subject matter of the claimed invention, or even to the invention's patentability."*Digital Equipment Corp. v. Diamond*, 653 F.2d 701, 716 [ 210 USPQ 521 ] (1st Cir. 1986). Under 37 C.F.R. Section 1.56 as amended,

[I]nformation is material to patentability when it is not cumulative to information already of record or being made of record in the [patent] application, and (1) It establishes, by itself or in combination with other information a prima facie case of unpatentability of a claim; or (2) It refutes, or is inconsistent with, a position the applicant takes in:

(i) Opposing an argument of unpatentability relied on by the [Patent] Office, or

(ii) Asserting an argument of patentability.

[5] A careful reading of Section 1.56, the relevant

COPR. © 2006 The Bureau of National Affairs, Inc.

case law and the facts of this case demonstrates that the Court's Order granting summary judgment in Case I was not material to the prosecution of the '345 patent and therefore, Defendant's claim of inequitable conduct based on Plaintiff's failure to disclose the Order must fail.

This Court, in its April 20, 1992 Order, found that there was no literal infringement of the '532 patent and that there was no infringement under the doctrine of equivalents by Defendant's use of the Bonneau slide. *See* Decl. of Warren T. Jessup, Exbt. F. This Court solely addressed the issue of infringement of the '532 patent and did not in any way deal with issues of validity or patentability. Thus, contrary to Defendant's assertion, this Court's ruling did not constitute a ruling as to the scope of the '532 patent.

According to *Burlington Industries, Inc. v. Quigg*, 822 F.2d 1581, 1583 [ 3 USPQ2d 1436 ] (Fed. Cir. 1987),

"Issues of judicial claim construction such as arise after patent issuance, for example during infringement litigation, have no place in prosecution of pending claims before the PTO, when any ambiguity or excessive breadth may be corrected by merely changing the claim."

Under *Burlington*, this Court's ruling as to construction of Claim 8 of the '532 patent had no place in prosecution of the '345 patent and Plaintiff was not obligated to bring the April 20, 1992 ruling to the Examiner's attention.

Moreover, even within the same patent, each claim is treated as though it were a separate patent. *See e.g.*, *Leeds & Catlin Co. v. Victor Talking Machine Co.*, 213 U.S. 301, 319 (1909). In the instant case, Defendant is attempting to equate different claims of different patents in arguing that Plaintiff was required to disclose this Court's April 20, 1992 Order to the Examiner in prosecuting the '345 patent.

In this Court's opinion, this Court's April 20, 1992 Order was not material to the prosecution of the '345 patent and therefore, Plaintiff's failure to reveal this Order cannot support a defense of inequitable conduct. In any event, even assuming materiality, Defendant has failed to present any probative evidence that the omission was made with an intent to deceive the Examiner.

Accordingly, this Court GRANTS Plaintiff's Motion for Partial Summary Judgment as to Defendant's affirmative defense of inequitable conduct.

D. *Plaintiff's Motion to Stay*

Plaintiff requests a stay of all proceedings in the instant action pending the outcome of *1132 the trial of *Al-Site Corp. v. Pennsylvania Optical Company and David Ray Moore*, Case No. 93-0355-CIV-Atkins, a related case currently pending in the United States District Court for the Southern District of Florida. ("the Florida Action").

According to Plaintiff, the corporate defendant in the Florida action, Pennsylvania Optical Company ("Penn Op") is the sister company to Defendant. The two companies are commonly owned and controlled, and share common officers/employees. Plaintiff claims that the accused product in the Florida Action is identical to the accused product in the instant action and that Penn-Op and David Ray Moore ("Moore") have asserted identical grounds for invalidity, unenforceability and non-infringement as have been asserted by Defendant in this action. Moreover, Penn-Op and Moore have the identical counsel as Defendant and the case is set for trial on the two-week trial calendar commencing December 20, 1993. *See* Motion at 3.

Plaintiff contends that the issues underlying the parties' motion presently pending before this Court will be completely resolved, on grounds of res judicata/collateral estoppel, by the Florida trial. Thus, this Court should exercise its discretion and grant a stay of all proceedings in this action pending the resolution of the trial in the Florida action.

Defendant opposes the issuance of a stay. Defendant argues that disposition of the instant motions could obviate the need for trial in Florida or simplify and streamline the issues presented in that trial. Defendant further asserts that it is unlikely that the Florida trial will actually occur on the date for which it is set and that because the case is a young case in terms of the Miami court's docket, the Miami court has not become acquainted with the case. Opposition at 1-5.

Based upon the Court's analysis it appears that a stay is not appropriate. Therefore this Court hereby DENIES Plaintiff's request for a stay.

IT IS SO ORDERED.

FN1 Defendant's Motion for Summary Judgment addresses its infringement and

COPR. © 2006 The Bureau of National Affairs, Inc.

indefiniteness claim to Claim 4, as well as Claim 5, of the '345 patent. However, Plaintiff has not charged Defendant with infringement of Claim 4. Therefore, this Court need not discuss Defendant's contentions regarding Claim 4.

FN2 This doctrine applies where the accused structure performs substantially the same function in substantially the same way to obtain the same result as the claimed invention. Graver Tank, 339 U.S. at 608.

FN3 In the April 19, 1993 Order, this Court noted this Court's previous granting of summary judgment against Plaintiff in Case I and stated that while "the wording of the claims in the '345 patent may be different from the '532 patent, the essential facts remain the same." Defendant has seized upon this language in support of its instant Motion for Summary Judgment. Plaintiff, however, contends that since Claim 5 of the '345 patent does not have a means clause, this Court's prior decision with regard to Claim 8 of the '532 patent is irrelevant in the instant action.

FN4 Paragraph 2 of Section 112 provides,

"The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."

FN5 Paragraph 1 provides:

"The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention."

FN6 The Cool-Ray hanger is a hanger tag attached to clip-on sunglasses that was manufactured by Cool Ray, Inc.

FN7 Defendant argues that the copies of the Cool-Ray art filed with the Examiner were "of such bad quality that the Examiner could not possibly have corroborated or checked" Plaintiff's description of the art. Opposition at 7. This argument is without merit since this Court presumes that a patent examiner has done his job. See Brooktree Corp. v. Advanced Micro Devices Inc., 977 F.2d 1555 [ 24 USPQ2d 1401 ] (Fed. Cir. 1992). Defendant has made no showing that the Examiner failed to do his job in issuing the '345 patent.

C.D.Cal.

30 U.S.P.Q.2d 1123

END OF DOCUMENT

COPR. © 2006 The Bureau of National Affairs, Inc.