## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **TEXTRON INNOVATIONS INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **C. A. No. 05-486 (GMS)** |
| | ) | |
| **THE TORO COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF TEXTRON INNOVATIONS INC.'S BRIEF IN OPPOSITION TO DEFENDANT'S UNTIMELY MOTION FOR LEAVE TO AMEND PRIOR ART STATEMENT

Edmond D. Johnson (DE Bar #2257)
Thomas H. Kovach (DE Bar #3964)
Pepper Hamilton LLP
1313 Market Street, Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6539
Fax: (302) 421-8390

OF COUNSEL:

Scott L. Robertson
Christopher C. Campbell
**HUNTON & WILLIAMS LLP**
1900 K Street, N.W.
Washington, D.C. 20006-1109
Telephone: (202) 955-1500
Facsimile:  (202) 778-2201

*Attorneys for Plaintiff*
*Textron Innovations Inc.*

Dated:  January 10, 2007

## I.    INTRODUCTION

Plaintiff Textron Innovations Inc. ("TII") respectfully requests that the Court deny defendant The Toro Company's ("Toro") belated motion for leave to amend its prior art statement and thereby expand its invalidity contentions to nearly one-hundred alleged prior art references.  Toro's motion comes some seven months after Toro's mandatory prior art statement was due under the Scheduling Order, and Toro does not sustain its burdens under the Scheduling Order to show that this new prior art is not merely cumulative and that Toro could not reasonably have located it earlier.

In particular, there is no merit to Toro's contention that its motion is necessitated by prior art that Toro allegedly uncovered only recently during a document review at a Charlotte warehouse.  Of the twelve prior art references Toro seeks to add to the case, only four of them were allegedly found at this Charlotte facility; two of those references were *issued* patents, readily accessible to the general public through a simple internet search, and Toro does not even allege any relevance to the remaining two references in its amended prior art claim charts.  Moreover, the other allegedly "new" prior art that Toro "could not have found earlier" includes Toro's own products.  And for most of this "new" prior art, Toro does not even assert relevance or non-cumulativeness in its amended prior art claim charts as required by this Court's Scheduling Order.  In addition, Toro's brief omits that its amended prior art statement also presents new allegations regarding a prior art reference that it has already asserted in the case, without any showing whatsoever that these new allegations are justified under the Scheduling Order.  Accordingly, TII respectfully requests that the Court deny Toro's motion.

## II.    FACTUAL BACKGROUND

### A.    The Proceedings To Date

This patent infringement action has been pending for one and one-half years, since July 12, 2005.  More than seventeen months ago, Toro first alleged invalidity of the patents-in-suit on August 15, 2005, when it filed a "mirror image" action against TII in the United States District Court for the District of Minnesota, requesting a declaratory judgment that TII's patents-in-suit in this case were invalid.

### B.    This Court Adopted A Scheduling Order That Imposed Significant Restrictions Upon Toro's Ability To Amend Its Prior Art Statement.

On February 7, 2006, this Court adopted the Scheduling Order for this case.  (D.I. 40.) This Court's Scheduling Order mandated that Toro serve its prior art statement on June 1, 2006, more than seven months ago.  Over Toro's objection, this Court imposed within the Scheduling Order a specific set of restrictions on Toro's right to amend its prior art statement.  The Court adopted these restrictions after learning that Toro had insisted upon these very same restrictions in another case in which Toro was the plaintiff-patentee, and Textron Inc. was the accused defendant.  Indeed, in that case, Toro strenuously resisted any departure from these provisions, contending that such restrictions on a defendant's right to amend its prior art statement were necessary in order to avoid "improper sandbagging litigation tactics."  Exhibit 1 at 1.[1]

Thus, the pertinent provision of the Scheduling Order for this case provides:

Amendments to the parties' Prior Art Statements can be made only by leave of Court, upon a showing:

---

[1] Toro further argued that it was incumbent on an accused infringer to have already gathered the prior art in order to have a good faith basis to allege invalidity in its answer, and that a period of seven months from the filing of a complaint was adequate time in which to find any additional prior art. *Id.* at 2.

Defendant:

(a) that it *was not and could not reasonably have been located earlier* by defendant; and

(b) that it is *not merely cumulative* of prior art already listed, and

(c) how defendant will be prejudiced if leave is denied, and plaintiff will not be prejudiced if leave is given.

Scheduling Order adopted by Court on Feb. 7, 2006 ("Scheduling Order") (emphasis added).

As discussed *infra*, these provisions place the burden on Toro to show that all of the requisite conditions are met. Toro now asks leave of Court to amend its prior art statement to add twelve allegedly new prior art references in addition to the eighty-seven references Toro asserted with its original prior art statement. In addition, although Toro's brief makes no mention of the point, Toro's amended claim charts also present new allegations pertaining to a prior art reference that Toro asserted with its original prior art statement, specifically, U.S. Patent No. 5,280,695. *See* Exhibit 2 (Toro Redline Version of Amended Prior Art Statement, Toro Exhibit C).

## III.    ARGUMENT

Toro does not meet its burdens under the Scheduling Order to justify amending its prior art statement. First, Toro does not show how these references are not merely cumulative of those it has already asserted. An examination of Toro's amended invalidity claim charts demonstrates that Toro does not even allege any particular relevance to ten of the twelve new references, and none of the references are non-cumulative. Second, Toro does not show that it could not reasonably have located these twelve new references earlier. Indeed, some of these references consist of Toro's own products, and other references are issued patents readily found through an elementary internet search. Finally, Toro does not show how it will be prejudiced if leave to

-3-

amend is denied; TII, on the other hand, will be unfairly prejudiced if leave to amend is granted at this late stage of the case.

### A.    Toro Does Not Sustain Its Burden To Show That Its "New Prior Art" Is Not Merely Cumulative Of Prior Art Already Listed.

While Toro declares that its newly-alleged prior art is not cumulative of that it already has listed in the case, its own claim charts provided with its amended prior art statement show that this new art is cumulative and/or simply irrelevant to the issues in the case. For *ten* of the twelve newly-alleged prior art references — specifically, Numbers 88-91 and 93-98 — *Toro does not even cite them in its amended claim charts*. *See* Exhibit 2 (Toro redlines of claim chart exhibits (Toro Exhibits C and E) submitted with Proposed Amended Prior Art Statement). In other words, Toro's amended claim charts do not even allege that these references, either alone or in combination with another reference, invalidate any limitation of any asserted claim. Instead, Toro merely adds the references to its laundry list of nearly one-hundred other references, without any explanation as to their relevance.

This Court's Scheduling Order requires that Toro's prior art statement provide "a complete and detailed explanation of what [Toro] alleges the prior art shows and how that prior art invalidates the claim(s) asserted by plaintiff ('Defendant's Prior Art Statement')." Scheduling Order at 3. Accordingly, for the ten above-cited references Toro clearly fails in its burden under the Scheduling Order to show that this art is not merely cumulative to that already in the case, and moreover it fails to disclose how this art is even relevant to its invalidity contentions.

For the only two alleged prior art references that Toro actually mentions in its amended claim charts (No. 92, the Groundsmaster with Contour 66, and No. 99, the Wulff Mower Brochure), here, Toro's amended claim charts show that this art is merely cumulative of that

already alleged.[2]  For each limitation allegedly shown by these two references, the new reference is simply alleged as an additional item of prior art cumulative of the prior art that Toro already asserted.  *See, e.g.,* Exhibit 2 (Toro Exhibit C, '311 Patent, Claims 2, 3, 5, 7, 8, 10, 11 (alleging that previously-disclosed Lesco prior art and other references showed the claim limitation, and now alleging that "Wulff" mower brochure also shows that same limitation)).

Toro's brief states that "[a] prior art reference is not cumulative if it discloses a device or aspect of a device that other references do not disclose," Toro Br. at 9 (citing *Elk Corp. v. GAF Bldg. Materials Corp.,* 168 F.3d 28, 31 (Fed. Cir. 1999)), but then Toro fails its own test.  Toro does not contend that a single asserted claim limitation is present in the new prior art references that Toro did not previously assert was present in another reference with its original prior art statement.

Accordingly, Toro's own amended claim charts demonstrate that it has not sustained its burden under the Scheduling Order to show that the allegedly new prior art is not merely cumulative.

### B.    Toro Does Not Sustain Its Burden To Show That Its "New Prior Art" Was Not And Could Not Reasonably Have Been Located Earlier.

In this case, this Court specifically required that Toro show that any belatedly disclosed prior art was not and could not reasonably have been located earlier.  Toro fails to make that showing.[3]

---

[2] Toro's proposed amended prior art claim charts actually present allegations pertaining to U.S. Patent No. 5,280,695.  However, this patent was asserted by Toro in its ***original*** prior art statement, and Toro presents no argument why it should be allowed to present new allegations relating to this previously-known patent at this late date.

[3] Toro is evidently embracing a strategy of belated prior art disclosures.  In one particularly egregious example, on May 27, 2006 (three days before Toro's original prior art statement was due), Toro secured a sworn declaration from a prior art witness who provided Toro with information that Toro contends is prior art.  Yet Toro withheld this declaration and

-5-

This case has been pending since July 2005, and Toro first asserted invalidity in August 2005. In contrast to information regarding the design of an infringer's accused product, allegedly invalidating "prior art" is, by definition, non-confidential information, generally available through publicly-accessible sources.[4] As set forth below, Toro's "newly-found" prior art consists of its own products, issued patents readily found through elementary internet searches of government patent offices, and other documents about which Toro makes no showing that it could not reasonably have found them earlier.

> **1.     Toro Cannot Be Excused For Its Belated Reliance Upon Its Own Products As Constituting Alleged Prior Art.**

Toro's request to amend its prior art statement is particularly audacious with respect to the Toro "Groundsmaster® with Countour 66" and the "Hayter Contour 120." As is evident from Toro's brief, Toro Br. at 6, the Groundsmaster (No. 92) is ***Toro's own product.*** It is the predecessor in name to one of the very products accused of infringement in this case, as was alleged in TII's infringement claim charts served on Toro two months before Toro served its original prior art statement. Toro Br. at 6. Toro does not provide any legitimate explanation why it could not before now have located its own product as allegedly constituting relevant prior art. It is implausible for Toro to suggest that it needed to hear from one of TII's inventors as to when ***Toro's own product*** was allegedly first offered for sale. *See* Toro Br. at 6.

Moreover, the suggestion is equally implausible that new information emerged as to the priority date for the '312 Patent-in-Suit. Whether the claims of a continuation-in-part patent are

---

information from TII until November 1, 2006.

[4] Toro notes that the parties informally and temporarily agreed to a discovery "stand-down" while a mediation was taking place, but this was done at Toro's own suggestion, and nothing prevented Toro from engaging in prior art searches through means outside of formal discovery during this period.

entitled to the priority date of a parent application is determined by reference to the patent disclosures, which Toro has had in its possession since long before it filed its *original* prior art statement. *See Augustine Medical, Inc. v. Gaymar Industries, Inc.*, 181 F.3d 1291 (Fed. Cir. 1999) (question turns on whether the "*disclosure of the application* relied upon reasonably convey[s] to the artisan that the inventor had possession at that time of the later claimed subject matter.") (emphasis added). Accordingly, inventor testimony carries little weight, particularly where, as here, the inventor upon whose testimony Toro excuses its belated allegation was not even an inventor of the parent application at issue. *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1380 (Fed. Cir. 2000) (improper to use inventor testimony to invalidate patent on Section 112, ¶ 2 grounds). Thus, there was no legitimate basis for Toro to wait until now before alleging that its product allegedly constitutes prior art to the '312 Patent.

Likewise, Hayter is a subsidiary of Toro, and therefore Toro cannot plausibly contend that the Hayter Contour 120 (No. 97) "was not and *could not* reasonably have been located earlier by defendant." Indeed, Toro's own website boasts that "Hayter is known as the pioneer of the rotary lawnmower in the United Kingdom." Exhibit 3. Accordingly, Toro certainly knew to consider its own subsidiary before now as a possible source of prior art. Toro weakly notes that "Hayter is a company in the United Kingdom," Toro Br. at 8, without revealing to the Court that it is nonetheless a Toro subsidiary. *See* Exhibit 4. Particularly because Hayter is a Toro subsidiary, it is implausible for Toro contend that it could not reasonably have located this product before now.[5]

---

[5] Ironically, in this case, Toro has repeatedly argued that TII should be deemed responsible for *any* supposed "knowledge" of prior art on the part of *any* employee of the one-hundred plus affiliates and subsidiaries of TII's parent corporation, yet here Toro apparently believes it had no obligation to consider whether its subsidiary's products constituted prior art in this case.

Thus, Toro does not sustain its burden to show that it could not have reasonably learned of the Groundsmaster or Hayter products before now.

> **2.      Toro Cannot Be Excused For Its Belated Reliance Upon Publicly-Available Canadian Patents.**

Toro's belated allegations pertaining to the two Canadian patents (Nos. 88 and 89) cannot be excused by the contention that they were allegedly "in the custody" of TII at a Charlotte warehouse facility.[6] These are both issued patents, readily available to the public, and Toro could have found them through a typical prior art search, including a simple and free internet search of government patent office web sites.

For example, a simple and free internet search of the Canadian Patent Office Database web site (www.opic.gc.ca) for "gang mower" reveals CA 1,141,177 (Gang Mower with Single Cylinder Lifting Mechanism), *see* Exhibit 7 (search results), and likewise a text search for "rotary" and "grass" reveals CA 1,115,067 (Rotary Grass Mowing Machines). *See* Exhibit 8 (search results). Indeed, Toro's initial prior art statement asserted more than a dozen such prior art patents from the United States, Britain, Australia, and even patent applications from South Africa. It is unreasonable for Toro to suggest that it required a search through a Charlotte warehouse facility to uncover these patents; there is no reason why Toro was unable before now to find these public patents from Canada that were readily available through an elementary

---

[6] Toro asserts that it "finished" its review of materials at the Charlotte warehouse facility on December 8. This characterization is highly misleading. On December 7, 2006, in response to Toro's contention that its ongoing review of documents in Charlotte would necessitate a six-month extension of the trial date, this Court directed Toro to "press ahead" and complete the review. The next morning, in contravention of the Court's direction, Toro suspended its review and pulled its team out of the facility, without having finished its review of the boxes it requested for examination. When TII pressed for an explanation, Toro first stated that it would seek to resume the document review at some indeterminate time in the future. Exhibits 5 and 6. When TII insisted that Toro either complete the review as the Court directed or allow TII to complete the review itself, Toro then agreed that TII could complete the review although, remarkably, Toro purported to "reserve its right" to search the facility again.

-8-

internet search.

Toro's own counsel's web site (www.merchantgould.com/practice-iplinks.html) provides internet links to the search engines that provide coverage of Canadian patents. Exhibit 9. A five-minute search using the links on Toro's counsel's web site would have revealed the existence of these patents.

Accordingly, leave to amend should be denied with respect to the Canadian patents.

###    3.    Toro does not demonstrate why it should be granted leave to amend with respect to the Steiner Boom Mower and the 1992 "NEWSREEL" Magazine.

Other than the two publicly-available Canadian patents discussed *supra,* only two other references are argued by Toro to have been found in TII's custody, thereby ostensibly justifying Toro's belated amendment.  However, with respect to these two references — the Steiner Boom Mower (No. 90) and the Spring 1992 Jacobsen "NEWSREEL" Magazine (No. 91) — Toro does not even assert any relevance to them in its amended prior art claim charts.  *See* Exhibit 2 (Toro amended claim chart exhibits C and E).  As the Court will see, Toro does not even mention these two references in its amended claim charts.  Accordingly, leave to add these additional references should also be denied.

###    4.    Toro knew about the publicly-available Rodriguez patent before it filed its *original* prior art statement.

Toro admits that it has been aware of U.S. Patent No. 5,305,589 to Rodriguez, et al. ("Rodriguez") (No. 98), for nearly four months before filing this motion.  But as discussed *infra,* it is undisputed that Toro was aware of this reference long before that.  Moreover, again, this is an issued U.S. patent, readily accessible to Toro or anyone else through a free, simple internet search of the PTO web site (www.uspto.gov).  And as with the Canadian patents discussed *supra,* the web site for Toro's counsel provides a link to this web site where the patent could

-9-

easily have been found. Exhibit 9. Accordingly, leave to amend should be denied with respect to Rodriguez.

Toro's contention that it could not have earlier found the Rodriguez patent is particularly ironic given that ***Toro itself cited this patent as prior art in several of its own patent applications***. Specifically, Rodriguez was cited in U.S. Patent No. 6,910,324 B2 (assigned to Toro), U.S. Patent No. 5,987,863 (assigned to Exmark Mfg. Co., a Toro subsidiary), and U.S. Patent No. 5,845,475 (same). *See* Exhibits 10-12. Thus, by the logic of Toro's own arguments made in this case, it must be deemed to have been long aware of Rodriguez.[7]

And although this demonstrates Toro's awareness of Rodriguez in September, Toro did not, however, ask leave to amend its prior art statement. Even though TII pointed out in opposing Toro's motion for leave to amend its answer that Toro had not even alleged that Rodriguez was relevant prior art, Toro still did not then allege Rodriguez was relevant to invalidity and seek to amend its prior art statement.

Accordingly, Toro fails in its burden to show that it could not have alleged Rodriguez as prior art before now.

In addition, as discussed *supra,* and notwithstanding Toro's characterization of Rodriguez as a supposedly "important" reference, Toro does not even cite it or explain any relevance to it in its amended prior art claim charts. In fact, the Rodriguez patent does not pertain to an arrangement for a gang-type rotary mower, but rather to a mulching deck designed to handle tall, thick grasses and weeds. (Rodriguez, Abstract (Toro No. 92 to Ex. 3)).

---

[7] In September 2006, Toro filed its motion for leave to file a third amended answer and counterclaim to allege, *inter alia,* that the inventor committed inequitable conduct by failing to cite the Rodriguez patent during prosecution of the patents-in-suit. This supposed inequitable conduct stemmed from the fact that Toro had determined the inventor had cited Rodriguez to the PTO during prosecution of a different unrelated patent application.

#8251426 v1

**5.    Toro fails to demonstrate that it could not reasonably have located the additional references before now.**

With respect to the other five alleged prior art references (Nos. 93, 94, 95, 96, and 99), Toro likewise does not demonstrate that it could not reasonably have located these references before now.  Instead, Toro simply provides the Court with an unsupported recitation of *when* it actually found the references.  But *when* Toro found the references is not the pertinent question under the Scheduling Order; rather, the question is whether Toro could not reasonably have found the references before now.

This case has been pending since July 2005, and Toro almost immediately alleged that the patents-in-suit were invalid.  This Court adopted a Scheduling Order in February 2006 requiring Toro to serve its prior art statement in June 2006.  Toro offers no compelling reason why it took seventeen months from the service of this lawsuit to find and assert these five alleged prior art references.  As noted *supra,* in the Minnesota action in which Toro is the patentee, Toro argued that it is incumbent on an accused infringer to have gathered the prior art by the time it files its answer, and that a period of seven months from the filing of a complaint is adequate time in which to uncover any additional prior art.  Exhibit 1 at 2.  Accordingly, the Court should deny Toro's motion.

**C.    Toro Does Not Sustain Its Burden To Show That It Will Be Prejudiced By Denial Of The Motion And That TII Will Not Be Prejudiced If The Motion Is Granted.**

Toro also fails to sustain its burden under the Scheduling Order to show that it will be prejudiced if leave to amend is denied, and that TII will not be prejudiced if leave to amend is granted.  As noted above, Toro does not demonstrate that its newly-found art is not cumulative.  And in particular, Toro does not even allege any particular relevance for ten of the twelve new references.  Accordingly, no prejudice can befall Toro if leave to amend is denied.  Moreover,

-11-

any prejudice to Toro would be of its own making for having failed to undertake reasonable effort to find these references (particularly those involving issued patents and Toro's own products) in a timely manner.

TII, on the other hand, will be unfairly prejudiced if leave is granted. Toro asserts that TII cannot be prejudiced because 35 U.S.C. § 282 requires only that prior art be disclosed thirty days before trial. Toro Br. at 10. This contention ignores well-settled law (as well as Toro's own arguments in the Minnesota action) providing that the Court's Scheduling Order and the discovery rules trump this statutory provision, rendering it only a mandatory *minimum* notice period for disclosure of prior art. *ATD Corp. v. Lydall, Inc.,* 159 F.3d 534, 550-51 (Fed. Cir. 1998). The statute does not provide a maximum period of time for disclosure of prior art before trial, nor does it in any way excuse Toro from complying with the Court's Scheduling Order and other discovery obligations. *Id.*

Toro also contends that it produced the various prior art documents to TII prior to filing this motion, but that does not rule out prejudice to TII. TII is already defending against eighty-seven alleged prior art references. Toro now seeks to hide the ball even further by expanding its prior art list to ninety-nine at the end of the discovery period. Yet Toro does not even explain in its mandatory claim charts how most of these references are even relevant.

This Court recently noted that a "party is unduly prejudiced if amendment would cause surprise, result in additional discovery, or add costs in the preparation to defend against new facts or theories." *Inline Connection Corp. v. AOL Time Warner Inc.*, 2006 WL 2440822, *9, n. 75 (D. Del. Aug. 23, 2006) (attached as Exhibit 13) (quoting *Amquip Corp. v. Admiral Ins. Co.,* 231 F.R.D. 197, 1999 (E.D. Pa. 2005)). That is certainly the case here. If Toro's motion is granted, TII will have to defend against undisclosed theories involving twelve additional prior art

references, and take additional discovery with respect to those references. TII should not be distracted from concluding legitimate discovery and preparing for trial by having to defend against these untimely allegations.

## IV.     CONCLUSION

For the foregoing reasons, TII respectfully requests that the Court deny Toro's untimely motion to amend its prior art statement.[8]

---

[8] Under the Scheduling Order, TII is required to respond to Toro's prior art statement. Accordingly, if the Court determines to grant Toro's motion, TII respectfully requests that the Court grant it leave to file an amended response to Toro's amended prior art statement.

#8251426 v1

Dated:  January 10, 2007

Respectfully submitted,

TEXTRON INNOVATIONS, INC.

By:      /s/ Edmond D. Johnson
       Edmond D. Johnson (DE Bar #2257)
       Thomas H. Kovach (DE Bar #3964)
       Pepper Hamilton LLP
       1313 Market Street, Suite 5100
       P.O. Box 1709
       Wilmington, DE 19899-1709
       (302) 777-6539
       Fax: (302) 421-8390


OF COUNSEL:

Scott L. Robertson
Christopher C. Campbell
**HUNTON & WILLIAMS LLP**
1900 K Street, N.W.
Washington, D.C. 20006-1109
Telephone:  (202) 955-1500
Facsimile:   (202) 778-2201

**Attorneys for Plaintiff**
**TEXTRON INNOVATIONS INC.**

-14-

## CERTIFICATE OF SERVICE

I, Edmond D. Johnson, hereby certify that on the 10th day of January, 2007, I

caused a true and correct copy of the foregoing Plaintiff Textron Innovations Inc.'S Brief In

Opposition To Defendant's Untimely Motion For Leave To Amend Prior Art to be filed with the

Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the

following:

> Richard L. Horwitz, Esquire
> David E. Moore, Esquire
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza, 6th Floor
> 1313 N. Market Street
> Wilmington, DE  19899-0951

Via E-mail upon:

> Earl D. Reiland, Esquire
> Thomas R. Johnson, Esquire
> Thomas J. Leach, Esquire
> MERCHANT & GOULD P.C.
> 3200 IDS Center
> 80 South 8th Street
> Minneapolis, MN  55402

> /s/ Edmond D. Johnson
> Edmond D. Johnson (DE Bar #2257)

#8251496 v1