**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TEXTRON INNOVATIONS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 05-486 (GMS) |
| | ) | |
| THE TORO COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF TEXTRON INNOVATIONS INC.'S BRIEF IN OPPOSITION TO
DEFENDANT'S UNTIMELY MOTION FOR LEAVE TO FILE A SECOND AMENDED
PRIOR ART STATEMENT (FILED FEBRUARY 21, 2007)**

Edmond D. Johnson (No. 2257)
Thomas H. Kovach (No. 3964)
PEPPER HAMILTON LLP
1313 Market Street, Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: (302) 777-6500

Of Counsel:
Scott L. Robertson
Christopher C. Campbell
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109
Telephone: (202) 955-1500

*Attorneys for Plaintiff
Textron Innovations Inc.*

Dated: March 7, 2007

#8383290 v1

I.    **INTRODUCTION**

Plaintiff Textron Innovations Inc. ("TII") respectfully requests that the Court deny defendant The Toro Company's ("Toro") amended and second belated motion for leave to amend and expand its prior art statement in order to allege a total of 108 prior art references. Toro's motion is yet another of its ongoing efforts to prolong discovery in this case. Toro's motion comes almost nine months after Toro's mandatory prior art statement was due under the Scheduling Order. Moreover, Toro did not file its motion until *after* expert reports were served, and only one week before the close of all discovery. In particular, Toro's expert report regarding invalidity was served on January 26, 2007, and TII's opposition report was served on February 20, 2007. As a result, TII will be unfairly prejudiced, as it will have to defend against these references after having been denied discovery with respect to them.

Further, Toro does not sustain its burdens under the Scheduling Order to show that this new prior art is material, not merely cumulative, and that Toro could not reasonably have located it earlier. Toro does not even attempt to show relevance or non-cumulativeness for the new references as required by this Court's Scheduling Order. Moreover, Toro's motion is not justified by its January document review at the facility of third party Commercial Grounds Care ("CGC"). One of the nine prior art references Toro seeks to add to the case was produced to Toro no later than November 2006. As the Court may recall from the conference it conducted on January 11, 2007, Toro issued a subpoena upon CGC in October 2006, but then failed to follow up after CGC objected to the breadth of that subpoena. It was not until after the January 11, 2007 discovery conference that Toro pursued its three-month old subpoena, which eventually resulted in Toro receiving responsive documents from CGC on location on January 31, 2007.

Accordingly, TII respectfully requests that the Court deny Toro's motion and enforce the Scheduling Order to which the parties stipulated and which the Court adopted.

## II.    FACTUAL BACKGROUND

### A.    The Proceedings To Date

This patent infringement action has been pending for nearly 20 months.  More than nineteen months ago, Toro first alleged invalidity of the patents-in-suit on August 15, 2005, when it filed a "mirror image" action against TII in the United States District Court for the District of Minnesota, requesting a declaratory judgment that TII's patents-in-suit in this case were invalid.

### B.    This Court Adopted A Scheduling Order That Restricted Toro's Ability To Amend Its Prior Art Statement.

On February 7, 2006, this Court adopted the Scheduling Order for this case.  (D.I. 40.) This Court's Scheduling Order mandated that Toro serve its prior art statement on June 1, 2006. This Court imposed within the Scheduling Order a specific set of restrictions on Toro's right to amend its prior art statement.  The Court adopted these restrictions after learning that Toro had insisted upon these very same restrictions in another case in which Toro was the plaintiff-patentee, and Textron Inc. was the accused defendant.  In that case, Toro strenuously resisted any departure from these provisions, contending that such restrictions on a defendant's right to amend its prior art statement were necessary in order to avoid "improper sandbagging litigation tactics."  Exhibit 1 at 1.[1]

Thus, the pertinent provision of the Scheduling Order for this case provides:

Amendments to the parties' Prior Art Statements can be made only by leave of Court, upon a showing:

---

[1] Toro further argued that it was incumbent on an accused infringer to have already gathered the prior art in order to have a good faith basis to allege invalidity in its answer, and that *a period of seven months from the filing of a complaint* was adequate time in which to find any additional prior art.  *Id.* at 2.

Defendant:

(a) that it *was not and could not reasonably have been located earlier* by defendant; and

(b) that it is *not merely cumulative* of prior art already listed, and

(c) how defendant will be prejudiced if leave is denied, and plaintiff will not be prejudiced if leave is given.

Scheduling Order adopted by Court on February 7, 2006 ("Scheduling Order") (emphasis added).

As discussed *infra,* these provisions place the burden on Toro to show that all of the requisite conditions are met.

On December 22, 2006, Toro filed its first motion for leave to amend its prior art statement to add twelve new alleged prior art references in addition to the eighty-seven references Toro had asserted with its original prior art statement. At that time, Toro stressed that ample time remained for discovery and expert reports had not yet been served. The Court granted that motion on January 22, 2006. On approximately that same date, the parties stipulated to an expert report schedule that provided for initial "burden of proof" expert reports to be served on January 26, 2007, with opposition reports served on February 20, 2007. At Toro's recommendation — due to the compressed schedule resulting from discovery already having been twice extended (and now extended a third time in order that Toro may take another "prior art" deposition) — TII agreed that the parties would not serve "reply" expert reports.

Toro now moves to amend its prior art statement for a second time, only this motion has been filed after the dates for serving expert reports pursuant to the stipulated amended scheduling order, and only one week before the close of all discovery. As required by the stipulation, Toro's expert report regarding invalidity was served on January 26, 2007, and TII's expert report opposing Toro's invalidity report was served on February 20, 2007.

### III.    ARGUMENT

Toro does not meet its burdens under the Scheduling Order to justify amending its prior art statement for a second time. First, Toro makes no effort whatsoever to show how these references are material and not merely cumulative of those it has already asserted. In fact, Toro does not even bother to provide amended invalidity claim charts in order to show how any of the nine new references invalidate any asserted claims, as required by the Scheduling Order. Accordingly, Toro's request fails to meet the requirements of at least two separate provisions of this Court's Scheduling Order.

Second, Toro fails to show that it could not have located these nine new references earlier. The CGC document production to which Toro refers was delayed by Toro, as was discussed at this Court's January 11, 2007 discovery conference. Toro chose not to follow-up with CGC regarding its October 2006 subpoena after CGC appropriately objected to the breadth of the subpoena. Had Toro promptly followed up with CGC and negotiated a document review of reasonable scope (as it eventually did), it could have had access to these documents months ago. Finally, Toro does not show how it will be prejudiced if leave to amend is denied; TII, on the other hand, will be unfairly prejudiced if leave to amend is granted at this late stage of the case after expert reports have already been served and discovery has closed.

> **A.    Toro Does Not Sustain Its Burdens To Show How The New "Prior Art" Invalidates Any Claim And Why The Art Is Not Merely Cumulative Of Prior Art Already Listed.**

Toro does not even attempt to meet its burdens under the Scheduling Order to show that the nine new prior art references are material and not cumulative to the art already alleged in this case. This Court's Scheduling Order requires that Toro's prior art statement provide "*a complete and detailed explanation of what [Toro] alleges the prior art shows and how that prior art invalidates the claim(s)* asserted by plaintiff ('Defendant's Prior Art Statement')." Scheduling

Order at 3 (emphasis added).  In addition, in order to amend its prior art statement, Toro is required to show that this new art is not merely cumulative of prior art already listed.  *Id.*

Toro has not amended its prior art statement claim charts to make any allegations with respect to the relevance, materiality or non-cumulativeness of these new references.  Instead, Toro simply adds the references to its laundry list that now exceeds 100 alleged references.  *See* Exhibit 2 (Toro redline of Second Amended Prior Art Statement).[2]  Toro provides no explanation as to how the references allegedly invalidate the elements of the asserted claims.  Moreover, Toro's invalidity expert did not disclose or discuss any of these references in his January 26, 2007 report.[3]  Thus, with discovery now closed, Toro has not provided ***any*** disclosure as to how it believes these references are relevant or how they invalidate any of the asserted claims.  Toro's lack of disclosure fails to comply with its obligations under the Scheduling Order.

Accordingly, for the nine new references, Toro fails to meet its burdens under the Scheduling Order to show that this art is not merely cumulative to that already in the case, and moreover it fails to disclose how this art is even relevant to its invalidity contentions.

**B.    Toro Does Not Sustain Its Burden To Show That The "New Prior Art" Was Not And Could Not Reasonably Have Been Located Earlier.**

The Court's Scheduling Order specifically requires that Toro show that any prior art disclosed after June 1, 2006, was not and could not reasonably have been located earlier.  Toro does not even attempt to make that showing.  Instead, Toro again attempts to blame its late

---

[2] The Court will note that the prior art statement refers to claim charts attached as exhibits.  *Id.* at 4.  Toro has not amended these claim charts to reflect the relevance of the nine new references.

[3] TII notes that Toro filed an improper "supplemental" expert report of its invalidity expert on February 27, 2007, one day before discovery closed, without even requesting leave of Court.  Even that improper supplemental expert report addressed only ***one*** of the nine new references.

disclosure on TII, but its contentions are hollow. First, Toro omits to mention, or apparently has overlooked, that TII produced prior art reference number 105 (Ransomes 250 Lightweight Fairway Mower) no later than November 27, 2006. *See* Exhibit 3 (cover letter producing documents with attached brochures). There is no excuse for Toro to wait until the close of discovery to allege that this reference constitutes invalidating prior art.

And Toro, not TII, caused the delay in pursuing the Toro subpoena of the CGC facility. The Court addressed this issue at the January 11, 2007 discovery conference, at which time the Court was informed that Toro had served a subpoena *duces tecum* upon CGC in October 2006. Exhibit 4 (Tr. of January 11, 2007 (excerpts)). Toro failed to follow-up with respect to that subpoena after CGC understandably objected to its breadth. It was only after this Court at the January 11, 2007 discovery conference urged Toro to pursue its own subpoena that Toro did so. *Id.* at 12 (The Court: "I think you need to prosecute a motion to compel in Wisconsin, Mr. Zeuli. I am not going to tell you how to practice law.").

Once Toro contacted CGC and narrowed its subpoena to a more reasonable scope, it was able to review the CGC documents within days. And Toro provides no explanation why it then waited another three weeks, until February 20, 2007, to move to amend its prior art statement.

Toro states, without citation, that it had been "very specific in requesting from Textron information about rotary mowers having rollers, that predate the invention," and therefore argues that TII should have uncovered and produced the new references before it sold the CGC facility in the Summer of 2006. Toro's argument is inaccurate. Prior to the sale of the Johnson Creek facility to CGC, Toro had not served document requests that identified alleged prior art with any specificity; and of course, Toro's prior art statement of June 2006 had not identified any of these

nine alleged prior art references to TII.[4]  Accordingly, TII had no reason to search for these specific documents during its search at the Johnson Creek facility.  Moreover, only one of these references had even a remote connection with the Textron family of companies, namely, the Ransomes 250 Light Fairway Mower, and that reference was in fact produced by TII to Toro in November 2006.  *See supra* at 6.

Finally, this case has been pending since July 2005.  Toro first asserted invalidity in August 2005.  Allegedly invalidating "prior art" publications are, by definition, non-confidential information, generally available through publicly-accessible sources.  Eight of the nine references pertain to products that have no connection to TII.  Exhibit 2 at 1-3 (references numbered 100-104, 106-108).  There is no reason why Toro should have delayed, believing TII was responsible for conducting Toro's search for publicly-available prior art, and Toro offers no compelling reason why it took nineteen months from the service of this lawsuit to find and assert these nine alleged prior art references.[5]  Toro has a vast array of competitive prior art product literature.  Yet Toro would seem to have the Court believe that TII is the sole repository for documents pertaining to other companies' products.

---

[4] The document request to which Toro apparently refers (No. 132), was not served until late September, one month *after* the sale of the facility to CGC.  *See* Exhibit 5 (Toro Doc. Request No. 132 served Sept. 21, 2006); Exhibit 6 (August 21, 2006 press release announcing sale to CGC).

[5] As noted *supra,* in the Minnesota action in which Toro is the patentee, Toro argued that it is incumbent on an accused infringer to have gathered the prior art by the time it files its answer, and that a period of seven months from the filing of a complaint is adequate time in which to uncover any additional prior art.  Exhibit 1 at 2.

**C.     Toro Does Not Sustain Its Burden To Show That It Will Be Prejudiced By Denial Of The Motion And That TII Will Not Be Prejudiced If The Motion Is Granted.**

Finally, Toro fails to sustain its burden under the Scheduling Order to show that it will be prejudiced if leave to amend is denied, and that TII will not be prejudiced if leave to amend is granted. As noted above, Toro does not even make an effort to demonstrate that its newly-found art is not cumulative. Likewise, Toro's amended prior art statement does not set forth the alleged relevance of any of the nine new references. Toro's own expert witness has not rendered an opinion with respect to eight of the nine references. It is manifest that Toro cannot be prejudiced by denial of the motion if the prior art is not relevant or if it is merely cumulative. Accordingly, no prejudice is occasioned upon Toro if leave to amend is denied. Moreover, any prejudice to Toro would be of its own making for having failed to pursue its subpoena of CGC in a timely manner.

TII, on the other hand, will be unfairly prejudiced if leave is granted. Toro's motion comes after the service of TII's invalidity rebuttal expert report and only one week before the close of all discovery. Toro has avoided providing any disclosure of the relevance of these references through either its prior art statement or its own expert reports. Toro's invalidity expert, Dr. O'Keefe, did not render any opinion about any of these references in his initial expert report, and he rendered an opinion only with respect to reference number 100 in an improper "supplemental report" served without leave of Court on February 27, 2007, one day before the close of discovery. Accordingly, TII is in the position of defending against these references without any disclosure as to which elements of which claims these prior art references supposedly correspond.

TII is already defending against ninety-nine alleged prior art references. The Court should not countenance Toro's attempt to hide the ball even further by expanding its prior art list

to 108 after the service of relevant expert reports and at the very end of the discovery period.

This Court recently stated that a "party is unduly prejudiced if amendment would cause surprise, result in additional discovery, or add costs in the preparation to defend against new facts or theories." *Inline Connection Corp. v. AOL Time Warner Inc.*, 237 F.R.D. 361, 370, n. 75 (D. Del. 2006) (quoting *Amquip Corp. v. Admiral Ins. Co.*, 231 F.R.D. 197, 1999 (E.D. Pa. 2005)). That standard is certainly met here; indeed, this is a quintessential instance of "litigation by ambush." If Toro's motion is granted, TII will have to defend against undisclosed theories involving nine additional prior art references, yet it has been effectively denied discovery with respect to those references. TII should not have to defend against these untimely and undisclosed allegations at trial.

## IV.    CONCLUSION

For the foregoing reasons, TII respectfully requests that the Court deny Toro's untimely second motion to amend its prior art statement.

Dated:  March 7, 2007

By: _____
Edmond D. Johnson (No. 2257)
Thomas H. Kovach (No. 3964)
PEPPER HAMILTON LLP
1313 Market Street, Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: (302) 777-6500

OF COUNSEL:

Scott L. Robertson
Christopher C. Campbell
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109
Telephone:  (202) 955-1500

Attorneys for Plaintiff
TEXTRON INNOVATIONS INC.