# EXHIBIT 4

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                          - - -

 4   TEXTRON INNOVATIONS INC.,      :    Civil Action
                                    :
 5              Plaintiff,          :
                                    :
 6        v.                        :
                                    :
 7   TORO COMPANY,                  :
                                    :
 8              Defendant.          :    No. 05-486-GMS

 9                          - - -

10                    Wilmington, Delaware
                      Thursday, January 11, 2007
11                         9:30 a.m.
                       Telephone Conference
12
                            - - -
13
     BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.
14
     APPEARANCES:
15
              EDMOND D. JOHNSON, ESQ.
16            Pepper Hamilton LLP
                    -and-
17            SCOTT L. ROBERTSON, ESQ.
              Hunton & Williams
18            (Washington, D.C.)

19                              Counsel for Plaintiff

20            RICHARD L. HORWITZ, ESQ., and
              DAVID E. MOORE, ESQ.
21            Potter Anderson & Corroon, LLP
                    -and-
22            ANTHONY R. ZEULI, ESQ., and
              THOMAS LEACH, ESQ.
23            Merchant & Gould
              (Minneapolis, Minnesota)
24
                                Counsel for Defendant
25
```

```
 1              Then I am turning to Page 25, and I say, "One
 2   question and clarification.  I was suggesting that Mr.
 3   Robertson make available to us the Johnson Creek facility
 4   and the Charlotte facility."
 5              Your Honor said, "I think he said that he is
 6   willing to do that."
 7              On Page 26 finally the Court says, "But I am
 8   going to require that you" -- and you are referring to
 9   Textron" -- "make every effort to have your client arrange
10   access."
11              THE COURT:  Let's find out from Textron why that
12   hasn't been done.
13              MR. ROBERTSON:  Your Honor, thank you.
14              It has been done, sir.  Let me tell you the
15   efforts that have been made.
16              Just to refresh the Court, you recall, we no
17   longer control this company.  It is now a new company called
18   I think Commercial Grounds Care.  It is not under our
19   control.  It is not owned by us.  What we did shortly after
20   that call is called our point of contact there, a gentleman
21   by the name of Mark Wegner, again, no longer our employee,
22   and said, look, we would like to gain access to this
23   facility to make it available for an inspection.
24              Your Honor may also recall, we already inspected
25   it and produced responsive documents.  But notwithstanding
```

1  that, we made that effort.

2         Shortly thereafter, we understood, or we had
3  learned that Mr. Zeuli had also issued a subpoena to
4  Commercial Grounds Care, the scope of which is breathtaking.
5  Anyway, we contacted Commercial Grounds Care's in-house
6  counsel. The first thing she said, Your Honor, was do not
7  have any further contact with my employees. I am the
8  attorney on this matter. You will deal with me.

9         My partner, Chris Campbell, has had multiple
10 conversations with her, attempting to try and facility that
11 access.

12        She is attempting to deal with the subpoena.
13 And I understand she has had conversations with Mr. Zeuli
14 about the scope and breadth of the subpoena. She secured an
15 extension from Mr. Zeuli, I understand, until January 7.
16 And in the meantime, she filed objections to the subpoena.
17 She has told us that the subpoena calls virtually for every
18 piece of paper that that company has. I am just stunned at
19 the scope. We have attempted to get in there. In-house
20 counsel told us not to deal with anybody at the company
21 anymore and to deal with her.

22        We have been dealing with her, and we understood
23 she was responding to the subpoena.

24        Mr. Zeuli had represented more than a month ago
25 that he would narrow the scope of the subpoena and tell her

1  exactly what he was looking for. We understand to date he
2  hasn't made any effort to do that.
3          We are at loggerheads, Your Honor. I can't
4  control access to a company that is not owned by my company.
5          THE COURT: No, you can't.
6          MR. ROBERTSON: And we, as I said, Your Honor,
7  made an inspection of that facility ourselves and produced
8  documents. As Your Honor knows, we made the 6,000 files
9  available down in Charlotte for the inspection. The Court
10 at the last hearing urged Mr. Zeuli to press on with that
11 inspection. I can report that the very next day Mr. Zeuli
12 and his team left the facility at 11:00 a.m., didn't
13 complete the inspection, and then when we asked him when he
14 was coming back to complete the inspection, if they would to
15 be back Monday, they said no. Would they be back next week?
16 They said they couldn't tell us.
17         We told Mr. Zeuli we would complete the
18 inspection for him. I sent a team down that following
19 Monday and searched through the remaining 6,000 documents
20 and produced responsive documents.
21         Your Honor, I am a little frustrated here in the
22 sense we seem to be doing everything we can in our power to
23 provide documents for these individuals, and all we get is
24 more complaints.
25         Commercial Grounds Care has a subpoena. They

```
 1   have objected.  If Mr. Zeuli wants to do what he promised to
 2   do and narrow the request, then I think he will get
 3   responsive documents from it.  But at this point it is
 4   really out of our control, sir.
 5           THE COURT:  Mr. Zeuli, I am satisfied that
 6   Textron has done what it can do with regard to the first
 7   bullet point.  What efforts are you making to deal with the
 8   new entity, Commercial Grounds, to get your needs met?
 9           MR. ZEULI:  Your Honor, could you repeat the
10   last part?
11           THE COURT:  I am asking what additional efforts
12   are you making, I think it was Mr. Johnson?
13           MR. ROBERTSON:  Mr. Robertson.
14           THE COURT:  Mr. Robertson reports he believes
15   you to be in contact directly with Commercial Grounds, their
16   attorney, regarding the scope of your subpoena.  Are you
17   engaged in ongoing efforts to get your needs met?  Because
18   at this point I don't know what else you would have the
19   Court order Textron to do.
20           MR. ZEULI:  I would ask that they comply with
21   the order that Your Honor entered back in November.
22           THE COURT:  How exactly would you have them --
23   how would you craft that additional relief?
24           MR. ZEULI:  I think what I would have, Your
25   Honor, is that Textron is required to facilitate through
```

1  discussions with the in-house counsel at Commercial Grounds
2  Care an inspection. Mr. Robertson never said, and I don't
3  believe he ever asked for, the inspection that was
4  discussed, agreed to and ordered in November.
5           THE COURT: Is that correct, Mr. Robertson?
6           MR. ROBERTSON: No, it is not correct, Your
7  Honor. First, Your Honor, in fact, we have so pestered this
8  in-house counsel, Vickie Waitsman, she said she doesn't want
9  to deal with us anymore. She will only talk to my in-house
10 counsel at Textron.
11          Just as an aside, but this is very relevant,
12 there has been a dispute going on about the sale and
13 acquisition of that facility between the two companies. So,
14 really, Commercial Grounds Care is not out to do us any real
15 favors, notwithstanding that we have been urging them to
16 make documents available or facilitate the inspection. As I
17 said, my partner, Chris Campbell, has had numerous calls and
18 e-mails with her to the point where she has now said I am
19 not going to deal with you anymore, I will only deal with
20 Textron in-house counsel.
21          THE COURT: The facility is no longer in the
22 control of the plaintiff.
23          MR. ROBERTSON: Exactly right.
24          THE COURT: It was part of a sale.
25          MR. ROBERTSON: Yes, sir.

1    MR. ZEULI: Your Honor, that sale occurred
2    recently, in August. That was after the discovery was
3    served. That was discussed at length in our November
4    conference.
5         Similarly, the in-house counsel, after she was
6    contacted by Textron, I believe stopped returning my calls
7    for a month at Commercial Grounds Care.
8         So at the end of the day, Your Honor, we had
9    resolved this in November, I believe. They never
10   facilitated the inspection or helped us get the documents
11   that are there. Now they are saying, sorry, we can't do
12   anything, it is not in our control anymore.
13        THE COURT: I have representations from an
14   officer of the Court, Mr. Zeuli, that he did make reasonable
15   efforts -- my word, reasonable -- because they sound like
16   they were reasonable, to comply with the Court's order.
17   What would you have me do? Sanction them? Because right
18   now, as I understand it, he has no standing to ask me to
19   order this third party to do anything. I don't have the
20   power, as I understand the limits of my authority, to do
21   that, do I?
22        MR. ZEULI: Is there something in the order,
23   Your Honor, that we can put that will help me in the event
24   that Commercial Grounds Care says, no, we are not going to
25   let Toro come in and look at the documents?

```
 1            THE COURT:  What district is this in, Johnson
 2   Creek, North Carolina?
 3            MR. ROBERTSON:  It is in Wisconsin, Your Honor.
 4            The subpoena issued, Your Honor, in Pennsylvania
 5   I believe, in Pittsburgh.  Of course, Mr. Zeuli could always
 6   move to compel on the subpoena and a judge with the proper
 7   authority could order Commercial Grounds Care to do whatever
 8   it thinks is reasonable.
 9            THE COURT:  This will end up being a
10   miscellaneous matter on some District Judge's docket who had
11   no idea it was coming.  In any event, it would at least be
12   properly within the power of that Court to act
13   constitutionally within the bounds of appropriate
14   discretion.  I can't do anything out in Wisconsin, I don't
15   think.
16            MR. ZEULI:  Can you give us some help in this
17   order, in an order, so that when we went into that judge we
18   could say, look, we have an order from the Court in Delaware
19   saying that we should have had access to this earlier and
20   didn't, and therefore it looks --
21            THE COURT:  I don't want to make it seem as if
22   Mr. Robertson and company withheld access.  That is not my
23   conclusion.  If you and he can agree on some order that you
24   think might help one of my colleagues decide this matter
25   quickly and you can come up with some language that is
```

1  satisfactory to both of you, I will sign it. But as you
2  know, it's without any legal -- it is not going to have any
3  legal impact out there in Wisconsin.
4        MR. ZEULI: Are you agreeable to that, Scott?
5        MR. ROBERTSON: Your Honor, your order said they
6  are going to require me to make every effort to have your
7  client arrange access to the Johnson Creek facility.
8        Coupled with that, you said the representation
9  that you searched Johnson Creek yourself pursuant to your
10 obligation under the Federal Rules, that should be adequate.
11       I have done that, Your Honor. Now there is a
12 process, Mr. Zeuli wants to pursue the subpoena with
13 Commercial Grounds Care, he should go ahead and do that.
14       THE COURT: I am not ordering you to do anything
15 else, Mr. Robertson. I offered a possible solution to Mr.
16 Zeuli's apparent problem.
17       I think you need to prosecute a motion to compel
18 in Wisconsin, Mr. Zeuli. I am not going to tell you how to
19 practice law.
20       MR. ZEULI: I will do that.
21       THE COURT: Let's go to the second issue.
22       MR. ZEULI: Similarly, from the November
23 conference call, Your Honor, you had directed Textron to
24 identify the individuals that might have had access to or
25 generated certain prior art.