**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TEXTRON INNOVATIONS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 05-486 (GMS) |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| THE TORO COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**THE TORO COMPANY'S MEMORANDUM IN SUPPORT OF
ITS MOTION TO STAY LITIGATION PENDING DETERMINATION
OF ITS REQUESTS FOR REEXAMINATION BY THE
U.S. PATENT OFFICE AND FOR EXPEDITED TREATMENT**

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant The Toro Company*

OF COUNSEL:

Earl D. Reiland
Anthony R. Zeuli
Thomas J. Leach
MERCHANT & GOULD P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 332-5300

Dated: March 23, 2007
785375 / 29362

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................... ii

BACKGROUND ......................................................................................4

ARGUMENT ..........................................................................................7

I.      STAYS ARE WITHIN THE DISCRETION OF THE COURT ............................7

II.     THE TEST APPLIED BY THIS COURT FAVORS GRANTING
        A STAY IN THIS CASE....................................................................8

        A.      A Stay Will Not Unduly Prejudice Textron Because Both
                Parties Will Benefit From The PTO's Expertise. .........................8

                1.      Textron Invoked The Patent Statute Which Supports
                        A Stay................................................................9

                2.      This Case Has Not Run A "Protracted Course."..............9

                3.      The Parties Expenses To Date Is Not Undue
                        Prejudice. ..........................................................10

                4.      Textron Delayed More Than 6 Years In Bringing
                        This Action........................................................10

                5.      Textron Owned Or Knew Of Much Of The New
                        Prior Art ...........................................................11

                6.      Plaintiff Makes No Products – Money Damages Are
                        Adequate ...........................................................11

        B.      A Stay Will Promote Judicial Economy By Either
                Removing The Entire Case Or Reducing The Issues.................11

                1.      Claims That Survive Reexamination Are Likely To
                        Be Different .......................................................12

                2.      Toro Will Be Bound By The PTO's Validity
                        Decisions...........................................................13

                3.      Reexamination Benefits Both Parties And The
                        Court ................................................................13

4.   The Supreme Court May Change The Obviousness Test ......................................................................................14

5.   Reexaminations Have Been Beefed Up At The PTO ....................14

C.   A Stay Is Justified Even Though Discovery Is Complete And A Trial Date Has Been Set Because Significant Work Remains ..............................................................................................15

1.   Toro Could Not Have Reasonably Filed Its Requests Any Earlier ..................................................................16

2.   Toro Was Diligent In Finding Prior Art And Dating It ..........................................................................................16

CONCLUSION ............................................................................................1

# TABLE OF AUTHORITIES

CASES

*Abbott Diabetes Care Inc. v. Dexcom, Inc.,*
C.A. No. 05-590-GMS 2006 U.S. Dist. LEXIS 57469
(D. Del. Aug. 16, 2006) ........................................................................................12

*Bloom Eng'g Co. Inc. v. N. Am. Mfg. Co., Inc.,*
129 F.3d 1247 (Fed. Cir. 1997)...........................................................................12

*Broadcast Innovation, L.L.C., v. Charter Commc'ns, Inc.,*
2006 U.S. Dist. LEXIS 46623 (D. Colo. July 11, 2006) .......................................15, 16

*Canady v. Erbe Elektromedizin GmbH,*
307 F. Supp. 2d 2 (D.D.C. 2004) ........................................................................16

*Cost Bros., Inc. v. Travelers Indem. Co.,*
760 F.2d 58 (3d Cir. 1985).................................................................................3, 7

*Emhart Indus. v. Sankyo Seiki Mfg.,*
3 U.S.P.Q. 2d 1889 (N.D. Ill. 1987) ................................................................2, 3, 7, 13

*Ethicon, Inc. v. Quigg,*
849 F.2d 1422 (Fed. Cir. 1988).............................................................................7

*Gioello Enters. Ltd. v. Mattel, Inc.,*
C.A. No. 99-375-GMS, 2001 WL 125340 (D. Del. Jan. 29, 2001).....................2, 3, 12

*Gonnocci v. Three M Tool & Machine,*
2003 U.S. Dist. LEXIS 24423 (E.D. Mich. Oct. 7, 2003) .......................................7, 16

*Gould v. Control Laser Corp.,*
705 F.2d 1340 (Fed. Cir. 1983)...........................................................................13

*Ingro v. Tyco Indus., Inc.,*
227 U.S.P.Q. (BNA) 69 (N.D. Ill. 1985) .................................................................13

*Landis v. North Am. Co.,*
299 U.S. 248 (1936)...........................................................................................3, 7

*Magna Donnelly Corp. v. Pilkington North America, Inc.,*
2007 U.S. Dist. LEXIS 17536 (W.D. Mich. Mar. 12, 2007).................................7, 11

*Middleton, Inc. v. Minn. Mining & Mfg. Co.,*
2004 U.S. Dist. LEXIS 16812 (S.D. Iowa Aug. 24, 2004).............................10, 11, 16

*Pegasus Dev. Corp. v. DirecTV, Inc.*,
  C.A. No. 00-1020-GMS, 2003 U.S. Dist. LEXIS 8052
  (D. Del. May 14, 2003) .................................................................................*Passim*

*Rohm & Haas v. Brotech Corp.*,
  C.A. No. 90-109-SLR, 1992 U.S. Dist. LEXIS 3252
  (D. Del. Mar. 11, 1992) ...................................................................................9

*Softview Computer Prods. Corp. v. Haworth, Inc.*,
  2000 U.S. Dist LEXIS 4254 (S.D.N.Y. 2000) ..............................................12

**STATUTES, RULES & REGULATIONS**

35 U.S.C. § 103 .........................................................................................14

35 U.S.C. § 305 .........................................................................................11

35 U.S.C. § 314(c) .....................................................................................11

35 U.S.C. § 315(c) ...................................................................................4, 13

35 U.S.C. § 316(b) .....................................................................................12

35 U.S.C. § 318 .........................................................................................3, 7

37 C.F.R. 1.502 ...........................................................................................1

37 C.F.R. 1.907(a) ......................................................................................17

37 C.F.R. 1.948 ............................................................................................1

Toro requests expedited treatment of its motion for a stay of this case in favor of Toro's recently filed requests for reexamination of <u>all</u> of the asserted claims of the patents-in-suit.[1] Toro filed its three requests for reexamination, two *inter partes* and one *ex parte*, on March 23, 2007, following the recent discovery of key prior art from Textron's former Johnson Creek facility and other prior art discovered during this litigation that was not previously before the United States Patent and Trademark Office ("PTO"). If Toro is correct and all of the asserted claims are unpatentable over the new prior art, this case is over. Toro could not have filed the requests for reexamination earlier because it did not have in its possession all of the printed prior art (and testimony dating that art) until a few days ago -- a reexamination cannot be amended to add additional art once it has been filed.[2] Toro requests that this motion be expedited because trial is a little more than three months away and the parties (and the Court) are about to commit considerable resources preparing for and trying this case, resources that would be wasted if the PTO invalidates or changes the claims, which the statistics below bear out. **Toro suggests 7 calendar days for Textron's response and 3 calendar days for Toro's reply.**

Although the PTO has up to three months in which to decide whether to grant the reexaminations, PTO statistics strongly suggest that the reexamination of all asserted claims will be granted. The PTO grants 95% of all *inter partes* reexamination requests and 91% of all *ex parte* requests (Ex. A).[3] It is also likely that the PTO will decide

---

[1] Toro is preparing reexamination requests for its own patents asserted against Textron in the Minnesota action. These additional requests should be filed soon. Toro will request a stay of that action too.

[2] 37 C.F.R. 1.948 (*inter partes*) and 37 C.F.R. 1.502 (*ex parte*) prohibiting additional prior art submissions after the reexamination order except for very narrow exceptions, such as rebuttal.

[3] Exhibit referenced herein, refer to the Declaration of David Moore In Support Of Toro's Motion To Stay filed herewith.

Toro's requests in 60 days or less. *See e.g., Gioello Enters. Ltd. v. Mattel, Inc.*, C.A. No. 99-375-GMS, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001) (PTO granted requests in 42 days) (Ex. B).

Courts have identified at least seven advantages that may result from a stay of litigation pending reexamination by the PTO – all are present, in some form, in this case: (1) all printed prior art presented to the Court will have been first considered by the PTO, with its particular expertise; (2) many discovery or evidentiary problems relating to prior art can be alleviated by the PTO examination; (3) in those cases resulting in effective invalidity of the patent, the suit will likely be dismissed; (4) the outcome of the reexamination may encourage a settlement without further use of the Court; (5) the record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the trial; (6) issues, defenses, and evidence will be more easily limited in pretrial conferences after reexamination; and (7) the cost will likely be reduced both for the parties and the Court. *Emhart Indus. v. Sankyo Seiki Mfg.*, 3 U.S.P.Q. 2d 1889, 1890 (N.D. Ill. 1987). (Ex. C.) This is a complicated case. Textron has asserted 30 claims from three patents. There are almost 100 prior art references, many never before the PTO. Toro's defenses include anticipation, obviousness, and violation of best mode. The new PTO central reexamination unit, with 20 highly skilled examiners, was designed to analyze just such issues. Moreover, the Supreme Court is considering a new obviousness test that could change the patent law just days before the trial in this case.

In contrast, not granting the stay would result in wasted resources. There is a great amount of work to be done in preparing this case and conducting an eight (8) day trial. Motions *in limine*, factual stipulations, legal stipulations, witness lists, exhibit lists, jury instructions, special verdict form, pretrial briefs, etc. all still need to be done by the parties and the Court, not to mention the lengthy trial itself. These resources will be wasted if the PTO invalidates or changes the claims-at-issue. In addition to the great expense of proceeding in parallel, the jury (or Court) and the PTO could reach

inconsistent results. *Gioello*, 2001 WL 125340 at *1. If the claims are amended during reexamination, intervening rights could significantly affect any damages owed, which may conflict with any awarded by the jury requiring a retrial. Further, much of the prior art relied on for the reexamination request was art owned by Textron or known to the inventors, but not submitted to the PTO. The PTO should have the opportunity to judge patentability based on the full prior art record.

Any prejudice to Textron is minimal and does not outweigh the many benefits listed above. Textron was aware of the accused products in 1999, but did not sue Toro for six years. Before suing Toro, the patents were transferred to the Plaintiff, an intellectual property holding company that does not make any products. Money damages are an adequate remedy. There have been no previous delays of the trial in this case and discovery has only lasted about 13 months. While Textron's "day in court" will be delayed (provided at least one claim survives unchanged), reexaminations are conducted with "special dispatch."

The decision to stay litigation is part of the inherent power of the Court to manage its docket. *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936); *see also Pegasus Dev. Corp. v. DirectTV, Inc.*, C.A. No. 00-1020-GMS, 2003 U.S. Dist. LEXIS 8052, at *3 (D. Del. May 14, 2003) (citing *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985).) (Ex. D.) Congress stated its approval of district courts liberally granting stays within their discretion based on reexaminations. *See Emhart Indus.*, 3 U.S.P.Q. 2d at 1890; *see also* 35 U.S.C. § 318 ("Stay of Litigation"). Two of Toro's requests for reexamination are *inter partes*.[4] Under the statute authorizing *inter partes* reexaminations, both Toro and Textron will be bound by the outcome of the *inter partes* reexamination proceedings, relieving the Court of the responsibility of dealing with

---

[4] Toro could not request *inter partes* reexamination of Textron's '530 patent based on its filing date.

printed prior art-related invalidity issues that were the subject of the two *inter partes*
reexaminations. 35 U.S.C. § 315(c).[5]

## BACKGROUND

This patent litigation involves three patents on gang-type rotary lawn mowers.
All three patents are related, and Mr. Richard Bednar is a named inventor on all three.
The first two patents, U.S. Patent Nos. 6,047,530 ("'530 patent") and 6,336,311 ("'311
patent") differ only in the claims. The third patent, U.S. Patent No. 6,336,312 ("'312
patent") added 17 new figures and several columns of new text, and also listed Mr.
Randal Knurr as an additional inventor. Each of the three patents focus on the use of rear
rollers as part of a rotary cutting deck assembly.

Plaintiff Textron, an intellectual property holding company that makes no
products, purports to own all three of the patents and filed suit against Toro on July 12,
2005. Discovery of the issues, including invalidity did not begin right away. Toro first
brought a motion to transfer this case to Minnesota which was denied by this Court on
October 14, 2005. On November 1, 2005, the parties stipulated to the dismissal of Toro's
declaratory judgment claims relating to the '530, '311 and '312 patents in the Minnesota
case. Toro then filed its First Amended Answer in this case on November 9, 2005,
adding counterclaims for a declaratory judgment of non-infringement, invalidity and
equitable estoppel.

---

[5] Section 315(c) states, in pertinent part:

> A third-party requester whose request for an inter partes reexamination
> results in an order under section 313 is estopped from asserting at a later
> time, in any civil action arising in whole or in part under section 1338 of
> title 28, the invalidity of any claim finally determined to be valid and
> patentable on any ground which the third-party requester raised or could
> have raised during the inter partes reexamination proceedings.

On February 7, 2006, the Court entered a scheduling order which set trial for June 25, 2007. The parties served written discovery, but before any documents were exchanged the parties agreed to stay formal discovery while they explored settlement options. During this period, Toro continued pursuing informal discovery from public sources and non-parties, but not from Textron. When settlement talks ended in early June 2006, Toro requested relevant prior art through discovery of Textron and also continued to pursue prior art from non-parties. As the Court is well aware, several prior art references were found late in discovery during the inspection by Toro of 6000 boxes discovered in Textron's Charlotte warehouse and the subpoena of Commercial Grounds Care, a company that purchased Textron's Johnson Creek facility during this litigation.

Toro worked diligently to gather all the prior art, both from Textron and non-parties. In doing so, it became clear, at least to Toro, that key prior art had not been before the PTO during the examination of the patents-in-suit – much of that prior art being Textron's own printed publications or prior art in the inventors' possession during the prosecution of the patents-in-suit. For example, the Middlesworth 72RR mower (a gang-type rotary mower having rear rollers) was discovered by Toro in a collection of prior art gathered by Textron, likely by the inventor, Mr. Bednar, and stored 30 feet from Mr. Bednar's office at Johnson Creek. Neither Mr. Bednar nor Textron provided the Middlesworth 72RR brochure to the PTO. Toro will do so in the reexaminations.

Similarly, Steiner, another Textron company at the time the patents-in-suit were in prosecution had at that time a rotary mower with a rear roller and front roller. Printed publications showing the striking resemblance to the claims at issue were not submitted to the PTO. Toro will do so in the reexaminations.

Toro moved as quickly as it could to request the reexaminations. The last pieces of prior art, including the Middlesworth brochure, were received on February 14, 2007. Middlesworth was deposed on February 27, 2007, to establish, among other things, the date of the publication found at Textron's former Johnson Creek facility. Other depositions to establish brochure dates were taken in late February and one, Nunes Manufacturing, was taken on March 14, 2007. Discovery closed on February 28, with the exception of the Nunes deposition permitted by this Court to be taken in March. The parties mediated on March 13, 2007. Toro received the transcripts of those depositions in early March with the exception of the Nunes transcript, which was only finalized on March 21, 2007. Toro prepared three separate requests for reexamination, one per patent-in-suit, addressing in detail the 30 claims asserted by Textron. One of the reexamination requests has almost 50 pages of analysis. All three of the requests were filed with the PTO on March 23, 2007.

Toro contacted counsel for Textron the day before the requests were filed and asked if it would join in this request for a stay of the litigation and the litigation in Minnesota, where Toro will also be seeking a stay after putting its own patents into reexamination based on the prior art discovered by Textron. Textron told Toro it would oppose this motion on March 23, 2007. Toro filed this motion the same day.

It is expected that the PTO will decide Toro's requests for reexamination before the pretrial conference, scheduled for May 30, 2007. However, Toro is requesting that the Court grant its motion for a stay now because a great amount of work must occur before the pretrial: motions *in limine* (are due on April 10 with reply briefs due on April

30) and the Joint Proposed pretrial order (also due on April 30). Motions for summary

judgment were not permitted. The eight (8) day trial is scheduled for June 25, 2007.

## ARGUMENT

### I.   STAYS ARE WITHIN THE DISCRETION OF THE COURT

The decision as to whether to grant a stay of litigation based on a request for

reexamination "is firmly within the discretion of the court." *Pegasus Dev.*, 2003 U.S.

Dist. LEXIS 8052, at *3 (citing *Cost Bros.*, 760 F.2d at 60); *see also Ethicon, Inc. v.

Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988); *Landis*, 299 U.S. 248 at 254.

This Court's discretion is not diminished by the fact that the PTO has not yet

granted Toro's requests for reexamination. *See Magna Donnelly Corp. v. Pilkington

North America, Inc.*, 2007 U.S. Dist. LEXIS 17536, at *2 (W.D. Mich. Mar. 12, 2007)

(granting stay even though the PTO had not ruled on requests for reexamination) (Ex. E.);

*see also Gonnocci v. Three M Tool & Machine*, 2003 U.S. Dist. LEXIS 24423, at *3, 18

(E.D. Mich. Oct. 7, 2003) (granting stay before the PTO ruled on reexamination requests

even though trial date was less than two months away). (Ex. F.) As explained above,

there is no less than a 91% probability that all three of the reexamination requests will be

granted. (Ex. A.) Further, the same statistics establish an 86% probability that <u>none</u> of

the 25 claims-at-issue in the *inter partes* reexamination will survive at all. (*Id.*) There is

only a 26% chance that the remaining 5 claims-at-issue in the *ex parte* reexamination will

not be cancelled or changed. (*Id.*)

Congress envisioned trial courts liberally granting stays within their discretion

based on reexaminations of patents-in-suit granted by the PTO. *See Emhart*, 3 U.S.P.Q

2d at 1890 ("In passing the legislation establishing the reexamination proceeding,

Congress stated its approval of district courts liberally granting stays within their

discretion.") Congress echoed this point when it passed legislation in 1999 adding the

*inter partes* reexamination procedures. *See* 35 U.S.C. § 318 ("Stay of Litigation").

## II.    THE TEST APPLIED BY THIS COURT FAVORS GRANTING A STAY IN THIS CASE

When determining whether to stay a case, courts consider the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *See, e.g.*, *Pegasus Dev.*, 2003 U.S. Dist. LEXIS 8052, at *3-4 (citing *inter alia Xerox Corp. v. 3 Comm Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)). Each of these factors weighs in favor of granting an immediate stay in this case.

### A.    A Stay Will Not Unduly Prejudice Textron Because Both Parties Will Benefit From The PTO's Expertise.

Both parties, and the Court, will benefit from the PTO's expertise. Although the technology in this case is not very complex, the validity issues are quite complex given the large number of claims asserted by Textron (30), the crowded field of art (mowers), and the large amount of close prior art discovered during this litigation that was never before the PTO. Toro's Prior Art Statement includes almost 100 prior art references, many of which will likely be in play in the PTO and this Court. Toro has asked this Court for permission to add another nine prior art references discovered at a former Textron facility little more than a month ago. Toro alleges invalidity due to anticipation, obviousness and violation of best mode. When the prior art references are applied to the 30 asserted claims, as they must be, the number of combinations is very large. Having the PTO review these issues before expending further judicial resources is economical and does not unduly burden Textron. *See Pegasus Dev.*, 2003 U.S. Dist. LEXIS 8052 at *6-7.

Issues of whether certain claims are entitled to an earlier or later filing date are also complex, turning on the disclosure in the first two patents-in-suit as compared to the third patent-in-suit. The reexamination proceedings will provide the parties, and the

Court, with the benefit of the PTO's expertise regarding the printed prior art, written descriptions, and effective filing dates. There is no question that the PTO's insight on these issues will assist both parties should resolution of this matter require the Court's assistance following reexamination. *See Rohm & Haas v. Brotech Corp.*, 1992 U.S. Dist. LEXIS 3252, at \*4 (D. Del. Mar. 11, 1992) (noting that "the legislative history [of the *ex parte* reexamination statute] suggests the reexamination procedure was created to "provide the federal courts with the expertise of the PTO.") (Ex. G.)

### 1. Textron Invoked The Patent Statute Which Supports A Stay.

Although there is some prejudice to Textron associated with delaying its "day in court," it is not unduly prejudiced, as the test requires. Textron affirmatively invoked the patent statute in bringing this action against Toro. Textron should not be heard to complain when Toro invokes that same statute to have the patents-in-suit reexamined. *See Pegasus Dev.*, 2003 U.S. Dist. LEXIS 8052 at \*7-8. Congress would not have provided the reexaminations statutes if it did not want both patent owners and accused infringers to make use of reexaminations. As mentioned above, Congress envisioned that such use of reexaminations could occur during litigation and provided specific language authorizing the district courts to stay the litigation. Toro will also be filing reexamination requests for its patents asserted in the Minnesota action against Textron and asking for a stay of that litigation, so there is no tactical disadvantage as to timing of the two actions.

### 2. This Case Has Not Run A "Protracted Course."

This would be the first delay of the trial date in this case. This has not been a case in which several previous delays resulted in delaying the trial date. To the contrary, this case was set down for a June 25, 2007 trial date at the first scheduling conference in February 2006 and that date has not moved despite what Toro would characterize as hard fought battles to get prior art from Textron and its sister entities. As patent cases go, this case has moved pretty efficiently from filing, through discovery, up to the present – taking a little more than one and one-half years. Discovery concerning prior art has taken

less than 13 months. This has not been a case which has "run an overly protracted course," a fact that would favor (although though not be dispositive of) denying a motion to stay. *See Middleton, Inc. v. Minn. Mining & Mfg. Co.*, 2004 U.S. Dist. LEXIS 16812, at *16-17 (S.D. Iowa Aug. 24, 2004) (discussing granting stay despite case having been pending for over eight years). (Ex. H.)

### 3. The Parties Expenses To Date Is Not Undue Prejudice.

It is certainly true that both parties have spent considerable amounts of money in litigating this case. However, that alone is not undue prejudice. *Id.* at *21. Denying the stay and proceeding to trial will not change what has already been spent. *Id.* In fact, *denying* a stay at this point will prejudice both parties who will have to spend large sums of additional monies preparing for and trying this case including the validity of all 30 asserted claims and the large amount prior art references that may be permitted in evidence. While in all likelihood, the PTO will be examining the validity of the same 30 claims in parallel. Not staying the case at this point could actually compound the parties' expenses if some or all of the validity issues are resolved by the PTO or claims are amended during the reexamination which could require a retrial later as a result of the reexamination. *Id.*

### 4. Textron Delayed More Than 6 Years In Bringing This Action.

Textron's own actions are contrary to an assertion of prejudice. The allegedly infringing Toro mowers were known to Textron no later than November 1999 – more than seven years ago. (Ex. I at JA-0152, 154.) The '530 patent issued shortly thereafter in April 2000. However, the then owner of the '530 patent, Ransomes America Corp. (a subsidiary of Textron Inc.), did not sue Toro. Instead, Ransomes America Corp. and Textron Inc. (the previous owner of the '312 patent) waited until July 2005 to transfer all three patents to Plaintiff. Plaintiff, an intellectual property holding company that does not make any products, then sued Toro on July 12, 2005. Textron's half-decade delay in filing suit pales in comparison to Toro's request for a stay while the PTO reexamines

"with special dispatch" all the asserted claims of the patents-in-suit. See *Magna Donnelly*, 2007 U.S. Dist. LEXIS 17536 at *14 (no prejudice where plaintiff delayed three (3) years in filing suit.)

### 5. Textron Owned Or Knew Of Much Of The New Prior Art.

Further, much of the prior art that will be placed before the PTO was owned by or known to Textron and should have been submitted to the PTO during the original examinations. If Textron had abided by its duty of candor with the PTO the first time, these reexaminations may not have been necessary. If the Textron's patents are upheld after reexamination, Toro's burden of proof becomes more difficult – an advantage to Textron. *See Pegasus Dev.*, 2003 U.S. Dist. LEXIS 8052 at *8.

### 6. Plaintiff Makes No Products – Money Damages Are Adequate.

Finally, by statute, reexamination proceedings are conducted with "special dispatch" within the PTO. 35 U.S.C. §§ 305, 314(c). Therefore, any delay due to the reexamination proceedings should be minimal. Plaintiff is an intellectual holding company, not a competitor of Toro's. Plaintiff neither makes nor sells any products that are losing market share to Toro. As such, monetary compensation is sufficient to remedy any infringement found to exist following the reexaminations. Thus, Plaintiff is not unduly prejudiced or at a clear tactical disadvantage by staying this litigation until the reexaminations have concluded. *See Middleton,* 2004 U.S. Dist. LEXIS 16812 at *31-32.

### B.    A Stay Will Promote Judicial Economy By Either Removing The Entire Case Or Reducing The Issues.

If Toro is correct and the printed prior art that was not previously before the PTO invalidates the asserted claims, this case is over. In other words, there are no "non-patent" claims that would be unaffected by the reexaminations. Eighty-six percent (86%) of all decided *inter partes* reexaminations resulted in all of the claims being cancelled. (Ex. A.) No greater judicial economy exists than removing an entire case from the

Court's docket without spending any more of the Court's scarce resources or the parties'
resources. *See Pegasus Dev.*, 2003 U.S. Dist. LEXIS 8052 at *6. Moreover, the Court
would not run the risk of inconsistent rulings. *Abbott Diabetes Care v. Dexcom, Inc.*,
C.A. No. 05-590-GMS, 2006 U.S. Dist. LEXIS 57469, at *20 (D. Del. Aug. 16, 2006)
(Ex. J.), citing *Gioello*, 2001 WL 125340 at *1.

### 1. Claims That Survive Reexamination Are Likely To Be Different.

However, even if some of the claims-at-issue survive the reexamination, judicial
economy is still served by granting a stay even this close to trial because the validity
issues, and possibly the infringement issues, are likely to change significantly. Given the
closeness of the art not previously before the PTO and the reexamination statistics, there
is a strong likelihood that any claims that do survive reexamination will be different.
Only 14% of *inter partes* reexaminations resulted in all claims being confirmed without
change. (Ex. A.) For *ex parte* reexaminations, only 26% of the reexaminations resulted
in all of the claims confirmed without change. (*Id.*) When requested by a 3rd party,
such as Toro, the claims were changed in 59% of the *ex parte* reexaminations. (*Id.*) That
statistic jumps to 64% for all *ex parte* reexaminations. (*Id.*)

If all or some of the asserted claims are changed during reexamination, it could
result in the need to retry all or some of the issues decided at trial – an extreme waste of
resources, both the Court's and the parties'. *See Pegasus Dev.*, 2003 U.S. Dist. LEXIS
8052 at *7, citing *Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 U.S. Dist
LEXIS 4254, at *3 (S.D. N.Y. 2000) ("The grant of a stay will maximize the likelihood
that neither the Court nor the parties expend their assets addressing invalid claims.").
(Ex. K.) If claims in dispute are amended and issued during the course of the *inter partes*
reexamination the scope of any damages may also be transformed since, by law, damages
must be limited to the period after allowance of the claim in amended form. *See* 35
U.S.C. § 316(b); *Bloom Eng'g Co. Inc. v. N. Am. Mfg. Co., Inc.*, 129 F.3d 1247, 149-50
(Fed. Cir. 1997). Thus, each of the numerous claims of the patents-in-suit may become

"moving targets" during the reexamination process, and both parties would therefore have to adjust their cases on validity and infringement accordingly. Again, judicial economy is fostered by allowing the PTO to decide whether, and in what form, any claim of the patents-in-suit is patentable.

### 2. Toro Will Be Bound By The PTO's Validity Decisions.

Should claims emerge unchanged by the reexaminations, Toro will be bound by the PTO's conclusions regarding prior art that was presented or could have been presented to the PTO during the *inter partes* reexamination of the patents. 35 U.S.C. § 315(c). At a minimum, the likely reexaminations will result in much narrower and clarified validity issues relating to any claims that do survive reexamination.

### 3. Reexamination Benefits Both Parties And The Court.

A stay of this litigation pending the outcome of the reexamination is consistent with Congress' intent in enacting the reexamination statute. The CAFC has recognized that "[o]ne purpose of the reexamination procedure is to ... facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) (affirming grant of stay that occurred 20 days before trial). Reexamination thus brings the PTO's expertise to bear on the validity of patents involved in litigation. *See Ingro v. Tyco Indus., Inc.*, 227 U.S.P.Q. (BNA) 69, 71 (N.D. Ill. 1985) (quoting *Patlex v. Mossinghoff*, 758 F.2d 594, 602 (Fed. Cir. 1985)). The patents-in-suit are in a crowded field of art, thus making the PTO's expertise even more relevant.

By granting a stay and allowing the PTO the opportunity to resolve these validity issues, judicial economy will be promoted by eliminating the printed prior art validity issues and thus streamlining trial or even spurring a settlement of this litigation. *Emhart Indus.*, 3 U.S.P.Q. 2d (BNA) at 1890). Moreover, given the extensive number of claims asserted, among three patents, and the large amount of prior art previously not before the PTO, this Court would benefit from "an additional layer of review by the PTO before

expending further judicial resources" in this litigation. *Pegasus Dev.*, 2003 U.S. Dist. LEXIS 8052 at *6.

### 4. The Supreme Court May Change The Obviousness Test.

A potential change in the patent law also supports the efficiency of a stay. A large part of Toro's invalidity defense is based on obviousness under 35 U.S.C. § 103. It is widely expected that the U.S. Supreme Court will hand down a new obviousness test between now and the end of the term (June 21, 2007 (4 days before this case is to be tried)) in *Teleflex Inc. v. KSR International* ("KSR"). During oral arguments in November 2006, the justices' were scornful of the current teaching-suggestion-motivation (TSM) obviousness test: "Justice Breyer said he didn't understand it, Chief Justice Roberts called it 'worse than meaningless,' and Justice Scalia called it 'gobbledygook.' Even before the argument many observers expected the Supreme Court to replace TSM with a new test for obviousness – that result seems even more likely now." (Ex. L.) It is highly likely that a new test will come down just days before the presently scheduled trial in this case is set to begin – jeopardizing the significant pretrial preparations on this issue. It would be more efficient to have the PTO apply any new test during the reexaminations which will occur in earnest a sufficient amount of time after any new obvious test is announced. Further, having the PTO reexamine the patents under a new standard avoids confusing the jury with why a different test was applied by the PTO than they are being asked to apply.

### 5. Reexaminations Have Been Beefed Up At The PTO.

There has been public complaint about patents that should not have ever been issued. In response, in 2005, the PTO took significant steps to beef up its reexamination process. (Ex. M.) It instituted a newly formed central reexamination unit. "Under the new initiative, 20 highly skilled primary examiners who have a full understanding of reexamination practice and relevant case law will concentrate solely on reexamination." (*Id.*) Three of these 20 highly skilled examiners will be assigned to review the large

14

amount of prior art cited against all 30 of the asserted claims in this suit. Judicial economy is served because a stay allows this central reexamination unit to do its job: determine whether Textron's claims-at-issue are in fact patentable over the prior art.

**C.    A Stay Is Justified Even Though Discovery Is Complete And A Trial Date Has Been Set Because Significant Work Remains.**

Toro's motion for a stay should not be denied due to a trial date three months away and discovery having ended. Those facts do not outweigh the considerable advantages to granting a stay in favor of the requests for reexamination such as the value of the PTO's expertise, simplification or resolution of issues, and conservation of resources. Several courts have granted motions to stay even though a trial date was imminent and discovery had closed because the stay was advantageous. *See Broadcast Innovation, L.L.C., v. Charter Commc'ns, Inc.*, 2006 U.S. Dist. LEXIS 46623, at *26-30 (D. Colo. July 11, 2006) (discussing numerous cases in which a stay was granted "where discovery has been completed, and even when a trial date has been scheduled or is forthcoming."). (Ex. N.) In *Broadcast*, the Court granted a stay even though trial was less than three months away. *Id.* at *26. What seemed to sway the *Broadcast* court was that "significant work remain[ed]" before trial including pretrial filings, deposition designations, motions *in limine*, jury instructions, etc. *Id.* at *30-31.

Significant work remains in this case too. In the next three months leading up to the trial date, both parties will have to prepare motions *in limine* and respond to the other side's motions *in limine*; prepare a detailed joint pretrial order (which must be reviewed and approved by the Court) including a comprehensive stipulation of all uncontested facts, contested issues of fact and law, exhibit lists, witness lists, stipulations concerning expert witnesses, deposition designations, itemization of damages, three sets of jury instructions, verdict forms, and special interrogatories (if any); and prepare a pretrial brief. (D. Del. Form for Joint Pretrial Order.) Arrangements for trial will also involve significant work. For example, demonstrative aids must be prepared, electronic trial aids

15

must be created and tested, and perhaps even mock juries conducted. All of this work and expense will occur despite the "significant chance that the PTO will either invalidate [these] patents or drastically decrease [their] scope. This creates the very real possibility that the parties [and Court] will waste their resources litigating over issues that will ultimately be rendered moot by the PTO's findings." *Broadcast*, 2006 U.S. Dist. LEXIS 46623 at *31; *see also Middleton*, 2004 U.S. Dist. LEXIS 16812 at *22 (granting stay 2 months before trial because, in part, not efficient to complete pretrial and hold a full jury trial if all or part have to be redone.)

### 1. Toro Could Not Have Reasonably Filed Its Requests Any Earlier.

It was reasonable for Toro to wait until it had all of the printed prior art it believed to exist before filing the requests for reexamination. The most recent of that printed prior art coming less than three weeks before Toro filed its voluminous requests for reexamination. *See Gonnocci*, 2003 U.S. Dist. LEXIS 24423 at *13 (granting stay where defendant knew of prior art for three (3) months before filing requests for reexamination.) It would have been unreasonable to file the requests any earlier. Under the *ex parte* reexamination rules, Toro could not add to a pending reexamination any new prior art it later discovered. To have subsequently discovered prior art considered by the PTO, Toro would have had to separately prepare and file another complete set of *three* requests for reexamination (one per patent). In addition to the attorney-time expense for each additional reexamination request, Toro would have to pay another filing fee of $2520 per request. Toro would have had to repeat this piece-meal process over and over again for each new piece of prior art discovered during the litigation that was not part of an earlier pending *ex parte* reexamination. *See e.g., Canady v. Erbe Elektromedizin GmbH*, 307 F. Supp. 2d 2, 6-7 (D.D.C. 2004) (ironically plaintiffs argued defendants delayed the PTO's ruling by filing subsequent requests for reexamination).

The *inter partes* reexamination rules make filing a request for reexamination only after having all of the printed prior art even more reasonable. The rules prohibit filing a

subsequent request for *inter partes* reexamination based on new printed prior art until the original reexamination is complete. 37 C.F.R. 1.907(a). In other words, had Toro filed an *inter partes* reexamination request before it deposed Middlesworth on February 27, 2007 to date the brochure found at Textron's Johnson Creek facility at the end of January 2007, Toro would be prohibited from having the PTO consider Middlesworth until the original *inter partes* reexaminations concluded. And then Toro would have had to prepare another *three* (one per patent) detailed request and pay again the $8800 filing fee per request. In addition, Toro and Textron prepared for and mediated in early March.

### 2. Toro Was Diligent In Finding Prior Art And Dating It.

Given that the discovery period in this case was just a little over one year (scheduling order entered in February 2006 and discovery closed on February 28, 2007), that Toro was diligent in finding close prior art from all over the world (references were found in the U.K., Denmark, and Australia), and that Toro was diligent in bringing discovery problems it had with Textron to the Court and then pursuing what relief the Court provided (including the inspection of 6000 boxes in Charlotte) or subpoenas (including Textron's former Johnson Creek facility), it was reasonable for Toro to prepare and file its three requests for reexamination on March 23, 2007, just weeks after finding and dating some of the key art relied upon in the reexamination requests.

## CONCLUSION

Because there is greater than a 90% probability that Toro's requests for reexamination will be granted, a greater than 60% chance that all of the asserted claims in this litigation will be invalidated or changed, and a near certainty that reexamination will both preserve Court resources and aid the Court with the complicated invalidity issues in this case, Toro respectfully requests this Court grant its Motion to Stay Litigation Pending Its Requests For Reexamination of all asserted claims by the U.S. Patent Office.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Earl D. Reiland
Anthony R. Zeuli
Thomas J. Leach
MERCHANT & GOULD P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 332-5300

Dated: March 23, 2007
785375 / 29362

By:    */s/ David E. Moore*
        Richard L. Horwitz (#2246)
        David E. Moore (#3983)
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        Wilmington, Delaware 19899-0951
        (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com

*Attorneys for Defendant The Toro Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on March 23, 2007, the attached document

was electronically mailed and hand delivered to the following persons and was

electronically filed with the Clerk of the Court using CM/ECF which will send

notification to the registered attorney(s) of record that the document has been filed and is

available for viewing and downloading:

Edmond D. Johnson
Thomas H. Kovach
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 North Market Street
Wilmington, DE  19899-1709
Johnsone@pepperlaw.com
kovacht@pepperlaw.com

I hereby certify that on March 23, 2007, I have Electronically Mailed and Federal

Expressed the documents to the following:

Christopher C. Campbell
Hunton & Williams LLP
1900 K Street, N.W.
Washington, DC  20006-1109
srobertson@hunton.com
ccampbell@hunton.com
mlouey@hunton.com
lmarlatt@hunton.com
fmckeon@hunton.com
dmckim@hunton.com
jalbert@hunton.com
rking@hunton.com

David Young
Hunton & Williams LLP
1751 Pinnacle Drive, Suite 1700
McLean, Virginia 22102
mpphelps@hunton.com
dyoung@hunton.com

Kurt Niederluecke
Fredrikson & Byron, P.A.
200 South Sixth Street
Suite 4000
Minneapolis, MN  55402
kniederluecke@fredlaw.com

By:  */s/ David E. Moore*
     Richard L. Horwitz
     David E. Moore
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, Delaware 19899-0951
     (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com