# EXHIBIT A

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

*Inter Partes* Reexamination Filing Data - December 31, 2006

1.   Total requests filed since start of *inter partes* reexam on 11/29/99 ................................ 209[1]

2.   Number of filings by discipline

|     |     |     |
| --- | --- | --- |
| a.  Chemical Operation | 53 | 25% |
| b.  Electrical Operation | 74 | 36% |
| c.  Mechanical Operation | 82 | 39% |

3.   Annual Reexam Filings

| Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 2000 | 0 | 2002 | 4 | 2004 | 27 | 2006 | 70 |
| 2001 | 1 | 2003 | 21 | 2005 | 59 | 2007 | 27 |

4.   Number known to be in litigation.............................................92.................44%

5.   Decisions on requests ...................................................................................... 177

   a.  No. granted .................................................................... 168 ................... 95%

|     |     |     |
| --- | --- | --- |
| (1)  By examiner | 168 | |
| (2)  By Director (on petition) | 0 | |

   b.  No. not granted ................................................................. 9 ..................... 5%

|     |     |     |
| --- | --- | --- |
| (1)  By examiner | 7 | |
| (2)  Reexam vacated | 2 | |

6.   Overall reexamination pendency  (Filing date to certificate issue date)

|     |     |
| --- | --- |
| a.  Average pendency | 27.9 (mos.) |
| b.  Median pendency | 29.7 (mos.) |

7.   Total inter partes reexamination certificates issued (1999 - present) .................................. 7

|     |     |     |
| --- | --- | --- |
| a.  Certificates with all claims confirmed | 1 | 14% |
| b.  Certificates with all claims canceled | 6 | 86% |
| c.  Certificates with claims changes | 0 | 0% |

---

[1]Of the requests received in 1st Qtr. FY 2007, 10 requests have not yet been accorded a filing date, and preprocessing of 1 request was terminated,, for failure to comply with the requirements of 37 CFR 1.915. See Clarification of Filing Date Requirements for *Ex Parte* and *Inter Partes* Reexamination Proceedings, Final Rule, 71 Fed. Reg. 44219 (August 4, 2006).



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

### *Ex Parte* Reexamination Filing Data - December 31, 2006

1. Total requests filed since start of ex parte reexam on 07/01/81 . . . . . . . . . . . . . . . . . 8403[1]

    a. By patent owner     3384    40%
    b. By other member of public     4854    58%
    c. By order of Commissioner     165    2%

2. Number of filings by discipline

    a. Chemical Operation     2568    30%
    b. Electrical Operation     2751    33%
    c. Mechanical Operation     3084    37%

3. Annual Ex Parte Reexam Filings

| Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
|---|---|---|---|---|---|---|---|
| 1981 | 78 (3 mos.) | 1989 | 243 | 1997 | 376 | 2005 | 524 |
| 1982 | 187 | 1990 | 297 | 1998 | 350 | 2006 | 511 |
| 1983 | 186 | 1991 | 307 | 1999 | 385 | 2007 | 151 |
| 1984 | 189 | 1992 | 392 | 2000 | 318 | | |
| 1985 | 230 | 1993 | 359 | 2001 | 296 | | |
| 1986 | 232 | 1994 | 379 | 2002 | 272 | | |
| 1987 | 240 | 1995 | 392 | 2003 | 392 | | |
| 1988 | 268 | 1996 | 418 | 2004 | 441 | | |

4. Number known to be in litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2002    24%

5. Determinations on requests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8103

    a. No. granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7403 . . . . . . . . . 91%

        (1) By examiner     7292
        (2) By Director (on petition)     111

    b. No. denied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 700 . . . . . . . . . . 9%

        (1) By examiner     665
        (2) Order vacated     35

---

[1]Of the requests received through Dec. 31, 2006, 42 requests have not yet been accorded a filing date, and preprocessing of 9 requests was terminated, for failure to comply with the requirements of 37 CFR 1.510. See Clarification of Filing Date Requirements for *Ex Parte* and *Inter Partes* Reexamination Proceedings, Final Rule, 71 Fed. Reg. 44219 (August 4, 2006).

6.   Total examiner denials (includes denials reversed by Director)  . . . . . . . . . . . . . . . . . . . 776

|   |   |   |   |
|---|---|---|---|
| a. | Patent owner requester | 435 | 56% |
| b. | Third party requester | 341 | 44% |

7.   Overall reexamination pendency  (Filing date to certificate issue date)

|   |   |   |
|---|---|---|
| a. | Average pendency | 23.1 (mos.) |
| b. | Median pendency | 17.9 (mos.) |

8. Reexam certificate claim analysis:

| | | Owner Requester | 3rd Party Requester | Comm'r Initiated | Overall |
|---|---|---|---|---|---|
| a. | All claims confirmed | 23% | 29% | 13% | 26% |
| b. | All claims cancelled | 7% | 12% | 21% | 10% |
| c. | Claims changes | 70% | 59% | 66% | 64% |

9.   Total ex parte reexamination certificates issued (1981 - present)  . . . . . . . . . . . . . . . . . 5640

|   |   |   |   |
|---|---|---|---|
| a. | Certificates with all claims confirmed | 1476 | 26% |
| b. | Certificates with all claims canceled | 580 | 10% |
| c. | Certificates with claims changes | 3584 | 64% |

10.  Reexam claim analysis - requester is patent owner or 3rd party; or Comm'r initiated.

a.   Certificates - PATENT OWNER REQUESTER . . . . . . . . . . . . . . . . . . . . . . . . . . . 2440

|   |   |   |   |
|---|---|---|---|
| (1) | All claims confirmed | 568 | 23% |
| (2) | All claims canceled | 177 | 7% |
| (3) | Claim changes | 1695 | 70% |

b.   Certificates - 3rd PARTY REQUESTER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3057

|   |   |   |   |
|---|---|---|---|
| (1) | All claims confirmed | 890 | 29% |
| (2) | All claims canceled | 373 | 12% |
| (3) | Claim changes | 1794 | 59% |

c.   Certificates - COMM'R INITIATED REEXAM . . . . . . . . . . . . . . . . . . . . . . . . . . . 143

|   |   |   |   |
|---|---|---|---|
| (1) | All claims confirmed | 18 | 13% |
| (2) | All claims canceled | 30 | 21% |
| (3) | Claim changes | 95 | 66% |

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 125340 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

C

Gioello Enterprises Ltd. v. Mattel, Inc.D.Del.,2001.Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
GIOELLO ENTERPRISES LTD., Plaintiff,
v.
MATTEL, INC., Defendant.
No. C.A. 99-375 GMS.

Jan. 29, 2001.

Philip A. Royner, Potter, Anderson & Corroon LLP, Wilmington, DE, James G. Goggin, Verrill & Dana LLP, Portland, Maine, for Plaintiff, of counsel.
Robert W. Whetzel, Chad M. Shandler, Richards, Layton & Finger, Wilmington, DE, Peter E. Heuser, David A. Fanning, Charles H. DeVoe, Kolisch, Hartwell, Dickinson, McCormick, & Heuser, Portland, Oregon, for Defendants, of counsel.

*ORDER*

SLEET, J.

*1 On June 11, 1999, the plaintiff, Gioello Enterprises Ltd. ("Gioello"), filed a complaint against Mattel, Inc. ("Mattel") claiming infringement of U.S. Patent 4,546,434 (the " '434 patent"). Mattel answered and filed a counterclaim which Gioello, in turn, answered. Both parties filed motions which are currently pending. Mattel filed a request with the U.S. Patent and Trademark Office (the "PTO") on November 9, 2000 for an reexamination of claims 1-3 of the '434 patent. The PTO granted Mattel's request on December 21, 2000, and issued a schedule for statements from the parties (D.I.104). Currently before the court is Mattel's motion to stay proceedings pending reexamination (D.I.84).[FN1] Upon consideration of the parties' submissions, the court will grant Mattel's motion and stay the proceedings until further notice.

FN1. Although Mattel filed its motion before the PTO granted its request, the court will consider the PTO's actions.

In deciding whether to stay the proceedings, the court's discretion is guided by the following factors: (1) whether a stay would unduly prejudice Gioello or present a clear tactical advantage for Mattel, (2) whether a stay will simplify the issues, and (3) whether discovery is complete and whether a trial date has been set. *See Xerox Corp v. 3Comm Corp., 69 F.Supp.2d 404, 406 (W.D.N.Y.1999)* (citing cases); *cf. United Sweetner USA, Inc. v. Nutrasweet Co., 766 F.Supp. 212, 217 (D.Del.1991)* (stating a similar test).

The PTO's recent decision to reexamine the '434 patent will simplify the issues in this case and focus the litigation. Numerous courts have cited a number of advantages of granting a stay pending PTO reexamination: (1) all prior art presented to the court at trial will have been first considered by the PTO with its particular expertise, (2) many discovery problems relating to the prior art can be alleviated, (3) if patent is declared invalid, the suit will likely be dismissed, (4) the outcome of the reexamination may encourage a settlement without further involvement of the court, (5) the record of the reexamination would probably be entered at trial, reducing the complexity and the length of the litigation, (6) issues, defenses, and evidence will be more easily limited in pre-trial conferences and (7) the cost will likely be reduced both for the parties and the court. *See, e.g., Braintree Laboratories, Inc., Civ. A. No. 96-2459-JWL, 1997 WL 94237, at *9 (D.Kan. Feb. 26, 1997); Hamilton Indus. v. Midwest Folding Products Mfg., Civ. A. No. 89-C-8689, 1990 WL 37642, at *1- *2 (N.D.Ill. March 20, 1990)* (citing cases). All of these potential advantages are present, to some degree, if the court imposes a stay of the proceedings pending the outcome of the PTO's reexamination.

Not staying the proceedings runs the risk of inconsistent adjudications or issuance of advisory opinions. Presently, this case is scheduled for trial on April 13, 2001. According to the PTO's order granting the request for reexamination, it is possible that submission of statements will not be complete until April 12, 2001.[FN2] Additionally, the outstanding motions for summary judgment by Mattel claim invalidity and non-infringement-two issues the PTO's decision could render moot. Since the court must decide the summary judgment motions well in advance of trial, it would have to address the arguments raised before the PTO. Such a situation raises resource questions. As one court noted:

FN2. The PTO's order of December 21,

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 125340 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

2000 states that Gioello has up to two months to submit an optional response. If Gioello submits a response, Mattel has up to two months to submit a reply. Since no extensions will be granted, the court believes April 12, 2001-16 weeks from the date of the order is the maximum time allowable for written submissions to the PTO.

*2 ... if the parties continue to litigate the validity of the claims in this Court [sic], and the PTO subsequently finds that some or all of the claims in issue here are invalid, the Court [sic] will have wasted time and the parties will have spend additional funds addressing an invalid claim or claims. Thus, although the denial of a stay can have no effect whatsoever on past events, the grant of a stay will maximize the likelihood that neither the Court [sic] nor the parties expend their assets addressing invalid claims. *Softview Computer Products Corp. and Ergo View Technologies Corp. v. Haworth, Inc.,* No. 97 Civ. 8815 KMW HBP, 2000 WL 1134471, at *3 (S.D.N.Y. Aug. 10, 2000). Since the PTO cannot stay the reexamination once a request has been granted, the court's issuance of a stay is the only way to avoid the potential for conflict. *See Hamilton,* 1990 WL 37642, at *2 (citing *Ethicon, Inc. v. Quigg,* 849 F.2d 1422 (Fed.Cir.1988).

The court finds the prejudice to Gioello is slight, if any. Gioello claims it is prejudiced both by Mattel's dilatory tactics in not requesting an examination earlier and by it spending money on discovery that is nearly complete. Leaving aside timing arguments, the court finds no merit in this position. First, Gioello is not selling or actively licensing goods or services related to the '434 patent; money damages is an adequate remedy for any delay in redress. Second, both Mattel and Gioello have spent money on discovery. Third, Mattel is entitled by law to request a reexamination. *See* 35 U.S.C. § 302-307; 37 C.F.R. § 1.525. The fact that the request was granted means the PTO deems the '434 patent worthy of reexamination. It is not for the court to second guess the PTO's decision to reassess the prior art.

Given the possibility that the PTO's reexamination could materially affect the issues in this case, the court will deny Mattel's motions for summary judgment and Gioello's motion to strike without prejudice.[FN3] Although the could hold a status conference in late April or early May, 2001, the parties should advise the court of any earlier developments in the PTO's reexamination.

> FN3. Upon the entry of a new scheduling order, the parties are free to re-file their motions.

Therefore, IT IS HEREBY ORDERED that:
1. Mattel's motion to stay the proceeding pending reexamination (D.I.84) is GRANTED. The proceedings are stayed from the date of this order until further notice.
2. Mattel's motion for summary judgment on invalidity (D.I.87) is DENIED without prejudice.
3. Mattel's motion for summary judgement on noninfringement (D.I.89) is DENIED without prejudice.
4. Gioello's motion to strike (D.I.91) is DENIED without prejudice.
5. The parties shall advise the court of any decision that results from the PTO's reexamination of the '434 patent.

D.Del.,2001.
Gioello Enterprises Ltd. v. Mattel, Inc.
Not Reported in F.Supp.2d, 2001 WL 125340 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Intellectual Property Library
ISSN 1526-8535

Source: USPQ, 2d Series (1986 - Present) > U.S. District Courts, Illinois > Emhart Industries Inc. v. Sankyo Seiki Mfg. Co., Ltd., 3 USPQ2d 1889 (N.D. Ill. 1987)

## Emhart Industries Inc. v. Sankyo Seiki Mfg. Co., Ltd., 3 USPQ2d 1889 (N.D. Ill. 1987)

3 USPQ2d 1889
Emhart Industries Inc. v. Sankyo Seiki Mfg. Co., Ltd.
U.S. District Court Northern District of Illinois
No. 85 C 7565
Decided January 30, 1987

### Headnotes

#### PATENTS

**[1] Practice and procedure in Patent and Trademark Office—Reexamination—In general (▶ 110.1501)**

Federal district court has discretion to determine whether to stay patent infringement action pending outcome of reexamination proceeding before Patent and Trademark Office, and such stay is warranted of action, which was filed 18 months previously and which has had significant discovery but virtually no trial preparation, in view of defendant's contention that it could not have filed reexamination request before discovery depositions which were postponed at plaintiff's request and in which defendant discovered that certain patents constituted prior art, since such stay will not unduly prejudice plaintiff.

### Case History and Disposition

Action by Emhart Industries Inc., against Sankyo Seiki Mfg. Co., Ltd. for patent infringement. On defendant's motion to stay. Motion granted.

### Attorneys

Raymond P. Niro, Joseph N. Hosteny, and Niro, Scavone, Haller &  Niro, Chicago, Ill., and John D. DelPonti, Farmington, Conn., for plaintiff.

James L. Donnelly, Lee T. Hettinger, and Boodell, Sears, Giambalvo &  Crowley, Chicago, Ill., and Neil B. Siegel, John R. Inge, and Sughrue, Mion, Zinn, Macpeak &  Seas, Washington, D.C., for defendant.

### Opinion Text

**Opinion By:**

Kocoras, District Judge.

This matter comes before the Court on defendant, Sankyo Seiki's motion to stay the proceedings in this litigation pending a final determination regarding reexamination by the Patent and Trademark Office of the patent in suit. For the reasons stated herein, defendant's motion is granted.

#### FACTS

This is an action for patent infringement. Plaintiff, Emhart Industries, Inc. ("Emhart"), filed the complaint on August 28, 1985, alleging that defendant, Sankyo Seiki Mfg. Co., Ltd. ("Sankyo Seiki"), has infringed its patent (the "Voland" patent) for a "cam operated program timer" (U.S. Patent No. 3,727,015). No

Copyright 2007, The Bureau of National Affairs, Inc.
Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy.  http://www.bna.com/corp/index.html#V

Intellectual Property Library
ISSN 1526-8535

preliminary injunctive relief was sought. The parties have been engaged in discovery for almost one year, including depositions and document production in Japan. The discovery cut-off date of November 30, 1986, has passed, however, no pretrial order is in place and the Court has not considered any trial schedule for this case.

Defendant contends that during recent (September 1986) depositions of plaintiff's

**Page 1890**

in-house patent counsel (Robert F. Meyer) and one of the alleged inventors of the Voland patent (Kurt Pauker) it discovered that two patents (the "Brown patents") owned by plaintiff, antedated the Voland patent and constituted prior art. The Brown patents were not cited to the Patent and Trademark Office ("PTO") during the prosecution of the Voland patent application. On September 29, 1986, defendant filed a request for reexamination of the Voland patent based, in part, upon the Brown patents. On December 5, 1986, the PTO granted the request on the grounds that it raised "substantial new questions of patentability." Presently pending before the Court is defendant's motion to stay the proceedings in this litigation, filed on December 11, 1986.

### DISCUSSION

Reexamination is a relatively new procedure by which any person can request that the PTO reexamine or reevaluate the patentability of an unexpired U.S. patent. 35 U.S.C. § 302. A request for such a reexamination must be based upon prior art patents or publications which raise "a substantial new question of patentability." Typically, the cited prior art patents or printed publications upon which such a request is based are ones which were not considered by the patent examiner during the processing of the patent application which resulted in the patent-in-suit. Once a reexamination request is granted, a Patent Examiner who is familiar with the technology involved with the patent conducts the reexamination and is obligated to do so "with special dispatch." 37 C.F.R. § 1.550(a).

[1] Determining the desirability of staying district court proceedings pending the outcome of a reexamination proceeding before the PTO resides in the discretion of the district court. Rather than terminating the action, a stay operates to shift to the PTO a significant issue, patent claim validity, involved in the dispute before the Court. Shifting the validity issue to the PTO has many advantages, including:

> 1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

> 2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

> 3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

> 4. The outcome of the reexamination may encourage a settlement without the further use of the Court.

> 5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

> 6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.

> 7. The cost will likely be reduced both for the parties and the Court.

*Fisher Controls Co. Inc. v. Control Components Inc.* , 443 F.Supp. 581, 582, 196 U.S.P.Q. 817, 818-19 (S.D. Iowa 1977).[1]

Copyright 2007, The Bureau of National Affairs, Inc.
Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy. http://www.bna.com/corp/index.html#V

Intellectual Property Library
ISSN 1526-8535

[1] This oft-quoted case was decided under the PTO's reissue proceeding then in effect, which was quite similar to the present reexamination proceeding except that institution of the proceeding could only be requested by the patentee. The advantages of shifting the validity issue to the PTO are the same though in both.

_____

Moreover, in passing the legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion: [2]

_____

[2] Early versions of what became the reexamination statute expressly provided for a stay of court proceedings. S. 1679, 96th Cong., 1st Sess. § 310 (1979); H.R. 5075, 96th Cong., 1st Sess. § 310 (1979); S. 2446, 96th Cong., 2d Sess. § 310 (1980).

_____

The bill does not provide for a stay of court proceedings. It is believed by the committee that *stay provisions are unnecessary in that such power already resides with the Court* to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure. It is anticipated that these measures provide a *useful and necessary alternative* for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner.

H. R. Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4, *reprinted in* [1980] U.S. Code Cong. & Ad. News 6460, 6463. (Emphasis added). *See also Ingro v. Tyco Industries, Inc.* , 227 U.S.P.Q. 69 (N.D. Ill. 1985) (this Court granted a request for a stay of patent litigation pending the outcome of reexamination based, in part, on the above-quoted legislative history); P. Rosenberg, *Patent Law Fundamentals* § 15.09[3] at 15-167 (2d ed. 1986) ("In cases which have not progressed beyond . . . initial litigation stages, the reexamination procedure *should be utilized* ") (Emphasis added).

Plaintiff objects to a stay of the proceedings on four grounds. The Court is not per

**Page 1891**

suaded by any of the plaintiff's arguments. First, plaintiff contends that there exists no adequate legal remedy for the loss of jobs and the possible destruction of its defrost timer business, which losses will allegedly follow from the delay caused by a reexamination proceeding in this case. The Court notes that, notwithstanding plaintiff's argument that monetary damages will not compensate for its losses, this *is* a suit for money damages and plaintiff has never sought preliminary injunctive relief from the Court. Moreover, it is not altogether clear that an injunction would, in fact, save plaintiff's defrost timer business. Defendant has submitted evidence suggesting that General Electric, defendant's largest customer, terminated Emhart as a supplier of defrost timers for reasons completely unrelated to the present suit.

Plaintiff's second argument is that defendant has delayed unnecessarily in filing its request for reexamination, and thus, its motion for stay should be denied. Plaintiff claims that the facts necessary to establish the defenses set forth in defendant's request for reexamination were known to defendant since November of 1985. In support of this assertion, plaintiff points out that on November 1, 1985, in response to plaintiff's Interrogatory 3(d), defendant indicated that:

All of the claims in the patent in suit are unenforceable because the patentees failed to draw to the attention of the Examiner of the application from which the subject issued the *closest prior art* known to the applicants, including the United States *Patents Nos. 3,350,606, 3,500,005 [Brown] and 3,553,720 [Brown]*. The question of the unenforceability of the patent in suit is under a

Copyright 2007, The Bureau of National Affairs, Inc.
Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy. http://www.bna.com/corp/index.html#V

Intellectual Property Library
ISSN 1526-8535

*continuing investigation* , and hence this response will be supplemented as necessary. (Emphasis added).

Defendant does not deny that it knew of the Brown patents in November of 1985, nor that it suspected that the patents constituted prior art. However, defendant contends that it did not at that time know, nor could it have known, whether the Brown patents antedated the Voland patent and thus were legally available as prior art. Defendant argues that it was only during the depositions of one of the alleged inventors of the Voland patent and of plaintiff's in-house patent counsel that it was established that the Brown patents actually constituted prior art. The record reflects that defendant promptly filed its request for reexamination after the conclusion of these depositions.

As the Court finds that the benefits of granting a stay in the present proceedings outweigh the burdens, it need not decide whether the defendant could actually have filed its request at an earlier date. The Court notes that the plaintiff has *not* alleged, nor is there any evidence to support a finding, that the defendant's request was made solely for the *purpose* of delaying the litigation. Rather, if defendant is "guilty" of any "crime," it is of dragging its feet in filing its otherwise valid request for reexamination.

Third, plaintiff contends that defendant's motion for stay should not be granted because this case has "substantially progressed." Plaintiff cites to *Digital Magnetic Systems Inc. v. Ansley* , where the court, while granting the requested stay, cautioned that the reexamination process should not be abused "by applying for reexamination after protracted, expensive discovery or trial preparation." 213 U.S.P.Q. 200, 290 (W.D. Okla. 1982). The Court recognizes that significant, costly discovery has already taken place. However, substantially no trial preparations have been carried out —there is no pretrial order in place and no trial schedule has been set.

Moreover, it is significant here that defendant contends that it could not have filed its request for reexamination before it took the depositions of Robert Meyer and Kurt Pauker, whereupon it discovered that the Brown patents actually constituted prior art. The depositions of Pauker and Meyer were originally set for January 28, 1986, and May 19, 1986, respectively, but were postponed, at plaintiff's request, until September 1986. Defendant claims that plaintiff purposely delayed to prohibit defendant from establishing whether or not the Brown patents were legally available as prior art references. Clearly, based on defendant's response to plaintiff's Interrogatory 3(d), plaintiff knew that defendant was investigating the existence of prior art. Whatever plaintiff's reasons were for postponing these depositions, plaintiff will not now be heard to object to defendant's motion for stay on the grounds that too much time has passed since the commencement of this litigation.

Lastly, it should be noted that the same court that decided *Digital* , has subsequently granted a stay pending reexamination in a case that was much further advanced than the instant case. *See Loffland Brothers Co. v. Mid-Western Energy Corp.* , 225 U.S.P.Q. 886

**Page 1892**

(W.D. Okla. 1985) (stay granted after significant discovery, pretrial conference and trial date set). *See also Gould v. Control Laser Corp.* , 705 F.2d 1340, 217 U.S.P.Q. 985 (Fed.Cir. 1983), *cert. denied* , 104 S.Ct. 343 [ 220 USPQ 385 ] (1983) (stay granted five years after commencement of litigation and 20 days before scheduled start of trial). In sum, the Court finds that granting a stay 18 months into this litigation, after admittedly significant discovery, but virtually no trial preparation, will not unduly prejudice the plaintiff, especially in light of the plaintiff's own delay. [3]

---

[3] Plaintiff's reliance on the decision in *Antonious Kamata-Ri & Co., Ltd.* , 205 U.S.P.Q. 294 (D. Md. 1979), for the assertion that this Court should not stay the proceedings in this case because it has been pending for over a year, is misplaced. *Antonious* may be distinguished from the instant case in that the court in *Antonious* had access to records of two other forums that had previously examined the validity of the patent in suit, making it less likely that the court would need the PTO's expert opinion. 205 U.S.P.Q. at 295. Moreover, the litigation in *Antonious* did not involve the issue of prior art. In fact, the court noted that

Copyright 2007, The Bureau of National Affairs, Inc.
Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy. http://www.bna.com/corp/index.html#V

Intellectual Property Library
ISSN 1526-8535

where the issue of prior art *was* involved, the PTO's opinion could be "invaluable." *Id.* at 296. Lastly, the court in *Antonious* was primarily concerned with whether or not it should order the owner to file for reissue, rather than whether a stay should be granted pending reissue examination.

---

Fourth, and finally, plaintiff claims that reexamination proceedings will not "solve anything with finality" because the PTO's resolve significant issues of the patent's validity is not binding. Mem. Opp. at 5-6. This is simply not so. "A reexamination proceeding may result in the final cancellation of claims from the patent. *Manual of Patent Examining Procedure* § 2271 (1985). Of course, the patent owner may appeal the PTO's decision to the Board of Appeals and then to the Court of Appeals for the Federal Circuit. 35 U.S.C. § 145. Clearly, however, the end result of the reexamination proceedings will be to simplify the issues and reduce the complexity of trial.

Moreover, if the patent does survive the reexamination proceedings, the defendant has assured the Court that it will not contest the issues decided by the PTO, assuming that the plaintiff has been forthcoming and has cooperated fully during the proceedings. Reply at 13. Thus, a reexamination proceeding in this case may very well resolve significant issues of this litigation with finality. Based on the foregoing, the Court finds that the benefits of granting defendant's motion to stay outweigh the burdens of delay caused by a reexamination proceeding in this case. [4]Accordingly, defendant's motion to stay all further activities in connection with this action, pending a final determination in the reexamination proceeding, is granted.

---

[4] The Court notes in addition that where litigation has been stayed pending reexamination proceedings, the PTO will attempt to expedite those proceedings. *Manual of Patent Examining Procedures* § 2286 (1985).

---

- End of Case -

Copyright 2007, The Bureau of National Affairs, Inc.
Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy.  http://www.bna.com/corp/index.html#V

# EXHIBIT D

FOCUS - 5 of 18 DOCUMENTS



Positive
As of: Mar 21, 2007

**PEGASUS DEVELOPMENT CORPORATION and PERSONALIZED MEDIA
COMMUNICATIONS, L.L.C., Plaintiffs v. DIRECTV, INC., HUGHES
ELECTRONICS CORPORATION, THOMPSON CONSUMER ELECTRONICS,
INC., and PHILIPS ELECTRONICS NORTH AMERICA CORPORATION,
Defendants. AND RELATED COUNTERCLAIMS**

**Civil Action No. 00-1020-GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2003 U.S. Dist. LEXIS 8052*

**May 14, 2003, Decided**

**SUBSEQUENT HISTORY:** As Amended September 4,
2003.

**PRIOR HISTORY:** *Pegasus Dev. Corp. v. Directv, Inc.,
2002 U.S. Dist. LEXIS 6825 (D. Del., Apr. 18, 2002)*

**DISPOSITION:** [*1] Defendants' motion to stay
pending patent reexamination granted. Plaintiffs' motion
for leave to assert claim patent denied. Motions to
dismiss denied.

**COUNSEL:** For Pegasus Development Corporation,
Personalized Media Communications LLC,
PLAINTIFFS: Rudolf E Hutz, Rudolf E Hutz, Connolly,
Bove, Lodge & Hutz, Wilmington, DE USA.

For Directv Inc, Hughes Electronics Corporation,
Thomson Consumer Electronics Inc, Thomson
Multimedia, Inc, DEFENDANTS: Donald F Parsons, Jr,
Mona A Lee, Morris, Nichols, Arsht & Tunnell,
Wilmington, DE USA.

For Thomson Consumer Electronics Inc, DEFENDANT:
Karen Jacobs Louden, Morris, Nichols, Arsht & Tunnell,
Wilmington, DE USA.

For Philips Electronics North America Corporation,
DEFENDANT: Steven J Balick, Steven T Margolin,
Ashby & Geddes, Wilmington, DE USA.

**JUDGES:** Gregory M. Sleet, UNITED STATES
DISTRICT JUDGE.

**OPINION BY:** Gregory Moneta Sleet

**OPINION:**

**MEMORANDUM AND ORDER**

**I. INTRODUCTION** [*2]

On December 4, 2000, Pegasus Development
Corporation ("Pegasus") and Personalized Media
Communications, L.L.C. ("PMC") filed a complaint
against several defendants, alleging infringement of six
patents, including *U.S. Patent Nos. 4,965,825* ("the '825
patent") and *5,335,277* ("the '277 patent"). Since that
time, the original scheduling order has been revised
several times. Currently, fact discovery is scheduled to
close on August 22, 2003, and a trial is scheduled for
February of 2004.

On February 4, 2003 and March 14, 2003,

respectively, the defendant Thomson Consumer Electronics, Inc. ("Thomson") filed with the Patent and Trademark Office ("PTO") a request for *ex parte* reexaminations of the '825 and '277 patents. The request for reexamination of the *'825 patent* was granted on April 10, 2003. n1 Presently before the court is a joint motion by the defendants to stay the litigation pending the completion of the patent reexaminations (D.I. 459). After careful consideration of the parties' submissions, and for the reasons detailed below, the court will grant the motion.

> n1 The court is not yet aware of a decision by the PTO regarding reexamination of the '277 patent.

[*3]

**II. DISCUSSION**

The decision to stay a case is firmly within the discretion of the court. *Cost Bros., Inc. v. Travelers Indem. Co., 760 F.2d 58, 60 (3d Cir. 1985).* This authority applies equally to patent cases in which a reexamination by the PTO has been requested. *Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)* ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citation omitted); *see also Emhart Indus. v. Sankyo Seiki Mfg., 1987 U.S. Dist. LEXIS 15033, 3 U.S.P.Q. 2d 1889, 1890 (N.D. Ill. 1987)* ("In passing the legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion."); *Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983)* (citing legislative history of reexamination statute). In determining whether a stay is appropriate, the court is guided by the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving [*4] party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp v. 3Comm Corp., 69 F. Supp.2d 404, 406 (W.D.N.Y. 1999)* (citing cases); *cf. United Sweetner USA, Inc. v. Nutrasweet Co., 766 F. Supp. 212, 217 (D. Del. 1991)* (stating a similar test).

In this case, there are two plaintiffs, four defendants,

and several counter claimants, as well as six patents comprising dozens of claims. In addition, the written submissions in this case have been particularly voluminous; the briefing on claim construction alone, for example, constitutes 576 pages. *See* Report and Recommendation of Special Master Regarding Claim Construction at 2 (citing "copious briefing"). In these ways, the present suit is quite complex, although, perhaps, not extraordinarily so. The greater context of this suit is extraordinary, however: the plaintiffs have filed more than 300 related patent applications based upon an original patent application filed in 1981 and supplemented in 1987. Together, these applications contain an estimated 10,000 claims. Furthermore, as observed [*5] by the Special Master appointed in this case, the 1987 application alone constitutes over 300 columns of patent text and "is, by any measure, an extremely complex document." *Id.* at 2. These related applications may become relevant to the present case in respect to several issues including claim construction, enablement, adequacy of written description, indefiniteness, and inequitable conduct. *See id.* at 21. Thus, in this case, more than many, the court would benefit from a narrowing of the issues.

The reexamination process will serve this purpose. For example, the court will gain the benefit of the PTO's particular expertise, in that all prior art presented to the court will have been first considered by that agency. *See Braintree Laboratories, Inc. v. Nephron-Tech, Inc., 1997 U.S. Dist. LEXIS 2372, 1997 WL 94237, at *9 (D. Kan. 1997); Hamilton Indus., Inc. v. Midwest Folding Products Mfg., 1990 U.S. Dist. LEXIS 3138, 1990 WL 37642, at *1-2 (N.D. Ill. 1990).* Other potential efficiencies resulting from the reexamination process are numerous: (1) many discovery problems relating to the prior art may be alleviated; (2) the record of the reexamination likely would be entered at trial, reducing the [*6] complexity and length of the litigation; (3) the issues, defenses, and evidence will be more easily limited in pre-trial conferences following a reexamination; (4) the outcome of the reexamination process may encourage a settlement without further involvement of the court; and (5) if the patent is declared invalid, the suit likely will be dismissed as to that patent. *Id.* These efficiencies will result in a reduced cost of litigation for the parties and more effective utilization of the limited resources of the court. *Id.*

Thus, a stay may result in a simplification or

reduction of issues for the court's consideration, or it may dispense with the litigation entirely. These are considerable economies indeed, particularly in this case. Given the involved prosecution history of the various patents-in-suit and hundreds of related patents, the number of claim terms at issue, the inordinate amount of prior art references, and the PTO's conclusion that all of the challenged claims warrant reexamination, the court finds particular merit in permitting an additional layer of review by the PTO before expending further judicial resources. *See Digital Magnetic Systems, Inc. v. Ainsley,* [*7] *213 U.S.P.Q.290,290 (W.D.Okla. 1982)* ("Congress enacted the reexamination procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts."); *Softview Computer Products Corp. v. Haworth, Inc., 2000 U.S. Dist. LEXIS 4254, 2000 WL 1134471, at *3 (S.D.N.Y. 2000)* ("The grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims."). Furthermore, the court notes that discovery is not complete, and the trial, although scheduled, is some nine months in the future. In light of all these factors, and considering that the reexamination process will proceed "with special dispatch," *35 U.S.C. 305,* the court concludes that a stay is the most compelling alternative.

The court recognizes that a stay will cause further delay in a case that has suffered several delays already, as well as considerable distress to the plaintiffs. The court is sensitive to the plaintiffs' right to have their day in court. Nonetheless, for the reasons already mentioned, the court is convinced that a stay is appropriate in this particular case. In addition, [*8] the court reminds the plaintiffs that they affirmatively invoked the rights of the patent statute; they can hardly be heard now to complain of the rights afforded others by that same statutory framework. Thomson is legally entitled to invoke the reexamination mechanism, and the PTO has determined that reexamination is warranted. There is nothing facially untoward in that. Moreover, the court notes that if, after reexamination, the plaintiffs' patents are again upheld, the plaintiffs' rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain. *See Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc., 807 F.2d 955, 961 (Fed. Cir. 1986)* (holding that upon reissue, the burden of proving invalidity is 'made heavier') (quoting *Interconnect Planning Corp. v. Feil, 774 F.2d 1132, 1139 (Fed. Cir. 1985)).* In this light, and given the particular circumstances of this case, the court cannot find that the prejudice to the plaintiffs is undue.

Objecting to a stay, the plaintiffs also have complained of dilatory conduct by the defendants, who, in turn, have accused the plaintiffs of "burying" the PTO in claims and prior [*9] art references. *See, e.g.,* Mem. of Plaintiffs in Opp. to Defs.' Joint Motion to Stay (D.I. 488) at 5-22 (detailing ways in which the defendants allegedly "have repeatedly acted to complicate and delay the resolution of this litigation"); Defs.' Joint Brief in Support of Motion to Stay (D.I. 460) at 4 ("Many of the Harvey patents had vast numbers of cited prior art references of record, effectively burying the most relevant ones.") and 7 ("It appears that PMC sought to 'overwhelm' the PTO and the Courts.").

As a brief response to the accusation of dilatory conduct, the court notes that Thomson's request for reexamination of the *'825 patent* comprised 2,610 pages; its request regarding the '277 patent totaled 4,736 pages. It is presumed that such an effort requires an enormous expenditure of time and other resources; thus, the timing of Thomson's reexamination requests does not, necessarily, reflect undue delay. Furthermore, as noted above, Thomson was legally entitled to invoke the reexamination procedure when it did. As to the defendants' repeated complaint that the plaintiffs overwhelmed the PTO with prior art references during prosecution of the patents-in-suit, the implications [*10] of such alleged conduct will be explored at another time in the litigation, if necessary. At this stage in the process, the court is satisfied that the PTO has found "substantial new questions of patentability" raised by each of the cited references, and has determined that all of the challenged claims of the *'825 patent* necessitate a reexamination. *See* PTO's Decision Granting Reexamination, Supp. Appendix to Defs.' Joint Brief in Support of Motion to Stay (D.I. 467) at 138. Although the court regrets a further delay in the present case, it is confident that the advantages of a stay outweigh the costs.

### III. CONCLUSION

Because the PTO's reexamination of one or more of the patents-in-suit may materially affect the issues in this case, the court will grant the defendants' motion to stay. The case is stayed pending a disposition of the PTO's reexamination of patent '825, and will be stayed pending reexamination of the '277 patent, if applicable. All

2003 U.S. Dist. LEXIS 8052, *10

pending motions will be denied without prejudice; the parties may refile them following the stay and upon the entry of a new scheduling order, if applicable.

Thus, for the aforementioned reasons, IT IS HEREBY ORDERED that: [*11]

> 1. The defendants' Motion to Stay Pending Reexamination by the U.S. Patent and Trademark Office (D.I. 459) is GRANTED. The proceedings are stayed from the date of this order until further notice.

> 2. The parties shall advise the court of any decision that results from the PTO's reexamination of the *825 patent*, and any other decision of the PTO regarding reexamination of any of the other

patents-in-suit.

> 3. The plaintiffs' Motion for Leave to Assert Claim 15 of U.S. Patent 4,965,825 (D.I. 399) is DENIED without prejudice.

> 4. Thomson's Motion to Dismiss or in the Alternative for Summary Judgment (D.I. 376) is DENIED without prejudice.

> 5. Phillips' Motion to Dismiss for Lack of Standing (D.I. 396) is DENIED without prejudice.

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

Date: May 14, 2003

# EXHIBIT E

FOCUS - 9 of 63 DOCUMENTS

**MAGNA DONNELLY CORPORATION, Plaintiff, v. PILKINGTON NORTH AMERICA, INC., et al., Defendants.**

**FILE NO. 4:06-CV-126**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION**

*2007 U.S. Dist. LEXIS 17536*

**March 12, 2007, Decided**

**COUNSEL:** [*1] For Magna Donnelly Corporation, Plaintiff: David Michael Schoenherr, LEAD ATTORNEY, Howard & Howard Attorneys PC, Kalamazoo, MI; Jeffrey A. Sadowski, LEAD ATTORNEY, Kristopher K. Hulliberger, Howard & Howard Attorneys PC (Bloomfield Hills), Howard & Howard Attorneys PC (Bloomfield Hills), Bloomfield Hills, MI.

For Pilkington North America, Inc., United L-N Glass, Inc., Defendants: John Frank Rabena, LEAD ATTORNEY, Sughrue Mion PLLC, Washington, DC; Scott L. Gorland, LEAD ATTORNEY, James D. VandeWyngearde, Pepper Hamilton LLP (Detroit), Detroit, MI.

For Pilkington North America, Inc., Counter-Claimant: Scott L. Gorland, LEAD ATTORNEY, James D. VandeWyngearde, Pepper Hamilton LLP (Detroit), Detroit, MI.

For Magna Donnelly Corporation, Counter-Defendant: David Michael Schoenherr, LEAD ATTORNEY, Howard & Howard Attorneys PC (Kalamazoo), Kalamazoo, MI; Jeffrey A. Sadowski, LEAD ATTORNEY, Kristopher K. Hulliberger, Howard & Howard Attorneys PC (Bloomfield Hills), Howard & Howard Attorneys PC (Bloomfield Hills), Bloomfield Hills, MI.

For United L-N Glass, Inc., Counter-Claimant: Scott L. Gorland, LEAD ATTORNEY, James D. VandeWyngearde, Pepper Hamilton LLP (Detroit), Detroit, [*2] MI.

For Magna Donnelly Corporation, Counter-Defendant: David Michael Schoenherr, LEAD ATTORNEY, Howard & Howard Attorneys PC, Kalamazoo, MI; Jeffrey A. Sadowski, LEAD ATTORNEY, Kristopher K. Hulliberger, Howard & Howard Attorneys PC (Bloomfield Hills), Howard & Howard Attorneys PC (Bloomfield Hills), Bloomfield Hills, MI.

**JUDGES:** ROBERT HOLMES BELL, CHIEF UNITED STATES DISTRICT JUDGE.

**OPINION BY:** ROBERT HOLMES BELL

**OPINION:**

Plaintiff Magna Donnelly Corporation has filed the instant patent infringement action under *35 U.S.C. §§ 101* and *271*, alleging that Defendants Pilkington North America, Inc. and United L-N Glass, Inc. have infringed nine patents-in-suit to which Magna Donnelly is the current assignee of right. The matter presently is before the Court on Defendants' motion n1 to stay the litigation (Docket # 23) pending determination of Defendants' requests for reexamination by the United States Patent and Trademark Office ("PTO") of all of the patents-in-suit. For the reasons that follow, the motion is granted.

n1 The following are the nine patents-in-suit: *United States Patent 5,551,197 ("the '197 patent"); United States Patent 5,704,173 ("the*

2007 U.S. Dist. LEXIS 17536, *2

'173 patent"); *United States Patent 5,853,895 ("the '895 patent"); United States Patent 5,966,874 ("the '874 patent"); United States Patent 6,068,719 ("the '719 patent"); United States Patent 6,128,860 ("the '860 patent"); United States Patent 6,298,606 ("the '606 patent"); United States Patent 6,319,344 ("the '344 patent"); and United States Patent 6,871,450 ("the '450 patent").*

[*3]

## I.

The instant action was filed on October 17, 2006 against these and other Defendants. The nine patents-in-suit involve a series of bonded vehicular window assemblies and bonding methods. Plaintiff alleges that Defendants are willfully manufacturing automotive windows that infringe upon Plaintiff's patents and are thereby causing Plaintiff a loss of sales and undermining Plaintiff's competitive position.

After a stipulated dismissal of the other named Defendants, the remaining Defendants filed answers to the complaint, affirmative defenses and counterclaims on December 28, 2006. Defendants' counterclaims seek declaratory judgment on the grounds of noninfringement, invalidity and unenforceability of the patents. Plaintiff answered Defendants' counterclaims on January 17, 2007. The Court ordered a scheduling conference before the Magistrate Judge for January 29, 2006.

In the interim, on January 26, 2007, Defendant Pilkington filed requests with the PTO for reexamination of all nine patents. The requests for reexamination seek to invalidate the patents-in-suit on the grounds of prior art not considered by the PTO during prosecution of the patents-in-suit. On January 29, 2007, Defendants [*4] filed the instant motion to stay the litigation pending resolution by the PTO of the requests for reexamination. During the scheduling conference held that same date, the Magistrate Judge reserved issuing a scheduling order until after this Court had resolved the instant motion. At this date, due dates for *FED. R. CIV. P. 26(a)(1)* disclosures, fact discovery and expert discovery have not been established and no discovery has been conducted. In the parties' joint status report filed January 24, 2007, Plaintiff has requested that *Rule 26(a)(1)* disclosures be delayed until May 1, 2007.

## II.

Reexamination of patent validity is allowed under *35 U.S.C. § 301 et seq.* A reexamination may be requested at any time by any person upon showing the existence of "prior art," "consisting of patents or printed publications which that person believes to have a bearing on the patentability of any claim of a particular patent." *35 U.S.C. §§ 301, 302.* Within three months of the request, the PTO must determine "whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request, with or without consideration [*5] of other patents or printed publications." *35 U.S.C. § 303(a).* Reexamination, if granted, may result in an order cancelling the patent as unpatentable, confirming the patent, or amending the patent. *See 35 U.S.C. § 282; Akzenta Paneele + Profile GmbH v. Unilin Flooring N.C. LLC, 464 F. Supp. 2d 481, 483 (D. Md. 2006).*

"The primary purpose of the reexamination procedure is to 'eliminate trial of that issue (when the [patent] is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the [USPTO] (when a claim survives the reexamination proceedings).'" *ASCII Corp. v. STD Entm't USA, Inc., 844 F. Supp. 1378, 1380 (N.D. Cal. 1994)*(quoting *Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983)); Gladish v. Tyco Toys, 1993 U.S. Dist. LEXIS 20211, 1993 WL 625509, 29 U.S.P.Q.2d 1718 (E.D. Cal. Sept. 15, 1993).* The intent of Congress in establishing the reexamination procedure was to provide an inexpensive and rapid resolution that would provide the federal courts with the expertise of the PTO in resolving patent claims. *Patlex Corp. v. Mossinghoff, 758 F.2d 594, 602 (Fed. Cir. 1985).* [*6] Courts have noted that issuing a stay has many advantages, including the narrowing or elimination of issues, the alleviation of discovery problems, the encouragement of settlement, the benefit to the court of PTO expertise, the simplicity of introducing the PTO record as evidence at trial, and the reduction of costs for both the parties and the court. *See Lectrolarm Custom Servs. v. Vicon Indus., No. 03-2330, 2005 U.S. Dist. LEXIS 32752, 2005 WL 2175436, at *2 (W.D. Tenn. Sept. 1, 2005); Gonnocci v. Three M Tool & Mach., Inc., 2003 U.S. Dist. LEXIS 24423, 68 U.S.P.Q.2D (BNA) 1755 (E.D. Mich. Oct. 7, 2003)* (quoting *Emhart Industries, Inc. v. Sankyo Seiki Mfg. Co., 1987 U.S. Dist. LEXIS 15033, 3 U.S.P.Q.2D 1889, 1890 (N.D. Ill. 1987)); see also Softview Computer Prods. Corp. v. Haworth,*

*Inc., 2000 U.S. Dist. LEXIS 11274, 56 U.S.P.Q.2D 1633, 1635 (S.D.N.Y. 2000).*

The decision whether to issue a stay rests within the sound discretion of the district court. *Bausch & Lomb Inc. v. Alcon Lab., Inc., 914 F. Supp. 951, 953 (W.D.N.Y. 1996); Gonnocci, 2003 U.S. Dist. LEXIS 24423 at *5 [*7]* (citing *Gould, 705 F.2d at 1342.*) In determining whether to grant a stay, courts routinely have considered three factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *See, e.g., Akzenta, 464 F. Supp. 2d at 484 ; IMAX Corp. v. In-Three, Inc., 385 F. Supp. 2d 1030, 1032 (C.D. Cal. 2005); Lectrolarm, 2005 U.S. Dist. LEXIS 32752, 2005 WL 2175436, at *3; Gonnocci, 2003 U.S. Dist. LEXIS 24423 at *7; Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406-07 (W.D.N.Y. 1999).*

Defendants argue that, in the instant case, all three factors point to the granting of a stay. The Court finds that, on balance, the factors weigh heavily in favor of a stay.

A. Simplification of Issues

Defendants argue that a stay of litigation pending determination by the PTO will simplify or moot the issues before this Court. In addition, the grant of a stay will benefit the Court by ensuring the availability of the PTO's expertise [*8] and experience to resolve the remaining issues. Further, they argue that the PTO's reexamination is likely to prevent either the parties or the Court from litigating claims that may be declared void by the PTO. For all these reasons, they argue that both efficiency and judicial economy favor staying the litigation.

In response, Plaintiff contends that, because only 12% of reexamination proceedings result in the invalidation of a patent and because Plaintiff views Defendants' grounds for reexamination as weak, the litigation, in all likelihood, will not be mooted by the PTO's reexamination. While Plaintiff acknowledges that in 59% of the cases, some claims are changed during reexamination, it argues that, because trial will still likely be necessary and because invalidity of the patents will continue to be an issue, the reexamination procedure will not simplify the case.

Plaintiff's argument proves too much. The mere fact that reexamination is not likely to completely dispose of the case does not mean that issues will not be simplified by reexamination. The statistics recited by both parties clearly indicated that patent claims are invalidated or modified in over 70% of reexamination [*9] proceedings conducted. The cases cited by the parties strongly suggest that reexamination generally, though not always, simplifies litigation. *See, e.g., Gonnocci, 2003 U.S. Dist. LEXIS 24423 at *13* (noting that, even if issues are not eliminated, the PTO's decision will be admissible and will carry a presumption of validity); *Softview, 2000 U.S. Dist. LEXIS 11274 at *10* (emphasizing the significance of PTO's expertise as factor in simplification); *IMAX, 385 F. Supp. 2d at 1032* (recognizing that stay will always simplify the issues to some extent by narrowing discovery and providing PTO expertise, even if in particular case, other claims are so likely to predominate that simplification is not sufficient). Those cases cited by Plaintiff to the contrary typically rest on the particular facts and stage of the litigation in issue, where the potential for simplification is small. *See, e.g., Nexmed Holdings, Inc. v. Block Inv., Inc., No. 2:04-cv-288, 2006 U.S. Dist. LEXIS 3150, 2006 WL 149044, at *1 (D. Utah Jan. 19, 2006)* (noting that, because the defense of invalidity was waived and the case was at late stage of proceedings, stay would not simplify [*10] issues); *Cognex Corp. v. Nat'l Instruments Corp., No. Civ. A. 00-442-JJF, 2001 U.S. Dist. LEXIS 25555, 2001 WL 34368283 (D. Del. June 29, 2001)*(in light of late stage of litigation and existence of large number of claims not linked to the patent infringement claim, reexamination would not significantly simplify the case); *Gladish, 1993 U.S. Dist. LEXIS 20211, 1993 WL 625509, at *2* (because PTO does not consider the type of evidence that predominates in the case, a trial considering such evidence would remain necessary).

Moreover, courts routinely have recognized the benefits to courts of having PTO expertise and experience to inform patent trial proceedings. *See Bausch & Lomb, 914 F. Supp. at 953* ("Because the PTO is considered to have expertise in deciding issues of patentability many courts have preferred to postpone making final decisions on infringement until the PTO rules on issues before it.")(citations omitted). Congress itself has recognized that "an advantage of the reexamination process is that it allows the validity of the patent to be 'tested in the Patent Office where the most expert opinions exist and at a much reduced cost.'" *Ethicon, Inc. v. Quigg, 849 F.2d*

*1422, 1426 (Fed. Cir. 1988))* [*11] (quoting H. Rep. 1307(I), 96th Cong., 2d Sess. 4, *reprinted in* 1980 U.S.C.C.A.N. 6460, 6463; *see also Patlex, 758 F.2d at 602; Gould, 705 F.2d at 1342)*.

The Court is persuaded that reexamination is likely to simplify both the issues remaining before the Court and the trial on those issues. Nine patents are in issue and Defendants have filed reexamination petitions of between 50 and 100 pages on each. The particulars of the prior art are technical, complicated and interrelated. *See Gonnocci, 2003 U.S. Dist. LEXIS 24423 at *13.* Defendants affirmatively defend the case on the grounds of patent invalidity and they have filed a counterclaim on that issue. *Cf. Nexmed, 2006 U.S. Dist. LEXIS 3150, 2006 WL 149044, at *1.* By all parties' representations, it is statistically likely that reexamination will result in at least some modification of the claims, even if no patents are canceled. And both discovery and trial on the matter will be greatly simplified by having the opinion and expertise of the PTO before the Court. *See, e.g., Gonnocci, 2003 U.S. Dist. LEXIS 24423 at *13* (noting that the PTO's decision will be admissible and will [*12] carry a presumption of validity). Moreover, most of the issues pending in the litigation are closely related to patent validity. *Cf. Cognex, 2001 U.S. Dist. LEXIS 25555, 2001 WL 34368283, at *2* (finding little simplification where case contained many claims not related to the patent infringement claim, including copyright and trademark infringement and unfair competition). The Court therefore concludes that this factor strongly favors issuance of a stay.

### B. Stage of the Litigation

Defendants assert that a stay is particularly appropriate at this early stage of litigation, where neither party has conducted fact discovery and answers have just been served. Plaintiff does not dispute that the action is in its earliest stages. It argues instead that contemporaneous discovery in this action is appropriate in order to most quickly resolve the claim.

The Court concludes that the stage of the litigation weighs strongly in favor of granting Defendants' motion. Defendants have sought reexamination before the PTO and a stay in this Court even before case scheduling deadlines have been set. It would be difficult to conceive of a case in which this factor more strongly favored the issuance of a stay. [*13] *See Gonocci, 2003 U.S. Dist. LEXIS 24423, at *12* (granting stay where action pending

less than a year); *Softview, 2000 U.S. Dist. LEXIS 11274, at 9* (granting stay, despite fact that case had been pending three years and substantial activity had occurred, because much remained to be done before trial); *ASCII Corp., 844 F. Supp. at 1381* (noting that case had been pending less than one year); *cf. Akzenta, 464 F. Supp. 2d at 484* (finding that stage-of-litigation factor did not weigh heavily either way where some discovery had occurred but there existed a dispute about what remained).

### C. Prejudice to Non-Moving Party

Plaintiff asserts that it will be prejudiced by issuance of a stay during the pendency of the reexamination proceedings. Plaintiff has filed an extensive affidavit by Niall R. Lynam, Ph.D., Plaintiff's Senior Vice President and Chief Technical Officer, supporting three central claims of prejudice over time. First, Plaintiff contends, Defendants' past patent infringements already have jeopardized Plaintiff's hardware bonding business, which employs 200 people. Second, Plaintiff argues that it is unable [*14] to compete with manufacturers that do not respect its patents because, since it does not manufacture the glass, its proprietary technology is its principal competitive advantage. Third, Plaintiff argues that its demand will have little or no meaning if, by the time the reexamination process is concluded, competitors including Defendants have scooped its remaining hardware bonding business.

The Court is unpersuaded by Plaintiff's claims that it will be prejudiced in ways not remediable by monetary damages. First, despite Plaintiff's claims that delay would cause irreparable damage to its business, Plaintiff has not sought a preliminary injunction in this matter. Indeed, Plaintiff itself requested in the Joint Status Report that *Rule 26(a)* disclosures not be required before May 1, 2007. Further, although Plaintiff contends that it did not have clear evidence that Defendants were infringing its patent before October 3, 2006, (Lynam Aff. PP 11-14, docket # 29, Ex. 1), Plaintiff unquestionably was aware that Defendants purported to have their own process and were competing with Plaintiff as early as 2003 on projects that included specifications tailored to Plaintiff's technology. (Ash [*15] Aff. PP 4-6, docket # 25, Ex. 13; Lynam Aff. PP 6-12, docket # 29, Ex. 1.) Yet Plaintiff did not file the instant action until October 2006.

In addition, Plaintiff admits it previously has licensed its patents-in-suit. (Lynam Aff. P 12.) Even

accepting Plaintiff's claims that the license it issued was limited and does not apply to the RT Window Program, licensure to others suggests that the manufacture of Plaintiff's products by others has not been treated by Plaintiff as imminently threatening to its window business.

Plaintiff argues that courts have recognized that reexamination proceedings can take years to resolve. *See IMAX, 385 F. Supp. 2d at 1033* (noting prejudice in a delay of potentially two years); *St.-Gobain Perf. Plastics. Corp. v. Advanced Flexible Composites, Inc., 436 F. Supp. 2d 252 (D. Mass. 2006)*(noting that the average reexamination takes 21 months). Plaintiff therefore contends that it will have lost its competitive position by the time reexamination is complete.

While reexamination procedures undoubtedly take some time to resolve, the PTO is required to decide whether to grant the requests for reexamination within three months, [*16] or by April 28, 2007, before initial disclosures were even proposed by Plaintiff. n2 As a result, a stay clearly is appropriate at least during that period. Moreover, while courts have found that the average reexamination procedure takes over one-and-one-half years, *see Akzenta, 464 F. Supp. 2d at 485,* reexamination cases involved in litigation are required to "be conducted with special dispatch within the [PTO]." *35 U.S.C. § 305.* Section 2261 of the Manual of Patent Examining Procedure (MPEP) more specifically defines the statutory requirement:

> Any cases involved in litigation, whether they are reexamination proceedings or reissue applications, will have priority over all other cases.

MPEP 2261. Neither party has indicated the average amount of time for the conduct of proceedings entitled to such special dispatch. However, given the early stages of this litigation and the present litigation delays in this Court caused by judicial vacancies, a stay pending the reexamination process is unlikely to cause substantial prejudice from delay. Reexamination is likely to be completed well before adjudication would be possible in this [*17] district.

> n2 Indeed, in a supplement filed on March 8, 2006, Defendants advise the Court that the PTO already has granted reexamination of two of the

patents-in-suit because the petitions have raised "substantial new question[s] of patentability affecting claims . . . of United States Patent Number[s '173 and '874] . . . ." (Supp. to Def's Mot. for Stay, Docket # 32, Ex. 1 & 2 at 2.)

Plaintiff next represents that it will be damaged during certain automakers' bidding processes likely to occur in 2007 to 2008 because the stay will prevent a judicial determination during that time. It asserts that its Engineered Glass Division may have to close if these contracts are lost. However, as previously noted, Plaintiff has not sought to expedite this action or to obtain a preliminary injunction. As the Court has indicated, pretrial preparation and trial in this Court would not be completed in time to satisfy the 2007/2008 deadline upon which Plaintiff rests for its claim of prejudice. As a result, the claim of prejudice [*18] does not appear to comport with Plaintiff's conduct to this point.

Finally, the Court notes that, if Plaintiff's patents are ultimately found to be valid and infringed, Defendants will be responsible to Plaintiff for damages, including possible treble damages, for all of the infringing products it has sold. *See Softview, 2000 U.S. Dist. LEXIS 11274, at *10-11* (citing *35 U.S.C. § 284*). Despite Plaintiff's representations that up to 200 jobs will be lost because Plaintiff's divisions operate on an entrepreneurial basis and must justify program continuations, it is apparent from Plaintiff's own exhibits that the alleged infringements and delay are unlikely to have a significant prejudicial effect on the company. Plaintiff is a multinational corporation with $ 23 billion in sales in 2005. (Pl. Resp. to Motion to Stay, Ex. 1-B at 4.) Of those total sales, $ 1.5 billion (6.5%) were in the mirror and window division. (Pl. Resp. to Motion to Stay, Ex. 1-B at 5.) Window sales constituted only 20% of the mirror and window business. (Pl. Resp. to Motion to Stay, Ex. 1-B at 5.) By Plaintiff's own evidence, window sales amount to only 1.3% of Plaintiff's [*19] total sales, and the hardware bonding business represents only some fraction of total window sales. Plaintiff has nine "bonded hardware" programs. (Pl. Resp. to Motion to Stay, Ex. 1-B at 17.) As a result, it is clear that the RT contract would represent only a small fraction of Plaintiff's total business. The Court is unpersuaded by either Lynam's affidavit or Plaintiff's own prior conduct that delay will result in the claimed irreparable prejudice.

2007 U.S. Dist. LEXIS 17536, *19

In sum, balancing all three factors, the Court finds that issuance of a stay pending reexamination by the PTO will promote efficient and expeditious disposition of the claims, will conserve judicial resources, and will ensure that adjudication is informed by the expertise of the PTO. In light of the early stage of the proceedings and the absence of credible evidence that Plaintiff will be prejudiced in a way not fully remediable by monetary compensation, the Court concludes that a stay should issue.

**III.**

For the foregoing reasons, the Court will grant Defendants' motion to stay proceedings pending reexamination by the PTO. An order consistent with this opinion shall issue.

Date: March 12, 2007

/s/ ROBERT HOLMES BELL [*20]

CHIEF UNITED STATES DISTRICT JUDGE

# EXHIBIT F

FOCUS - 34 of 63 DOCUMENTS



Caution
As of: Mar 21, 2007

**RALPH GONNOCCI REVOCABLE LIVING TRUST, Plaintiff, v. THREE M
TOOL & MACHINE, INC., ULTRA GRIP INT'L, INC., THREE M HOLDING
CO., ULTRA GRIP NORTH, and MICHAEL A. MEDWID, Defendants.**

**Case No. 02-74796**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
MICHIGAN, SOUTHERN DIVISION**

*2003 U.S. Dist. LEXIS 24423; 68 U.S.P.Q.2D (BNA) 1755*

**October 7, 2003, Decided
October 7, 2003, Filed**

**SUBSEQUENT HISTORY:** Motions ruled upon by
*Gonnocci Trust v. Three M Tool & Mach., Inc., 2006
U.S. Dist. LEXIS 4394 ( E.D. Mich., Jan. 30, 2006)*

**PRIOR HISTORY:** *Gonnocci Trust v. Three M Tool &
Mach., 2003 U.S. Dist. LEXIS 24425 ( E.D. Mich., June
23, 2003)*

**DISPOSITION:** [*1] Defendants' Motion to Stay
District Court Proceedings Pending Outcome of Request
for Reexamination of *U.S. Patent No. 5,184,833*
GRANTED; Matter STAYED and removed from trailing
trial docket.

**COUNSEL:** For Ralph Gonnocci Revocable Living
Trust, PLAINTIFF: Rodger D Young, Steven C Susser,
Young & Susser, Southfield, MI USA.

For Three M Tool and Machine, DEFENDANT: Leonard
K Berman, Hainer & Demorest, Troy, MI USA.

**JUDGES:** PRESENT: THE HONORABLE PATRICK J.
DUGGAN, U.S. DISTRICT COURT JUDGE.

**OPINION BY:** PATRICK J. DUGGAN

**OPINION:**

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO STAY DISTRICT
COURT PROCEEDINGS PENDING THE
OUTCOME OF A REQUEST FOR
REEXAMINATION OF** *U.S. PATENT NO. 5,184,833*
**BEFORE THE U.S. PATENT AND TRADEMARK
OFFICE**

At a session of said Court, held in the U.S. District
Courthouse, City of Detroit, County of Wayne, State of
Michigan, on OCT 07 2003.

PRESENT: THE HONORABLE PATRICK J.
DUGGAN
U.S. DISTRICT COURT JUDGE

In this action, Plaintiff alleges that Defendants are
infringing *U.S. Patent No. 5,184,833* (the *'833 Patent*). n1
Defendants have filed a counterclaim seeking a
declaratory judgment that the *'833 Patent* is invalid [*2]
and unenforceable. n2 This matter is now before the
Court on a motion by Defendants, filed August 28, 2003,
to stay these proceedings pending the outcome of
Defendant Michael Medwid's application to the United
States Patent and Trademark Office ("PTO") for a

2003 U.S. Dist. LEXIS 24423, *2; 68 U.S.P.Q.2D (BNA) 1755

reexamination of the *'833 Patent*. n3 In the alternative, Defendants request an adjournment of the trial date until a date and time after November 29, 2003-- the date by which the PTO must provide an initial response to the Request for Reexamination. A hearing on Defendants' motion was held on October 2, 2003.

> n1 In Count II of the Complaint, Plaintiff also claimed that Defendants infringed *U.S. Patent No. 6,206,382* (the *'382 Patent*). The parties, however, have stipulated to the dismissal of Count II. A Stipulation and Order for Dismissal with Prejudice of Claim II was entered on September 3, 2003.

> n2 In Count I of their Counter-Complaint, Defendants also seek a declaratory judgment that the *'382 Patent* is invalid.

> n3 Plaintiff filed a Response to Defendants' motion to stay on September 22, 2003. On September 29, Defendants filed a Reply in which they ask the Court to strike Plaintiff's Response as it was filed late. Defendants note that while the Court "has admonished counsel for all parties to cooperate with one another in this litigation, it is submitted that even the civility rules do not excuse non-compliance with the local rules of the Court." *See* Reply at 1. Plaintiff's Response was due September 15. While the Court does not excuse Plaintiff's untimely filing, its Response only was seven days late. Furthermore, if the Court were to strictly enforce the local rules and thus strike Plaintiff's Response, it also would be inclined to strike Defendants' motion and reply for failing to comply with *Local Rule 5.1* (requiring top and bottom margins to be at least 1 1/2" and type size of all test *and footnotes* to be no smaller than 10 characters per inch (non-proportional) or 12 point (proportional).

[*3]

#### Procedural Background

Plaintiff filed its Complaint for patent infringement on December 2, 2002. This Court entered a Pretrial Scheduling Order on February 3, 2003, setting deadlines for filing witness lists, discovery, and the filing of motions for May 31, June 30, and July 15, 2003,

respectively. Pursuant to the February 3 Scheduling Order, the final pretrial conference was to be held on September 10, 2003. On June 30, Defendants filed a motion seeking an extension of the dates set forth in the Court's Scheduling Order. The Court granted Defendants' motion in part, extending the deadlines for discovery and the filing of witness lists and motions by sixty days. On August 4, 2003, the Court set this matter for trial on its October, 2003 trailing trial docket.

According to Plaintiff, as of September 22, 2003, both parties had conducted extensive discovery and only one deposition remained to be taken. Both parties have filed their witness lists. On July 15, 2003, Plaintiff filed a motion for summary judgment. Defendants filed a response on August 22, 2003. Defendants also filed motions for summary judgment on August 29, 2003. All three motions remain pending before the Court. [*4]

On August 29, 2003, the same date Defendants' filed their motion to stay, Defendant Michael Medwid ("Medwid") filed a Request for Reexamination with the PTO of Claims 1-20 of the *'833 Patent*. Medwid seeks to invalidate or amend the claims of the *'833 Patent*, pursuant to *35 U.S.C. Section 301*, on the basis that its inventors, Ralph Gonnocci ("Gonnocci") and Kenneth Cross ("Cross"), failed to file certain prior art references with their patent application. n4

> n4 Gonnocci and Cross were the original holders of the *'833 Patent*. Cross subsequently died, but before his death he assigned his interest in the patent to Gonnocci. Gonnocci then assigned his ownership in the patent to Plaintiff.

#### Applicable Law

Once a request for reexamination has been filed, the PTO must determine within three months "whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request, with or without consideration of other patents or printed publications. [*5] " *35 U.S.C. § 303(a)*. If a substantial new question of patentability exists, the PTO must issue an order for reexamination. Ultimately, the reexamination procedure will result in an order either cancelling the patent, confirming the patent, or amending the patent.

The decision whether to stay pending district court

Page 3

2003 U.S. Dist. LEXIS 24423, *5; 68 U.S.P.Q.2D (BNA) 1755

proceedings while the PTO's reexamination takes place, while not vested expressly by statute, has been recognized to be within the court's inherent discretionary power. *Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983).* Issuing a stay has many advantages, including:

> 1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.
>
> 2. Many discovery problems relating to prior art can be alleviated by the PTO examination.
>
> 3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
>
> 4. The outcome of the reexamination may encourage a settlement without the further use of the Court.
>
> 5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation. [*6]
>
> 6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.
>
> 7. The cost will likely be reduced both for the parties and the Court.

*Emhart Indus. v. Sankyo Seiki Mfg, Co., 1987 U.S. Dist. LEXIS 15033, 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987)*(citing *Fisher Controls Co. v. Control Components, Inc., 443 F. Supp. 581, 582 (S.D. Iowa 1977)).* The reexamination procedure "was intended 'to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts,' especially where the infringement litigation is in the early stages." *Softview Computer Prods. Corp. v. Haworth, Inc., 2000 U.S. Dist. LEXIS 11274, 56 U.S.P.Q.2d 1633, 1635 (S.D.N.Y. 2000)*(quoting *Digital Magnetic Sys., Inc. v. Ansley, 1982 U.S. Dist. LEXIS 12395, 213 U.S.P.Q.290 (W.D. Okla.*

*1982)).* The court cautioned that "parties should not be permitted to abuse the process by applying for reexamination after protracted, expensive discovery or trial preparation." *Id.*

In determining whether to grant a stay, courts have considered [*7] the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Id. at 1635-36*(quoting *Xerox Corp. v. 3Com Corp., 69 F. Supp.2d 404, 406 (W.D.N.Y. 1999)).* Despite the third argument, courts have granted stays even where discovery has been completed and even when a trial date has been scheduled or is forthcoming. *See, e.g., Emhart Indus., 3 U.S.P.Q.2d at 1891* (granting stay despite completion of costly discovery where there was no pretrial order in place, no trial schedule had been set, and virtually no trial preparations had been carried out); *Grayling Indus. v. GPAC, Inc., 1991 U.S. Dist. LEXIS 16750, 19 U.S.P.Q.2d 1872 (N.D. Ga. 1991)*(granting stay two years after case filed and one month after pretrial order submitted, particularly as six depositions remained to be taken which would result in added expense); *Loffland Bros. Co. v. Mid-Western Energy Corp., 225 U.S.P.Q. 886, (W.D. Okla. [*8] 1985)*(granting stay one and a half years after complaint filed and after trial was scheduled to commence).

**Argument**

Defendants raise several arguments in favor of their request for a stay. First, Defendants argue that the issues before the PTO in Medwid's Reexamination Request completely overlap the remaining claims before this Court. Thus awaiting the PTO's determination, Defendants argue, promotes judicial economy. Defendants contend that the PTO can more expeditiously and less expensively resolve the validity dispute involving the *'833 Patent* and the Court is better served by the expertise of the PTO on this issue. Defendants also claim that "investor confidence" will be promoted by PTO review of a "doubtful patent," as Plaintiff's stated goal is to license the *'833* [Patent] to third parties. Defendants believe that all seven advantages identified above also will be achieved by a stay of the present action.

Turning to the three factors district courts consider in determining whether to grant a stay, Defendants argue

2003 U.S. Dist. LEXIS 24423, *8; 68 U.S.P.Q.2D (BNA) 1755

that Plaintiff will not be prejudiced by a delay in this action. Most significantly, Defendants point out that the Court previously denied Plaintiff's earlier [*9] request for injunctive relief. Defendants also note that much remains to be done in this action before it is ready for trial. For example, no final pretrial conference has occurred, a joint final pretrial order has not been drafted, discussed, or entered by the Court, and extensive, additional pretrial preparations must be completed, such as motions in limine and trial briefs. Staying the proceedings while the PTO conducts its reexamination, Defendants therefore argue, will serve to protect the parties and the Court from additional undue expense and time spent preparing this matter for trial.

Defendants further contend that moving forward with these proceedings may prove wasteful if the PTO eventually determines that the '833 Patent is invalid in whole or in part. For that reason, Defendants also argue that staying this action could serve to simplify the issues and trial of the case. Defendants claim that if the PTO invalidates the '833 Patent upon reexamination, this Court will no longer have subject matter jurisdiction over Plaintiff's claim. In addition to the additional pretrial preparation that must be done, Defendants point out that three extensive summary judgment motions have [*10] been filed and remain pending in this proceeding. Finally, Defendants claim that the doctrine of primary jurisdiction supports a stay of the present proceedings pending the PTO's reexamination of the '833 Patent.

Plaintiff responds that it will be greatly prejudiced by a stay and that the proceedings will not aided by the PTO's decision. Plaintiff contends that Defendants' only reason for requesting a stay nearly ten months into litigation is to delay the case in the hopes that Gonnocci, who is in his seventies and has no income, will cause Plaintiff to drop its claims. Plaintiff doubts that Defendants honestly believe the '833 is invalid, pointing out that Defendants previously tried to obtain the '833 Patent in a state court action. Plaintiff also contends that Defendants' challenges to the validity of the '833 Patent ultimately will fail under the doctrine of assignor estoppel. Finally, Plaintiff believes that a stay is inappropriate where Defendants have intentionally waited until the eleventh hour to request a reexamination.

Staying the proceedings at this stage while the PTO conducts its reexamination, Plaintiff argues, will delay the resolution of the parties' dispute for [*11] close to twenty months (the amount of time Plaintiff claims statistics indicate reexamination proceedings last). Plaintiff points out that as time passes, memories fade, the availability of witnesses change, and the importance of the issues diminish as technology progresses. Furthermore, Plaintiff claims that the pendency of this litigation makes it difficult for Plaintiff to license the '833 Patent. Plaintiff also asserts, as it did in its motion for preliminary injunction, that Defendants are in a difficult financial situation and thus may be incapable of compensating Plaintiff down the road. For that reason, Plaintiff also asks the Court to order Defendants to post a bond pursuant to Rule 11 if it grants a stay. n5

> n5 Rule 11 does not grant the Court authority to order Defendants to post a bond now in the event Defendants are unable to pay a potential judgment in this matter. The only additional authority Plaintiff cites for its request is the district court's decision in Canady v. Erbe Elektronedizin GmbH, 271 F. Supp. 2d 64, 2002 WL 32128716 (D.D.C. 2002). Nothing in that case, however, suggests that a court may require a bond under these circumstances.

[*12]

**Analysis**

Although there are factors supporting Plaintiff's and Defendants' positions, the Court finds, on balance, that the interests of the parties and the Court weigh in favor of a stay. n6

> n6 The Court finds that a stay at least is warranted while the PTO makes its initial determination as to whether to proceed with a reexamination. If the PTO finds in its initial review that Medwid's request fails to raise "substantial new questions of patentability," Plaintiff can ask the Court to lift the stay at that time.

This action has been pending for less than a year. Undoubtably the parties have spent considerable time and resources thus far- substantial discovery has been conducted and the parties have submitted witness lists and three lengthy summary judgment motions. Yet far

Case 1:05-cv-00486-GMS    Document 230-2    Filed 03/23/2007    Page 31 of 49

Page 5
2003 U.S. Dist. LEXIS 24423, *12; 68 U.S.P.Q.2D (BNA) 1755

more time and resources remain to be spent before this matter is concluded. Two responses to motions for summary judgment must be submitted, the Court has not begun to review those motions, and much remains to be done by the parties [*13] and the Court to prepare this case for trial.

Plaintiff may be correct that Medwid did not act swiftly in seeking reexamination. Nothing in the record, however, indicates when Medwid became aware of the prior art which is the basis for his request for reexamination. Furthermore, Defendants' counsel only filed their notice of appearance on June 30, 2003. Thus the Court cannot conclude that Mediwid unnecessarily delayed seeking a reexamination or that he only is doing so now to stall this litigation.

Furthermore, the Court finds that the PTO's determination will be beneficial to the efficient resolution of this action. The PTO may resolve any remaining disputes, simplify the issues with respect to that patent, or encourage the parties to settle the remaining claims. Although not binding on this Court, the PTO's decision will be admissible and carries a presumption of validity. Furthermore, the parties already have settled their claims with respect to the '382 Patent. Perhaps the PTO's decision regarding the '833 Patent will facilitate a settlement of their remaining claims.

The Court does not find the doctrine of primary jurisdiction applicable to the issues to be decided in this case. [*14] As courts have explained this doctrine:

> The doctrine of primary jurisdiction represents a version of the administrative exhaustion requirement under circumstances in which a judicially cognizable claim is presented but "enforcement of the claim requires resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body ..."

*Goya Foods, Inc. v. Tropicana Prods., Inc., 846 F.2d 848, 851 (2d Cir. 1988)*(quoting *United States v. W. Pacific R.R., 352 U.S. 59, 64, 77 S. Ct. 161, 165, 1 L. Ed. 2d 126, 135 Ct. Cl. 997 (1956))*. The doctrine guarantees "uniformity and consistency in the regulation of business

entrusted to a particular agency" and "is intended to recognize that, with respect to certain matters, 'the expert and specialized knowledge of the agencies' should be ascertained before judicial consideration of the legal claim." *Id.* (internal citations omitted).

The Court finds the doctrine inapplicable for the following reasons. The reexamination process only is an alternative method for challenging the validity of a patent. The PTO's decision is presumptively valid, but not binding on the [*15] district court. Additional evidence may be submitted in the district court proceedings. Finally, the determination as to whether a patent is valid is a question of law "within the conventional experience of judges." *Johnson & Johnson v. Wallace A. Erickson & Co., 627 F.2d 57, 61-62 (7th Cir. 1980)*(quoting *Far East Conference v. United States, 342 U.S. 570, 574, 72 S. Ct. 492, 494, 96 L. Ed. 576 (1952))*. As the *Goya Foods* court explained in rejecting the application of the doctrine to a trademark infringement action:

> We are not dealing here with a regulated industry in which policy determinations are calculated and rates are fixed in order to calibrate carefully an economic actor's position within a market under agency control, and the PTO's decision to permit, deny, or cancel registration is not the type of agency action that secures "uniformity and consistency in the regulation of business entrusted to a particular agency." Nor does the registration determination raise "technical questions of fact uniquely within the expertise and experience of an agency."

*Goya Foods, 846 F.2d at 852* (internal citations omitted). [*16] Despite the Court's rejection of the doctrine's application to the present matter, the Court nevertheless concludes that the advantages of a stay to permit the PTO, with its technical expertise, to address Medwid's request for reexamination outweigh any prejudice to Plaintiff.

The Court is not persuaded otherwise by Plaintiff's assertion of the doctrine of assignor estoppel. That doctrine prevents a party who assigns a patent to another from later challenging the validity of the assigned patent.

2003 U.S. Dist. LEXIS 24423, *16; 68 U.S.P.Q.2D (BNA) 1755

*See Mentor Graphics Corp. v. Quickturn Design Sys., Inc., 150 F.3d 1374, 1377 (Fed. Cir. 1998).* Plaintiff anticipates that Defendants will argue that the doctrine of assignor estoppel is inapplicable because, as Defendants claimed in earlier state court proceedings, Defendant Ultra Grip Incorporated's assignment of the *'833 Patent* to Gonnocci and Cross was unlawfully accomplished. Plaintiff argues that the state court action was dismissed with prejudice and thus Defendants are precluded from arguing in these proceedings that the assignment was unlawful.

First, while the state court action may have been dismissed with prejudice, the Court lacks sufficient information about [*17] that action (particularly under what circumstances it was dismissed) to conclude that Defendants should be barred from raising that issue here. Second, the assignor estoppel doctrine is an equitable doctrine that has been asserted to bar a party from claiming patent invalidity in response to an infringement action. Plaintiff cites no authority to suggest that the doctrine bars a party from requesting the PTO's reexamination of a patent. In fact, at least two courts have held that *Section 302* of the patent statute, which permits *any person* to request a reexamination (even anonymously), supersedes contrary equitable principles. *See Total Containment Inc. v. Environ Prods., Inc., 1995*

*U.S. Dist. LEXIS 2364, 34 U.S.P.Q.2d 1254, (E.D. Pa. 1995)*(holding that "although assignor estoppel is designed to work equity in proper circumstances, courts may not ignore statutory law ... Courts are bound to follow express statutory commands under the fundamental principal that equity follows the law."); *Vitronics Corp. v. Conceptronic, Inc., 36 F. Supp.2d 440, 442 (D.N.H. 1997)*(Holding that *Section 302* places no restrictions on who may seek reexamination and this [*18] legal mandate supersedes contrary equitable principles).

Accordingly,

**IT IS ORDERED,** that Defendants' Motion to Stay District Court Proceedings Pending the Outcome of a Request for Reexamination of *U.S. Patent No. 5,184,833* Before the U.S. Patent & Trademark Office is **GRANTED;**

**IT IS FURTHER ORDERED,** that this matter is **STAYED** and thus will be removed from the Court's October trailing trial docket.

PATRICK J. DUGGAN

UNITED STATES DISTRICT JUDGE

# EXHIBIT G

FOCUS - 14 of 18 DOCUMENTS



Caution
As of: Mar 21, 2007

**ROHM AND HAAS COMPANY, Plaintiff, v. BROTECH CORPORATION, Defendant.**

**Civil Action No. 90-109-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*1992 U.S. Dist. LEXIS 3252*

**March 11, 1992, Decided**

COUNSEL: [*1] Rudolf E. Hutz, Esquire, N. Richard Powers, Esquire, and Jeffrey B. Bove, Esquire, of Connolly, Bove, Lodge & Hutz, Wilmington, Delaware, counsel for plaintiff. Of Counsel: William E. Lambert, III, Esquire of Rohm and Haas Company, Philadelphia, Pennsylvania.

Robert K. Payson, Esquire, of Potter Anderson & Corroon, Wilmington, Delaware, counsel for defendant. Of Counsel: Raphael v. Lupo, Esquire, Jack Q. Lever, Jr., Esquire, Donna M. Tanguay, Esquire, of Willian Brinks Olds Hofer Gilson & Lione, Washington, D.C.; Herbert B. Keil, Esquire, of Keil & Weinkauf, Washington, D.C.; Paul R. Rosen, Esquire, and Niels Korup, Esquire, of Spector Gadon & Rosen, P.C., Philadelphia, Pennsylvania.

JUDGES: ROBINSON

OPINION BY: SUE L. ROBINSON

OPINION:

**MEMORANDUM**

ROBINSON, U.S. District Judge

This patent infringement action was brought in March 1990 by plaintiff Rohm and Haas Company ("Rohm and Haas") charging defendant Brotech Corporation ("Brotech") with infringement of U.S. Patent Nos. *4,224,415* (" *'415*"), *4,256,840* (" *'840*"), *4,382,124* (" *'124*") and *4,818,773* (" *'773*"), all owned by Rohm and Haas. (Docket item, "D.I.", 1, 306) Patents *'415*, *'840* and *'124* "relate to the processes for the preparation of macroreticular [*2] cross-linked copolymer beads and adsorbents or [ion exchange resins] made therefrom." (D.I. 88 at 11) The fourth patent, *'773*, "is directed to alkylamin ophosphonic chelating resins made in a specified way, the process of making such [ion exchanges resins], and the various methods of using the resins." (D.I. 88 at 13) Since June of 1990, the parties have engaged in protracted and often argumentative discovery. The Court ordered discovery to conclude on April 15, 1992 with a three week bench trial scheduled to commence on October 13, 1992. (D.I. 248) On September 13, 1991, an anonymous third party requested the Patent & Trademark Office ("PTO") to reexamine Patent *'415*. (D.I. 286, Ex. A) The PTO granted the request for reexamination on the grounds that it raised a substantial new question of patentability affecting claims 1-2, 4-12 of Patent *'415*. (D.I. 287, Ex. A) In view of the PTO's action, Brotech now moves for a stay of the entire proceedings pending completion of the reexamination process. (D.I. 287)

Reexamination of patentability is permissible under *35 U.S.C. § 301* et seq. A request may be made at any time to the PTO and "must be based upon prior art

1992 U.S. Dist. LEXIS 3252, *2

patents or publications [*3] which raise 'a substantial new question of patentability'". *Emhart Industries, Inc. v. Sankyo Seiki Mfg., 3 USPQ2d 1889, 1890 (N.D.Ill. 1987)*. Within three months, the Commissioner of Patents determines whether the request raises a substantial new question of patentability, *35 U.S.C. § 303*, and if so, orders a reexamination, which occurs with only the PTO and the patent owner participating. *35 U.S.C. § 306*. The "ultimate result of a reexamination procedure is an order either canceling the patent as unpatentable, confirming the patent or amending the patent. Orders of confirmation or amendment carry the usual presumption of validity accruing to patents and patent reissues." *Grayling Industries, Inc. v. GPAC, 19 USPQ2d 1872 (N.D.Ga. 1991)*. A "patentee whose claims are twice rejected . . . may appeal to the Board of Patent Appeals and Interferences" and, if still unsatisfied, "may appeal to either United States Court of Appeals for the Federal Circuit or the United States District Court for the District of Columbia." *United Sweetener USA, Inc. v. Nutrasweet Co., 766 F.Supp. 212, 215 n.5 (D.Del. 1991)* (citations omitted). [*4]

The decision to stay proceedings pending the outcome of reexamination rests within the discretion of the Court. *United Sweetener USA, Inc. v. Nutrasweet Co., 766 F.Supp. at 215*; *Ingro v. Tyco Industries, Inc., 227 USPQ 69, 70 (N.D.Ill. 1985)*. A stay shifts to the PTO the essential issue of whether a patent in suit is actually valid; it does not terminate the case. *Emhart Industries, Inc. v. Sankyo Seiki Mfg., 3 USPQ2d at 1890*. Although not expressly mandated by statute, the legislative history suggests the reexamination procedure was created to "provide the federal courts with the expertise of the PTO." *Grayling Industries, Inc. v. GPAC, 19 USPQ2d at 1872; Patlex Corp. v. Mossinghoff, 758 F.2d 594, 601-603 (Fed.Cir. 1985)* (outlining three main benefits behind reexamination statute), modified on other grounds *771 F.2d 480 (1985); Emhart Industries, Inc. v. Sankyo Seiki Mfg., supra* (noting seven benefits of PTO examination). In determining "whether to grant a stay, 'a district court must evaluate the possible damage, hardship and inequities [*5] to the parties to the lawsuit in the relationship of the stay to the fulfillment of judicial objectives of simplification of the issues in question and trial of the case'". *United Sweetener USA, Inc. v. Nutrasweet Co., 766 F.Supp. at 217*.

According to Brotech, the PTO may ultimately invalidate Patent *'415*, thereby resolving or mooting some

of the issues in controversy. To promote judicial economy, and since neither party will be prejudiced, defendant urges the Court to await the benefit of a decision by the PTO. Furthermore, since Rohm and Haas has acknowledged that Patents *'124* and *'840* are related to *'415* (D.I. 88) and, therefore, may be implicated by the decision as to Patent *'415*, Brotech advises that the proceedings as to all three patents should be stayed. With regard to the fourth patent, *'717*, Brotech is willing to proceed, although warning that it would be more efficient to stay the entire action.

Rohm and Haas objects to a stay of the proceedings on three grounds. First, plaintiff contends reexamination will not moot any of the issues in controversy because it is unlikely that the *'415* will be invalidated or even narrowed in scope, nor will Patents [*6] *'124* or *'840* be affected. Relying on raw statistics from the PTO (D.I. 306, Ex. 9), Rohm and Haas argues that the PTO's grant of reexamination in this case is insignificant as such review is generally automatic. And even where reexamination has occurred, the results are uncompelling: 24% of all claims were confirmed, 64% of all patents were changed somewhat and 12% of all claims were canceled. (D.I. 306, Ex. 9 at p.8) Rohm and Haas further avers that the PTO's reexamination is inconsequential since Brotech was aware of the prior art relied on by the anonymous requestor, yet has not indicated an intention to develop its defense accordingly.

In response, Brotech turns the statistics to demonstrate that the procedure may affect the patent in issue since in 76% of all the cases reexamined, a change or invalidation of one or more of the patent claims occurred. Any change in the *'415* will also affect the scope of the *'124* and *'840*, Brotech contends, because Rohm and Haas has admitted a relationship between the three patents. (D.I. 88) Brotech further denies that its knowledge of the prior art asserted by the anonymous requestor is irrelevant to the PTO's reexamination and to the appropriateness [*7] of the stay; rather, the Court should focus on whether a stay would simplify the issues and advance judicial economy. *United Sweetener USA, Inc. v. Nutrasweet Co., 766 F.Supp. at 217*.

While the statistics presented by Rohm and Haas are illuminating, we find its first argument against a stay unpersuasive. As recognized by Judge Roth, a stay pending reexamination can simplify the issues, present technical expertise from the PTO in relevant issues and

assist in preparation for trial. *United Sweetener USA, Inc. v. Nutrasweet Co., supra; Lofflands Bros. Co. v. Mid-Western Energy Corp., 225 USPQ 886, 887 (W.D.Okla. 1985)*. The statistics presented demonstrate the reexamination process has the potential to invalidate, transform or even strengthen Patent *'415*. Pondering about the likelihood or probability of the outcome, however, is unimportant as we find the technical expertise to be gained by a PTO decision which may clarify the issues with regard to discovery and ultimately for trial weighs toward deferring to the reexamination procedure. *Loffland Brothers Co. v. Mid-Western Energy Corp., 225 USPQ at 887; Emhart Industries, Inc. v. Sankyo Seiki Mfg., 3 USPQ2d at 1892;* [*8] *Parker Hannifin Corp. v. Davco Mfg. Corp., 13 USPQ2d 1412 (N.D.Ohio 1989)*. Brotech's alleged knowledge of the prior art in issue is inconsequential since there examination request was brought by an anonymous third party.

Rohm and Haas next asserts the reexamination proceeding could take an inordinate amount of time and a stay would, therefore, delay the case indefinitely. Since this case is in the advanced stages of litigation with less than two months remaining in discovery and a trial scheduled, Rohm and Haas urges the Court to keep the case on track. In reply, Brotech disputes that a stay at this stage of the proceedings is precluded. *Grayling Industries, Inc. v. GPAC, Inc., 19 USPQ2d at 1872*. In an attempt to alleviate Rohm and Haas' concern over the indefinite stay, Brotech notes that a stay may be lifted at any time when the Court finds it is no longer appropriate. *Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir.), cert. denied 464 U.S. 935 (1983)*.

Although this action has been pending on the Court's docket for over a year, the proceedings have not advanced too far to preclude [*9] a stay, especially considering that trial is scheduled to commence in over seven months, no pretrial order is in place, nor has the Court decided any dispositive motions on the merits. (D.I. 248, P3; D.I. 308)

Moreover, Rohm and Haas' invocation of two prior decisions of this Court for denials of stays at certain stages in litigation is uncompelling. *General Tire & Rubber Company v. Watson-Bowman Associates, Inc., 193 USPQ 479 (D.Del. 1977); E.I. DuPont de Nemours v. Phillips Petroleum Co., 711 F.Supp. 1205 (D.Del. 1989)*. First, in *General Tire & Rubber Company*, the case progressed through "years of extensive discovery and a number of rulings" before plaintiff moved to stay the proceedings before the reexamination process was even initiated. Extensive discovery had occurred over a few years and the trial was postponed once before plaintiff moved to stay. The Court denied the motion and ordered the trial to proceed in order to prevent additional delay. In so doing, the Court recognized the benefits of the "PTO's input", but declined the stay because the case was nearly five years old and the "public interest in the prompt and final [*10] resolution of disputes, especially in patent matters, militates in favor of refusing to postpone this trial once again." *193 USPQ at 483*.

Similarly, in *Phillips Petroleum*, the case had progressed through trial, appeal and remand before the plaintiff argued for the stay. With specific issues to resolve in remand, the Court discounted the parties' maneuvering and refused to order the stay where there was a demonstrated tactical advantage to be gained by one party. *711 F.2d at 1209 n.9*.

The case at bar has neither progressed to the advanced and protracted stages of litigation, nor fermented on the docket for an inordinate period to justify application of *General Tire* or *Phillips Petroleum*. Rather, the more pertinent reasoning rests with a more recent decision, *United Sweetener*, where the Court granted the stay of all proceedings pending Nutrasweet Co.'s appeal of the adverse reexamination proceeding to the Board of Patent Appeals and Interferences. *766 F.Supp. at 213*. The litigation had proceeded through limited discovery on the two claims in issue before the PTO and the Court had considered only pretrial motions. [*11] See *United Sweetener USA, Inc. v. Nutrasweet Co., 760 F.Supp. 400 (D.Del. 1991)*. The Court concluded the benefits of a PTO decision and a respect for the resources already expended thereto outweighed proceeding with the litigation and, thereby, prevented a race between the Court and the PTO to determine patent validity. *766 F.Supp. at 217*. We further read *United Sweetener* as consistent with *Grayling Industries v. GPAC, 19 USPQ2d at 1872*. There on facts slightly more similar to those at bar the court granted a stay pending reexamination even though the action had been pending for over two years and a pretrial order was accepted and signed by the court. Observing that, the "interest underlying the reexamination procedure doubtlessly would have been served better by an earlier filing of the petition for reexamination" by plaintiff, the court

nonetheless concluded that the benefits of a PTO review outweighed the delinquency. *19 USPQ2d at 1873.* While the facts herein have not advanced as far as Grayling, we find the benefits delineated therein, as well as in United Sweetener, outweigh Rohm and Haas' [*12] second argument against a stay.

Finally, Rohm and Haas contends Brotech will gain an unfair tactical advantage by a cease of activity since a related case, Purolite International Ltd. v. Rohm and Haas, C.A. No. 91-CV-2740 ("the Pennsylvania action") filed by Brotech in the Eastern District of Pennsylvania, will proceed to final adjudication more quickly than this action. Essentially, the Pennsylvania action was brought by Brotech and its subsidiary Purolite against Rohm and Haas and others for claims based on civil RICO, antitrust and common law fraud. Brotech was forced to sever involvement in the Pennsylvania case by order of the Court. (D.I. 159) Rohm and Haas traces with great detail the history of both cases and surmises, based on the conduct of counsel for Brotech, that the urgency to stay is yet another attempt to derail this case so Rohm and Haas will be forced to wrongfully defend the validity of its patents in Philadelphia even though it moved first in this Court for relief. Rohm and Haas asserts that such a result will greatly prejudice it. (D.I. 308) *E.I. DuPont de Nemours v. Phillips Petroleum, 711 F.Supp. at 1208; Freeman v. Minnesota Mining & Mfg. Co., 661 F.Supp. 886, 888 (D.Del. 1987).* [*13] In response, Brotech denies Rohm and Haas' characterizations and advises that even if the stay is granted, the Pennsylvania action is proceeding so slowly that the case at bar will go to trial first.

Rohm and Haas' hypothesis of tactical advantage and improper motive is unsubstantiated. Since Brotech neither requested nor can participate in the PTO proceedings, the assertion that the reexamination and stay were instituted for a tactical advantage is nonsensical. The record reflects the opportunity for a stay flowed unconditionally to Brotech and not as part of a devious scheme directed against Rohm and Haas. Even if a tactical advantage flows to Brotech, a stay is still

appropriate as the case is not in the advanced stages of litigation. *United Sweetener USA, Inc. v. Nutrasweet Co., 766 F.Supp. at 218.* Moreover, the proceedings and conduct of the parties as well as the court in the Pennsylvania action are irrelevant to the issue of whether a stay is appropriate. While Rohm and Haas has provided a specific historical observation of Brotech's alleged inadequacies, we decline to deny a stay which we have found to be legally warranted merely as a means of punishing [*14] a party for past conduct or for allegedly suspect motives.

Having found a stay is warranted, we turn to consider the scope of this relief. First, in light of Rohm and Haas' acknowledgement of relatedness among Patents '415, '840 and '124 (D.I. 88), the issue becomes whether Patent '773 should likewise be stayed. Although Brotech is willing to concede to Rohm and Haas and allow the case to proceed as to the one patent, we are unconvinced that this approach would be the most efficient, least complex and best expenditure of judicial resources. Rather, the stay should cover all four patents in suit. To further promote efficiency, a stay of all discovery is appropriate. Given the parties' demonstrated difficulties with discovery as well as potential ramifications of the PTO decision as outlined above, our conclusion as to the appropriateness of the stay likewise applies to all discovery.

While plaintiff may perceive our decision as stagnating this action indefinitely, we are mindful that the Federal Circuit has warned that stays will be vacated when they work to place the parties "effectively out of court." *Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed.Cir. 1983).* [*15] To prevent this foreclosure and to promote the Court's involvement, Rohm and Haas will advise the Court regularly as to the status of the reexamination proceedings. If at any time the PTO proceeding runs counter to the benefits of deference as outlined above, the stay will be lifted.

An Order consistent with this Memorandum Opinion shall issue.

# EXHIBIT H

Page 1

LEXSEE 2004 U.S. DIST. LEXIS 16812,AT 35



Caution
As of: Mar 20, 2007

**MIDDLETON, INC., Plaintiff, vs. MINNESOTA MINING AND MANUFACTURING COMPANY, Defendant.**

**No. 4:03-cv-40493**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF IOWA, CENTRAL DIVISION**

*2004 U.S. Dist. LEXIS 16812*

**August 24, 2004, Decided**
**August 24, 2004, Filed**

**DISPOSITION:** [*1] Defendant's motion for stay granted.

**COUNSEL:** For MIDDLETON INC, plaintiff: Joseph A Grear, George C Summerfield, Keith A Vogt, STADHEIM & GREAR, CHICAGO, IL. Suzanne J Levitt, DRAKE UNIVERSITY, DES MOINES, IA. Jonathan G Bunge, BUNGE LAW FIRM PC, CHICAGO, IL.

For MINNESOTA MINING AND MANUFACTURING COMPANY, defendant: David M Swinton, AHLERS & COONEY PC, DES MOINES, IA. William A Streff, JR, David Kenneth Callahan, Mary E Zaug, Karen J Nelson, KIRKLAND & ELLIS LLP, CHICAGO, IL. Kevin H Rhodes, 3M INNOVATIVE PROPERTIES COMPANY, ST PAUL, MN.

For MINNESOTA MINING AND MANUFACTURING COMPANY, counter-claimant: David M Swinton, AHLERS & COONEY PC, DES MOINES, IA. William A Streff, JR, David Kenneth Callahan, Mary E Zaug, Karen J Nelson, KIRKLAND & ELLIS LLP, CHICAGO, IL. Kevin H Rhodes, 3M INNOVATIVE PROPERTIES COMPANY, ST PAUL, MN.

For MIDDLETON INC, counter-defendant: Joseph A Grear, George C Summerfield, Keith A Vogt, STADHEIM & GREAR, CHICAGO, IL. Suzanne J Levitt, DRAKE UNIVERSITY, DES MOINES, IA. Jonathan G Bunge, BUNGE LAW FIRM PC, CHICAGO, IL.

**JUDGES:** JAMES E. GRITZNER, [*2] JUDGE, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JAMES E. GRITZNER

**OPINION:**

**ORDER GRANTING DEFENDANT'S MOTION TO STAY**

This matter is before the Court on Defendant's Motion to Stay (Clerk's No. 170). Defendant brought the motion as a result of a recently granted reexamination n1 of the patent-in-suit by the Patent and Trademark Office ("PTO"). Based on Defendant's request for expedited relief, an oral hearing was held on Friday, August 13, 2004, via telephone. Attorney George C. Summerfield appeared on behalf of the Plaintiff; attorneys David Callahan and Karen Nelson appeared on behalf of the Defendant. Following the hearing, the Court took the matter under advisement and finds Defendant's motion is

2004 U.S. Dist. LEXIS 16812, *2

now fully submitted and ready for ruling.

> n1 While the PTO officially granted an *inter partes* reexamination, counsel for Defendant noted at the hearing that this was clerical error, and the PTO is in the process of rectifying the mistake. The reexamination must necessarily be *ex parte* due to the age of the patent at issue. This change has no effect on the parties' arguments or the Court's analysis of the motion to stay.

[*3]

## PROCEDURAL    HISTORY    AND BACKGROUND FACTS

The Plaintiff, Middleton, Inc. ("Middleton"), commenced this action against the Defendant, Minnesota Mining and Manufacturing Co. ("3M"), in the United States District Court for the Northern District of Illinois, Chicago Division, on October 17, 1996. After much litigation activity in that district, the Honorable James F. Holderman of the Northern District of Illinois transferred the action to this Court on August 29, 2003. Jurisdiction is proper pursuant to *28 U.S.C. § 1331*, the federal question statute, and *28 U.S.C. § 1338(a)*, as this case arises under the federal patent laws, *35 U.S.C. §§ 101 et seq.*

The lawsuit alleges infringement of a patent held by Middleton, specifically, *U.S. Patent No. 4,944,514* ("the *'514 patent*"), by 3M. Trial is scheduled for the week beginning October 12, 2004. The Court also has three summary judgment motions pending. The first motion was filed by Middleton and pertains to infringement. The second and third motions, filed by 3M, pertain to validity and infringement, respectively. 3M filed an application for reexamination n2 and learned [*4] on July 26, 2004, that the PTO had granted the request. The pending reexamination prompted the current motion to stay, which Middleton has resisted.

> n2 Out of courtesy, 3M made the Court aware of its pending application for reexamination. While the PTO was making its decision, the present action moved forward in accordance with the scheduling order.

## ANALYSIS

3M has moved to stay this matter based on the PTO's granted reexamination of the patent-in-suit. This case has a long and convoluted history even before the present circumstances giving rise to this motion. Prior to even coming to rest before this Court, this action proceeded from the United States District Court for the Northern District of Illinois to the Federal Circuit and back multiple times. Now, the present motion comes after eight years of litigation and with just over two months remaining before trial. Middleton resists the motion based primarily on the short time left before trial and the delay in seeking reexamination. Middleton also contends [*5] 3M lacks the authority to even bring the pending motion.

Briefly, the PTO recently granted n3 3M's request for reexamination of the *'514 Patent* based on the determination that the multiple independent prior art references identified by 3M in its application "raised substantial new questions of the patentability of claims 4-7," the patent claims at issue in the present infringement action. n4 Based upon this determination, 3M contends "it is now highly likely that the PTO will either declare these claims of [the *'514 Patent*] invalid, or require Middleton to narrow the claims to avoid the prior art references." See *Tap Pharm. Prods. v. Atrix Labs., Inc., 2004 U.S. Dist. LEXIS 3684, 2004 WL 422697, at *2 (N.D. Ill. March 4, 2004)* ("There is a significant chance that the PTO will either invalidate this patent or drastically decrease its scope."). n5 3M contends the result of the reexamination could end or dramatically impact the remaining issues in this case, especially considering the PTO found all 13 references cited in the reexamination patent, either alone or in combination, relevant to patentability. Therefore, 3M requests the Court stay all proceedings in this case pending the outcome [*6] of the reexamination by the PTO. Specifically, 3M argues the stay should be granted because this will allow for the most efficient use of the Court's resources, it will simplify the issues for trial, and it will not unduly prejudice Middleton.

> n3 The determination was mailed by the PTO on July 19, 2004, and received by 3M on July 26, 2004.

> n4 The prior art references identified by 3M consist of the following: *U.S. Patent No. 3,785,102* ("Amos"); *U.S. Patent No. 4,151,319*

("Sackoff"); *U.S. Patent No. 4,543,765* ("Barrett"); *U.S. Patent No. 4,328,274* ("Tarbutton"); Russian Patent Publication SU 1,111,880 ("Shevchenko"); *U.S. Patent No. 3,665,543* ("Nappi"); Japanese Patent Document Sho 61-98834 ("Shirasu"); Unexamined German Patent Application Number 1,809,794 ("Wilson"); *U.S. Patent No. 3,788,941* ("Kupits"); *U.S. Patent No. 2,987,103* ("Yakubik"); *U.S. Patent No. 4,221,620* ("Milne"); *U.S. Patent No. 4,095,340* ("Kingsley"); and *U.S. Patent No. 4,115,917* ("Charon").

n5 "Generally speaking, the PTO invalidates 10% of the patents it reexamines and amends the claims in 64%." *Tap Pharm. Prods., 2004 U.S. Dist. LEXIS 3684, 2004 WL 422697, at *2.*

[*7]

## A. Statutory Authority to Request a Stay

Middleton first argues that 3M lacks the statutory authority to request a stay. Middleton bases this assertion on an examination of the statutes governing patent reexamination. Pursuant to *section 318* of the Patent Statute,

> Once an order for *inter partes* reexamination of a patent has been issued under section 313, *the patent owner* may obtain a stay of any pending litigation which involves an issue of patentability of any claims of the patent which are the subject of the *inter partes* reexamination order, unless the court before which such litigation is pending determines that a stay would not serve the interests of justice.

*35 U.S.C. § 318* (emphasis added).

Middleton claims this section clearly limits the rights set forth to those of the patent owner. In contrast, *section 311* of the Patent Statute provides that "*any person* at anytime may file a request for *inter partes* reexamination . . . ." *35 U.S.C. § 311(a)* (emphasis added). When Congress uses different terms in a statute, the presumption is that those terms have different meanings. See *Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 497, 120 L. Ed. 2d 379, 112 S. Ct. 2589 (1992).* [*8]

Therefore, according to Middleton, while "any person" may file an *inter partes* reexamination request, only "the patent owner" may seek a stay of litigation once such a request is granted.

Further, courts generally refer to *Federal Rule of Civil Procedure 1 ("Rule 1")*, allowing for "the just, speedy, and inexpensive determination of every action," when reciting their authority to grant a stay of proceedings. See, e.g., *W. Tenn. Chapter of Associated Builders & Contractors, Inc. v. City of Memphis, 138 F. Supp. 2d 1015, 1029 (W.D. Tenn. 2000).* Regulations cannot, however, trump the plain language of conflicting statutes. *Ellis v. GMAC, 160 F.3d 703, 709 (11th Cir. 1998)* (quoting *Robbins v. Bentsen, 41 F.3d 1195, 1198 (7th Cir. 1994))*; see also *Caldera v. J.S. Alberici Constr. Co., 153 F.3d 1381, 1383 n.** (Fed. Cir. 1998)* (finding that "statutes trump conflicting regulations"). Because the relevant statute provides that "the patent owner" can ask for a stay in the event of an *inter partes* reexamination, Middleton contends that *Rule 1* does not [*9] give the Court the broader authority to grant such a request by 3M, which is not the patent owner.

This contention is easily resolved as Middleton disregards the Court's inherent discretionary power to issue a stay. See *Softview Computer Prods. Corp. v. Haworth, Inc., 2000 U.S. Dist. LEXIS 11274, 2000 WL 1134471, at *2 (S.D.N.Y. Aug. 10, 2000)* (finding "there is no question that a district court in which an infringement action has been filed has the discretion to stay the infringement action pending the outcome of the reexamination proceeding") (citing *Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)*); see also *Robert H. Harris Co. v. Metal Mfg. Co., 1991 U.S. Dist. LEXIS 16086, 1991 WL 217666, at *3 (E.D. Ark. June 21, 1991)* ("Whether the action should be stayed pending the outcome of the reexamination proceeding before the PTO resides in the discretion of the court."). The Court has this discretion even though the reexamination procedure does not expressly provide for an automatic stay of parallel district court proceedings. *Softview Computer Prods. Corp., 2000 U.S. Dist. LEXIS 11274, 2000 WL 1134471, at *2* (citations omitted); see also *Grayling Industries v. GPAC, Inc., 1991 U.S. Dist. LEXIS 16750, 1991 WL 236196, at *1 (N.D. Ga. March 25, 1991)* [*10] ("The decision whether to stay proceedings in district court while a reexamination by the PTO takes place, while not vested expressly in the discretion of the district court by the statute, has been

recognized to be within the district court's inherent discretionary power.").

As the courts have recognized, "Congress stated its approval of district courts liberally granting stays within their discretion" when the committee stated "'it is believed by the committee that *stay provisions are unnecessary in that such power already resides with the Court . . . .'*" Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., 1987 WL 6314, at *2 (quoting H.R. Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4, reprinted in 1980 U.S. Code Cong. & Ad. News 6460, 6463 (emphasis added)); see also *Fisher Controls Co. v. Control Components Inc., 443 F. Supp. 581, 581 (S.D. Iowa 1977)* ("The district court's power to stay proceedings has been drawn purposefully broad and is discretionary."). Indeed, "courts have routinely stayed infringement actions pending the outcome of reexamination proceedings," *Softview Computer Prods. Corp., 2000 U.S. Dist. LEXIS 11274, 2000 WL 1134471, at *2* [*11] (citations omitted), and Middleton has cited to no authority supporting the limitation it asserts. Accordingly, this Court finds it has the authority to issue a stay in the present matter if the circumstances weigh in favor of staying the proceedings. See *Gould v. Control Laser Corp., 705 F.2d 1340, 1341-42 (Fed. Cir. 1983).* n6

> n6 In addition, as noted in footnote 1, this is an *ex parte* reexamination, while the statutes relied on by Middleton in raising this argument apply to *inter partes* reexaminations.

**B. Standard for Motion to Stay**

Generally, courts consider the following factors in determining whether to grant a stay: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Softview Computer Prods. Corp., 2000, U.S. Dist. LEXIS 11274, 12000 WL 1134471, at *2-3* (quoting [*12] *Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)* (citations omitted)). In other words, based on these factors the Court determines whether the benefits of a stay outweigh the associated costs.

The advantages that may result from a stay of the district court proceedings pending completion of reexamination by the PTO include,

> "1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.
>
> 2. Many discovery problems relating to prior art can be alleviated by the PTO examination.
>
> 3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
>
> 4. The outcome of the reexamination may encourage a settlement without the further use of the Court.
>
> 5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
>
> 6. Issues, defenses, and evidence will be more easily limited in pretrial conferences after a reexamination.
>
> 7. The cost will likely be reduced both for the parties and the Court."

Emhart Indus., Inc., 1987 WL 6314, at *2 (quoting *Fisher Controls Co., 443 F. Supp. at 582 (S.D. Iowa 1977)).* [*13] n7 Reexamination may result in the elimination of most, if not all, of the issues remaining in the pending litigation. See *Gould, 705 F.2d at 1342.* If not found invalid, the reexamination will at least likely result in a narrowing and simplifying of the issues before the Court. n8 See Loffland Bros. Co. v. Mid-Western Energy Corp., 1985 WL 1483, at *2 (W.D. Okla. Jan. 3, 1985). In addition, the technical expertise provided by the reexamination proceeding will be helpful to the Court on any issues that remain. See *Gould, 705 F.2d at 1342.*

> n7 "Although not binding on the Court, the PTO's determination will be admissible and will carry a presumption of validity." *Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach.*

*Co., 68 U.S.P.Q.2d 1755, 1759 (E.D. Mich. 2003).*

n8 This is because the scope of the patent claims, which the PTO may narrow or otherwise limit, controls the outcome of any subsequent infringement analysis. See *Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1344 (Fed. Cir. 2002)* (finding "an assessment of whether an accused device infringes claims of a patent necessarily involves both an identification and interpretation of the asserted claims, and a comparison of the properly interpreted claim limitations to the elements of the accused device").

[*14]

Plaintiff makes three primary arguments against issuance of a stay. First, Middleton argues the issuance of a stay will not promote judicial economy. Second, Middleton urges the Court to deny the stay based on 3M's delay in filing for reexamination. Third, Middleton contends it will be prejudiced if the stay is granted. In the alternative, if the Court determines a stay is warranted, Middleton requests the Court grant a stay only as to those issues summarized before the PTO. Each of these contentions is summarized and discussed below.

**1. Judicial Economy**

Both parties accept that one factor in determining the propriety of a stay of proceedings in the face of reexamination is the judicial economy that such stay would promote. Middleton contends that, contrary to 3M's assertions, a stay would not promote judicial economy at all in this case because of the amount of preparation by the parties thus far. This matter has now been pending for eight years, and that fact alone would seem to argue strongly against a stay. However, despite the lengthy pendency of this matter in the Northern District of Illinois, the validity of the *'514 patent* has only been explored by the parties for a little over [*15] a year, in isolation hardly an unusual period of time for development of such issues.

According to Middleton, the court in Toro Co. v. L.R. Nelson Corp. ruled a stay was unwarranted under similar circumstances.

This suit has been pending in litigation for

almost 3 1/2 years. Before the motion for stay was filed, the court had under advisement a motion by defendant for summary judgment, which may well be dispositive of the issue of validity of asserted claims 14 and 15. Those factors militate against a stay at this stage of the proceedings.

The pendency of this suit does not necessarily preclude any further proceedings which the Patent Office may choose to pursue. It is the opinion of the court that its granting of a stay order would accomplish little, other than the delay of disposition of a suit which has, until now, run an overly protracted course.

*Toro Co. v. L. R. Nelson Corp., 223 U.S.P.Q. 636, 638 (C.D. Ill. 1984).*

Middleton contends that the factual circumstances impacting judicial economy in Toro and in the present case are vastly different than those involved in the cases cited by 3M. See *Tap Pharm. Prods., 2004 U.S. Dist. LEXIS 3684, 2004 WL 422697, at *1 [*16]* ("Plaintiffs have known from the start of this case three months ago that the pending reexaminations could create grounds for a stay. As of yet, this case has not progressed beyond the initial pleadings stage; the parties have not engaged in any discovery and have not filed any other substantive motions."); *Ralph Gonnocci Revocable Living Trust, 68 U.S.P.Q.2d at 1758* ("This action has been pending for less than a year. Undoubtably the parties have spent considerable time and resources thus far - substantial discovery has been conducted and the parties have submitted witness lists and three lengthy summary judgment motions. Yet far more time and resources remain to be spent before this matter is concluded. Two responses to motions for summary judgment must be submitted, the Court has not begun to review those motions, and much remains to be done by the parties and the Court to prepare this case for trial."); *Softview Computer Prods. Corp., 2000 U.S. Dist. LEXIS 11274, 2000 WL 1134471, at *3* ("Although there has been a great deal of activity in this litigation to date, much remains to be done before the case is ready for trial. Discovery is not yet completed, extremely voluminous [*17] summary judgment motions have been served, the

Markman hearing has not yet been held and the Pretrial Order has not yet been prepared."); *Robert H. Harris Co., Inc., 1991 U.S. Dist. LEXIS 16086, 1991 WL 217666, at *4* ("This action has been pending less than a year. Although it is set for trial next month, the Court is not persuaded that this a case which has 'run an overly protracted course' . . . The parties appear not to have engaged in expensive discovery or extensive pretrial preparation") (citations omitted); Emhart Indus., Inc., 1987 WL 6314, at *3 (noting that "substantially no trial preparations have been carried out -- there is no pretrial order in place and no trial schedule has been set"). Arguably, none of these cases was at the stage of litigation that the present case indicates.

In the present action, all summary judgment motions have been fully briefed, and discovery appears essentially complete. Accordingly, Middleton claims a stay at this point would do little to serve the interests of judicial economy, and would only have the effect of further delaying final resolution of this matter, which has already been pending far too long.

Additionally, Middleton [*18] contends 3M's reliance in part on Standard Havens Products, Inc. v. Gencor Industries, Inc. is misplaced as Middleton does not base its opposition to the present motion to stay on the proposition found to be faulty. See *Standard Havens Prods. v. Gencor Indus., 996 F.2d 1236, 1993 WL 172432, at *1 (Fed. Cir. May 21, 1993)* (reversing the lower court's decision denying a stay, as such decision was based upon the obviously incorrect proposition that a "reexamination decision can have no effect on this infringement suit even if the reexamination decision becomes final."). n9

> n9 Middleton also notes that this decision is unreported and, as such, "shall not be employed as precedent by this court, and may not be cited by counsel, except in support of a claim of res judicata, collateral estoppel, or law of the case." *Fed. Cir. R. 47.8.* However, the decision is relevant not as precedent but to demonstrate the final result of issues similar to those in the present case.

At least one court [*19] found the fact that discovery is complete and the case set for trial has been found to be the most compelling reason to justify denial

of a motion to stay pending reexamination by the PTO. See *Enprotech Corp. v. Autotech Corp., 1990 U.S. Dist. LEXIS 2926, 1990 WL 37217, at *1-2 (N.D. Ill. March 16, 1990)* (finding these factors the most compelling and concluding the action was "too far along the road to justify halting the journey while the defendant explores an alternate route" in denying the motion to stay). Likewise, this is the most compelling argument made by Middleton in resisting the pending motion to stay.

In the present case, the litigation has been ongoing for over eight years. n10 The trial date is set and is scheduled for the week of October 12, 2004. In addition, several motions for summary judgment remain pending that may be dispositive of some or all of the issues remaining in the case. Discovery is completed, and the parties are most likely well into their trial preparation. Thus, the parties have already spent a considerable amount of time and money on the pending litigation. On its face, these facts seem to weigh against granting a stay.

> n10 As indicated in the text, most of the history of this case occurred in the Northern District of Illinois and the Federal Circuit through litigation activities promoted by both parties. The issue now before the Court is of much more recent vintage.

[*20]

However, these facts should be weighed against the benefits of issuing a stay. As argued by 3M, the following factors weigh in favor of issuing a stay: (1) a stay will be the most efficient use of judicial resources by preventing duplication of effort; (2) the reexamination may simplify and narrow the issues in the case; and (3) the Court will be able to benefit from the expertise of the PTO. Moreover, a stay issued pending reexamination "is not for such a protracted or indefinite period" as reexamination proceedings are to "'be conducted with special dispatch.'" n11 *Gould, 705 F.2d at 1341* (quoting *35 U.S.C. § 305*). Thus, while some courts have denied a stay based on the end of discovery and the proximity of trial, see *Toro Co., 223 U.S.P.Q. at 638; Enprotech Corp., 1990 U.S. Dist. LEXIS 2926, 1990 WL 37217, at *2*, the ultimate determination is within the Court's discretion based on a weighing of the benefits of issuing a stay versus any added expenses resulting from the stay.

n11 One study listed the average pendency of a reexamination to be 19 months. See Note, "Reexamination Reality: How Courts Should Approach a Motion to Stay Litigation Pending the Outcome of Reexamination", 66 Geo. Wash. L. Rev. 172, 192 app. A (Nov. 1997). This note is, however, over seven years old, and the parties were unable to indicate to the Court whether this estimate is accurate, though Defendant's counsel thought, but could not state definitively, that the average pendency has been shortened.

[*21]

In the present action, the Court finds the element of judicial economy does in fact weigh in favor of granting the motion to stay. First, a stay would preserve the costs of a trial on the merits that may be obviated by the results of the reexamination. Second, even if a trial is ultimately required, the Court can have all issues heard in one trial on the proper scope of the patent claims. In addition to limiting the issues at trial, the reexamination decision may also limit the issues in the currently pending dispositive motions. Finally, the Court will be able to use the expertise of the PTO in making further determinations as related to the proper patent claims. In that regard, the Court is influenced by the breadth of the reexamination and the number of prior art references under active review.

The Court acknowledges the considerable expense already endured by the parties in the present action but notes that these costs will not be recouped by denying a stay and proceeding to a trial. This may actually compound the parties' expenses if some or all of the issues need to be retried later as a result of the reexamination. In addition, the Court disagrees with Middleton's contention [*22] that only incremental resources will be expended if the action proceeds to trial. It is simply not efficient to rule on three motions for summary judgment, complete pretrial, and hold a full jury trial if all or part have to be redone. The apparent scope of the reexamination, the technical expertise of the PTO, and the relationship to the issues in this case suggest to the Court a great likelihood that the continuing work of this Court would be impacted by the reexamination. The judicial efforts that a stay would preserve outweigh any additional cost in staying the proceedings even at this late juncture.

## C. Filing for Reexamination

Middleton also argues that 3M's delay in filing reexamination warrants denying the motion. As noted above, 3M did not seek reexamination of the patent-in-suit until well after the commencement of the litigation. In addition, one of the references upon which 3M relied in seeking reexamination was one of its own patents. Under these circumstances, Middleton contends that it is an inevitable conclusion that 3M delayed unduly in seeking reexamination. n12

n12 Middleton avers this is not the first time that 3M has used the reexamination procedure to engage in delay. For proof, Middleton cites to the decision in Freeman v. Minnesota Mining & Mfg. Co., in which the court, apparently anticipating a motion to stay from 3M, had the following to say:

Though not before the Court, it seems worthwhile to state the Court's view on granting a stay of court proceedings pending the PTO reexamination. In Digital Magnetic, the court commented that 'parties should not be permitted to abuse the [reexamination] process by applying for reexamination after protracted, expensive discovery or trial preparation.' . . . Discovery was concluded in this case seven months ago, and the first of the two suits was filed two and a half years ago. Moreover, 3M knew about all three of the documents on which its reexamination petition will be based no later than August 8, 1986. To allow 3M to now use the reexamination process to get this case stayed would be to allow a defendant to use the reexamination as a mere dilatory tactic.

Freeman v. Minnesota Mining & Mfg. Co., 661 F. Supp. 886, 888 (D. Del. 1987) (citations omitted). However, 3M's actions in another case are not relevant to the present action, especially

considering the court's statement in Freeman was *anticipatory* and not in reaction to any actual motion to stay filed by 3M, let alone any proof that 3M was so moving for the purpose of delaying or unduly protracting the litigation. 3M's motion in the present case will be analyzed on its own merits and under the circumstances of the present action.

[*23]

Courts have generally considered a delay in seeking reexamination in evaluating the propriety of a stay in light of such reexamination. Indeed, "the potential for abuse inherent in granting a stay where the petition for reexamination comes very late and without explanation is apparent." *Grayling Industries, 1991, U.S. Dist. LEXIS 16750, 1991 WL 236196, at *2.* For example, in Enprotech Corp., the defendant first raised the question of reexamination and an associated stay some 18 months after the commencement of litigation and four months before trial. *Enprotech Corp., 1990 U.S. Dist. LEXIS 2926, 1990 WL 37217, at *1.* That court, in denying the motion to stay, stated "we are too far along the road to justify halting the journey while the defendant explores an alternate route." *Id. at *2; see also Toro Co., 223 U.S.P.Q. at 638* (denying stay given three and a half year delay).

Middleton asserts again that the authority cited by 3M in support of granting a stay is inapposite on this issue. In Emhart Industries, Inc., the court found that although there was a delay in filing reexamination, that delay was the fault of the patentee in postponing needed discovery regarding the prior [*24] art. Emhart Indus., Inc., 1987 WL 6314, at *3 ("Whatever plaintiff's reasons were for postponing these depositions, plaintiff will not now be heard to object to defendant's motion for stay on the grounds that too much time has passed since the commencement of this litigation.").

With regard to the other authority cited by 3M, in no instance was the delay between the commencement of the suit and the request for reexamination nearly as long as in this case. See *Tap Pharm. Prods., 2004 U.S. Dist. LEXIS 3684, 2004 WL 422697, at *1* (reexamination requests were filed before the lawsuit began); *Ralph Gonnocci Revocable Living Trust, 68 U.S.P.Q.2d at 1756* (request for reexamination filed within two months of the defendant's counsel's notice of appearance, and within

eight months of commencement of suit); *Robert H. Harris Co., 1991 U.S. Dist. LEXIS 160861991 WL 217666, at *4* (request for reexamination filed within one year of commencement of suit); Loffland Bros. Co., 1985 WL 1483, at *1 (request for reexamination filed within one year of commencement of suit); Gioello Enterprises Ltd. v. Mattel, Inc., 2001 WL 125430, at *1 (D. Del. Jan. 29, 2001) [*25] (request for reexamination filed within 18 months of commencement of suit); *Grayling Indus., Inc., 1991 U.S. Dist. LEXIS 16750, 1991 WL 236196, at *1* (reexamination request filed within two years of commencement of suit). n13

> n13 It is unclear in the Softview Computer decision, also relied upon by 3M, how much time elapsed between the commencement of suit and the reexamination request. *Softview Computer Prods. Corp., 2000 U.S. Dist. LEXIS 11274, 2000 WL 1134471, at *1.*

3M seeks to justify its delay in filing for reexamination by arguing there was a discovery stay in place as to validity that was "implicitly" lifted on March 11, 2003. Middleton counters by stating that, in the first place, the prior art upon which 3M based its request for reexamination was not the result of any discovery efforts engaged in by 3M and that 3M has not taken a single deposition on the subject prior art after such art was identified. Middleton asserts that 3M could have filed for reexamination at the PTO at any time, notwithstanding any discovery stay [*26] imposed by a district court. Finally, even if 3M was somehow impeded by a discovery stay, it still took 3M over a year after the stay was "implicitly" lifted to file its reexamination request. Middleton contends that under the circumstances of the present case, a one-year delay is inexcusable, and 3M should not be allowed to benefit from its delay.

Middleton seemingly misses the point in arguing 3M's delay warrants denial of the motion to stay. More important than when the reexamination application was made was the purpose behind said application. Thus, instead of looking solely at when the application was made with regard to the pending litigation, the Court looks at whether the petition for reexamination was made with a dilatory purpose. See *Grayling Indus., Inc., 1991 U.S. Dist. LEXIS 16750, 1991 WL 236196, at *2-3;* Emhart Indus., Inc., 1987 WL 6314, at *3. While the timing of the application is relevant in making this

determination, the Court also looks to the proffered reasons for the delay. See *Ralph Gonnocci Revocable Living Trust, 68 U.S.P.Q.2d at 1758* ("Plaintiff may be correct that [defendant] did not act swiftly in seeking reexamination. Nothing [*27] in the record, however, indicates when [defendant] became aware of the prior art which is the basis for his request for reexamination. . . . Thus the Court cannot conclude that [defendant] unnecessarily delayed seeking a reexamination or that he is doing so now to stall this litigation."); *Grayling Indus., Inc., 1991 U.S. Dist. LEXIS 16750, 1991 WL 236196, at *3* (finding that "although it is not clear that Plaintiffs had good reason for the delay in petitioning the PTO for reexamination, neither has Defendant shown such egregiously dilatory conduct as would justify short-circuiting the reexamination procedure now that Plaintiffs have invoked it"). Moreover, if "the Court finds that the benefits of granting a stay in the present proceedings outweigh the burdens, it need not decide whether the defendant could actually have filed its request at an earlier date." *Emhart Indus., Inc., 1987 WL 6314, at *3*.

In the present action, Middleton has presented no evidence, beyond pointing out that one of the prior art references asserted by 3M was its own patent, that indicates 3M had knowledge of the prior art and could have made the request for reexamination much earlier. Due to the [*28] stay of discovery on issues related to the validity issue, 3M was not actively pursuing this issue. n14 Significantly, 3M had won a judgment of non-infringement on two different occasions in the Northern District of Illinois. Accordingly, 3M may have had little reason to pursue the issue of validity until the stay on discovery was lifted. 3M also argues that under the last decision from the Federal Circuit, the construction of the claims at issue was significantly broadened.

> n14 Middleton argues that 3M did not have its hands tied by the Illinois court but instead put all its eggs into the infringement basket, holding in abeyance any argument on validity even though 3M has alleged validity from the beginning.

The record indicates it was not until this decision, and the subsequent course of the proceeding, that 3M began to actively pursue the validity issue. In May 2003, 3M received information pursuant to discovery that was relevant to this issue. Based on this information, 3M was able to gather additional information. [*29] Upon determining the validity of the *'514 patent* was an issue, 3M drafted the reexamination application, notified the Court, submitted a motion for summary judgment on validity, and, as soon as the reexamination was granted, moved for a stay. The Court finds it is not unreasonable under all of the unique circumstances of this case that it took 3M nearly a year from this time to file for reexamination, particularly in light of the numerous prior art references discovered, both domestic and foreign.

The Court finds that any delay in filing for reexamination is not cause to deny the motion to stay. While 3M may be guilty of focusing too much attention on the infringement issue, it was led on that course by the proceedings in the action. As soon as validity became a very real issue, 3M did not unduly delay in moving for reexamination. Moreover, there is no evidence that 3M has moved for a stay solely for a dilatory purpose beyond Middleton's argument to the contrary.

**D. Prejudice to Middleton**

Pursuant to *section 318* of the Patent Statute, a court is not to issue a stay if it "would not serve the interests of justice." *35 U.S.C. § 318.* Middleton contends [*30] that because of the prejudice it would incur should a stay be granted, such interests would not be served. When Middleton first filed suit against 3M, the patent in suit had more than a decade of useful life remaining, whereas now it is due to expire in less than three years. If 3M's proposed stay is granted, Middleton claims that it is likely that there will be no life remaining in the patent in suit in the event this matter is revived following reexamination; however, this fact alone is not sufficient to deny the motion to stay. See *Tap Pharm. Prods., 2004 U.S. Dist. LEXIS 3684, 2004 WL 422697, at *1* (dismissing plaintiff's argument that patent may expire thereby depriving them of any injunctive remedy because patent may still expire before trial is completed).

3M answers by stating that monetary compensation is sufficient to remedy infringement. Middleton disagrees and asserts that while it has no intention of commer-cializing the *'514 patent*, it would be deprived of its right to exclude others under the patent, stating that 3M's position would be tantamount to a compulsory license for using the patented invention. The Federal Circuit has found this to be an inadequate remedy for

2004 U.S. Dist. LEXIS 16812, *30

infringement. [*31] See, e.g., *Reebok Int'l, Ltd. v. Baker, Inc., 32 F.3d 1552, 1557 (Fed. Cir. 1994); Hybritech Inc. v. Abbott Lab., 849 F.2d 1446, 1456-57 (Fed. Cir. 1988).* According to Middleton, because it stands to lose its ultimate remedy for patent infringement in the event 3M's proposed stay becomes a reality, Middleton will be severely prejudiced by such a stay, and this warrants denial of 3M's motion.

At present Middleton is not, however, selling or marketing products under its patent. Indeed, it has never done so and thus has no market to protect. Under similar circumstances, a district court found "money damages is an adequate remedy for any delay in redress" where the patentee was not "selling or actively licensing goods or services related to" the patent in suit. Gioello Enterprises Ltd., 2001 WL 126350, at *2; see also Emhart Indus., Inc., 1987 WL 6314, at *2 (finding that "notwithstanding plaintiff's argument that monetary damage will not compensate for its losses, this *is* a suit for money damages and plaintiff has never sought preliminary injunctive relief from the Court").

Middleton is not currently selling products [*32] related to the patent in issue and would be entitled to any money damages if infringement is ultimately found. Ultimately, the Court finds this is sufficient to protect Middleton from suffering any undue prejudice or a clear tactical disadvantage. Should the action proceed to trial following reexamination, the Court may still order appropriate injunctive relief. In addition, Middleton would be entitled to money damages if proven, and there is no immediate danger of not being able to collect said damages from 3M.

**E. Alternatively, Granting Stay Solely on Issues Before the PTO**

In the alternative, if the Court issues a stay in light of the reexamination, Middleton urges that the stay be limited to those issues pending before the PTO as part of the reexamination proceedings, i.e., anticipation and obviousness. Thus, the issues of infringement, willfulness, damages, and inequitable conduct would continue before the Court under Middleton's plan. Under this proposal, any judgment would not become final until the PTO has ruled on the reexamination and the parties' appeal rights have been exhausted unless the Court makes the judgment final as to those issues tried, n15 thereby entitling [*33] the parties to appeal the judgment

immediately.

n15 See *Fed. R. Civ. P. 54(b).*

As concerns the issue of validity, 3M's request was for a reexamination proceeding pursuant to Chapter 30 of the Patent Statute. Pursuant to *section 315* of the Patent Statute,

> A third party requester whose request for an *inter partes* reexamination results in an order under section 313 is estopped from asserting at a later time, in any civil action arising in whole or in part under section 1338 of title 28, the invalidity of any claim finally determined to be valid and patentable on any ground which the third party requester raised or could have raised during the *inter partes* reexamination proceeding.

*35 U.S.C. § 315(c).* In other words, in the event the PTO finds the subject claims patentable, 3M would be estopped from returning to court to re-argue validity of those claims. Therefore, Middleton contends that staying only those issues before the [*34] PTO would be a practical solution that would provide Middleton with more timely relief on the remaining issues.

The PTO's reexamination could, however, affect more than just the validity issues before the Court. Indeed, a PTO decision that the *'514 Patent* is invalid could render moot the issues of validity *and* infringement. See Gioello Enterprises Ltd., 2001 WL 125340, at *1 (finding the PTO's decision could render moot the issues of non-infringement and invalidity before the court in pending motions for summary judgment); *ASCII Corp. v. STD Entertainment USA, 844 F. Supp. 1378, 1380-81 (N.D. Cal. 1994)* (finding stay was justified because if claims were cancelled in reexamination then the need to try the infringement issue would be eliminated); Loffland Bros. Co., 1985 WL 1483, at *2 ("The reexamination procedure has the potential to eliminate trial on the issue of patent infringement, should all of the patent's claims be cancelled."). "In addition, if a final decision of unpatentability means the patent was void *ab initio*, then damages would also be precluded." *Standard Havens Prods., 996 F.2d 1236, 1993 WL 172432, at *1* [*35] .

The issues of inequitable conduct and willfulness may not be impacted by the PTO's determination, see *Enprotech Corp., 1990 U.S. Dist. LEXIS 29261990 WL 37217, at *1* (finding reexamination would not affect the inequitable conduct claim at issue), though to only proceed on these two issues would not serve the interests of justice. Therefore, the Court finds it would not be appropriate to stay only a portion of the pending issues.

### CONCLUSION

For the foregoing reasons, the Court hereby **grants** Defendant's Motion to Stay the Proceedings Pending Reexamination of *U.S. Patent No. 4,944,514* by the Patent and Trademark Office (Clerk's No. 170). The Court finds a high likelihood that results of the PTO's reexamination would have a dramatic effect on the issues before the Court, up to and including dismissal of the entire action if the patent claims are found to be unpatentable. In any event, the Court will benefit from the PTO's expertise and determination on reexamination, and Middleton will not be unduly prejudiced by the stay. Thus, under the unique circumstances of this case the Court finds the benefits of issuing the stay outweigh the arguments made by Middleton in resistance to [*36] the motion.

**IT IS SO ORDERED.**

Dated this 24th day of August, 2004.

JAMES E. GRITZNER, JUDGE

UNITED STATES DISTRICT COURT