# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TEXTRON INNOVATIONS INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 05-486 (GMS) |
| | ) | |
| v. | ) | |
| | ) | |
| THE TORO COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S OBJECTIONS AND ANSWERS TO
## DEFENDANT'S FIRST SET OF INTERROGATORIES

Plaintiff Textron Innovations Inc. ("TII" or "Plaintiff"), by counsel and pursuant to Fed.

R. Civ. P. 26 and 33, hereby objects and answers Defendant The Toro Company's ("Toro" or

"Defendant") First Set of Interrogatories dated January 6, 2006.

### I.     GENERAL RESPONSES.

1.     Subject to, and without waiving TII's general and specific objections to Toro's

First Set of Interrogatories, TII will respond to Toro's interrogatories pursuant to the

requirements of the Federal Rules of Civil Procedure and the Local Rules of the United States

District Court for the District of Delaware, the Court's Scheduling Order, and/or other applicable

law.

2.     The general and specific objections set forth below are made based on the best

information presently available to TII.  TII reserves the right to amend, supplement, or change

any objection if and when additional, different, or more accurate information becomes available

and/or facts are developed.  In making the following objections, TII does not waive any

objections that may be applicable to: (a) the use, for any purpose, of any document or

information identified or provided in response to Toro's First Sets of Interrogatories and

To the extent that Toro believes that any of the terms used in the claims at issue require construction beyond their plain or ordinary meaning, or include any terms that have a special or uncommon meaning, then it should bring such matters to the attention of counsel for TII so that they can be properly addressed on an item by item basis, and not in a vacuum. Additionally, determining whether any elements of a claim are recited in means-plus-function format pursuant to 35 U.S.C. § 112, paragraph 6, is a question of law for the Court to decide.

## INTERROGATORY NO. 8:

For each asserted claim identified in response to Interrogatory No. 6, provide a detailed claim chart including an element-by-element comparison specifying each component or part of Toro's allegedly infringing product that corresponds to each element of the patent claim; if TII contends that a claim element is met under the doctrine of equivalents, identify the claim element that is not, or may not be, literally present and the corresponding equivalent component or part of such product; and state the factual basis for TII's contentions related to this interrogatory, identify all documents concerning this Interrogatory, and identify the three most knowledgeable persons concerning the information requested by this interrogatory.

## OBJECTIONS TO INTERROGATORY NO. 8:

TII incorporates by reference its General Objections stated above, and in particular, objects to this interrogatory on the grounds stated in General Objections 4, 16 and 17. In addition, TII specifically objects to this interrogatory on the ground that TII has not had the opportunity to take discovery with regard to Toro's products, and in particular with regard to specific Toro model numbers and model variations. Thus, TII's answer is preliminary, and TII reserves the right to amend or supplement its answer based upon continuing investigation and

616654v1

discovery. TII objects to the request that it identify the three people most knowledgeable about its answer as this request is vague and ambiguous, *e.g.,* it is not clear whether the request is intended to determine the persons most knowledgeable about Toro's accused products, or the patents-in-suit, or something else entirely. TII further objects to the request that it identify doctrine of equivalents contentions, in that this request is premature at least until TII has had discovery from Toro and Toro shows why its accused products do not literally infringe as shown in the following answer.

## ANSWER TO INTERROGATORY NO. 8:

Subject to and without waiving the foregoing general and specific objections, TII has attached to these answers Exhibit A, which sets forth, based on TII's presently available information, a claim chart showing, *inter alia,* a list of the claims of the patents-in-suit that it believes Toro is infringing, and the accused products applicable to each of the claims. TII emphasizes that it reserves the right to amend or supplement this answer based upon its continuing investigation and discovery, and in particular based upon discovery from Toro relating to all of the models of its rotary-type gang mowers, that it has made, sold, offered for sale, or imported into the United States.

## INTERROGATORY NO. 9:

Describe the circumstances, including the date(s), in which any alleged invention disclosed or claimed in the patents-in-suit was first offered for sale, sold, publicly used, and/or publicly disclosed in the United States, and the circumstances, including the date(s), in which any alleged invention disclosed or claimed in the patents-in-suit was first described in a printed

Edmond D. Johnson (#2257)
Peter B. Ladig (#3513)
**THE BAYARD FIRM**
222 Delaware Avenue, Suite 900
Wilmington, DE 19801


OF COUNSEL:

Scott L. Robertson
Christopher C. Campbell
**HUNTON & WILLIAMS LLP**
1900 K Street, N.W.
Washington, D.C. 20006-1109
Telephone:  (202) 955-1500
Facsimile:   (202) 778-2201

Attorneys for Plaintiff
TEXTRON INNOVATIONS INC.

Dated: February 6, 2006

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

TEXTRON INNOVATIONS INC.,    )
           )
     Plaintiff,       )    C.A. No. 05-486 (GMS)
           )
    v.          )
           )
THE TORO COMPANY,      )
           )
     Defendant.    )

### PLAINTIFF'S CLAIM CHART

Pursuant to the Scheduling Order in this case, Plaintiff provides the enclosed Plaintiff's Claim Chart.

The bases for infringement are set forth in detail in the enclosed Claim Chart. The enclosed Claim Chart is supported by Exhibits A – Q, enclosed herewith. It will be understood that citations to specific portions of the accused devices in Exhibits A – Q are intended to be exemplary only, and other portions of the Exhibits and other evidence relating to commercial embodiments of the accused devices may provide additional evidence of infringement.

The information provided in Plaintiff's Claim Chart is preliminary in nature and subject to modification and supplementation. As Defendant knows, other than in the context of a settlement discussion, not a single document has been exchanged in this case. Necessarily, therefore, Plaintiff's Claim Chart is based upon publicly available information, which may be supplemented following the receipt of the Defendant's documents.

Furthermore, the Scheduling Order required Defendant to provide Plaintiff with engineering drawings of the accused products on or before March 1, 2006. To date, Defendant has not provided any engineering drawings. Consequently, Exhibits A – Q are examples of the accused devices as currently understood by Plaintiff to infringe the patents-in-suit.

Ongoing discovery efforts may identify additional exhibits relevant to the infringement of the patents-in-suit. Plaintiff may continue to refine and supplement its understanding of Defendant's infringement as additional relevant information is acquired during the course of discovery. Plaintiff will supplement this response in a timely manner as its understanding of the scope, content and meaning of any additional documentary evidence reflecting Defendant's infringement are uncovered as discovery progresses. Furthermore, the infringement contentions disclosed herein are based on Plaintiff's current understanding of the proper construction of the claims. Plaintiff reserves the right to supplement and modify its infringement contentions to the extent that the Defendant and/or the Court adopts a construction of the claims that differs from Plaintiff's current understanding.

Finally, Plaintiff believes that the accused devices (namely, Toro's 3500-D, 3505-D, 4500-D and 4700-D) literally infringe all of the elements of the claims asserted in the enclosed Plaintiff's Claim Chart. To the extent that Defendant identifies any allegedly missing elements in the claims enumerated in Plaintiff's Claim Chart, Plaintiff reserves the right to assess infringement under the doctrine of equivalents and to supplement Plaintiff's Claim Chart accordingly. In addition, to the extent that discovery reveals additional infringing products and/or claims of the patents-in-suit which are infringed, Plaintiff reserves the right to amend and supplement Plaintiff's Claim Chart accordingly.

Dated: _April 3, 2006_    By: _C llyCC.C, ceel_

Edmond D. Johnson
Peter B. Ladig
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

OF COUNSEL:
Scott L. Robertson
Christopher C. Campbell
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
**ATTORNEYS FOR PLAINTIFF
TEXTRON INNOVATIONS INC.**

3

# EXHIBIT 3

# Merchant & Gould

An Intellectual Property Law Firm

3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota
55402-2215 USA
TEL 612.332.5300
FAX 612.332.9081
www.merchant-gould.com

A Professional Corporation

Direct Contact     612.371.5208
tzeuli@merchant-gould.com

April 19, 2006

Christopher C. Campbell                **Sent Via Facsimile**
Hunton & Williams LLP
1751 Pinnacle Drive, Suite 1700
McLean, VA 22102

> **Re:**   **_Textron, Inc. et al. v. The Toro Company_**
> **_Our Ref: 6372.149USZA_**

Dear Chris:

Following up on our telephone conference of April 12, 2006, do you agree that, if Textron asserts infringement under the doctrine of equivalents for any claims in which Toro has alleged no literal infringement, Toro will have an opportunity to respond to such allegations of equivalency?  Please let me know on or before April 21, 2006.

Very truly yours,

Anthony R. Zeuli

ARZ:cmf

Minneapolis/St. Paul
Denver
Seattle
Atlanta
Washington, DC

04/19/2006 10:08 FAX                    MERCHANT & GOULD                              ☑001

```
                         **********************
                         ***  TX REPORT  ***
                         **********************


     TRANSMISSION OK

     TX/RX NO                1167
     RECIPIENT ADDRESS       555198912027782201
     DESTINATION ID
     ST. TIME                04/19 10:07
     TIME USE                01'03
     PAGES SENT              2
     RESULT                  OK
```

# Merchant & Gould

### An Intellectual Property Law Firm

Merchant & Gould P.C.
3200 TDS Center
80 South Eighth Street
Minneapolis, MN 55402-
2215

TEL 612.332.5300
FAX 612.332.9081
www.merchant-gould.com

## Fax Transmission | April 19, 2006

| | | | |
|---|---|---|---|
| **To:** | **Christopher Campbell, Esq.** | **From:** | **Tony Zeuli** |
| Company: | Hunton & Williams | Our Ref.: | 6372.150USZA |
| Your Ref: | Court File No. 05-1835 (MJD/SRN) | Fax No.: | 612.332.9081 |
| | | Phone No.: | 612.332.5300 |
| Fax No.: | 202.778.2201 | | |
| Phone No.: | 202.955.1895 | Total Pages: | 2 (Including Cover Sheet) |
| State/Country: | United States | E-Mail: | tzeuli@merchant-gould.com |
| Confirmation Via Mail: ☒ Yes ☐ No | | Return Fax To: | Carol Firner |

Document Transmitted:

# EXHIBIT 4

MAY-05-06  17:06  From:HUNTON & WILLIAMS    703-714-7416    T-611  P.02/03  Job-339

# HUNTON&
# WILLIAMS

HUNTON & WILLIAMS LLP
1751 PINNACLE DRIVE
SUITE 1700
MCLEAN, VIRGINIA 22102

TEL    703 • 714 • 7400
FAX    703 • 714 • 7410

CHRISTOPHER C. CAMPBELL
DIRECT DIAL: 703-714-7553
EMAIL: ccampbell@hunton.com

May 5, 2006

*Via facsimile*

Anthony R. Zeuli, Esq.
Merchant & Gould, PC
3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402

Re:    Textron Innovations Inc. v. The Toro Company (D. Del)

Dear Tony:

This is in response to your letter of April 19, 2006 regarding whether Toro will have an opportunity to respond to any allegations of infringement under the doctrine of equivalents for any claims in which Toro has alleged no literal infringement. We agree with this protocol provided that the same qualification applies in the Minnesota action. Unless we hear from you otherwise in next couple of weeks, we will assume that you will agree to a protocol in both the Minnesota and Delaware actions whereby the accused infringer will have an opportunity to respond to any allegations of infringement under the doctrine of equivalents.

Very truly yours,

Christopher C. Campbell

CCC/dpm

ATLANTA  BANGKOK  BEIJING  BRUSSELS  CHARLOTTE  DALLAS  HOUSTON  KNOXVILLE
LONDON  McLEAN  MIAMI  NEW YORK  NORFOLK  RALEIGH  RICHMOND  SINGAPORE  WASHINGTON
www.hunton.com

# EXHIBIT 5

# Merchant & Gould

An Intellectual Property Law Firm

3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota
55402-2215 USA
TEL 612.332.5300
FAX 612.332.9081
www.merchant-gould.com

A Professional Corporation

Direct Contact    612.336.4681
ksorge@merchant-gould.com

June 23, 2006

*Via U.S. Mail*

Christopher C. Campbell
Hunton & Williams LLP
1751 Pinnacle Drive
Suite 1700
McLean, Virginia 22102

**Re:    *The Toro Company v. Textron, Inc., et al.***
***M&G Reference No. 06372.0150-US-ZA***
***Court File No. 05-1835 (PJS/JJG)***

Dear Chris:

Pursuant to the parties' agreement, enclosed and served upon you are Toro's Doctrine of Equivalents Claim Charts regarding U.S. Patent Nos. 5,533,325 and 5,715,664 for the AR3, TR3, and Groom Master II. A chart explaining how the G-Plex III (three-wheel drive option) infringes under the doctrine of equivalents is not included. Once Textron provides its noninfringement chart for the G-Plex III, Toro will supplement its doctrine of equivalents claim chart submission.

Very truly yours,

Keith M. Sorge

KMS:ajm
Enclosures

cc:    Kurt Niederluecke

Minneapolis/St. Paul
Denver
Seattle
Atlanta
Washington, DC

**The Toro Claim Chart Regarding Doctrine of Equivalents**
**For U.S. Patent No. 5,533,325 Relating to AR 3**

| Claims of the '325 Patent | |
|---|---|
| 1. A hydraulically driven riding mower having all wheel drive, which comprises: | |
| (a) a frame having an engine; | Admitted by Textron. |
| (b) a plurality of ground engaging wheels attached to the frame for movably supporting the frame for movement over the ground, the wheels comprising a first pair of wheels carried adjacent a front end of the frame and a single rear wheel spaced on the frame from the front wheels and carried adjacent a rear end of the frame to provide a tricycle wheel configuration; | Admitted by Textron. |
| (c) a plurality of cutting units carried on the frame for mowing grass, wherein the cutting units may be engaged with the ground during a mowing operation and when so engaged have at least some of their weight carried by the ground and not the frame; and | Admitted by Textron. |
| (d) a hydraulic drive system for driving the ground engaging wheels of the frame, which drive system comprises: | Admitted by Textron. |
| (i) a source of pressurized fluid which provides a pressurized fluid flow that is available for driving the ground engaging wheels; | If Textron's variable displacement pump is found to not literally infringe, it infringes under the doctrine of equivalents because a variable displacement pump is insubstantially different from the claimed source of pressurized fluid.<br><br>In addition, the function of Textron's variable displacement pump is the same as the claimed source of pressurized fluid – to pressurize hydraulic fluid. The way in which Textron's variable displacement pump pressurizes the fluid is the same as the claimed source of pressurized fluid – by increasing the pressure of the fluid above its static state. The result achieved by Textron's variable displacement pump is the same as the claimed source of pressurized fluid – to make pressurized fluid available to drive the wheels. |

**The Toro Claim Chart Regarding Doctrine of Equivalents
For U.S. Patent No. 5,533,325 Relating to AR 3**

| Claims of the '325 Patent | |
|---|---|
| (ii) individual hydraulic drive motors operatively engaged to each of the ground engaging wheels of the frame; and | Admitted by Textron. |
| (iii) means for connecting the hydraulic motors to the source of pressurized fluid in the following manner: | Admitted by Textron. |
| the wheel drive motor for the rear wheel is connected in series to the fluid source and to the wheel drive motors for the front wheels in a manner that causes the pressurized fluid flow to pass substantially in its entirety through the wheel drive motor for the rear wheel to provide a maximum tractive effort on the rear wheel for a given pressurized fluid flow regardless of wheel slippage conditions on the front wheels; and | If Textron's hydraulic drive system is found to not literally infringe, it infringes under the doctrine of equivalents because Textron's hydraulic drive system is insubstantially different from the claimed hydraulic drive system.

In addition, the function of Textron's hydraulic drive system is the same as the claimed hydraulic drive system – to provide the maximum available fluid supply to the rear drive wheel, regardless of slippage conditions on the front wheels. The way in which Textron's hydraulic drive system provides the maximum available fluid supply to the rear drive wheel, regardless of slippage conditions on the front wheels, is the same as the claimed hydraulic drive circuit – by putting the rear drive motor for the rear wheel in a sequential arrangement with the fluid source and the parallel configuration of the wheel drive motors for the front wheels. The result achieved by Textron's hydraulic drive system is the same as the claimed hydraulic drive system – that the rear wheel motor will receive the maximum fluid supply regardless of whether or not the front wheels are slipping. |
| the wheel drive motors for the front wheels being connected to each other in parallel in a manner that causes the pressurized fluid flow to be split when passing through the wheel drive motors for the front wheels. | Admitted by Textron. |
| 2. A mower as recited in claim 1, wherein each of the wheels is provided with tires having substantially no tread to avoid marring or scuffing the surface | Toro reserves the right to supplement this chart after having the opportunity to conduct some discovery. |

**The Toro Claim Chart Regarding Doctrine of Equivalents**
**For U.S. Patent No. 5,533,325 Relating to AR 3**

| Claims of the '325 Patent | |
|---|---|
| of a golf green when the mower is used to mow such green. | |
| 3. A mower as recited in claim 2, wherein the engine is mounted on the rear of the frame generally above the rear wheel. | Toro reserves the right to supplement this chart after having the opportunity to conduct some discovery. |
| 4. A mower as recited in claim 1, wherein a plurality of cutting units are carried on the front of the frame such that one cutting unit is located on the frame in advance of each front wheel. | Admitted by Textron. |
| 5. A mower as recited in claim 1, further including means operatively connected to the wheel drive motor for the rear wheel to allow such wheel to overrun the hydraulic motor driving such wheel when required during turns of the mower. | Claim 5 is a means-plus-function claim. The function is allowing the rear wheel to overrun the hydraulic motor for the rear wheel when required during turns. The patent discloses a clutch (50) which may be used to perform that function.<br><br>If Textron's AR 3 is found to not literally infringe, it infringes under the doctrine of equivalents because the AR 3 includes a hydraulic clutch having the equivalent function and structure to the clutch (50) in the '325 patent for allowing the rear wheel (10) to overrun the hydraulic motor (30) for the rear wheel (10) when required during turns. |
| 6. A mower as recited in claim 5, wherein such overrunning means comprises a mechanical clutch operatively connected between a drive shaft of the wheel drive motor for the rear wheel and a wheel hub of the rear wheel. | Toro reserves the right to supplement this chart after having the opportunity to conduct some discovery. |
| 7. A mower as recited in claim 6, wherein the clutch unidirectionally transmits torque from the drive shaft to the rear wheel hub. | Toro reserves the right to supplement this chart after having the opportunity to conduct some discovery. |

3

### The Toro Claim Chart Regarding Doctrine of Equivalents
### For U.S. Patent No. 5,533,325 Relating to AR 3

| Claims of the '325 Patent | |
|---|---|
| 8. A mower as recited in claim 7, wherein the clutch comprises at least one roller clutch bearing concentrically located inside the rear wheel hub. | Toro reserves the right to supplement this chart after having the opportunity to conduct some discovery. |
| 9. A hydraulically driven riding mower having all wheel drive, which comprises: | |
| (a) a frame having an engine; | Admitted by Textron. |
| (b) a plurality of ground engaging wheels attached to the frame for movably supporting the frame for movement over the ground, the wheels comprising a first pair of wheels carried adjacent a front end of the frame and at least one rear wheel spaced on the frame from the front wheels and carried adjacent a rear end of the frame; | Admitted by Textron. |
| (c) at least one cutting unit carried on the frame for mowing grass, wherein the cutting unit(s) may be engaged with the ground during a mowing operation and when so engaged have at least some of their weight carried by the ground and not the frame; and | Admitted by Textron. |
| (d) a hydraulic drive system for driving the ground engaging wheels of the frame, which drive system comprises: | Admitted by Textron. |

4

**The Toro Claim Chart Regarding Doctrine of Equivalents**
**For U.S. Patent No. 5,533,325 Relating to AR 3**

| Claims of the '325 Patent | |
|---|---|
| (i) a source of pressurized fluid which provides a pressurized fluid flow that is available for driving the ground engaging wheels; | If Textron's variable displacement pump is found to not literally infringe, it infringes under the doctrine of equivalents because a variable displacement pump is insubstantially different from the claimed source of pressurized fluid.<br><br>In addition, the function of Textron's variable displacement pump is the same as the claimed source of pressurized fluid – to pressurize hydraulic fluid. The way in which Textron's variable displacement pump pressurizes the fluid is the same as the claimed source of pressurized fluid – by increasing the pressure of the fluid above its static state. The result achieved by Textron's variable displacement pump is the same as the claimed source of pressurized fluid – to make pressurized fluid available to drive the wheels. |
| (ii) individual hydraulic drive motors operatively engaged to each of the ground engaging wheels of the frame; and | Admitted by Textron. |
| (iii) means for connecting the hydraulic motors to the source of pressurized fluid in the following manner:<br><br>the wheel drive motor(s) for the rear wheel(s) being connected in series to the fluid source and to the wheel drive motors for the front wheels in a manner that causes the pressurized fluid flow to pass substantially in its entirety through each wheel drive motor for each rear wheel to provide a maximum tractive effort on each rear wheel for a given pressurized fluid flow regardless of wheel slippage conditions on the front wheels; and | Admitted by Textron.<br><br>If Textron's hydraulic drive system is found to not literally infringe, it infringes under the doctrine of equivalents because Textron's hydraulic drive system is insubstantially different from the claimed hydraulic drive system.<br><br>In addition, the function of Textron's hydraulic drive system is the same as the claimed hydraulic drive system – to provide the maximum available fluid supply to the rear drive wheel, regardless of slippage conditions on the front wheels. The way in which Textron's hydraulic drive system provides the maximum available fluid supply to the rear drive wheel, regardless of slippage conditions on the front wheels, is the same as the claimed hydraulic drive circuit – by putting the rear drive motor for the rear wheel in a sequential arrangement with the fluid source and the parallel configuration of the wheel drive motors for the front wheels. The result achieved by |

5

**The Toro Claim Chart Regarding Doctrine of Equivalents
For U.S. Patent No. 5,533,325 Relating to AR 3**

| Claims of the '325 Patent | |
|---|---|
| | Textron's hydraulic drive system is the same as the claimed hydraulic drive system – that the rear wheel motor will receive the maximum fluid supply regardless of whether or not the front wheels are slipping. |
| the wheel drive motors for the front wheels are connected to each other in parallel in a manner that causes the pressurized fluid flow to be split when passing through the wheel drive motors for the front wheels. | Admitted by Textron. |
| 10. A mower as recited in claim 9, wherein only a single rear wheel is carried adjacent a rear end of the frame. | Admitted by Textron. |
| 11. A mower as recited in claim 10, wherein the engine is mounted on the rear of the frame generally above the rear wheel. | Admitted by Textron. |
| 12. A mower as recited in claim 9, wherein a plurality of cutting units are carried on the front of the frame. | Admitted by Textron. |
| 13. A mower as recited in claim 12, wherein one cutting unit is located on the frame in advance of each front wheel. | Admitted by Textron. |
| 14. A mower as recited in claim 13, wherein each of the wheels is provided with tires having substantially no tread to avoid marring or scuffing the surface of a golf green when the mower is used to mow such green. | Toro reserves the right to supplement this chart after having the opportunity to conduct some discovery. |
| 15. A hydraulically driven turf maintenance vehicle having all wheel drive, which comprises: | |
| (a) a frame having an engine; | Admitted by Textron. |
| (b) a plurality of ground engaging | Admitted by Textron. |

6

**The Toro Claim Chart Regarding Doctrine of Equivalents
For U.S. Patent No. 5,533,325 Relating to AR 3**

| Claims of the '325 Patent | |
|---|---|
| wheels attached to the frame for movably supporting the frame for movement over the ground, the wheels comprising a first pair of wheels carried adjacent a first end of the frame and at least one wheel spaced on the frame from the first pair of wheels carried adjacent a second end of the frame; | |
| (c) at least one operating unit carried on the frame for performing a turf maintenance operation; and | Admitted by Textron. |
| (d) a hydraulic drive system for driving the ground engaging wheels of the frame, which drive system comprises: | Admitted by Textron. |
| (i) a source of pressurized fluid which provides a pressurized fluid flow that is available for driving the ground engaging wheels; | If Textron's variable displacement pump is found to not literally infringe, it infringes under the doctrine of equivalents because a variable displacement pump is insubstantially different from the claimed source of pressurized fluid.<br><br>In addition, the function of Textron's variable displacement pump is the same as the claimed source of pressurized fluid – to pressurize hydraulic fluid. The way in which Textron's variable displacement pump pressurizes the fluid is the same as the claimed source of pressurized fluid – by increasing the pressure of the fluid above its static state. The result achieved by Textron's variable displacement pump is the same as the claimed source of pressurized fluid – to make pressurized fluid available to drive the wheels. |
| (ii) individual hydraulic drive motors operatively engaged to each of the ground engaging wheels of the frame; and | Admitted by Textron. |
| (iii) means for connecting the hydraulic motors to the source of pressurized fluid in the following manner: | Admitted by Textron. |
| the wheel drive motor(s) for the wheel(s) | If Textron's hydraulic drive system is found to not |

7

**The Toro Claim Chart Regarding Doctrine of Equivalents**
**For U.S. Patent No. 5,533,325 Relating to AR 3**

| Claims of the '325 Patent | |
|---|---|
| on the second end of the frame being connected in series to the fluid source and to the wheel drive motors for the wheels on the first end of the frame in a manner that causes the pressurized fluid flow to pass substantially in its entirety through each wheel drive motor for each wheel on the second end of the frame to provide a maximum tractive effort on each wheel on the second end of the frame for a given pressurized fluid flow regardless of wheel slippage conditions on the wheels on the first end of the frame; and | literally infringe, it infringes under the doctrine of equivalents because Textron's hydraulic drive system is insubstantially different from the claimed hydraulic drive system.<br><br>In addition, the function of Textron's hydraulic drive system is the same as the claimed hydraulic drive system – to provide the maximum available fluid supply to the drive wheel on the second end of the frame, regardless of slippage conditions on the wheels on the first end of the frame. The way in which Textron's hydraulic drive system provides the maximum available fluid supply to the wheel on the second end of the frame, regardless of slippage conditions on the wheels on the first end of the frame, is the same as the claimed hydraulic drive circuit – by putting the drive motor for the wheel on the second end of the frame in a sequential arrangement with the fluid source and the parallel configuration of the wheel drive motors for the wheels on the first end of the frame. The result achieved by Textron's hydraulic drive system is the same as the claimed hydraulic drive system – that the motor for the wheel on the second end of the frame will receive the maximum fluid supply regardless of whether or not the wheels on the first end of the frame are slipping. |
| the wheel drive motors for the wheels on the first end of the frame being connected to each other in parallel in a manner that causes the pressurized fluid flow to be split when passing through the wheel drive motors for the wheels on the first end of the frame. | Admitted by Textron. |
| 16. A vehicle as recited in claim 15, wherein the first end of the frame is a front end of the frame, and the second end of the frame is a rear end of the frame, when the vehicle is traveling in a forward direction. | Admitted by Textron. |

8

**The Toro Claim Chart Regarding Doctrine of Equivalents**
**For U.S. Patent No. 5,533,325 Relating to AR 3**

| Claims of the '325 Patent | |
|---|---|
| 17. A vehicle as recited in claim 15, wherein the operating unit(s) may be engaged with the ground during a turf maintenance operation and when so engaged have at least some of their weight carried by the ground and not the frame. | Admitted by Textron. |
| 18. A vehicle as recited in claim 17, wherein the turf maintenance vehicle comprises a grass mowing machine, and wherein the operating unit comprises a grass cutting unit. | Admitted by Textron. |
| 20. A vehicle as recited in claim 15, wherein only a single wheel is carried adjacent the second end of the frame. | Admitted by Textron. |
| 21. A vehicle as recited in claim 15, further including means operatively connected to the wheel(s) on the second end of the frame to allow such wheel(s) to overrun the hydraulic motors driving such wheel(s) when required during turns of the vehicle. | Claim 21 is a means-plus-function claim. The function is allowing the wheel on the second end of the frame to overrun the hydraulic motor for the wheel when required during turns. The patent discloses a clutch (50) which may be used to perform that function.<br><br>If Textron's AR 3 is found to not literally infringe, it infringes under the doctrine of equivalents because the AR 3 includes a hydraulic clutch having the equivalent function and structure to the clutch (50) in the '325 patent for allowing the wheel on the second end of the frame (10) to overrun the hydraulic motor (30) for that wheel (10) when required during turns. |
| 22. A vehicle as recited in claim 21, wherein such overrunning means comprises a mechanical clutch operatively connected between a drive shaft of each hydraulic motor driving each wheel(s) on the second end of the frame and a wheel hub of each wheel(s) on the second end of the frame. | Toro reserves the right to supplement this chart after having the opportunity to conduct some discovery. |

9

The Toro Claim Chart Regarding Doctrine of Equivalents
For U.S. Patent No. 5,533,325 Relating to AR 3

| Claims of the '325 Patent | |
|---|---|
| 23. A vehicle as recited in claim 15, wherein the engine is mounted on the second end of the frame generally above the wheel(s) carried on the second end of the frame. | Admitted by Textron. |
| 24. A hydraulically driven turf maintenance vehicle having all wheel drive, which comprises: | |
| (a) a frame having an engine; | Admitted by Textron. |
| (b) a plurality of ground engaging wheels attached to the frame for movably supporting the frame for movement over the ground, the wheels comprising a first pair of wheels carried adjacent a first end of the frame and at least one wheel spaced on the frame from the first pair of wheels carried adjacent a second end of the frame; | Admitted by Textron. |
| (c) at least one operating unit carried on the frame for performing a turf maintenance operation; | Admitted by Textron. |
| (d) a hydraulic drive system for driving the ground engaging wheels of the frame, which drive system comprises: | Admitted by Textron. |
| (i) a source of pressurized fluid which provides a pressurized fluid flow that is available for driving the ground engaging wheels; | If Textron's variable displacement pump is found to not literally infringe, it infringes under the doctrine of equivalents because a variable displacement pump is insubstantially different from the claimed source of pressurized fluid.<br><br>In addition, the function of Textron's variable displacement pump is the same as the claimed source of pressurized fluid – to pressurize hydraulic fluid. The way in which Textron's variable displacement pump pressurizes the fluid is the same as the claimed source of pressurized fluid – by increasing the pressure of the fluid above its static state. The result achieved by Textron's variable displacement pump is the same as the claimed |

The Toro Claim Chart Regarding Doctrine of Equivalents
For U.S. Patent No. 5,533,325 Relating to AR 3

| Claims of the '325 Patent | |
|---|---|
| | source of pressurized fluid – to make pressurized fluid available to drive the wheels. |
| (ii) individual hydraulic drive motors operatively engaged to each of the ground engaging wheels on the first end of the frame, and at least one individual hydraulic drive motor operatively engaged to the ground engaging wheel(s) on the second end of the frame; and | Admitted by Textron. |
| (iii) means for connecting the hydraulic motors to the source of pressurized fluid in the following manner: | Admitted by Textron. |
| the wheel drive motor(s) for the wheel(s) on the second end of the frame being connected in series to the fluid source and to the wheel drive motors for the wheels on the first end of the frame in a manner that causes the pressurized fluid flow to pass substantially in its entirety through each wheel drive motor for the wheel(s) carried on the second end of the frame to provide a maximum tractive effort on each wheel on the second end of the frame for a given pressurized fluid flow regardless of wheel slippage conditions on the wheels on the first end of the frame; and | If Textron's hydraulic drive system is found to not literally infringe, it infringes under the doctrine of equivalents because Textron's hydraulic drive system is insubstantially different from the claimed hydraulic drive system.

In addition, the function of Textron's hydraulic drive system is the same as the claimed hydraulic drive system – to provide the maximum available fluid supply to the drive wheel motor on the second end of the frame, regardless of slippage conditions of the wheels on the first end of the frame. The way in which Textron's hydraulic drive system provides the maximum available fluid supply to the drive wheel motor on the second end of the frame, regardless of slippage conditions of the wheels on the first end of the frame, is the same as the claimed hydraulic drive circuit – by putting the drive motor for the wheel on the second end of the frame in a sequential arrangement with the fluid source and the parallel configuration of the wheel drive motors for the wheels on the first end of the frame. The result achieved by Textron's hydraulic drive system is the same as the claimed hydraulic drive system – that the wheel motor for the wheel on the second end of the frame will receive the maximum fluid supply regardless of whether or not the front wheels are slipping. |

11

**The Toro Claim Chart Regarding Doctrine of Equivalents**
**For U.S. Patent No. 5,533,325 Relating to AR 3**

| Claims of the '325 Patent | |
|---|---|
| the wheel drive motors for the wheels on the first end of the frame being connected to each other in parallel in a manner that causes the pressurized fluid flow to be split when passing through the wheel drive motors for the wheels on the first end of the frame; and | Admitted by Textron. |
| (e) a separate, independent overrunning clutch means operatively connected to each wheel(s) on the second end of the frame for allowing each wheel(s) on the second end of the frame to independently overrun the hydraulic motor(s) driving such wheel(s) when required during turns of the vehicle. | If Textron's hydraulic motor and clutch valve with recirculating fluid supply line is found to not literally infringe, it infringes under the doctrine of equivalents because a hydraulic motor and clutch valve with recirculating fluid supply line is insubstantially different from the claimed overrunning clutch.<br><br>In addition, the function of Textron's hydraulic motor and clutch valve with recirculating fluid supply line is the same as the claimed overrunning clutch—to allow the wheel on the second end of the frame to travel a longer distance than the wheels on the first end of the frame at a speed necessary to preclude skidding or dragging the wheel on the second end of the frame. The way in which Textron's hydraulic motor and clutch valve with recirculating fluid supply line permits the wheel on the second end of the frame to travel a longer distance than the wheels on the first end of the frame at a speed necessary to preclude skidding or dragging the wheel on the second end of the frame is the same as the claimed overrunning clutch—by allowing the wheel on the second end of the frame to turn faster during a turn. The result achieved by Textron's hydraulic motor and clutch valve with recirculating fluid supply line is the same as the claimed overrunning clutch—the wheel on the second end of the frame does not drag or skid during a turn. |

K:\CLIENTS\06\06372\150USZA\Claim Charts\Claim Chart Doe 325 w AR 3.doc

12

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TEXTRON INNOVATIONS INC.,           )
                                    )
        Plaintiff,                  )       C.A. No. 05-486 (GMS)
                                    )
    v.                              )
                                    )
THE TORO COMPANY,                   )
                                    )
        Defendant.                  )

### PLAINTIFF'S FIRST SUPPLEMENTAL ANSWERS TO
### DEFENDANT'S FIRST SET OF INTERROGATORIES

Plaintiff Textron Innovations Inc. ("TII" or "Plaintiff"), by counsel and pursuant to Fed.

R. Civ. P. 26 and 33, hereby serves the following First Supplemental Answers to The Toro

Company's ("Toro" or "Defendant") First Set of Interrogatories dated January 6, 2006. These

Answers are provided subject to, and without waiver of, TII's previously stated Objections,

which are repeated below.

### I.    GENERAL RESPONSES.

1.    Subject to, and without waiving TII's general and specific objections to Toro's

First Set of Interrogatories, TII will respond to Toro's interrogatories pursuant to the

requirements of the Federal Rules of Civil Procedure and the Local Rules of the United States

District Court for the District of Delaware, the Court's Scheduling Order, and/or other applicable

law.

2.    The general and specific objections set forth below are made based on the best

information presently available to TII.  TII reserves the right to amend, supplement, or change

any objection if and when additional, different, or more accurate information becomes available

and/or facts are developed.  In making the following objections, TII does not waive any

relating to all of the models of its rotary-type gang mowers, that it has made, sold, offered for sale, or imported into the United States.

**FIRST SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 8 (7/17/06):**

Subject to and without waiving its previously-stated objections, TII incorporates by reference its Plaintiff's Claim Chart, together with all exhibits and claim charts thereto, served on Toro on April 3, 2006, pursuant to the Court's Scheduling Order in this case.

**INTERROGATORY NO. 9:**

Describe the circumstances, including the date(s), in which any alleged invention disclosed or claimed in the patents-in-suit was first offered for sale, sold, publicly used, and/or publicly disclosed in the United States, and the circumstances, including the date(s), in which any alleged invention disclosed or claimed in the patents-in-suit was first described in a printed publication anywhere in the world, and identify all documents and the three persons most knowledgeable about the facts concerning TII's response to this interrogatory.

**OBJECTIONS TO INTERROGATORY NO. 9:**

TII incorporates by reference its General Objections stated above, and in particular, objects to this interrogatory on the grounds stated in General Objections 16 and 17.

**ANSWER TO INTERROGATORY NO. 9:**

Subject to and without waiving the foregoing general and specific objections, TII states that pursuant to Rule 33(d), TII will produce documents from which non-privileged information requested by the interrogatory may be derived or ascertained.

19

Dated: July 17, 2006          By: _Christopher C. Campbell/DMG_

Edmond D. Johnson
Peter B. Ladig
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

OF COUNSEL:
Scott L. Robertson
Christopher C. Campbell
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109
Telephone:  (202) 955-1500
Facsimile:  (202) 778-2201
**ATTORNEYS FOR PLAINTIFF
TEXTRON INNOVATIONS INC.**

28

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TEXTRON INNOVATIONS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 05-486 (GMS) |
| | ) | |
| THE TORO COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the following document:

Plaintiff Textron Innovations Inc.'s First Supplemental Answers to Defendant's First Set of Interrogatories

has been served on the following individuals via electronic mail this 17th day of July, 2006:

| | |
|---|---|
| Nicole Benham | nbenham@merchantgould.com |
| Carol Firner | cfirner@merchantgould.com |
| Kaye Holst | kholst@merchantgould.com |
| Richard Horwitz | rhorwitz@potterandderson.com |
| Thomas Leach | tleach@merchantgould.com |
| Sarah Lewis | slewis@merchantgould.com |
| Nancy McMenamin | nmcmenamin@potteranderson.com |
| David Moore | dmoore@potteranderson.com |
| Earl Reiland | ereiland@merchantgould.com |
| Nicole Tarantino | ntarantino@potteranderson.com |
| Anthony Zeuli | tzeuli@merchantgould.com |

Date: July 17, 2006

David M. Young, Esq.

# EXHIBIT 7

Price, David     8/31/2006

```
            FOR THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF DELAWARE


-----------------------------------------------------------

TEXTRON INNOVATIONS, INC.,

                Plaintiff,

     -vs-                        C.A. No. 05-486

THE TORO COMPANY,

                Defendant.

-----------------------------------------------------------



            Video examination of DAVID PRICE, taken at

the instance of the Defendant, under and pursuant to the

Federal Rules of Civil Procedure, before MELISSA J.

STARK, a Certified Realtime Reporter, Registered

Professional Reporter and Notary Public in and for the

State of Wisconsin, at Michael, Best & Friedrich, LLP,


100 East Wisconsin Avenue, Milwaukee, Wisconsin, on


AUGUST 31, 2006, commencing at 8:59 a.m. and concluding


at 4:53 p.m.
```

Pro-Systems Court Reporting     612.823.2100

332f4823-03dc-413e-a2ce-1d45a2c8d981

Price, David    8/31/2006

Page 2

1                A P P E A R A N C E S
2    HUNTON & WILLIAMS, by
     MR. CHRISTOPHER C. CAMPBELL,
3    1751 Pinnacle Drive, Suite 1700,
     McLean, Virginia 22102,
4    appeared on behalf of the Plaintiff.
5    MERCHANT & GOULD, by
     MR. ANTHONY R. ZEULI and MR. THOMAS J. LEACH,
6    3200 IDS Center
     80 South Eighth Street,
7    Minneapolis, Minnesota 55402-2215,
     appeared on behalf of the Defendant.
8
9              A L S O    P R E S E N T
10   Mr. Dean VanHoogen, Videographer.
11
                   * * * * *
12
                  I N D E X
13

     Examination By:                              Page
14
     Mr. Zeuli........................................    5
15   Mr. Campbell..................................... 216
     Mr. Zeuli....................................... 255
16
17
18   Exhibits:                                       ID
19   DDX-1 -Notice Of Deposition.....................    5
     DDX-2 -Patent Number 6,047,530.................   10
20   DDX-3 -Patent Number 6,336,311.................   11
     DDX-4 -Patent Number 6,336,312.................   11
21   DDX-5 -Plaintiff Textron's Brief In Support Of
             Its Proposed Claim Construction...........   18
22   DDX-6 -Pages From Webster's Dictionary...........   23
     DDX-7 -Piece Of Cited Prior Art In The 530 Patent.   26
23   DDX-8 -Toro Brochure For A Groundsmaster 455-D....   30
     DDX-9 -Patent Number 5,280,695.................   34
24   DDX-10-Toro Brochure For A Groundsmaster 580-D....   41
     DDX-11-Jacobsen Manual For The HR-15.............   45
25   DDX-12-Three Photographs........................   47

Pro-Systems Court Reporting    612.823.2100
332f4823-03dc-413e-a2ce-1d45a2c8d981

# EXHIBIT 8

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 9

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 10

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 11

Knurr, Randal S.    11/15/2006

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------

TEXTRON INNOVATIONS, INC.,

          Plaintiff,

  -vs-               Case No. 05-486 (GMS)

THE TORO COMPANY,

          Defendant.

------------------------------------------------------------

        VIDEO examination of RANDAL S. KNURR,

taken at the instance of the Defendant, under and

pursuant to the Federal Rules of Civil Procedure, before

KATHLEEN E. CARTER, a Certified Realtime Reporter,

Registered Merit Reporter and Notary Public in and for

the State of Wisconsin, at Whyte Hirschboeck Dudek,

S.C., 555 East Wells Street, Suite 1900, Milwaukee,

Wisconsin, on November 15, 2006, commencing at 9:07 a.m.

and concluding at 6:16 p.m.

Knurr, Randal S.    11/15/2006

Page 2

1                    A P P E A R A N C E S
2    MERCHANT & GOULD, by
     MR. ANTHONY R. ZEULI and MR. THOMAS J. LEACH,
3    3200 IDS Center
     80 South Eighth Street,
4    Minneapolis, Minnesota 55402-2215,
     appeared on behalf of the Plaintiff.
5
     HUNTON & WILLIAMS, LLP, by
6    MR. CHRISTOPHER C. CAMPBELL,
     1900 K Street, N.W.,
7    Washington, D.C. 20006-1109,
     appeared on behalf of the Defendant.
8
                   A L S O    P R E S E N T
9
     MR. OWEN MAY, Videographer.
10
11
12                      *  *  *  *  *
13
14
                      I N D E X
15
16   Examination:                                    Page
17   By Mr. Zeuli...................................    5
     By Mr. Campbell................................  277
18   By Mr. Zeuli...................................  299
19
20
     Exhibit Identified:                             Page
21
     No. 49 -Subpoena...............................   37
22   No. 50 -Document Re Three-Wheel Product That Mr.
            Knurr Saw At The Trade Show..............   67
23   No. 51 -A Number Of Brochures That Came From The
            Box Mr. Knurr Found In His Garage.........   78
24   No. 52 -Fax Dated December 2nd, 1999...........   87
     No. 53 -Picture Of A Mower.....................   91
25   No. 54 -Brochure For The 5111..................   98

# EXHIBIT 12

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TEXTRON INNOVATIONS INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C. A. No. 05-486 (GMS) |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| THE TORO COMPANY, | ) |
| | ) |
| Defendant. | ) |

### AMENDED NOTICE OF VIDEOTAPED DEPOSITION AND REQUEST FOR DESIGNATIONS OF PERSONS TO TESTIFY UNDER FED.R.CIV.P. 30(b)(6)

PLEASE TAKE NOTICE that on Friday **October 6, 2006**, commencing at **9:00 a.m.**, at the offices of Merchant & Gould, 901 - 15th Street N.W., Suite 850, Washington, D.C. 20005, or at some other place mutually agreed upon by counsel, Defendant will take the videotaped deposition of Textron Innovations Inc., which includes, but is not limited to, Textron, Inc., Jacobsen, a Textron Company, Ransomes Inc., Cushman, Inc. and their parents and subsidiaries (hereinafter "Textron") upon oral examination pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure on the following topics:

1.    Investigation of products accused of infringing the '530, '311 and '312 patents.

2.    Prior art to the '530, '311 and '312 patents.

3.    Sales or offers for sale of embodiments shown or described in the '530, '311 and '312 patents before the filing date.

4.    Any public disclosure or public knowledge of the alleged inventions disclosed or claimed in the '530, '311 and '312 patents before the filing dates.

5.   Textron's application of the claim terms used in the '530, '311 and '312 patents to each Toro product accused of infringement.

6.   Textron's application of the claim terms used in the '530, '311 and '312 patents to the prior art.

The videotaped deposition upon oral examination shall continue from day-to-day until completed.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Textron is requested to identify the person or persons who will testify on its behalf on each of the topics identified above. Defendant requests that, prior to the commencement of the deposition, Textron supply a written designation of persons who will testify on its behalf and an indication of the topic(s) for which each such person is designated.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Earl D. Reiland                          By:   /s/ David E. Moore
Anthony R. Zeuli                                 Richard L. Horwitz
Thomas J. Leach                                  David E. Moore
MERCHANT & GOULD P.C.                            Hercules Plaza, 6th Floor
3200 IDS Center                                  1313 N. Market Street
80 South 8th Street                              Wilmington, Delaware 19899-0951
Minneapolis, MN 55402                            (302) 984-6000
(612) 332-5300                                   rhorwitz@potteranderson.com
                                                 dmoore@potteranderson.com

Dated:  September 29, 2006

                                          Attorneys for Defendant The Toro Company

753260/29362

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on September 29, 2006, the attached

document was electronically mailed and hand delivered to the following persons and was

electronically filed with the Clerk of the Court using CM/ECF which will send

notification to the registered attorney(s) of record that the document has been filed and is

available for viewing and downloading:

Edmond D. Johnson
Peter B. Ladig
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
tjohnson@bayardfirm.com
pladig@bayardfirm.com
KWright@bayardfirm.com

I hereby certify that on September 29, 2006, I have Electronically Mailed and

Federal Expressed the documents to the following:

Christopher C. Campbell
Hunton & Williams LLP
1900 K Street, N.W.
Washington, DC 20006-1109
srobertson@hunton.com
ccampbell@hunton.com
mlouey@hunton.com
lmarlatt@hunton.com
fmckeon@hunton.com
dmckim@hunton.com

Michael P. F. Phelps
David Young
Hunton & Williams LLP
1751 Pinnacle Drive, Suite 1700
McLean, Virginia 22102
mpphelps@hunton.com
dyoung@hunton.com

By: /s/ David E. Moore
      Richard L. Horwitz
      David E. Moore
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, Delaware 19899-0951
      (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

695031

# EXHIBIT 13

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TEXTRON INNOVATIONS INC.,    )
    )
    Plaintiff,    )    C.A. No. 05-486 (GMS)
    )
    v.    )
    )
THE TORO COMPANY,    )
    )
    Defendant.    )

### PLAINTIFF'S OBJECTIONS TO DEFENDANT'S
### AMENDED NOTICE OF RULE 30(b)(6) DEPOSITION

Plaintiff Textron Innovations Inc. ("TII" or "Plaintiff"), by counsel and pursuant to Fed.

R. Civ. P. 26 and 30, hereby states its objections to Defendant The Toro Company's ("Toro" or

"Defendant") Amended Notice of Rule 30(b)(6) deposition, dated September 29, 2006.

### I.    GENERAL OBJECTIONS.

1.    Subject to, and without waiving TII's general and specific objections set forth

herein, TII will, where indicated, identify and produce witnesses at a location and time that is

mutually convenient for the witnesses and counsel for the parties.

2.    The general and specific objections set forth below are made based on the best

information presently available to TII. TII reserves the right to amend, supplement, or change

any objection if and when additional, different, or more accurate information becomes available

and/or facts are developed. In making the following objections, TII does not waive any

objections that may be applicable to: (a) the use, for any purpose, of any testimony or

information provided in the course of the deposition; or (b) the admissibility, relevancy, or

materiality of any testimony or information to any issues in this case.

**Topic No. 4**

Any public disclosure or public knowledge of the alleged inventions disclosed or claimed in the '530, '311 and '312 patents before the filing dates.

**Objection to Topic No. 4**

TII incorporates by reference its General Objections stated above. In addition, TII specifically objects to this topic on grounds that the topic is vague, ambiguous, and undefined with respect to the "public disclosure or public knowledge of the alleged inventions disclosed or claimed in the [patents-in-suit]."

**Topic No. 5**

Textron's application of the claim terms used in the '530, '311 and '312 patents to each Toro product accused of infringement.

**Objection to Topic No. 5**

TII incorporates by reference its General Objections stated above, and further objects to this request on the grounds of the attorney-client privilege and the work product doctrine. In addition, TII specifically objects to this topic on grounds that, first, this is an improper "contention" topic inappropriate for a Rule 30(b)(6) deposition. Thus, this topic is more appropriately addressed through interrogatories, mandatory disclosure of claim charts, and expert disclosures.

Second, TII is not likely to be able to produce a lay witness that is able to respond to this topic, which appears to require a witness to explain TII's infringement contentions. TII has already provided Toro with claim charts setting forth its infringement allegations, and it is under

no obligation to produce a lay witness to further explain what is set forth in the claim charts. Third, the topic is premature, in that Toro has not produced full discovery relating to its infringing products sufficient to permit any lay or expert witness of TII to respond. Indeed, Toro has failed to provide full discovery pertinent to this issue to date. Moreover, the Court has not yet construed the claims of the patents-in-suit.

In addition, the topic is vague and undefined as to what, for example, it is about "Textron's application of the claim terms" to the accused products that the deponent is expected to testify about.

Based on the above objections, TII will not produce a witness in response to this topic.

### Topic No. 6

Textron's application of the claim terms used in the '530, '311 and '312 patents to the prior art.

### Objection to Topic No. 6

TII incorporates by reference its General Objections stated above, and further objects to this request on the grounds of the attorney-client privilege and the work product doctrine. In addition, TII specifically objects to this topic on grounds that, first, this is an improper "contention" topic inappropriate for a Rule 30(b)(6) deposition. Thus, this topic is more appropriately addressed through interrogatories, mandatory disclosure of claim charts, and expert disclosures.

Second, TII is not likely to be able to produce a lay witness that is able to respond to this topic, which appears to require a witness to respond to Toro's invalidity contentions. TII has already provided Toro with claim charts setting forth its response to Toro's invalidity allegations,

7

and it is under no obligation to produce a lay witness to further explain what is set forth in the claim charts. Third, the topic is premature, in that any expert report of TII pertaining to validity is not due for several months, and then only after Toro has first provided its expert report(s) alleging invalidity. Moreover, the Court has not yet construed the claims of the patents-in-suit.

In addition, the topic is vague and undefined as to what, for example, it is about "Textron's application of the claim terms" to the prior art that the deponent is expected to testify about. Indeed, Toro's notice does not even identify the "prior art" about which the deponent is expected to testify.

Based on the above objections, TII will not produce a witness in response to this topic.

Dated: October 4, 2006

By: _____

Edmond D. Johnson
Peter B. Ladig
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

OF COUNSEL:
Scott L. Robertson
Christopher C. Campbell
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
**ATTORNEYS FOR PLAINTIFF**
**TEXTRON INNOVATIONS INC.**

# EXHIBIT 14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TEXTRON INNOVATIONS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-486 (GMS) |
| | ) | |
| THE TORO COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER CONSTRUING THE TERMS OF U.S. PATENT NOS. 6,047,530; 6,336,311; and 6,336,312

On September 19, 2006, the court held a *Markman* hearing in this patent infringement action concerning U.S. Patent Nos. 6,047,530 (the "'530 patent"); 6,336,311 (the "'311 patent"); and 6,336,312 (the "'312 patent") (collectively, the "patents-in-suit"). During the hearing, Toro argued that several terms of the patents-in-suit should be construed narrowly. The court will first address Toro's argument, and then set forth its construction of the disputed claim terms.

A.    **Toro's Contention that the Specification Limits Certain Claim Terms**

Toro contends that the specifications of the patents-in-suit limit the meaning of certain claim terms.[1] Particularly, Toro contends that the specifications of the patents-in-suit clearly limit many of the claim terms at issue to the construction described in the Summary of Invention as "the invention." (See, e.g., D.I. 77, at 24.) Although a close case, after having read the parties' submissions, the patents-in-suit, the prosecution history of the patents, and the relevant case law, the court finds that the claim terms at issue are not limited by the specifications of the patents-in-suit for

---

[1] The court, for convenience, will cite only to the '530 patent specification, as the '311 and '312 patent specifications are identical to the '530 patent specification.

1.    The term "gang-type rotary lawn mower" is a limitation[6] to the independent claims of the patents-in-suit, and is construed as "a lawn mower having more than one cutting deck assembly of the rotary type."

2.    The term "front and rear wheels" is construed as "at least two front wheels and at least two rear wheels."

3.    The term "rotary cutting deck assemblies/assembly" is construed as "a cutting unit that has a rotary blade, as distinguished from a reel blade."

4.    The term "mounted on the frame" is construed as "connected to the frame."

5.    The term "deck defining a downwardly opening space" is construed to have its plain and ordinary meaning.

6.    The term "roller extends across substantially the entire width of the deck" is construed as "the roller extends largely but not wholly across the entire width of the deck, and does not extend beyond the width of the deck."

7.    The term "lifting arm" is construed to have its plain and ordinary meaning.

8.    The term "side plates" is construed to have its plain and ordinary meaning.

9.    The term "rear roller extends between the side plates and supports the side plates for movement over the ground" needs no construction.

10.    The term "each rear deck assembly being aligned with a respective gap between adjacent front deck assemblies" is construed as "every rear deck assembly is located behind a gap defined by two adjacent front deck assemblies."

---

[6] *See Catalina Mktg. Int'l v. Coolsavings.com*, 289 F.3d 801, 808 ("[D]ependence on a particular disputed preamble phrase for antecedent basis may limit claim scope because it indicates a reliance on both the preamble and claim body to define the claimed invention.")

11.    The term "roller" is construed to have its plain and ordinary meaning.


Dated: October 20, 2006                    /s/ Gregory M. Sleet
                                           UNITED STATES DISTRICT JUDGE

# EXHIBIT 15

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TEXTRON INNOVATIONS INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 05-486 (GMS) |
| | ) | |
| v. | ) | |
| | ) | |
| THE TORO COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S SECOND SUPPLEMENTAL ANSWERS TO
## DEFENDANT'S FIRST SET OF INTERROGATORIES

Plaintiff Textron Innovations Inc. ("TII" or "Plaintiff"), by counsel and pursuant to Fed.

R. Civ. P. 26 and 33, hereby serves the following Second Supplemental Answers to The Toro

Company's ("Toro" or "Defendant") First Set of Interrogatories dated January 6, 2006. These

Answers are provided subject to, and without waiver of, TII's previously stated Objections,

which are repeated below.

### I. GENERAL RESPONSES.

1.      Subject to, and without waiving TII's general and specific objections to Toro's

First Set of Interrogatories, TII will respond to Toro's interrogatories pursuant to the

requirements of the Federal Rules of Civil Procedure and the Local Rules of the United States

District Court for the District of Delaware, the Court's Scheduling Order, and/or other applicable

law.

2.      The general and specific objections set forth below are made based on the best

information presently available to TII. TII reserves the right to amend, supplement, or change

any objection if and when additional, different, or more accurate information becomes available

and/or facts are developed. In making the following objections, TII does not waive any

opportunity to take discovery with regard to Toro's products, and in particular with regard to specific Toro model numbers and model variations. Thus, TII's answer is preliminary, and TII reserves the right to amend or supplement its answer based upon continuing investigation and discovery. TII objects to the request that it identify the three people most knowledgeable about its answer as this request is vague and ambiguous, *e.g.*, it is not clear whether the request is intended to determine the persons most knowledgeable about Toro's accused products, or the patents-in-suit, or something else entirely. TII further objects to the request that it identify doctrine of equivalents contentions, in that this request is premature at least until TII has had discovery from Toro and Toro shows why its accused products do not literally infringe as shown in the following answer.

## ANSWER TO INTERROGATORY NO. 8:

Subject to and without waiving the foregoing general and specific objections, TII has attached to these answers Exhibit A, which sets forth, based on TII's presently available information, a claim chart showing, *inter alia,* a list of the claims of the patents-in-suit that it believes Toro is infringing, and the accused products applicable to each of the claims. TII emphasizes that it reserves the right to amend or supplement this answer based upon its continuing investigation and discovery, and in particular based upon discovery from Toro relating to all of the models of its rotary-type gang mowers, that it has made, sold, offered for sale, or imported into the United States.

## FIRST SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 8 (7/17/06):

Subject to and without waiving its previously-stated objections, TII incorporates by reference its Plaintiff's Claim Chart, together with all exhibits and claim charts thereto, served on Toro on April 3, 2006, pursuant to the Court's Scheduling Order in this case.

**INTERROGATORY NO. 9:**

Describe the circumstances, including the date(s), in which any alleged invention disclosed or claimed in the patents-in-suit was first offered for sale, sold, publicly used, and/or publicly disclosed in the United States, and the circumstances, including the date(s), in which any alleged invention disclosed or claimed in the patents-in-suit was first described in a printed publication anywhere in the world, and identify all documents and the three persons most knowledgeable about the facts concerning TII's response to this interrogatory.

**OBJECTIONS TO INTERROGATORY NO. 9:**

TII incorporates by reference its General Objections stated above, and in particular, objects to this interrogatory on the grounds stated in General Objections 16 and 17.

**ANSWER TO INTERROGATORY NO. 9:**

Subject to and without waiving the foregoing general and specific objections, TII states that pursuant to Rule 33(d), TII will produce documents from which non-privileged information requested by the interrogatory may be derived or ascertained.

**FIRST SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 9 (9/15/06):**

Subject to and without waiving its previously-stated objections, TII states that it believes the first offer for sale and sale, public use and/or public disclosure in the United States of an invention disclosed or claimed in the patents in suit occurred in 1997 with the sale of a Ransomes AR-250 product. *See* previously produced document TEXD001595. At this time, TII is unable to identify the precise date of the first sale of the first unit with any greater precision.

Dated: 9/15/2006                    By: _____

                                    Edmond D. Johnson
                                    Peter B. Ladig
                                    THE BAYARD FIRM
                                    222 Delaware Avenue, Suite 900
                                    Wilmington, DE 19801

                                    OF COUNSEL:
                                    Scott L. Robertson
                                    Christopher C. Campbell
                                    HUNTON & WILLIAMS LLP
                                    1900 K Street, N.W.
                                    Washington, D.C. 20006-1109
                                    Telephone:  (202) 955-1500
                                    Facsimile:  (202) 778-2201
                                    **ATTORNEYS FOR PLAINTIFF**
                                    **TEXTRON INNOVATIONS INC.**

# EXHIBIT 16

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 17

Middlesworth, Tom   2/27/2007

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

TEXTRON INNOVATIONS INC.,            )
                                     )
            Plaintiff,               )
                                     )
vs.                                  )   Case Number:
                                     )   05-486 (GMS)
THE TORO COMPANY,                    )   (Venued in the
                                     )   District of
        Defendant.                   )   Delaware)
                                     )

VIDEOTAPED DEPOSITION OF TOM MIDDLESWORTH

Tucson, Arizona

February 27, 2007

10:39 a.m.

Middlesworth, Tom    2/27/2007

Page 2

1                          I N D E X

2

3      WITNESS                                          PAGE

4      TOM MIDDLESWORTH

5           Examination by MR. LEACH               6, 149

6           Examination by MR. JOHNSON               138

7

8                        E X H I B I T S
       Deposition
9      Exhibits      Description                       Page

10       405        Notice Of Subpoena Ad Testificandum      7

11       406        Simplicity Parts Manual              13
                    FC Hydro Series
12
         407        Simplicity 48" Rotary Mower           18
13                  Mfr's.  No. 502 and Leaf Mulcher
                    Mfr's No. 457 manual
14
         408        Simplicity 42" Rotary Mower           19
15                  Mfr's. No. 501 and 544 Leaf Mulcher
                    Mfr's. No. 284 manual
16
         409        Simplicity Owner's Manual            29
17                  Rotary Trailing Mowers

18       410        Color copy photographs of            40
                    Simplicity 637
19
         411        Xerox and color copy photographs     42
20                  of Middlesworth mower

21       412        Middlesworth brochure                50

22       413        Middlesworth brochure                55

23       414        Middlesworth Engineering And         59
                    Manufacturing, Inc. Price List
24                  March 1, 1998 "C" Series Riding
                    Lawnmowers
25

7caf4943-e499-4ddf-bad2-e7034ae77a34

# EXHIBIT 18

Nunes, John    3/14/2007

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TEXTRON INNOVATIONS, INC.,

            Plaintiff,

-vs-                        CASE NUMBER 05-486(GMS)

THE TORO COMPANY,

            Defendant.

_____/

VIDEOTAPED DEPOSITION OF JOHN NUNES

DATE:          March 14, 2007

TIME:          9:00 a.m.

LOCATION:      1060 Reno Avenue
               Modesto, California

REPORTED BY:   Carol Lehman
               Certified Shorthand Reporter
               License Number 3500

Pro-Systems Court Reporting          612.823.2100

aed231c7-02ca-4334-95a6-53dfc80902a5

Nunes, John   3/14/2007

Page 2

```
 1
 2
 3     A P P E A R A N C E S:
 4
       For the Plaintiff:   HUNTON & WILLIAMS, LLP
 5                          BY:  MICHAEL P.F. PHELPS,
                                 Attorney at Law
 6                          1751 Pinnacle Drive
                            Suite 1700
 7                          McLean, Virginia  22102
                            703.714.7553
 8
 9
                           (Telephonic appearance):
10
                            HUNTON & WILLIAMS, LLP
11                          BY:  CHRISTOPHER C. CAMPBELL,
                                 Attorney at Law
12                          1900 K Street, N.W.
                            Washington, DC  20006-1109
13
14
15                         (Telephonic appearance):
16     For the Defendant:  MERCHANT & GOULD, P.C.
                            BY:  ANTHONY R. ZEULI,
17                               Attorney at Law
                            3200 IDS Center
18                          80 South 8th Street
                            Minneapolis, MN  55402
19                          612.332.5300
20
21     Also present:       Kevin McMahon, Legal Video
                           Specialist; Jack Kim;
22                         Josh Graham (Telephonic
23                         appearance only)
24                         --oOo--
25
```

Pro-Systems Court Reporting         612.823.2100

aed231c7-02ca-4334-95a6-53dfc80902a5

# EXHIBIT 19

Wegner, Mark    2/26/2007

Page 1

Deposition of

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

= = = = = = = = = = = = = = = = = = = = = = = = =

TEXTRON INNOVATIONS,
INC.,

      Plaintiff,

  -vs-                Case No. CA 05-486(GMS)

THE TORO COMPANY,

      Defendant.

= = = = = = = = = = = = = = = = = = = = = = = = =

Videotape Deposition of:

MARK WEGNER

Madison, Wisconsin
February 26, 2007

Reported by:  Lynn Schultz

VERBATIM REPORTING, LIMITED  (608) 255-7700

Wegner, Mark    2/26/2007

Page 2

1                          I N D E X

2     WITNESS                                    Page(s)

3     MARK WEGNER

4           Examination by Mr. Leach            4/47
            Examination by Mr. VanNorman          45

5

6

7                        E X H I B I T S

8     No.    Description                      Identified

9     400    Notice of Subpoena ad Testificandum      7

10    401    Black binder containing Bates stamped
             documents CGC1168-CGC1429              16

11

      402    Black binder containing Bates stamped
12           documents CGC470-CGC1167              16

13    403    Bates Numbered Documents CGC009206-009211  27

14    404    Subpoena                              33

15

16

17

18          (Exhibit Nos. 400, 403 and 404 attached to the
      original transcript and copies provided to counsel.
19          Exhibit Nos. 401 and 402 retained by Mr. Leach)

20

21

            (Original transcript filed with Mr. Leach)
22

23

24

25

              VERBATIM REPORTING, LIMITED   (608) 255-7700

# EXHIBIT 20

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TEXTRON INNOVATIONS INC.,      )
     )
        Plaintiff,          )    C.A. No. 05-486 (GMS)
     )
    v.                  )    (Jury Trial Demanded)
     )
THE TORO COMPANY,         )
     )
        Defendant.       )

## PLAINTIFF'S THIRD SUPPLEMENTAL ANSWERS TO
## DEFENDANT'S FIRST SET OF INTERROGATORIES

Plaintiff Textron Innovations Inc. ("TII" or "Plaintiff"), by counsel and pursuant to Fed.

R. Civ. P. 26 and 33, hereby serves the following Third Supplemental Answers to The Toro

Company's ("Toro" or "Defendant") First Set of Interrogatories dated January 6, 2006. These

Answers are provided subject to, and without waiver of, TII's previously stated Objections,

which are repeated below.

### I. GENERAL RESPONSES

1.      Subject to, and without waiving TII's general and specific objections to Toro's

First Set of Interrogatories, TII will respond to Toro's interrogatories pursuant to the

requirements of the Federal Rules of Civil Procedure and the Local Rules of the United States

District Court for the District of Delaware, the Court's Scheduling Order, and/or other applicable

law.

2.      The general and specific objections set forth below are made based on the best

information presently available to TII. TII reserves the right to amend, supplement, or change

any objection if and when additional, different, or more accurate information becomes available

and/or facts are developed. In making the following objections, TII does not waive any

discovery. TII objects to the request that it identify the three people most knowledgeable about its answer as this request is vague and ambiguous, *e.g.,* it is not clear whether the request is intended to determine the persons most knowledgeable about Toro's accused products, or the patents-in-suit, or something else entirely. TII further objects to the request that it identify doctrine of equivalents contentions, in that this request is premature at least until TII has had discovery from Toro and Toro shows why its accused products do not literally infringe as shown in the following answer.

**ANSWER TO INTERROGATORY NO. 8:**

Subject to and without waiving the foregoing general and specific objections, TII has attached to these answers Exhibit A, which sets forth, based on TII's presently available information, a claim chart showing, *inter alia,* a list of the claims of the patents-in-suit that it believes Toro is infringing, and the accused products applicable to each of the claims. TII emphasizes that it reserves the right to amend or supplement this answer based upon its continuing investigation and discovery, and in particular based upon discovery from Toro relating to all of the models of its rotary-type gang mowers, that it has made, sold, offered for sale, or imported into the United States.

**FIRST SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 8 (7/17/06):**

Subject to and without waiving its previously-stated objections, TII incorporates by reference its Plaintiff's Claim Chart, together with all exhibits and claim charts thereto, served on Toro on April 3, 2006, pursuant to the Court's Scheduling Order in this case.

**SECOND SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 8 (2/27/07):**

Subject to and without waiving its previously-stated objections TII incorporates by reference the expert report of Dr. Richard Parish of January 26, 2007, including all materials considered therein.

22

Dated: _Feb 27, 2007_          By: _Christopher C. Campbell / MPOP_

                                Edmond D. Johnson
                                **PEPPER HAMILTON LLP**
                                1313 Market Street, Suite 5100
                                P.O. Box 1709
                                Wilmington, DE 19899-1709
                                (302) 777-6539
                                Fax: (302) 421-8390

                                OF COUNSEL:
                                Scott L. Robertson
                                Christopher C. Campbell
                                HUNTON & WILLIAMS LLP
                                1900 K Street, N.W.
                                Washington, D.C. 20006-1109
                                Telephone:  (202) 955-1500
                                Facsimile:  (202) 778-2201
                                **ATTORNEYS FOR PLAINTIFF**
                                **TEXTRON INNOVATIONS INC.**

# EXHIBIT 21

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TEXTRON INNOVATIONS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 05-486 (GMS) |
| | ) | |
| | ) | JURY TRIAL DEMANDED |
| | ) | |
| THE TORO COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**AMENDED INITIAL DISCLOSURES OF PLAINTIFF TEXTRON INNOVATIONS INC.
PURSUANT TO FED. R. CIV. P. 26(a)(1)**

Pursuant to Fed. R. Civ. P. 26(a)(1), plaintiff Textron Innovations Inc. ("TII" or "plaintiff") submits the following amended initial disclosures. These disclosures are based on information available to TII at this time. These initial disclosures do not waive TII's right to object to the disclosure of any information or documents on any grounds, including but not limited to privilege or relevance, provided by the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or the Local Rules for the United States District Court for the District of Delaware.

**A.    IDENTIFICATION OF INDIVIDUALS PURSUANT TO
RULE 26(a)(1)(A)**

Pursuant to Rule 26(a)(1)(A), and subject to TII's continuing investigation and discovery, TII believes the following individuals are likely to have discoverable information that TII may use to support its claims, excluding persons to be used solely for impeachment. Individuals designated with an "*" may be contacted only through counsel for the plaintiff. To the extent known, contact information is provided for any other individuals. The subjects of discoverable information for which these individuals are identified are also provided.

| Name | Company & Address | Subject(s) of Information |
|---|---|---|
| *Richard Bednar | Beatrice, NE | Inventions of the patents-in-suit |
| *Jim Berkeley | Jacobsen, a Textron Company 11524 Wilmar Boulevard Charlotte, NC 28273 | Notice to defendant of patents-in-suit, and marking of products |
| R. Lawrence Buckley | The Toro Company Division Counsel 8111 Lyndale Avenue S. Bloomington, MN 55420 | Toro's prior notice of patents-in-suit |
| Timothy A. Ford | The Toro Company Group Vice President 8111 Lyndale Avenue S. Bloomington, MN 55420 | Toro's prior notice of patents-in-suit |
| *Randal Knurr | Waterford, WI | Inventions of U.S. Patent No. 6,336,312 |
| *Joseph M. Lafata | Harness, Dickey & Pierce, P.L.C. P.O. Box 828 Bloomfield Hills, Michigan 48303 | Prosecution of patents-in-suit |
| *David R. Price | Michael Best & Freidrich LLP 100 East Wisconsin Avenue Milwaukee, WI 53202 | Prosecution of U.S. Patent No. 6,047,530 |
| *James P. Runstadler | Textron Innovations Inc. Vice President of Licensing 40 Westminster Street Providence, RI 02903 | Ownership and licensing of patents-in-suit |
| *David P. Utykanski | Harness, Dickey & Pierce, P.L.C. P.O. Box 828 Bloomfield Hills, Michigan 48303 | Prosecution of patents-in-suit |
| *Peter Whurr | Jacobsen, a Textron Company 11524 Wilmar Boulevard Charlotte, NC 28273 | Non-obviousness |
| *Steve Chicken | Textron Global Technology Private Limited 90 Hosur Road, Madiwala, Bangalore, India | Non-obviousness |
| *Dan Wilkinson | President, Jacobsen, a Textron Company 11524 Wilmar Boulevard Charlotte, NC 28273 | Damages |

| *Lynn Westbrook | Jacobsen, a Textron Company<br>11524 Wilmar Boulevard<br>Charlotte, NC 28273 | Covered products |
|---|---|---|
| *Tim Lansdale | Ransomes UK<br>West Road<br>Ransomes Europark<br>Ipswich Suffolk, England | Alleged prior art<br>Covered products |
| *Alan Prickett | Ransomes UK<br>West Road<br>Ransomes Europark<br>Ipswich Suffolk, England | Alleged prior art |
| Phillip Gardner | Lesco Incorporated<br>1301 East 9th Street<br>Suite 1300<br>Cleveland, Ohio | Alleged prior art |
| Barry Beckett | The Toro Company<br>8111 Lyndale Avenue S.<br>Bloomington, MN 55420 | Infringement, willfulness,<br>accused devices and<br>damages |
| Benjamin Street | The Toro Company<br>8111 Lyndale Avenue S.<br>Bloomington, MN 55420 | Infringement, willfulness,<br>accused devices and<br>damages |
| William Brown | The Toro Company<br>8111 Lyndale Avenue S.<br>Bloomington, MN 55420 | Infringement, willfulness,<br>accused devices and<br>damages |
| Bob Olson | The Toro Company<br>8111 Lyndale Avenue S.<br>Bloomington, MN 55420 | Infringement, willfulness,<br>accused devices and<br>damages |
| Chad Moe | The Toro Company<br>8111 Lyndale Avenue S.<br>Bloomington, MN 55420 | Infringement, willfulness,<br>accused devices and<br>damages |
| Chuck Holley | The Toro Company<br>8111 Lyndale Avenue S.<br>Bloomington, MN 55420 | Infringement, willfulness,<br>accused devices and<br>damages |
| Dan Stiller | The Toro Company<br>8111 Lyndale Avenue S.<br>Bloomington, MN 55420 | Infringement, willfulness,<br>accused devices and<br>damages |
| Dan Tinklenberg | The Toro Company<br>8111 Lyndale Avenue S.<br>Bloomington, MN 55420 | Infringement, willfulness,<br>accused devices and<br>damages |
| Dan Treu | The Toro Company<br>8111 Lyndale Avenue S.<br>Bloomington, MN 55420 | Infringement, willfulness,<br>accused devices and<br>damages |
| Dana Lonn | The Toro Company<br>8111 Lyndale Avenue S.<br>Bloomington, MN 55420 | Infringement, willfulness,<br>accused devices and<br>damages |

| Darrel Hinklin | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
|---|---|---|
| Darren Wennen | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Dave Rud | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| David Stanley Klis | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Donald Lackner | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Don Wirth | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Doug Jordahl | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Eric Baumeister | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Gordy Schmidt | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Greg King | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Jack Gust | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Jeffrey Kallevig | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Jerrod Winter | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Jerry Pomerening | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Jim Heinze | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |

| Jim Swindal | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
|---|---|---|
| John Wright | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Kevin Burke | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Kevin Thomas Conry | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Lynee Jacobucci | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Mike Hall | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Mike Hoffman | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Mike Morris | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Pete Alvord | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Randy Bischel | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and. damages |
| Richard Rodier | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Santosh Patel | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Tammy Nelson | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Terry Volkmer | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Thomas Larson | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |

| Thomas Langworthy | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
|---|---|---|
| Timothy Otto Koch | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| Toby Hinkle | The Toro Company 8111 Lyndale Avenue S. Bloomington, MN 55420 | Infringement, willfulness, accused devices and damages |
| *Richard Parish | 21135 Highway 16 Amite, LA 70422 | Infringement, willfulness, accused devices, damages, patent validity |
| *Larry Evans | 3811 Via Del Campo San Clemente, CA 92673 | Damages |
| *Richard Troxel | 205 Tom Fazio Trace Hendersonville, NC 28739 | Damages |
| *Harry Manbeck | Rothwell, Figg, Ernst & Manbeck 1425 K. Street, N.W., Suite 800 Washington D.C. 20005 | Willful infringement, patent prosecution, inequitable conduct |

TII reserves the right to rely upon information derived from additional persons as such individuals come to its attention through further discovery and investigation, to rely upon evidence obtained from any persons identified by the defendant, and to rely upon evidence obtained from the foregoing individuals with respect to any subject. TII also reserves the right to rely on information derived from any individual designated by the defendant as a witness under Fed. R. Civ. P. 30(b)(6).

**B.    DESCRIPTION OF DOCUMENTS PURSUANT TO RULE 26(a)(1)B)**

Pursuant to Rule 26(a)(1)(B), and subject to TII's continuing investigation and discovery, the following is a description, by category and location, of the documents, data compilations, and tangible things, in the possession, custody, or control of plaintiff or its retained counsel, that plaintiff presently believes may be used to support its claims, excluding such documents, data compilations and tangible things to be used solely for impeachment.

1) U.S. Patent Nos. 6,047,530; 6,336,311; and 6,336,312;

2) Patent prosecution files for U.S. Patent Nos. 6,047,530; 6,336,311; and 6,336,312;

3) Documents showing Toro's prior notice of patents-in-suit;

4) Documents relating to the ownership and assignment of the patents-in-suit;

5) Documents relating to the development, conception and reduction to practice of the claimed inventions of the patents-in-suit;

6) Documents relating to Toro's infringement of the patents-in-suit;

7) Documents relating to any licensing of the patents-in-suit, and sales, marketing, and financial documents relating to any licensed products.

As TII's investigation of defendant's defenses and counterclaims is continuing, TII reserves the right to rely upon any additional documents obtained through further discovery and investigation, and any documents identified by Toro.

These documents, data compilations and things are located primarily at the offices of TII's counsel herein, or counsel to Toro, or at either TII's offices at 40 Westminster Street, Providence, Rhode Island, or the offices of Jacobsen, a Textron Company, 11524 Wilmar Boulevard, Charlotte, NC 28273.

## C.    COMPUTATION OF DAMAGES

TII contends that it is entitled to compensatory damages in the form of no less than a reasonable royalty resulting from Toro's infringement, pursuant to 35 U.S.C. § 284, together with pre- and post-judgment interest and costs as fixed by the Court. TII further seeks an enhancement of damages due to willful infringement, and an award of its attorney's fees pursuant to 35 U.S.C. § 285. All of the expert reports of Larry Evans, Richard Troxel, Harry Manbeck and Richard Parish, as well as TII's supplemental answer to Toro's Interrogatory

number 11, are incorporated by reference herein. TII reserves the right to modify its damages theories and calculations or to seek damages under different theories as appropriate in view of any additional information to be discovered in this case through the date of trial. TII further seeks the entry of a permanent injunction against Toro's continued infringement.

### D.    INSURANCE AGREEMENTS

TII is not aware of any insurance agreements pertinent to this litigation.

Dated: *Feb. 27, 2007*            By: *Christopher C. Campbell / MPAP*

Edmond D. Johnson
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709

OF COUNSEL:
Scott L. Robertson
Christopher C. Campbell
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109
Telephone:  (202) 955-1500
Facsimile:   (202) 778-2201
**ATTORNEYS FOR PLAINTIFF**
**TEXTRON INNOVATIONS INC.**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TEXTRON INNOVATIONS INC.,          )
                                   )
                Plaintiff,         )
                                   )
        v.                         )      C. A. No. 05-486 (GMS)
                                   )
                                   )      JURY TRIAL DEMANDED
                                   )
THE TORO COMPANY,                  )
                                   )
                Defendant.         )

INITIAL DISCLOSURES OF PLAINTIFF TEXTRON INNOVATIONS INC.
PURSUANT TO FED. R. CIV. P. 26(a)(1)

Pursuant to Fed. R. Civ. P. 26(a)(1), plaintiff Textron Innovations Inc. ("TII" or

"plaintiff") submits the following initial disclosures. These disclosures are based on information

available to TII at this time. These initial disclosures do not waive TII's right to object to the

disclosure of any information or documents on any grounds, including but not limited to

privilege or relevance, provided by the Federal Rules of Civil Procedure, the Federal Rules of

Evidence, or the Local Rules for the United States District Court for the District of Delaware.

A.    IDENTIFICATION OF INDIVIDUALS PURSUANT TO
      RULE 26(a)(1)(A)

Pursuant to Rule 26(a)(1)(A), and subject to TII's continuing investigation and discovery,

TII believes the following individuals are likely to have discoverable information that TII may

use to support its claims, excluding persons to be used solely for impeachment. Individuals

designated with an "*" may be contacted only through counsel for the plaintiff. To the extent

known, contact information is provided for any other individuals. The subjects of discoverable

information for which these individuals are identified are also provided.

| Name | Company & Address | Subject(s) of Information |
|---|---|---|
| *Richard Bednar | Beatrice, NE | Inventions of the patents-in-suit |
| *Jim Berkeley | Jacobsen, a Textron Company 11524 Wilmar Boulevard Charlotte, NC 28273 | Notice to defendant of patents-in-suit, and marking of products |
| R. Lawrence Buckley | The Toro Company Division Counsel 8111 Lyndale Avenue S. Bloomington, MN 55420 | Toro's prior notice of patents-in-suit |
| Timothy A. Ford | The Toro Company Group Vice President 8111 Lyndale Avenue S. Bloomington, MN 55420 | Toro's prior notice of patents-in-suit |
| *Randal Knurr | Waterford, WI | Inventions of U.S. Patent No. 6,336,312 |
| *Joseph M. Lafata | Harness, Dickey & Pierce, P.L.C. P.O. Box 828 Bloomfield Hills, Michigan 48303 | Prosecution of patents-in-suit |
| *David R. Price | Michael Best & Freidrich LLP 100 East Wisconsin Avenue Milwaukee, WI 53202 | Prosecution of U.S. Patent No. 6,047,530 |
| *James P. Runstadler | Textron Innovations Inc. Vice President of Licensing 40 Westminster Street Providence, RI 02903 | Ownership and licensing of patents-in-suit |
| *David P. Utykanski | Harness, Dickey & Pierce, P.L.C. P.O. Box 828 Bloomfield Hills, Michigan 48303 | Prosecution of patents-in-suit |

As discovery has just begun and TII's investigation of defendant's defenses and counterclaims is continuing, TII reserves the right to rely upon information derived from additional persons as such individuals come to its attention through further discovery and investigation, to rely upon evidence obtained from any persons identified by the defendant, and to rely upon evidence obtained from the foregoing individuals with respect to any subject.

614599v1

**B.    DESCRIPTION OF DOCUMENTS PURSUANT TO RULE 26(a)(1)B)**

Pursuant to Rule 26(a)(1)(B), and subject to TII's continuing investigation and discovery, the following is a description, by category and location, of the documents, data compilations, and tangible things, in the possession, custody, or control of plaintiff or its retained counsel, that plaintiff presently believes may be used to support its claims, excluding such documents, data compilations and tangible things to be used solely for impeachment.

1)    U.S. Patent Nos. 6,047,530; 6,336,311; and 6,336,312;

2)    Patent prosecution files for U.S. Patent Nos. 6,047,530; 6,336,311; and 6,336,312;

3)    Documents showing Toro's prior notice of patents-in-suit;

4)    Documents relating to the ownership and assignment of the patents-in-suit;

5)    Documents relating to the development, conception and reduction to practice of the claimed inventions of the patents-in-suit;

6)    Documents relating to Toro's infringement of the patents-in-suit;

7)    Documents relating to any licensing of the patents-in-suit, and sales, marketing, and financial documents relating to any licensed products.

As discovery has just begun and TII's investigation of defendant's defenses and counterclaims is continuing, TII reserves the right to rely upon any additional documents obtained through further discovery and investigation, and any documents identified by Toro.

These documents, data compilations and things are located primarily at the offices of TII's counsel herein, or counsel to Toro, or at either TII's offices at 40 Westminster Street, Providence, Rhode Island, or the offices of Jacobsen, a Textron Company, 11524 Wilmar Boulevard, Charlotte, NC 28273.

614599v1

-3-

## C.    COMPUTATION OF DAMAGES

TII is unable at this time to compute the damages it has suffered from Toro's infringement. TII requires discovery from Toro in order to prepare its damages computation. However, TII contends that it is entitled to compensatory damages in the form of no less than a reasonable royalty resulting from Toro's infringement, pursuant to 35 U.S.C. § 284, together with pre- and post-judgment interest and costs as fixed by the Court. TII further seeks an enhancement of damages due to willful infringement, and an award of its attorney's fees pursuant to 35 U.S.C. § 285. TII reserves the right to modify its damages theories and calculations or to seek damages under different theories as appropriate in view of information to be discovered in this case and in view of further anticipated expert opinions on the subject of damages. TII further seeks the entry of a permanent injunction against Toro's continued infringement.

## D.    INSURANCE AGREEMENTS

TII is not aware of any insurance agreements pertinent to this litigation.

Dated: January 17, 2006

By: _____

Edmond D. Johnson (#2257)
Peter B. Ladig (#3513)
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

OF COUNSEL:
Scott L. Robertson
Christopher C. Campbell
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109
Telephone: (202) 955-1500
Facsimile:  (202) 778-2201
**ATTORNEYS FOR PLAINTIFF
TEXTRON INNOVATIONS INC.**

614599v1

-4-

# EXHIBIT 22

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TEXTRON INNOVATIONS INC.,            )
                                     )
            **Plaintiff,**            )
                                       )
      v.                              )    C. A. No. 05-486 (GMS)
                                       )
                                       )    **JURY TRIAL DEMANDED**
                                       )
THE TORO COMPANY,                    )
                                       )
           **Defendant.**            )

## [PROPOSED] SCHEDULING ORDER

This _____ day of _____, 2006, the Court having conducted an initial

Rule 16 scheduling and planning conference pursuant to Local Rule 16.2(b) on January 30, 2006;

IT IS ORDERED that:

1.     **Rule 26(a)(1) Initial Disclosures**.  Unless otherwise agreed to by the parties, they

shall make their initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) on or

before January 17, 2006.

2.     **Joinder of Other Parties and Amendment of Pleadings**.  All motions to join or

add additional parties shall be filed on or before March 1, 2006.  All other motions to amend the

pleadings shall be filed on or before June 1, 2006.

3.     **Reliance Upon Advice of Counsel**.  Defendant shall inform plaintiff whether it

intends to rely upon advice of counsel as a defense to willful infringement no later than October

17, 2006.  If defendant elects to rely on advice of counsel as a defense to willful infringement,

defendant shall produce any such opinions on which defendant intends to rely and any related

documents within the scope of defendant's waiver to plaintiff no later than October 17, 2006.

4.    **Markman Claim Construction Hearing**.  A Markman claim construction hearing shall be held on September 19, 2006, at 10:00 a.m.  The Markman hearing is scheduled for a total of one day.  The parties shall meet and confer regarding narrowing and reducing the number of claim construction issues.  On or before July 21, 2006, the parties shall file a final joint claim chart, which shall include citations to intrinsic evidence.  The parties shall exchange a list of claim terms that each party contends should be construed by the Court on July 14, 2006.  The parties shall serve and file opening claim construction briefs on July 28, 2006, and answering claim construction briefs on August 18, 2006.

5.    **Discovery**.  All fact discovery in this case shall be initiated so that it will be completed on or before December 1, 2006.  Expert Discovery in this case shall be initiated so that it will be completed on or before January 15, 2007.

a.    <u>Discovery Disputes</u>.  Should counsel find they are unable to resolve a discovery dispute, the party seeking the relief shall contact chambers at (302) 573-6470 to schedule a telephone conference.  Not less than forty-eight hours prior to the conference, by hand delivery or facsimile at (302) 573-6472, the party seeking relief shall file with the Court a non-argumentative letter agenda not to exceed two (2) pages outlining the issues in dispute.  Should the Court find further briefing necessary upon conclusion of the telephone conference, the Court shall order the party seeking relief to file with the Court a **TWO PAGE LETTER**, exclusive of exhibits, describing the issues in contention.  The responding party shall file within five (5) days from the date of service of the opening letter an answering letter of no more than **TWO PAGES**.  The party seeking relief may then file a reply letter of no more than **TWO PAGES** within three (3) days from the date of service of the answering letter.

b.    <u>Sample Products</u>.  The parties shall purchase and deliver appropriate

sample products, at their option, and engineering drawings, if requested, of the accused products

on or before March 1, 2006. Said delivery of sample products and engineering drawings, shall

be contingent upon the parties agreeing to a Protective Order.

   c. <u>Infringement Claim Charts</u>. The plaintiff shall serve upon the defendant

by April 3, 2006, a "Plaintiff's Claim Chart," which shall identify: (1) which claim(s) of its

patent it alleges are being infringed; (2) which specific products or methods of defendant it

alleges literally infringe or infringe under the doctrine of equivalents for each claim; and (3)

where each element of each claim listed in (1) is found in each product or method listed in (2),

including the basis for each contention that the element is present. If there is a contention by

plaintiff that there is infringement of any claims under the doctrine of equivalents, plaintiff shall

separately indicate this on its Claim Chart and, in addition to the information required for literal

infringement, plaintiff shall also explain each of the functions, way and result that it contends are

equivalent, and why it contends that any differences are not substantial. No later than May 3,

2006, defendant shall serve upon plaintiff "Defendant's Claim Chart" that indicates with

specificity which elements on Plaintiff's Claim Chart it admits are present in its accused device

or process, and which it contends are absent. In the latter regard, defendant will set forth in

detail the basis for its contention that the element is absent. As to the doctrine of equivalents,

defendant shall indicate on its chart its contentions concerning any differences in function, way

and result and why any differences are substantial.

   d. <u>Invalidity Claim Charts</u>. On or before June 1, 2006, defendant shall serve

on plaintiff a list of all of the prior art on which it relies, and a complete and detailed explanation

of what it alleges the prior art shows and how that prior art invalidates the claim(s) asserted by

plaintiff ("Defendant's Prior Art Statement"). On or before July 3, 2006, plaintiff shall serve on

defendant "Plaintiff's Prior Art Statement," in which it will state in detail its position on what the prior art relied upon by defendant shows, if its interpretation differs from defendant's, and its position on why the prior art does not invalidate the patent(s)-in-suit. The plaintiff's and defendant's "Prior Art Statements" can be, but need not be, in the form of expert reports. Amendments to the parties' Prior Art Statements can be made only by leave of Court, upon a showing:

<u>Defendant</u>:

(a)    that it was not and could not reasonably have been located earlier by defendant; and

(b)    that it is not merely cumulative of prior art already listed, and

(c)    how defendant will be prejudiced if leave is denied, and plaintiff will not be prejudiced if leave is given.

<u>Plaintiff</u>:

(a)    that earlier it could not have detailed its new position on what the prior art relied upon by defendant shows; and

(b)    how plaintiff will be prejudiced if leave is denied and defendant will not be prejudiced if leave is given.

6.    **Confidential Information and Papers Filed Under Seal**. Should counsel find it will be necessary to apply to the Court for a protective order specifying terms and conditions for the disclosure of confidential information, they should confer and attempt to reach an agreement on a proposed form of order and submit it to the Court within 10 days from the date of this order. When filing papers under seal, counsel should deliver to the Clerk an original and two copies of the papers.

If after making a diligent effort the parties are unable to agree on the contents of the joint proposed protective order, then they shall follow the dispute resolution process outlined in

616618v1

-4-

paragraph 5(a).

7.    **Settlement Conference.** Pursuant to 28 U.S.C. § 636, this matter is referred to the United States Magistrate for the purpose of exploring the possibility of a settlement. If the parties agree that the possibility of settlement may be enhanced by such referral, the parties shall contact Magistrate Judge Thynge to schedule a settlement conference with counsel and clients.

8.    **Summary Judgment Motions.** Prior to filing any summary judgment motion, the parties must submit letter briefs seeking permission to file the motion. The opening letter brief shall be no longer than five (5) pages and shall be filed with the Court no later than December 7, 2006. Answering letter briefs shall be no longer than five (5) pages and filed with the Court no later than December 14, 2006. Reply letter briefs shall be no longer than three (3) pages and filed with the Court on or before December 18, 2006. The Court shall hold a status conference by telephone to hear argument and to determine whether the filing of any motion will be permitted on January 4, 2007, at 10:00 a.m. **Unless the Court directs otherwise, no letter requests to file a motion for summary judgment may be filed at a time before the dates set forth in paragraph 8.**

9.    **Case Dispositive Motions.** Should the Court permit the filing of summary judgment motions, an opening brief and affidavits, if any, in support of the motion shall be served and filed on or before January 18, 2007. If there is no decision at the January 4, 2007, teleconference as to permitting summary judgment motions, this schedule shall be altered so as to commence briefing two weeks following the Court's decision. The timing for filing responsive and reply briefs will be determined in accordance with the Local Rules, unless otherwise agreed by the parties or amended by the Court for good cause shown.

10.    **Applications by Motion.** Except as provided in this Order or for matters relating

to scheduling, any application to the Court shall be by written motion filed with the Clerk. Unless otherwise requested by the Court, counsel shall not deliver copies of papers or correspondence to Chambers. Any non-dispositive motion should contain the statement required by Local Rule 7.1.1.

11.    **Oral Argument**. If the Court believes that oral argument is necessary, the Court will schedule a hearing Pursuant to Local Rule 7.1.4.

12.    **Pretrial Conference**. On May 30, 2007, the Court will hold a Pretrial Conference in Chambers with counsel beginning at 10:00 a.m. Unless otherwise ordered by the Court, the parties should assume that filing the pretrial order satisfies the pretrial disclosure requirement in Federal Rule of Civil Procedure 26(a)(3). Twenty (20) days before the joint proposed pretrial order is due, plaintiff's counsel shall forward to defendant's counsel a draft of the pretrial order containing the information plaintiff proposes to include in the draft. Defendant's counsel shall, within ten (10) calendar days, in turn, provide to plaintiff's counsel any comments on the plaintiff's draft as well as the information defendant proposes to include in the proposed pretrial order. Motions *in limine*: No party shall file more than ten (10) motions *in limine*. Briefs (**opening, answering and reply**) on all motions *in limine* shall be filed by April 30, 2007, with parties exchanging opening briefs on April 9, 2007 and answering briefs on April 23, 2007. Opening and answering briefs shall not exceed five (5) pages and reply briefs shall not exceed three (3) pages. The parties shall file with the Court the joint proposed final pretrial order on or before April 30, 2007.

13.    **Trial**. This matter is scheduled for an 8-day jury trial beginning at 9:00 a.m. on June 25, 2007.

14.    **Scheduling**. The parties shall direct any requests or questions regarding the

scheduling and management of this matter to Chambers at (302) 573-6470.

    15.   **Attached Addendum:** An addendum is attached summarizing and setting forth

additional scheduling dates.

_____

DATE

**AGREED TO BY THE PARTIES:**

Dated: February 6, 2006

_____

UNITED STATES DISTRICT JUDGE

/s/ Peter B. Ladig (#3513)
Edmond D. Johnson (#2257)
Peter B. Ladig (#3513)
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

OF COUNSEL:
Scott L. Robertson
Christopher C. Campbell
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
**ATTORNEYS FOR PLAINTIFF
TEXTRON INNOVATIONS INC.**

Dated: February 6, 2006

/s/ Richard L. Horwitz (#2246)
Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899-0951
(302) 984-6000

Earl D. Reiland, Esq. (#90426)
Thomas R. Johnson, Esq. (#242032)
Thomas J. Leach, Esq. (#311844)
MERCHANT & GOULD P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(612) 332-5300

**ATTORNEYS FOR DEFENDANT
THE TORO COMPANY**

616618v1

# EXHIBIT 23

1 of 3 DOCUMENTS



Analysis
As of: Apr 07, 2007

**TAMMY WRIGHT, Plaintiff, v. TIMOTHY J. TOUHY, et al., Defendants.**

Cause No. 97 C 742

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION

*2003 U.S. Dist. LEXIS 19167*

**October 27, 2003, Decided**
**October 28, 2003, Docketed**

**SUBSEQUENT HISTORY:** Reconsideration denied by, Motion granted by *Wright v. Touhy, 2003 U.S. Dist. LEXIS 22844 (N.D. Ill., Dec. 16, 2003)*

**PRIOR HISTORY:** *Wright v. Touhy, 2003 U.S. Dist. LEXIS 15713 (N.D. Ill., Sept. 8, 2003)*

**DISPOSITION:** Defendants' Motion to Strike Plaintiff's Supplemental Answers granted in part and denied in part. Costs awarded to defendant.

**COUNSEL:** [*1] For Timothy J Touhy, DEFEN-DANT: UBI O O'Neal, Ubi O O'Neal & Assoc, Chicago, IL USA. Mitchell Bruce Katten, O'Rourke, McCloskey & Moody, Chicago, IL USA.

For Timothy J Touhy and Associates, DEFENDANT: UBI O O'Neal, Ubi O O'Neal & Assoc, Chicago, IL USA. Mitchell Bruce Katten, O'Rourke, McCloskey & Moody, Chicago, IL USA. Michael C Moody, O'Rourke, McCloskey & Moody, Chicago, IL USA. Kelly A McCloskey, O'Rourke, McCloskey & Moody, Chicago, IL USA. Limo T Cherian, O'Rourke, McCloskey & Moody, Chicago, IL USA.

For Arthur E Engelland, DEFENDANT: UBI O O'Neal, Ubi O O'Neal & Assoc, Chicago, IL USA.

Arthur E Engelland, DEFENDANT, Pro se, Chicago, IL USA.

For Anthony De Silva, DEFENDANT: Nicholas J Lagattuta, Lagattuta & Degrazia PC, Schaumburg, IL USA. Richard A March, Lagattuta & Degrazia PC, Schaumburg, IL USA. Louis R Orlando, Chicago, IL USA.

For Albert De Silva, Anthony J Lobue, Judith Schon, Thomas Kulekowskis, DEFENDANTS: Nicholas J Lagattuta, Lagattuta & Degrazia PC, Schaumburg, IL USA. Richard A March, Lagattuta & Degrazia PC, Schaumburg, IL USA.

For Manitoba Canada Extate of Tammy Wright, PLAINTIFF: Fred Speck, Law Offices of Fred Speck Ltd, Chicago, [*2] IL USA.

**JUDGES:** Geraldine Soat Brown, United States Magistrate Judge. Judge Joan Humphrey Lefkow.

**OPINION BY:** Geraldine Soat Brown

**OPINION:**

**MEMORANDUM OPINION AND ORDER**

Geraldine Soat Brown, United States Magistrate Judge

This case comes to be heard on the Touhy Defendants' Motion to Strike Plaintiff's Supplemental Answers ("the Touhy Defendants' Motion"). [Dkt 199.] For the reasons set forth below, it is hereby ordered as follows:

> (a) the Touhy Defendants' Motion is granted in part and denied in part, subject

2003 U.S. Dist. LEXIS 19167, *

to certain conditions as set forth below; and

(b) Plaintiff's counsel, Fred Speck, must personally pay the Touhy Defendants' fees and costs in bringing the motion.

**Factual Background**

The facts underlying this case and the history of discovery are set out in this court's previous orders dated October 15, 2002 and September 8, 2003. [Dkt 145, 207.] Fact discovery closed on July 15, 2003. However, fact discovery disputes continue, as reflected in the present motion.

This matter is based on a long and complex factual situation involving civil and criminal proceedings in various courts in Chicago and Canada. All of the proceedings, including this lawsuit, [*3] stem from a collision in 1987 between a commercial truck and a car in which Tammy Wright ("Tammy") was riding as a passenger. Tammy was seriously injured and rendered a quadriplegic. Following the collision, Tammy's husband, Anthony De Silva, retained the Chicago law firm of Touhy & Associates or attorney Timothy Touhy or attorney Arthur England, or some combination thereof, to open a probate estate for Tammy and pursue a personal injury lawsuit. The estate was opened in the Probate Division of the Circuit Court of Cook County and Anthony was appointed guardian of Tammy's person and estate. However, Tammy's parents, Ernest and Christine Wright, n1 have been Tammy's care-takers since the collision.

n1 Christine Wright is now deceased.

The plaintiff in this action is the Manitoba, Canada estate of Tammy Wright through her Committee consisting of Ernest Wright, Tammy's father, and Thomas Frain. (First Am. Compl. PP1-2.) [Dkt 169.] The operative pleading is the First Amended Complaint, which was filed in April 2003 [*4] and alleges four counts. [Dkt 169.] Count I alleges a breach of fiduciary duty, claiming, *inter alia*, that certain defendants, including attorney Timothy Touhy, refused to forward insurance payments from the Manitoba Public Insurance Company to Tammy's parents; that certain defendants kidnapped Tammy and attempted to transport her forcibly over the Canadian-U.S. border to Chicago; and that, although required by court order, certain defendant attorneys, including Timothy Touhy, refused to release Tammy's case file to her new attorneys. (First Am. Compl. P16.) Counts II, III and IV allege the same facts under theories of aiding and abetting breach of fiduciary duty, false imprisonment, and intentional infliction of emotional distress.

The Touhy Defendants' Motion is based on plaintiff's alleged failure to comply with certain discovery requests in a timely fashion. Specifically, the Touhy Defendants claim that the plaintiff failed to disclose the identity of eleven individuals who have knowledge of the allegations contained in the First Amended Complaint in compliance with an order entered in 1998 by then-Magistrate Judge Pallmeyer and *Federal Rule of Civil Procedure 26(e)* [*5] and, as a result, should be barred from calling these individuals as witnesses at trial.

Sometime prior to August 1998, the Touhy Defendants served interrogatories on the plaintiff, asking the plaintiff, *inter alia*, to identify all individuals who have knowledge concerning the allegations contained in the Amended Complaint and to provide a description of the nature of each individual's information. (Defs.' Mot., Ex. A, Interrog. No. 7.) According to the Touhy Defendants, after the plaintiff failed to respond to these interrogatories, the Touhy Defendants filed a motion to compel. (Defs.' Mot. P2.) It appears that the plaintiff then responded to the interrogatories but that its answers were insufficient because, on August 28, 1998, then-Magistrate Judge Pallmeyer granted the Touhy Defendants' motion to compel and ordered the plaintiff, *inter alia*, to **supplement** its answer to **Interrogatory** No. 7 and identify *all individuals who have knowledge concerning the incident giving rise to this lawsuit*. [Dkt 61 (emphasis added).]

In September 1998, the plaintiff served Amended Answers to Interrogatories on the defendants. In its Amended Answers, the plaintiff argued that Interrogatory [*6] No. 7 was "impossible to answer... overly broad and burdensome" but nonetheless gave the following list of individuals with "relevant, first-hand information" concerning the allegations contained in the Amended Complaint:

> all of the parties to this cause of action (including Tammy and her guardians) (knowledge of all allegations); all health care providers in Chicago, Phoenix and Winnipeg who gave any assistance to Tammy, names and addresses unknown (her condition); members of the Winnipeg Police Department, names and addresses not currently remembered except for an unidentified operator, Ron Oliver, Bob Marshall and Doug McDirmiad (sp?), addresses unknown (Tammy's abduction); members of Canadian law enforcement at the Emerson, Manitoba, Canadian-- U.S. border, names and addresses not known (attempts to take Tammy across the bor-

2003 U.S. Dist. LEXIS 19167, *

der); Dr. Michael Stambrook, Winnipeg, Manitoba (effect of kidnapping on Tammy); Jack Montgomery, Crown Attorney for Manitoba, and his staff, names and addresses unknown (kidnapping); Joel Bertocchi, Asst. U.S. Attorney for the Northern District of Illinois, and his staff, and F.B.I. Agent Lee W. Harbaugh, and his staff, all at 219 S. Dearborn St., Chicago [*7] Illinois (kidnapping).

(Defs.' Mot., Ex. D at. 4-5.)

On September 3, 1998, Judge Pallmeyer granted a fourth motion to compel brought by the Touhy Defendants and ordered the plaintiff to respond to certain interrogatories and requests to produce by September 9, 1998. [Dkt 70.] Although it is unclear from the docket whether that order specifically required the plaintiff to further amend its answer to Interrogatory No. 7, the plaintiff served its first **Supplement** to Amended Answers to **Interrogatories** on September 15, 1998, stating in relevant part: "RESPONSE NO. 7: Plaintiffs have identified all individuals." (Defs.' Mot., Ex. E at 2) (emphasis in original). n2

> n2 There is no evidence that the plaintiff further supplemented its answer to Interrogatory No. 7 after September 15, 1998 until July 2003, when it filed the supplemental answers that are the subject of the Touhy Defendants' Motion. Although the plaintiff claims that it supplemented its answers in August 2002 (Pl.'s Resp. P4), it does not state (or even suggest) that it further supplemented its answer to Interrogatory No. 7 after September 1998. Thus, the answers to Interrogatory No. 7 set forth above are the only answers considered by this court.

**[*8]**

On March 31, 2003, this court extended the fact discovery cut-off date from July 8, 2003 to July 15, 2003, and set a status hearing on July 15, 2003. [Dkt 163.] This court also ordered that any motions seeking leave to extend the fact discovery cut-off date should be noticed for hearing on July 15th, and must identify specifically what additional discovery needs to be taken. [*Id.*] On July 11, 2003, the plaintiff filed a motion to extend *generally* the deadline for bringing any motions to extend discovery. [Dkt 197.]

At the July 15, 2003 hearing, this court extended fact discovery for the *limited purpose* of allowing the parties to complete the depositions of Timothy Touhy,

Fred Speck and Marie Sicotte and held that "any further discovery sought by any party must be first the subject of meet and confer and, if no agreement can be reached, then a motion may be sought." [Dkt 198.]

At the July 15th hearing, plaintiff's counsel, Fred Speck, stated that he had recently sent the defendants supplemental answers to interrogatories, which included additional names of individuals with knowledge concerning the allegations in the First Amended Complaint. Counsel for the Touhy [*9] Defendants, Mitchell Katten, objected, arguing that fact discovery was closed and it was "simply too late" to identify individuals with knowledge regarding the facts of this case.

In the July 2003 supplemental answers, the plaintiff identified -- for the first time -- eleven individuals who have knowledge concerning the facts of this case: (1) C.N. Mac Kinnon - Sergent on Duty for the Royal Canadian Mounted Police at the Emerson Detachment, P.O. Box 421, Emerson, Manitoba, ROA 0L0, Canada; (2) Vera Layhon n3 - U.S. Customs Supervisor, at the U.S. Customs Port of Entry, Pembina, North Dakota; (3) Michael H. Mach - U.S. Customs Service Agent; (4) James E. Strand - U.S. Customs Service Agent; (5) Anthony L. Onstad; (6) Terry Kreitz - Canadian Customs Agents, Emerson, Canada; (7) Brian Kress - Attorney, Winnipeg, Manitoba; (8) William Murday - Attorney, Chicago, Illinois; (9) John Garafolo - Attorney, Chicago; (10) Bob Clifford - Attorney, Chicago; (11) Kevin Durkin - Attorney, Chicago. (Defs.' Mot., Ex. F at 1-2.)

> n3 According to the parties, Vera Layhon is now deceased.

**[*10]**

The plaintiff claims that it added these individuals because defendant Timothy J. Touhy stated new allegations at his July 8th deposition or "recent discoveries" were made at the depositions of other defendants. (Pl.'s Resp. P9.) The Touhy Defendants argue that "the plaintiff's attempt to link its late and deficient disclosures to the timing of the defendants' depositions is unavailing" because all of these individuals were either "plaintiff's own counsel" or known to plaintiff "prior to the time it filed the instant suit." (Defs.' Reply at 3, 7.)

In their briefs, the parties go to great lengths arguing when exactly the plaintiff served its supplemental answers on the Touhy Defendants. The Touhy Defendants claim that the plaintiff did not serve its supplemental answers until July 21, 2003 -- six days after the close of fact discovery. (Defs.' Mot. P8.) The plaintiff contends that it served its supplemental answers on July 11, 2003 -- three days before the close of fact discovery. (Pl.'s Resp. P8.) However, whether or not the plaintiff served

2003 U.S. Dist. LEXIS 19167, *

these supplemental answers before or after July 15, 2003 is immaterial compared to the more significant issue and the focus of this court's [*11] analysis -- whether the plaintiff and its counsel violated Judge Pallmeyer's August 28, 1998 order as well as *Federal Rules of Civil Procedure 26(g)and (e)*.

### Analysis

#### 1. *Legal Standard*

The importance of full and fair discovery to the resolution of litigation in the federal courts cannot be underestimated. "In our system of civil litigation, the discovery process is the principal means by which lawyers and parties assemble the facts, and decide what information to present at trial." *Danis v. USN Communs., Inc.*, 2000 U.S. Dist. LEXIS 16900, 2000 WL 1694325 at *1 (N.D. Ill. Oct. 23, 2000) (Schenkier, M.J.). The **Federal Rules** of Civil Procedure are designed to promote liberal discovery in an effort to narrow the issues for trial and to prevent **unfair surprise.** *Settles v. Illinois Dept. of Human Servs.*, 2001 U.S. Dist. LEXIS 13966, 2001 WL 987590 at *1 (N.D. Ill. Aug. 28, 2001) (Pallmeyer, J.). *See also Scranton Gillette Communs., Inc. v. Dannhausen*, 1998 U.S. Dist. LEXIS 23261, 1998 WL 566668 at *1 (N.D. Ill. Aug. 26, 1998) (Urbom, J.).

In light of these goals, each party has an obligation under *Rule 26(g)* to make a reasonable inquiry into the facts of the case before [*12] making its discovery disclosures or responses. *Fed. R. Civ. P. 26(g)*. The duty to make a "reasonable inquiry" is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. *Fed. R. Civ. P. 26(g)*, Advisory Committee Notes, 1983 Amendment. Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances. *Id.*

If a court finds that a party violated *Rule 26(g)* without significant justification, the imposition of sanctions is mandatory. Specifically, *Rule 26(g)(3)* provides:

> If without substantial justification a certification is made in violation of the rule, the court, upon motion or its own initiative, shall impose upon the person who made the certification, the party on whose behalf the disclosure, request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

*Fed. R. Civ. P. 26(g)(3)* [*13] .

Furthermore, *Rule 26(e)(2)* requires a litigant "seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect." *Fed. R. Civ. P. 26(e)(2)*. No motion to compel is necessary. *Scranton Gillette Communs., Inc.*, 1998 U.S. Dist. LEXIS 23261, 1998 WL 566668 at *1. The duty to supplement discovery requests lingers on without subsequent solicitation, *Id.* (citing *Pasant v. Jackson Natl. Life Ins. Co.*, 137 F.R.D. 255, 257 (N.D. Ill. 1991)).

A party that violates *Rule 26(e)(2)* without substantial justification risks significant sanctions. *Rule 37(c)(1)* provides: "A party that without substantial justification fails ... to amend a prior response to discovery as required by *Rule 26(e)(2)*, is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." *Fed. R. Civ. P. 37(c)(1)*. *Rule 37(c)(1)* also permits a court to impose "other appropriate sanctions," including, but not limited to, [*14] attorney's fees and costs. *Id.* In determining whether to exclude evidence or award sanctions, the court must not only consider the importance of the evidence to the case but must weigh that importance against the possible prejudice to the contesting party resulting from its admission into evidence. *Scranton Gillette Communs., Inc.*, 1998 U.S. Dist. LEXIS 23261, 1998 WL 566668 at *2. Indeed, the goal behind *Rule 26(e)(2)* is to prevent any unfair, prejudicial surprise at trial. *Id.*

#### 2. *Brian Kress, William Murday, Bob Clifford and Kevin Durkin*

Four of the individuals identified in the plaintiff's supplemental answers -- Brian Kress, William Murday, Bob Clifford, and Kevin Durkin -- were the plaintiff's own attorneys in the underlying state court proceedings (which took place in the mid-1990s) or in the Canadian proceedings. The plaintiff certainly knew these attorneys in 1998; however, it did not list them in its initial answers or its first supplemental answers.

At the October 2, 2003 hearing, plaintiff's counsel stated that he added these attorneys to plaintiff's answer to Interrogatory No. 7 after Mr. Touhy made certain statements at his deposition (taken in 2003) contradicting his [*15] previous testimony. Specifically, the plaintiff claims that Mr. Touhy testified at his deposition that he had "detailed negotiations" and made "joint efforts" with Mr. Kress and Mr. Murday to forward the disability payments he received from Manitoba Public Insurance Company to the Wrights. (Pl.'s Resp. P9.) However, according to the plaintiff, Mr. Touhy previously testified that "he had not attempted to forward said monies [to the

2003 U.S. Dist. LEXIS 19167, *

Wrights]." (*Id.*) (emphasis in original). Based on this "new allegation," the plaintiff now wants to call Mr. Kress and Mr. Murday to rebut Mr. Touhy's deposition testimony.

In addition, the plaintiff claims that Mr. Touhy testified at his deposition that he had his file for Tammy's case copied at the print shop in his building and "advised [Mr.] Clifford's office" (where Mr. Durkin also worked) that the file was available for pick-up upon payment for the copying. (Pl.'s Resp. P9.) However, according to the plaintiff, Mr. Touhy gave sworn testimony in the Illinois Probate Court in 1996 that he did not turn over his file to Mr. Clifford's law offices. (*Id.*)

The fact that Mr. Touhy allegedly "changed his story" at his deposition does not excuse [*16] the plaintiff's patent failure to name Mr. Kress, Mr. Murday, Mr. Clifford and Mr. Durkin in its initial or amended answers to Interrogatory No. 7, which sought the identities of *all* individuals with knowledge of the allegations in the Amended Complaint. The plaintiff cannot deny that it knew the identity of these individuals -- its own attorneys -- and the roles they played in the underlying litigation back in 1998, when Judge Pallmeyer specifically ordered the plaintiff to **supplement** its answer to **Interrogatory** No. 7 and provide names of all individuals with knowledge of the events giving rise to this lawsuit. However, instead of providing the Touhy Defendants with the names of their attorneys in its initial answers, the plaintiff waited to supplement its answer until *it determined that these individuals had knowledge that was useful to its own case.* This type of selective disclosure is directly at odds with the spirit of liberal discovery and clearly violates *Rule 26(e).* Because the plaintiff has not provided any valid reason why it did not previously **supplement** its answer to **Interrogatory** No. 7 to include the names and contact information for these attorneys, it has failed [*17] to comply with *Rule 26(e)* and those individuals should be stricken from plaintiff's supplemental answers.

On the other hand, the Touhy Defendants do not -- and cannot -- claim that they were unaware of the identity of plaintiff's former attorneys. Based on that fact and the nature of the purported testimony that plaintiff's counsel plans to elicit from each of these attorneys, it would be unfairly prejudicial to bar these individuals from testifying at trial as rebuttal witnesses. Therefore, this court finds that Mr. Kress, Mr. Murday, Mr. Clifford and Mr. Durkin may be called as rebuttal witnesses at trial but the subject matter of their testimony shall be limited to the matters plaintiff's counsel identified at the hearing. Specifically, Mr. Kress and Mr. Murday may be called solely to rebut testimony by Mr. Touhy that he negotiated or made efforts with them to forward certain disability payments to the Wrights, and Mr. Clifford and

Mr. Durkin may be called solely to rebut testimony by Mr. Touhy that he informed their office that his files had been copied and were waiting to be retrieved at the copy center in his building.

*2. C.N. Mac Kinnon, Vera Layhon, Michael Mach, James [*18] Strand, Anthony Onstad and Terry Kreitz*

The plaintiff claims that C.N. Mac Kinnon, Vera Layhon, Michael H. Mach, James E. Strand, Anthony L. Onstad and Terry Kreitz became known as a result of "the commencement of the deposition of Defendant Judith Schoen, and resultant investigation and document procurement" and "additional deposition[s] of the other Defendants." (Pl.'s Resp. P9(b)). However, the plaintiff does not attach or cite to any portion of any deposition transcript to support its position. In fact, a review of Ms. Schoen's deposition transcript shows that she did not identify any of these individuals during her deposition.

The Touhy Defendants, on the other hand, point to several documents indicating that the plaintiff or plaintiff's counsel knew or should have known the identity of at least some of these individuals prior to July 2003. For example, a review of Anthony Lobue's deposition transcript shows that plaintiff's counsel questioned him regarding Terry Kreitz in May 2003. Additionally, in one of their pleadings in the underlying probate litigation, the Wrights specifically identified U.S. Custom Officials Michael Mach and Anthony Onsted as being present at the [*19] Emerson border on February 3, 1992. Finally, in March 1995, Magistrate Judge Bobrick specifically identified Terry Kreitz, C.N. Mac Kinnon, Vera Layhon, Michael H. Mach and Anthony Onstad in a published opinion captioned *In the Matter of the Extradition of Kulekowskis, 881 F. Supp. 1126, 1133 (N.D. Ill. 1995), rev'd, DeSilva v. DiLeonardi, 125 F.3d 1110 (7th Cir. 1997),* which was an opinion from the extradition hearing. Based on those documents, it appears that the plaintiff knew or at the very least should have known the identities of these individuals much earlier than July 2003. Yet, again, the plaintiff chose to wait to identify these individuals until it determined that their knowledge was useful to its own case.

Even if the plaintiff could show that it only recently determined the identities of these customs officials, the question still remains as to why plaintiff or its counsel waited so many years after the filing of this lawsuit to investigate who was present at the U.S.-Canadian border on February 3, 1992. At the hearing, plaintiff's counsel stated that, prior to Ms. Shoen's deposition, he thought the confrontation at the border lasted [*20] only for a brief period. Apparently, Ms. Shoen testified that the confrontation at the border lasted approximately seven hours, which caused plaintiff's counsel to investigate for the first time who was present at the scene. However,

2003 U.S. Dist. LEXIS 19167, *

one of plaintiff's central claims in this lawsuit is that, on February 3, 1992, certain defendants attempted to transport Tammy across the Canada-U.S. border. (First Am. Compl. P16(e)). Based on that allegation, the plaintiff certainly had a duty to investigate who was present and what transpired at the border on February 3, 1992. Yet, over the course of five years, plaintiff's counsel admittedly failed to make any inquiries as to who was present at the border and only named the individuals after their knowledge seemed important to plaintiff's case.

Again, however, the Touhy Defendants cannot claim that they were completely blind-sided by plaintiff's addition of these individuals to its supplemental answers. All of the defendants knew that a confrontation took place at the U.S.-Canadian border on February 3, 1992 and, in fact, five of the defendants were present at the scene and involved in the confrontation. Additionally, several of the documents submitted [*21] by the Touhy Defendants in support of their motion (e.g., the pleading from the probate court and the March 1995 published opinion by Magistrate Judge Bobrick) illustrate that the defendants, including the Touhy Defendants, knew or could have known the identity of these individuals several years ago.

However, the defendants may have been relying on the fact that the plaintiff did not list them and made no effort before the close of discovery to obtain the depositions of these individuals, who are outside the subpoena power of the Northern District of Illinois, as an indication that the plaintiff had no intention to present their testimony at trial. See Fed. R. Civ. P. 32(a)(3)(B). The plaintiff now suggests that these individuals may testify in person at the trial. n4

> n4 At the October 2, 2003 hearing, plaintiff's counsel indicated that the Canadian government is willing to pay the travel expenses for its employees to testify at the trial of this case.

The testimony [*22] of these customs officials may be important as to what occurred at the border on February 3, 1992. However, because these individuals are outside the subpoena power of this court and fact discovery is closed, the only way their testimony can be presented is if they appear in Chicago to testify. Therefore, in the interest of fairness, this court finds that the appropriate remedy is to accelerate their testimony in Chicago, and to allow C.N. Mac Kinnon, Michael H. Mach, James E. Strand, Anthony L. Onstad and Terry Kreitz to be named as persons with knowledge and called as witnesses at trial if and only if the plaintiff or a third-party pays for them to travel to Chicago to sit for a deposition before January 15, 2004. If the plaintiff does not make these

individuals available for deposition in Chicago before January 15, 2004, they are stricken from plaintiff's supplemental answers and barred from testifying at trial. This remedy preserves the testimony of these witnesses, so that if they are unable to appear later their testimony can be presented, yet allows the defendants sufficient time in advance of the trial to do any follow up suggested by the testimony of these witnesses. Thus, [*23] if C.N. Mac Kinnon, Michael H. Mach, James E. Strand, Anthony L. Onstad or Terry Kreitz are deposed pursuant to this order and any new material information (including, but not limited to, the identity of any individuals not previously named who were present at the border) is divulged during the deposition, the defendants may file a motion to extend fact discovery for the limited purpose of investigating this new material information. This does not foreclose any party from presenting a witness who has been deposed as a live witness at the trial.

Because Vera Layhon is deceased, the issue as to whether or not to bar her from testifying at trial is moot.

### 4. John Garafolo

The Touhy Defendants claim that John Garafolo represented the defendant Trucking Company in the underlying state court personal injury case and was known to plaintiff and its counsel since the early 1990s. (Defs.' Reply at 3, 5.) In its response, the plaintiff does not dispute its prior knowledge of Mr. Garafolo or his role in the underlying case. Rather, the plaintiff simply states that its counsel recently learned that Mr. Garafolo told Winnipeg officials that he did not seek a medical exam of Tammy Wright until [*24] six months after her alleged abduction. (Pl.'s Resp. P9(c).) That is not a basis upon which the plaintiff can supplement its answer just as fact discovery is closing. At the hearing on the Touhy Defendant's Motion, plaintiff's counsel admitted that he spoke with Mr. Garafolo in 1993, but that he did not ask him when he sought a medical exam of Tammy. That constitutes a patent failure to investigate by plaintiff's counsel, and there is no justification for plaintiff's waiting five years to add Mr. Garafolo to its answer to Interrogatory No. 7. Therefore, Mr. Garafolo is stricken from plaintiff's supplemental answers and the plaintiff is barred from calling Mr. Garafolo as a witness at trial.

### 5. Imposition of Attorneys' Fees and Costs

Rule 37 provides for the imposition of attorneys' fees and costs incurred by the other party when a party fails to comply with an order or amend a prior response to discovery as required by Rule 26(e)(2), unless the court finds the failure was substantially justified. Fed. R. Civ. P. 37. Furthermore, as set forth above, Rules 26(g)and 26(e) permit a court to impose attorneys' fees and costs when a party has [*25] violated those rules without substantial justification.

2003 U.S. Dist. LEXIS 19167, *

In this case, Mr. Speck has not offered any substantial justification or any persuasive explanation for the untimely disclosure of these eleven individuals. In fact, at the argument on the Touhy Defendant's Motion, Mr. Speck explained that it is not his "style" to undertake an investigation until he hears what the other side has to say, in this case, at the deposition of the defendants. *See also* Pl.'s Resp. Touhy Defs.' Mot. Cite Add'l Authority P5. [Dkt 221.] That argument completely ignores the affirmative obligation of a party to make a reasonable inquiry in order to respond to discovery propounded by another party. The plaintiff and its counsel had an obligation to investigate and provide information that the defendants had a right to have, *whether or not* the plaintiff wanted to have that information. That obligation was reinforced by two separate orders by Judge Pallmeyer. There is simply no excuse for Mr. Speck to have ignored that obligation. Counsel must adapt their "style" to follow the Federal Rules of Civil Procedure and the court's orders.

Therefore, pursuant to *Rules 37, 26(g)and 26(e)*, Fred Speck must [*26] personally pay the Touhy Defen-

dants the attorneys' fees and costs that the Touhy Defendant's incurred in preparing, filing and arguing the present motion. Counsel for the Touhy Defendants shall serve Mr. Speck with a statement of such fees and costs no later than November 10, 2003, specifying the date, time and nature of the services rendered and the applicable billing rate and identifying all costs. This includes time for legal and factual research but does not include any time for interoffice consultation with other lawyers. By November 24, 2003, Mr. Speck must serve a statement of any specific item disputed and pay in full any amount not disputed. The parties shall comply with Local Rule 54.3 (e) and (f) with respect to any disputed item.

IT IS SO ORDERED.

Geraldine Soat Brown

United States Magistrate Judge

October 27, 2003

# EXHIBIT 24

Potter
**Anderson**
**&Corroon** LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

Richard L. Horwitz
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027  Direct Phone
302 658-1192  Fax

December 7, 2006

<u>**VIA ELECTRONIC FILING**</u>

The Honorable Gregory M. Sleet
United States District Judge
J. Caleb Boggs Federal Building
844 N. King Street, Lockbox 18
Wilmington, DE 19801

> Re:  *Textron Innovations Inc. v. The Toro Company*, C. A. No. 05-486-GMS

Dear Judge Sleet:

Pursuant to the Court's February 7, 2006 Scheduling Order, Defendant, The Toro Company ("Toro"), seeks permission to move for summary judgment of non-infringement of numerous asserted patent claims and invalidity as to all remaining asserted claims. Toro's motion is dispositive of all claims of Textron Innovations Inc. ("Textron"). The proposed motion will completely remove this case from the Court's docket. A summary of the proposed motion follows:

1.    <u>Non-Infringement.</u>

As a matter of law, Toro does not infringe 16 claims asserted by Textron. Fourteen of the non-infringed claims concern the missing limitation "roller extends substantially the entire width of the deck." The other two non-infringed claims are 19 and 20 of the '312 patent, which require both wheels and a roller; the former limitation is missing entirely.

> A.   **Toro's Mowers Do Not Include The Claimed Structure "Roller Extends Across Substantially The Entire Width Of The Deck."**

As a matter of law, the accused Toro products[1] cannot infringe any asserted patent claim that includes the limitation "roller extends across substantially the entire width of the deck."[2] The Court construed that limitation as: "the roller extends *largely but not wholly* across the entire width of the deck, *and does not extend beyond the width of the deck.*"[3] All of Toro's accused products have a rear roller that extends *beyond* the width of the decks. Therefore, Toro's rear rollers cannot infringe Textron's rights. The front rollers on Toro's products extend only a small

---

[1] Textron has accused the Toro Groundsmaster® 3500-D, 3505-D, 4500-D, and 4700-D
[2] The asserted claims that include this limitation are: '530 Pat: 1-5 and '311 Pat: 2-5, 7-8, 10-12.
[3] Order Construing The Terms Of U.S. Patent Nos. 6,047,530; 6,336,311; and 6,336,312 ("Markman Order") at 8 (emphasis added).

The Honorable Gregory M. Sleet
December 7, 2006
Page 2

portion (18.9%) of the deck width, 5.3 inches each. For that reason, Toro's front rollers do not "extend largely, but not wholly across the entire width of the deck."



Fig. 1 – 30 in. rear roller.[4]



Fig. 2 – 5 in. front roller.



Fig. 3 – 28 inch wide deck.

The patents make clear that there is a difference between the cutting deck *assembly* and the *deck*, which is a part of that assembly: "Each cutting deck assembly 34 includes (see FIGS. 2-5) a single-spindle mulching deck 38 . . . ." ('530 pat., col 3, ll. 6-7.) The roller width is correlated to the deck width – not the assembly width: "The roller 58 is behind the deck 38 and extends across substantially the entire width of the deck 38." (*Id.* at ll. 19-20.) The claims at issue use the same correlation of the roller relative to the deck 38, not the deck assembly 34: "roller extends across substantially the entire width of the deck."



It is settled a patent claim is not *literally* infringed if even one limitation is missing from the accused device. *Microstrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352 (Fed. Cir. 2005). All of the accused Toro mowers are missing at least the following limitation: "the roller extends largely but not wholly across the entire width of the deck, and does not extend beyond the width of the deck." As illustrated above, each of Toro's 30 inch rear rollers extend beyond the width of the deck and the small front rollers each only extend about 5 inches across the 28 inch wide deck. Thus, the case is ripe for summary judgment of non-infringement.

---

[4] Photos taken by Textron's expert witness. Dimensioned deck drawing by Toro. (Ex. A.)

The Honorable Gregory M. Sleet
December 7, 2006
Page 3

    In this case, the all-limitations rule precludes a finding of substantial equivalence, making
summary judgment of no infringement under the doctrine of equivalents also ripe. The U.S.
Supreme Court held that if a theory of doctrine of equivalents infringement vitiates a claim
limitation, there can be no infringement as a matter of law. *Warner-Jenkinson Co. v. Hilton
Davis Chem. Co.*, 117 S.Ct. 1040, 1049, 1053 n. 8 (1997). Although Textron has not disclosed
any theory of equivalence to date, any such theory would necessarily vitiate the Court's
construction of this claim limitation.[5] Regardless of functional equivalency, a roller that extends
beyond the width of the deck cannot, as a matter of law, be the equivalent of a roller that "does
not extend beyond the width of the deck." *Asyst Techs., Inc. v. Emtrak, Inc.* 402 F.3d 1188, 1195
(Fed. Cir. 2005) (holding "unmounted" cannot be equivalent to "mounted"). Applying the same
principle, a roller that extends only a small portion of the deck width (18.9%) cannot, as a matter
of law, extend "largely" across the entire width of the deck. *Moore U.S.A., Inc. v. Standard
Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) (holding a "minority" cannot be equivalent to
a "majority").

    B.  Claims 19 and 20 of the '312 Patent Require Wheels and A Roller.

    Claim 19, and its dependent claim 20, call out a cutting deck assembly having:

        "a first front *wheel* supporting one of said side plates for movement over the ground a
        second front *wheel* supporting the other side plates for movement over the ground
        a second front *wheel* supporting the other said side plates for movement over the ground
        a *roller* extending between said side plates . . ." ('312 pat., col. 9, ll. 41-45)
        (emphasis added).

    Toro's accused assemblies have a rear roller and two front rollers – not front wheels. As
a matter of law, Toro's products cannot infringe, literally or under the doctrine of equivalents,
claims 19 and 20 of the '312 patent. There can be no literal infringement because two limitations
are missing: the two front wheels. Regardless of functional equivalency, a roller cannot be the
equivalent of a wheel in this case, as a matter of law, because the '312 patent disclosed both
wheels and rollers, but claimed only front wheels. *Johnson & Johnston Associates, Inc. v. R.E.
Service Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) (en banc) (quoting *Sage Prods. Inc. v. Devon
Indus., Inc.*, 126 F.3d 1420, 1424 (Fed. Cir. 1997). If the inventors of the '312 patent had
considered their invention to include front rollers, they should have claimed front rollers. They
did not.

2.   Invalidity.

    The remaining asserted claims are 1-5, 8-10, 14-15 and 24-27 of the '312 patent and
claim 1 from the '311 patent. All of these claims of the '312 patent are invalid because one of
the accused Toro products was publicly shown more than one year before the filing date of the

---

[5] The doctrine of claim vitiation applies to a Court's claim construction. *See Nautilus Group,
Inc. v. Icon Health and Fitness, Inc.*, 437 F.3d 1376, 1378-79 (Fed. Cir. 2006); *see also TI Group
Auto. Sys., Inc. v. VDO North Am. L.L.C.*, C.A. No. 00-432-GMS, 2002 U.S. Dist. LEXIS 17783,
*18-21 (D. Del. Sept. 4, 2002) (Ex. B).

The Honorable Gregory M. Sleet
December 7, 2006
Page 4

application that became the '312 patent. Claim 1 of the '311 patent is also invalid based on prior
art that existed more than one year before its application filing date.

### A. All Of The Remaining Asserted Claims Of The '312 Patent Are Invalid.

Under 35 U.S.C. § 102(b), no one can patent a structure that has been in public use or on
sale more than one year before the filing date of the patent application. Toro publicly displayed
its first Groundsmaster®[6] in February 1999 at a tradeshow attended by Textron employees,
including both named inventors of the '312 patent. That Toro product now stands accused of
literally infringing several claims of the '312 patent. However, the patent application that
became the '312 patent was not filed until August 22, 2000, more than one year after Toro's
public display of the Groundsmaster® now accused of infringement. If Toro's accused product
is more than one year prior to Textron's '312 patent application, Textron's claims are invalid.

The application that became the '312 patent was filed as a continuation-in-part ("CIP") of
the '311 and '530 patents, the latter patents sharing identical disclosures and drawings. The
However, the '312 patent added 18 new drawings and more than three columns of new text. The
claims of the '312 patent are *only* entitled to a priority date earlier than August 22, 2000, if *all* of
the claim limitations are supported by the disclosure in the earlier applications. In other words,
claims containing *any* matter introduced in the CIP application are accorded the filing date of the
CIP application. *Waldemar Link, GmbH v. Osteonics Corp.*, 32 F.3d 556, 558 (Fed. Cir. 1999).

Randal Knurr, one of the inventors listed on the '312 patent, admitted that limitations
found in all of the remaining claims included new matter not disclosed in an earlier patent.
(Knurr dep. 265, (Ex. D).) As such, all of the above-listed '312 patent claims are accorded the
August 22, 2000 filing date, not an earlier date. Therefore, the claims are invalid based on the
public use of the accused Groundsmaster® in February 1999. Claims 1-5, 8-10, and 14-15
include three limitations disclosed for the first time in the CIP application: (1) a first roller
extending only *partially* across the width of the deck (*id.*), (2) a *three-wheeled* mower (*id.*), and
(3) a rear rotary cutting deck assembly *between* the front wheels (*id.* at 254). Claims 24-27 also
include three new limitations: (1) three rollers, (2) a first roller extending only partially across
the width of the deck, and (3) a three-wheeled mower (*id.* at 265-66). The priority date of these
claims is August 22, 2000, more than one year after Toro publicly disclosed the now accused
Groundsmaster® mower. These claims are invalid.

### B. Claim 1 of the '311 Patent is Invalid.

Claim 1 of the '311 patent does not include a rear-roller limitation, or limitations
correlating the location of the cutting deck assemblies to the wheels of the tractor. In essence,
Claim 1 is a gang-type rotary mower having two rows of single-spindle cutting deck assemblies
aligned to create a contiguous cutting swath. That is exactly what U.S. Patent No. 5, 280, 695
("'695 patent" or "Nunes patent") (Ex. E) discloses. Issued on January 25, 1994, more than one

---

[6] Originally called the Groundsmaster® with Contour 66 Deck, the mower was later named the
Groundsmaster® 3500-D. In a 1999 declaration to the Patent Office, one of the inventors called
this original Groundsmaster® a "copy" of his invention. (Joint Appendix "JA" – 0152, 0154)
(Ex. C).

The Honorable Gregory M. Sleet
December 7, 2006
Page 5

year before the earliest priority date of the '311 patent, the Nunes patent discloses every
limitation of claim 1 of the '311 patent. Although the Nunes patent was before the examiner, it
is absolutely clear that every limitation of claim 1 of the '311 patent is disclosed in the Nunes
patent that summary judgment of invalidity is proper. *See Tyler Refrigeration v. Kysor Indus.
Corp.*, 777 F.2d 687, 690 (Fed. Cir. 1985).

| '311 Patent, Claim 1 | U.S. Pat. No. 5,280,695 (Nunes) |
|---|---|
| A gang-type rotary lawn mower comprising | The Nunes mower has multiple mower decks. '695, col. 6, ll. 37. |
| a frame supported by wheels for movement over the ground, | The Nunes mower uses a frame (e.g. "U-shaped" frame 26) that envelopes and connects to the tractor frame 21. *Id.* at col. 2, ll. 54-65. See also frame 156. *Id.* at col. 6, ll. 22-23. |
| a power source which is mounted[7] on the frame and which drives at least two of the wheels, | The tractor 21 has an engine connected to the frame that drives at least two of the wheels. *Id.* at Fig. 1. |
| an operator's seat mounted on the frame, | The tractor 21 has a seat connected to the frame. *Id.* at Fig. 1. |
| a steering system enabling the operators to steer the lawn mower, | The tractor 21 has a steering system. *Id.* at Fig. 1. |
| at least two side-by-side front rotary cutting deck assemblies mounted on the frame, the front deck assemblies defining a gap between adjacent front deck assemblies, and | Figs. 13 and 20 show and describe the three side-by-side rotary cutting deck assemblies (171, 172) mounted on frame (156) and defining a gap between them. *Id.* at col. 6, ll. 37-41. |
| at least one rear rotary cutting deck assembly mounted on the frame behind the front deck assemblies, each rear deck assembly being aligned with a respective gap between adjacent front deck assemblies, | Figs. 13 and 20 show the two rear rotary cutting deck assemblies (173) connected to the frame 156 and in the respective gaps. *Id.* |
| each of the front and rear deck assemblies including a single-spindle cutting deck defining a downwardly opening space, a single spindle mounted for rotation about a generally vertical axis within the space, and at least one cutting blade mounted on the spindle for rotation therewith. | Figs. 13, 17 and 20 disclose that the cutting deck assemblies are single spindle, downwardly opening, and have at least one cutting blade. *Id.* at ll. 41-46. |

For the foregoing reasons, Toro respectfully requests permission to move for summary
judgment of non-infringement and invalidity.

---

[7] The term "mounted on the frame" was construed as "connected to the frame." (Markman Order
at 8.)

The Honorable Gregory M. Sleet
December 7, 2006
Page 6

Respectfully submitted,

/s/ Richard L. Horwitz

Richard L. Horwitz

RLH/766265
Enclosures
cc:     Clerk of the Court (via hand delivery)(w/enc.)
        Counsel of Record (local by hand delivery; out of state by email and federal express)

# EXHIBIT 25

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY