# EXHIBIT 45

# Merchant & Gould

### An Intellectual Property Law Firm

3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota
55402-2215 USA
TEL 612.332.5300
FAX 612.332.9081
www.merchant-gould.com

A Professional Corporation

Direct Contact | Anthony R. Zeuli, Esq.
612.371.5208
tzeuli@merchant-gould.com

February 9, 2007

Scott L. Robertson                                      **Via Email**
Hunton & Williams LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109

Re:     Textron Innovations Inc. v. The Toro Company
Civil Action no. 05-486
M&G No. 6372.149USZA

Dear Scott:

This letter will confirm our telephone conversation of February 8, 2007, in which you represented that the Risboro decks purchased from Mr. Garwood were formerly in the possession of Textron's Ransome facility in Ipswich. You also represented that they were disposed of by that facility in June or July of 2006 and that no documents concerning Risboro Turf exist.

Very truly yours,

Anthony R. Zeuli

ARZ:cmf

Minneapolis/St. Paul
Denver
Seattle
Atlanta
Washington, DC

# EXHIBIT 46

# Merchant & Gould

### An Intellectual Property Law Firm

3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota
55402-2215 USA
TEL 612.332.5300
FAX 612.332.9081
www.merchant-gould.com

A Professional Corporation

Direct Contact | **Anthony R. Zeuli, Esq.**
612.371.5208
tzeuli@merchant-gould.com

February 19, 2007

Scott L. Robertson                                         **Via Email**
Hunton & Williams LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109

Re:    Textron Innovations Inc. v. The Toro Company
Civil Action no. 05-486
M&G No. 6372.149USZA

Dear Scott:

On Wednesday, February 14, I sent to you the attached email requesting that you provide by last Friday the PowerPoint and any other documents you have concerning the Risboro decks that were discarded by Textron during the pendency of this lawsuit. I also asked you to identify the witness that you mentioned in your section of the draft joint letter to the Court. It is my understanding that you have not produced the PowerPoint or any other documents concerning Risboro and you have not identified the witness who would be able to describe the circumstances surrounding Textron's disposal of the Risboro decks. If you did provide these materials, please let me know when they were sent to me.

In addition, I understand that Textron's 30(b)(6) witness, Mr. Whurr, testified that the search of the facility at which the Risboro decks were located was so narrow that if relevant products had not been mentioned by name, those products and any documents concerning them would not have been gathered and produced to Toro.

Minneapolis/St. Paul
Denver
Seattle
Atlanta
Washington, DC

February 19, 2007
Page 2


     I request a meet and confer on Wednesday, February 21 to discuss this issue.  I am available in the morning and most of the afternoon that day.  We need to get to the bottom of this issue so that Toro can determine how to proceed with any motions it may want to bring before the Court.

     Very truly yours,

Anthony R. Zeuli

ARZ:cmf

## Abigail E. Ries

| | |
|---|---|
| **From:** | Tony Zeuli |
| **Sent:** | Wednesday, February 14, 2007 10:56 AM |
| **To:** | 'Robertson, Scott'; 'Campbell, Chris' |
| **Cc:** | Tom Leach |
| **Subject:** | Risboro |

Scott,

Given the seriousness of this situation, I want to give your client every opportunity to explain how those Risboro decks were scrapped more than one year after this lawsuit began. Your section of the joint letter mentioned a PowerPoint and a witness. Before filing the letter with the Court, I'd like to see the PowerPoint, and any other documents you might have found, this week and then determine whether and how to proceed with the witness you offer. Can you provide all such information including the name of the proposed witness by close of business this Friday?

Thank you,

Tony

# EXHIBIT 47

Potter Anderson & Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984-6000

www.potteranderson.com

**David E. Moore**
Associate
Attorney at Law
dmoore@potteranderson.com
302 984-6147 Direct Phone
302 658-1192 Fax

February 23, 2007

**VIA ELECTRONIC FILING**

The Honorable Gregory M. Sleet
United States District Judge
J. Caleb Boggs Federal Building
844 N. King Street, Lockbox 18
Wilmington, DE 19801

Re: **Textron Innovations Inc. v. The Toro Company
C. A. No. 05-486-GMS**

Dear Judge Sleet:

Pursuant to the Court's February 9, 2007 oral Order, the parties are writing to the Court to present their respective arguments on whether good cause exists for a fourth discovery conference.

**Toro's Position**

The discovery issues that follow affect not only the discovery process, but also, depending on the facts that are discovered, whether Textron will be permitted to go forward on the merits, and if so, whether certain instructions might be appropriate to deal with issues of spoliation and failure to produce documents. But those serious issues can only be addressed after we have unearthed all of the predicate facts.

Toro learned, on February 8, 2007, that Textron disposed of important prior art during the pendency of this litigation and possibly after representing to this Court that this prior art was not and had not been in Textron's possession. Toro has requested, but Textron refuses to produce, a 30(b)(6) witness to explain _all_ circumstances surrounding Textron's possession, analysis, and use; failure to produce; and disposal of this important prior art so that Toro can determine the appropriateness and scope of a potential motion for sanctions due to spoliation of evidence.

The prior art evidence includes three rear-rollered rotary mower decks made by Risboro Turf, which Toro had specifically requested during discovery and were the subject of at least one previous conference call with this Court. Jan. 11, 2007 Transcript at 24:17 – 27:24. Until February 8, Textron maintained that it had no knowledge of Risboro Turf; these decks; had never possessed them; and had no documents concerning them. After Toro found the decks independently, Textron's counsel was forced to admit that Textron's Ransome facility did have the decks during this litigation and disposed of them through a scrap yard. Textron still vigorously maintained that no documents existed concerning the decks. Not surprisingly, with

The Honorable Gregory M. Sleet
February 23, 2007
Page 2

impending Court involvement, Textron found a document that allegedly helps explains Textron's disposal of the decks during this lawsuit. Toro requests that the Court order Textron to immediately provide a 30(b)(6) witness who can fully explain the issues above – including but not limited to, information regarding possession, analysis, and use of the prior art, search efforts (or failure to search and why Textron's 30(b)(6) witness admitted that highly relevant prior art (Wulff rotary mowers with rear rollers) would not have been produced because it was not within Textron's search scope), disposal efforts, and any documents regarding all of the above.

Toro also seeks a 30(b)(6) witness from Textron to testify about how photographs of another important piece of prior art, the Lesco 500 Rotary mower, were not produced by Textron. Textron has maintained throughout this litigation that it was not aware of this Lesco mower and that despite its "reasonable" search of the Johnson Creek facility, no documents existed concerning it. Nov. 9, 2006 Transcript at 25-26, Jan. 11, 2007 Transcript at 5, 13. This has also been the subject of previous calls with this Court, where Textron's counsel vehemently represented that an adequate search had been done. [Id.]

In October, Toro subpoenaed Commercial Grounds Care, the new owner of Textron's Johnson Creek facility. Thereafter, it took counsel for Commercial Grounds Care just one half day to locate actual photographs of the Lesco 500 Rotary mower (along with numerous other non-produced prior art references, which are the subject of Toro's second motion to amend its prior art statement) at the former Textron facility in a well organized binder clearly labeled with the name and date of the tradeshow at which the Lesco mower had been shown. Despite finding these previously un-produced photographs of prior art at the very location where the named inventor of the patents-in-suit was employed, Textron will not produce a witness with any knowledge of the Lesco 500 Rotary mower, the photographs, and why these photographs were not produced to Toro. Toro requests that this Court order Textron to provide a 30(b)(6) witness who can fully explain these issues. This discovery is required for Toro to determine the appropriateness and scope of a potential motion for sanctions based on what appears at this point to be the lack of a diligent effort to produce highly relevant information that could have been easily produced if the right searches had been executed.

Toro raised these issues with Textron on February 6 and again on February 8. Textron refused to produce a witness and claimed no documents existed. Toro contacted the Court seeking a discovery conference. The Court ordered the parties to submit a joint letter. Textron's portion of the draft joint letter identified for the first time a document concerning the disposal of the decks and a witness concerning the same. Rather than involve the Court at that time, Toro wrote Textron asking for the document and the identity and availability of the witness. Textron produced the document, but has not made a witness available. Toro wrote Textron on February 14 and again on February 19 concerning these issues, but received no response from Textron.

**Textron's Position**

While Toro would like this Court to believe that Textron has been guilty of spoliation of evidence, Toro has not told the Court the whole story on this groundless claim. In July of last year, Ransomes, a foreign affiliate of TII, disposed of tons of rusted scrap metal as part of a housekeeping effort. Unbeknownst to TII, that scrap included certain long discarded Risboro

The Honorable Gregory M. Sleet
February 23, 2007
Page 3

mower decks. In fact, Toro withheld critical evidence in this case which would have alerted TII to the issue and permitted it to try to avoid the routine disposal of that scrap.

Apparently in May of 2006 Toro retained a paid consultant ("Crawforth") who was formerly employed by Risboro. Crawforth signed a Declaration prepared by Toro's counsel on May 27, 2006. In that declaration Crawforth averred that Risboro had given - unsolicited - mower decks to Ransomes at some point in the past.

Notwithstanding that the Scheduling Order required Toro to identify any prior art that it would rely upon in this action by June 1, 2006, Toro intentionally withheld the Crawforth Declaration until November 1, 2006. TII deposed Crawforth on November 28, 2006. It was only then that TII's counsel learned that Risboro had provided samples of certain mower decks to Ransomes sometime in 2001.

While the relevance of possession of samples of the Risboro decks 6000 miles from the place of invention by a non-party to this litigation some four years after the patented invention at issue was conceived is questionable, if Toro had produced the Crawforth Declaration in a timely fashion, instead of five months after it was created, it might have been possible for TII's counsel to locate the Risboro decks at its foreign, affiliate. Given the actual timing, that was not possible.

Once TII learned about the Risboro decks, it promptly contacted Ransomes concerning the acquisition, possession and disposition of the decks. TII learned that the decks were obtained by a scrap dealer who apparently placed them for sale on eBay. Toro now informs us that it is acquiring the decks from the purchaser. Thus, to the extent that there was any alleged prejudice to Toro from the disposal of these decks, it has been remedied. However, the facts above do not support a claim of intentional spoliation. At most, they show that Textron's foreign subsidiary didn't search its scrap heap as part of its discovery efforts — a course of action that is hardly called for under the rules absent a reason to do so. It is Toro that held the key to such a reason — a key that it withheld from Textron.

Toro is now asking for a witness knowledgeable about the acquisition of these decks. Toro has been informed repeatedly that TII has none. TII has questioned every person at Ransomes who might possibly have knowledge, about how these decks came to be at Ransomes. (During the course of those conversations, TII learned that Mr. Crawforth has been improperly contacting Ransomes employees about this issue at the behest of Toro.) The best information that we have is that Risboro simply gave the decks to Ransomes, unsolicited. This explains the lack of any documentation associated with the decks. Moreover, it is not surprising to find that six or seven years after the fact, no person has a specific recollection of these decks being dropped off at Ransomes, where they were apparently left to rust until someone disposed of them in the ordinary course, along with the other unwanted refuse. Textron simply has no way to provide what Toro seeks.

TII has recently provided Toro with a Powerpoint file documenting the disposal of Ransomes' scrap metal. Toro has already had the opportunity on two occasions to ask witnesses produced by TII about these decks - long before Toro produced the Crawforth Declaration - and those witnesses had no knowledge.

Second, we are somewhat at a loss with respect to the alleged Lesco Rotary 500 materials found at Commercial Grounds Care ("CGC"). Although the parties have conducted a number of meet-and-confer discussions over the past few weeks, Toro never once requested a TII witness to

The Honorable Gregory M. Sleet
February 23, 2007
Page 4

testify with respect to Lesco. Accordingly, Toro can hardly claim there is "good cause" for this Court to conduct a discovery conference on this issue.

Toro claims that it obtained pictures of the Lesco Rotary 500 through its recent subpoena. Toro is now demanding that TII produce a knowledgeable witness to testify about a prototype product displayed by a competitor at a trade show almost twenty years ago. That is patently unreasonable. In addition, TII's counsel has inquired whether there is any Textron witness who has such specific knowledge and there is none. That is hardly surprising. Toro has already deposed the witnesses from the Johnson Creek facility most likely to have knowledge of that mower and none had any knowledge of it -- or any pictures of it.

Moreover, the issue of discovery from the Johnson Creek facility (now called CGC) has been dealt with at length in previous discovery conferences and the Court has already ruled that Toro must seek discovery from the current owner CGC. (*See,* January 11, 2007 Transcript at 11 and generally 4-14). Indeed, the pictures at issue were produced by CGC and Toro is taking the deposition of the CGC witness who conducted that search on Monday. Toro will have ample opportunity to ask that witness how and where he found the pictures at issue and why they weren't found in the previous search in which he also participated.

In addition, as the Court will recall, the company that produced the pictures, CGC, is no longer owned by TII. Rule 30(b)(6) only requires an entity to produce a witness as to that information "reasonably known" to the company. TII has no witness that can testify to the topic as framed by Toro.

In sum, TII has done everything possible to reasonably accommodate Toro's unending demands in discovery, including document searches from multiple, non-party affiliates on two continents, but it is never enough. In return, Toro has conjured up allegations of spoliation based on the flimsiest of facts. Incredibly Toro has done this where it withheld information in contravention of this Court's orders that might have avoided the circumstances that lead to Toro's claims. Such conduct goes well beyond the bounds of zealous advocacy.

Today, Textron received a subpoena from Toro for a deposition of Nunes, a third party mower manufacturer, in California on February 28, 2007 – just three business days from now and on the last day of discovery in this case. That is in violation of the local practice which requires at least five business days notice absent good cause. No good cause could be shown for this subpoena given that Toro has known about Nunes and its products for months and failed to seek discovery until three days from the discovery cut off. Textron should be granted a protective order to prevent this abuse of the discovery process.

The Honorable Gregory M. Sleet
February 23, 2007
Page 5

        Counsel are available at the Court's convenience if Your Honor has any
questions.

                          Respectfully submitted,

                          */s/ David E. Moore*

                          David E. Moore

DEM:nmt/777338/29362
cc:    Clerk of the Court (via hand delivery)(w/enc.)
       Counsel of Record (local by hand delivery; out of state by email and federal express)

# EXHIBIT 48

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 49



# EXHIBIT 50

RISBORO' TURF

01844 274127