## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TEXTRON INNOVATIONS INC.,         )
                                   )
              Plaintiff,        )
                                   )
      v.                     )   C. A. No. 05-486 (GMS)
                                   )
THE TORO COMPANY,             )   **PUBLIC VERSION**
                                   )
             Defendant.    )

### TEXTRON INNOVATIONS INC.'S OPPOSITION TO THE TORO COMPANY'S MOTION TO STAY LITIGATION PENDING DETERMINATION OF ITS BELATED REQUESTS FOR REEXAMINATION BY THE U.S. PATENT OFFICE

Edmond D. Johnson (DE Bar #2257)
Thomas H. Kovach (DE Bar #3964)
PEPPER HAMILTON LLP
1313 Market Street, Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: (302) 777-6500
Fax: (302) 421-8390

OF COUNSEL:

Scott L. Robertson
Christopher C. Campbell
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109
Telephone:  (202) 955-1500
Facsimile:   (202) 778-2201

*Attorneys for Plaintiff*
*Textron Innovations Inc.*

Dated:  April 6, 2007
Public Version: April 18, 2007

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ....................................................................................................... 4

        A.      The Criteria Generally Evaluated By Courts For Deciding Motions to Stay
                Pending Reexamination Proceedings All Weigh Against a Stay in this Case ........ 4

                1.      Defendant is Not Entitled to the Extraordinary Relief of a Stay of
                        These Proceedings ........................................................................... 5

                2.      A Stay Would Unduly Prejudice and Present a Clear Tactical
                        Disadvantage to Textron .................................................................. 12

                3.      The Reexaminations, If Granted by the PTO, Are Unlikely to Narrow
                        the Issues for Trial .......................................................................... 17

        B.      Defendant Unduly Delayed Filing Its Requests For Reexamination ................... 22

III.    CONCLUSION .................................................................................................... 27

#8504301 v1

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Diabetes Care, Inc. v. DexCom, Inc.*,
   2006 W.L. 2375035 (D. Del. 2006) ...................................................................................... 4

*Accent Designs, Inc. v. Jan Jewelry Designs, Inc.*,
   1994 W.L. 121673 (S.D.N.Y. 1994) ................................................................................... 15

*Agar Corp. v. Multi-Fluid, Inc.*,
   983 F. Supp. 1126 (S.D. Tex. 1997) ............................................................................. 15, 19

*Amphenol T&M Antennas, Inc. v. Centurion Internat'l, Inc.*,
   2001 U.S. Dist. LEXIS 13795 (N.D. Ill. 2001) ............................................................ 16, 21

*Broadcast Innovation, L.L.C. v. Charter Comm., Inc.*,
   2006 U.S. Dist. LEXIS (D. Colo. 2006) ............................................................................. 15

*Cognex Corp. v. Nat'l Instr. Corp.*,
   2001 W.L. 34368283 (D. Del. 2001) ............................................................................ passim

*Dentsply Internat'l, Inc. v. Kerr Mfg. Co.*,
   734 F. Supp. 656 (D. Del. 1990) ..................................................................................... 4, 27

*E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*,
   711 F. Supp. 1205 (D. Del. 1989) ................................................................................... 5, 12

*eBay, Inc. v. MercExchange, LLC*,
   126 S. Ct. 1837 (2006) .................................................................................................. 16, 17

*Enprotech Corp. v. Autotech Corp.*,
   15 U.S.P.Q.2d 1319 (N.D. Ill. 1990) ............................................................................ 15, 21

*Gladish v. Tyco Toys, Inc.*,
   U.S.P.Q.2d 1718 (E.D. Cal. 1993) ............................................................................... 15, 21

*Imax Corp. v. In-Three, Inc.*,
   385 F. Supp. 1030 (C.D. Cal 2005) .................................................................................... 21

*Implant Innovations, Inc. v. Nobelpharma AB*,
   1994 W.L. 68498 (N.D. Ill. 1994) ...................................................................................... 15

*In re American Academy of Science Tech Center*,
   367 F.3d 1359 (Fed. Cir. 2004) .......................................................................................... 13

*Novozymes A/S v. Genencor Internat'l Inc.*,
   Civil Action No. 05-160-KAJ (D. Del. Feb. 16, 2007) ...................................................... 17

*NTP, Inc. v. Research in Motion, Ltd.*,
   397 F. Supp.2d 785 (E.D. Va. 2005) .................................................................................. 13

*Remington Arms Co., Inc. v. Modern Muzzleloading, Inc.*,
   1998 W.L. 1037920 at *2 (M.D.N.C. 1998) ................................................................. 13, 27

#8504301 v1

*Rohm and Haas Co. v. Brotech Corp.*,
  24 U.S.P.Q.2d 1369 (D. Del. 1992)...................................................................13, 19

*San Giacomo N.A., Ltd. v. Pilliod Furniture, Inc.*,
  1996 U.S. Dist. LEXIS 14440 at *5 (M.D.N.C. 1996) ..........................................15

*Shockly v. Arcan, Inc.*,
  248 F.3d 1349 (Fed. Cir. 2001) ...............................................................................5

*Softview Computer Prods. Corp. v. Haworth*,
  56 U.S.P.Q. 2d 1633 (S.D.N.Y. 2000) ...................................................................5

*Soverain Software LLC v. Amazon.com, Inc.*,
  356 F. Supp.2d 660 (E.D. Tex. 2005) ...............................................................12, 22

*St. Clair Intellectual Property Consultants, Inc. v. Sony Corp.*,
  2003 W.L. 25283239 (D. Del. 2003)..................................................................5, 15

*Wayne Automation Corp. v. R.A. Pearson Co.*,
  782 F. Supp. 516 (E.D. Wash. 1991).....................................................................15

*Whatley v. Nike, Inc.*,
  54 U.S.P.Q.2d 1124 (D. Ore. 2000) ..................................................................13, 15

*Whistler Corp. v. Dynascan Corp.*,
  29 U.S.P.Q.2d 1866 (N.D. Ill. 1993)......................................................................22

*Xerox Corp. v. 3Com Corp.*,
  69 F. Supp.2d 404 (W.D.N.Y. 1999)...............................................................13, 15, 27

**Statutes**

35 U.S.C. § 101 .........................................................................................................3

35 U.S.C. § 102 .........................................................................................................3

35 U.S.C. § 103 .........................................................................................................3

35 U.S.C. § 112 .....................................................................................................3, 19

35 U.S.C. §§ 141-145 ...............................................................................................14

**Rules**

37 C.F.R. § 1.191........................................................................................................14

37 C.F.R. § 1.192........................................................................................................14

37 C.F.R. § 1.193........................................................................................................14

37 C.F.R. § 1.194........................................................................................................14

37 C.F.R. § 1.197........................................................................................................14

37 C.F.R. § 1.515................................................................................................1, 14, 20

37 C.F.R. § 1.530........................................................................................................14

37 C.F.R. § 1.535........................................................................................................14

37 C.F.R. § 1.550........................................................................................................14

#8504301 v1

37 C.F.R. § 1.947...........................................................................................................14

37 C.F.R. § 1.949...........................................................................................................14

37 C.F.R. § 1.953...........................................................................................................14

37 C.F.R. § 1.983...........................................................................................................14

#8504301 v1

## I.    INTRODUCTION

Following the close of an extended discovery period and an unsuccessful mediation, and some 20 months after this litigation was commenced, Defendant The Toro Company ("Toro") has belatedly moved the Court for a last-minute stay of this litigation because it has only now filed requests in the U.S. Patent and Trademark Office ("PTO") for reexamination of the three patents-in-suit.[1] This Court should deny Defendant's meritless and dilatory motion, for the numerous reasons set out below including that (1) the motion is untimely; (2) the requested stay will not promote judicial efficiency; (3) the reexaminations will not resolve or even narrow the issues in this litigation; and (4) the requested stay will inequitably reward Defendant for its dilatory behavior and prejudice Textron's rights in enforcing its patents.

Defendant's motion is simply a transparent last-minute attempt of a willful infringer to delay its day of reckoning and deprive Textron of the injunctive relief to which it will be entitled upon successful conclusion of the trial, which is scheduled to commence in just over two months. As its own documents poignantly show, Toro engaged in blatant copying of the inventions of the patents-in-suit, and has profited enormously through its willful infringement. Its request to delay these proceedings indefinitely pending reexamination is calculated to protract

---

[1] The PTO has not yet acted upon Defendant's requests, and owing to the last-minute nature of Defendant's requests there is no guarantee the PTO will take any action until the eve of trial. Defendant filed a "Detailed Request for *Ex Parte* Patent Reexamination" with respect to U.S. Patent No. 6,047,530 (the "'530 Patent") (Ex. 1), and a "Detailed Request For *Inter Partes* Patent Reexamination" in connection with both U.S. Patent No. 6,336,311 (the "'311 Patent") (Ex. 2) and U.S. Patent No. 6,336,312 (the "'312 Patent") (Ex. 3) with the PTO on March 23, 2007. According to its regulations, the PTO has three months within which to decide whether to grant the requested reexaminations. 37 C.F.R. §§ 1.515(a); 1.923. Thus, a decision from the PTO with respect to the requests for reexamination is not likely to issue until a matter of days before trial. (Citations to exhibits refer to the exhibits attached to the Declaration of Edmond D. Johnson submitted herewith.)

and forestall resolution of this litigation, permit its infringement to continue unabated, and force additional expense on Textron.[2]  It would be highly inequitable to deny Textron its day in court, and to permit Defendant to continue to profit from its ongoing willful infringement, particularly in light of the enormous time and expense that Textron has already incurred in prosecuting this action.

Defendant's motion is untimely.  One of the most important factors considered by courts when deciding a motion to stay is the stage of the litigation at which the motion is filed.  This Court and other courts have repeatedly emphasized that where, as here, the stay request is not brought until *after* the close of discovery, the motion should be denied.

This litigation has been pending for more than 20 months, all fact and expert discovery has concluded, trial is quickly approaching, and substantial resources have been invested by this Court and the parties.  Defendant first asserted invalidity defenses and counterclaims in August 2005, and it asserted almost ninety alleged prior art references against the patents-in-suit with its June 1, 2006 Prior Art Statement, including many of the references that are the subject of the reexamination requests.  Moreover, allegedly invalidating patents and printed publications are, by definition, generally available through publicly-accessible sources without the need for Court-sanctioned discovery.  Indeed, Defendant has been aware of most of the prior art included in its

---

[2] Although Defendant represented to this Court that it intends to prepare and file reexamination requests relating to its own patents that it has asserted against Textron, and that it will then file a motion to stay the Minnesota litigation relating to those patents, to date, it has not either requested reexamination of its own patents nor moved to stay the Minnesota case.  Toro's failure to make good on this promise to request reexamination of its own patents and to move for a stay in the Minnesota case exposes that the instant motion is simply an attempt to gain a tactical advantage over Textron in connection with the two ongoing litigations.  Defendant has no doubt delayed in making its "intended" request for a reexamination and stay in the Minnesota action in the hope that this Court will render a quick decision on the instant motion and thereby obviate the need for Defendant to take any action with respect to its own patents in the Minnesota case.

reexamination requests since the outset of this case *or earlier*, yet it held back its reexamination requests until the eve of trial and now hopes to drag the patents-in-suit through multiple years of reexamination proceedings. Meanwhile, Textron's right to injunctive relief to preclude Defendant's sales of products directly competitive with patented products of its Jacobsen Division will be frustrated during that time and Defendant will continue to infringe without penalty. Nothing could be more prejudicial to Textron.

Further, contrary to Defendant's arguments, granting a stay will not promote judicial efficiency. No discovery will be avoided because discovery in this case has already concluded. Expert reports of both parties on validity issues have already been prepared. Accordingly, a stay will do relatively little to conserve the resources of the parties or the Court at this late date. Moreover, even if the PTO grants the requested reexaminations here, it is statistically highly probable that the patentability of some of the claims of the patents will be confirmed.[3]

The reexaminations will not likely resolve or even substantially narrow the issues in this litigation. The scope of reexaminations is limited to consideration of patent and printed publication prior art under 35 U.S.C. §§ 102 and 103. In this case, Defendant has also asserted defenses and counterclaims based on invalidity under 35 U.S.C. §§ 101 and 112, which defenses are not subject to reexamination. Additionally, Defendant has counterclaimed based on unenforceability, another issue that will remain in the case regardless of the outcome of any reexaminations. Further, Defendant has not requested reexamination with respect to most of its one-hundred-plus alleged prior art references. And, one of Defendant's reexamination requests is made under the *ex parte* reexamination statute, which does not require that the Defendant be

---

[3] This is particularly true here, where Defendant has presented to the PTO alleged prior art for which there is no evidence corroborating that it is even prior in time to the date of invention of the claims of the patents-in-suit.

collaterally estopped by the PTO's finding of patentability. Accordingly, even if Textron prevails in the reexaminations, as it expects it will, the reexaminations will have done little to narrow the issues for trial.

In light of the fact that the parties and the Court have already invested substantial time and resources in this case, and with just over two months until trial, allowing this action to proceed to trial is far more efficient than the multi-year, piecemeal approach that would result if the case were stayed pending reexamination. Indeed, how could any court manage its docket if defendants knew they could derail a litigation and disrupt the court's schedule by an eleventh hour motion to stay after discovery is complete and the trial date is set? Certainly, such a precedent would wreck havoc on the orderly administration of justice. For all these reasons, the Court should deny Defendant's motion.

## II.    ARGUMENT

### A.    The Criteria Generally Evaluated By Courts For Deciding Motions to Stay Pending Reexamination Proceedings All Weigh Against a Stay in this Case

Textron recognizes that the decision to grant or deny a stay rests within the Court's broad range of discretionary powers. *See, e.g., Abbott Diabetes Care, Inc. v. DexCom, Inc.*, 2006 W.L. 2375035 (D. Del. 2006) (Ex. 4); *Cognex Corp. v. Nat'l Instr. Corp.*, 2001 W.L. 34368283 (D. Del. 2001) (Ex. 5); *Dentsply Internat'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990). That discretion is guided, however, by consideration of several factors, including the prospect that a stay may be requested for the purpose of delay and for providing the movant with an unfair tactical advantage. As this Court has recognized, a court is under no obligation to delay its own proceedings by yielding to PTO reexaminations. "Where such a stay could result in a tactical advantage to one party or the other, this Court will not employ its discretion to stay the ordinary course of its proceedings." *E.I. DuPont de Nemours & Co. v. Phillips Petroleum*

*Co.*, 711 F. Supp. 1205, 1208 (D. Del. 1989); *Cognex*, 2001 W.L. 34368283 at *1-2 (court should decline motion for stay in case where stay will forestall imminent trial date).

District courts, including this Court, have considered the following factors in determining whether to grant a stay of litigation pending reexamination proceedings: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question in the trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *See Abbott Diabetes Care*, 2006 W.L. 2375035 at *5 (Ex. 4); *Cognex*, 2001 W.L. 34368283 at *1 (Ex. 5); *St. Clair Intellectual Property Consultants, Inc. v. Sony Corp.*, 2003 W.L. 25283239 (D. Del. 2003) (Ex. 6); *Softview Computer Prods. Corp. v. Haworth*, 56 U.S.P.Q. 2d 1633, 1636 (S.D.N.Y. 2000). An analysis of these considerations reveals that each of them weigh heavily against granting a stay in this case.

### 1.    Defendant is Not Entitled to the Extraordinary Relief of a Stay of These Proceedings

Defendant's request for a stay invokes this Court's equitable powers. *Cognex*, 2001 W.L. 34368283 at *1 (Ex. 5). But, it is a fundamental principle that "he who seeks equity must do equity." *Shockly v. Arcan, Inc.*, 248 F.3d 1349, 1361 (Fed. Cir. 2001) ("equity's 'unclean hands' doctrine demands that '[one] who seeks equity must do equity.'").

Defendant, however, comes to this Court with unclean hands and should not benefit from the aid of this Court's equitable powers. Defendant knowingly and intentionally copied the patented inventions. It is undisputed that Defendant had notice of the specific allegations of infringement of the '530 Patent since September 5, 2000. ███████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████ Textron also gave Defendant notice of the '311 and '312 Patents shortly

after their issuance. ████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████

     Instead of seeking to avoid litigation either by entering into a license with Textron or redesigning its products to avoid infringing Textron's patent rights, Defendant continued to manufacture and sell its infringing gang-type rotary mowers with actual knowledge, and in willful disregard, of Textron's patent rights.

     There is overwhelming evidence that after Ransomes' introduction of its AR-250 gang-type rotary mower in 1997, Defendant actively and intentionally copied the AR-250 in order to produce the infringing products. ████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████



Within months of beginning its study, Defendant purchased an AR250, ███████████

████████████████████████████████████████████████████████

███████████████, and had built its own prototype █████████████████████████

█████. In fact, given that Ransomes already had more than proven the commercial viability of

the AR250 concept, ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████.

Defendant clearly expressed its admiration for the features of the Ransomes AR-250

mower and extensively utilized the AR250 as a benchmark when developing its new gang-type

rotary mower:

- ████████████████████████████████████████
  ████████████.

- ████████████████████████████████████████
  ████████.



#8504301 v1



Defendant responded to these competitive pressures by copying the Ransomes AR-250 patented design. ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

Three years after Defendant set out to copy the Ransomes AR250 mower, it announced the obsolescence of its prior non-infringing mower, the Contour 82 (Groundsmaster 3000),

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████

Scores of Defendant's documents also illuminate the fact that for years prior to the filing of this litigation it was well aware of the risks of its willful infringement and during that time it has been searching for prior art to assert against the Textron patents. ████████████████

████████████████████████████████████████████████████████████



#8504301 v1

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████

Thus, there is no dispute that there was widespread awareness of the Textron patents at the highest levels of Defendant's management, and the risks the Textron patents posed to Toro's ability to continue making and selling the Groundsmaster mowers. Notwithstanding this awareness and Defendant's concerted efforts to find alleged prior art to assert against those patents, it did not seek reexaminations of the Textron patents when (i) it first became aware of Textron's patents; (ii) at any time prior to the filing of this lawsuit; (iii) when asserting invalidity counterclaims upon the filing of this lawsuit in 2005; or (iv) even after asserting nearly ninety prior art references in its June 1, 2006 Prior Art Statement. It is evident that, notwithstanding the numerous occasions upon which Defendant claimed to have found invalidating prior art, Defendant consistently delayed time and time again and failed to file its reexamination requests. Rather, Defendant waited, and chose to file these requests only upon the eve of trial, after forcing Textron to (i) file this action; (ii) prosecute the case for 20 months; and (iii) expend untold money and resources in conducting discovery. In fact, Defendant even waited until after the parties had unsuccessfully engaged in the Court's mediation process.

Defendant is simply undeserving of the equitable relief it seeks. A stay would enable it

to continue profiting from its unrestrained willful infringement and to obtain an unwarranted tactical advantage in the litigation due to its delay in seeking reexamination of patents for which it has been collecting purported prior art since 2000.

### 2.     A Stay Would Unduly Prejudice and Present a Clear Tactical Disadvantage to Textron

Courts have countenanced against granting a stay pending reexamination when the stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party. *See, e.g., DuPont*, 711 F. Supp. at 1208 n.9; *Cognex*, 2001 W.L. 34368283 at *3 (Ex. 5); *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp.2d 660, 662 (E.D. Tex. 2005) ("Amazon waited until this case was a year old and the Court had held the *Markman* hearing before moving for a stay... Postponing trial pending reexamination a year into the case and only six months prior to trial would unduly prejudice Soverain's ability to protect its property rights in the patents at issue."). Indeed, Defendant itself recognizes that "there is some prejudice to Textron associated with delaying its 'day in court'," and that Textron would also be prejudiced by the stay due to the "considerable amounts of money" it has spent "in litigating this case." Defendant's Memo at 9, 10.

However, Defendant asserts that Textron will not be unduly prejudiced by delaying its day in Court because the requested stay would be of limited duration as the PTO purportedly reexamines patents, "with special dispatch." Defendant's Memo at 10-11. Defendant further contends that the prejudice to Textron of delaying its day in Court will not be undue because "monetary compensation is sufficient to remedy any infringement" following the reexaminations. Defendant is wrong on both counts.

First, a quick resolution of the reexamination proceedings is highly unlikely. If the requested reexaminations are granted by the PTO, it is unlikely that there will be final decisions

on the issues involved in the proceedings for several years and possibly longer. Indeed, some

courts have found that the expected duration of a typical reexamination proceeding (on average,

19-20 months for an *ex parte* proceeding and 29.7 months for an *inter partes* proceeding,

***excluding*** the time for appeals) may be too long to justify a stay of litigation. *See, e.g., Cognex,*

2001 W.L. 34368283 at *2 (Ex. 5) (denying motion to stay, discovery was near conclusion and a

trial date was scheduled; moreover, "median reexamination time is 16 months.... the trial in this

case will likely be completed prior to any action by the PTO"); *Rohm and Haas Co. v. Brotech*

*Corp.*, 24 U.S.P.Q.2d 1369 (D. Del. 1992) (although court initially stayed litigation pending

outcome of reexamination, when the case was assigned to a new judge, the stay was lifted

primarily to comply with the speedy trial provisions of the Civil Justice Reform Act); *Whatley v.*

*Nike, Inc.*, 54 U.S.P.Q.2d 1124, 1125 (D. Ore. 2000) (denying the stay because case had been

pending for almost two years, discovery had been extensive and the average time for a

reexamination, not including any appeal, is 19.2 months); *Xerox Corp. v. 3Com Corp.*, 69 F.

Supp.2d 404, 407 (W.D.N.Y. 1999) (same); *Remington Arms Co., Inc. v. Modern*

*Muzzleloading, Inc.*, 1998 W.L. 1037920 at *2 n.2 (M.D.N.C. 1998) (Ex. 23) (same); *NTP, Inc.*

*v. Research in Motion, Ltd.*, 397 F. Supp.2d 785, 788 (E.D. Va. 2005) (same); *In re American*

*Academy of Science Tech Center*, 367 F.3d 1359 (Fed. Cir. 2004) (affirming the PTO Board's

claim construction in a reexamination where, after numerous rehearing requests and appeals, the

PTO's findings were not confirmed until ten years after the reexamination was first requested).

Thus, contrary to Defendant's representations, if the requested reexaminations are granted by the

PTO, it will likely take years before they are finally resolved.[5]

---

[5] The following time frames apply to a typical *ex parte* reexamination proceeding:  (a)
after the filing of a Request for Reexamination, the PTO has three months within which to
determine whether the Request has presented a substantial new question of patentability (37

-13-

A stay of such a lengthy duration would severely and unfairly prejudice Textron, particularly given that it has already invested enormous time and resources in discovery and in preparing its case for trial. The trial is scheduled to commence in just over two months. The pretrial conference is scheduled for May 30, 2007, a little over a month away. If this case is stayed for a multi-year period, "witnesses may become unavailable, their memories may fade,

---

C.F.R. § 1.515(a)); (b) if an order for reexamination is issued, the Patent Owner has two months from the date of the order within which to file a Patent Owner's Statement (37 C.F.R. § 1.530(b)); (c) if the Patent Owner files a Patent Owner's Statement, the Requester may file a Reply to such Statement within two months (37 C.F.R. § 1.535); (d) initial examination of the patent is conducted in accordance with typical patent examination procedures wherein the Examiner reviews the prior art and issues Office Actions, and the Patent Owner files responses to such Office Actions within 30-60 days thereafter (37 C.F.R. § 1.550); the period for the conduct of the initial examination phase is indefinite; (e) the Patent Owner has the right to appeal an Examiner's rejection in a final Office Action to the PTO's Board of Patent Appeals and Interferences (BPAI) within six months after the final Office Action (37 C.F.R. §§ 1.191(a)(2), 1.124 and 1.550(c)); (f) an Appeal Brief is to be filed by the Patent Owner within two months after the filing of a Notice of Appeal (37 C.F.R. § 1.192(a)); (g) the Examiner is to file an Answer to the Patent Owner's Appeal Brief within two months thereafter (37 C.F.R. §§ 1.193(b)(1), 1.194(b)); (h) an oral hearing before the BPAI is typically conducted within six-twelve months after a request for oral hearing is filed; (i) the BPAI's decision on appeal typically issues within one to three months after the oral hearing, although it could take longer; (j) the Patent Owner may file a request for a rehearing of any unfavorable BPAI decision within two months after receipt of the BPAI decision (37 C.F.R. § 1.197(b)); (k) the BPAI's decision on the request for rehearing typically issues within one to two months thereafter; (l) if the BPAI's decision remains unfavorable, the Patent Owner has the statutory right to appeal the decision within 60 days to the Federal Circuit (35 U.S.C. §§ 141-145); (m) the Federal Circuit will set its own schedule for briefing and argument. The pendency of any appeal to the Federal Circuit could amount to a year to two years, or longer.

The time periods for the conduct of an *inter partes* reexamination are similar, except that each time the Patent Owner files a response to an Office Action, the Requester may file comments on such response within 30 days thereafter. (37 C.F.R. § 1.947). Additionally, there is no right of appeal to the BPAI until the Examiner issues an Office Action closing prosecution on the merits (37 C.F.R. § 1.949) and then issues a Right of Appeal Notice (37 C.F.R. § 1.953(a)). Either party (the Patent Owner or the Requester) may then file a Notice of Appeal to the BPAI within one month after the Right of Appeal Notice (37 C.F.R. § 1.953(c)). The Patent Owner or the Requester who is dissatisfied with a decision of the BPAI has the right to appeal such decision to the Federal Circuit. (37 C.F.R. § 1.983(a). Thus, an *inter partes* reexamination proceeding may be pending for a period longer than an *ex parte* proceeding due to the added time allotted to responses of the Requester.

and evidence may be lost while the PTO proceeding takes place." *Gladish v. Tyco Toys, Inc.*, U.S.P.Q.2d 1718 (E.D. Cal. 1993) (denying motion to stay); *Whatley,* 54 U.S.P.Q.2d at 1126 (denying motion to stay, in part, out of concern for the "preservation of witness memories."). And of course, Defendant's infringement will continue unabated during that time period.

Almost uniformly courts find that granting a stay of litigation after discovery has concluded and the trial date has been set creates undue prejudice to the non-moving party. *Cognex*, 2001 W.L. 34368283 at *3 (Ex. 5) ("given the late stage of [Defendant's] request, the Court finds that any delay from the October trial date at this late stage in the litigation would necessarily prejudice [Plaintiff]."); *St. Clair Intellectual Property Consultants*, 2003 W.L. 25283239 at *1 (Ex. 6) ("discovery is complete and the trial date weeks away and therefore, the delay that will result while the reexamination proceedings go forward will unduly prejudice St. Clair in the presentation of its case"); *Implant Innovations, Inc. v. Nobelpharma AB*, 1994 W.L. 68498, at *3 (N.D. Ill. 1994) (Ex. 24) (same); *Enprotech Corp. v. Autotech Corp.*, 15 U.S.P.Q.2d 1319, 1320 (N.D. Ill. 1990) (same); *Xerox*, 69 F. Supp.2d at 406 (same); *Accent Designs, Inc. v. Jan Jewelry Designs, Inc.*, 1994 W.L. 121673 at *2 (S.D.N.Y. 1994) (Ex. 25) (same); *San Giacomo N.A., Ltd. v. Pilliod Furniture, Inc.*, 1996 U.S. Dist. LEXIS 14440 at *5 (M.D.N.C. 1996) (Ex. 27) (same); *Agar Corp. v. Multi-Fluid, Inc.*, 983 F. Supp. 1126, 1128 (S.D. Tex. 1997) (same); *Wayne Automation Corp. v. R.A. Pearson Co.*, 782 F. Supp. 516 (E.D. Wash. 1991) (same).[6]

---

[6] Defendant relies on *Broadcast Innovation, L.L.C. v. Charter Comm., Inc.*, 2006 U.S. Dist. LEXIS (D. Colo. 2006) (Ex. N to Defendant's Memo), as an example of a case where the court stayed the litigation notwithstanding that the trial date had been scheduled. This case is readily distinguishable. There, the patent involved extremely complex digital broadcasting technology, some fact and expert discovery remained to be conducted, and the court had not yet considered numerous voluminous motions for summary judgment. Thus, it determined that it could benefit from the PTO's analysis of the prior art versus the patent claims in light of the

For this Court to stay this litigation pending resolution of the requested reexaminations (which the PTO has not yet granted) could place this action and the parties in limbo for years to come. Defendant contends that Textron would suffer no prejudice during this time because "monetary compensation is sufficient to remedy any infringement found to exist following the reexaminations." Defendant's Memo at 11. To the contrary, during that time, Textron would be deprived of its patent rights including its right to exclude Toro's infringing mowers from the market (35 U.S.C. § 154(a)(1)). The sales and market share of Textron's Jacobsen Division's competing, patented gang-type rotary mowers would continue to suffer because of the continuing unlicensed, unauthorized practice of the patented inventions by Defendant. *See, e.g., Amphenol T&M Antennas, Inc. v. Centurion Internat'l, Inc.*, 2001 U.S. Dist. LEXIS 13795 at *4 (N.D. Ill. 2001) (Ex. 26) (denying a stay because "there would be a long delay between the time that a stay is granted and the time that the PTO finishes its reexamination proceeding ... ATM will suffer great harm as Centurion infringes ATM's patent throughout the stay period and potentially reaps profits rightfully belonging to ATM [and] [s]ubstantial time and resources have already been invested in the current litigation").[7] Moreover, because the reexamination proceedings are likely

---

highly-technical subject matter involved. In contrast, the technology involved here is not highly technical, as defendant's own expert witness concedes. Indeed, most of the alleged prior art relied upon by Defendant consist of one or two-page sales brochures or photographs of lawn mowers. The technology will be readily understood by most jurors with the guidance of the parties' experts. And, this Court has already determined not to allow the parties to file motions for summary judgment.

[7] Defendant suggests that because Textron Innovations Inc. is a holding company for the intellectual property of all of the Textron operating entities and divisions, and does not make or sell the Jacobsen Division mowers that compete with Defendant's infringing mowers, Textron is somehow not entitled to relief beyond monetary compensation. This is not the case, as the U.S. Supreme Court and this Court have recognized. Patent rights are enforceable regardless whether the patent owner chooses to practice the invention, license the patent, or make no use whatsoever of the patented invention. *See eBay, Inc. v. MercExchange, LLC*, 126 S. Ct. 1837, 1840-41 (2006) (reaffirming decision in *Continental Paper Bag Co. v. Eastern Paper Bag Co.*, 210 U.S.

-16-

not to be resolved for several years, a stay of this duration would be irreparable.

For all of these reasons, a multi-year stay of this litigation would result in untold prejudice to Textron, much of which could not be remedied by a money judgment.

### 3. The Reexaminations, If Granted by the PTO, Are Unlikely to Narrow the Issues for Trial

Defendant contends that a stay is justified because "this case is over" if the PTO invalidates all of the Textron patent claims. Defendant's Memo at 11. Of course, if Defendant is so confident of its invalidity contentions, there is no reason why it should not simply proceed to trial and have this case resolved once and for all in the course of the next three months.[8]

Defendant also urges that the stay be granted because many of the 100-plus references in its Prior Art Statements will likely be before the PTO in the reexaminations, and it contends that

---

405, 422-430 (1908), which rejected the contention that a court has no jurisdiction to grant injunctive relief to a patent holder who has unreasonably declined to use the patent)). *See also eBay*, 126 S. Ct. at 1840 ("some patent holders, ..., might reasonably prefer to license their patents, such patent holders may be able to satisfy the traditional four-factor test [for injunctive relief], and we see no basis for categorically denying them the opportunity to do so."); Post-Trial Findings of Fact and Conclusions of Law in *Novozymes A/S v. Genencor Internat'l Inc.*, Civil Action No. 05-160-KAJ (D. Del. Feb. 16, 2007) at 37 (Ex. 28) (granting permanent injunction to patent owner Novozymes which did not sell products competitive to Defendants' infringing products, but which had a subsidiary that sold competitive patented products; "Novozymes expects its patents to exclude competitors from marketing [alpha-amylases]. In those circumstances, even though Novozymes does not market alpha-amylases itself, it has suffered harm beyond the reasonable royalty that it can recover from Defendants. And Novozymes will continue to suffer such irreparable harm if Defendants are not enjoined from infringing on Novozyme's right to exclude. Legal remedies are not adequate to compensate Novozymes for the infringement of its patent.... The statutory right to exclude represents a benefit that cannot be equated by an award of cash.... Novozymes has a right, granted by Congress, not to assist its rival with the use of proprietary technology.").

[8] Textron notes that the alleged invalidity theories asserted by Toro in its Reexamination Requests are almost entirely based upon theories of obviousness using combinations of references. Indeed, Toro only asserts that one reference, a brochure relating to its own Contour 66 mower, anticipates only select claims of the '312 Patent. It has not asserted any anticipation theories in its Requests for Reexamination of the '530 or '311 Patents. *See* Exs. 1-3.

-17-

the Court will benefit from the PTO's review, thereby streamlining the printed prior art validity issues for trial.[9]

Defendant ignores the fact, however, that 90% of all *ex parte* reexaminations have resulted in confirmation of the patentability of at least some of the reexamined patent's original claims. *See* PTO's *Ex Parte* Reexamination Filing Data (Ex. A to Defendant's Memo); *Hoechst Celanese Corp. v. B.P. Chemical, Ltd.*, 78 F.3d 1575, 1584 n.2. Moreover, although Defendant asserts that there is "an 86% probability that <u>none</u> of the 25 claims at issue in the [two] *inter partes* reexamination will survive," it neglected to inform the Court that the PTO statistics relating to this point result from a total of only ***seven inter partes*** reexaminations that have progressed to conclusion. *See* Ex. A to Defendant's Memo. The other 202 *inter partes* reexaminations that have been filed since the *inter partes* type of reexaminations were first initiated in 1999 are ***still pending*** in the PTO. *Id.* Thus, Defendant's reliance on this sampling of ***three percent*** of all *inter partes* reexaminations -- as well as its prediction that such a reexamination will be quickly resolved -- is misplaced.

It is far more likely that once more *inter partes* reexaminations progress to their conclusion, the data will be similar to that for *ex parte* reexaminations which have taken place since 1981. With respect to *ex parte* reexamination proceedings, the PTO's statistics indicate

---

[9] Defendant's contention that the Court should stay the case in light of the imminent Supreme Court decision in *Teleflex, Inc. v. KSR International ("KSR")* is certainly without merit. As Defendant concedes, the Supreme Court's decision is expected to be announced ***before*** the trial of this case (the Supreme Court's term ends four days before trial). Defendant's Memo at 14. Accordingly, if the Supreme Court announces any new legal guidance with respect to the obviousness defense, this Court can actually reflect that new guidance in its jury instructions. There is no reason to stay this case for years simply because the Supreme Court ***might*** adjust the obviousness standards ***before*** the trial of this case. Indeed, who is to say that some other issue of patent law might not be before the Supreme Court after the conclusion of the reexaminations?

that in only 10% of all reexaminations are all claims of a patent cancelled.  It is therefore

unlikely that the results of the reexamination proceedings will render trial in this matter wholly

unnecessary.  For this reason, many courts, including this one, have denied stays.  *See, e.g., St.*

*Clair Intellectual Property Consultants*, 2003 W.L. 25283239 at *1 (Ex. 6) ("I also find, ..., that

it is unlikely the pending reexamination proceedings will do much to simplify the issues that

need to be tried in this case."); *Agar Corp.*, 983 F. Supp. at 1127-28 (denying a motion to stay

where the reexamination was unlikely to result in a decision that would impact all claims in suit);

*Rohm & Haas Co.*, 24 U.S.P.Q.2d at 1371 (granting a motion to lift a stay where "the

information from the PTO confirms that at least some of the claims will survive reexamination"

and thus would have to be resolved in the litigation).

Additionally, reexamination is a very limited procedure, involving merely an inquiry into

the validity of the patent under 35 U.S.C. §§ 102 and 103 based only upon analyzing prior art

patents and printed publications.  35 U.S.C. § 302; 37 C.F.R. § 1.552(a), (c).  Thus, in this case,

although the requested reexaminations may involve some of the same issues presented in

Defendant's affirmative defenses that the patents-in-suit are invalid, the reexaminations, even if

granted by the PTO, cannot resolve the Defendant's other affirmative defenses, *i.e.*, invalidity

under 35 U.S.C. § 112 (Third Amended Answer and Counterclaim, ¶¶ 26-28), invalidity under

35 U.S.C. § 101 (Third Amended Answer and Counterclaim, ¶¶ 26-28), non-infringement (Third

Amended Answer and Counterclaim, ¶¶ 23-26), equitable estoppel (*Id*. at ¶ 29), and

unenforceability (*Id.* at ¶ 30).  Defendant has also counterclaimed for declaratory judgments of

noninfringement, invalidity and enforceability, which counterclaims cannot be resolved through

the reexaminations.

Moreover, the reexaminations are unlikely even to significantly narrow the scope of the

printed prior art validity issues for trial. Defendant's Prior Art Statements filed in this case include a staggering 100 alleged prior art references, far more alleged prior art references than those it has submitted to the PTO. Thus, even if Textron prevails in the reexaminations, Defendant will undoubtedly continue to assert invalidity of the '530 Patent claims based upon the purported prior art not considered by the PTO. Additionally, because the *ex parte* reexamination statute does not contain a collateral estoppel provision, Defendant will likely continue to assert the very same prior art already considered by the PTO in connection with the '530 Patent reexamination. And with respect to the *inter partes* reexamination requests, Defendant will undoubtedly claim (as it has time and again in this case) to have "discovered" allegedly new prior art not submitted to the PTO and assert it in defense against the '311 and '312 Patents. Defendant will simply contend that such "newly discovered" prior art was "unavailable" to it at the time of the PTO *inter partes* proceedings.[10]

Thus, it is highly unlikely that the reexamination requests, even if granted, will significantly narrow the printed prior art validity issues for trial.[11]

---

[10] Moreover, even if the PTO grants the reexamination requests, it need not reexamine the patents on the basis of all of the alleged prior art that Defendant submitted with its requests. Rather, the PTO can limit the reexamination to only the alleged prior art that it finds raises a substantial new question of patentability. 37 C.F.R. § 1.515(a). Additionally, the PTO need not reexamine all of the claims of a patent, but can limit the reexamination to a subset of the claims.

[11] As this Court is aware, the circumstances presented here differ substantially from those in *Pegasus Dev. Corp. v. DirecTV, Inc.*, 2003 U.S. Dist. LEXIS 8052 (D. Del. 2003) (Ex. D to Defendant's Memo). That case was exceptionally complex; there were two plaintiffs, four defendants, and several counterclaimants, and involved six patents comprising dozens of claims in a highly technical field. This Court noted that the briefing for claim construction issues alone constituted 576 pages, the patent specification included over 300 columns of text, and there were hundreds of pending patent applications relating to the patents-in-suit. Discovery was underway, but was not completed. Thus, the Court noted that the reexamination proceeding might alleviate many discovery problems relating to prior art, and the case would benefit from a potential narrowing of the issues. Although the Court was sensitive to the plaintiffs' right to have their day in court, the Court nonetheless determined that a stay was appropriate. *Id.* at *3-8.

In situations such as these, in which reexamination will not resolve all of the issues involved in the litigation, courts have often denied motions to stay. *See, e.g.*, *St. Clair Intellectual Property Consultants*, 2001 W.L. 25283239 at *1 (Ex. 6); *Amphenol T&M Antennas*, 2001 U.S. Dist. LEXIS 13795 at *6-7 (Ex. 26) (denying a motion to stay because *inter alia*, "it is unclear whether the PTO's reexamination of the ... patent would affect litigation in the present suit"); *Gladish*, 29 U.S.P.Q.2d at 1720 (denying a motion to stay where several issues, including (1) issues of invalidity that did not fall into the narrow categories the PTO considers on a request for reexamination, (2) issues of infringement, and (3) the issue of whether the case was exceptional, would remain unless all claims of the patent were cancelled as a result of reexamination); *Enprotech*, 15 U.S.P.Q.2d at 1320 (denying a motion to stay because, *inter alia*, "if any of the claims survived we would be right back here to litigate the claim that the patent should not be enforced because of inequitable conduct in the Patent Office"); *Cognex*, 2001 W.L. 34368283 at *2 (Ex. 5) (denying stay, in part because Cognex's complaint alleges a variety of claims which would require a trial regardless of outcome of reexamination); *Imax Corp. v. In-Three, Inc.*, 385 F. Supp. 1030, 1033 (C.D. Cal 2005) (denying stay in part because "[e]ven if the PTO eliminates all of the claims of the 294 Patent, which is statistically unlikely, the court must

---

Here, there are only two parties to the action and three patents-in-suit. Although Textron has asserted infringement of 31 claims from among the three patents, it intends to narrow the number of asserted claims for trial in order to ensure that the case can be tried within the schedule established by the Court. In stark contrast to the patents at issue in *Pegasus*, the patent specification for the '530 and '311 Patents consists of only 6 drawing figures and 4 columns of text, while the '312 Patent specification includes 24 drawings and 6 ½ columns of text. The technology at issue, gang-type rotary lawn mowers, is not overly complex, as Defendant's own expert has conceded. The technology can be readily understood by the jurors with guidance from the parties' experts. Significantly, fact and expert discovery have concluded. Thus, in contrast to the *Pegasus* case, the reexamination proceedings will not serve to alleviate any discovery problems relating to prior art.

still address In-Three's counterclaims...," both parties had already submitted expert reports concerning the prior art in the request for reexamination and "so much effort has already been devoted to In-Three's claims of invalidity... it is unlikely much effort by any party or the Court will be saved by allowing the PTO to resolve the invalidity issues.")[12]

The existence of a substantial number of issues that will remain for the Court to resolve here even after the PTO completes the reexaminations indicates that the requested stay is unlikely to result in any significant judicial economies or efficiencies. Indeed, the most efficient thing that this Court can do is to simply let this case proceed to trial such that both parties can have their day in Court in less than three months from now. As at least one court has found in denying a motion to stay pending reexamination, it is not reexaminations that result in judicial economies and efficiencies, but rather, it is "[f]irm trial settings that resolve cases and reduce litigation costs." *Soverain Software*, 356 F. Supp.2d at 663.

**B.    Defendant Unduly Delayed Filing Its Requests For Reexamination**

In addition to consideration of the above factors, where a requested stay will forestall a scheduled trial date, this Court requires the party requesting the stay to make a showing of a clear case of hardship or inequity to it if the court denies the stay. *See, e.g., Cognex*, 2001 W.L. 34368283 at *1-2 (Ex. 5) (citing *Dentsply*, 734 F. Supp. at 658).

Defendant asserts that, although both parties have expended significant resources in this litigation, a stay could enable some costs savings in the anticipated expenditures for pretrial filings. Defendant's Memo at 15. This contention is disingenuous at best. First, the reexamination proceedings themselves will impose costs on the parties, and as discussed above,

---

[12] At least one court has allowed patent infringement issues to move ahead to trial even while issues relating to validity were stayed pending PTO reexamination. *See Whistler Corp. v. Dynascan Corp.*, 29 U.S.P.Q.2d 1866 (N.D. Ill. 1993).

-22-

in all likelihood the parties will eventually have to incur the costs to try most of the issues. Second, the costs associated with the upcoming pretrial filings that Defendant contends will be spared by a stay pale in comparison to the millions of dollars in costs already incurred by the parties to date.

Defendant further contends that its delay in filing its reexamination requests until the eve of trial was reasonable because it needed to "wait until it had all of its printed prior art it believed to exist before filing the requests for reexamination." Defendant's Memo at 16. Defendant's contention is thoroughly meritless for several reasons.

Contrary to Defendant's contention, it has been aware of the alleged prior art that forms the basis for its reexamination requests for some time. *See, e.g.,* Ex. 29 (chart detailing when Defendant was aware of alleged prior art submitted to PTO). First, Toro was obviously aware of its own products without the need for any discovery, and still other of the reexamination references were cited on the face of the '311 and '312 Patents, which Textron provided to Defendant in 2002. *Id.* (citing "Toro's Own Alleged "Prior Art" Products and Nunes Alleged Prior Art cited on face of '311 and '312 Patents); *see also* Ex. 1-3. ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████[13]   Likewise, Defendant has been aware of the vast majority of the reexamination art at least as early as its first Prior Art Statement in this litigation,

---

[13] And while Defendant contends that it was necessary to take depositions with respect to this prior art, Defendant inexplicably delayed in taking the deposition of Nunes until the last week of the extended discovery period.

served on June 1, 2006.  *Id.*[14]  The Risboro art, for example, was known to Defendant at least as early as May 2006, when it obtained a declaration from Mr. Bruce Crawforth relating to this alleged prior art.  Defendant, however, withheld this declaration from Textron for over six months.

Moreover, in its reexamination requests, Defendant has cited alleged prior art that it has not even asserted in this litigation, which strongly suggests that these references are of dubious materiality.  *Id.*  But moreover, Defendant can hardly complain of delays in discovery regarding so-called prior art that is not even at issue in this case.

The only remaining prior art allegedly not known to Defendant until recently pertained to a "Middlesworth" mower brochure, which Defendant discovered during a document inspection on January 31, 2007, and a "Ransomes boom mower."  However, the boom mower appears to be nearly identical to a "Steiner Boom Mower" previously identified by Defendant as Prior Art Reference No. 90 in its First Amended Prior Art Statement.  Indeed, Defendant has not even sought to include the "Ransomes boom mower" in its recent request to supplement its First Amended Prior Art Statement, suggesting that Defendant itself believes this mower to be merely cumulative of the "Steiner Boom Mower."  Likewise, Defendant does not even rely upon the Middlesworth mower brochure as the basis for any anticipation (35 U.S.C. § 102) defense in its reexamination requests.[15]

---

[14] As Defendant itself noted when first amending its Prior Art Statement in December 2006, many of the "new" references it sought to add to the Statement at that time, such as U.S. Patent No. 5,305,589 and the Wulff Mower Brochure, had actually been produced in discovery months earlier.

[15] Similarly, the "Mountfield Lawn Rider" appears to be nearly identical to another product for which Defendant produced documents in July 2006.  Here, again, Defendant does not assert in its reexamination requests that this reference anticipates any of the claims of the patents-in-suit.

And with respect to Defendant's excuse that it delayed submitting the reexamination requests until after it obtained Middlesworth documents in early February and deposed Middlesworth on February 27, this excuse is similarly without merit. It was Defendant, not Textron, that delayed in pursuing its subpoena upon the Commercial Grounds Care ("CGC") Johnson Creek facility. Defendant served its subpoena *duces tecum* upon CGC in October 2006. CGC initially objected to the overbreadth of the subpoena and Defendant failed to pursue it for several months. It was only after this Court at the January 11 discovery conference urged Defendant to pursue its own subpoena that Defendant did so. Once Defendant contacted CGC and narrowed the scope of its subpoena, it had access to the Middlesworth documents for review within days.[16]

Defendant's additional purported excuse for not filing the reexamination requests earlier was its desire to avoid expending additional attorney time to prepare a second reexamination request and pay an additional PTO filing fee of $2520 to file a second reexamination request if it discovered additional prior art later in discovery. Defendant's Memo at 16. This argument borders on the absurd. The expenses involved in preparing and filing a second reexamination are inconsequential in comparison to the costs the parties have expended in conducting discovery. *See Cognex*, 2001 W.L. 34368283 at *1 (Ex. 5) (denying stay, in part because "Cognex has already forced National Instruments to spend over a million dollars defending itself in this action before requesting the stay, despite the fact that Cognex had the materials necessary to seek reexamination earlier.").

---

[16] Contrary to Defendant's argument, Defendant never requested discovery of documents relating to Middlesworth before Textron sold the Johnson Creek facility to CGC. Indeed, notwithstanding the inordinate scope of Defendant's document requests in this case, Defendant did not serve Textron with any document requests that specifically requested documents pertaining to Middlesworth during the course of this litigation.

Moreover, Defendant's argument that it was entitled to await the conclusion of the discovery period before requesting reexamination is directly contrary to the law of this Court in considering such stay requests. This Court and other federal district courts have repeatedly held that it weighs ***against*** a stay that a party has not moved for the stay until near or after the conclusion of the discovery period. It follows that an accused infringer has no expectation that it may await the conclusion of discovery before requesting reexamination and a stay of proceedings. Likewise, the purpose of the reexamination statutes was to provide an ***alternative*** to expensive discovery proceedings and litigation. That purpose is not served by allowing the parties to first exhaust the discovery processes of this Court before the infringer requests reexamination and moves for stay.

For such reasons, in the *Cognex* case, this Court denied defendant's motion to stay. There, the defendant did not file its motion to stay until near the close of discovery and after the case had been scheduled for trial. The Court determined that the defendant could not demonstrate a clear case of hardship or inequity. It held that defendant's contentions that the reexamination would simplify the issues and reduce the parties' expenses were without merit because there were several claims in the suit which would require a trial regardless of the outcome of the reexamination proceedings. It also rejected defendant's contention that the reexamination might result in changed patent claims which could cause the action to be litigated twice. Instead, the Court reasoned that because of the lengthy duration of the reexamination proceedings, the trial in the case would be completed well prior to any action by the PTO.

Finally, the *Cognex* court rejected the defendant's contention that it could not have filed its reexamination requests any earlier in the litigation.

> [A]ny hardship incurred by Cognex as a result of its request for reexamination is, in part, a result of Cognex's own making. National Instruments contends and

-26-

> Cognex has not disputed that Cognex has had at least some of the documents it presented to the PTO in its request for reexamination for quite some time. National Instruments identified specific prior art references in its Answer to the Complaint in June 2000, yet Cognex waited until six months before the scheduled trial date in this case to seek reexamination of the '172 Patent. Accordingly, the Court cannot conclude that Cognex has demonstrated a clear case of hardship of inequity in justifying a stay of this case. *Dentsply*, 734 F. Supp. at 659 ("The Court will not elevate [a party's failure to address its concerns in a timely fashion to an example of hardship warranting a stay.").

*Cognex*, 2001 W.L. 34368283 at *2 (Ex. 5). *See also Remington Arms,* 1998 W.L. 1037920 at

*3 (Ex. 23) (denying stay where trial date was set and defendant's delay in requesting

reexamination was unjustified given that it was aware of the prior art forming its reexamination

request well prior to the date it filed the request).

Here, too, Defendant made the strategic decision to hold back its reexamination request

until this late stage in the case. It is no coincidence that Defendant delayed filing its

reexamination requests until after discovery was completed, after the Court had denied it leave to

file a motion for summary judgment, and after the Court's mediation process was unsuccessfully

concluded. Under these circumstances there is no avoiding the conclusion that, faced with an

imminent trial, Defendant has only now filed its reexamination requests as a last-ditch effort to

delay its day of reckoning for its willful infringement. *See Xerox*, 69 F. Supp. 2d at 407 ("To

allow [3Com] to now use the reexamination process to get this case stayed would be to allow a

defendant to use the reexamination as a mere dilatory tactic.").

## III.  CONCLUSION

For all of the above reasons, this Court should deny Defendant's motion to stay this

litigation pending reexamination proceedings. Discovery in this action has concluded. The

pretrial conference is scheduled for May 30, 2007. Trial is just over two months away.

Defendant delayed filing its reexamination requests, although it has had notice of its

infringement of the patents-in-suit since 2000 and has been gathering alleged prior art since that

-27-

time. The inherent delay in reexamination proceedings will unduly prejudice Textron. Indeed, Textron is being irreparably harmed each day that it remains unable to enforce its exclusionary rights under its patents against Defendant's ongoing willful infringement.

#8504301 v1

Dated: April 6, 2007

Respectfully submitted,

By: _____

Edmond D. Johnson (DE Bar #2257)
Thomas H. Kovach (DE Bar #3964)
PEPPER HAMILTON LLP
1313 Market Street, Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: (302) 777-6500
Fax: (302) 421-8390


OF COUNSEL:

Scott L. Robertson
Christopher C. Campbell
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109
Telephone: (202) 955-1500
Facsimile: (202) 778-2201

Attorneys for Plaintiff
TEXTRON INNOVATIONS INC.

#8477891 v1