## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TEXTRON INNOVATIONS INC, | ) | |
| | ) | C. A. No. 05-486 (GMS) |
| Plaintiff, | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| THE TORO COMPANY, | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

### THE TORO COMPANY'S REPLY MEMORANDUM IN SUPPORT OF
### ITS MOTION TO STAY LITIGATION PENDING DETERMINATION OF ITS
### REQUESTS FOR REEXAMINATION BY THE U.S. PATENT OFFICE

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant The Toro Company*

OF COUNSEL:

Earl D. Reiland
Anthony R. Zeuli
Thomas J. Leach
MERCHANT & GOULD P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(612) 332-5300

Dated: April 10, 2007
Public Version Dated:  April 18, 2007
790027 / 29362

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES……....................................................................……ii

INTRODUCTION ..............................................................................................1

ARGUMENT.......................................................................................................2

I.      THE THREE "STAY" FACTORS SUPPORT GRANTING A STAY..................2

      A.      Textron, Not Toro, Has Unclean Hands. ......................................3

      B.      Textron Will Not Be *Unduly* Prejudiced By A Stay And Toro
            Would Gain No *Clear* Tactical Advantage...................................4

            1.      Toro Put Its Own Patents Into Reexamination Too. ........................4

            2.      Allowing The PTO Time To Do Its Job Will Not Unduly
                  Prejudice Textron Who Delayed 5 Years In Suing Toro.................5

            3.      All Of The Depositions Were Videotaped....................................10

      C.      The Reexaminations Could Result In The Dismissal Of This Entire
            Case Or Will Certainly Simplify Any Remaining Issues. ..........................10

            1.      *Cognex* included claims for trademark and copyright
                  infringement....................................................................................11

            2.      The reexaminations could dispose of this entire case...................12

            3.      The Supreme Court May Change The Obviousness Test.............13

             4.      Reexaminations benefit the parties and the Court. ......................14

      D.      A Stay Will Maximize The Court's And The Parties' Resources. ............14

            1.      A significant amount of work remains to be done in this
                  case................................................................................................14

            2.      *Cognex's* higher standard should not be applied in this case.........15

            3.      Toro Could Not Have Reasonably Filed Its Requests For
                  Reexamination Any Earlier.............................................................16

CONCLUSION...................................................................................................19

# TABLE OF AUTHORITIES

## CASES

*Abbott Diabetes Care v. Dexcom, Inc.*,
 C.A. No. 05-590-GMS, 2006 U.S. Dist. LEXIS 57469
 (D. Del. Aug. 16, 2006) ...............................................................................6, 11, 12, 15

*In re American Academy of Science Tech Center*,
 367 F.3d 1359 (Fed. Cir. 2004) ...................................................................................9

*Broadcast Innovation, L.L.C., v. Charter Communications, Inc.*,
 2006 U.S. Dist. LEXIS 46623 (D. Colo. July 11, 2006) ......................................9, 14, 15

*Canady v. Erbe Elektromedizin GmbH*,
 307 F.Supp.2d 2 (D.D.C. 2004)..................................................................................18

*Emhart Indus. v. Sankyo Seiki Mfg.*,
 3 U.S.P.Q. 2d 1889 (N.D. Ill. 1987) ...................................................................8, 16, 17

*Gioello Enters. Ltd. v. Mattel, Inc.*,
 C.A. No. 99-375-GMS, 2001 WL 125340 (D. Del. Jan. 29, 2001).......................... *passim*

*Gonnocci v. Three M Tool & Machine*,
 2003 U.S. Dist. LEXIS 24423 (E.D. Mich. Oct. 7, 2003)..............................................15

*Gould v. Control Laser Corp.*,
 705 F.2d 1340 (Fed. Cir. 1983) ..................................................................................19

*Magna Donnelly Corp. v. Pilkington North America, Inc.*,
 2007 U.S. Dist. LEXIS 17536 (W.D. Mich. Mar. 12, 2007)............................................6

*Middleton, Inc. v. Minnesota Mining and Manufacturing Co.*,
 2004 U.S. Dist. LEXIS 16812 (S.D. Iowa Aug. 24, 2004) ...........................5, 15, 16, 18

*Pegasus Dev. Corp. v. DirectTV, Inc.*,
 C.A. No. 00-1020-GMS, 2003 U.S. Dist. LEXIS 8052
 (D. Del. May 14, 2003)........................................................................................13, 15, 16

*Rohm and Haas Co. v. Brotech Corp.*,
 C.A. No. 90-109-SLR, 1992 U.S. Dist. LEXIS 21721
 (D. Del. July 16, 1992) ...................................................................................8, 11, 12

*Union Carbide Chems. & Plastics Tech. Corp. v Shell Oil Co.*,
 C.A. No. 99-274-SLR, C.A. No. 99-846-SLR,
 2004 U.S. Dist. LEXIS 10730 (D. Del. 2004)..................................................................

**STATUTES**

35 U.S.C. 315(c) ..................................................................................................................12

35 U.S.C. 316(b) ..................................................................................................................13

## INTRODUCTION

Textron's reasons for opposing a stay do not outweigh the benefits of granting Toro's motion to stay. First, the argument that Toro will be permitted to continue allegedly infringing activity during the stay, is unpersuasive because plaintiff is an intellectual property holding company that delayed more than 5 years in bringing suit; makes no products, let alone any products that compete with the Toro mowers; and retains an adequate remedy in the form of money damages should Toro be found to infringe any of claims that survive reexamination unchanged. Second, with regard to the alleged untimeliness of Toro's motion, it was Textron's own failure to produce key prior art, despite repeated requests and conferences with the Court, that prevented Toro from filing its reexaminations and the instant motion any earlier, especially when reexaminations cannot be amended to add additional new prior art. Third, there can be little dispute, despite Textron's best efforts to manufacture one, that there is no efficiency, judicial or otherwise, in staying a case rather than preparing it for trial and trying it only to learn that none of the asserted claims should ever have been issued by the PTO in the first place. Finally, Textron's argument that reexamination will not resolve or narrow the issues misses its mark as there can be no more narrow case than one that is brought to its conclusion by a PTO finding that the asserted claims at issue are invalid, which is the statistically likely outcome here.

In a perfect litigation, Toro would have been able to file its reexamination requests earlier because Toro too was spending a lot of money defending itself against Textron claims. But this litigation has been anything but perfect. Textron did not disclose prior art to the PTO that, in Toro's view, would have prevented these patents from ever issuing or issuing with such narrow claims that this litigation would have never been brought. In addition, Textron did not produce much of that same prior art to Toro during this litigation. Toro had to use this Court and its subpoena power to get from

Textron and non-parties the prior art that will likely render invalid all of the asserted claims upon reexamination.

To ensure there is no perceived advantage to Toro by granting a stay in this case, Toro took the unusual step of requesting reexamination of its own two patents asserted against Textron in Minnesota. The requests were filed on April 5, 2007. (Ex. A.)[1]  Toro also voluntarily moved the court in Minnesota to stay that litigation in favor of the requests for reexamination. (Ex. B.)[2]  Toro even agreed to *Textron's request* that the parties agree to submit all evidence to the PTO in all the reexaminations. (Ex. C and D.) Granting a stay this close to trial, when so much work remains to be done by the Court and the parties, makes sense because "a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims." *Gioello Enters. Ltd. v. Mattel, Inc.*, C.A. No. 99-375-GMS, 2001 WL 125340, *2 (D. Del. Jan. 29, 2001). (Toro's Opening Br. Ex. B.)

## ARGUMENT

**I.    THE THREE "STAY" FACTORS SUPPORT GRANTING A STAY.**

The parties agree that the same three factors should be considered by this Court in deciding Toro's motion. However, rather than address the significant facts detailed in Toro's opening brief, Textron choose to respond with rhetoric concerning willful infringement. That's because when carefully examined the three "stay" factors support Toro's request, even this late in the litigation. *See Gioello*, 2001 WL 125340, at *1-2 (D.

---

[1]  All exhibits are attached to the Declaration of David Moore In Support Of Toro's Reply Memorandum In Support Of Its Motion To Stay Litigation Pending Determination Of Its Requests For Reexamination By The U.S. Patent Office, unless otherwise noted.

[2]  Toro asked for and received the earliest date possible for a hearing on its Motion to Stay in Minnesota. Toro was informed today that the hearing is moved to June 7.

Del. Jan. 29, 2001) (granting stay 2 ½ months before trial because the three factors favored the moving party).

### A.    Textron, Not Toro, Has Unclean Hands.

Instead of discussing the first of the three factors, whether Textron is unduly prejudiced or Toro receives a clear tactical advantage by a stay, Textron devotes seven pages of text to a discussion of willful infringement contentions based on a citation to *Cognex Corp. v. Nat'l Instr. Corp.*, C.A. No. 99-375-GMS, 2001 WL 34368283 (D. Del. Jun. 29, 2001). (Textron's Br. at Ex. 5.)  However, the Court can search high and low in *Cognex* and still not find any mention of equity powers.  What the Court will find is *Cognex's* citation to *Gioello* (*see supra*) and many factual differences between *Cognex* and this case.  For example, there, the party moving for reexamination was the plaintiff/patentee, Cognex, who also included counts of copyright infringement, trademark infringement and unfair competition in its complaint, all of which would require a trial regardless of the patent reexamination.  *Cognex*, 2001 WL 34368283, at *5.

Rather than address the many inaccuracies in Textron's willful infringement argument, which has nothing to do with whether a stay should be granted, Toro merely notes that it was Textron that told this Court, twice, that it had searched its former Johnson Creek facility and produced all responsive documents including prior art.  *See* Nov. 9, 2006 Discovery Hr. Tr. at 25 ("We searched Johnson Creek ourselves and already produced the documents from Johnson Creek.") (Ex E); *see also* Jan. 11, 2007 Discovery Hr. Tr. at 5 ("Your Honor may also recall, we already inspected [Johnson Creek] and produced responsive documents.") (Ex. F.)  Despite these emphatic assurances, Toro's subpoena of the Johnson Creek facility in late January 2007 produced ten previously undisclosed prior art references, including the Middlesworth brochure and photographs of the Lesco 500 mower – both important parts of Toro's reexamination requests.

It is unreasonable to expect Toro to have filed reexamination requests before it had all of the prior art. As discussed in Toro's opening brief, and not disputed by Textron, Toro could not amend a reexamination to add additional prior art once the reexamination was requested. (Toro Opening Br. at 16-17.) A separate reexamination request must be filed for each of Textron's three patents-at-issue. A separate filing fee of $2520 or $8800 for each additional reexamination request would be required, as well as the expensive and voluminous preparation of the reexamination requests, each time an additional piece of prior art was located. (*Id.*) For *inter partes* reexaminations, such as those requested concerning two of Textron's patents, Toro could not even file a subsequent reexamination request until the first *inter partes* reexamination process was completed. (*Id.*) Had Textron produced early in this litigation all the prior art it had, it could have avoided the dilemma in which it now finds itself.

    **B.**    **Textron Will Not Be *Unduly* Prejudiced By A Stay And Toro Would Gain No *Clear* Tactical Advantage**

        **1.**    **Toro Put Its Own Patents Into Reexamination Too.**

Textron does not argue that Toro would gain a *clear* tactical advantage if this Court grants a stay. That's because Toro would not. To ensure such a complaint could not be made by Textron, Toro took the unusual step of requesting reexamination of the two Toro patents asserted against Textron in the Minnesota action. (Ex. A.) As it did with Textron's patents, Toro requested reexamination of all of its asserted claims and provided the PTO with all the prior art discovered by Textron and Textron's arguments of invalidity. In other words, if Textron is right and the PTO finds Toro's patent claims unpatentable, that case is over. Toro also voluntarily asked the Minnesota court for a stay of that litigation so that these two matters remain in parity. (Ex. B.) Toro even agreed to *Textron's request* that the parties agree to submit all evidence to the PTO in all the

reexaminations to ensure that the PTO could consider the same evidence considered in the litigations. (Exs. C and D.)

### 2.    Allowing The PTO Time To Do Its Job Will Not Unduly Prejudice Textron Who Delayed 5 Years In Suing Toro.

Textron argues that it will be prejudiced because Toro will be able to continue selling the accused mowers during the reexamination period. Relying on the same reexamination statistics that demonstrate the high probability that all or most of Textron's claims will be invalidated or changed during reexamination,[3] Textron points out that reexaminations, on average, take about 1 ½ - 2 ½ years to complete and a stay that long is just "too long." In essence, Textron argues that it will be prejudiced if it has to wait any longer to argue for an injunction against Toro.

### (a)    Textron's own 5-year delay pales in comparison.

Textron neither sought a preliminary injunction when it did finally sue Toro, nor has it alleged that it lost any profits due to sales it would have made but for Toro's allegedly infringing sales. (Ex. H ("I am happy to represent right here on the record, Your Honor, we are not seeking lost profits. We are seeking reasonable royalty.").) In fact, on the eve of filing this lawsuit, Textron transferred its patents from its mower companies (such as Jacobsen) to plaintiff, an intellectual property holding company that licenses the patents and does not make any products, let alone any that compete against Toro. Textron did not even join as co-plaintiff Jacobsen or any other entity that competes with Toro. *See, Middleton, Inc. v. Minnesota Mining & Mfg. Co.,*

---

[3] Textron points out that the *inter partes* statistics are based on seven reexaminations and should not be afforded weight. However, those are the only statistics available. Textron cannot offer any statistics to the contrary and is only guessing when it claims the rate of cancelled claims is likely to drop.

2004 U.S. Dist. LEXIS 16812, at *31-32 (S.D. Iowa Aug. 24, 2004) (rejecting unable-to-enforce-its-patent argument where plaintiff was not selling or marketing products under its patent). (Toro's Opening Br., Ex. H.)

Textron offers no explanation for its own five-year delay, which incidentally is two or three times longer than the likely length of the stay, and its many other actions demonstrate money damages are adequate to redress the delay caused by allowing the PTO to reconsider patentability based on all of the relevant prior art. This Court has rejected unable-to-enforce-its-patents arguments, like Textron's. *See Abbott Diabetes Care, Inc. v. Dexcom, Inc.,* C.A. No. 05-590-GMS, 2006 U.S. Dist. LEXIS 57469, *18 (D. Del. Aug. 16, 2006). (Toro's Opening Br., Ex. J.) Other courts have also rejected that same argument.

In *Magna Donnelly Corp.*, the plaintiff argued that it would be unduly prejudiced by a stay for reexamination because it would continue to be harmed by infringement during the stay period. *Magna Donnelly Corp. v. Pilkington North America, Inc.,* 2007 U.S. Dist. LEXIS 17536 13-14(W.D. Mich. Mar. 12, 2007). (Toro's Opening Br., Ex. E.) The court rejected that argument because, in part, the plaintiff had waited three years after having knowledge of the accused product before bringing suit against the defendant. *Id.* at *14-15. The court also found persuasive that the plaintiff did not seek a preliminary injunction when it did finally sue the defendant. *Id.* at *14. Finally, the court noted that while reexamination procedures do take time to resolve, they are conducted with "special dispatch." *Id.* at *16.

Textron's reliance on *Amphenol T&M Antennas, Inc. v. Centurion Int'l, Inc.*, 2001 U.S. Dist. LEXIS 13795, *4 (N.D. Ill. 2001) is misplaced. (Textron's Br. at Ex. 26.) In *Amphenol*, unlike in this case, the plaintiff moved for a preliminary injunction to prevent further harm due to allegedly infringing sales. *Id.* at *7. That motion was still pending before the court when the PTO ordered the reexamination. The court was persuaded that plaintiff Amphenol, which unlike Textron Innovations Inc., made and sold competing

products and moved for a preliminary injunction, would be harmed by the delay. *Id.* In other words, in *Amphenol*, unlike here, money damages were not a sufficient remedy to redress any delay caused by the stay. That is not the case here where money damages are adequate to compensate plaintiff for any damages it may be able to prove. Plaintiff in this case did not even allege lost profits due to Toro's sales because plaintiff does not make any mowers.

### (b)    The PTO should be able to consider all the prior art.

All of the prior art references making up Toro's requests for reexamination were not considered by the PTO during the original examination.[4] Several of those references were in Textron's possession during the original examinations, but not provided to the PTO for consideration. Had Textron provided all of its prior art to the PTO or if the PTO originally had all of the prior art in Toro's requests for reexamination, this lawsuit likely would never have been brought because either Textron's patents would not have issued or the claims would have been so narrow that no allegation of infringement could have been leveled against Toro's mowers.

It seems disingenuous for Textron, the party that failed to provide the PTO with a full record on which to make its original determination of patentability, to argue that Toro should be subjected to a possible injunction under those same patents as they undergo a second examination of patentability based on the full record. Even setting aside Textron's inequitable conduct before the PTO during the original examination, the PTO should have an opportunity to judge patentability of Textron's patents based on all the prior art now before it. Awaiting the decision of the PTO before determining whether Toro should be enjoined from future sales of its mowers, especially where, as here, the

---

[4] The PTO has already received and scanned Toro's requests for reexamination of Textron's patents. In fact, the PTO has already informed Toro that it needs to correct some formalities with its requests. Toro is working with the PTO to provide the information in the form desired by the PTO. It is common for the PTO to issue such notices and should not delay the PTO decision on the merits of Toro's requests.

plaintiff did not even allege any lost sales caused by Toro's alleged infringement seems reasonable. *See Emhart Indus. v. Sankyo Seiki Mfg.*, 3 U.S.P.Q. 2d 1889, 1891 (N.D. Ill. 1987) ("this is a suit for money damages.").

Moreover, this District has stayed entry of an injunction pending defendants' appeal where the patents-at-issue were owned by a patent holding company because money damages were adequate. *Union Carbide Chems. & Plastics Tech. Corp. v Shell Oil Co.*, C.A. No. 99-274-SLR, C.A. No. 99-846-SLR, 2004 U.S. Dist. LEXIS 10730, *67 (D. Del. 2004) (Ex. I). Even if Textron was able to convince a jury this summer that Toro infringes, any injunction that might be entered by the Court would likely be stayed pending the appeal – which also takes about 1 ½ years. So Textron suffers no prejudice, let alone undue prejudice, by not having the ability to argue to this court for an injunction this summer.[5]

The case law relied upon by Textron for the proposition that 1 ½ - 2 ½ years for the reexamination is just "too long" to grant a stay is readily distinguishable. As discussed above, *Cognex* had very different facts including at least three non-patent claims that would have to be tried regardless of the reexamination results. *Cognex, supra.* Here, the entire case would be over if the PTO agrees with Toro's invalidity positions. In *Rohm and Haas*, the distinguishing factor was that two of the reexamined claims had already been held patentable by the PTO over the prior art. *Rohm and Haas Co. v. Brotech Corp.*, C.A. No. 90-109-SLR, 1992 U.S. Dist. LEXIS 21721, at *4-7 (D. Del. July 16, 1992). (Ex. J.) The patent owner sought reexamination and the stay in *Whatley*, but would not agree to toll the damages period during the stay. *Whatley v. Nike, Inc.*, 54 U.S.P.Q.2d 1124, 1125 (D. Ore. 2000). The length of the reexamination process

---

[5] The Supreme Court's recent decision in *eBay v. MercExchange* makes it <u>more</u> difficult for plaintiff to obtain an injunction in this case. Although the Court held that a patent owner that does not make a patented product may seek an injunction, the justices made clear that there is no "general rule" than an injunction will issue simply because infringement is found. 126 S.Ct. 1837 (2006).

did not appear to trouble the *Xerox* court as much as the fact that the party seeking

reexamination had known of <u>all</u> the prior art well before the reexaminations were filed.

*Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 407 (W.D.N.Y. 1999). *Remington* dealt

with a second reexamintion sought by the same party. *Remington Arms Co., Inc. v.*

*Modern Muzzleloading, Inc.*, 1998 WL 1037920, at *3 (M.D.N.C. Dec. 17, 1998).

(Textron's Br. at Ex. 23.) In *NTP*, the case had already been tried to a jury, gone up on

appeal, remanded, and during the remand period the requests for reexamination were

filed. *NTP, Inc. v. Reaserch in Motion, Ltd.*, 397 F. Supp. 2d 785, 788 (E.D. Va. 2005).

None of these cases holds that the typical length of a reexamination, standing alone, is

sufficient to deny a motion to stay. And in none of these case were there facts of

plaintiff's own delay, failure to submit prior art to the PTO and an intellectual-property-

holding-company plaintiff. *In re American Academy of Science Tech. Center* did not

even involve a stay. *In re American Academy of Science Tech Center*, 367 F.3d 1359,

1359 (Fed. Cir. 2004).

　　　Similarly, Textron's case law for the proposition that granting a stay when

discovery is complete and a trial date has been set results in undue prejudice is also not

on point. As explained in more detail in Section D below, this Court and many others

have specifically cautioned against blindly denying motions for stay just because

discovery is complete and a trial date has been set. *See, e.g., Broadcast Innovation, LLC*

*v. IO Research PTY, Ltd.*, 2006 U.S. Dist. LEXIS 46623, *26-27 (D. Colo. Jul. 11, 2006)

("In sum, the proximity of the trial date does not preclude entry of a stay"), citing

*Gioello*, 2001 WL 125340 at *1-2 (other citations omitted). (Toro's Opening Br., Ex. N.)

What is important is how much work remains and whether the parties' and the Court's

resources will be maximed by granting the stay. *Id.* at *2. There is no question that they

will be in this case if a stay is granted.

### 3.   All Of The Depositions Were Videotaped.

Textron also argues that a stay may cause it harm if witnesses are later unavailable or their memories fade. There is almost no risk of that in this case because the 34 witness depositions were not only recorded by the court reporter but also videotaped. Moreover, Textron cannot complain too loudly about the future possibility of any undeposed witnesses experiencing a fading memory since Textron waited more than 5 years before it even bothered to bring this action. During that time, two witnesses important to Toro's defenses, James Sigfreid and Robert Krick, died. Mr. Sigfreid had personal knowledge about the Lesco 500 Rotary prior art and Robert Krick, a Textron employee, had in his possession photographs of the Risboro prior art dated before the filing date of Textron's patents. Due to Textron's five-year delay, Toro never had the opportunity to depose either of these witnesses.

In sum, Toro will gain no clear tactical advantage if this Court grants the stay. It is likely the Minnesota court will stay that litigation and Toro's patents will go into reexamination along with Textron's patents. Further, Textron is not unduly prejudiced by a stay because money damages will adequately redress any delay caused by giving the PTO the opportunity to determine the patentability of Textron's patents in view of all the prior art. Textron's own delay of more than 5 years in bringing this lawsuit, its transfer of the patents to a holding company that makes no products, its failure to request a preliminary injunction and its decision to pursue a reasonable royalty rather than allege any profits lost due to sales by Toro of the allegedly infringing mowers demonstrates that any prejudice to Textron is slight and does not outweigh the many benefits of a stay.

### C.   The Reexaminations Could Result In The Dismissal Of This Entire Case Or Will Certainly Simplify Any Remaining Issues.

"Reexamination by the PTO when issues relevant to prior art are involved is especially helpful given the PTO's expertise." *Brown v. Shimano Am. Corp.*, 18 U.S.P.Q.2d 1496, 1496 (C.D. Cal. 1991). Infringement issues will also likely be

simplified, as one court noted in granting a stay on the eve of trial. *Loffland Bros. Co. v. Mid-Western Energy Corp.*, 225 U.S.P.Q. 886, 887 (W.D. Okla. 1985) ("In any event, the expert view of the Patent Office examiner will certainly benefit this Court."). Textron cannot dispute that there is no greater narrowing of issues than the complete dismissal of the entire case, which is a possibility given that the requests for reexamination concern <u>all</u> of the asserted claims in this case, the large amount of very close prior art not previously before the PTO and statistics showing a high percentage of reexaminations in which all of the claims were cancelled. Even if not all of the claims are cancelled by the PTO, it is difficult to argue, credibly, that this 30-claim patent lawsuit with almost 100 prior art references would not be simplified, both in terms of infringement and validity, by having the benefit of the PTO's expertise. *See Abbott Diabetes Care v. Dexcom, Inc.*, C.A. No. 05-590-GMS, 2006 U.S. Dist. LEXIS 57469, *19 (D. Del. Aug. 16, 2006) (holding the stay will simplify issues even if not all of the asserted claims are invalidated); *see also Rohm and Haas Co. v. Brotech Corp.*, C.A. No. 90-109-SLR, 1992 U.S. Dist. LEXIS 3252, *6-7 (D. Del. Mar. 11, 1992). Regardless of whether claims are cancelled, changed or even upheld, there is no debate that the validity and infringement issues will be simplified following the PTO's thorough reexamination.

1.    ***Cognex* Included Claims For Trademark And Copyright Infringement.**

Instead, Textron tries to diminish the PTO statistics and conjure up issues that would be unaffected by the reexamination. However, unlike the copyright and trademark issues in *Cognex*, which would be wholly unaffected by the patent reexamination, all of the "other" issues Textron raises would be directly affected by the reexaminations. For example, obviously Toro would not pursue its declaratory judgment claims of non-infringement, invalidity, estoppel and unenforceability if all of the asserted claims are held unpatentable. Claims that are changed during reexamination will present narrower infringement issues both from a damages point-of-view and as to scope-of-coverage. For

any claims that emerge from reexamination unchanged, the issues of invalidity will be considerably narrowed, if not eliminated, as Toro will be estopped from asserting the prior art considered by the PTO or that could have been considered. The narrowing of issues is beneficial beyond discovery; it benefits the Court and the parties should a trial remain necessary after the reexaminations. *See Rohm and Haas*, 1992 U.S. Dist. LEXIS 3252, at *7 ("the technical expertise to be gained by a PTO decision which may clarify the issues with regard to discovery *and ultimately for trial* weighs toward deferring to the reexamination procedure.") (emphasis added); cf. *Rohm and Haas Co.*, 24 U.S.P.Q.2d at 1371 (lifting stay because, in part, two of the claims were held patentable over the prior art in reexamination). *St. Clair Intellectual Property Consultants* is distinguishable because the reexaminations were more about claim construction than prior art. *St. Clair Intellectual Property Consultants v. Sony Corp.*, 2003 WL 25283239, at *2 (D. Del. Jan. 30, 2003). (Textron's Br. at Ex. 6.) Toro's reexaminations are about prior art.

## 2. The Reexaminations Could Dispose Of This Entire Case.

Textron also claims that the reexaminations will not significantly narrow the printed prior art issues for trial. That is impossible. *See Abbott Diabetes,* 2006 U.S. Dist. LEXIS 57469, at *19. The Court need only look at Toro's voluminous requests for reexamination (Textron's Br. at Exs. 1-3) to discern that most if not all of the printed prior art issues will be resolved or narrowed. Should claims emerge unchanged by the reexaminations, Toro will be bound by the PTO's conclusions regarding prior art that was presented or *could have been presented to the PTO* during the *inter partes* reexamination of the patents. 35 U.S.C. § 315(c). Toro will not be able to credibly assert at trial that same prior art against the '530 patent simply because it was subject to an *ex parte* reexamination. The reality is that if claims emerge unchanged, Textron's patent is strengthened as to validity.

If all or some of the asserted claims are changed during reexamination, it could result in the need to retry all or some of the issues decided at trial – an extreme waste of resources, both the Court's and the parties'. *See Pegasus Dev. Corp. v. DirectTV, Inc.*, 2003 U.S. Dist. LEXIS 8052, at *7, citing *Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 U.S. Dist LEXIS 4254, at *3 (S.D. N.Y. 2000) ("The grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims."). (Toro's Opening Br. at Ex. K.) If claims in dispute are amended and issued during the course of the *inter partes* reexamination the scope of any damages may also be transformed since, by law, damages must be limited to the period after allowance of the claim in amended form. *See* 35 U.S.C. § 316(b); *Bloom Eng'g Co. Inc. v. N. Am. Mfg. Co., Inc.*, 129 F.3d 1247, 149-50 (Fed. Cir. 1997).

### 3.    The Supreme Court May Change The Obviousness Test.

Textron claims that there is no inefficiency if the Supreme Court changes the test for obviousness four days before trial. The parties and the Court can adjust, argues Textron. Textron ignores the reality that expert witness reports will need to be redone, and possibly depositions of those experts, jury instructions already adopted by the Court will need to be re-written, and exhibits and witnesses will need to be reconsidered depending on the scope of the change. What is certain is that we cannot be certain what the Supreme Court will do with the current obviousness test. But it is an additional reason supporting a stay in this matter because the parties and the Court would have the benefit of the stay to understand the new law, if any, and adjust their cases accordingly. Of course Textron claims there is no prejudice—obviousness is one of Toro's defenses. Textron would be pleased with a change in the law just four days before trial and would no doubt use the change in law against Toro.

4.   **Reexaminations Benefit The Parties And The Court.**

Textron does not dispute that the PTO has beefed up its reexamination procedures to address complaints of invalid patents being issued. Nor does Textron argue that the Court and the parties would benefit from the PTO's expertise. Indeed, Textron will be the beneficiary if the claims remain unchanged.

D.   **A Stay Will Maximize The Court's And The Parties' Resources.**

1.   **A Significant Amount Of Work Remains To Be Done In This Case.**

Textron does not dispute that a significant amount of work remains to be done by the Court and parties before trial (ten motions *in limine*, preparing stipulated and contested facts, jury instructions, voir dire, exhibit lists, witness lists, trial briefs, and all the work associated with putting on an 8 day trial), work that will need to be redone or be wasted if the PTO changes or invalidates asserted patent claims, or if the Supreme Court changes the obviousness test. Nevertheless, Textron argues it is just too late for a stay because discovery is complete and trial is less than 3 months away. But this Court and many others have granted stays under similar facts because completion of discovery and an imminent trial date are not reasons to blindly deny an otherwise appropriate stay. *See, e.g., Broadcast Innovation, LLC v. IO Research PTY, Ltd.*, 2006 U.S. Dist. LEXIS 46623, *26-27 (D. Colo. Jul. 11, 2006), citing *Gioello*, 2001 WL 125340 at *1-2 (other citations omitted). What these cases have in common is that a considerable amount of work remains for the parties and the Court before trial, work that would be wasted should the reexamination invalidate or even change asserted patent claims. For example, in *Gioello*, this Court explained how granting a stay would maximize resources despite only 2 ½ months remaining before trial and discovery nearly complete:

> . . . if the parties continue to litigate the validity of the claims in this Court [sic], and the PTO subsequently finds that some or all of the claims in issue here are

> invalid, the Court [sic] will have wasted time and the parties will have to spend additional funds addressing an invalid claim or claims. Thus, although the denial of a stay can have no effect whatsoever on past events, the grant of a stay will maximize the likelihood that neither the Court [sic] nor the parties expend their assets addressing invalid claims.

*Gioello*, 2001 WL 125340, at * 2.  In *Broadcast*, the court granted a stay even though trial was also less than three months away.  *Id.* at *26.  As in *Gioello*, "significant work remain[ed]" before trial including pretrial filings, deposition designations, motions *in limine*, jury instructions, etc.  *Id.* at *30-31; *see also Middleton Inc. v. Minnesota Mining and Mfg. Co.*, 2004 U.S. Dist. LEXIS 16812, *20-22 (S.D. Iowa Aug. 24, 2004) (granting stay 2 months before trial because, in part, not efficient to complete pretrial and hold a full jury trial if all or part have to be redone); *Gonnocci*, 2003 U.S. Dist. LEXIS 24423, at *7 ("courts have granted stays even where discovery has been completed and even when a trial date has been scheduled or is forthcoming") (citations omitted).

### 2.    *Cognex's* Higher Standard Should Not Be Applied In This Case.

Textron cites to *Cognex* and its language suggesting a higher "clear-case-of-hardship" standard for a party seeking a stay if it will forestall a scheduled trial date. (Textron's Br. at 22.)  Although Toro believes it has demonstrated a clear case of hardship because of the great expense of resources that may be wasted or need to be redone after the reexamination, Toro was unable to find any other reexamination case in which this Court, or any other, followed *Cognex* and required a moving party to show "a clear case of hardship" even when a trial date had been scheduled.  *See, e.g., Pegasus Dev. Corp. v. DirecTV, Inc., et al.*, C.A. No. 00-1020-GMS, 2003 U.S. Dist. LEXIS 8052, *2, 3-4 (D. Del. May 14, 2003); *Abbott Diabetes*, 2006 U.S. Dist. LEXIS 57469 at *17, 20.

### 3.    Toro Could Not Have Reasonably Filed Its Requests For Reexamination Any Earlier.

Textron does not dispute that Toro is entitled by law to request a reexamination when it did. *See Pegasus*, 2003 U.S. Dist. LEXIS 8052, at *9. Textron argues that a stay should not be granted, however, because Toro unduly delayed filing its requests for reexamination. Toro did not; but even if Toro had been dilatory, that is not a factor under the three-factor test and should not form the basis for denying an otherwise appropriate stay. *See Middleton,* 2004 U.S. Dist. LEXIS 16812, at *27 ("if the Court finds that the benefits of granting a stay in the present proceedings outweigh the burdens, it need not decide whether the defendant could actually have filed its request at an earlier date.") (citing *Emhart Indus.*, 3 U.S.P.Q. 2d at 1891); *see also* G*ioello,* 2001 WL 125340, at *2 (rejecting dilatory-tactics argument as basis for denying motion to stay).

As explained in Toro's opening brief, several of the prior art references that make up Toro's requests for reexamination were only found late in the discovery of this case, and found in the possession of Textron or its former manufacturing facility. For example, the Middlesworth brochure, which makes up a large portion of all Toro's requests for reexamination, was not turned over by Textron during discovery but had to be located by Toro through a subpoena on Textron's former Johnson Creek facility, a facility Textron owned during the litigation and its counsel represented to this Court had been searched. Textron should not be able to delay Toro's discovery of important prior art and then complain too much time has passed. *See Emhart Indus.*, 3 U.S.P.Q. 2d at 1891.

Textron also does not tell the whole story with regard to several other pieces of prior art on which Toro relied in its requests for reexamintion. For example, Textron points out the Toro knew generally of the Lesco 500 Rotary in August 2003. But Textron fails to explain that Toro did not have anything more than statements about the existence of such a machine. It was not until Textron sued Toro that Toro went about finding information about this mower. Because the mower was never commercialized, Toro

went to such lenghts as locating a photograph in the archives at the Sebring, Florida public library in late 2006. And it was Textron, not Toro, that put off the deposition of Fred Eberlein, a witness with firsthand knowledge of the mower, from November 14, 2006 until February 23, 2007. (Ex. K.) Further, Textron fails to explain why photographs of the Lesco 500 mower, found in Textron's Johnson Creek facility, were not produced to Toro. Similarly, the Simplicity Parts Manual identified by Toro in June 2006 was undated. Toro had to locate a witness and depose him to establish the date. Finally, two of the references are foreign, Risboro and Wulff. Toro not only had to locate this art overseas, but had to fly in a witness to establish that the Risboro reference was publicly distributed. As for Wulff, Toro had to work through language barriers to get a translated brochure and a declaration in March 2007.

Toro undisputedly did not have all of the prior art on which its requests for reexamination were filed; some of the prior art coming only weeks before the requests were filed – and coming from Textron and non-parties. For example, after finding the Middlesworth brochure at Textron's former facility in late January, Toro had to take the deposition of Middlesworth to date the brochure as actual prior art. *See Emhart Indus.*, 3 U.S.P.Q. 2d at 1891 (defendant needed to depose witnesses to establish prior art). Had Toro not waited until it had these final pieces of important prior art and evidence dating that art, Toro would have been precluded from relying on them during the reexaminations. That is not reasonable.

To have subsequently discovered prior art considered by the PTO, Toro would have had to separately prepare and file another complete set of *three* requests for reexamination (one per patent). Exhibits 1-3 to Textron's brief demonstrate the amount of work that went into Toro's requests for reexamination. In addition to the attorney-time expense for each additional reexamination request, Toro would have to pay another filing fee of $2520 or $8800 per request. Toro would have had to repeat this piece-meal process over and over again for each new piece of prior art discovered during the

17

litigation that was not part of an earlier pending *ex parte* reexamination. For the *inter partes* reexamination, Toro would have to wait the 2 or 2 ½ years until the earlier filed reexaminations were concluded and then begin the whole process again. *See e.g., Canady v. Erbe Elektromedizin GmbH*, 307 F.Supp.2d 2, 6-7 (D.D.C. 2004) (ironically plaintiffs argued defendants delayed the PTO's ruling by filing subsequent requests for reexamination).

Finally, Textron's reliance on the amount of money the parties have spent during this litigation in comparison to the costs of the reexamination is not dispositive. This Court and others have noted that denying a stay cannot recover what has already been spent, but granting a stay can prevent the parties and this Court from wasting resources on issues that may be moot or need to be redone after the reexamination. See *Middleton*, 2004 U.S. Dist. LEXIS 16812, at *21-22 (granting stay despite considerable expense already endured by the parties); *see also Gioello*, 2001 WL 125340, at * 2 ("although the denial of a stay can have no effect whatsoever on past events, the grant of a stay will maximize the likelihood that neither the Court [sic] nor the parties expend their assets addressing invalid claims.") (citations omitted).

## CONCLUSION

Because there is greater than a 90% probability that Toro's requests for reexamination will be granted, a greater than 60% chance that all of the asserted claims in this litigation will be invalidated or changed, and a near certainty that reexamination will both preserve Court resources and aid the Court with the complicated invalidity issues in this case, Toro respectfully requests this Court grant its Motion to Stay Litigation Pending Determination of Its Requests for Reexamination.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Earl D. Reiland
Anthony R. Zeuli
Thomas J. Leach
MERCHANT & GOULD P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(612) 332-5300

Dated: April 10, 2007
Public Version Dated: April 18, 2007
790027 / 29362

By:   */s/ David E. Moore*
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Hercules Plaza 6th Floor
      1313 N. Market Street
      P.O. Box 951
      Wilmington, DE 19899
      Tel: (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

*Attorneys for Defendant Toro Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## <u>CERTIFICATE OF SERVICE</u>

I, David E. Moore, hereby certify that on April 18, 2007, the attached document

was electronically mailed and hand delivered to the following persons and was

electronically filed with the Clerk of the Court using CM/ECF which will send

notification to the registered attorney(s) of record that the document has been filed and is

available for viewing and downloading:

Edmond D. Johnson
Thomas H. Kovach
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 North Market Street
Wilmington, DE  19899-1709
Johnsone@pepperlaw.com
kovacht@pepperlaw.com

I hereby certify that on April 18, 2007, I have Electronically Mailed and Federal

Expressed the documents to the following:

Christopher C. Campbell
Hunton & Williams LLP
1900 K Street, N.W.
Washington, DC  20006-1109
srobertson@hunton.com
ccampbell@hunton.com
mlouey@hunton.com
lmarlatt@hunton.com
fmckeon@hunton.com
dmckim@hunton.com
jalbert@hunton.com
rking@hunton.com

David Young
Hunton & Williams LLP
1751 Pinnacle Drive, Suite 1700
McLean, Virginia 22102
mpphelps@hunton.com
dyoung@hunton.com

Kurt Niederluecke
Fredrikson & Byron, P.A.
200 South Sixth Street
Suite 4000
Minneapolis, MN 55402
kniederluecke@fredlaw.com

By:  */s/ David E. Moore*
     Richard L. Horwitz
     David E. Moore
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, Delaware 19899-0951
     (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com