IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TEXTRON INNOVATIONS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 05-486 (GMS) |
| | ) | |
| THE TORO COMPANY, | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF TEXTRON INNOVATIONS INC.'S OPENING BRIEF IN SUPPORT OF
MOTION FOR RECONSIDERATION OR REARGUMENT AND MODIFICATION
AND/OR CLARIFICATION OF ORDER GRANTING STAY OF PROCEEDINGS**

    Edmond D. Johnson (DE Bar #2257)
    Thomas H. Kovach (DE Bar #3964)
    PEPPER HAMILTON LLP
    1313 Market Street, Suite 5100
    P.O. Box 1709
    Wilmington, DE 19899-1709
    Telephone: (302) 777-6500
    Fax: (302) 421-8390

OF COUNSEL:

Scott L. Robertson
Christopher C. Campbell           *Attorneys for Plaintiff*
Jennifer A. Albert                Textron Innovations Inc.
GOODWIN PROCTOR LLP
901 New York Avenue
Washington, D.C. 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444

Dated: May 9, 2007
Public Version: May 10, 2007

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................1

II. PROCEDURAL BACKGROUND ..............................................................................2

III. ARGUMENT.................................................................................................................3

    A. This Court Need No Longer Stay The Litigation In Order To Await The Supreme Court's Decision In KSR.....................................................................4

    B. The Question Of Textron's Remedies And Its Entitlement To Permanent Injunctive Relief Upon A Finding Of Infringement Was Not Before The Court, And Should Not Be Prejudged At This Time...............................................6

    C. Textron Competes With Toro With Respect To The Patented Technology............7

    D. A Patentee That Licenses Its Technology To Its Parent Corporation In Order To Make And Sell Covered Products May Be Entitled To Permanent Injunctive Relief, And Is Irreparably Harmed By An Infringer That Competes With The Patentee's Licensed Parent Corporation. ........................8

IV. CONCLUSION ............................................................................................................10

# TABLE OF AUTHORITIES

**CASES**                                                                 **Page**

*Ciena Corp. v. Corvis Corp.*, 352 F. Supp.2d 526 (D. Del. 2005) ..................................................4

*Continental Paper Bag Co. v. Eastern Paper Bag Co.*, 210 U.S. 405 (1908) .................................9

*Corning Inc. v. SRU Biosystems*, 2006 WL 155255 (D. Del. Jan. 20, 2005) ..................................4

*eBay, Inc. v. MercExchange, L.L.C.*, 126 S.Ct. 1837 (2006) ......................................................7, 9

*Gioello Enters. Ltd. v. Mattel, Inc.*, 2001 WL 125340 (D. Del. Jan. 29, 2001) ...........................3, 6

*KSR, Int'l Co. v. Teleflex Inc.*, ___ S. Ct. ___, 2007 WL 1237837 (April 30, 2007)............ *Passim*

*Max's Seafood Cafe' v. Quinteros*, 176 F.3d 669 (3d Cir. 1999) ....................................................4

*Novozymes A/S v. Genencor Int'l Inc.*, 474 F. Supp.2d 592 (D. Del. 2007) ...............................9, 10

**STATUTES**

35 U.S.C. § 154(a)(1) ......................................................................................................................8

**LOCAL COURT RULES**

Local Rule 7.1.5...........................................................................................................................3, 4

I.  **INTRODUCTION**

Plaintiff Textron Innovations Inc. ("Textron") respectfully requests that in light of the Supreme Court's April 30 decision in *KSR Int'l Co. v. Teleflex Inc.*, this Court reconsider or permit reargument of its Order of April 25 granting a stay of these proceedings. To the extent the uncertainty of the pending *KSR* decision may have tipped the balance in favor of staying this case, the Supreme Court's resolution of that case no longer supports staying this action. Textron also requests that the Court modify and/or clarify its Stay Order with respect to certain *dicta* regarding the potential remedies available to Textron in this case. Textron asks that the Court clarify that it has not adjudged the remedies available to Textron upon a finding of infringement; indeed, Toro did not request such relief with its stay motion.

With respect to the request for reconsideration, this Court's Stay Order noted that in weighing the factors pertinent to the stay motion, it was important that the Supreme Court might "modify the legal standard for obviousness," which could in the absence of a stay require a retrial of the invalidity issues. The Court's statement was based on the fact that the *KSR* case had been argued but not yet decided by the Supreme Court. Because the Supreme Court has now rendered its decision in *KSR,* this factor no longer militates in favor of a stay.

With respect to the request for modification and/or clarification of the Stay Order, this Court's Stay Order included statements to the effect that Textron ostensibly does not compete with defendant The Toro Company ("Toro") for sales of products covered by the patents-in-suit and, accordingly, Textron's remedies are limited to damages (as opposed to, for example, permanent injunctive relief). With respect, this statement is inaccurate and, in any event, pertains to an issue for which there has not been a full evidentiary presentation. Accordingly, Textron requests that the Court modify and/or clarify its Order to make clear that: (1) the Court has not adjudged the factual issue of the extent to which Textron competes with Toro for sales of

covered products; (2) the Court has not adjudged the legal issues with respect to the remedies available to Textron in this case; and (3) because the evidence has yet to be heard with respect to this issue, the Court's statements in these respects do not constitute law of the case.

## II.    PROCEDURAL BACKGROUND

Textron filed this patent infringement action on July 12, 2005, seeking both damages and permanent injunctive relief as remedies for Toro's infringement. In the Complaint and throughout this litigation, Textron has been clear that Toro's ongoing infringement is causing irreparable harm, requiring the entry of permanent injunctive relief. *See, e.g.,* Exhibit A (Complaint, without exhibits) at ¶ 1 ("[t]his is an action for patent infringement … to enjoin and obtain damages …. Plaintiff seeks injunctive relief to prevent Defendant from continuing to infringe Plaintiff's patents."); *see also id.* at ¶¶ 11, 16, 21 and Prayer for Relief, ¶ D (requesting that Court grant injunctive relief).

On or about March 23, 2007, and after the close of all discovery, Toro moved the Court to stay this litigation pending the outcome of possible PTO reexamination proceedings that Toro had just then requested. The Court rendered its decision on the motion on April 25, 2007, and granted the motion for a stay over Textron's objections. Order of April 25, 2007 ("Stay Order"). Although the Court held that a number of relevant factors weighed against granting a stay, the Court emphasized two considerations that warranted granting the motion, first, that the Supreme Court had under review the test for obviousness under Section 103 of the patent laws and, second, that the PTO had under consideration Toro's requests for reexaminations. Stay Order at 4-5.

With respect to the former consideration, the Court noted that a decision in *KSR v. Teleflex* could modify the legal standard for obviousness, which created a risk of having to retry the invalidity portion of this case if rendered after the trial. *Id.* at 4. However, five days after the

Court entered the Stay Order, the Supreme Court rendered its decision in *KSR*. *See generally KSR, Int'l Co. v. Teleflex Inc.*, ___ S. Ct. ___, 2007 W.L. 1237837 (2007) (attached as Exhibit B).

> In the course of granting the stay motion, this Court also made the following statement:
>
> As Toro points out, because this is a suit for money damages, a stay does not *unduly* prejudice Textron in that it does not compete with Toro for sales. *See Gioello, 2001 WL 125430* (finding no merit in the plaintiff's claim of undue prejudice because the plaintiff was "not selling or actively licensing goods or services related to the '434 patent; money damages is an adequate remedy for any delay in redress")

Order of April 25, 2007 at 5 (emphasis in original).

## III.  ARGUMENT

Textron respectfully requests that the Court reconsider or permit reargument and modify and/or clarify its Stay Order. Reconsideration or reargument pursuant to Local Rule 7.1.5 is warranted because one of the primary considerations the Court emphasized in granting the motion has been addressed, *viz.*, the Supreme Court has rendered its decision in the *KSR* case and provided its guidance with respect to the legal test for obviousness-type invalidity. Accordingly, the Court need not continue to await that decision in order to proceed with the trial of this case. To the extent the pending decision in *KSR* tipped the balance in favor of granting the stay, this factor no longer supports a stay of this litigation and compels reconsideration of the motion.

Textron also requests that the Court modify and/or clarify the Stay Order to make clear that it has not prejudged an issue that has not yet been fully presented, specifically, Textron's rights with respect to permanent injunctive relief, and the factual issues underlying that determination. In saying that this is "a suit for money damages," and that Textron "does not compete with Toro for sales," the Court's Stay Order might be read to adopt — without the

-3-

#8554604 v1

benefit of a full evidentiary presentation — Toro's position that Textron will not be entitled to the post-trial remedy of permanent injunctive relief because it is allegedly a mere "patent holding company." Putting aside the fact that Toro's contention is both factually and legally incorrect, this issue was not before the Court for resolution. Textron does not ask that the Court render any ruling upon that issue at this time, but requests only that the Court reserve judgment with respect to that issue until there has been a full evidentiary presentation of the facts.

### A.   This Court Need No Longer Stay The Litigation In Order To Await The Supreme Court's Decision In *KSR*.

Although Textron recognizes that the standard for a motion for reconsideration or reargument is high, the standard is met in this case. One of the two primary factors this Court relied upon in granting the stay no longer exists, because the Supreme Court has rendered its decision in *KSR v. Teleflex*.

The purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." *Ciena Corp. v. Corvis Corp.,* 352 F. Supp.2d 526, 527 (D. Del. 2005) (granting motion, and quoting *Max's Seafood Cafe' v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999)). Motions for reargument or reconsideration are not to rehash arguments already briefed by the parties and considered and decided by the Court. *Id.* Thus, a court should alter or amend its judgment if presented with: (1) a change in controlling law; (2) newly available evidence; or (3) the need to correct a clear error of law or fact to prevent manifest injustice. *Id.* (citing *Max's Seafood,* 176 F.3d at 677). Similarly, a motion for reargument pursuant to Local Rule 7.1.5 is appropriate where: (1) the Court has patently misunderstood a party, (2) the Court has made an error not of reasoning, but of apprehension, and (3) the Court has made a decision outside the scope of the issues presented to the Court by the parties. *Corning Inc. v. SRU Biosystems,* 2006 W.L. 155255, *1, n.1 (D. Del. Jan. 20, 2006) (attached as

Exhibit C).

While the standard for reconsideration or reargument is high, it is met here because one of the primary factors cited by the Court as weighing in favor of its decision has been mooted by the Supreme Court's subsequent decision in *KSR*. This Court noted in its Stay Order that a number of factors weighed *against* granting a stay, but that there were two considerations that weighed in favor of the stay motion. Stay Order at 3-5. Specifically, the Court noted that if the Supreme Court were to "modify the legal standard for obviousness," granting a stay "may obviate a retrial of the invalidity portion" of the case. *Id.* at 4. The Court also noted the possibility that the PTO may yet decide to reexamine the patents-in-suit, which could narrow the issues for trial. *Id.* at 5.

In the week following this Court's entry of the Stay Order, the Supreme Court rendered its decision in *KSR*. In summary, the Supreme Court determined that the "teaching, suggestion or motivation to combine" test utilized to assess obviousness-type invalidity should not be dispensed with, but that it had been applied too rigidly by the Federal Circuit in the *KSR* litigation. *KSR*, ___ S.Ct. at ___, 2007 W.L. 1237837 at **15-16 (attached as Exhibit B).

Accordingly, the prospect of a post-trial change in the law of obviousness no longer presents a reason to stay this case, because the Supreme Court has rendered its decision. With respect to balancing the factors weighing for or against a stay, one of the two factors this Court relied upon in granting the stay no longer exists. Textron therefore respectfully asks that this Court reconsider its Stay Order and allow this case to proceed to trial forthwith.

The remaining factor that the Court relied upon – that the PTO might grant Toro's requests for reexaminations – remains speculative.[1] The PTO has not yet rendered a decision.

---

[1] The Court also stated that Textron would not be unduly prejudiced by a stay because "it

For all the reasons Textron previously expressed in its brief opposing the stay motion, speculation that some of the claims of some of the patents *might* undergo reexamination with respect to some of the prior art asserted in this case should not justify a stay requested on the eve of trial. To so hold simply invites infringers to delay in requesting reexamination until after the parties have completed discovery, which confounds the very purpose of the reexamination statutes, namely, to provide an efficient and less-costly *alternative* to litigation.

### B. The Question Of Textron's Remedies And Its Entitlement To Permanent Injunctive Relief Upon A Finding Of Infringement Was Not Before The Court, And Should Not Be Prejudged At This Time.

While Textron does not believe the Court meant to do so, Textron is concerned that certain *dicta* in the Court's Stay Order could be read as ruling that Textron is limited to money damages in this case, and that it cannot obtain post-trial permanent injunctive relief. With respect, it would not be appropriate for the Court to prejudge the post-trial remedies available to Textron in the context of Toro's pre-trial motion to stay proceedings. There has not been a full evidentiary presentation of this issue. Toro did not request such relief with its motion. Likewise, Toro did not request permission to move for summary judgment with respect to this issue, and it did not move *in limine* to exclude consideration of this issue from the trial.

The Court did not have before it much of the evidence that will be relevant to the determination of remedies, including a full and accurate picture of the relationship between Textron and its parent corporation that practices the patented inventions in competition with

---

does not compete with Toro for sales." Stay Order at 5. As discussed *infra*, Textron does in fact compete with Toro through sales by its licensed parent corporation. Moreover, the Court's quotation from *Gioello Enters. Ltd. v. Mattel, Inc.*, No. 99-375-GMS, 2001 W.L. 125340 *2 (D. Del. Jan. 29, 2001) (attached as Exhibit D) (*see* Stay Order at 5), is inapposite to the facts of this case, because unlike the plaintiff in that case Textron does in fact "actively licens[e] goods … related to the patents-in-suit"). *Compare id.* at *2 ("Gioello is not selling or actively licensing goods or services related to the [patent-in-suit]").

-6-

#8554604 v1

Toro. Neither did the Court have before it the evidence generally relevant to the evaluation of the four-factor test for granting permanent injunctions, including the irreparable harm to Textron in the absence of an injunction, the adequacy of the damages to compensate for the injury, the balance of the hardships between the parties, and the public interest. *See generally eBay, Inc. v. MercExchange, L.L.C.,* 126 S.Ct. 1837, 1839 (2006). And moreover, Toro's contention that Textron is merely a "patent holding company" that does not compete for sales (and that it is therefore limited to money damages), is both factually and legally incorrect, as discussed *infra*.

Textron does not ask this Court to make any ruling with respect to remedies at this time, but only seeks clarification that the Court reserves judgment until there has been a full evidentiary presentation. Textron requests the Court to clarify and/or modify its Stay Order to make clear that the Court has not decided this issue and that the Court's statements in this regard do not constitute law of the case.

### C. Textron Competes With Toro With Respect To The Patented Technology.

Contrary to Toro's oversimplistic and inaccurate portrayal, Textron is not a mere "patent holding company" that does not compete with Toro. In fact, there is no dispute that Toro competes with Textron Inc. — Textron's parent company — with respect to sales of gang-type rotary mowers covered by the patents-in-suit. Textron Inc. sells the covered products through its Jacobsen Division. Nonetheless, Toro apparently will contend that Textron cannot obtain injunctive relief in this case because it does not "directly" manufacture or sell covered products in competition with Toro, but rather does so "only indirectly" through its licensed parent corporation.

Toro's arguments ignore economic reality. [REDACTED]

[REDACTED]

Toro's infringing products compete with those of Textron Inc.'s Jacobsen Division, and that competition has impacted upon Textron Innovations Inc. by reducing the revenues of the operating unit, and hence the royalties that the operating unit could otherwise have contributed.



Moreover, Toro's infringement denies Textron and its licensee of the statutory right to exclude provided by the patent laws. 35 U.S.C. § 154(a)(1). Thus, there is little difference from this scenario than if Textron Innovations Inc. was itself manufacturing and selling covered products in direct competition with Toro.

As such, Textron and Toro are very much competitors, and, as discussed *infra*, this Court has recently held that a permanent injunction is appropriate under these circumstances.

### D. A Patentee That Licenses Its Technology To Its Parent Corporation In Order To Make And Sell Covered Products May Be Entitled To Permanent Injunctive Relief, And Is Irreparably Harmed By An Infringer That Competes With The Patentee's Licensed Parent Corporation.

It would be legal error for this Court to presume that Textron's remedies are limited to

#8554604 v1

money damages simply because its commercial products covered by the patents-in-suit are manufactured and sold by its licensed parent corporation. No rule of law precludes a patentee from obtaining post-trial injunctive relief simply because the commercial embodiment of its invention is made and sold (in competition with the accused infringer) by a licensed parent corporation, rather than by the legal patent owner. Indeed, the Supreme Court recently reaffirmed its one-hundred year old precedent in *Continental Paper Bag Co. v. Eastern Paper Bag Co.*, 210 U.S. 405, 422-30 (1908), which rejected the notion that a court may not grant injunctive relief to a patentee who has *unreasonably declined to use the patent in any manner*. *See eBay*, 126 S. Ct. at 1840-41 (reaffirming decision). The Supreme Court also made clear that a patentee that commercializes its patented inventions through a license agreement may likewise be entitled to injunctive relief upon a finding of infringement. *Id.* at 1840 ("some patent holders, …, might reasonably prefer to license their patents, such patent holders may be able to satisfy the traditional four-factor test [for injunctive relief], and we see no basis for categorically denying them the opportunity to do so."). *A fortiori*, when the licensee is the plaintiff's parent corporation that sells covered products in competition with the accused infringer, injunctive relief will likely be warranted upon a finding of infringement.

In accord with these rulings of the Supreme Court, within the past three months this Court has granted a post-trial permanent injunction to a patent owner that did not directly sell products competitive to the infringer's products, but which had a licensed subsidiary that did so. *Novozymes A/S v. Genencor Int'l Inc.*, 474 F. Supp.2d 592, 612-13 (D. Del. 2007).[2] Under

---

[2] The license arrangement in *Novozymes* as described by the Court appears analogous to that in this case in that: 1) the plaintiff-patentee owned the technology developed by its subsidiaries; 2) the subsidiaries were licensed with the right to use the patented technology; 3) in return for the use of the technology, the licensed subsidiary paid royalties; and 4) the licensed subsidiary competed with the accused infringer. *See id.* at 596-98.

circumstances very similar to those presented here, this Court concluded that the patent owner had suffered irreparable harm and entered a permanent injunction, stating:

> Here, [the patentee] owns two related patents …. It licenses both patents to its U.S. subsidiary, not only in exchange for a 40% royalty, but also with the expectation that the value of its subsidiary will increase with the successful marketing of the licensed technology. The subsidiary markets one of the two [inventions], and [the patentee] expects its patents to exclude competitors from marketing either of [the patented inventions]. In those circumstances, even though [the patentee] does not market [the invention] itself, it has suffered harm beyond the reasonable royalty that it can recover from Defendants. And [the patentee] will continue to suffer such irreparable harm if Defendants are not enjoined from infringing on [the patentee's] right to exclude.
>
> Legal remedies are not adequate to compensate [the patentee] for the infringement of its patent…. The statutory right to exclude represents a benefit that cannot be equated by an award of cash. These are head-to-head competitors, and [the patentee] has a right, granted by Congress, not to assist its rival with the use of proprietary technology.

*Id.*

Accordingly, this Court has appropriately recognized that injunctive relief is warranted where, as here, the patentee competes for sales with the infringer by virtue of a license to its corporate affiliate to market products that utilize the inventions of the patent. Particularly in light of the precedent in *Novozymes*, this Court should make clear that its Stay Order was not intended to preclude Textron from obtaining permanent injunctive relief upon a finding of infringement.

## IV. CONCLUSION

For the foregoing reasons, Textron respectfully requests that the Court reconsider its decision to stay these proceedings, and that the Court dissolve the stay and reinstate a trial date for this case. Textron further requests that the Court clarify and/or modify its Stay Order to make clear that it has not adjudged Textron's entitlement to permanent injunctive relief upon a finding of Toro's infringement.

#8554604 v1

Dated: May 9, 2007

Respectfully submitted,

TEXTRON INNOVATIONS, INC.

By: _____
Edmond D. Johnson (#2257)
**PEPPER HAMILTON LLP**
1313 Market Street, Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6539
Fax: (302) 421-8390

OF COUNSEL:

Scott L. Robertson
Christopher C. Campbell
Jennifer A. Albert
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444

**Attorneys for Plaintiff
TEXTRON INNOVATIONS INC.**

#8553004 v1

# CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of May 2007, I caused a copy of the public version of *Plaintiff Textron Innovations Inc.'s Opening Brief in Support of Motion for Reconsideration or Reargument and Modification and/or Clarification of Order Granting Stay of Proceedings* to be served:

Via hand delivery upon:

> Richard L. Horwitz
> David E. Moore
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza, 6th Floor
> 1313 N. Market Street
> Wilmington, Delaware 19899-0951
> (302) 984-6000

Via overnight courier:

> Earl D. Reiland
> Thomas R. Johnson
> Thomas J. Leach
> MERCHANT & GOULD P.C.
> 3200 IDS Center
> 80 South 8th Street
> Minneapolis, MN 55402
> (612) 332-5300

/s/ Thomas H. Kovach
Thomas H. Kovach (DE Bar #3964)